ORIGINAL

1   Lara J. Dueppen, Bar No. 259075
    LDueppen@perkinscoie.com
2   PERKINS COIE LLP
    1888 Century Park East, Suite 1700
3   Los Angeles, CA 90067-1721
    Telephone: 310.788.9900
4   Facsimile: 310.788.3399

5   Jonathan M. James (*pro hac vice* to be filed)
    JJames@perkinscoie.com
6   PERKINS COIE LLP
    2901 North Central Avenue, Suite 2000
7   Phoenix, AZ 85012-2788
    Telephone: 602.351.8000
8   Facsimile: 602.648.7000

9   Amanda Tessar (*pro hac vice* pending)
    ATessar@perkinscoie.com
10  PERKINS COIE LLP
    1900 Sixteenth Street, Suite 1400
11  Denver, CO 80202-5255
    Telephone: 303.291.2300
12  Facsimile: 303.291.2400

13  **ATTORNEYS FOR PLAINTIFFS**
    (Additional Counsel Listed on Signature
14  Page)

15          UNITED STATES DISTRICT COURT
            CENTRAL DISTRICT OF CALIFORNIA
16                WESTERN DIVISION

17  M/A-COM TECHNOLOGY                    Case No. CV 16 - 02859 CAS (PLAx)
18  SOLUTIONS HOLDINGS, INC., a
    Delaware corporation, and
19  NITRONEX, LLC, a Delaware limited     **COMPLAINT FOR BREACH OF**
    liability company,                    **CONTRACT AND DECLARATORY**
20                                        **JUDGMENT**
                   Plaintiffs,
21
           v.
22
    INFINEON TECHNOLOGIES AG, a
23  corporation organized under the laws of
    Germany, INFINEON
24  TECHNOLOGIES AMERICAS
    CORPORATION, a Delaware
25  Corporation, and INTERNATIONAL
    RECTIFIER CORPORATION, a
26  Delaware Corporation,

27                 Defendants.

28

                                        COMPLAINT FOR BREACH OF CONTRACT AND
                                                    DECLARATORY JUDGMENT

                                                    09277-0057/130775975.1

1    Plaintiffs M/A-COM Technology Solutions Holdings, Inc. ("MACOM") and

2  Nitronex, LLC (collectively, "Plaintiffs") file this Complaint for Breach of Contract

3  and Declaratory Judgment against Defendants International Rectifier Corporation

4  ("International Rectifier"), Infineon Technologies Americas Corporation, and

5  Infineon Technologies AG (collectively, "Infineon," and, collectively with

6  International Rectifier, "Defendants"), and, alternatively for Infineon Technologies

7  AG, Intentional Interference with Contract, stating as follows:

8                          **SUMMARY OF THE CASE**

9        1.    Beginning in the late 1990s, Nitronex Corporation developed and

10  pioneered the use of gallium nitride ("GaN") in the design and manufacture of

11  semiconductor chips, focusing specifically on the use of gallium nitride-on-silicon

12  ("GaN-on-Si") for radio frequency ("RF") products.  As a result of its innovations,

13  Nitronex was awarded approximately three dozen United States patents covering

14  the use of gallium nitride in semiconductor products ("Nitronex Patents").

15        2.    In 2010, Nitronex Corporation (the predecessor-in-interest to

16  MACOM and Nitronex, LLC) and International Rectifier (the predecessor to

17  Infineon) entered into an intellectual property purchase agreement and a license

18  agreement under which (a) Nitronex sold its patents relating to GaN-on-Si

19  semiconductor technology to International Rectifier,

3. For several years thereafter, Nitronex (and, after its acquisition of Nitronex, MACOM) and International Rectifier had a cooperative working relationship, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

4. In 2015, however, Infineon Technologies AG, a very large German semiconductor company that produces both power management *and* RF products, purchased International Rectifier. Almost immediately after the completion of its acquisition of International Rectifier, Infineon began to try to "renegotiate" the agreements between Nitronex and International Rectifier ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

5. Infineon was not willing to take no for an answer, however. Thus, on February 2, 2016, Infineon notified MACOM that MACOM had supposedly committed a "material breach" of the license agreement ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Without identifying any specific MACOM GaN-on-SiC products, Infineon further took the position that MACOM's sales of GaN-on-SiC products purportedly infringed one or more unidentified Nitronex Patents, which Infineon was now broadly reading to cover products beyond just GaN-on-Si. On February 11, 2016, MACOM responded that it had not committed any breach of the agreements because the agreements did not prohibit MACOM from selling GaN-on-SiC and that, even if the complained-of MACOM conduct could be considered a breach, it was at most a *de minimis* breach due to the low volume of MACOM's GaN-on-SiC sales, and that

COMPLAINT FOR BREACH OF CONTRACT AND
DECLARATORY JUDGMENT

09277-0057/130775975.1

1    in any event, any alleged breach had been cured because the third-party supplier of

2    the wafers for MACOM's GaN-on-SiC products had notified MACOM that it

3    would no longer manufacture products for MACOM.  MACOM offered to provide

4    Infineon with copies of its sales figures for GaN-on-SiC under an NDA so that

5    Infineon could confirm the *de minimis* sales volumes for those products.  Infineon

6    never responded to MACOM's offer.  Instead, without further communication or

7    discussion with MACOM, Infineon sent MACOM a letter on March 22, 2016,

8    stating that Infineon was "terminating" the license agreement.

9         6.      MACOM has not breached its agreements with Infineon.  Infineon's

10   claim of "breach" is nothing more than a bad faith pretext for Infineon to claim that

11   ███████████████████████████████████████████████████████

12   ████████████████████████████████████ which, of course,

13   has been Infineon's goal all along.

14        7.      ████████████████████████████████████████

15   ████████████████ is without cause or basis and was done in bad faith and thus

16   is itself a material breach of the agreements between MACOM/Nitronex and

17   International Rectifier.  Accordingly, Plaintiffs bring this action seeking a

18   declaration that ████████████████████████████████████████

19   ████████████████████████████████████████████████████

20   ████████████████████████████████████████████

21        Plaintiffs also seek a declaration that its development and sale of GaN-

22   on-Si RF products does not infringe the Nitronex Patents because MACOM's

23   activities ████████.  Plaintiffs also bring claims for breach of contract and breach

24   of the covenant of good faith and fair dealing for Infineon's wrongful and

25   pretextual "termination" of the license agreement.  To the extent that Plaintiffs

26   cannot maintain breach of contract claims against Infineon Technologies AG

27   because that entity has not formally succeeded to International Rectifier's rights,

28

-3-     COMPLAINT FOR BREACH OF CONTRACT AND
        DECLARATORY JUDGMENT

1  Plaintiffs alternatively state a claim for intentional interference with contract under
2  California state law against Infineon Technologies AG.
3         8.      In addition to its breach of the license agreement through its wrongful
4  "termination" of that agreement, Infineon has further breached the agreements
5  between the parties by failing to



12                                              Accordingly, by this Complaint, MACOM
13  also seeks specific performance of

16                                    **PARTIES**
17         9.      Plaintiff MACOM is a Delaware corporation having its principal place
18  of business and headquarters at 100 Chelmsford Street, Lowell, Massachusetts.
19         10.     Plaintiff Nitronex, LLC is a Delaware limited liability company with
20  its principal place of business at 100 Chelmsford Street, Lowell, Massachusetts.
21  Nitronex, LLC is the successor to Nitronex Corporation and is a wholly-owned
22  subsidiary of MACOM.
23         11.     Defendant Infineon Technologies AG is a type of German corporation,
24  an Aktiengesellschaft, having its headquarters and principal place of business at
25  Am Campeon 1-12 85579 Neubiberg, Bavaria, Germany.
26         12.     Defendant Infineon Technologies Americas Corporation is a Delaware
27  corporation having its headquarters and principal place of business at the former
28  International Rectifier headquarters at 101 N. Sepulveda Boulevard, El Segundo,

1    California.  Infineon Technologies Americas Corporation is a subsidiary of Infineon

2    Technologies AG.[1]

3        13.    Defendant International Rectifier Corporation ("International

4    Rectifier") was and/or is a Delaware corporation with its headquarters and a

5    principal place of business at 101 N. Sepulveda Boulevard, El Segundo, California.

6                            **JURISDICTION AND VENUE**

7        14.    This Complaint includes a count for declaratory relief under the patent

8    laws of the United States, 35 U.S.C. §§ 1, *et seq.*

9        15.    Plaintiffs seek declaratory relief under 28 U.S.C. §§ 2201 and 2202.

10       16.    This Court has subject matter jurisdiction over the claims alleged in

11   this action under 28 U.S.C. §§ 1331, 1338, 1367(a), 2201, and 2202 because this

12   Court has exclusive jurisdiction over declaratory judgment claims arising under the

13   patent laws of the United States pursuant to 28 U.S.C. §§ 1331, 1338, 2201, and

14   2202.  This Court has jurisdiction over the remaining claims pleaded in this action

15   that do not arise under the patent laws pursuant to 28 U.S.C. § 1367, insofar as they

16   are related to the other claims in the action and form part of the same case or

17   controversy, as well as pursuant to the Declaratory Judgment Act, 28 U.S.C.

18   § 2201(a).

19

20

21   [1]  On information and belief, based on Infineon's website, Infineon Technologies
     Americas Corporation was formed from the merger of International Rectifier
22   Corporation and Infineon Technologies North America Corporation, such that
     International Rectifier may have ceased to exist as a distinct entity as of October
23   1, 2015.  Infineon has represented that Infineon Technologies Americas
     Corporation now owns the Nitronex Patents and is the "successor in interest of
24   IR."  The United States Patent & Trademark Office ("PTO") records do contain
     an assignment by International Rectifier to Infineon Technologies Americas
25   Corporation of a fraction of the Nitronex Patents.  Nevertheless, the PTO's
     Patent and Trademark Assignment Database currently, as of the date of the
26   filing of this Complaint, continues to list International Rectifier Corporation as
     the assignee of many of the Nitronex Patents, and International Rectifier has
27   given MACOM no formal notice that Infineon has succeeded to its rights under
     its agreements with Nitronex specifically, to the extent that assignment of those
28   rights is even permitted.

1        17.    This Court has personal jurisdiction over Defendants International

2    Rectifier, Infineon Technologies Americas Corporation, and Infineon Technologies

3    AG because Infineon Technologies Americas Corporation and International

4    Rectifier, both subsidiaries of Infineon Technologies AG, maintain a principal place

5    of business in El Segundo, Los Angeles County, California, and Infineon

6    Technologies Americas Corporation and/or International Rectifier also maintain

7    research and development offices in this District in Irvine, California and Torrance,

8    California and a production facility in this District in Temecula, California, and

9    because Defendants have purposefully availed themselves of the privilege of

10   conducting business with residents of this District such that they should reasonably

11   and fairly anticipate being brought into court in this judicial district.  Additionally,

12   Infineon Technologies AG's representatives have participated by phone in the 2015

13   and 2016 negotiations with MACOM regarding the IR/Nitronex agreements, and

14   Infineon Technologies Americas Corporation representatives have told MACOM

15   that their colleagues in Germany have decision-making authority regarding those

16   agreements.

17        18.    Further, both Infineon Technologies Americas Corporation and

18   Infineon Technologies AG representatives have orally stated that "Infineon"

19   generally is the successor to International Rectifier's rights under the agreements in

20   dispute.



COMPLAINT FOR BREACH OF CONTRACT AND
DECLARATORY JUDGMENT

09277-0057/130775975.1

1

2

3

4      19.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1400(b) and

5   1391 for the reasons stated above

6

7      .

8                              **FACTUAL BACKGROUND**

9      20.    The causes of action in this Complaint relate to contractual obligations

10   arising from

11

12

13      21.    Nitronex Corporation was formed and incorporated in February 1999

14   by graduates of the "wide bandgap" semiconductors program at North Carolina

15   State University.  It was headquartered in Durham, North Carolina.

16      22.    A semiconductor is a material that conducts electrical current only

17   under certain conditions, such as when a sufficient voltage is applied to a

18   semiconductor device.  Semiconductors are used extensively in the electronic

19   circuits necessary for all modern electronics.  Wide bandgap semiconductors

20   specifically are made from materials that have higher energy electronic "band gaps"

21   (meaning more energy is required for an electron to transition or "jump" from the

22   valence band to the conduction band, allowing the electron to "flow" through a

23   circuit) than the traditional semiconductor material: silicon.

24      23.    Wide bandgap materials are useful because they can tolerate higher

25   temperatures than traditional semiconductor materials and have a higher power

26   density, meaning that they can handle more power in a smaller device and

27   effectively transmit high-frequency signals.

28

COMPLAINT FOR BREACH OF CONTRACT AND
                                              DECLARATORY JUDGMENT

09277-0057/130775975.1

24.     Some of the most important wide bandgap materials are so-called III-V semiconductors.  These are materials that are made from the combination of an element from row III of the periodic table and an element from row V of the periodic table, as well as alloys of such materials.  Examples include aluminum nitride (made of aluminum and nitrogen), gallium nitride (made of gallium and nitrogen), and gallium arsenide (made of gallium and arsenic), and alloys of such materials.  Other high bandgap materials include silicon carbide (formed of silicon and carbon) and diamond.

25.     Gallium nitride in particular is a highly useful material for creating high power and high-frequency RF devices (*i.e.*, devices that operate at radio frequencies of the electromagnetic spectrum), high-power and small form factor power management devices, and for creating certain types of light emitting diodes, as its wide bandgap and high breakdown characteristics allow it to transmit more power at a higher voltage and frequency, with a smaller form factor, and because gallium nitride and its alloys can naturally emit colors between red and ultra-violet wavelengths without any frequency modification.

26.     Although wide (or "high") bandgap semiconductors, including gallium nitride, have many desirable characteristics, one significant downside to them is that they are significantly more expensive to manufacture than silicon-based semiconductors.

27.     This difference in material cost is especially important for the portion of semiconductor devices known as the "substrate," or the wafer, which is the base on which most electronic devices (transistors, diodes, integrated circuits, etc.) are created.

28.     While silicon substrates or wafers are a ubiquitous and relatively inexpensive commodity in today's economy, wafers made of more exotic high-bandgap materials, such as gallium nitride, silicon carbide, or diamond can be hundreds of times more expensive than traditional silicon wafers.

29.     Because of this difference in expense, it is highly desirable to form epitaxial (*i.e.*, deposited) layers of wide bandgap materials, including gallium nitride, on less expensive substrates, such as silicon, to the extent possible.

30.     There are significant technical difficulties, however, in building certain wide bandgap semiconductors (including GaN) on silicon substrates.  This is because the mismatch in the crystalline structure between, for example, gallium nitride and silicon leads to stress between the deposited gallium nitride material and the silicon substrate—and consequently the generation of crystalline lattice defects.  Additionally, the thermal expansion coefficients (a representation of the amount by which a material expands as a function of temperature) between GaN and silicon are mismatched, which can result in additional stresses in the GaN-on-Si wafers, when heated or cooled, causing unacceptable wafer warp and bow or causing devices to crack.  These problems reduce the yield (the percentage of functioning devices) for gallium nitride devices produced on silicon wafers.

31.     One solution to the crystalline mismatch problem is to simply use a substrate that has less mismatch with gallium nitride.  For example, one could use silicon carbide ("SiC"), which has a crystalline structure that is much closer to gallium nitride's structure, as the substrate ("GaN-on-SiC").  Alternatively, one could use gallium nitride as both the substrate material and the epitaxial layer ("GaN-on-GaN"), so that there is no mismatch.  The disadvantage of using silicon carbide or gallium nitride substrates is that the cost of these materials is much higher than the cost of silicon substrates, leading to higher overall cost devices and an ultimate price point unsuited to many target markets.

32.     Nitronex was an innovative startup company that pioneered technologies that enabled the creation of high-performance GaN-on-Si semiconductor solutions.  Specifically Nitronex focused on high-performance gallium nitride devices formed on silicon substrates for RF applications.

COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY JUDGMENT

09277-0057/130775975.1

## NITRONEX PIONEERED NUMEROUS FOUNDATIONAL GALLIUM NITRIDE TECHNOLOGIES

33.     Critical to Nitronex's success in creating gallium nitride semiconductor devices was the development of a method for reducing the effects of the physical crystal lattice and thermal expansion mismatches between gallium nitride active layers and the silicon substrates that Nitronex desired to use as the base for its devices.

34.     Rather than forming gallium nitride layers directly on the silicon substrate, which had been unsuccessful, Nitronex instead placed a graded "transition layer" between the silicon substrate and the active gallium nitride layers. This transition layer mitigates the strain caused by the mismatch in crystalline lattice spacing and thermal expansion coefficients between the gallium nitride devices and the silicon substrate below.

35.     Nitronex used this solution and developed a proprietary GaN-on-Si manufacturing process, called SIGANTIC® process, which solved many of the problems associated with GaN-on-Si devices, allowing high-performance GaN semiconductors to be formed on cost-effective silicon substrates.  Nitronex used the SIGANTIC® process to produce numerous RF GaN-on-Si devices.

36.     Nitronex's technology was groundbreaking and ahead of its time.

37.     Nitronex not only pioneered a solution to solve the crystalline and thermal expansion mismatch between gallium nitride devices and silicon substrates, but also developed other important technologies that improved the functionality of gallium nitride RF devices.

38.     Using its technology, Nitronex first demonstrated the capability to form High Electron Mobility Transistors on 4-inch GaN-on-Si wafers in 2001. This proved that Nitronex's technology worked to create transistor devices using gallium nitride active layers formed on silicon substrates.

COMPLAINT FOR BREACH OF CONTRACT AND
DECLARATORY JUDGMENT

09277-0057/130775975.1

39.     Later in 2001, Nitronex also demonstrated that its technology worked for another important technology application of gallium nitride materials, producing GaN-on-Si light emitting diode ("LED") devices.

40.     Nitronex also pioneered the use of GaN-on-Si devices in high-frequency RF products.  Accurately predicting the future, Nitronex developed GaN-on-Si RF products specifically designed for mobile communications.  For example, in 2003, Nitronex began sending sample GaN-on-Si RF products designed for the WCDMA standard to customers.  In 2004, Nitronex demonstrated the first-ever GaN-on-Si monolithic microwave integrated circuit ("MMIC"), a type of circuit that is often used in cellular devices to operate in a portion of the RF spectrum known as the microwave range (300 MHz to 300 GHz).  Following that, in 2005, Nitronex introduced its GaN-on-Si product line for the WiMAX standard.

41.     Nitronex's successes in creating GaN-on-Si devices and innovations and the potential for these technologies to improve the functionality of various technology fields, including RF and satellite communications, led to recognition and funding from NASA and the Department of Defense.  NASA and the Department of Defense awarded Nitronex twenty-three grants, amounting to more than $9,000,000 in total funding between 1999 and 2012.

42.     Nitronex also developed a significant patent portfolio based on its innovations in GaN-on-Si technology.

43.     Nitronex's first patent, U.S. Patent 6,611,002, entitled "Gallium Nitride Material Devices and Methods Including Backside Vias," issued on August 26, 2003.  Shortly thereafter, on September 9, 2003, Nitronex received its second patent, U.S. Patent number 6,617,060, entitled "Gallium Nitride Materials and Methods."

44.     To date, more than thirty-five United States patents have issued based on the technology that was developed by Nitronex.

COMPLAINT FOR BREACH OF CONTRACT AND
DECLARATORY JUDGMENT

09277-0057/130775975.1

## NITRONEX AND INTERNATIONAL RECTIFIER FORM A WORKING RELATIONSHIP

45.    Early in its existence, Nitronex began exploring the prospect of licensing some aspects of its groundbreaking technology to raise capital.

46.    At the same time, however, Nitronex wanted to ██████████████ ██████████████████████████████████████████████████████████ ███████████████████████████████████████████.

47.    Nitronex therefore sought a licensing and collaboration partner who desired rights to use GaN-on-Si in other fields of use besides RF.

48.    As of 2004, International Rectifier was a well-established company in the power management space.  By 2004, International Rectifier was also working to develop and to introduce gallium nitride power management devices specifically, having recently acquired GaNRose, a company focused on gallium nitride devices, but it was encountering technical challenges that limited its ability to produce functioning GaN-on-Si power management products in bulk.  It needed help to break through these challenges to make its products successful.

49.    In 2004, each party found what it was seeking.  Nitronex found funding and a partner who was focused on the power management field (not RF), and International Rectifier found the expertise in executing on GaN-on-Si products that it was seeking.

50.    Specifically, in early 2004, International Rectifier approached Nitronex to evaluate the Nitronex GaN-on-Si technology for potential use in the GaN-based power management market. ██████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

51.    ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████



52.

53.     Throughout 2005 and into 2006,

54.     Additionally, Nitronex

. This work was the basis for one of the recently-issued Nitronex Patents—U.S. Patent No. 9,157,169 (which was filed provisionally on September 14, 2005 as application No. 60/717,102).  Nitronex and International Rectifier partnered in a working business relationship that lasted for years thereafter, with each party operating

. The relationship was valued so much by International Rectifier that, prior to Nitronex closing on a series A-1 Preferred Stock Financing in May of 2006 with a new investor syndicate led by Alloy Ventures, International Rectifier made a failed bid at acquiring Nitronex, which was turned down by the Nitronex Board of Directors in favor of new venture financing.

-13-     COMPLAINT FOR BREACH OF CONTRACT AND
DECLARATORY JUDGMENT

## TRANSFER OF PATENTS FROM NITRONEX TO INTERNATIONAL RECTIFIER IN 2010.

55.     In 2008, with the benefit of Nitronex's patented technology and knowhow, International Rectifier began commercially selling GaN-on-Si power devices, announcing that they were offering this technology as their "GaNpowIR" products.

56.     By 2010, International Rectifier was producing significant quantities of its GaN-on-Si power devices, its devices having won several awards in 2009 for its GaNpowIR technology.

57.     By 2010, Nitronex was producing commercial GaN-on-Si RF products, with most of Nitronex's sales to aerospace and defense customers. Nitronex's technology remained ahead of the mainstream, but Nitronex again needed an influx of money to continue operating its business.

58.     In 2010, Nitronex again sought to raise funding.  In doing so, one of Nitronex's main goals was

59.

## THE 2010 IP PURCHASE AGREEMENT

60.     The 2010 IP Purchase Agreement provides that

-14-     COMPLAINT FOR BREACH OF CONTRACT AND
DECLARATORY JUDGMENT



61.

62.

COMPLAINT FOR BREACH OF CONTRACT AND
DECLARATORY JUDGMENT

09277-0057/130775975.1



63.

64.

-16-    COMPLAINT FOR BREACH OF CONTRACT AND
DECLARATORY JUDGMENT

unlimited



65.     Since the closing of the 2010 IP Purchase Agreement, International Rectifier has filed at least fifteen more applications related to the thirty-two United States patents and applications that claim priority to such Nitronex filings and has received at least ten patents based on the related applications that it has filed.

66.     Together, the thirty-two United States patents and applications, as well as the related applications later filed by International Rectifier, and any additional patents that issued from these applications, comprise the "Nitronex Patents," including specifically at least U.S. Patents and U.S. Patent Applications Nos.: 6,649,287, 6,617,060, 8,105,921, 8,344,417, 8,592,862, 8,937,335, 8,928,034, 8,928,035, 9,064,775, 14/579,738, 14/580,064, 14/743,218, 14/926,279, 6,611,002, 7,233,028, 6,956,250, 7,135,720, 7,352,016, 7,569,871, 7,994,540, 7,071,498, 7,361,946, 7,339,205, 7,352,015, 12/023,480, 8,748,298, 7,247,889, 7,365,374, 7,791,106, 7,566,913, 8,067,786, 8,343,856, 8,859,400, 8,350,288, 8,680,570,

COMPLAINT FOR BREACH OF CONTRACT AND
DECLARATORY JUDGMENT

09277-0057/130775975.1

1    8,946,765, 7,687,827, 8,368,117, 11/607,129, 8,026,596, 7,745,848, 8,026,581,

2    8,358,005, 8,343,824, 8,629,453, 11/261,942, and 11/543,010.

3         67.



**THE 2010 LICENSE AGREEMENT**

68.    The 2010 License Agreement,

69.    The 2010 License Agreement further provides that

COMPLAINT FOR BREACH OF CONTRACT AND
DECLARATORY JUDGMENT

09277-0057/130775975.1



70.

71.

-19-    COMPLAINT FOR BREACH OF CONTRACT AND
DECLARATORY JUDGMENT

1
2
3    72.
4
5
6
7
8
9
10   73.
11
12
13
14
15
16
17
18   74.
19
20
21
22   75.
23
24



25   **MACOM ACQUIRES NITRONEX**

26    76.    In June of 2012, Nitronex Corporation was acquired by investment

27   firm GaAs Labs, a company then having a common controlling stockholder with

28

COMPLAINT FOR BREACH OF CONTRACT AND
                                    DECLARATORY JUDGMENT

09277-0057/130775975.1

1    MACOM.  Nitronex Corporation was thereafter converted from a corporation to a

2    limited liability company and renamed Nitronex, LLC.

3         77.    MACOM is a semiconductor company that designs and manufactures

4    custom devices, integrated circuits, components, modules, and assemblies for high-

5    performance applications, including satellite, radar, wireless networks and mobile

6    devices, and is a leading provider of high performance analog RF and photonic

7    semiconductor products.

8         78.    On February 13, 2014, MACOM announced the purchase of Nitronex,

9    LLC from GaAs Labs, and Nitronex, LLC became a wholly-owned subsidiary of

10   MACOM.

11        79.    MACOM acquired Nitronex because it wanted to invest its business

12   and product development efforts on the promising GaN-on-Si market.  In other

13   words, MACOM recognized that GaN-on-Si RF devices have a lower cost structure

14   than other competing technologies, making them suitable for cost-sensitive

15   commercial applications, such as mobile wireless communications network

16   basestations and commercial RF applications.

17        80.    MACOM expects GaN-on-Si RF devices will be a core component of

18   its business in years to come and further believes GaN-on-Si devices may be the

19   future of commercial RF applications, bringing the high-performance of gallium

20   nitride devices together with the lower cost structure of silicon substrates, providing

21   significantly improved performance as compared to the silicon LDMOS

22   technologies that currently are common in RF chips used in mobile wireless

23   communications network basestations.  Industry analysts project that GaN-on-Si

24   devices will capture a significant portion of the RF and cellular market—that that

25   this market will grow to *hundreds of millions of dollars in sales per year* by 2020.

26        81.    Nitronex assigned certain of its rights under the 2010 IP Purchase

27   Agreement to MACOM.  It also sublicensed its rights under the 2010 License

28   Agreement to MACOM.

-21-      COMPLAINT FOR BREACH OF CONTRACT AND
DECLARATORY JUDGMENT

09277-0057/130775975.1

82.     After Nitronex was acquired by GaAs Labs and later MACOM, Nitronex, and then MACOM, continued—without problems—to work in parallel with International Rectifier toward achieving common goals with respect to the Nitronex Patents and GaN-on-Si technologies. ███████████████ ████████████████████████████████████████████████

### INFINEON ACQUIRES INTERNATIONAL RECTIFIER

83.     On August 20, 2014, Infineon Technologies AG and International Rectifier announced that they had entered into an agreement for Infineon to acquire International Rectifier.

84.     On information and belief, Infineon historically has produced both power management and RF semiconductor devices using technologies other than GaN-on-Si. Infineon's acquisition of International Rectifier signaled its desire to expand its product offerings into GaN-on-Si. Indeed, Infineon's announcement of the acquisition specifically highlighted the important role of GaN-on-Si technology for Infineon:

> Integration complements Infineon's expertise in power semiconductors and adds system know-how in power conversion, while expanding its expertise in compound semiconductors (Gallium Nitride on Silicon) and driving greater economies of scale in production.
>
> **********************************************
>
> With International Rectifier, Infineon acquires an advanced manufacturer in Gallium Nitride on Silicon (GaN) based power semiconductors. This combination will accelerate and solidify Infineon's position in GaN discretes and GaN system solutions, improving its ability to pursue this strategically important technology platform with significant future growth potential.
>
> The transaction will result in a broad range of products creating a comprehensive provider in the market for silicon-, silicon-carbide- and gallium-nitride-based power devices and integrated circuits (ICs).

*See* http://www.infineon.com/cms/en/about-infineon/press/press-releases/2014/INFXX201408-056.html.

09277-0057/130775975.1

85.     Similarly, an Infineon press release related to the acquisition described International Rectifier as:

> International Rectifier is highly complementary to Infineon: the combined company gains greater scope in product portfolio and regions, especially with small and medium enterprise customers in the US and Asia. The merger taps additional system know-how in power management. It expands the expertise in power semiconductors, also combining leading knowledge in compound semiconductors, namely Gallium Nitride. Furthermore, the acquisition will drive greater economies of scale in production, strengthening the competitiveness of the combined company.

*See* http://www.infineon.com/cms/en/about-infineon/press/press-releases/2015/INFXX201501-020.html.

86.     On January 13, 2015, Infineon Technologies AG announced that it had closed the acquisition of International Rectifier.

87.     Although International Rectifier may have ceased to exist as an operating entity in 2015, International Rectifier manufactured power management semiconductor devices and products prior to and for at least for some time after its acquisition by Infineon, on information and belief, including GaN-on-Si power management products. Infineon has continued to produce GaN-on-Si power management products after the acquisition.

88.     United States PTO records continue to list International Rectifier as the current assignee of most of the Nitronex Patents.

89.     On information and belief, Infineon acquired International Rectifier to not only continue producing the GaN-on-Si power devices that International Rectifier already had in its portfolio at the time, but also to expand into MACOM's (and formerly Nitronex's) core GaN-on-Si business area, RF products.

09277-0057/130775975.1

## INFINEON ATTEMPTS TO DISRUPT AND RENEGOTIATE THE IR/NITRONEX AGREEMENTS

90.     Almost immediately after Infineon acquired International Rectifier, it began angling to disrupt or "renegotiate" the 2010 Nitronex/International Rectifier Agreements.

91.     For instance, only two weeks after the acquisition had closed, the Vice President, General Counsel, and Secretary of the newly acquired International Rectifier and Infineon Technologies Americas Corporation sent MACOM a letter complaining about the contents of a year-old press release that MACOM had previously issued without any protest (or even comment) by International Rectifier. That press release, dated April 1, 2014, merely announced that MACOM had reached an agreement with a supplier of GaN-on-Si wafers for RF applications that included a license to MACOM's intellectual property rights

92.

93.     Though these accusations were completely without basis, as MACOM explained in a response letter to Infineon and International Rectifier, Infineon and International Rectifier also sent a letter to MACOM's supplier, complaining of the potential "proliferation of [International Rectifier's] patented technology" and asking MACOM's supplier to discuss "the legal basis upon which [it] intends to operate." This was the first, but not the last instance, of Infineon making pretextual and contrived arguments and threats in an illegitimate attempt to "chill" MACOM's legitimate practice of its right in accordance with the terms of the Nitronex/International Rectifier Agreements.

94.     On information and belief, Infineon's predominant purpose in sending these letters was to interfere with MACOM's abilities to produce GaN-on-Si RF devices and to disrupt MACOM's ongoing business relationship with its supplier.

95.    After Infineon's letters to MACOM and its supplier, the relationship between MACOM, on the one hand, and Infineon and its subsidiaries, on the other, became contentious, even though Infineon never further pursued (or even referred to) the spurious allegations made in its January 2015 letters to MACOM and its supplier.

96.    For instance, later during 2015, MACOM repeatedly tried to engage with Infineon and International Rectifier regarding enforcement of the Nitronex Patents against ongoing third-party infringement.  The parties had several discussions on the subject, but Infineon ultimately was not interested in working with MACOM in good faith on this topic.

97.    Instead, Infineon and International Rectifier repeatedly raised the prospect of renegotiating the 2010 License and IP Purchase Agreements ████████ ██████████████████████████████████████████.  Although MACOM was willing to discuss possible mutually-beneficial modifications to the Nitronex-IR contracts, it repeatedly made clear that ████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████.

98.    Infineon's representatives on multiple phone conversations regarding the 2010 License and IP Purchase Agreements included Infineon in-house lawyers in Germany, who, on information and belief, are employed by Infineon Technologies AG.  Indeed, in several instances, phone calls were specifically scheduled at times early in the day Pacific time to accommodate the time change so that these Infineon AG lawyers in Germany could participate.  In some instances, only MACOM's counsel and Infineon AG in-house lawyers were on calls to discuss issues relating to the International Rectifier/Nitronex agreements.  Further, Infineon Technologies America Corporation's in-house lawyers in the U.S. indicated on several occasions that decisions regarding patent matters were controlled by Infineon lawyers in Germany.  On information and belief, Infineon

COMPLAINT FOR BREACH OF CONTRACT AND
DECLARATORY JUDGMENT

09277-0057/130775975.1

1    Technologies AG is the decision-maker with respect to its subsidiaries' activities
2    relating to the Nitronex Patents and the 2010 IP Purchase and License Agreements.
3         99.    On its calls with MACOM, Infineon's representatives stated, without
4    providing any specifics or identifying particular patents, that Infineon believed
5    MACOM was infringing unidentified Nitronex Patents by selling gallium nitride-
6    on-silicon *carbide* ("GaN-on-SiC")[2] devices.  MACOM had not previously been
7    aware that Infineon would take the position that the Nitronex Patents can be read to
8    cover not just GaN-on-Si products, but also GaN-on-SiC products.
9         100.   To the best of MACOM's knowledge, neither International Rectifier
10   nor Infineon has ever previously (or since) claimed that any company selling GaN-
11   on-SiC products infringe the Nitronex Patents other than MACOM.  This is true
12   even though other sellers of these products have both far larger sales than MACOM
13   and have been making those sales publicly for many more years than MACOM.
14        101.   Beginning in 2011, well before its acquisition of Nitronex—and
15   separate and apart from the GaN-on-Si product lines it acquired from Nitronex—
16   MACOM has at various times sold and offered to sell GaN-on-SiC products.  Those
17   MACOM GaN-on-SiC products have historically used semiconductor wafers
18   supplied by a third party.  MACOM's sales from these product lines have always
19   been low in volume and revenue, and MACOM's GaN-on-SiC third-party wafer
20   supplier notified MACOM in 2015 (completely separate from any of MACOM's
21   discussions with Infineon about the Nitronex/IR agreements) that it would no
22   longer supply the wafers necessary to the manufacture of MACOM's GaN-on-SiC
23   products.
24        102.   Infineon's allegations regarding GaN-on-SiC therefore coincidentally
25   came at a time when MACOM's existing GaN-on-SiC products were being
26   discontinued anyway.

27   _____
     [2]  GaN-on-SiC must be distinguished from GaN-on-Si, which is a different
28        technology.

                                    -26-      COMPLAINT FOR BREACH OF CONTRACT AND
                                              DECLARATORY JUDGMENT

1       103.   Moreover, International Rectifier never complained about MACOM's

2   limited GaN-on-SiC sales prior to being acquired by Infineon.

3       104.   MACOM has repeatedly informed Infineon through both legal and

4   business channels of its low sales and the fact that its current GaN-on-SiC products

5   were being discontinued due to loss of its third-party supplier.  MACOM has

6   further repeatedly offered to share its sales figures with International Rectifier

7   under an NDA—and even provided a draft of an NDA to Infineon.  Infineon has

8   not expressed any interest in reviewing MACOM's sales data.

9    

10       **INFINEON ATTEMPTS TO SELL A PORTION OF THE NITRONEX PATENTS TO AN UNDISCLOSED BUYER**

11       105.   In late 2015, Infineon informed MACOM that International Rectifier

12   and/or Infineon was contemplating assigning a small number of the Nitronex

13   Patents (not the entire portfolio) to an undisclosed third party for an undisclosed

14   sum.

15       106.   Infineon took the position that International Rectifier and/or Infineon

16   did not need MACOM's consent to proceed with the assignment,



17

18

19

20

21

22

23

24

25

26

27

28



107.

108.

109.

110.

111.

-28-

COMPLAINT FOR BREACH OF CONTRACT AND
DECLARATORY JUDGMENT

09277-0057/130775975.1



112.

113.

114.

115.   Defendants have not assigned U.S. Patents 6,649,287, 6,617,060,
8,105,921, 8,344,417, and 8,592,862 to MACOM.

### INFINEON PURPORTS TO TERMINATE THE 2010 LICENSE AGREEMENT

116.   In response to MACOM's notice of third-party infringement, Infineon
again raised MACOM's GaN-on-SiC sales, now in a formal letter to MACOM
dated February 2, 2016.

-29-    COMPLAINT FOR BREACH OF CONTRACT AND
DECLARATORY JUDGMENT

1      117.   Infineon still did not identify any specific MACOM products that it
2  alleged were infringing, any specific patents it alleged were infringed (much less
3  any specific claims in those patents), leaving its allegations of infringement vague
4  and ambiguous.



COMPLAINT FOR BREACH OF CONTRACT AND
DECLARATORY JUDGMENT

09277-0057/130775975.1



121.

122.   Rather than engaging with MACOM regarding these issues, Infineon simply purported to terminate the 2010 License Agreement.  Notably, in Infineon's response letter, dated March 22, 2016, Infineon for the first time finally identified specific patents and a single MACOM product that Infineon alleged to be infringing, a move seemingly calculate to allow MACOM no time for evaluation and response before Infineon's pretextual "termination" had already been effected.

123.



124.

125.   MACOM has been and continues to produce and offer to sell GaN-on-Si RF products.

**FIRST CLAIM FOR RELIEF**
**(Breach of Contract – Wrongful Termination of 2010 License Agreement)**

126.   The allegations contained in Paragraphs 1 through 125 are incorporated by reference herein.

127.   Nitronex Corporation and International Rectifier Corporation entered into the 2010 License Agreement.

128.   The 2010 License Agreement is valid contract, supported by consideration under California Civil Code Sections 1550, *et seq.*

129.   Nitronex Corporation and its successors-in-interest Nitronex, LLC and MACOM have fully and/or substantially performed their duties under the 2010 License Agreement.

130.   MACOM has not breached the 2010 License Agreement ███████

███████████

131.   In the alternative, MACOM has not materially breached 2010 License Agreement ███████████

132.   Further in the alternative, MACOM cured any alleged breach.

133.   Defendants have breached the 2010 License Agreement by purporting to terminate it.

134.   Defendants' purported termination of the 2010 License Agreement was wrongful, pretextual, and done in bad faith.

135.   ████████████████████████████████

136.   ████████████████████████████████

-32-   COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY JUDGMENT

09277-0057/130775975.1

1   ██████████████████████████████████████████

2   ████████████████

3       137.   Plaintiffs are entitled to relief, including damages, specific

4   performance and preventive relief, as set forth below.

5

6                      **SECOND CLAIM FOR RELIEF**
        **(Declaratory Judgment – 2010 License Agreement Not Terminated)**

7       138.   The allegations contained in Paragraphs 1 through 137 are

8   incorporated by reference herein.

9       139.   An actual and justiciable case or controversy exists between Plaintiffs

10  and Defendants regarding the 2010 License Agreement and its purported

11  termination by Defendants.

12      140.   Defendants have purported to terminate the 2010 License Agreement.

13      141.   Plaintiffs have not breached the 2010 License Agreement, much less

14  materially breached it.  And, in any event, any breach has been cured.  Thus,

15  Defendants had no right to terminate the 2010 License Agreement.

16      142.   Plaintiffs are entitled to a judgment declaring that Defendants (a) were

17  not entitled to terminate the 2010 License Agreement, (b) the purported termination

18  of the 2010 License is null and void, and (c) that the 2010 License Agreement is

19  still valid and binding as to Plaintiffs and Defendants, ████████████████████

20  ████████████████████████████████████████████

21  ██████████████████████████

22                        **THIRD CLAIM FOR RELIEF**
        **(Breach of Covenant of Good Faith and Fair Dealing – 2010 License and IP**

23                              **Purchase Agreements)**

24      143.   The allegations contained in Paragraphs 1 through 143 are

25  incorporated by reference herein.

26      144.   Nitronex Corporation and International Rectifier Corporation entered

27  into the 2010 License Agreement.

28

1    145.   The 2010 License Agreement is valid contract, supported by

2    consideration under California Civil Code Sections 1550, *et seq.*

3    146.   Nitronex Corporation and International Rectifier Corporation entered

4    into the 2010 IP Purchase Agreement.

5    147.   The 2010 IP Purchase Agreement is valid contract, supported by

6    consideration under California Civil Code Sections 1550, *et seq.*

7    148.   Nitronex Corporation and its successors-in-interest Nitronex, LLC and

8    MACOM have fully and/or substantially performed their duties under the 2010 IP

9    Purchase and License Agreements.

10   149.   Defendants have breached the implied covenant of good faith and fair

11   dealing governing the 2010 License Agreement by wrongfully, pretextually, and in

12   bad faith attempting to terminate the 2010 License Agreement,

13   

14   150.   Defendants have breached the implied covenant of good faith and fair

15   dealing governing the 2010 IP Purchase Agreement

16   

17   

18   

19   151.

20   

21   

22   

23   

24   152.

25   

26   

27   

28

1   ████████████████████████████████████████████
2   ████████████

3          153.   Plaintiffs are entitled to relief, including damages, specific

4   performance and preventive relief, as set forth below.

5                          **FOURTH CLAIM FOR RELIEF**
6   **(Declaratory Judgment – Non-Infringement of the Nitronex Patents by**
    **MACOM's GaN-on-Si RF Products)**

7          154.   The allegations contained in Paragraphs 1 through 153 are

8   incorporated by reference herein.

9          155.   An actual and justiciable controversy exists between Plaintiffs and

10  Defendants concerning alleged infringement of the Nitronex Patents by MACOM's

11  GaN-on-Si RF products.

12         156.   MACOM has been and continues to produce GaN-on-Si RF products.

13         157.   ████████████████████████████████████

14  ██████████████████████████████████████████████

15         158.   ████████████████████████████████████

16  ██████████████████████████████████████████████

17  ██████████

18         159.   ████████████████████████████████████

19  ████████████████████████████████████

20         160.   ████████████████████████████████████

21  ██████████████████████████████████████████████

22  ██████████████████████████████████████

23         161.   ████████████████████████████████████

24  ██████████████████████████████████████████████

25  ██████████████████████████████████████████████

26  ████████████████████████████████████

27

28

COMPLAINT FOR BREACH OF CONTRACT AND
                                              DECLARATORY JUDGMENT

09277-0057/130775975.1

162.  MACOM is entitled to a judgment declaring that its activities in designing, testing, use, manufacture, having manufactured, offering for sale, selling and/or importing GaN-on-Si RF products do not infringe the Nitronex Patents.

**FIFTH CLAIM FOR RELIEF**
**(Breach of Contract – Breach of 2010 IP Purchase Agreement)**

163.  The allegations contained in Paragraphs 1 through 162 are incorporated by reference herein.

164.  Nitronex Corporation and International Rectifier Corporation entered into the 2010 IP Purchase Agreement.

165.  The 2010 IP Purchase Agreement is valid contract, supported by consideration under California Civil Code Sections 1550, *et seq.*

166.  Nitronex Corporation and its successors-in-interest Nitronex, LLC and MACOM have fully and/or substantially performed their duties under the 2010 IP Purchase Agreement, ██████████████████████████████████████ ████████████████████████████████ Neither Infineon nor International Rectifier has claimed that MACOM or Nitronex have breached the IP Purchase Agreement in any way.

167.  Defendants have breached the 2010 IP Purchase Agreement by failing



168.

COMPLAINT FOR BREACH OF CONTRACT AND
DECLARATORY JUDGMENT

09277-0057/130775975.1

1  ████████████████████████████████████████████████████

2  ████████████

3        169.   Plaintiffs are entitled to relief, including damages and specific

4  performance, as set forth below.

5                          **SIXTH CLAIM FOR RELIEF**

6    **(Declaratory Judgment – No Sale of Nitronex Patents By Infineon or
        International Rectifier)**

7        170.   The allegations contained in Paragraphs 1 through 169 are

8  incorporated by reference herein.

9        171.   An actual and justiciable case or controversy exists between Plaintiffs

10  and Defendants regarding the 2010 IP Purchase Agreement and its requirements

11  ███████████████████████████████████.

12        172.   Defendants have attempted to, without Plaintiffs' consent, enter into a

13  transaction whereby Defendants would transfer some of the Nitronex Patents to a

14  third party.  They have additionally taken the position that they can proceed with a

15  transfer at any time that they wish, without MACOM's consent ███████████████

16  █████████████████████████████████.

17    173.  ████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████

23    174.  ████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████

26    175.  ████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████

28  ████████████████████████████████████████████████████████

COMPLAINT FOR BREACH OF CONTRACT AND
                                DECLARATORY JUDGMENT

09277-0057/130775975.1

176.    MACOM is entitled to a judgment declaring that Defendants cannot transfer any of the Nitronex Patents to a third party without Plaintiffs' consent.  In the alternative, if Defendants are entitled to transfer the Nitronex Patents without MACOM's consent, MACOM is entitled to a declaration as to the effect that such a transfer has on the obligations owed by International Rectifier and Infineon to MACOM under the 2010 IP Purchase and License Agreements, the rights of any third-party purchaser under those agreements, ███████████████████████
████████████████████.

### SEVENTH CLAIM FOR RELIEF
#### (Alternative Claim against Infineon AG for
#### Intentional Interference With Contractual Relations)

177.    The allegations contained in Paragraphs 1 through 176 are incorporated by reference herein.

178.    Plaintiffs had valid contracts with International Rectifier, including the 2010 IP Purchase Agreement and 2010 License Agreement.

179.    Infineon Technologies AG has either succeeded to those contracts or, alternatively, is the parent corporation to International Rectifier and/or International Technologies America Corporation, and therefore had knowledge of these Agreements and the ability to control and direct International Rectifier's and/or Infineon Technologies Americas Corporation's performance or non-performance under those Agreements.[3]  Infineon Technologies AG was fully aware of the 2010 IP Purchase and License Agreements and their terms.  Indeed, Infineon Technologies AG representatives participated in numerous phone conferences with

---

[3]    To the extent that Infineon Technologies AG succeeded to International Rectifier's contracts, Infineon Technologies AG is subject to MACOM's claims of breach of contract.  To the extent that Infineon AG did not succeed to those contracts, it has intentionally interfered with them and is subject to this alternative seventh claim for relief.

1    MACOM in which they discussed in detail the provisions of the 2010 IP Purchase

2    and License Agreements.

3       180. On information and belief, after it acquired International Rectifier,

4    Infineon Technologies AG embarked on an intentional and wrongful course of

5    conduct to interfere with and disrupt International Rectifier's and/or International

6    Technologies Americas Corporation's performance of the 2010 IP Purchase and

7    License Agreements through its instructions to International Rectifier and/or

8    Infineon Technologies America Corporation to, among other things: ███████

9    ████████████████████████████████████████

10    ███████████████████ make baseless and pretextual claims that

11    MACOM had breached the Agreements; send MACOM a "notice of termination"

12    of the License Agreement, when, in fact, there was no basis to terminate the

13    License Agreement; and ████████████████████████████████

14    █████████████.

15       181. Infineon Technologies AG's actions and instructions to Infineon

16    Technologies Americas Corporation and/or International Rectifier wrongfully

17    induced them to claim that MACOM had breached the 2010 License Agreement

18    and to purport to terminate it. Infineon Technologies AG's actions were improper,

19    without justification, and taken in bad faith and via improper means.

20       182. On information and belief, Infineon Technologies AG's actions were

21    taken with the predominant intent to harm Plaintiff's contractual rights.



22       183. ████████████████████████████████████

23    ██████████████████████████████████████

24       184. ████████████████████████████████████

25    ██████████████████████████████████████

26    ██████████████████████████████████████

27    ███████████████████████

28

COMPLAINT FOR BREACH OF CONTRACT AND
DECLARATORY JUDGMENT

09277-0057/130775975.1

185. ████████████████████████████████

186.   Plaintiffs are entitled to relief, including damages and injunctive relief, as set forth below.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs M/A-COM Technology Solutions Holdings, Inc. and Nitronex, LLC respectfully request that this Court enter judgment against Defendants Infineon Technologies AG, Infineon Technologies Americas Corporation, and International Rectifier Corporation as follows:

A.   A declaration that (a) Defendants were not entitled to terminate the 2010 License Agreement, (b) the purported termination of the 2010 License Agreement is null and void, and (c) the 2010 License Agreement is still valid and binding as to Plaintiffs and Defendants;

B.   A declaration that MACOM's GaN-on-Si RF products and activities do not infringe the Nitronex Patents ████████████ ████;

C.   An order requiring Defendants to specifically perform their obligations pursuant to the 2010 License Agreement;

D.   An injunction preventing Defendants from terminating the 2010 License Agreement for actions that do not constitute material breaches, including MACOM's sales of GaN-on-SiC devices;

E.   ██████████████████████████████

F.   Damages to compensate the losses suffered by Plaintiffs due to

COMPLAINT FOR BREACH OF CONTRACT AND
DECLARATORY JUDGMENT

09277-0057/130775975.1

| | | |
|---|---|---|
| 1 | | Defendants' breaches of contract; |
| 2 | G. | An order requiring Defendants to specifically perform their obligations |
| 3 | | pursuant to the 2010 IP Purchase Agreement; |
| 4 | H. | An order requiring Defendants to assign U.S. Patents 6,649,287, |
| 5 | | 6,617,060, 8,105,921, 8,344,417, and 8,592,862 to Plaintiffs; |
| 6 | I. | A declaration that Defendants cannot transfer any Nitronex Patent |
| 7 | | without MACOM's consent; |
| 8 | J. | An injunction preventing Infineon AG's continued interference with |
| 9 | | MACOM's contractual relationships with Infineon AG's affiliates; |
| 10 | K. | For attorney's fees and costs; |
| 11 | L. | For pre-judgment interest on liquidated sums; |
| 12 | M. | For post-judgment interest on any money judgment until paid in full; |
| 13 | | and |
| 14 | N. | Such other and further relief as this Court or a jury may deem just and |
| 15 | | proper. |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

COMPLAINT FOR BREACH OF CONTRACT AND
DECLARATORY JUDGMENT

09277-0057/130775975.1

DATED:  April 26, 2016

PERKINS COIE LLP

By: _Lara J. Dueppen_____

Lara J. Dueppen, Bar No. 259075
LDueppen@perkinscoie.com
PERKINS COIE LLP
1888 Century Park East, Suite 1700
Los Angeles, CA 90067-1721
Telephone:  310.788.9900
Facsimile:  310.788.3399

Jonathan M. James (*pro hac vice* to be filed)
JJames@perkinscoie.com
PERKINS COIE LLP
2901 North Central Avenue, Suite 2000
Phoenix, AZ  85012-2788
Telephone:  602.351.8000
Facsimile:  602.648.7000

Amanda Tessar (*pro hac vice* pending)
ATessar@perkinscoie.com
Elizabeth Banzhoff (*pro hac vice* to be filed)
EBanzhoff@perkinscoie.com
PERKINS COIE LLP
1900 Sixteenth Street, Suite 1400
Denver, CO  80202-5255
Telephone:  303.291.2300
Facsimile:  303.291.2400

Philip A. Morin, Bar No. 256864
PMorin@perkinscoie.com
PERKINS COIE LLP
11988 El Camino Real, Suite 350
San Diego, CA  92130-2594
Telephone:  858.720.5700
Facsimile:  858.720.5799

Daniel T. Keese, Bar No. 280683
DKeese@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

ATTORNEYS FOR PLAINTIFFS

-42-     COMPLAINT FOR BREACH OF CONTRACT AND
DECLARATORY JUDGMENT

**EXHIBIT 1**

# EXHIBIT 1
# FILED UNDER SEAL

**EXHIBIT 2**

# EXHIBIT 2

# FILED UNDER SEAL

ORIGINAL

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

M/A-COM TECHNOLOGY SOLUTIONS HOLDINGS, INC. and NITRONEX, LLC

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

INFINEON TECHNOLOGIES AMERICAS CORPORATION, INTERNATIONAL RECTIFIER CORPORATION, and INFINEON TECHNOLOGIES AG

**(b)** County of Residence of First Listed Plaintiff   Middlesex Co., MA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Los Angeles Co., CA
*(IN U.S. PLAINTIFF CASES ONLY)*

**(c)** Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

Perkins Coie LLP
1888 Century Park East, Suite 1700
Los Angeles, California 90067-1721
1.310.788.9900

Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☐ 2. U.S. Government Defendant

☒ 3. Federal Question (U.S. Government Not a Party)

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes  ☒ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes  ☐ No     ☐ **MONEY DEMANDED IN COMPLAINT:** $ _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Breach of Contract; Declaratory judgment under 28 U.S.C. Sections 2201 and 2202 and 35 U.S.C. Section 1, et seq.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 376 Qui Tam (31 USC 3729(a)) | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☒ 830 Patent |
| ☐ 400 State Reapportionment | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 410 Antitrust | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 430 Banks and Banking | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 450 Commerce/ICC Rates/Etc. | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 460 Deportation | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 480 Consumer Credit | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 490 Cable/Sat TV | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 850 Securities/Commodities/Exchange | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 891 Agricultural Acts | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 893 Environmental Matters | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 895 Freedom of Info. Act | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 896 Arbitration | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 220 Foreclosure | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accommodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:**   Case Number:   CV16-02859

CV-71 (02/16)                    CIVIL COVER SHEET                    Page 1 of 3

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII.  VENUE:** Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A:  Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| [ ] Yes   [X] No<br><br>If "no," skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | [ ] Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| | [ ] Orange | Southern |
| | [ ] Riverside or San Bernardino | Eastern |

| QUESTION B:  Is the United States, or one of its agencies or employees, a PLAINTIFF in this action? | B.1. Do 50% or more of the defendants who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right* ➡ | [ ] YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| [ ] Yes   [X] No | | [ ] NO. Continue to Question B.2. |
| If "no," skip to Question C. If "yes," answer Question B.1, at right. | B.2. Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>*check one of the boxes to the right* ➡ | [ ] YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | [ ] NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C:  Is the United States, or one of its agencies or employees, a DEFENDANT in this action? | C.1. Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right* ➡ | [ ] YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| [ ] Yes   [X] No | | [ ] NO. Continue to Question C.2. |
| If "no," skip to Question D. If "yes," answer Question C.1, at right. | C.2. Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>*check one of the boxes to the right* ➡ | [ ] YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | [ ] NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D:  Location of plaintiffs and defendants? | A.<br>Orange County | B.<br>Riverside or San Bernardino County | C.<br>Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | [ ] | [ ] | [ ] |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | [ ] | [ ] | [X] |

| D.1.  Is there at least one answer in Column A? | D.2.  Is there at least one answer in Column B? |
|---|---|
| [ ] Yes   [X] No | [ ] Yes   [X] No |
| If "yes," your case will initially be assigned to the<br>SOUTHERN DIVISION.<br>Enter "Southern" in response to Question E, below, and continue from there.<br>If "no," go to question D2 to the right. ➡ | If "yes," your case will initially be assigned to the<br>EASTERN DIVISION.<br>Enter "Eastern" in response to Question E, below.<br>If "no," your case will be assigned to the WESTERN DIVISION.<br>Enter "Western" in response to Question E, below. ⬇ |

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: ➡ | WESTERN |

| QUESTION F: Northern Counties? | | |
|---|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | [ ] Yes | [X] No |

### UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court**?   ☒ NO   ☐ YES

If yes, list case number(s):

**IX(b). RELATED CASES:** Is this case related (as defined below) to any civil or criminal case(s) previously filed **in this court**?   ☒ NO   ☐ YES

If yes, list case number(s):

**Civil cases** are related when they (check all that apply):

☐   A. Arise from the same or a closely related transaction, happening, or event;

☐   B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐   C. For other reasons would entail substantial duplication of labor if heard by different judges.

Note: That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**A civil forfeiture case and a criminal case** are related when they (check all that apply):

☐   A. Arise from the same or a closely related transaction, happening, or event;

☐   B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐   C. Involve one or more defendants from the criminal case in common and would entail substantial duplication of labor if heard by different judges.

**X. SIGNATURE OF ATTORNEY
(OR SELF-REPRESENTED LITIGANT):**   *[signature]*   DATE: 4/26/2016

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |