Lara J. Dueppen, Bar No. 259075
LDueppen@perkinscoie.com
PERKINS COIE LLP
1888 Century Park East, Suite 1700
Los Angeles, CA 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Jonathan M. James (admitted *pro hac vice*)
JJames@perkinscoie.com
PERKINS COIE LLP
2901 North Central Avenue, Suite 2000
Phoenix, AZ 85012-2788
Telephone: 602.351.8000
Facsimile: 602.648.7000

Amanda Tessar (admitted *pro hac vice*)
ATessar@perkinscoie.com
PERKINS COIE LLP
1900 Sixteenth Street, Suite 1400
Denver, CO 80202-5255
Telephone: 303.291.2300
Facsimile: 303.291.2400

**ATTORNEYS FOR PLAINTIFFS**
(Additional Counsel Listed on Signature Page)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC., a Delaware corporation, and NITRONEX, LLC, a Delaware limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> INFINEON TECHNOLOGIES AG, a corporation organized under the laws of Germany, and INFINEON TECHNOLOGIES AMERICAS CORP., a Delaware corporation, <br><br> Defendants. | Case No. CV 16-02859 CAS (PLAx) <br><br> **MACOM'S OPPOSITION TO DEFENDANT AG'S MOTION TO DISMISS** <br><br> ███████████████████ |

1

**TABLE OF CONTENTS**

2

**Page**

3

INTRODUCTION ...................................................................................................1

FACTUAL BACKGROUND......................................................................................2

    A.   The Parties ..............................................................................2

    B.   The Nitronex/IR Agreements ................................................3

    C.   AG's Breach Of Contract ......................................................3

    D.   AG's Pervasive Direction And Control Of Americas............4

LEGAL STANDARD ...............................................................................................6

    A.   Motion To Dismiss For Lack Of Personal Jurisdiction .......6

    B.   Motion To Dismiss For Failure To State A Claim................8

    C.   Motion To Dismiss For Lack Of Subject Matter Jurisdiction ..............8

ARGUMENT ..........................................................................................................8

    A.   The Court Has Personal Jurisdiction Over AG ....................8

        1.   The Court Has Specific Jurisdiction Over AG ...............9

            a.   AG Purposefully Directed Activities At And/Or Purposefully Availed Itself Of This District ............................9

            b.   MACOM's Claims Arise Out Of Or Relate To AG's Conduct In This District .....................12

            c.   It Is Reasonable To Subject AG To Jurisdiction....................12

        2.   The Court Also Has Personal Jurisdiction Over AG Under Theories of Agency, Alter Ego, and Ratification .........................13

            a.   AG Is Subject To Specific Personal Jurisdiction Under Agency Principles..................14

            b.   Personal Jurisdiction Also Exists Because AG And Americas Are Alter Egos.........................15

               (i)  AG And Americas Have Unity Of Interest ........................16

               (ii) Inequitable Results Will Occur Absent An Alter Ego Finding..................17

            c.   AG Is Subject To Specific Personal Jurisdiction Because It Has Ratified Americas' Actions ..........................17

        3.   AG's Declarations Do Not Save It From A Finding That This Court Has Personal Jurisdiction Over It ................19

    B.   The Court Has Subject Matter Jurisdiction Over MACOM's Claims........................21

1

**TABLE OF CONTENTS**

2
(continued)

**Page**

3
    1.   The Court Has Subject Matter Jurisdiction Over MACOM's
4
        Contract Claims.................................................................................21

    2.   The Court Has Subject Matter Jurisdiction Over MACOM's
5
        Declaratory Judgment Claim ..........................................................22

6
  C.   MACOM Has Adequately Stated A Claim Of Intentional
7
      Interference......................................................................................22

8
    1.   The Manager's Privilege Does Not Apply To AG .......................23

    2.   The Financial Interest Privilege Does Not Apply To AG .............24
9
  D.   Alternative Request for Jurisdictional Discovery ................................25

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

**CASES**

3

*Allstar Mktg. Grp., LLC v. Your Store Online, LLC*,
4
    666 F. Supp. 2d 1109 (C.D. Cal. 2009) ......................................................... 20

5

*Arthur Andersen LLP v. Carlisle*,
    556 U.S. 624, 129 S. Ct. 1896 (2009) ......................................................... 21
6

*Bangkok Broad. & T.V. Co. v. IPTV Corp.*,
7
    742 F. Supp. 2d 1101 (C.D. Cal. 2010) ................................................. 17, 18

8

*Bell Atl. Corp. v. Twombly*,
9
    550 U.S. 544 (2007) ......................................................................................... 8

10

*Bleu Prod., Inc. v. Bureau Veritas*,
    No. 08-cv-2591, 2009 WL 649061 (C.D. Cal. Mar. 9, 2009) ....................... 16

11

*Boschetto v. Hansing*,
12
    539 F.3d 1011 (9th Cir. 2008) ..................................................................... 25

13

*Bou-Matic, L.L.C. v. Ollimac Dairy, Inc.*,
    No. 1:05-CV-0203 OWW SMS, 2006 WL 658602 (E.D. Cal. Mar. 15,
14
    2006) ............................................................................................................... 6

15

*Burger King Corp. v. Rudzewicz*,
16
    471 U.S. 462 (1985) ....................................................................................... 11

17

*Calder v. Jones*,
    465 U.S. 783 (1984) ......................................................................................... 9

18

*Calero v. Unisys Corp.*,
19
    271 F. Supp. 2d 1172 (N.D. Cal. 2003) ....................................................... 23

20

*Canard v. Bricker*,
    No. 14-CV-04986-JSC, 2015 WL 846997 (N.D. Cal. Feb. 25, 2015) ........... 23
21

*Choice-Intersil Microsystems, Inc. v. Agere Sys., Inc.*,
22
    224 F.R.D. 471 (N.D. Cal. 2004) ................................................................... 9

23

*Culcal Stylco, Inc. v. Vornado, Inc.*,
24
    26 Cal. App. 3d 879 (Ct. App. 1972) ................................................ 22, 24, 25

25

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014) .......................................................................... 8, 14, 15
26

*Data Disc, Inc. v. Sys. Tech. Associates, Inc.*,
27
    557 F.2d 1280 (9th Cir. 1977) ..................................................................... 18

28

*Doe v. Unocal Corp.*,
    27 F. Supp. 2d 1174 (C.D. Cal. 1998), *aff'd*, 248 F.3d 915 (9th Cir. 2001) .... 6

*Farris v. Int'l Paper Co.*,
No. 5:13-cv-485, 2014 WL 3657051 (C.D. Cal. July 21, 2014)................... 23

*Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.*,
103 F.3d 888 (9th Cir. 1996) .................................................................. 12, 13

*GHK Assocs. v. Mayer Grp., Inc.*,
224 Cal. App. 3d 856 (Ct. App. 1990) ........................................................ 24

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
328 F.3d 1122 (9th Cir. 2003) ...................................................................... 11

*Harrison Ventures, LLC v. Alta Mira Treatment Ctr., LLC*,
No. 10-cv-188, 2010 WL 1929566 (N.D. Cal. May 12, 2010) ..................... 23

*HealthMarkets, Inc. v. Superior Ct.*,
171 Cal. App. 4th 1160 (Cal. Ct. App. 2009) ............................................... 11

*Herring Networks, Inc. v. AT&T Servs., Inc.*,
No. 216-cv-1636, 2016 WL 4055636 (C.D. Cal. July 25, 2016)............passim

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
810 F. Supp. 2d 1100 (S.D. Cal. 2011) ................................................. 13, 14

*In re W. States Wholesale Nat. Gas Antitrust Litig.*,
715 F.3d 716 (9th Cir. 2013) ........................................................................ 12

*Kayne v. Ho*,
No. 09-cv-6816, 2010 WL 4794824 (C.D. Cal. Nov. 15, 2010).................... 15

*Korsunka v. Johnson*,
No. 2:13-cv-7010, 2014 WL 1716086 (C.D. Cal. Apr. 30, 2014) .................. 8

*Longyu Int'l Inc. v. E-Lot Elecs. Recycling Inc.*,
No. 2:13-CV-7086, 2014 WL 1682811 (C.D. Cal. Apr. 29, 2014) .............. 10

*Los Angeles Airways, Inc. v. Davis*,
687 F.2d 321 (9th Cir. 1982) ........................................................................ 23

*Marmis v. Sunbelt Sav. Ass'n of Texas*,
889 F.2d 1095 (9th Cir. 1989) (unpublished)............................................... 12

*McGee v. Int'l Life Ins. Co.*,
355 U.S. 220 (1957) ...................................................................................... 10

*Peterson v. Highland Music, Inc.*,
140 F.3d 1313 (9th Cir. 1998)....................................................................... 10

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015) ................................................................. 7, 14

*Roth v. Marquez,*
  942 F.2d 617 (9th Cir. 1991) .............................................................................. 7

*Sapp v. F.D.I.C.,*
  876 F. Supp. 249 (D. Kan. 1995) ............................................................... 6, 20

*Schick v. Lerner,*
  193 Cal. App. 3d 1321 (Ct. App. 1987) ......................................................... 23

*Stewart v. Screen Gems-EMI Music, Inc.,*
  81 F. Supp. 3d 938, 961 (N.D. Cal. 2015)...................................................... 16

*Stonebrae, L.P. v. Toll Bros.,*
  No. 08-cv-221, 2008 WL 2157000 (N.D. Cal. May 21, 2008)...................... 25

*Twin City Fire Ins. Co. v. Mitsubishi,*
  No. 04-cv-43, 2006 WL 5164189 (C.D. Cal. Aug. 15, 2006)....................... 24

*Weaver v. J&J,*
  No. 16-cv-257, 2016 WL 1668749 (S.D. Cal. Apr. 27, 2016)...................... 15

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 8(a)(3)............................................................. 22

Federal Rule of Civil Procedure 56(e)................................................................ 20

Federal Rule of Civil Procedure 12 .................................................................. 6, 8

TABLE OF ABBREVIATIONS AND CONVENTIONS

| ABBREVIATION | MEANING |
|---|---|
| AG | Defendant Infineon Technologies AG |
| Americas | Defendant Infineon Technologies Americas Corp. |
| *Citation Convention* | All internal citations are omitted |
| Complaint | MACOM's First Amended Complaint, ECF No. 65 |
| *Emphasis Convention* | All emphasis is added, unless otherwise noted |
| FAC | MACOM's First Amended Complaint, ECF No. 65 |
| GaN-on-Si | Gallium Nitride on Silicon—a different and competing technology to GaN-on-SiC |
| GaN-on-SiC | Gallium Nitride on Silicon Carbide—a different and competing technology to GaN-on-Si |
| Infineon | Defendant Infineon Technologies AG and Defendant Infineon Technologies Americas Corp., collectively |
| IR | International Rectifier—the predecessor to Americas |
| MACOM | Plaintiffs MACOM Technology Solutions Holdings, Inc. and Nitronex, LLC, collectively, unless the context dictates otherwise |
| Nitronex | Nitronex Corporation, the predecessor to Nitronex LLC, unless the context dictates that Nitronex LLC is referenced |
| Tessar Decl. | Declaration of Amanda Tessar, submitted concurrently herewith |
| *Quotation Convention* | All internal quotation marks are omitted |

**INTRODUCTION**

This case arises out of contracts between MACOM and a Central District of California-based company that Defendant Infineon Technologies AG ("AG") recently purchased.  AG's intentional actions in this District have harmed and will continue to harm MACOM's vital Networks division, which is led from the Central District of California.  Rather than taking responsibility for its actions and their effects on MACOM, AG's motion to dismiss unsuccessfully tries to evade liability by employing a corporate shell game —albeit one that is brimming with contradictions that AG cannot (and does not try to) resolve.  MACOM's Complaint contains more than enough allegations in its 245 paragraphs (nineteen of which are devoted specifically to AG jurisdictional allegations) to support jurisdiction over AG on each of its claims.  AG's motion should be denied.

In 2015, AG purchased International Rectifier ("IR") to get access to IR's "GaN-on-Si" technologies— ███████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████████████████ Immediately after the acquisition of IR, ██████████████████████████████████████████████ ███████████████████████. When that gambit failed, ███ ██████████████████████████████████████████ ████████████████████████████████████ This termination, if effective, leaves AG with ████████████████ ████████████████████████████████████████████████ ████. This result is unconscionable.

AG seeks to avoid liability by blaming its California subsidiary, Infineon Technologies Americas Corp. ("Americas"), for the decision to terminate

-1-

1   ████████████.  Specifically, AG submits a conclusory and unsupported

2   declaration saying that ████████████████████████████

3   ████████████████████████████████████████████

4   ████████████████████████████████████

5   ██████████.  AG's pervasive direction and control of Americas, as well as its

6   independent actions in interfering with California contracts, subjects it to

7   jurisdiction—including because Americas acts as the agent and is the alter ego of

8   AG and because AG has ratified Americas' actions.

9       AG's motion to dismiss is replete with contradictions and circular logic.  For

10  instance, AG simultaneously disavows any agency relationship with Americas,

11  while also arguing that it is privileged to interfere with Americas' contracts

12  precisely because it has such an agency relationship (which is, in any event, a

13  defense on the merits of the interference claim, not a basis for dismissal).  AG also

14  admits that it tried to renegotiate agreements with MACOM, but then denies that it

15  had any authority to be so involved—even though it does not and cannot contest

16  that Americas' employees made statements at the time that AG employees in

17  Germany *did* control all decisions with respect to the agreements.  Further, AG now

18  conveniently claims that its ████████████████████████

19  ████████████████████████████████████████████

20  and even though that position cannot be reconciled with AG's other arguments or

21  its suggestion that ████████████████████████████.

22      In short, AG's motion should be denied.  MACOM has alleged—and AG has

23  admitted—more than enough to establish jurisdiction.

24                          **FACTUAL BACKGROUND**

25  **A.    The Parties**

26      This case arises out of breaches of, and the purported termination of,

27  California contracts.  ████████████████████████████

28  ████████████████████████████████████████████

1 ████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████

3 ████████████████████████████. [*Id.*, Ex. 1, §12.02; Ex. 2, §§10.9, 10.10.]

AG bought IR in 2015 and merged it with a U.S. AG subsidiary to create the wholly-owned Americas subsidiary. [Dkt. 92-2 ¶¶4-5.] Americas is undisputedly based just down the road in El Segundo, as IR was. [Dkt. 92-3, ¶2.]

Nitronex acquired by MACOM in 2014. MACOM's Networks division (the relevant group here) is led from Newport Beach, California. [Virk Decl., ¶¶3-4.]

**B.** **The Nitronex/IR Agreements**

Since 1999, Nitronex has developed and pioneered the use of gallium nitride in the design and manufacture of semiconductor chips, focusing specifically on the use of gallium nitride-on-silicon ("GaN-on-Si") for RF products. [FAC ¶¶51-63.]

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

**C.** **AG's Breach Of Contract**

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████. [FAC ¶¶97-98.] Nitronex and MACOM collectively invested millions of dollars and key personnel in the development of GaN-on-Si technology. [*Id.* ¶¶153-154.] MACOM particularly

focused its efforts on the GaN-on-Si RF cellular base station market.  [*Id.*]

In 2015, AG acquired IR.  [*Id.* ¶109.]  Almost immediately, AG began trying to "renegotiate" the License Agreement ███████████████████████

██████████████████████████████████████████████████████████████

██  [*Id.* ¶¶113-115.]  When MACOM would not acquiesce to AG's demands,

██████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████.[1]  [*Id.* ¶¶124-29.]

████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████.  [*Id.* ¶152.]  MACOM

therefore filed this case against AG and Americas, asserting several breach claims

and ██████████████████████████████████████████████████████

██████████████████████████████████████████████████████████.

MACOM also brought a tortious interference claim against AG in the alternative.

In July of 2016, upon receipt of confirmation that Infineon was indeed marketing ███████████████████████████ as suspected, MACOM amended its complaint to add another breach of contract claim relating to those facts and filed a motion for preliminary injunction.  [*Id.* ¶¶155-164, 177-87; Dkt. 72-1.]

**D.    AG's Pervasive Direction And Control Of Americas**

MACOM's Complaint sets forth ***six pages*** of detailed jurisdictional allegations as to AG's direction and control of Americas' actions with respect to the

---

[1]  Despite the similar names, GaN-on-Si and GaN-on-SiC are very different technologies.  [FAC, ¶¶39-63; Dkt. 72-3, ¶¶5-18.]

Nitronex/IR agreements specifically and Infineon's GaN-on-Si RF power amplifier business more generally.  Since acquiring IR, AG has publicly and consistently made clear that it controls the former IR, IR's assets, and the Infineon/IR GaN-on-Si business more broadly.  For instance, AG stated in a press release that IR "has become part of Infineon."  [*Id.* ¶22.]  AG's 2015 Annual Report similarly states that AG "absorbed" IR's business—***and specifically highlights the integration of IR's GaN business into AG***.  [*Id.* ¶20.]  AG also counts IR's revenues, assets, liabilities, and in some cases, IR's employees, as part of AG's integrated business.  [*Id.* ¶21.]  It appears that the former IR GaN business is now part of a specific AG division (*id.* ¶22), highlighting AG's involvement in and control over the Infineon products at issue.  Further, Americas does not have a separate corporate presence online, but rather shares a website and products with AG, with a single generic "Infineon" webpage.  This makes it impossible to separate the two entities.  [*Id.* ¶23.]  All of these allegations are set forth in greater detail in MACOM's Complaint.

Moreover, AG was heavily involved in the attempted renegotiation of the License Agreement after AG acquired IR.  AG employees in Germany were on the telephone calls related to the agreement—indeed, MACOM often had to schedule calls to accommodate the time change between the U.S. and Germany.  [*Id.* ¶121; Tessar Decl. ¶¶6-8.] ███████████████████████████████████████████████████████████████████████████████████ [FAC ¶¶27, 121]  To the contrary, the Americas lawyers told MACOM that AG in Germany was calling the shots, and suggested that MACOM deal directly with AG.  [Tessar Decl. ¶¶2-5, 9.] ████████████████████████████████████████████████████████████████████████████

---

[2] █████████████████████████████████████████████████████████████████████████████

[FAC ¶28.]  In short, AG was involved and invested in the Nitronex/IR agreements.

AG has also made clear that the IR patents that are subject to the agreement are controlled by AG, regardless of who formally holds title.  For example, AG states in its 2015 Annual Report that its patent portfolio includes the patents once owned by IR.  [*Id.* ¶¶24-25.]  AG has also publicly stated elsewhere, such as in a press release, that it owns the GaN patent portfolio acquired from IR.  [*Id.*]  Not only that, but AG in-house personnel in Germany offered multiple times to come to the U.S. to meet with MACOM to discuss AG's allegations that MACOM's GaN-on-SiC products supposedly infringed the Nitronex Patents.  [Tessar Decl., ¶7.]

Even absent these many uncontroverted facts, the timeline alone is telling.  Right after AG acquired IR, Infineon started threatening MACOM's supplier with the Nitronex Patents and, in parallel, ██████████████████████ ████████████  [*Id.* ¶¶113-129.]  When those efforts failed, it accused MACOM's GaN-on-SiC products of infringement and tried to terminate the License Agreement.  [*Id.* ¶¶141-150; Tessar Decl. ¶7.]  AG then announced that it was developing GaN-on-Si products ████████████████████.  [*Id.* ¶¶155-164.]  There can be little doubt as to the connection between these events.

### LEGAL STANDARD

**A.   Motion To Dismiss For Lack Of Personal Jurisdiction**

Where, as here, a court decides a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) without an evidentiary hearing, the plaintiff need only make a *prima facie* showing of jurisdictional facts for the motion to be denied. *Herring Networks, Inc. v. AT&T Servs., Inc.*, No. 216-cv-1636, 2016 WL 4055636, at \*3 (C.D. Cal. July 25, 2016); *Doe v. Unocal Corp.*, 27 F. Supp. 2d 1174, 1181 (C.D. Cal. 1998), *aff'd*, 248 F.3d 915 (9th Cir. 2001).  "[I]t is well established that where the district court relies solely on affidavits and discovery materials, the plaintiff need only establish a prima facie case of jurisdiction."  *Bou-Matic, L.L.C. v. Ollimac Dairy, Inc.*, No. 1:05-CV-0203 OWW SMS, 2006 WL 658602, at \*1

(E.D. Cal. Mar. 15, 2006).  Moreover, Plaintiff's version of the facts is taken as true for purposes of the motion if and to the extent not directly controverted.  *Herring*, 2016 WL 4055636, at *3.  Importantly, any declarations submitted to contravene the facts alleged in a complaint ***must*** comply with the rules of evidence or they are ineffective.  *E.g.*, *Sapp v. F.D.I.C.*, 876 F. Supp. 249, 251 (D. Kan. 1995) ("[A]ffidavits … opposing motions to dismiss for lack of jurisdiction must … be based on personal knowledge, set forth such facts as would be admissible into evidence, and show affirmatively that the affiant is competent to testify ….").

Generally, personal jurisdiction exists if (1) it is permitted by the forum state's long-arm statute and (2) the exercise of that jurisdiction does not violate federal due process.  *Herring*, 2016 WL 4055636, at *3.[3]  Depending on the nature of the contacts between the defendant and the forum state, personal jurisdiction is characterized as either general or specific.  *Id.* at *3.

General jurisdiction exists if a defendant's forum activities are "substantial" or "continuous and systematic," even if the claim is unrelated to those activities.  *Id.*  "Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there."  *Id.*

A court may also have specific jurisdiction over a claim that arises out of a defendant's forum-related activities.  *Id.* at *4.  The test for specific personal jurisdiction requires:  (1) the non-resident defendant must purposefully direct his activities toward (or purposefully avail itself of) the forum; (2) the claim must arise out of or relate to the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable.  *Id.* at *4.  The plaintiff bears the burden on the first two prongs, and then the defendant has the burden to "present a compelling

---

[3]  California's long-arm statute is coextensive with federal due process requirements, so the jurisdictional analysis under state and federal law collapse. Cal. Civ. Proc. § 410.10; *Roth v. Marquez*, 942 F.2d 617, 620 (9th Cir. 1991).

case" that the third prong, reasonableness, is not satisfied.  *Id*.

Both general *and* specific jurisdiction may be found for a parent company when a subsidiary subject to general jurisdiction is found to be the alter ego of the parent.  *Ranza v. Nike, Inc.,* 793 F.3d 1059, 1071 (9th Cir. 2015).  Additionally, specific jurisdiction may be found over a parent when the subsidiary acts as the parent's agent in activities that gave rise to the lawsuit or if the parent later ratifies the subsidiary's actions.  *Daimler AG v. Bauman,* 134 S. Ct. 746, 759 n13 (2014).

**B.     Motion To Dismiss For Failure To State A Claim**

Under Rule 12(b)(6), a district court may dismiss a claim only if "there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Herring*, 2016 WL 4055636 at *4.  Factual allegations need only be enough to raise a right to relief "above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering a Rule 12(b)(6) motion, a court must accept as true all pleaded material allegations, as well as all reasonable inferences drawn from them.  *Herring*, 2016 WL 4055636, at *4.  The complaint must also be read in the light most favorable to the plaintiff.  *See id.*

**C.     Motion To Dismiss For Lack Of Subject Matter Jurisdiction**

For a complaint to survive a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the plaintiff need only show that it "has alleged a claim under federal law and that the claim is not frivolous" where the jurisdiction is premised on a federal question.  *Korsunka v. Johnson*, No. 2:13-cv-7010, 2014 WL 1716086, at *2 (C.D. Cal. Apr. 30, 2014).

**II.     ARGUMENT**

**A.     The Court Has Personal Jurisdiction Over AG**

This Court has specific personal jurisdiction over AG because AG has itself conducted business in California through its activities as alleged in the Complaint, including through its interference with California contracts.  Additionally, this Court has personal jurisdiction over AG because of AG's treatment of its wholly-

1  owned subsidiary Americas as its agent (*i.e.*, specific jurisdiction) and alter ego

2  (*i.e.*, specific and general jurisdiction), and because it has ratified Americas' actions

3  that gave rise to MACOM's claims (*i.e.*, specific jurisdiction).

4  ### 1.   The Court Has Specific Jurisdiction Over AG

5  #### a.   AG Purposefully Directed Activities At And/Or Purposefully
      Availed Itself Of This District

6  MACOM has alleged numerous intentional acts by AG aimed at California

7  that satisfy the first prong of the specific jurisdiction test, which requires

8  "purposeful direction at" or "purposeful availment of" the forum.  The "purposeful

9  availment analysis is most often used in suits sounding in contract, whereas the

10  purposeful direction analysis ... is most often used in suits sounding in tort."

11  *Herring*, 2016 WL 4055636 at *5.  Here, some of MACOM's claims sound in

12  contract and some in tort.  Therefore, both tests apply—and both are satisfied.[4]

13  AG attempted to renegotiate the Nitronex/IR Agreements, which are

14  California contracts with California choice of law and venue provisions.  [*Id.*

15  ¶¶113-123.]  These negotiations involved multiple communications between AG,

16  its California subsidiary (Americas), and MACOM.  [Tessar Decl. ¶¶5-9.] ████████

17  ████████████████████████████████████████████████████████████████████████████████

18  ████████████████████  [FAC ¶123.]

19  "Contract negotiations are classic examples of the sort of contact that can

20  give rise to *in personam* jurisdiction."  *Peterson v. Highland Music, Inc.*, 140 F.3d

21  1313, 1320 (9th Cir. 1998) (affirming personal jurisdiction finding); *see McGee v.*

22  *Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957) ("It is sufficient for purposes of due

23

24  ───────────────

25  [4]   Purposeful direction requires application of the Supreme Court's "effects" test.
      *Calder v. Jones*, 465 U.S. 783 (1984); *Herring*, 2016 WL 4055636, at *6.  This
26  test requires "the defendant allegedly must have (1) committed an intentional
      act, (2) expressly aimed at the forum state, (3) causing harm that the defendant
27  knows is likely to be suffered in the forum state."  *Id.*  "Purposeful availment
      requires that the defendant performed some type of affirmative conduct which
28  allows or promotes the transaction of business within the forum state."  *Id.* at *8.

process that the suit was based on a contract which had substantial connection with that State."). ███████████████████████████████████

███████████████████████████████████

█████ —it was not a "one time" deal.[5]  [FAC ¶123.]  *See Longyu Int'l Inc. v. E-Lot Elecs. Recycling Inc.*, No. 2:13-CV-7086, 2014 WL 1682811, at *4 (C.D. Cal. Apr. 29, 2014) (citing case distinguishing contacts with forum states arising out of "multiple transactions" from contacts that involve only "single shot deals").

MACOM also alleged facts showing that AG caused harm that it knew was likely to be suffered in California.  The contracts relevant here are California contracts.  [FAC, Ex. 1, §12.02; Ex. 2, §§10.9, 10.10.]  One of the parties to the contracts is a California company and the other party has multiple offices in this district, including the office from which the division relevant here is led.  [Dkt. 92-3 ¶2, Virk Decl. ¶¶4-5.]  AG should have known (and does know) that any harm it caused would have an effect in California, among other places.  *Herring*, 2016 WL 4055636, at *8 (allegations that parent authorized actions in California sufficient to establish that parent was aware resulting harm would be felt here).  Infineon nonetheless announced its development of GaN-on-Si products █████████ ████████████ right after the license was terminated, causing harm to MACOM in California and supporting that it purposefully availed itself of this District.

AG also purposefully availed itself of, and purposefully directed its actions toward, this District because it instructed and authorized its agent, Americas, to take the actions underlying MACOM's Complaint.  *Herring*, 2016 WL 4055636, at *8 (authorizations and instructions to take actions related to California company constituted both purposeful availment and purposeful direction); *HealthMarkets, Inc. v. Superior Ct.*, 171 Cal. App. 4th 1160, 1170 (Cal. Ct. App. 2009) (jurisdiction

---

[5]  There is also nothing that MACOM "obfuscated" about the facts ██████████ █████████████████████████████.  Mot. at 11 n. 4 & 5.  AG cannot hide that it had discussions and negotiations with MACOM.

may be appropriate over a parent company where it "has purposefully directed its activities at the forum state by causing a separate person or entity to engage in forum contacts"). MACOM's Complaint contains many allegations that Infineon directed, controlled, and/or authorized Americas to take actions relevant to MACOM's claims. [FAC ¶¶18-37.] For example, MACOM alleges that AG made, directed, and/or controlled "the decisions to (a) wrongfully and pretextually terminate the 2010 License Agreement; (b) develop and market (or to continue developing and marketing) GaN-on-Si RF products ███████████████████████ ███████████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████████████████████████████████." [*Id.* ¶29.] And of course, the Court has jurisdiction over AG on MACOM's interference claim because AG interfered with a California contract. *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1131 (9th Cir. 2003) (jurisdiction found where defendant interfered with contract involving California resident). AG is therefore subject to personal jurisdiction.

In evaluating whether a party purposefully availed itself or purposefully directed itself at the state of California, it is important to note that physical presence is not required to establish jurisdiction. Jurisdiction cannot be avoided "merely because the defendant did not *physically* enter the forum State … it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State …." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (emphasis in original); *Marmis v. Sunbelt Sav. Ass'n of Texas*, 889 F.2d 1095 (9th Cir. 1989) (table) (unpublished) (phone and mail communications establishing an entity in California were sufficient to establish jurisdiction). In short, AG cannot avoid a conclusion that it purposefully availed itself of this forum by pointing to its physical location in Germany.

### b. MACOM's Claims Arise Out Of Or Relate To AG's Conduct In This District

Under the second prong of the specific personal jurisdiction test, the Court must consider whether MACOM's claims "arise out of or relate to [AG's] forum-related contact." *Herring*, 2016 WL 4055636, at *9. The Ninth Circuit has said that this prong requires a "but for" analysis. *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 742 (9th Cir. 2013). In other words, "a lawsuit arises out of a defendant's contacts with the forum state if a direct nexus exists between those contacts and the cause of action." *Id.*

There is precisely such a direct nexus here. MACOM's claims all arise out of or are related to California contracts at issue in this case and AG's attempted renegotiations, wrongful breach, attempted termination of that contract (or direction to its California subsidiary to terminate that contract), and its current GaN-on-Si product development and marketing activities. "But for" AG's involvement with the contracts, its attempts (and/or instructions) to terminate the license, and its product marketing and sales activities, MACOM's claims would not exist. This includes even MACOM's noninfringement declaratory judgment claim, since it is the purported termination of the License Agreement that puts MACOM under cloud of an infringement suit. MACOM's claims thus arise out of AG's conduct in California. *Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.,* 103 F.3d 888, 894 (9th Cir. 1996) ("Absent Aldus's California-related activities, the insurers would have no reason to pursue declaratory relief.").

### c. It Is Reasonable To Subject AG To Jurisdiction

AG has the burden to show that "litigation in California has been or would be so gravely difficult and inconvenient as to render the court's exercise of personal jurisdiction unreasonable." *Fireman's Fund*, 103 F.3d at 895; *Herring*, 2016 WL 4055636, at *9 (defendant has burden to present "compelling case that the exercise of jurisdiction would not be reasonable"). AG presented ***no*** argument on this prong—and it is now too late for it to do so. The exercise of jurisdiction here

(where AG bought a California company, attempted to renegotiate its California contracts, and then terminated and breached them in a way that caused injury in California) is reasonable.  AG has not met its burden, and this factor is met anyway.

### 2.    The Court Also Has Personal Jurisdiction Over AG Under Theories of Agency, Alter Ego, and Ratification

Neither AG nor Americas disputes that Americas is subject to personal jurisdiction, both general and specific, nor could it.  Americas has its principal place of business in this District, conducts business here, and is a party to the contract arising under California law that is at issue in this case.  [*See* Dkt. 92-3 ¶2.]  Americas therefore satisfies the test for both general jurisdiction (as it is certainly at home with continuous and systematic contacts in this District) and specific jurisdiction.  *Herring*, 2016 WL 4055636, at *4.

When a subsidiary acts as the agent of its parent, the subsidiary's contacts are imputed to the parent and lead to specific jurisdiction over the parent.  *Herring*, 2016 WL 4055636, at *7 n4.  Further, where the subsidiary acts as the alter ego of its parent, either general *or* specific jurisdiction can be found.  *In re Hydroxycut Mktg. & Sales Practices Litig.,* 810 F. Supp. 2d 1100, 1124 (S.D. Cal. 2011) (because plaintiff made a prima facie showing of alter ego, subsidiary's contacts could be imputed to parent for jurisdiction).  Finally, in the situation where the parent corporation knowingly accepts the subsidiary's actions after the fact, specific jurisdiction is found under the theory of ratification.  *Bowoto,* 312 F. Supp. 2d at 1235; *see also Herring*, 2016 WL 4055636, at *7 n4.

Here, Americas is both the agent and alter ego of AG.  At a minimum, AG has ratified Americas' actions through the conduct described in the Complaint.  Accordingly, personal jurisdiction over AG is proper for these reasons as well.[6]

---

[6]   Notably, if this Court were to find personal jurisdiction over AG here under an alter ego or agency theory, it would not be the first California court to disregard corporate formalities for the Infineon family of companies.  At least one California court has done exactly that for AG and Americas' predecessor,

### a.   AG Is Subject To Specific Personal Jurisdiction Under Agency Principles

In determining whether a subsidiary acts as an agent of its parent, courts typically consider whether the parent's control of the subsidiary is so pervasive that the subsidiary can fairly be deemed a means through which the parent acts or an incorporated division of the parent. *Hydroxycut*, 810 F. Supp. 2d at 1115. "[A] subsidiary is deemed to be acting as the agent of the parent if the subsidiary engages in activities that, but for the existence of the subsidiary, the parent would have to undertake itself." *Id.* at 1116.

AG incorrectly argues that an agency theory cannot be used to establish personal jurisdiction for a parent corporation, citing *Daimler,* 134 S. Ct. at 759-60, and *Ranza*, 793 F.3d at 1071. That is incorrect. Instead, both *Daimler* and *Ranza* hold that an agency theory is no longer a valid way to establish **general** jurisdiction. But, as *Daimler* expressly notes, agency remains a valid way to establish **specific** jurisdiction.[7] *Daimler*, 134 S. Ct. at 759 n13 ("Agency relationships ... may be relevant to the existence of specific jurisdiction … As such, a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there."); *accord Herring*, 2016 WL 4055636, at *7 n4.

Here, there is little question that Americas is an agent of AG. AG's public presence, statements, and conduct in dealings with MACOM all show AG's pervasive direction and control over Americas' day-to-day activities. AG is and has held itself out to the world as the new owner of IR, its patents, and its GaN-on-Si products. [FAC ¶¶20-25.] It merged Americas' product lines into an AG business division, attempted to renegotiate IR's contracts with MACOM, threatened to sell

---

Infineon North America. *Choice-Intersil Microsystems, Inc. v. Agere Sys., Inc.*, 224 F.R.D. 471, 472 (N.D. Cal. 2004) (Infineon NA must produce AG documents).

[7]   AG presents **no** argument as to why there is not specific jurisdiction here through an agency theory, addressing only general jurisdiction through that theory. AG cannot remedy this omission in its reply brief.

certain Nitronex Patents, led the charge in accusing MACOM's GaN-on-SiC products of infringing the Nitronex Patents, and has begun marketing GaN-on-Si products ███████████████████. [*Id.*; Tessar Decl. ¶¶5, 7.] Immediately after acquiring IR—with timing that cannot be coincidental—"IR" sent threatening letters to MACOM and its supplier. [FAC ¶¶113-29.] Moreover, AG's Americas entity (formed out of the old IR) has no separate website, products, or identity from AG. [*Id.* ¶23.] Americas' very purpose is to sell "Infineon" products and operate as the U.S. arm of AG. [*See id.* ¶¶23, 30.] It is undertaking activities that AG would otherwise undertake itself, were Americas not to exist. [*Id.*] Americas is thus an agent of AG, and Americas' actions may be attributed to AG to establish specific personal jurisdiction. *Herring,* 2016 WL 4055636, at *7 n4. MACOM has clearly established a *prima facie* case of jurisdiction over AG based on agency.

### b. Personal Jurisdiction Also Exists Because AG And Americas Are Alter Egos

AG is also subject to jurisdiction because Americas is its alter ego. It is undisputed that Americas is subject to personal jurisdiction here. If a parent's alter ego subsidiary is subject to jurisdiction, the parent is subject to jurisdiction too. *Kayne v. Ho*, No. 09-cv-6816, 2010 WL 4794824, at *9 (C.D. Cal. Nov. 15, 2010). This means AG is subject to ***general and specific*** jurisdiction. *Weaver v. J&J*, No. 16-cv-257, 2016 WL 1668749, at *3 n.3 (S.D. Cal. Apr. 27, 2016) ("The Supreme Court left intact 'imputed' general jurisdiction based on the alter ego test.").[8]

To show alter ego, a plaintiff must allege "(1) such a unity of interest in ownership exists so as to dissolve the separate corporate personalities of the parent

---

[8]   AG's argument that *Daimler* precludes a finding of jurisdiction even in the presence of an alter ego determination should be rejected. Mot. at 10 n.3. In *Daimler*, the subsidiary was not incorporated in California, nor did it have its principal place of business here, so the Court found that even attributing the subsidiary's contacts to the parent did not render the parent "at home" in the district. *Daimler*, 134 S. Ct. at 761-62. That is not the case here, where Americas is headquartered in El Segundo, California. [Dkt. 92-3 ¶2.]

and the subsidiary, relegating the latter to the status of merely an instrumentality, agency, conduit or adjunct of the former, and (2) an inequitable result will occur if the conduct is treated as that of the subsidiary alone." *Bleu Prod., Inc. v. Bureau Veritas*, No. 08-cv-2591, 2009 WL 649061, at *5 (C.D. Cal. Mar. 9, 2009). MACOM's Complaint alleges facts that support both elements.

### (i)   AG And Americas Have Unity Of Interest

There are numerous facts alleged in the Complaint demonstrating unity of interest between Americas and AG.  Relevant factors courts have found important to the unity of interest analysis include, for example: (1) commingling of assets; (2) a parent's treatment of a subsidiary's corporate assets as its own; (3) holding out by the parent that it is personally liable for subsidiary's debts; (4) employment of the same employees or attorneys; and (5) use of a corporation as a mere shell for the business of an individual or other entity.  *Stewart v. Screen Gems-EMI Music, Inc.,* 81 F. Supp. 3d 938, 961 (N.D. Cal. 2015).

As set forth in MACOM's Complaint, AG meets many of these factors. First, even without discovery, MACOM has alleged specific facts that demonstrate (1) comingling of assets, (2) treatment of Americas' assets as assets of AG, and (3) holding out by AG that it is responsible for Americas' debts.  MACOM's Complaint alleges, for instance, that AG represented in its 2015 Annual Report that IR's (now Americas') revenue, assets, and liabilities are integrated and part of AG. [FAC ¶21.]  Similarly, AG has held itself out to the public as owning the Nitronex Patents.  [*Id.* ¶¶24-25.]  MACOM has also alleged sharing of employees—namely, that AG has counted IR's (now Americas') employees as its own.  [*Id.* ¶21.]

██████████████████████████████████████████████

████████  ████████████████, although that point is contested by MACOM (*see supra* §A3).  Finally, MACOM has alleged facts showing that Americas is a shell or conduit for AG's business.  [*Id.* ¶¶ 18-37.]  Indeed, in the very declarations submitted for its motions to dismiss, Infineon is unable to separate the two entities,

1    and each purports to testify for the other.  [*See* Dkt. 92-2 ¶8 (AG testifying about

2    Americas' contracts)*;* Dkt. 92-3 ¶3 (Americas testifying about acquisition by AG).]

3          Thus, this is far from a case where there are no specific factual allegations to

4    support an alter ego claim.  AG repeatedly accuses MACOM's Complaint of being

5    "conclusory," but that contention cannot be reconciled with the actual language of

6    the Complaint, which is more than sufficient to support jurisdiction.

7          **(ii)   Inequitable Results Will Occur Absent An Alter Ego Finding**

8          MACOM's Complaint contains numerous allegations about the injustice that

9    would result if AG is not held accountable.  [*E.g.*, FAC ¶¶31-34.]  AG purchased IR

10   with the specific goal of accessing the Nitronex Patents and IR's (*i.e.*, Nitronex's

11   technical knowledge.  [*Id.* ¶¶20, 25.]  AG then attempted to renegotiate IR's

12   contracts, presenting itself as having the authority to do so and ████████████████

13   ████████████████████████████████.  [*Id.* ¶¶33, 121-123.]  When

14   negotiations failed, AG terminated MACOM's license and began marketing

15   products in ████████████████.  [*Id.* ¶¶141-149, 155-164.]  It would be the

16   wrong result if AG—in these circumstances—is permitted through dismissal here to

17   both hide behind a corporate shell when it comes to liability, but ████████████

18   ████████████████████████████████████████████████████

19   ████████████████████████████████.  [*Id.* ¶¶32, 152-54.]

20   The risk of injustice is particularly acute since AG is simultaneously claiming it

21   cannot be held liable as a third party for interfering with the contracts here.

22         **c.   AG Is Subject To Specific Personal Jurisdiction Because It Has Ratified Americas' Actions**

23         AG is also subject to specific jurisdiction because it has ratified Americas'

24   actions.  Ratification occurs when the parent knowingly accepts a subsidiary's

25   actions after the fact.  *Bowoto,* 312 F. Supp. 2d at 1235; *see also Herring*, 2016 WL

26   4055636, at *7 n4.  "A purported agent's act may be adopted expressly or ... by

27   implication based on conduct of the purported principal from which an intention to

28

consent or adopt the act may be fairly inferred." *Bowoto*, 312 F.Supp. 2d at 1235; *Bangkok Broad. & T.V. Co. v. IPTV Corp.*, 742 F. Supp. 2d 1101, 1120 (C.D. Cal. 2010) (parent may be liable where it "aids, abets or ratifies the acts of the subsidiary corporation").  These cases make clear that the critical question is whether the parent ratified the conduct that gave rise to the claims, ***not*** whether the parent ratified an underlying contract itself (*see Bangkok*, 742 F. Supp. 2d at 1101 (discussing parent ratification of subsidiary's ***actions*** giving rise to infringement claim))—a point AG mixes up in its argument (Mot. at 14-15 & n6).

Even if the Court finds that MACOM has not sufficiently alleged that AG directed and/or controlled Americas such that agency or alter ego theories of jurisdiction apply, MACOM has certainly alleged undisputed facts sufficient to support ratification jurisdiction.  For instance, MACOM has alleged that AG touted its expansion of its GaN-on-Si patent portfolio through its acquisition of IR (*i.e.*, through the Nitronex Patents), then participated in discussions with Americas and MACOM about modification of the terms of those agreements.  [FAC ¶¶18-37.][9]

████████████████████████████████████████████████████████

████████.[10]  [*Id.* ¶28.]  Then, after the license was purportedly terminated (supposedly by Americas alone, despite AG's involvement in the discussions regarding the supposed infringement of MACOM's GaN-on-SiC products), AG publicly disclosed its intent to sell GaN-on-Si products in MACOM's field (*id.* ¶155-████████████████████████████████████████████████

_____

[9] ████████████████████████████████████████████████████████
████████████████████████████████████████████ ed the agreements with AG, also showing that AG is involved with accomplishing the purpose of the agreements (*i.e.*, a ratification).

[10] *See Data Disc, Inc. v. Sys. Tech. Associates, Inc.*, 557 F.2d 1280, 1287-88 (9th Cir. 1977) ("[T]he activities of the STA employees in California, although subsequent to formation of the contract, were meant to facilitate Data Disc's completion of the contract and were beneficial to STA.").

█████████████████████████████. These facts show that AG ratified and approved the actions taken by Americas (supposedly alone) under the contracts.

### 3.  AG's Declarations Do Not Save It From A Finding That This Court Has Personal Jurisdiction Over It

Even ignoring the gross evidentiary defects in the jurisdictional declarations submitted with AG's motion to dismiss, discussed below, AG's declarations are insufficient to controvert MACOM's jurisdictional allegations. Preliminarily, the declarations are striking for what they do not deny. For instance, although AG submits declarations from both Americas and AG personnel (albeit not from anyone who participated in AG's discussions with MACOM), AG does not deny that:

- AG personnel participated by in attempts to renegotiate the parties' California contracts and discussions about termination.
- AG in-house attorneys who participated on calls with MACOM about the Nitronex/IR agreements never said that they were representing Americas.
- Americas' in-house attorneys told MACOM that AG in Germany was controlling decisions with respect to the Nitronex/IR agreements.
- Americas offers the same products as AG and shares a website with AG.[11]
- AG has represented to the public that it owns rights to IR's GaN patents.
- AG has represented to the public that it is liable for IR/Americas' debts.
- ███████████████████████████████████████████████
- AG controls the GaN business of Americas and other Infineon affiliates.
- AG personnel led phone discussions about MACOM's GaN-on-SiC products' alleged infringement of the Nitronex Patents and offered to meet with MACOM in the U.S. about those claims.
- AG announced the launch of Infineon-branded GaN-on-Si RF products ██ ██████████████████████ immediately after the purported termination of

---

[11] AG argues that MACOM has not proven that it does not observe corporate formalities, but MACOM has certainly alleged sufficient facts on this point, which is all that it is required to do at this stage—particularly when AG has not submitted any declaration saying that it does so. The best that AG does is a financial person's declaration saying with no explanation, background, or detail that AG "abides by the arms-length principle," whatever that means.

the License Agreement.

Importantly, MACOM's allegations on all of these points must be taken as true, since Infineon's declarations do not controvert them. *Rio*, 284 F.3d at 1019 ("[U]ncontroverted allegations in RIO's complaint must be taken as true….").

Infineon's declarations only state—in conclusory fashion—███████████ ████████████████████████████████████████████████████████ ████████████████████████████████ [ECF No. 92-3 ¶¶7-8; ECF No. 92-2 ¶11.]  Setting aside that this new twist reinforces MACOM's alter ego and agency allegations, AG's only evidence of this supposed "representation" is a declaration from a layperson who provides no evidentiary foundation for his testimony whatsoever, participated in *none* of the calls, does not appear to routinely supervise legal matters, and who announces his legal opinion in the most conclusory and unsupported manner possible.  [Dkt. 92-3 ¶8.]  AG fails to include any facts or evidence that support or substantiate its declarant's testimony (*e.g.*, whether an engagement letter exists, ███████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████.  And in any case, an agent is still subject to personal jurisdiction where the agent is a "'primary participant' in the alleged wrongdoing" or "had 'control of, and direct participation in the alleged activities.'"  *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1120 (C.D. Cal. 2009) (collecting cases).

AG's declarations admit, with their carefully-parsed language, more than they deny.  For instance, Mr. LeFort says that █████████████████████ ███████████████████████████████████████████████████" but he makes *no* representation that AG did not direct or provide input to those "██████ ██████.  [ECF 92-3 ¶8.]  Similarly, Mr. Pelzer—a non-lawyer CFO—simply announces that AG "is not a party to either of the two [2010] agreements and is not a successor to [IR] with respect to the two agreements.  [ECF 92-2 ¶9.]  Mr. Pelzer

1  and AG have provided no reason for this Court to replace its judgment on such

2  legal issues with AG's.  *See, e.g., Tri-Valley Cares v. Dep't of Energy*, 203 F.

3  App'x 105, 108 (9th Cir. 2006) (affirming exclusion of declarations containing

4  impermissible legal conclusions and opinions from lay-witness).

5        Likewise, to the extent that the declarations contain conclusory statements

6  that AG did not "direct or control" Americas, these statements should be rejected as

7  lacking foundation, containing hearsay, and containing improper legal conclusions.

8  *Sapp*, 876 F. Supp. at 251 ("[A]ffidavits in support of or opposing motions to

9  dismiss for lack of jurisdiction must comply with the requirements of Fed.R.Civ.P.

10  56(e), *i.e.*, they must be based on personal knowledge, set forth such facts as would

11  be admissible into evidence, and show affirmatively that the affiant is competent to

12  testify ….").  Declarations that are limited to the witness's "knowledge," without

13  any explanation of whether or how the witness has any real knowledge, are

14  similarly meaningless.  [ECF 92-2 ¶¶11-13.]  In short, AG's declarations fail to

15  successfully controvert MACOM's jurisdictional allegations.

16  **B.**  **The Court Has Subject Matter Jurisdiction Over MACOM's Claims**

17        **1.**  ***The Court Has Subject Matter Jurisdiction Over MACOM's Contract Claims***

18        AG's sole argument on subject matter jurisdiction for MACOM's contract

19  claims is that there is no case or controversy because it was not a signatory to the

20  contracts at issue.  But, as set forth above, contract claims may be enforced against

21  non-signatory parent companies if there is an alter ego or agency relationship.

22  *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631, 129 S. Ct. 1896, 1902 (2009)

23  ("[T]raditional principles of state law allow a contract to be enforced by or against

24  nonparties to the contract through … piercing the corporate veil [and] alter ego....");

25  *Herring*, 2016 WL 4055636, at *15 (declining to dismiss contract claims against

26  parent).  None of the cases cited by AG (Mot. at 12) involve this fact pattern. AG's

27  motion to dismiss contract claims for lack of subject matter jurisdiction thus fails.

28

### 2.  The Court Has Subject Matter Jurisdiction Over MACOM's Declaratory Judgment Claim

AG argues that the Court lacks subject matter jurisdiction over the declaratory judgment patent claim because AG does not own the patents at issue. But, as set forth above, AG has held itself out as their owner.  Moreover, the situation is muddied by the fact that PTO records still reflect that IR owns some of the patents, although both Infineon entities insist that IR no longer exists as an entity.  [Dkt. 44-2 at 1; Dkt. 92-3 ¶¶4-6.]  Even assuming that AG does not directly own any of the Nitronex Patents, MACOM has sufficiently alleged agency and alter ego—effectively meaning that Americas' alleged formal ownership can be attributed to AG.  Thus, the Court has subject matter jurisdiction over this claim.[12]

### C.   MACOM Has Adequately Stated A Claim Of Intentional Interference

MACOM's Eighth (and final) Claim for Relief against AG is for intentional interference with contractual relations.  [FAC ¶¶233-245.]  MACOM properly brought this claim in the alternative, to apply if AG is found not to be a party to or bound by the relevant agreements.  [*Id.* ¶235 n3.]  *See* Fed. R. Civ. P. 8(a)(3) (pleading "may include relief in the alternative").

AG does not deny in its motion to dismiss that it interfered with MACOM's contracts.  Nor does it deny the general rule that intentional interference claims are recognized against a parent when it interferes with a subsidiary's contracts.  *Culcal Stylco, Inc. v. Vornado, Inc.,* 26 Cal. App. 3d 879, 883 (Ct. App. 1972) (reversing dismissal of tortious interference claim against parent).  Instead, AG does a complete about-face on its earlier arguments.  Despite its prior and adamant denials of an agency (or alter ego) relationship, AG now argues that MACOM's Eighth Claim for Relief must be dismissed because AG is permitted by law to interfere with its subsidiary's contracts under the manager's privilege, which is designed to

---

[12] AG incorporates unspecified arguments from Americas' motion to dismiss, so MACOM incorporates here its response to those arguments.

protect agent/fiduciary relationships.  AG cannot have it both ways, asking the Court to dismiss the first seven claims because there *is not* an agency relationship *and* the eighth claim because there *is* an agency relationship.  Nor is AG's claim that it was acting as an agent of Americas (its subsidiary) credible.  That is entirely counterintuitive.  Parents generally control their subsidiaries, not the converse.

In any event, as discussed in greater detail below, both the manager's privilege and the financial interest privilege require a factual evaluation of intent, making them an inappropriate basis for dismissal here.

### 1.    *The Manager's Privilege Does Not Apply To AG*

The so-called "manager's privilege" does not apply here.  "Under California law, the manager's privilege acts primarily as a shield to protect a manager from *individual liability* to third parties for certain torts."  *Farris v. Int'l Paper Co.*, No. 5:13-cv-485, 2014 WL 3657051, at *7 (C.D. Cal. July 21, 2014).[13]  The "manager's privilege" exists to protect the confidential fiduciary-principal relationship, not the parent-subsidiary relationship.  *See Los Angeles Airways, Inc. v. Davis*, 687 F.2d 321, 325 (9th Cir. 1982) ("*LA Airways*"); 2 Cal. Affirmative Def. § 41:19 (2d ed.) ("Unlike the corporate manager who enjoys a privilege, corporations owning subsidiaries ... do not have an absolute privilege to interfere with contracts of their subsidiary.").[14]  The manager's privilege is also a qualified privilege that is lost if a corporate manager acts with improper intent.  *LA Airways*, 687 F.2d at 325.

---

[13]  AG confuses the manager's privilege with the financial interest privilege by citing a string of nonbinding cases from other jurisdictions that make no reference to the manager's privilege.  *See* Mot. at 22-23.

[14]  The nonbinding case cited by AG, *Harrison Ventures, LLC v. Alta Mira Treatment Ctr., LLC,* No. 10-cv-188, 2010 WL 1929566, at *6 (N.D. Cal. May 12, 2010), is inapposite because the complaint there had actually alleged that the defendants "made a business decision" to terminate the contract.  More recent Northern District decisions have recognized both that "motive matters" and the privilege is not absolute.  *See Canard v. Bricker,* No. 14-CV-04986-JSC, 2015 WL 846997, at *4 (N.D. Cal. Feb. 25, 2015) (denying motion to dismiss where plaintiff alleged that actions were taken "with improper motive").

Determining intent is fact-intensive.  Even summary judgment cannot be used to resolve a dispute regarding intent, let alone a motion to dismiss.  *Id.*; *Calero v. Unisys Corp.*, 271 F. Supp. 2d 1172, 1180 (N.D. Cal. 2003).

MACOM has ***not*** brought suit against an individual who is "acting in his fiduciary capacity as agent, officer or director" of Americas.  *LA Airways,* 687 F.2d at 326; *Schick v. Lerner*, 193 Cal. App. 3d 1321, 1329 (Cal. Ct. App. 1987) (claim brought against attorney individually).  For that reason alone, the manager's privilege simply does not apply.  Moreover, MACOM repeatedly alleges that AG acted wrongfully and with an improper motive, based on a plethora of facts set forth in the Complaint.  [FAC ¶148 ("Infineon's purported termination was without basis or cause, was done in bad faith, and was pretextual.  Its purpose was to attempt to wrongfully harm MACOM ..."); ¶237("after it acquired [IR,] AG embarked on an intentional and wrongful course of conduct to interfere with and disrupt Americas' performance of the 2010 IP Purchase and License Agreements"); ¶238.[15]  Thus, even if the manager's privilege could apply to AG, there is a disputed issue of fact—AG's intent—that precludes dismissal.

### 2. The Financial Interest Privilege Does Not Apply To AG

AG's "financial interest privilege" argument also fails.  "One who, having a financial interest in the business of a third person intentionally causes that person not to enter into a prospective contractual relation with another, does not interfere improperly with the other's relation only if he (a) does not employ wrongful means and (b) acts to protect his interest from being prejudiced by the relation."  *Culcal*, 26 Cal. App. 3d at 882; *see also Twin City Fire Ins. Co. v. Mitsubishi*, No. 04-cv-43, 2006 WL 5164189, at *21 (C.D. Cal. Aug. 15, 2006).

---

[15]  AG also accuses MACOM of relying on "conclusory legal conclusions."  In support, AG cites to a single paragraph of MACOM's Complaint (¶238).  But AG cannot simply cherry-pick one paragraph out of 245 and argue that MACOM's claim is defeated based solely on that paragraph.  Dozens of other paragraphs provide additional facts.  [*See, e.g.*, FAC ¶¶ 141-154, 233-245.]

Because both elements turn on a defendant's intent, courts call the financial interest privilege a "state-of-mind privilege" and are reluctant to decide the issue on pleadings. *Culcal*, 26 Cal. App. 3d at 883; *GHK Assocs. v. Mayer Grp., Inc.,* 224 Cal. App. 3d 856, 883 (Ct. App. 1990) ("[T]he question on the issue of privilege is a question for the trier of fact.").  The only situation where a motion to dismiss may be granted on the financial interest privilege is if the privilege's applicability is evident from the "allegations contained [in the] complaint." *Stonebrae, L.P. v. Toll Bros.*, No. 08-cv-221, 2008 WL 2157000, at *6 (N.D. Cal. May 21, 2008).

Here, it is not possible to conclude that the financial interest privilege applies based on MACOM's Complaint, so dismissal is not permitted.  MACOM alleges that AG employed wrongful means and did not act for any proper purpose.  [*E.g.*, FAC ¶¶148, 237, 238.]  Going further, MACOM alleged detailed facts supporting its allegations, something not required by the case law.  [FAC ¶¶18-37,124-29,141-147]; *Culcal*, 26 Cal. App. 3d at 883 (reversing dismissal even in the face of "conclusionary allegations" that defendant acted without justification).  Unlike *Stonebrae,* where application of the privilege followed from the express allegation that the parent took actions "in light of [its] deteriorating financial condition," it cannot be said that the facts averred here show justification or privilege as a matter of law.  2008 WL 2157000, at *5.  AG's arguments should therefore be rejected.

## D.    Alternative Request for Jurisdictional Discovery

AG's motion should be denied outright.  If the Court is reluctant to do so or believes that MACOM has not sufficiently pleaded jurisdiction, however, MACOM respectfully requests that the Court order jurisdictional discovery to allow MACOM to present specific additional facts that support jurisdiction. *E.g.*, *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (discovery "may be appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary").

DATED:  September 7, 2016

**PERKINS COIE LLP**

By: */s/ Amanda Tessar*
Lara J. Dueppen, Bar No. 259075
LDueppen@perkinscoie.com
PERKINS COIE LLP
1888 Century Park East, Suite 1700
Los Angeles, CA 90067-1721
Telephone:  310.788.9900
Facsimile:  310.788.3399

Jonathan M. James (*pro hac vice*)
JJames@perkinscoie.com
PERKINS COIE LLP
2901 North Central Avenue, Suite 2000
Phoenix, AZ  85012-2788
Telephone:  602.351.8000
Facsimile:  602.648.7000

Amanda Tessar (*pro hac vice*)
ATessar@perkinscoie.com
Elizabeth Banzhoff (*pro hac vice*)
EBanzhoff @perkinscoie.com
PERKINS COIE LLP
1900 Sixteenth Street, Suite 1400
Denver, CO  80202-5255
Telephone:  303.291.2300
Facsimile:  303.291.2400

Philip A. Morin, Bar No. 256864
PMorin@perkinscoie.com
PERKINS COIE LLP
11988 El Camino Real, Suite 350
San Diego, CA  92130-2594
Telephone:  858.720.5700
Facsimile:  858.720.5799

Daniel T. Keese, Bar No. 280683
DKeese@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

Morgan Chu (State Bar No. 70446)
(mchu@irell.com)
Joseph M. Lipner (State Bar No. 155735)
(jlipner@irell.com)
Ellisen Turner (State Bar No. 224842)
(eturner@irell.com)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900

1

Los Angeles, CA 90067-4276
Telephone:  310-277-1010
Facsimile:  310-203-7199

2

3

Nima Hefazi (State Bar No. 272816)
(nhefazi@irell.com)
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA  92660
Telephone:  949-760-0991
Facsimile:  949-760-5200

4

5

6

7

**ATTORNEYS FOR PLAINTIFFS**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28