1   LINDA M. BURROW, Bar No. 194668
2     *burrow@caldwell-leslie.com*
    ALISON MACKENZIE, Bar No. 242280
3     *mackenzie@caldwell-leslie.com*
    CALDWELL LESLIE AND PROCTOR PC
4   725 South Figueroa Street 31st Floor
5   Los Angeles, CA  90017-5524
    Telephone:  213-629-9040 / Fax:  213-629-9022
6
7   DAVID G. WILLE (admitted *pro hac vice*)
      *david.wille@bakerbotts.com*
8   JEFFERY D. BAXTER (admitted *pro hac vice*)
      *jeff.baxter@bakerbotts.com*
9   BRIAN D. JOHNSTON (admitted *pro hac vice*)
      *brian.johnston@bakerbotts.com*
10  JAMES C. WILLIAMS (admitted *pro hac vice*)
      *james.williams@bakerbotts.com*
11  CHARLES YEH (admitted *pro hac vice*)
12    *charles.yeh@bakerbotts.com*
    BAKER BOTTS L.L.P.
13  2001 Ross Avenue, Suite 600
14  Dallas, TX 75201
    Telephone:  214.953.6500 / Fax:  214.953.6503
15
16  Attorneys for Defendants

17              UNITED STATES DISTRICT COURT

18       CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| 19  MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. and | Case No. CV 16-02859 CAS (PLAx) |
| 20  NITRONEX, LLC, | **DEFENDANTS INFINEON TECHNOLOGIES AG AND** |
| 21              Plaintiffs, | **DEFENDANT INFINEON TECHNOLOGIES AMERICAS CORP.'S** |
| 22          v. | **OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY** |
| 23  INFINEON TECHNOLOGIES AG, *et al.*, | **INJUNCTION** |
| 24              Defendants. | **[Declarations and Exhibits thereto filed concurrently herewith]** |
| 25 | **Hon. Christina A. Snyder** |
| 26 | **Date:    October 17, 2016** |
| 27 | **Time:    10:00 a.m.**<br>**Ctrm.:   5** |
| 28 | |

1

**TABLE OF CONTENTS**

2

3    INTRODUCTION ................................................................................................ 1

4    STATEMENT OF FACTS ................................................................................... 3

5    LEGAL STANDARD .......................................................................................... 5

6    ARGUMENT ........................................................................................................ 5

7
8    I.    MACOM has not shown likelihood of success as to its third claim for
           relief .......................................................................................................... 5

9
10         A.    Breach of contract is a remedy available to patent owners for
                 licensees that exceed the scope of their license. ............................ 6

11
12         B.    MACOM breached the 2010 License Agreement's covenant of
                 good faith and fair dealing. ............................................................. 7

13
14         C.    MACOM breached an implied negative covenant not to exceed
                 the scope of its license in the 2010 License Agreement. .............. 10

15
16         D.    MACOM cannot show a likelihood of success on its third claim
                 for relief on this limited factual record. ....................................... 13

17    II.   MACOM has not shown irreparable harm based on its third claim for
           relief ........................................................................................................ 13

18
19         A.    ███████████████████████████████████████████
                 ███████████████████ ........................................................... 13

20
21         B.    Termination of an exclusive license is not *per se* irreparable
                 harm ............................................................................................... 15

22
23         C.    MACOM's allegations regarding loss of business do not support
                 an injunction on its third claim for relief. .................................... 17

24
25               1.    MACOM's allegations regarding loss of business are
                       based on the wrong claim for relief. .................................... 17

26
27               2.    Even if MACOM were allowed to rely on another claim
                       for relief (its second claim for relief), MACOM does not
                       present sufficient evidence in support of its allegations
28                     regarding loss of business. ................................................... 18

ii

III.    MACOM's proposed injunction order is improper as a matter of law. ........21

    A.    MACOM's proposed order is not limited to its third claim for relief. ................................................................................21

    B.    MACOM's proposed order fundamentally fails to satisfy the specificity required by law ................................................22

IV.    The balance of hardships and public interest factors weigh against any injunction. ...........................................................24

    A.    The balance of hardships weighs in Defendants' favor. .....................24

    B.    The public interest factor does not support an injunction ..................24

V.    MACOM is not entitled to any injunction against Infineon AG. ................25

    A.    MACOM has not established personal jurisdiction over Infineon AG. ................................................................................25

    B.    Infineon AG is not a party to the 2010 License Agreement that forms the basis of MACOM's injunction request ..............................25

CONCLUSION ................................................................................25

iii

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

4
5

*Alling v. Universal Mfg. Corp.*,
   5 Cal. App. 4th 1412 (1992) ........................................................................13

6
7

*B & J Mfg. Co. v. Hennessy Indus., Inc.*,
   No. 73 C 2174, 1976 WL 21072 (N.D. Ill. Oct. 19, 1976) ...........................9

8

*B. Braun Med. Inc. v. Abbott Labs.*,
   124 F.3d 1419 (Fed. Cir. 1997)......................................................................6

9
10

*Boardman v. Pacific Seafood Grp.*,
   822 F.3d 1011 (9th Cir. 2016).........................................................5, 16, 20

11
12

*Burlington Indus., Inc. v. Solutia, Inc.*,
   256 F. Supp. 2d 433 (M.D.N.C. 2003), *vacated and remanded*, 310 F. Appx.
   594 (4th Cir. 2009) ........................................................................................9

13
14

*Celgard, LLC v. LG Chem, Ltd.*,
   624 F. App'x 748 (Fed. Cir. 2015) (unpublished) .......................................25

15

*Chemical Engineering Corp. v. Marlo, Inc.*,
   754 F.2d 331 (Fed. Cir. 1984).....................................................................18

16
17

*Congleton v. Nat'l Union Fire Ins. Co.*,
   189 Cal. App. 3d 51 (Ct. App. 1987) .............................................................7

18
19

*Cty. of Ventura v. Blackburn*,
   362 F.2d 515 (9th Cir. 1966)..........................................................................9

20

*Dellwood Foods, Inc. v. Kraftco Corp.*,
   420 F. Supp. 424 (S.D.N.Y. 1976)...............................................................24

21
22

*Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*,
   356 F.3d 1256 (10th Cir. 2004)...............................................................15, 16

23
24

*Egan v. Mutual of Omaha Insurance Company*,
   24 Cal. 3d 809 (1979) ....................................................................................7

25

*Eli Lilly and Co. v. Emisphere Tech.*,
   408 F. Supp. 2d 668 (S.D. Ind. 2006) .........................................................10

26
27

*Eli Lilly and Co. v. Genentech, Inc.*,
   Nos. IP 87-219-C, IP 88-1463-C, 1990 WL 305392 (S.D. Ind. July 17, 1990) .......................9

28

iv

*ET Trading, Ltd v. ClearPlex Direct, LLC,*
    No. 15-CV-00426-LHK, 2015 WL 913911 (N.D. Cal. Mar. 2, 2015) ....................................15

*Ferry-Morse Seed Co. v. Food Corn, Inc.,*
    729 F.2d 589 ....................................................................................................................16

*First Fed. Savings Bank of Ind. v. Key Mkts., Inc.,*
    559 N.E.2d 600 (Ind. 1990) .............................................................................................9

*Ford Motor Credit Co. v. Garner,*
    688 F. Supp. 435 (N.D. Ind. 1988) ...................................................................................9

*Gates v. Shinn,*
    98 F.3d 463 (9th Cir. 1996)............................................................................................22

*Gen. Talking Pictures Corp. v. W. Elec. Co.,*
    305 U.S. 124 (1938)..........................................................................................................7

*Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.,*
    736 F.3d 1239 (9th Cir. 2013)........................................................................................15

*Inspection Mgmt. Sys., Inc. v. Open Door Inspections, Inc.,*
    No. 209-CV-00023, 2009 WL 805813 (E.D. Cal. Mar. 26, 2009) ...........................................14

*Int'l Ass'n of Plumbing & Mech. Officials v. Int'l Conference of Bldg. Officials,*
    79 F.3d 1153 (9th Cir. 1996) (unpublished table decision) ........................................14

*Int'l Longshoremen's Ass'n. v. Philadelphia Marine Trade Ass'n,*
    389 U.S. 64 (1967)..........................................................................................................23

*Int'l Medcom, Inc. v. S.E. Int'l, Inc.,*
    No. 15-cv-03839, 2015 WL 7753267 (N.D. Cal. Dec. 2, 2015)...............................5, 22

*International Rectifier Corp. v. IXYS Corp.,*
    383 F.3d 1312 (Fed. Cir. 2004).......................................................................................23

*JVC Kenwood Corp. v. Arcsoft, Inc.,*
    966 F. Supp. 2d 1003 (C.D. Cal. 2013), *aff'd in part, vacated in part sub nom.*
    *JVC Kenwood Corp. v. Nero, Inc.*, 797 F.3d 1039 (Fed. Cir. 2015)..........................7

*La Jolla Cove Inv'rs, Inc. v. GoConnect Ltd.,*
    No. 11CV1907, 2012 WL 1580995 (S.D. Cal. May 4, 2012) ......................................14

*Los Angeles Trust Deed & Mortgage Exch. v. Sec. & Exch. Comm'n,*
    264 F.2d 199 (9th Cir. 1959)..........................................................................................23

*Mallinckrodt, Inc. v. Medipart, Inc.,*
    976 F.2d 700 (Fed. Cir. 1992).........................................................................................6

v

*MedSpring Grp., Inc. v. Feng*,
  368 F. Supp. 2d 1270 (D. Utah 2005) ...................................................................24

*Mon Cheri Bridals, LLC v. Bowls*,
  No. CIV.A. 14-8107 MAS, 2015 WL 1383948 (D.N.J. Mar. 25, 2015) ...................15

*Monsanto Co. v. E.I. DuPont De Nemours and Co.*,
  No. 4:09-cv-686, 2010 WL 234951 (E.D. Mo. Jan. 15, 2010), *order vacated-
  in-part on reconsid.*, 2010 WL 3039210 (E.D. Mo. July 30, 2010) ...........11, 12, 13

*Nano-Proprietary, Inc. v. Keesmann*,
  No. 06 C 2689, 2007 WL 433100 (N.D. Ill. Jan. 30, 2007)......................................16

*Pom Wonderful LLC v. Pur Beverages LLC*,
  No. CV1306917, 2015 WL 10433693 (C.D. Cal. Aug. 6, 2015) ...............................25

*Reno Air Racing Ass'n., Inc. v. McCord*,
  452 F.3d 1126 (9th Cir. 2006)..................................................................................22

*San Jose Prod. Credit Ass'n v. Old Republic Life Ins. Co.*,
  723 F.2d 700 (9th Cir. 1984)......................................................................................7

*Schmidt v. Lessard*,
  414 U.S. 473 (1974)..................................................................................................22

*Sci. Weight Loss, LLC v. U.S. Med. Care Holdings, LLC*,
  No. CV 08-2852, 2008 WL 4691028 (C.D. Cal. Oct. 22, 2008) ...............................25

*Shaw v. E.I. DuPont De Nemours & Co.*,
  126 Vt. 206 (1966)..................................................................................................8, 9

*Stormans, Inc. v. Selecky*,
  586 F.3d 1109 (9th Cir. 2009)..................................................................................25

*Thrifty Payless, Inc. v. Americana at Brand, LLC.*,
  218 Cal. App. 4th 1230 (2013) ...................................................................................7

*USA Techs., Inc. v. Tirpak*,
  No. CIV.A. 12-2399, 2012 WL 1889157 (E.D. Pa. May 24, 2012) .........................14

*Wilson v. 21st Century Ins. Co.*,
  42 Cal. 4th 713 (2007) ...............................................................................................8

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008)......................................................................................................16

**STATUTES**

Cal. Code Civ. Proc., § 1860..........................................................................................13

1

**INTRODUCTION**

2    MACOM moves for a preliminary injunction solely on its third claim for

3    relief, which seeks a declaratory judgment that the 2010 License Agreement is not

4    terminated.  Although MACOM does not dispute that it exceeded the scope of its

5    patent license, MACOM seeks to avoid the consequences of its misconduct by

6    preventing Infineon Americas[1] from terminating the parties' License Agreement.

7    Put simply, MACOM cannot show a likelihood of success on improper termination.

8    MACOM does not dispute (1) that the parties negotiated and agreed to ████████

9    ████████████   and (2) that MACOM violated those limitations by practicing the

10   licensed patents outside the scope of its license grant.  To argue that its misconduct

11   did not justify termination of the License Agreement, MACOM asserts that

12   exceeding the scope of a patent license cannot constitute a breach of contract as a

13   matter of law.  MACOM, however, totally disregards that the parties' License

14   Agreement has a covenant of good faith and fair dealing under California law.  The

15   only court decision on point held that a patent licensee violates that covenant of

16   good faith and fair dealing when it exceeds the scope of its license.  Moreover, even

17   if the License Agreement did not include a covenant of good faith and fair dealing,

18   courts have implied a separate, negative covenant not to exceed the scope of a

19   license in similar factual circumstances.

20       MACOM also fails to meet its burden to show irreparable harm due to the

21   termination of the License Agreement.  MACOM starts with two unsupportable

22   legal arguments, wrongly asserting that ████████████████████████████████

23   ████████████████████████   and that the termination of an exclusive

24   license is *per se* irreparable harm.  Neither assertion is supported by the law.

25   MACOM later alleges loss of business, but only by misleadingly and improperly

26   _____

27       [1]  The 2010 License Agreement and other agreements at issue involve
     International Rectifier Corporation, which in 2015 changed its name to Infineon
28   Technologies Americas Corp. ("Infineon Americas").

shifting from the claim for relief on which it has moved (its third claim for relief) to a different claim for relief on which it has **not** moved (its second claim for relief). MACOM contends that it may lose business if, as MACOM alleges in its second claim for relief, Defendants market GaN-on-Si RF products ████████████ ████████████████████████████ MACOM did not move on that claim for relief because MACOM cannot show a likelihood of success on the merits. MACOM's only alleged evidence in support of its factual allegation is a single, triple hearsay statement—a declaration by MACOM's head of sales in Asia describing a conversation with a staff member about a separate conversation that the staff member allegedly had with a customer about a separate conversation that the customer allegedly had with an employee of some unidentified Infineon affiliate.  MACOM's triple hearsay is contradicted by Defendants' non-hearsay, admissible declaration submitted with this brief.  At bottom, MACOM cannot satisfy its elements of proof with respect to its third claim for relief—the sole claim for relief on which it moves.

MACOM also misleadingly submits a proposed order with an overbroad injunction that is not tied to the particular claim for relief on which it moves.  Even though MACOM moves solely on its third claim for relief on improper termination, MACOM's proposed order does not focus on termination.  Instead, MACOM's proposed order would enjoin Defendants from **breaching** the License Agreement— which is far broader relief encompassing at least MACOM's first, second, and fourth claims for relief, and more.  MACOM has not even tried to satisfy the elements of proof necessary to obtain an injunction for those claims.  Even if it had, MACOM still would not be entitled to an injunction against any breach imaginable.

Moreover, MACOM cannot obtain any injunction against Infineon Technologies AG ("Infineon AG") because MACOM cannot establish personal jurisdiction over Infineon AG and because Infineon AG is not a party to the

1    agreement at issue.  For at least these reasons, the Court should deny MACOM's

2    motion for preliminary injunction.

3                              **STATEMENT OF FACTS**

4            From the very beginning, the dealings between Infineon Americas and

5    Nitronex involved more than merely patents.  On the same day that the parties

6    executed their 2004 License Agreement (Dkt. No. 80, Ex. A), they also executed a

7    Technology Transfer Agreement (Ex. 1). ██████████████████████████

8    ████████████████████████████████████████████████████████████

9    ██████████████████████    ████████████████    ████████████████

10   ████████████████████████████████████████████████████████████

11   ████████████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████████

13   ██████████████████████████████

14           In 2010, continuing their ongoing relationship, Infineon Americas purchased

15   ██████████████████████████████████ from Nitronex. ████████████████

16   ████████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████████

23   ████████████████████████████████████████████████████████████

24   ████████████████████████████████████    ████████████████████

25   ████████████████████████████████████████████████████████████

26   ████████████████████████████████████████████████████████████

27   [2] ████████████████████████████████████████████████████████

28   ███████████████████████████████████

3

1

2

3

4

5

6

7

8

9

10   ███  GaN-on-SiC technology provides superior performance in RF power products

11   as compared to GaN-on-Si, offering higher power density and higher efficiency at a

12   given frequency.  (Ward Decl. ¶ 7.)

13        MACOM  then  acquired  Nitronex  and  ████████████████████

14   ██████████████████████████  Infineon Americas was therefore surprised to

15   learn that MACOM was making and selling GaN-on-SiC products using technology

16   covered  by  Infineon  Americas'  patents.    Infineon  Americas  considered  this  a

17   flagrant and material breach of the 2010 License Agreement.  Infineon Americas

18   provided MACOM notice of the breach and an opportunity to cure.  (Dkt. No. 80-2,

19   Ex. D.)  When Infineon Americas raised the issue, MACOM admitted the conduct

20   but dismissed the infringement as inconsequential.  (Ex. 3, 12/14/15 Email from

21   Croteau; *see also* Dkt. No. 80-2, Ex. F at 6–7.)  Despite asserting it had cured,

22   MACOM instead continued to sell its GaN-on-SiC products.  (Dkt. No. 80-2, Ex.

23   G.)   Infineon Americas therefore exercised its right to terminate the License

24   Agreement as a result of this material breach.  *Id*.

25        Although the agreement has been properly terminated, █████████████

26

27

28

4

1  ██████████████████████████████████  ███████████

2  ████████████████████████████████████████████████

3  ██████████████████████████

4                              **LEGAL STANDARD**

5          A court may grant a preliminary injunction only when the movant has shown:

6  (1) likelihood of success on the merits of the claim; (2) it will suffer irreparable

7  harm without the requested injunction; (3) the balance of hardships favors an

8  injunction; (4) the public interest favors an injunction; and (5) "contractual terms

9  which are sufficiently definite to enable the court to know what it is to enforce."

10 *Boardman v. Pacific Seafood Grp.*, 822 F.3d 1011, 1020 (9th Cir. 2016) (listing

11 factors (1)–(4)); *Int'l Medcom, Inc. v. S.E. Int'l, Inc.*, No. 15-cv-03839, 2015 WL

12 7753267, at *2 (N.D. Cal. Dec. 2, 2015) (listing the fifth factor among other

13 requirements under California law).  MACOM fails to carry its burden on any of

14 these required five elements of proof.

15                              **ARGUMENT**

16 **I.   MACOM has not shown likelihood of success as to its third claim for
        relief.**

17

18         MACOM has not shown a likelihood of success on its claim that the 2010

19 License Agreement is not properly terminated.  Infineon Americas terminated that

20 agreement because MACOM breached the agreement by exceeding the scope of its

21 patent license.  For the purpose of its motion, MACOM is not disputing that it

22 exceeded the scope of its patent license.  Rather, MACOM's sole argument is that

23 exceeding the scope of its license does not constitute a breach.[3]

24         MACOM initially contends that, as a matter of law, exceeding the scope of a

25 patent license is not a breach.  (Dkt. 80 at 14:11–15.)  But, MACOM later admits

26         [3] For purposes of its preliminary injunction motion, MACOM is not relying
27 on its allegations regarding materiality of the alleged breach or its alleged effort to
   cure the breach.  (Dkt. 80 at 10 n. 8; Ex. 4 (8/17/16 Email from Amanda Tessar at
28 1-2).)

                                    5

that exceeding the scope of a patent license can constitute a breach when an agreement includes a negative covenant or promise by the licensee not to act beyond the scope of its license.  (Dkt. 80 at 16:12–14 ("[C]ourt[s] sometimes find breach when a licensee's activities go beyond a license [] when the contract has a 'negative covenant'—*i.e.*, a promise by the licensee to ***not*** act beyond the license.") (emphasis in original).)   MACOM also admits that courts may imply such a negative covenant.  (Dkt. 80 at 17:8–10 ("[C]ourts are willing to ***imply*** a negative covenant: where the licensor provided the licensee with confidential technical information or know-how along with the patent license.") (emphasis in original).) Thus, MACOM's sole argument on likelihood of success rests on its contention that the Court should not imply a negative covenant ***in this case***.

Although MACOM previously admitted that the parties' License Agreement includes an implied covenant of good faith and fair dealing under California law (Dkt. 65 at ¶ 202; Dkt. 80-1, Ex. C at § 10.9), MACOM wholly fails to address whether MACOM's exceeding the scope of its patent license constitutes a breach of that implied covenant of good faith and fair dealing.  As explained below, a contract under California law ***always*** includes a covenant of good faith and fair dealing, and MACOM's conduct breached that covenant.

Furthermore, even if the License Agreement did not include a covenant of good faith and fair dealing, this case presents the very type of factual situation in which courts, without recognizing a covenant of good faith and fair dealing, have implied a negative covenant not to exceed the scope of a patent license.

### A. Breach of contract is a remedy available to patent owners for licensees that exceed the scope of their license.

A violation of a patent license agreement "entitles the patentee to a remedy for ***either*** patent infringement or breach of contract."  *B. Braun Med. Inc. v. Abbott Labs.*, 124 F.3d 1419, 1426 (Fed. Cir. 1997) (emphasis added); *see also Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 707 n.6 (Fed. Cir. 1992)

6

(holding that "the remedy for breach of a binding license provision is not exclusively in contract" and that "a patentee may choose among alternate remedies"); Ex. 5, Nimmer & Dodd, *Modern Licensing Law*, § 11:27 (2015) ("As a matter of contract law, conduct that exceeds a limitation in the contract ordinarily breaches the contract.  In effect, the express agreed limitation incorporates a promise by the party to act within the terms of the limitation; failure to do so sets out the basis for an action for contract breach.").[4]  And, as explained below, the 2010 License Agreement includes a covenant of good faith and fair dealing under California law, which provides a right to an action for breach.  *Congleton v. Nat'l Union Fire Ins. Co.*, 189 Cal. App. 3d 51, 59 (Ct. App. 1987).

## B.   MACOM breached the 2010 License Agreement's covenant of good faith and fair dealing.

MACOM admits that the 2010 License Agreement, which is governed by California law, includes an implied covenant of good faith and fair dealing.  (Dkt. 65 at ¶ 202; Dkt. 80-1, Ex. C at § 10.9.)  And under California law, all contracts contain an implied covenant of good faith and fair dealing, which requires each party to refrain from doing anything to injure the right of the other party to receive the benefits of the agreement.  *San Jose Prod. Credit Ass'n v. Old Republic Life Ins. Co.*, 723 F.2d 700, 703 (9th Cir. 1984) (citing *Egan v. Mutual of Omaha Insurance Company*, 24 Cal. 3d 809, 818 (1979)).  Implied covenants of good faith and fair dealing exist in every contract, even when, as here, the contract has an express integration clause.  *See Thrifty Payless, Inc. v. Americana at Brand, LLC.*, 218 Cal. App. 4th 1230, 1244 (2013) (reversing a demurrer on a breach of an

---

[4] Cases cited by MACOM merely state that a patent infringement suit is available—not that breach of contract is foreclosed.  *See Gen. Talking Pictures Corp. v. W. Elec. Co.*, 305 U.S. 124, 126 (1938) (considering restricted sales and finding the sales were not ever subject to a license); *JVC Kenwood Corp. v. Arcsoft, Inc.*, 966 F. Supp. 2d 1003, 1010–11 (C.D. Cal. 2013) (noting "patent infringement remedy is available"), *aff'd in part, vacated in part sub nom. JVC Kenwood Corp. v. Nero, Inc.*, 797 F.3d 1039 (Fed. Cir. 2015).

1    implied covenant of good faith and fair dealing in a contract with an integration

2    clause).   The parties agree, and the law supports, the fact that the 2010 License

3    Agreement includes a covenant of good faith and fair dealing.

4         The covenant of good faith and fair dealing prohibits MACOM from selling

5    products outside the scope of the license.   In the only case that appears to have

6    directly addressed the issue, the Supreme Court of Vermont found a breach of the

7    implied covenant of good faith and fair dealing when the licensee exceeded the

8    scope of a patent license.  *See Shaw v. E.I. DuPont De Nemours & Co.*, 126 Vt. 206

9    (1966).  The patent at issue covered broom filaments, and the licensee had a license

10   for filaments with a maximum cross-section of five millimeters.  *Id*. at 208.   After

11   the licensee made filaments exceeding that size, the patentee sued the licensee for

12   breach of contract.  *Id*.   The Supreme Court of Vermont affirmed a finding of

13   breach, explaining that the implied covenant of good faith and fair dealing applies

14   to every contract, including patent license agreements.  *Id*. at 209.   The court

15   examined copyright licenses where the implied covenant of good faith and fair

16   dealing prohibits a licensee from doing anything to violate the license or the

17   copyright upon which the license is granted.  *Id*.  Drawing on that reasoning, the

18   court held that when a patent license is restricted to a particular technology, the

19   covenant of good faith and fair dealing applies to the effect "that the licensee will

20   not invade the ungranted part of the patent to the detriment of the estate reserved by

21   the licensor."  *Id*.  The covenant of good faith and fair dealing prevents a licensee

22   from exceeding the scope of its license and invading rights reserved by the licensor.

23       Although its appears that California courts have not addressed the particular

24   issue of the covenant of good faith and fair dealing ██████████████████████,

25   California law supports finding that exceeding the scope of a patent license is a

26   breach of that covenant.  *See Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 720

27   (2007) ("The implied promise requires each contracting party to refrain from doing

28   anything to injure the right of the other to receive the agreement's benefits.").

8

1   Moreover, in the analogous realm of copyright law (the area of law on which the

2   *Shaw* court relied), courts have recognized that contracts include an implied

3   promise that the parties will not do anything to damage the rights of the other party.

4   *See Cty. of Ventura v. Blackburn,* 362 F.2d 515, 518–22 (9th Cir. 1966).

5         Various cases cited by MACOM are distinguishable because they do not

6   address the implied covenant of good faith and fair dealing.  For example, the

7   Indiana court in *Eli Lilly and Co. v. Genentech, Inc.*[5] did not recognize a covenant

8   of good faith and fair dealing as Indiana law does not impose the duty.  *See, e.g.,*

9   *First Fed. Savings Bank of Ind. v. Key Mkts., Inc.*, 559 N.E.2d 600, 605 (Ind. 1990)

10   ("The court found that Indiana law does not impose a duty of good faith and fair

11   dealing in the performance and enforcement of the [contract]." (citing *Ford Motor*

12   *Credit Co. v. Garner*, 688 F. Supp. 435 (N.D. Ind. 1988)).  Similarly, the courts in

13   *Lanova Corp. v. Atlas Imperial Diesel Engine Co.*[6], *B & J Mfg. Co. v. Hennessy*

14   *Indus., Inc.*[7], and *Burlington Indus., Inc. v. Solutia, Inc.*[8] did not expressly consider

15   whether there was a breach based on an implied covenant of good faith and fair

16   dealing.  The consideration of the implied covenant of good faith and fair dealing

17   under the governing law of California mandates a different analysis.

18         MACOM has failed to meet its burden to prove a likelihood of success on the

19   merits of its improper termination claim.  *See* Ex. 5, Nimmer & Dodd, *Modern*

20   *Licensing Law*, § 11.27 (2015) ("At minimum, standards of good faith indicate that

---

21       [5] Nos. IP 87-219-C, IP 88-1463-C, 1990 WL 305392, at *2 (S.D. Ind. July
22   17, 1990).

23       [6] 5 Terry 55, 62–63 (Del. 1947).

24       [7] No. 73 C 2174, 1976 WL 21072, at *3 (N.D. Ill. Oct. 19, 1976).

25       [8] *Burlington Indus., Inc. v. Solutia, Inc.*, 256 F. Supp. 2d 433, 435 (M.D.N.C.
2003), *vacated and remanded*, 310 F. Appx. 5 ▓▓▓▓▓ied on ▓▓▓▓▓
26   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Dkt. ▓▓▓
on provision
27   ▓▓▓▓▓e created by the license executed by the ▓▓▓▓▓▓
28   ▓▓▓▓▓▓ *Burlington Indus., Inc.*, 310 Fed. Appx. a

9

going beyond a contract for limitation breaches the contract.").  It is undisputed, for
the purposes of its preliminary injunction motion, that MACOM has sold infringing
products outside the scope of its license.  As such, MACOM cannot meet its burden
to show a likelihood of success in proving that it did not breach the covenant of
good faith and fair dealing in the 2010 License Agreement.

### C.    MACOM breached an implied negative covenant not to exceed the scope of its license in the 2010 License Agreement.

In addition to violating the covenant of good faith and fair dealing by its
actions, MACOM breached an implied negative covenant not to exceed the scope
of its license in the 2010 License Agreement.  ████████████████████
████████████  and an ordinary commercial expectation was that Nitronex would not
exceed that license.  *See* Ex. 6, Nimmer & Dodd, *Modern Licensing Law*, § 11:3
(2015) ("A license that allows certain conduct in return for consideration from the
licensee for the right to engage in that conduct, when accepted by the licensee, also
entails an agreement by the licensee that it will provide the consideration and will
not engage in conduct outside the terms of the license. . . .  As a matter of contract
law and commercial practice, this approach accurately reflects ordinary commercial
expectations and thus provides a rule that avoids traps based on an inadvertent
failure to include what many would regard as unnecessary contractual language.").
Even if California law did not include an implied covenant of good faith and fair
dealing in every contract, the specific facts regarding the transaction and
relationship of the parties here support finding an implied negative covenant not to
exceed the scope of the license in the 2010 License Agreement.

The parties had "a close and collaborative research relationship" in which
both sides obtained from one another "a vast quantity of technical information, both
public and confidential, only some of which might be protected by patent law." *See*
*Eli Lilly and Co. v. Emisphere Tech*., 408 F. Supp. 2d 668, 688–689 (S.D. Ind.
2006) ("Here the licensor has granted more than a mere forbearance from suit.  He

10

has actually delivered a package of valuable information to the licensee.  Should the licensee exceed the terms of the grant, the sole appropriate remedy is a suit for breach of contract based on an implied covenant not to do so." (quoting Einhorn, Patent Licensing Transactions § 1.03[4] (2004))); *Monsanto Co. v. E.I. DuPont De Nemours and Co.*, No. 4:09-cv-686, 2010 WL 234951, at *10 (E.D. Mo. Jan. 15, 2010) (stating that the "agreements involve the presence of the two factors that have led courts and commentators to find implied negative covenants: a restriction on the field of use . . . and a grant of technical information"), *order vacated-in-part on reconsid.*, 2010 WL 3039210 (E.D. Mo. July 30, 2010) (holding that "a more developed factual record" was necessary to determine whether there was a breach of an implied negative covenant).

For example, the parties' 2004 agreements ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ On the same day that the parties executed their 2004 License Agreement (Dkt. 80-1, Ex. A), the parties also executed a Technology Transfer Agreement (Ex. 1). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Similarly, the parties' 2010 agreements establish that the parties had an on-going relationship and that the parties' agreement amounted to significantly more than a naked patent license.  *See Monsanto Co.*, 2010 WL 234951, at *9 ("More recent authority suggests that the relevant inquiry in determining whether 'the nature of the restriction' suggests an implied negative covenant is whether the

11

1  contract merely represents the licensor's promise not to sue for infringement in

2  exchange for the payment of royalties, or whether the licensor has taken on

3  additional contractual obligations to assist the licensee in its use of the licensed

4  technology.").



16      Because Infineon Americas provided technology (beyond patents) to

17  Nitronex as part of the 2004 transactions and the 2010 transactions, it is proper to

18  imply a negative covenant even under MACOM's reading of the cases.  Certainly,

19  the relationship between the parties goes far beyond merely representing "the

20  licensor's promise not to sue."  *Monsanto Co.*, 2010 WL 234951, at *9.  Thus,

21  MACOM has failed to meet its burden to prove a likelihood of success on the

22  merits of its improper termination claim based on the implied negative covenant in

23  the 2010 License Agreement.

### D.   MACOM cannot show a likelihood of success on its third claim for relief on this limited factual record.

Although MACOM characterizes the implied negative covenant issues as "entirely legal" (Dkt 85 at 11:9), under MACOM's interpretation of the case law, that issue can be determined only on a more developed factual record.  *See Monsanto Co.*, No. 4:09-cv-686, 2010 WL 3039210, at *5 (holding that "a more developed factual record" was necessary to determine whether there was a breach of an implied negative covenant); *see also Alling v. Universal Mfg. Corp.*, 5 Cal. App. 4th 1412, 1434–35 (1992); s*ee also* Cal. Code Civ. Proc., § 1860 ("For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the Judge be placed in the position of those whose language he is to interpret.").  The parties have yet to take any discovery.  Based on the current record, MACOM cannot show a likelihood of success on the merits, so as to be entitled to a preliminary injunction.

## II.   MACOM has not shown irreparable harm based on its third claim for relief.

MACOM first tries to avoid its burden of proof by arguing wrongly that ██. ████████████████████████████████████████ Next, MACOM erroneously contends the termination of its exclusive patent license constitutes *per se* irreparable harm.  When MACOM finally addresses an alleged actual harm, MACOM relies on alleged business losses that are tied to a different claim for relief (its second claim for relief), and even then, its allegations are not supported by admissible evidence.

### A.   ████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

MACOM's argument fails on two independent grounds.

13



13      Second, ██████████████████████████████, MACOM must still

14 prove irreparable harm.   Under the governing law, reliance on a contractual

15 provision alone does not suffice.   *Inspection Mgmt. Sys., Inc. v. Open Door*

16 *Inspections, Inc.*, No. 209-CV-00023, 2009 WL 805813, at *4 (E.D. Cal. Mar. 26,

17 2009) ("Plaintiff cannot rely on the contractual clauses of the . . . [agreement] to

18 show irreparable harm.  Instead, the court must make an independent determination

19 of whether such harm is present."); *see also Int'l Ass'n of Plumbing & Mech.*

20 *Officials v. Int'l Conference of Bldg. Officials*, 79 F.3d 1153 (9th Cir. 1996)

21 (unpublished table decision) (reversing a finding of irreparable harm for lack of

22 evidence based on a contractual provision whereby the two parties conceded that

23 one "*would* suffer irreparable injury in the event of a contract breach" (emphasis

24 added)); *La Jolla Cove Inv'rs, Inc. v. GoConnect Ltd.*, No. 11CV1907, 2012 WL

_____

10

██████████████████████ harm *would* occur.  *USA Techs., Inc. v. Tirpak*, No. CIV.A. 12-
2399, 2012 WL 1889157, at *5–6 (E.D. Pa. May 24, 2012) (analyzing a contract
stating "irreparable injury to the other party hereto *would* occur in the event of
[breach]") (emphasis added).

14

1  1580995, at *4 (S.D. Cal. May 4, 2012) (holding that the plaintiff "must actually
2  demonstrate a likelihood of irreparable harm; pointing to a contractual concession is
3  insufficient"). ████████████████████████████████████████
4  ████████████████████████

5   **B.   Termination of an exclusive license is not *per se* irreparable harm.**

6      Contrary to MACOM's suggestion, there is no *per se* rule that threatened loss
7  of an exclusive license constitutes irreparable harm. *Dominion Video Satellite, Inc.*
8  *v. Echostar Satellite Corp.*, 356 F.3d 1256, 1263 (10th Cir. 2004) (collecting cases
9  to support the proposition that "[c]ourts finding irreparable harm from breaches of
10 exclusivity provisions have not rested their determinations solely on the existence
11 and subsequent breaches of the exclusivity provisions."). In fact, courts routinely
12 find no irreparable harm from termination of an exclusive license. *See, e.g.*, *Mon*
13 *Cheri Bridals, LLC v. Bowls*, No. CIV.A. 14-8107 MAS, 2015 WL 1383948, at *2,
14 4–5 (D.N.J. Mar. 25, 2015) (denying preliminary injunction based in part on
15 finding of no irreparable harm after defendant terminated the exclusive license
16 agreement); *ET Trading, Ltd v. ClearPlex Direct, LLC*, No. 15-CV-00426-LHK,
17 2015 WL 913911, at *3 (N.D. Cal. Mar. 2, 2015) (finding no irreparable harm from
18 Defendant's alleged breach of the exclusive license agreement).

19     The cases cited by MACOM simply do not support its bald assertion that the
20 loss of an exclusive license is *per se* irreparable harm. For example, two of the
21 cases Plaintiffs cite, *Innersvingen AS v. Sports Hoop, Inc.* and *Pac. Rollforming,*
22 *LLC v. Trakloc Int'l*, fundamentally rely on repudiated precedent.[11] Similarly, the
23

24     [11] In *Innersvingen*, the court stated that "irreparable injury may be presumed
25 in cases of trademark infringement." No. CV12-5257, 2012 WL 3048363, at *2
   (C.D. Cal. July 26, 2012). The Ninth Circuit has since made clear that such a
   presumption is reversible error. *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*,
26 736 F.3d 1239, 1249 (9th Cir. 2013) (reversing entry of a preliminary injunction
   because "actual irreparable harm must be demonstrated to obtain a permanent
27 injunction in a trademark infringement action" based on *eBay Inc. v.*
   *MercExchange, L.L.C.*, 547 U.S. 388 (2006)). Similarly, in *Pacific Rollforming*,
28 the court required a mere "possibility" of irreparable harm. No. CIV. 07CV1897,
   2007 WL 3333212, at *3 (S.D. Cal. Nov. 7, 2007). The Supreme Court has since

15

1   opinions in *Ferry-Morse Seed Co. v. Food Corn, Inc.*[12] and *Nano-Proprietary, Inc.*
2   *v. Keesmann*[13] do not stand for the proposition that the loss of an exclusive license
3   constitutes irreparable harm.  *See Dominion Video Satellite, Inc.*, 356 F.3d at 1263
4   (citing *Ferry-Morse Seed Co.* as an example of a court **not** relying "solely on the
5   existence and subsequent breaches of the exclusivity provisions" for its finding of
6   irreparable harm).   Instead, courts "have identified the following as factors
7   supporting irreparable harm determinations: inability to calculate damages, harm to
8   goodwill, diminishment of competitive positions in marketplace, loss of employees'
9   unique services, the impact of state law, and lost opportunities to distribute unique
10  products." *Id.* at 1263.

11       Finally, the last case MACOM cites in support of its assertion is factually
12  distinguishable.   In *Fairchild Semiconductor Corp. v. Third Dimension (3D)*
13  *Semiconductor, Inc.*, the court found irreparable harm based in part on the
14  defendant's threat to terminate a non-exclusive license and grant an exclusive
15  license to a third party.  594 F. Supp. 2d 97, 110 (D. Me. 2009).  In contrast, here,
16  except for hearsay alleged by Plaintiffs, there is zero evidence that any party
17  (including Defendants) is planning to enter the market.   *See Boardman v. Pac.*
18  *Seafood Grp.*, 822 F.3d 1011, 1022 (9th Cir. 2016) ("[S]peculative injury does not
19  constitute irreparable injury sufficient to warrant granting a preliminary
20  injunction.").   ██████████████████████████████████████

21  ████████████████████████████████████████████████████████████

22  overruled the Ninth Circuit precedent permitting such a "lenient" standard. *Winter*
23  *v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (expressly overruling the
    Ninth Circuit's "possibility" standard because it is "too lenient").

24       [12] 729 F.2d 589, 591 (affirming a finding of irreparable harm where the
25  company was disadvantaged in the competitive market by its inability to market
    unique seed corn).

26       [13] No. 06 C 2689, 2007 WL 433100, at *7 (N.D. Ill. Jan. 30, 2007) (finding
27  irreparable harm based on the defendant's likelihood of selling the patents at issue
    and speculative damages with no express reliance on exclusivity of a license
28  agreement).

16

1   the posture of this case is completely different from that described in *Fairchild*

2   *Semiconductor Corp*.

3       In summary, there simply is no support for MACOM's assertion that the loss

4   of an exclusive license itself constitutes irreparable harm.

5       **C.    MACOM's allegations regarding loss of business do not support**

6           **an injunction on its third claim for relief.**

7           **1.    MACOM's allegations regarding loss of business are based**
        **on the wrong claim for relief.**

8       MACOM alleges that, absent an injunction, it will lose business.  (Dkt. 80 at

9   20:8–24:19.)  But MACOM's allegations are not tied to its third claim for relief on

10   termination of the License Agreement.  Lacking any irreparable harm flowing from

11   Infineon Americas' termination, MACOM improperly shifts to an entirely different

12   claim for relief (its second claim for relief) to argue loss of business.  MACOM

13   contends that it will be irreparably harmed *if*, as MACOM alleges in its second

14   claim for relief, Defendants market GaN-on-Si RF products ███████████

15   ███████████████████ (Dkt. 80 at 18–24 (relying on MACOM's breach

16   allegations in Dkt. 65 at ¶¶ 184, 203, 239).)[14]  Because MACOM's alleged business

17   losses purportedly will arise from the conduct that is the subject of MACOM's

18   *second* claim for relief as opposed to its *third* claim, those alleged business losses

19   do not support an injunction on MACOM's third claim for relief.

20       MACOM does not even try to show any loss of business based on its second

21   claim for relief on termination of the License Agreement.  MACOM does not

22   present evidence that its customers even know about the termination of the License

23   Agreement, much less that ███████████████████████████████

24

25   _____

    [14] *See* 20:17–19 ("If Infineon . . . begins to promote or sell GaN-on-Si

26   products"); 21:2 ("If Infineon enters the [GaN-on-Si] market"); 21:21 ("if Infineon enters the [GaN-on-Si] market"); 22:2

27   ████████████████████████████████

28                         Si").

would affect customer's purchasing decisions.   In fact, MACOM presents no admissible evidence that customers even care about a patent license in making purchasing decisions.   There is no foundation for MACOM to know why its customers make their purchasing decisions.

> **2.** **Even if MACOM were allowed to rely on another claim for relief (its second claim for relief), MACOM does not present sufficient evidence in support of its allegations regarding loss of business.**

MACOM fails to present sufficient evidence in support of its allegations regarding loss of business.   First, MACOM cannot show that Defendants are even marketing GaN-on-Si RF products as MACOM alleges.   Moreover, MACOM has not even tried to show that the alleged activities by Defendants would ████████ ████████████████████████████████████████████████████ be prohibited by ██ ████████████████████ MACOM's proposed injunction.   In addition, MACOM's evidence is insufficient to show that any loss of business is imminent or severe.

> **a)** **MACOM cannot show that Infineon Americas has marketed GaN-on-Si RF products as MACOM alleges.**

Although MACOM alleges that Infineon Americas has marketed GaN-on-Si RF products, MACOM does not have sufficient evidence to support that allegation. MACOM's only evidence is triple hearsay—a declaration by MACOM's head of sales in Asia describing a conversation with a staff member about a separate conversation that the staff member allegedly had with a customer about a separate conversation that the customer allegedly had with an employee of some unidentified Infineon affiliate.[15]   *See Chemical Engineering Corp. v. Marlo, Inc.*, 754 F.2d 331, 334 (Fed. Cir. 1984) ("It is inconceivable that [plaintiff] and its

---

[15] MACOM also relies on an Infineon AG investor presentation. (Dkt. 80 at 11:9–16 (citing Ex. J).)  But that presentation describes, at most, a plan to possibly develop GaN-on-Si product at some point in the future for 5G. Dkt. 73-2, Ex. J at 9 and 10 (stating that the GaN-on-Si product is for future 5G applications).  MACOM admits that this 5G design cycle is not for two to three years. (Dkt. 80 at 23:4–8 (citing Virk Decl. ¶¶ 43–45).)

18

counsel could have entertained the belief that, on the basis of the mere rumor, devoid of facts and evidence, presented to the trial court, an injunction could issue . . . .") (ordering the exclusive licensee to pay costs and fees for appeal). █

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

        **b)**      **MACOM has not even tried to** ███████████████████████████████████████████████████████████████████

MACOM contends the alleged business losses would result from Defendants' "developing, marketing, and selling GaN-on-Si RF base station products." (Dkt. 80 at 20:9–15.) MACOM, however, has not even tried to show that the alleged activities would constitute a violation of MACOM's exclusive patent license and thus be prohibited by MACOM's proposed injunction. As Infineon Americas explained in its motion to dismiss, MACOM must show that Infineon Americas is both practicing a licensed patent ████████████ (Dkt. 97 at 6:19–7:16) and that the alleged conduct on which it relies (*e.g.*, promising to deliver a customer a sample at some future date) ███████████ ████████████████████████████████████ (Dkt. 97 at 6:4–10:19).[16] But, MACOM has not alleged—much less shown—a likelihood of success in proving either.

MACOM presents no argument or evidence that the alleged GaN-on-Si RF base station products ████████████████ practice any licensed patent or that Infineon Americas has engaged in any conduct covered by the patents ████████ ██████████████████████ MACOM has not even tried to show that the alleged GaN-on-Si RF products ████████████ meet a single claim of

---
    16 ███████████████████████████████████████████████████████████████

any licensed patent.  MACOM does not mention a patent or the location of the conduct allegedly infringing that patent.  Because each patent only applies to activities in a specific country, MACOM simply cannot show ███████████ ████████████████████████████ without evidence of the patent allegedly infringed and the location of Defendant's alleged activities.[17]  (Dkt. 97 at 10:20–11:13.)  Because it cannot meet this element of proof, MACOM contends that it is not required to prove infringement.  (Dkt. 80 at 23:16–20.)  MACOM, however, cannot be entitled to "an injunction prohibiting Infineon ██████████████ █████████████ (Dkt. 80 at 23:21–22) *without* showing a likelihood of success in proving that Defendants have ██████████████████████— which requires showing that Infineon Americas has practiced a licensed patent ████████████████████.

c)    **MACOM's evidence is insufficient to show that any loss of business is imminent or severe.**

Moreover, MACOM's evidence is insufficient to show that any loss of business is imminent or severe.  *See Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1022 (9th Cir. 2016) ("[A] plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief.").  MACOM contends that the "key window" for the current 4G/LTE base station design cycle is in the second half of 2016 and ██████████████████████████ ████████████████████████████████████████ █████████████████████████████████ (Dkt. 80 at 23:4–9 (citing Virk Dec. at ¶¶ 43–44).)  But MACOM cannot show that Defendants are poised to enter the 4G/LTE design cycle with GaN-on-Si RF base station products. █████████████████████████████████

---

[17] MACOM is silen█████████████████████████ ██████████████████████████████████████ *Asia* (Xiong Decl. at ¶ 3)).)

20

1
██████████████████████████████████████████████

2
████████████████████████████   MACOM's evidence to the contrary is an

3
unreliable triple hearsay report and an investor presentation describing, at most, a

4
possible plan to develop GaN-on-Si for 5G at some point in the future.[18]   MACOM

5
has thus failed to show any imminent or severe harm that will occur absent its

6
proposed injunction.

7
**III.   MACOM's proposed injunction order is improper as a matter of law.**

8
    **A.   MACOM's proposed order is not limited to its third claim for**

9
        **relief.**

10
    MACOM moves solely on its third claim for relief, which seeks a declaratory

11
judgment that the 2010 License Agreement is not terminated.  (Dkt. 80 at 1:2-5,

12
13:18.)  But MACOM's vague proposed injunction sweeps much more broadly.  In

13
the proposed injunction, MACOM seeks to enjoin Defendants not from ***terminating***

14
the License Agreement, but rather from ***breaching*** the License Agreement:

15
"[Defendants] are hereby enjoined from taking any action inconsistent with that

16
License Agreement."  (Dkt. No. 73, Proposed Order.).   MACOM improperly

17
presents its third claim for relief on termination as a Trojan horse—a veiled attempt

18
to obtain an overbroad preliminary injunction against ***all*** possible breaches of the

19
License Agreement, without satisfying the burden of proof required to obtain an

20
injunction on any of its allegations for breach of contract.

21
    MACOM did not even attempt to meet its burden of proof to show that it is

22
entitled to the broad injunction in its proposed order.  MACOM's proposed order

23
would arguably encompass at least MACOM's first, second, and fourth claims for

24
relief, and more.   Those claims for relief allege various acts that purportedly

25
constitute breach, such as marketing GaN-on-Si RF products that practice the

26
licensed patents ████████████████████████   (Dkt. 65 at ¶¶ 184, 203, 239),

27
    [18] MACOM admits that this 5G design cycle will not begin for two to three

28
more years. (Dkt. 80 at 23:4–8 (citing Virk Decl. ¶¶ 43–45).)

1  ███████████████████████████████████████ (Dkt. 65 at ¶¶ 204), ██████

2  ███████████████████████████ (Dkt. 65 at ¶¶ 240), ████████████████

3  ██████████████████████ (Dkt. 65 at ¶¶ 204, 222), and ████████████████

4  ██████████████ (Dkt. 65 at ¶¶ 227, 228).  MACOM has not even tried to satisfy the

5  elements of proof necessary to obtain an injunction for any of those claims.[19]  For

6  that reason, MACOM has not asked and cannot ask for an injunction tailored to

7  prevent that specific alleged conduct.  Nevertheless, MACOM's proposed

8  injunction would arguably encompass all that conduct, and more.

9   **B.  MACOM's proposed order fundamentally fails to satisfy the specificity required by law**
10

11  MACOM's proposed order also fundamentally fails to satisfy the specificity

12  required by law.  Rule 65(d) requires that any injunction be "specific in terms" and

13  describe "in reasonable detail, and not by reference to the complaint or other

14  document, the act or acts sought to be restrained."  Fed.R.Civ.P. 65(d); *see Schmidt*

15  *v. Lessard*, 414 U.S. 473, 476 (1974) ("[T]he specificity provisions of Rule 65(d)

16  are no mere technical requirements.  The Rule was designed to prevent uncertainty

17  and confusion on the part of those faced with injunctive orders, and to avoid the

18  possible founding of a contempt citation on a decree too vague to be understood.").

19  Similarly, California law requires "contractual terms which are sufficiently definite

20  to enable the court to know what it is to enforce."  *Int'l Medcom, Inc.*, 2015 WL

21  7753267, at *2.  For these reasons, the lack of specificity in the scope of

22  MACOM's request for relief is fatal.  *See Reno Air Racing Ass'n., Inc. v. McCord*,

23  452 F.3d 1126, 1132 (9th Cir. 2006) ("If an injunction does not clearly describe

24  prohibited or required conduct, it is not enforceable . . . .") (quoting *Gates v. Shinn*,

25  98 F.3d 463, 468 (9th Cir. 1996)).

26

27  _____

28  [19] For example, MACOM has not even tried to show a likelihood of success as to those various breach of contract claims.

22

1    MACOM's proposed injunction violates Rule 65(b) because it refers to

2    another document (the License Agreement). *See also Los Angeles Trust Deed &*

3    *Mortgage Exch. v. Sec. & Exch. Comm'n*, 264 F.2d 199, 205 (9th Cir. 1959)

4    (preliminary injunction violated FRCP 65(d) because it referenced the complaint).

5    Moreover, it also fails to specify the exact conduct that is being enjoined.

6    MACOM's injunction would prohibit Defendants "from taking ***any action***

7    inconsistent with that License Agreement," but the proposed order does not provide

8    notice of what specific conduct is inconsistent with the License Agreement.[20]  (Dkt.

9    No. 73, Proposed Order (emphases added).)  Nothing would prevent MACOM from

10   moving for contempt proceedings based on any of MACOM's various allegations

11   of breach.  It is because the contempt power is such a "potent weapon," that Rule

12   65(d) requires specificity to provide parties notice of what specific conduct is

13   enjoined.  *Int'l Longshoremen's Ass'n. v. Philadelphia Marine Trade Ass'n*, 389

14   U.S. 64, 76 (1967).

15   Even if MACOM had shown that it is entitled to an injunction on its third

16   claim for relief (the ***only*** claim on which MACOM has moved), that injunction

17   would need to be narrowly tailored to that third claim for relief.  First, as explained

18   above, the third claim for relief is for improper ***termination*** of the License

19   Agreement—not ***breach*** of the License Agreement.  But, even as to termination,

20   Infineon Americas could not be enjoined from generally terminating the agreement.

21   For example, some future improper conduct by MACOM may justify termination

22   of the agreement.  Thus, even if the Court were inclined to issue an injunction on

23   [20] Although MACOM's ▮▮▮▮▮▮▮▮▮▮fers to "development, marketing, or sales activities ▮▮▮▮▮▮▮▮▮▮▮" this language does

24   not limit the scope of the injun▮▮▮▮▮▮▮▮▮▮▮Order ("including but not limited to").)  Moreover, this language also lacks specificity because it does not

25   identify the specific product found to violate MACOM's exclusive patent license. In the patent context, the Federal Circuit has held that an injunction must be limited

26   to the specific device found to infringe.  *International Rectifier Corp. v. IXYS*

27   *Corp.*, 383 F.3d 1312, 1316–17 (Fed. Cir. 2004).  Thus, here, the injunction ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮to practice the licensed patents and thus

28

23

MACOM's third claim for relief, that injunction should, at most, enjoin Infineon Americas from terminating the 2010 License Agreement based on MACOM's sales of GaN-on-SiC products outside the scope of its patent license.  For the reasons stated above, MACOM is not entitled to that injunction.

## IV.   The balance of hardships and public interest factors weigh against any injunction.

### A.   The balance of hardships weighs in Defendants' favor.

The balance of hardships weighs in favor of Defendants at least because MACOM's requested relief is vague and overbroad.  MACOM's proposed order would prevent Defendants "from taking ***any action*** inconsistent with" the 2010 License Agreement.  This injunction represents an extraordinary hardship because MACOM has alleged several claims for breach of contract.  MACOM failed to address those claims in the likelihood-of-success section of its motion  Thus, MACOM's injunction would impose on Defendants an unfair risk of contempt based on several outstanding contract disputes that have not even been presented to the Court, much less resolved.

### B.   The public interest factor does not support an injunction.

As explained above, MACOM's vague and overbroad injunction would greatly restrict Defendants' freedom to operate and thus would adversely affect the public's interest in encouraging competition.  *MedSpring Grp., Inc. v. Feng*, 368 F. Supp. 2d 1270, 1280 (D. Utah 2005) ("[T]he Court finds that the issuance of a preliminary injunction in this case would adversely affect the public interest in encouraging competition."); *Dellwood Foods, Inc. v. Kraftco Corp.*, 420 F. Supp. 424, 428 (S.D.N.Y. 1976) ("Since competition is generally held to benefit the public, any reduction in competition must be considered against the public interest").[21]

---

[21]  Contrary to MACOM's argument, there is no public interest that favors enforcing private agreements.  In fact, "'[w]hen the reach of the injunction is narrow, limited only to the parties, and has no impact on non-parties, the public

24

## V.  MACOM is not entitled to any injunction against Infineon AG.

### A.  MACOM has not established personal jurisdiction over Infineon AG.

As explained in Infineon AG's motion to dismiss, MACOM cannot establish personal jurisdiction over Infineon AG.  (Dkt. 99 at Sections I, II.A, III.A, and IV.A.)  Because MACOM cannot establish personal jurisdiction over Infineon AG, the Court cannot enter any injunction against Infineon AG.  *Celgard, LLC v. LG Chem, Ltd.*, 624 F. App'x 748, 751 (Fed. Cir. 2015) (unpublished) (A "district court cannot enjoin a party if it does not have jurisdiction over that party.").

### B.  Infineon AG is not a party to the 2010 License Agreement that forms the basis of MACOM's injunction request.

Also as explained in Infineon AG's motion to dismiss, Infineon AG is not even a party to the agreements at issue.[22]  (Dkt 99 at 11:15–17 (citing Pelzer Decl. at ¶¶ 7–9; LeFort Decl. at ¶ 6).)  On that basis alone, Infineon AG cannot be enjoined not to breach the License Agreement or not to terminate the License Agreement.  (Dkt 99 at 12:12–25; *see also Sci. Weight Loss, LLC v. U.S. Med. Care Holdings, LLC*, No. CV 08-2852, 2008 WL 4691028, *3 (C.D. Cal. Oct. 22, 2008) (stating the "Defendants are not parties to the underlying contracts . . . .  Therefore, Plaintiffs may not rely on a breach of contract theory to obtain [an injunction] against the [] Defendants.").)

## CONCLUSION

For the foregoing reasons, MACOM's motion for preliminary injunction should be denied in its entirety.

---

interest will be at most a neutral factor in the analysis rather than one that favor[s] [granting or] denying the preliminary injunction.'"  *Pom Wonderful LLC v. Pur Beverages LLC*, No. CV1306917, 2015 WL 10433693, at *4 (C.D. Cal. Aug. 6, 2015) (citing *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009)).

[22]  Although MACOM has tried to save its contract claims against Infineon AG based on conclusory theories of alter ego, agency, and ratification, MACOM does not have sufficient evidence to show likelihood of success on those theories. (Dkt 99 at 13:4–16:16.)

1

2

Dated: September 7, 2016

3

By:___/s/ David G. Wille_____
David G. Wille

4

Texas State Bar No.  00785250
E-mail:  david.wille@bakerbotts.com

5

Jeffery D. Baxter
Texas State Bar No. 24006816

6

E-mail:  jeff.baxter@bakerbotts.com
Brian D. Johnston

7

Texas State Bar No. 24080965
E-mail:  brian.johnston@bakerbotts.com

8

James C. Williams
Texas State Bar No. 24075284

9

E-mail:  james.williams@bakerbotts.com
Charles Yeh

10

Texas State Bar No. 24075319
E-mail:  charles.yeh@bakerbotts.com

11

12

BAKER BOTTS L.L.P.
2001 Ross Avenue

13

Dallas, Texas 75201
Telephone: (214) 953-6791

14

Facsimile:  (214) 953-6503

15

Attorneys for Defendants Infineon
Technologies AG and Infineon

16

Technologies Americas Corp.

17

18

19

20

21

22

23

24

25

26

27

28