Lara J. Dueppen, Bar No. 259075
LDueppen@perkinscoie.com
PERKINS COIE LLP
1888 Century Park East, Suite 1700
Los Angeles, CA 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Jonathan M. James (admitted *pro hac vice*)
JJames@perkinscoie.com
PERKINS COIE LLP
2901 North Central Avenue, Suite 2000
Phoenix, AZ 85012-2788
Telephone: 602.351.8000
Facsimile: 602.648.7000

Amanda Tessar (admitted *pro hac vice*)
ATessar@perkinscoie.com
PERKINS COIE LLP
1900 Sixteenth Street, Suite 1400
Denver, CO 80202-5255
Telephone: 303.291.2300
Facsimile: 303.291.2400

**ATTORNEYS FOR PLAINTIFFS**
(Additional Counsel Listed on Signature Page)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC., a Delaware corporation, and NITRONEX, LLC, a Delaware limited liability company,<br><br>    Plaintiffs,<br><br>    v.<br><br>INFINEON TECHNOLOGIES AG, a corporation organized under the laws of Germany, and INFINEON TECHNOLOGIES AMERICAS CORP., a Delaware corporation,<br><br>    Defendants. | Case No. CV 16-02859 CAS (PLAx)<br><br>**PLAINTIFFS' OPPOSITION TO INFINEON TECHNOLOGIES AMERICAS CORP.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

STATEMENT OF FACTS ..................................................................................... 3

LEGAL STANDARDS ......................................................................................... 5

   A.   Motion to Dismiss For Lack Of Subject Matter Jurisdiction ...................... 5

   B.   Motion To Dismiss For Failure To State A Claim ...................................... 6

ARGUMENT ...................................................................................................... 7

   A.   MACOM's Fifth Claim For Relief Properly States A Claim for Declaratory Judgment That MACOM's GaN-on-Si RF Products Do Not Infringe The Nitronex Patents ███████████ ████████ ................................................................................... 7

        1.   Infineon's Termination ██████████████ ████████████ Has Created An Active And Immediate Infringement Controversy Between MACOM And Infineon.............. 8

        2.   MACOM Does Not Need To, But Has, Pleaded That It Practices The Nitronex Patents ................................. 12

        3.   The Cases Americas Cites Do Not Support Its Position..................... 14

        4.   MACOM's Complaint Clearly Identifies The Products At Issue........................................................................................... 16

   B.   MACOM's Complaint States A Claim That Infineon's GaN-on-Si RF Activities Breached The License Agreement ...................................... 18

        1.   ████████████████████████████████ ██████████ ....................................................................... 19

        2.   ███████████████████████████████ ...............21

        3.   Americas' "Offer To Sell" Arguments Ignore Both The Stage Of This Case And The Allegations Of MACOM's Complaint ......... 23

        4.   ███████████████████████████████ ........................................................................ 24

CONCLUSION.................................................................................................. 25

MACOM'S OPPOSITION TO INFINEON AMERICAS' MOTION TO DISMISS

## TABLE OF AUTHORITIES

**CASES**

*ABB, Inc. v. Cooper Indus., LLC,*
  635 F.3d 1345 (Fed. Cir. 2011) ....................................................... 6, 9, 10, 11

*Anderson v. Fishback,*
  No. 05-cv-729, 2009 WL 2423327 (E.D. Cal. Aug. 6, 2009) .......................... 6

*Arkema Inc. v. Honeywell Int'l, Inc.,*
  706 F.3d 1351 (Fed.Cir.2013) ............................................................. 6

*Ashcroft v. Iqbal,*
  556 U.S. (2009) ......................................................................... 7, 22

*Bangura v. Hansen,*
  434 F.3d 487 (6th Cir. 2006) .............................................................. 6

*Bell Atl. Corp. v Twombly,*
  550 U.S. 544 (2007) ............................................................ 6, 7, 17, 24

*Blizzard Entm't Inc. v. Ceiling Fan Software LLC,*
  28 F.Supp.3d 1006, 1017 (C.D. Cal. 2013) ............................................. 19

*Excelstor Tech., Inc. v. Papst Licensing GMBH & Co.,*
  133 F.Supp.3d (D. Mass. 2015) ................................................... 15, 16, 18

*Esoterix Genetic Labs. LLC v. Qiagen, Inc.,*
  2010 WL 2560481 (N.D. Cal. June 22, 2010) ........................................... 23

*Essai, Inc. v. Delta Design, Inc.,*
  2013 WL 624393, at *3 (N.D. Cal. Dec. 3, 2013) ................................... 16, 18

*Hedges v. U.S.,*
  404 F.3d 744 (3d. Cir. 2005) .............................................................. 6

*Hewlett-Packard Co. v. Acceleron LLC,*
  587 F.3d 1358 (Fed. Cir. 2009) ......................................................... 11

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.,*
  681 F.3d 1323 (Fed. Cir. 2012.) ......................................................... 7

*K-Tech Telecomm'ns, Inc. v. Time Warner Cable, Inc.,*
  714 F.3d 1277 (Fec. Cir. 2013) ......................................................... 17

Mark A. Lemley, *Patenting Nanotechnology*, 58 Stan L. Rev. 601,
  613-614 (2005) ......................................................................... 21

*MedImmune, Inc. v. Genentech, Inc.,*
  549 U.S. 118 (2007) ............................................................... passim

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*,
   420 F.3d 1369 (Fed. Cir. 2005) ........................................................ 24

*Microsoft Corp. v. DataTern*,
   755 F.3d 899 (Fed. Cir. 2014) .................................................... 17, 18

*Panavise Prods., Inc. v. Nat'l Prods., Inc.*
   306 F. App'x 570 (Fed. Cir. 2009) ............................................. 14, 15

*SanDisk Corp. v. STMicroelectronics, Inc.*,
   480 F.3d 1372 (Fed. Cir. 2007) ..................................................... 6, 10

*Unisense Fertilitech AS v. Auxogyn, Inc.*
   896 F.Supp.2d 822 (N.D. Cal. 2012) ................................................. 15

*Wing Shing Products, Ltd. v. Simatalex Man. Co.*,
   479 F.Supp.2d 388 (S.D.N.Y. 2007) ................................................. 25

*Wistron Corp. v. Phillip M. Adams & Associates*,
   2011 WL 165446 (N.D. Cal. April 28, 2011) .................................. 18

*Xilinx, Inc. v. Invention Inv. Fund I LP*,
   2011 WL 3206686 (ND. Cal. July 27, 2011) .................................. 18

**STATUTES**

35 U.S.C §271 ........................................................................................ 24

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 8(a)(2) ..................................... 6, 7, 18

Federal Rule of Civil Procedure 12(b) .................................. 5, 7, 17, 23

TABLE OF ABBREVIATIONS AND CONVENTIONS

| ABBREVIATION | MEANING |
|---|---|
| AG | Defendant Infineon Technologies AG |
| Americas | Defendant Infineon Technologies Americas Corp. |
| *Citation Convention* | All internal citations are omitted. |
| Complaint | MACOM's First Amended Complaint, ECF No. 65 |
| *Emphasis Convention* | All emphasis is added, unless otherwise noted. |
| FAC | MACOM's First Amended Complaint, ECF No. 65 |
| GaN-on-Si | Gallium Nitride on Silicon—a different and competing technology to GaN-on-SiC |
| GaN-on-SiC | Gallium Nitride on Silicon Carbide—a different and competing technology to GaN-on-Si |
| Infineon | Defendant Infineon Technologies AG  and Defendant Infineon Technologies Americas Corp., collectively |
| IR | International Rectifier—the predecessor to Americas |
| MACOM | Plaintiffs MACOM Technology Solutions Holdings, Inc. and Nitronex, LLC, collectively, unless the context dictates otherwise |
| Nitronex | Nitronex Corporation, the predecessor to Nitronex LLC, unless the context dictates that Nitronex LLC is referenced |
| *Quotation Convention* | All internal quotation marks from citations are omitted. |

### INTRODUCTION

Infineon Technologies Americas Corp. ("Americas") makes a narrow motion to dismiss.  It makes *no* argument for dismissal of MACOM's First, Third, Fourth, Sixth, and Seventh Claims for Relief.  Instead, Americas' motion addresses only two of MACOM's seven claims against it:  the Second and Fifth Claims.  For those claims, Americas strains to identify supposed technical failures in MACOM's pleadings.  But the alleged defects to which Americas points either do not apply to the claims actually asserted and/or cannot be reconciled with the detailed factual allegations in MACOM's 60-page Complaint.

MACOM's Fifth Claim seeks a declaration that MACOM's GaN-on-Si RF products do not infringe the Nitronex Patents for the simple reason that MACOM is licensed to make and sell those products.  Americas argues—notwithstanding its announced termination of MACOM's license—there is no "actual controversy" as to whether MACOM's products infringe.  But the entire point of a patent license is so that licensee can take comfort that it is *not* under threat of an infringement suit.

The circumstances of the termination here create a case or controversy supporting federal declaratory judgment jurisdiction.  As detailed in MACOM's Complaint, Nitronex (MACOM's predecessor) pioneered the technology embodied in the foundational Nitronex Patents for use its in own GaN-on-Si products and then

MACOM acquired Nitronex in 2014 precisely to: gain access to Nitronex's GaN-on-Si RF technology, and "ensure that its GaN-on-Si RF products would never be the subject of infringement allegations

under the Nitronex Patents." [FAC ¶210.]  Americas' suggestion that terminating the License Agreement does not put MACOM under threat of suit (which, incidentally, is no longer the test for declaratory judgment jurisdiction) entirely ignores the context of the parties' relationship, the Nitronex Patents, and the License Agreement.  It is also inconsistent with threats that Infineon has already made against MACOM's GaN-on-Si wafer supplier, as described in the Complaint.

Under these circumstances, Americas' contention that MACOM ███ ███████████████████████████████████████████████████████████████ ████████████████████  Indeed, the very fact that MACOM brought this suit reinforces what is obvious from the Complaint:  MACOM is practicing one or more Nitronex Patents ████████████████████████████████████ ██████████████████████  This is the very definition of a case or controversy that supports declaratory judgment jurisdiction.

Americas' arguments for MACOM's Second Claim—a claim that Infineon breached the License Agreement ████████████████████████████████ ███—fare no better.  In seeking dismissal, Americas pretends that MACOM's breach claim is something that it is not:  a patent infringement claim by MACOM against it.  Having set up that straw man, Americas then attempts to impose all the technical and geographic requirements of a traditional patent infringement claim on MACOM.  But Americas provides *no* support for this approach, ████████ ██████████████████████████████████████  Even if Americas' assertions that MACOM was required to allege patent infringement were credited, however, MACOM has met this standard.  MACOM's Complaint recites ample facts to raise plausible (indeed, highly probable) inferences on this issue, including both that Americas (a U.S. company with California facilities) is designing and developing (*i.e.*, using) and marketing (*i.e.*, offering to sell) ████ ██████████████████████████████████████  and also that the Nitronex Patents are foundational—████████████████████████████

MACOM'S OPPOSITION TO INFINEON AMERICAS' MOTION TO DISMISS

1  ████████████████████████████████████.  Moreover, the timing of

2  Infineon's actions, as detailed in the Complaint, creates a reasonable inference that

3  Infineon is practicing the Nitronex Patents; ███████████████████████████

4  ████████████████████████████████████████████████

5  ████████████████████████████████████████████.

6  **STATEMENT OF FACTS**

7  As further set forth in MACOM's detailed Complaint, MACOM and its

8  predecessor (Nitronex) have long had a business relationship with Infineon's

9  predecessor (IR) relating to GaN-on-Si products and technologies.  [*See* FAC ¶¶2-

10  3, 64-78, 97-98.]  Nitronex was a pioneer in GaN-on-Si technology, having devoted

11  its research and development (and patenting) efforts towards GaN-on-Si

12  technologies since its founding as a company in 1999.  [*Id.* ¶¶40, 51.]

13  When IR wanted to get into GaN-on-Si as early as 2004, it partnered with

14  Nitronex to learn this budding technology.  [*See id.* ¶¶67-68.]  Under the terms of a

15  2004 agreement, ██████████████████████████████████████

16  ████████████████████████████████████████████

17  ████████████████████████████████████████████

18  ████████████████████████████████████████

19  ███████████████████████████████.  [*Id.* ¶¶67, 71-75.]

20  When Nitronex needed another infusion of cash in 2010, the Nitronex-IR

21  relationship evolved.  [*Id.* ¶¶77-78.]  Specifically, IR purchased the Nitronex

22  Patents and, ██████████████████████████████████████████

23  ████████████████████████████████████████████████

24  ████████████████████████████████████████████████

25  ████████████████████████████████████████████████

26  ████████████████████████████████████████████

27  ████████████████████████████████████████████████

28  ████████████████████████████████████████████████

1

2

3

4      MACOM acquired Nitronex in 2014, thus acquiring Nitronex's license and

5 products.  [*Id.* ¶¶99-105.]  As explained in Paragraph 210 of the Complaint,

6 "MACOM acquired Nitronex … to:  provide MACOM with access to Nitronex's

7 fundamental and innovative GaN-on-Si technologies for use in RF applications;

8 enhance MACOM's development of GaN-on-Si RF products and process

9 technology;

10

11      and ***ensure that its GaN-on-Si RF products would never be the subject***

12 ***of infringement allegations under the Nitronex Patents***."

13

14

15

16      Things were amicable between MACOM and IR until Infineon acquired IR

17 in early 2015.  [*Id.* ¶105.]  Notably, Infineon acquired IR to get access to IR's

18      GaN-on-Si technologies.  [*Id.* ¶¶107-108.]  After the acquisition,

19 Infineon almost immediately began attempts to disrupt and/or to renegotiate the

20 parties' relationship, including the License Agreement.

21      [*Id.* ¶¶109, 112-113.]

22      MACOM's supplier of the GaN-on-Si wafers used in MACOM's GaN-on-Si

23 RF products is a company called IQE.[1]

24      IQE to supply these wafers to

25 MACOM.  [FAC ¶114.]  Immediately after closing the acquisition of IR (and,

26

27 _____

28 [1]   MACOM's Complaint did not identify the supplier.  For ease of reference only,
       MACOM does so here; that identity does not affect any of the arguments above.

1  tellingly, more than one year after the public announcement of the MACOM/IQE

2  relationship), Infineon sent IQE a letter attacking IQE's rights to supply to

3  MACOM.  Specifically, the letter complained of the potential "proliferation of

4  [Infineon's] patented technology" and asked IQE to discuss "the legal basis upon

5  which [it] intends to operate."  [See ECF No. 92-4, Ex. 2; FAC ¶116.]  In other

6  words, the letter—although it did not identify any particular patents, products, or

7  geographies—was a thinly-veiled assertion that IQE (and therefore MACOM) was

8  infringing Infineon's (i.e., Nitronex's) patents.

9          Then, ██████████████████████████████████████████

10 ████████████████████████ Infineon changed gears.  It repeatedly

11 attempted to renegotiate the IR-Nitronex agreements, trying to ████████████

12 ██████████████████████████████ Id. ¶¶4-5,119-120, 124-129.]

13 After MACOM refused to do so, Infineon purported to terminate MACOM's

14 license.  [Id. ¶¶4-5, 141-150.]  MACOM filed its original complaint soon thereafter.

15 [See ECF Nos. 1, 13.]  MACOM then uncovered evidence that Infineon, as feared

16 ████████████████████████████████████████████████████████

17 ██████████████████████████████████ [FAC ¶¶8, 155-164,

18 184.]  MACOM amended its complaint based on these new facts, adding a new

19 claim for relief (i.e., its Second Claim for Relief).  [Id. ¶¶8, 164, 177-187.]

20                              LEGAL STANDARDS

21 A.     Motion to Dismiss For Lack Of Subject Matter Jurisdiction

22          To satisfy the requirement for federal subject matter jurisdiction and defeat a

23 motion under Federal Rule of Civil Procedure 12(b)(1), a patent declaratory

24 judgment plaintiff must demonstrate a substantial and actual controversy exists

25 between the parties that is sufficiently immediate and real to warrant a declaratory

26 judgment.  See MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007).

27 This test replaced the old "reasonable apprehension of suit" previously used to

28 determine whether declaratory judgment jurisdiction would lie.  See id. at 122, 132

n.1.  The law is crystal clear that declaratory judgment jurisdiction can lie outside of situations where a patent owner has made express accusations of infringement. *See, e.g.*, *Arkema Inc. v. Honeywell Int'l, Inc.*, 706 F.3d 1351, 1357 (Fed.Cir.2013) (holding that it is not "necessary that a patent holder make specific accusations" of infringement against a declaratory judgment plaintiff).

Under *MedImmune*, a substantial controversy sufficient to provide jurisdiction for a patent declaratory judgment claim of noninfringement can exist even where the declaratory judgment plaintiff is still licensed.  *Id.* at 767-68, 777. It logically follows that a controversy is even more immediate where a licensee no longer has the benefit of a long-existing license because the licensor has purported to terminate that needed license.  As the Federal Circuit has explained:

> In the context of conduct prior to the existence of a license, declaratory judgment jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee. ***But Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do.***

*SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380-81 (Fed. Cir. 2007).  The Federal Circuit has exercised declaratory judgment jurisdiction, for example, where a patentee has suggested that a licensee's supplier is unlicensed. *ABB Inc. v. Cooper Indus., LLC*, 635 F.3d 1345, 1346-49  (Fed. Cir. 2011).

**B.     Motion To Dismiss For Failure To State A Claim**

The defendant bears the burden of proving that a plaintiff has failed to state a claim.  *E.g.*, *Anderson v. Fishback*, No. 05-cv-0729, 2009 WL 2423327, at *2 (E.D. Cal. Aug. 6, 2009); *Hedges v. U.S.*, 404 F.3d 744, 750 (3d. Cir. 2005); *Bangura v. Hansen*, 434 F.3d 487, 498 (6th Cir. 2006).  "Federal Rule of Civil Procedure 8(a)(2) 'requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v Twombly*, 550 U.S.

544, 555 (2007).  A complaint meets the liberal pleading standard of Rule 8(a)(2) and will survive a motion to dismiss under Rule 12(b)(6) if it provides enough supporting facts to render plausible plaintiff's claim for relief.  *See, e.g.*, *id.* at 556-57 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A claim is facially plausible when a plaintiff has pleaded "factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. 662, 678.  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* at 679.  Further, where the facts pleaded could give rise to multiple inferences, all reasonable inferences should be drawn in favor of the plaintiff.  *See In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1340 (Fed. Cir. 2012) ("Nothing in Twombly or its progeny allows a court to choose among competing inferences as long as there are sufficient facts alleged to render the non-movant's asserted inferences plausible.").

This pleading standard does not require detailed factual allegations; Rule 8 "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" in support of the claims alleged.  *Twombly*, 550 U.S. at 556.  Further, the plausibility standard is "context-specific" and recognizes that limited direct evidence of facts may be available before discovery.  *See, e.g., Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

**ARGUMENT**

**A.    MACOM's Fifth Claim For Relief Properly States A Claim for Declaratory Judgment That M███████████████oducts Do Not Infringe The Nitronex Patents ██████████████**

MACOM's Fifth Claim for Relief seeks a declaratory judgment that MACOM's GaN-on-Si RF products do not infringe the Nitronex Patents because

1

2

3

4    [FAC ¶¶147-150, 216-17.]

5    Americas moves to dismiss MACOM's declaratory judgment claim on the

6    ground that there is no "actual [patent] controversy" between MACOM and

7    Americas over MACOM's right to practice the Nitronex Patents because

8

9

10

11    [Mot. at 11:15-28, 14:11-28.]  As explained below, Americas'

12    Motion should be denied because it: (i) applies an "express accusation of

13    infringement" standard that was overruled by the Supreme Court nearly a decade

14    ago; (ii) ignores that MACOM seeks a declaration that its GaN-on-Si products do

15    not infringe the Nitronex Patents                      not based on whether

16    the products technically infringe any of the Nitronex Patents; and (iii) disregards

17    the express and detailed allegations in MACOM's Complaint setting forth the real,

18    immediate controversy regarding MACOM's rights under the Nitronex Patents.

19    Americas also argues that MACOM's claim must be dismissed in part (**not**

20    whole) because, even though MACOM's Complaint identifies by both category and

21    part number twenty-nine specific MACOM GaN-on-Si RF products, MACOM has

22    supposedly failed to provide fair notice of the products at issue.  The information

23    that MACOM provided in its Complaint more than satisfies the jurisdictional

24    requirements, so this argument should be rejected as well.

25    **1.    Infineon's Termination**

26    **Has Created An Active And Immediate Infringement Controversy Between MACOM And Infineon**

27    To begin, it is undisputed by Americas (and indisputable as a matter of law)

28

-8-                                 MACOM'S OPPOSITION TO INFINEON AMERICAS'
                                         MOTION TO DISMISS

that there is **federal** subject matter jurisdiction for MACOM's declaratory

judgement claim that its GaN-on-Si products do not infringe the Nitronex Patents

███████████████████████████████ *See ABB*, 635 F.3d at 1349-52.  In *ABB*, the

Federal Circuit overturned a dismissal for lack of jurisdiction in a case where the

sole basis for a noninfringement declaratory judgment claim ████████ was that

the plaintiff was licensed.  *Id.*  The Federal Circuit specifically rejected an argument

that this type of declaratory judgment claim raised only a state law defense (*i.e.*,

license) and concluded that federal jurisdiction is proper in these circumstances.  *Id.*

at 1350 ("Even if the only issue in that suit would be a state law defense, subject

matter jurisdiction does not depend on whether a federal law issue will be the crux

of the case but instead whether federal patent law creates the cause of action.").

It also undisputed and indisputable by Americas (at least for purposes of this motion to dismiss) that:

- Nitronex pioneered the use of GaN-on-Si for high-frequency RF devices and developed a significant patent portfolio based on its innovations. [FAC ¶¶51-63.]

- The Nitronex Patents claim technology foundational to effective GaN-on-Si devices, including RF devices.  [*Id.*]

- In 2010, Nitronex sold the Nitronex Patents to IR, ████████████ ██████████████████████████████ [*Id.* ¶¶74-96.]

- MACOM acquired its GaN-on-Si RF business by purchasing Nitronex, the original assignee of the patents at issue.  [*Id.* ¶¶99-105.]

- MACOM acquired Nitronex to: "provide MACOM with access to Nitronex's fundamental and innovative GaN-on-Si technologies for use in RF applications; …███████████████████████████ ████████████████████████ and ensure that its GaN-on-Si RF products would never be the subject of infringement allegations under the Nitronex Patents."  [*Id.* ¶210.]

- ████████████████████████████████████████ [*Id.*

¶¶3, 151-52.]

- Infineon has purported to terminate MACOM's license █████ ██████████ [*Id.* ¶¶4-5, 141-154.]

- MACOM continues to design, market, and sell GaN-on-Si RF products and considers these products to be of the highest importance for the company's growth. [*Id.* at ¶¶151-154.]

These "facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127; *see ABB*, 635 F.3d 1346-47.

Americas nevertheless argues that there is no actual controversy here █████ ███████████████████████████████████████████ ████████████████████████ This argument fails for several reasons.

First, it is settled law that an express threat of suit by the patent owner is not a necessary predicate to an infringement controversy sufficient for declaratory judgment jurisdiction. *See, e.g.*, *SanDisk*, 480 F.3d at 1382-83 (reversing a dismissal for lack of subject matter jurisdiction, even where the patent owner had expressly stated that it would not sue the declaratory judgment plaintiff). Indeed, the *MedImmune* Court found that a sufficient controversy existed even where a declaratory judgment plaintiff was *still licensed* to practice the patents. *MedImmune*, 549 U.S. at 137. The facts here are even stronger than in *MedImmnue* because Infineon has gone so far as to purport to terminate ████████████ █████████████ [*See* FAC ¶¶5, 51-63, 87, 152.] Americas' actions create a clear controversy with respect to infringement.

Second, Americas' argument misapprehends the relief sought by MACOM. For clarity, MACOM is *not* seeking a declaration that its GaN-on-Si RF products do not infringe particular Nitronex Patents as a technical matter because they do not satisfy required elements of specific patent claims. Instead, as it is permitted to do, MACOM seeks a declaration that its products—as a class—do not infringe ██

1   ███████████████████████████████████████████████████

2   ████████   By terminating the license, Americas has taken the unequivocal

3   position that ██████████████████████████████████ [*Id.*]

4   Where MACOM asserts that █████████████████████████████

5   ████████████████████████████████████████ as here, there is

6   an "actual controversy" that supports federal declaratory judgment jurisdiction.  *See*

7   *ABB*, 635 F.3d at 1349-52.  Thus, it does not matter that Infineon has not expressly

8   recited "magic words" of accusation █████████████████████

9   █████████████████████.  *Hewlett-Packard Co. v. Acceleron*

10  *LLC*, 587 F.3d 1358, 1362 (Fed. Cir. 2009) ("The purpose of a declaratory

11  judgment action cannot be defeated simply by the stratagem of a correspondence

12  that avoids the magic words such as 'litigation' or 'infringement.'").  The facts (and

13  implications flowing from them) speak for themselves.[2]

14       Americas tries to bolster its position by contrasting its express accusation of

15  infringement by MACOM's GaN-on-*SiC* products.  But, as explained in the

16  Complaint, Infineon's accusation of infringement by MACOM's *de minimis* GaN-

17  on-SiC sales were merely a pretext (and one that fails as a matter of law) for

18  Infineon to terminate MACOM's license.  Those express allegations are in no way

19  "evidence" that there is not an actual controversy between MACOM and Infineon

20  about MACOM's rights to use the Nitronex Patents for its GaN-on-*Si* RF products.

21  _____

22  [2]  It should be noted, however, that Infineon has taken the position that the "wafers" that form part of MACOM's GaN-on-Si RF products practice the

23  Nitronex Patents, and it has suggested that MACOM's supplier needs a license (*i.e.*, that the supplier infringes) to continue supplying those wafers.  [FAC

24  ¶¶114-16; ECF No. 92-4, Ex. 2.]  Specifically, shortly after it acquired IR, Infineon wrote letters (using IR letterhead at the time) to both MACOM and its

25  supplier, IQE, about an agreement under which IQE makes GaN-on-Si wafers for MACOM GaN-on-Si RF products.  [*Id.*]  Infineon specifically said that it

26  was "concerned about the proliferation of its patented technology" and demanded that IQE provide "the legal basis upon which IQE intends to operate

27  with respect to the announced wafer supply agreement with MACOM."  [*Id.*]  Infineon thus made clear its belief that MACOM's products, specifically at least

28  the wafers used to manufacture MACOM's GaN-on-Si RF products, practice the Nitronex Patents and require a license.

MACOM'S OPPOSITION TO INFINEON AMERICAS' MOTION TO DISMISS



Americas also warns that accepting MACOM's argument would "essentially establishing a *per se* rule that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ [Mot. at 14:4-8]   In a similar vein, Americas says that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ [Mot. at 14:3-4]

These arguments entirely disregard the facts here, which include an 11-year relationship between Nitronex (now MACOM) and IR (now Infineon) that involved: ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. The controversy here is immediate and apparent, and Americas' attempts to ▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ should not be credited.

**2.   MACOM Does Not Need To, But Has, Pleaded That It Practices The Nitronex Patents**

Americas next argues that even if ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉ Americas' argument is wrong as a matter of law and fact.

To begin, the law does not require that a declaratory judgment plaintiff must "allege" (*i.e.*, "admit") that it products "infringe" or "practice" patents at issue in order to establish declaratory judgment jurisdiction.  Indeed, in most cases a

declaratory judgment plaintiff argues they do *not* infringe as a technical matter. *See, e.g.*, *MedImmune*, 549 U.S. at 123-124. Tellingly, Americas does not cite any case that requires a confession of infringement for a case to proceed, and MACOM is not aware of any. Indeed, under Americas' logic, a company could never bring a noninfringement declaratory judgment claim because, to satisfy the jurisdictional requirements, it would have to admit in its complaint that its products infringed in order to get a declaration that they do not infringe. That makes no sense.

Americas' approach effectively tries to force a "Catch-22" on MACOM. But the Supreme Court has rejected exactly such tactics. Specifically, in *MedImmune*, the Supreme Court rejected similar "gotchas" created by the Federal Circuit's *Gen-Probe* decision, which had required licensees who wanted to challenge the validity or coverage of licensed patents to stop paying royalties and risk treble damages to do so. *See MedImmune*, 549 U.S. at 134 ("The rule that a plaintiff must destroy a large building, bet the farm, or (as here) risk treble damages and the loss of 80 percent of its business before seeking a declaration of its actively contested legal rights finds no support in Article III."). Here, as in *MedImmune*, MACOM should be able to adjudicate its contention that its products do not infringe ███████████████████████████████████████████████████████████████████████████████████████████████████.[3]

In any event, however, MACOM has pleaded that it practices one or more of the Nitronex Patents. [FAC ¶¶3, 7, 51-54, 56-57, 59, 61-73, 93, 98, 105, 151-154, 208-217.] For example, MACOM has pleaded that: the Nitronex Patents are "foundational" and "ground-breaking" (*id.* ¶63), MACOM acquired Nitronex to ████████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████ (*id.* ¶210),

---

[3] Of course, whether there is technical infringement of any specific patent can only be determined by the Court after construing the claims of that patent and then determining whether those claims, as construed, read on the allegedly infringing product(s).

1   Nitronex and MACOM developed and sold GaN-on-Si RF products ██████

2   ████████████████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████

5   ██████████████████████████████████████ and "the same GaN-on-

6   Si technologies developed by Nitronex **continue to be used in MACOM's products**

7   **today**" (*id.* ¶152).

8       **3.      The Cases Americas Cites Do Not Support Its Position**

9       Finally, Americas' claim that "[c]ourts have dismissed declaratory judgment

10  complaints in similar situations" to those here is belied by even the most cursory

11  examination of the cases Americas cites.  [Mot. at 12:12-13:23, 14:22-26]  Indeed,

12  none of those case involved facts even **remotely** similar to those here or in any way

13  support dismissal of MACOM's declaratory judgment claim.

14      In *Panavise Prods., Inc. v. Nat'l Prods., Inc.*, for instance, a maker of suction

15  cup mounting devices that was about to debut a new "potentially infringing"

16  product brought a patent declaratory judgment action based solely on the fact that

17  the patent owner had in earlier years sued several other companies (not the plaintiff)

18  on the relevant patent.  306 F. App'x 570, 571 (Fed. Cir. 2009).  The Federal

19  Circuit affirmed the district court's dismissal of this action because: (i) the patent

20  owner had never seen or evaluated the plaintiff's new product, was unaware of it

21  until it the declaratory judgment complaint was filed, and had never communicated

22  with the plaintiff regarding its product or the patent before the plaintiff filed its

23  complaint; and (ii) the plaintiff admitted that it had been selling a product

24  substantially identical to the "new" product for over a decade without any

25  accusation of infringement from the patent owner.  *Id.* at 572-74.  Americas'

26  assertion that MACOM's declaratory judgment claims are analogous to (and,

27  according to Americas, **even worse than**) the "subjective" and "speculative"

28  assumptions about "potential" infringement by the declaratory judgment plaintiff in

MACOM's OPPOSITION TO INFINEON AMERICAS'
MOTION TO DISMISS

1   *Panavise* are not credible.  Here, Infineon abruptly terminated ████████

2   ████████████████████████████████████████████████████████.  Moreover,

3   given Americas' heavy reliance on *Panavise*, it is telling that Americas chose not to

4   submit a declaration disavowing either knowledge of MACOM's GaN-on-Si RF

5   products or any intent to enforce the Nitronex Patents against MACOM.

6        Like *Panavise*, *Unisense Fertilitech AS v. Auxogyn, Inc.* also did not involve

7   a license termination situation.  896 F.Supp.2d 822 (N.D. Cal. 2012).  Instead, in

8   *Unisense*, a company that sold a product that allowed researchers to take time-lapse

9   images of *in vitro* fertilized embryos and published papers about its research

10  findings filed a patent declaratory judgment action.  *Id.* at 824-25.  There, the

11  defendant/patentee had sent the plaintiff several soft and vague letters advising of

12  its patent covering methods (*i.e.*, **not** apparatuses) for embryo research, stating that

13  the research papers discussed topics relating to the patent.  *Id.*  The district court

14  dismissed the plaintiff's declaratory judgment claim, finding that there was no

15  allegation that anyone (not the company nor readers of its research papers)

16  practiced the methods disclosed by the plaintiff's publications and/or presentations.

17  *See id.* at 830 ("[W]hen no one is engaged in potentially infringing conduct, there is

18  no controversy to support declaratory judgment jurisdiction….").  Unlike the

19  circumstances in *Unisense*, the dispute between MACOM and Infineon is definite,

20  concrete, real, and substantial: ████████████████████████████████████

21  ██████ MACOM spent tens of millions of dollars developing its GaN-on-Si RF

22  products ███████████████████████████████████████████████

23  ████████████████████████████████████████████████████████

24  ███████████████████████████████████████████

25  [FAC ¶¶153-154.]

26       In *Excelstor Tech., Inc. v. Papst Licensing GMBH & Co.*, Americas cites a

27  case that at least involves a license.  No. 09-cv-2055, 2010 WL 2560481 (N.D. Cal.

28  June 22, 2010).  Specifically, a hard disk drive manufacturer had a royalty-bearing

license agreement with the patent owner. *Id*. at *1-2.  There was a dispute about "double payment" of royalties for licensed sales of HDD products sold prior to the plaintiff exiting the market.  The district court dismissed the action on the ground that (i) the plaintiff had exited the market and had not identified a single product it was currently then making or intended to make that would fall within the category of products covered by the license if it were in effect (*id.* at *4-5, 6), and (ii) the patent owner had executed and filed with the court a covenant not to sue the (ex-)licensee for patent infringement.  *Id.* at *5-7; *see also Essai, Inc. v. Delta Design, Inc.*, No.13-cv-02356, 2013 WL 624393, at *3 (N.D. Cal. Dec. 3, 2013) (dismissing declaratory judgment complaint where patent owner raised infringement concerns based on declaratory judgment plaintiff's patent applications—not any specific products).  In sharp contrast to *Excelstor*, MACOM has identified in its Complaint current GaN-on-Si RF products and explained in great detail why it has reason to fear an infringement suit by Infineon—and Infineon has provided no covenant not to sue.

In sum, far from supporting Americas' position, the sharp contrast between the facts in the cases cited by Americas—each involving blatantly-dubious grounds for "actual controversy"—and the compelling facts of this case only reinforce that MACOM's patent declaratory judgment claim should not be dismissed.

### 4.    MACOM's Complaint Clearly Identifies The Products At Issue

Americas' only other argument under either Rule 12(b)(1) or 12(b)(6) for MACOM's Fifth Claim for Relief is that this Claim must be limited to the GaN-on-Si RF products ████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████ [Mot. at 15:14-22]  Even if accepted, which it should not be, this argument would not remove the Court's subject matter jurisdiction over MACOM's Fifth Claim as a whole, █████████████████████ ████████████████████

MACOM'S OPPOSITION TO INFINEON AMERICAS' MOTION TO DISMISS

1   Americas' argument overlooks that MACOM seeks a noninfringement

2   declaration commensurate ████████████████████████████████

3   ███████████████    [FAC ¶216 & Prayer ¶B.] ██████████████████

4   ████████████████████████████████████████████████████████

5   ██████████████    [FAC ¶¶2, 87-93.]

6   Americas also faults MACOM for supposedly ████████████████

7   ████████████████████████    but MACOM has provided fair notice regarding the

8   scope of products at issue in its noninfringement claim.  In Paragraph 151 of the

9   Complaint, MACOM identifies the specific products at issue as follows:  "GaN-on-

10  Si Products, including at least the following part numbers:  NPT1004D,

11  NPT25015D, NPT35015D, NPTB00050B, NPTB00025B, NPTB00025AB,

12  NPTB00004D, NPTB00004A, NPT35050AB, NPT25100P, NPT25100B,

13  NPT2024, NPT2022, NPT2021, NPT2020, NPT2018, NPT2010, NPT1015B,

14  NPT1012B, NPT1010P, NPT1010B, NPT1007B, NPA1008, NPA1007, NPA1006,

15  NPA1003QA, MATR-GSHC03-160150, MAGx-0011086, and MAGe-102425-

16  300."  [FAC ¶151.]

17  In other words, MACOM has identified the products by the most specific

18  identifiers possible.  To the extent that Americas objects to the "including at least

19  the following part numbers…." language, it has long been the case that Plaintiffs

20  plead patent claims by listing categorical features and/or example products.  *See,*

21  *e.g.*, *K-Tech Telecomm'ns, Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1281-

22  82, 1286-87 (Fec. Cir. 2013) (finding adequate an allegation that defendants

23  infringed where accused products were identified by feature).  The touchstone for

24  adequate pleading under Rule 8 is "fair notice of what the claim is and the grounds

25  upon which it rests."  *Twombly*, 550 U.S. at 555, 561 (quoting *Conley v. Gibson*,

26  355 U.S. 41, 47 (1957)).  MACOM has more than met this standard.

27  Notably, the primary case cited by Americas does not support Americas'

28  argument.  *Microsoft Corp. v. DataTern*, 755 F.3d 899 (Fed. Cir. 2014), does not

address the standard for ***pleading*** a declaratory judgment claim, but rather involves the scope of a ***judgment*** that eventually issued from claims by the plaintiff that its products did not infringe for technical reasons. Indeed—just as here—the declaratory judgment plaintiff in that case recited in its complaint that its products as a whole did not infringe, and its claims were not dismissed. *See id.* at 910. In any case, *Datatern* is simply not applicable ████████████████████████████ ███████████████ where no technical analysis is needed for the Court to issue a declaration ████████████████████████████████████████ ████████████████████████████████████

     MACOM's Complaint both recites a clear category of products at issue— ████████████████████████████—and identifies the current products within that category. These facts entirely distinguish the situation here from the other cases cited by Americas in which motions to dismiss declaratory judgement actions were granted. *See Excelstor*, 2010 WL 2560481, at *6 (N.D. Cal. June 22, 2010) (plaintiff did not identify any specific products that might infringe the patents at issue); *Essai*, 2013 WL 624393, at *3 (plaintiff failed to identify any particular products in its complaint); *Wistron Corp. v. Phillip M. Adams & Associates*, No. 10-cv-4458, 2011 WL 165446, at *1, *12 (N.D. Cal. April 28, 2011) (plaintiffs identified broad and generic categories of products with no example products); *Xilinx, Inc. v. Invention Inv. Fund I LP*, No. 11-cv-0671, 2011 WL 3206686, at *6 (ND. Cal. July 27, 2011) (plaintiff's complaint recited only a broad category of products, "integrated circuits," and recited no specific "accused products"). Accordingly, there is no basis to dismiss any part of MACOM's declaratory judgment claim even as to "any unidentified products."

**B.**   **MACOM's Complaint States A Claim That Infineon's GaN-on-Si RF Activities Breached The License Agreement**

     In moving to dismiss MACOM's Second Claim for Relief for breach of the License Agreement, ████████████████████████████████████████████

1   [REDACTED] Americas incorrectly treats MACOM's claim as one for patent
2   infringement.  But the Complaint clearly identifies this claim as one for "Breach of
3   Contract," not patent infringement, and MACOM is not required to plead the
4   elements of a patent infringement case.  "In California, a cause of action for breach
5   of contract requires proof of the following elements: (1) existence of the contract;
6   (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach;
7   and (4) damages to plaintiff as a result of the breach."  *E.g., Blizzard Entm't Inc. v.*
8   *Ceiling Fan Software LLC*, 28 F.Supp.3d 1006, 1017 (C.D. Cal. 2013).  MACOM
9   has alleged these elements for its Second Claim.  To the extent that there may be a
10  dispute between the parties about whether the License Agreement here should be
11  construed to require proof of patent infringement, such a dispute about the legal
12  interpretation of a contract is not one to be resolved within the context of a Rule
13  12(b)(6) motion—especially so where, as here, the interpretation proffered by the
14  moving party is against the express language of the contract.

15      That being said, MACOM's Complaint sufficiently pleads its Second Claim
16  for breach of contract even applying patent infringement pleading standards, as
17  Americas proposes doing.  Specifically, MACOM's Complaint includes facts that
18  support a reasonable inference that [REDACTED]
19  [REDACTED]
20  [REDACTED].  That is all (indeed more) than MACOM is required
21  to plead at this stage, and Infineon has not provided any basis for the Court to
22  dismiss MACOM's breach claim before even affording MACOM the opportunity
23  to take discovery to substantiate its allegations.

24      **1.**   [REDACTED]
25  [REDACTED]
26  [REDACTED]
27  [REDACTED]
28  [REDACTED] For instance,

Paragraphs 4, 8, and 155-164 of MACOM's Complaint detail public and non-public development and marketing activities by Infineon for GaN-on-Si RF products for cellular base station applications.  [FAC ¶¶8, 155-164.]  MACOM's Complaint further alleges that Infineon has gone so far as to promise samples of GaN-on-Si RF base station products to customers.  [*Id.* at ¶¶157-158.]



Americas does not cite a single case holding that it is correct to impose the traditional requirements for a patent infringement claim on MACOM's contract claim, and Americas ignores without discussion

Such an approach should be rejected.  The Court should find that

MACOM has adequately pleaded its Second Claim for Relief.

**2.** ████████████████████████████████████████
████████████████████████████

Even if Americas were right that MACOM has to allege (before discovery has even begun) traditional patent infringement ████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████

In support of its breach claim, MACOM alleges in detail the foundational nature of the Nitronex Patents and, more generally, the GaN-on-Si technology developed by Nitronex—much of which is claimed in the Nitronex Patents. [*See* FAC ¶¶1, 3, 51-63, 84-85, 152.] Foundational patents, of course, are understood in the industry to be those with inventions that must be used in order to produce products in a particular field (or, at the very least, would be very difficult to design around). *See, e.g.,* Mark A. Lemley, *Patenting Nanotechnology*, 58 Stan L. Rev. 601, 613-614 (2005) (discussing ten "foundational patents" directed to "basic building blocks in nanotechnology").

MACOM further pleaded that ████████████████████████████
████████████████████████████████████████████████
████████████████████████████ that Infineon acquired IR to gain access to its GaN-on-Si technologies ████████████████ (*id.* ¶¶107-108), that Infineon attempted to renegotiate the License Agreement ████████████
████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████

1
2
3
4
5 ████████████████████████████ MACOM is confident discovery will
6 bear this out.

7     The suspicious sequence of events for Infineon's purported termination, as
8 described in detail in the Complaint, further reinforce ██████████████
9 ████████████████████████████████████████████ For
10 instance, Infineon repeatedly tried to pressure MACOM ████████████████
11 ██████████████████████████████████████████████
12 ████████████████████████████ Infineon's purported termination
13 of the License Agreement then came close in time, actually just before, it became
14 public that Infineon was developing and marketing these GaN-on-Si RF products.
15 [*Id.* ¶¶5-8, 141-164.]  This carefully-alleged sequence of events—where Infineon a)
16 threatens MACOM's GaN-on-Si wafer supplier with thinly-veiled infringement
17 allegations, b) tries to get MACOM to ████████████████ c) fails, d) comes up
18 with a pretext to terminate the license, e) sends a notice of termination, and f) then,
19 immediately afterward, publicly announces its development of products ██
20 ████████████████████████████████████████████
21 ████████████████ There would not otherwise be any reason for
22 Infineon to have behaved as it has.

23     Given the circumstances, MACOM has more than met its burden, to the
24 extent MACOM is required to do so, ████████████████████████
25 ████████████████████████████████████
26 Whether a complaint states a claim under Rule 12(b)(6) is context-specific, and
27 MACOM has met its burden here, particularly given that samples of Infineon's
28 GaN-on-Si RF products are not yet publicly available for a full technical

1  infringement analysis. *See Iqbal*, 556 U.S. at 679 (ruling on a motion to dismiss is

2  a context-specific task).

3       Americas also faults MACOM for not █████████████████████

4  ████████████████████████████████████████████, but MACOM need

5  not make allegations at this level of detail in its Complaint to adequately state a

6  claim that Infineon has breached the License Agreement. *See, e.g., Esoterix*

7  *Genetic Labs. LLC v. Qiagen, Inc.*, 133 F.Supp.3d, 350, 363 (D. Mass. 2015) ("[I]t

8  is easy to see how breaching such a promise [not to offer commercial use products

9  before regulatory approval] potentially gives rise to a free-standing contract claim,

10  regardless of whether or not such a breach would also support a claim for patent

11  infringement.").  Under the circumstances (*i.e.* where MACOM has been unable to

12  obtain Infineon GaN-on-Si RF products), MACOM can hardly be expected to plead

13  that Infineon's products embody one or more particular Nitronex Patents.  Instead,

14  MACOM has recited facts sufficient to plausibly allege that it is entitled to relief.

15
16      **3.**    **Americas' "Offer To Sell" Arguments Ignore Both The Stage Of This Case And The Allegations Of MACOM's Complaint**

17       MACOM's Complaint, fairly read, alleges that ████████████████████

18  ██████████████████████████████████████ to the extent that such

19  allegations are necessary (and they are not).  [FAC at, *e.g.*, ¶¶4, 8, 112, 147-148,

20  155-164, 184.]  For example, MACOM has pleaded that Americas has been

21  promoting and marketing GaN-on-Si RF products for cellular base station

22  applications, has promised samples, and has publicly announced that it has GaN-

23  on-Si RF products in development for 5G applications.  [FAC ¶¶157, 160.]

24  MACOM also explicitly recites that ███████████████████████████████

25  ██████████████████████████████████████████████████

26  ████████████  [*Id.* ¶¶164, 184.]

27       Americas' argument on the "offer to sell" issue boils down to the contention

28  that MACOM has not adequately alleged an offer to sell products ████████████

██████████████ because MACOM: (1) did not **expressly** parrot that Infineon "offered to sell" those products; and (2) did not allege that Infineon negotiated a price for such products.  But that is not required at the pleading stage.  *Twombly*, 550 U.S. at 555.  Requiring MACOM to "show" detailed facts to support an offer to sell, including negotiation of a price term is inappropriate so early in the case, before discovery has even commenced.

Unsurprisingly, therefore, the single case Americas cites in support of its position, *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369 (Fed. Cir. 2005), was not decided at the pleading stage.  Instead it was decided at the summary judgment stage, after discovery—and actually involved the reversal of a decision granting summary judgment, which is hardly supportive of Americas' argument.  *Id.* at 1371-72.

████████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████████████████████[4]

**4.** ██████████████████████████████████████

Americas again tries to overlay the requirements of a patent infringement claim on MACOM's breach claim when it argues that ████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████████████

---

[4] To the extent, however, that the Court finds that MACOM is required to more expressly plead that Americas "offered to sell" GaN-on-Si RF products or otherwise practices the Nitronex Patents (or that these activities took place in a jurisdiction where there are issued Nitronex Patents, for that matter), MACOM should be granted leave to amend its Complaint.

MACOM pleaded sufficient facts on this point.  Americas is a U.S. company with facilities and activities in the U.S.  [FAC ¶¶13, 17.]  Infineon's marketing activities, including issuing an announcement of its product development and forthcoming introduction of GaN-on-Si RF base station products on its ".com" website, satisfy any territoriality pleading requirement.

**CONCLUSION**

For the reasons explained above, Americas' motion should be denied.

DATED:  September 7, 2016                **PERKINS COIE LLP**

By:*/s/ Amanda Tessar*
        Lara J. Dueppen, Bar No. 259075
        LDueppen@perkinscoie.com
        PERKINS COIE LLP
        1888 Century Park East, Suite 1700
        Los Angeles, CA 90067-1721

---

[5]  It is also settled law that activity outside the U.S. that induces infringement of a U.S. patent can give rise to liability under U.S. patent law.  *See Wing Shing Products, Ltd. v. Simatalex Man. Co.*, 479 F.Supp.2d 388, 410 (S.D.N.Y. 2007).

Telephone:  310.788.9900
Facsimile:  310.788.3399

Jonathan M. James (*pro hac vice*)
JJames@perkinscoie.com
PERKINS COIE LLP
2901 North Central Avenue, Suite 2000
Phoenix, AZ  85012-2788
Telephone:  602.351.8000
Facsimile:  602.648.7000

Amanda Tessar (*pro hac vice*)
ATessar@perkinscoie.com
Elizabeth Banzhoff (*pro hac vice*)
EBanzhoff @perkinscoie.com
PERKINS COIE LLP
1900 Sixteenth Street, Suite 1400
Denver, CO  80202-5255
Telephone:  303.291.2300
Facsimile:  303.291.2400

Philip A. Morin, Bar No. 256864
PMorin@perkinscoie.com
PERKINS COIE LLP
11988 El Camino Real, Suite 350
San Diego, CA  92130-2594
Telephone:  858.720.5700
Facsimile:  858.720.5799

Daniel T. Keese, Bar No. 280683
DKeese@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

Morgan Chu (State Bar No. 70446)
(mchu@irell.com)
Joseph M. Lipner (State Bar No. 155735)
(jlipner@irell.com)
Ellisen Turner (State Bar No. 224842)
(eturner@irell.com)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
Telephone:  310-277-1010
Facsimile:  310-203-7199

Nima Hefazi (State Bar No. 272816)
(nhefazi@irell.com)
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA  92660
Telephone:  949-760-0991
Facsimile:  949-760-5200

MACOM'S OPPOSITION TO INFINEON AMERICAS'
MOTION TO DISMISS

1

**ATTORNEYS FOR PLAINTIFFS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MACOM's Opposition To Infineon Americas'
Motion To Dismiss