Linda M. Burrow, Bar No. 194668
burrow@caldwell-leslie.com
Alison M. Mackenzie, Bar No. 242280
mackenzie@caldwell-leslie.com
CALDWELL LESLIE AND PROCTOR PC
725 South Figueroa Street 31st Floor
Los Angeles, CA  90017-5524
Telephone:  213-629-9040
Facsimile: 213-629-9022

David G. Wille (*pro hac vice*)
david.wille@bakerbotts.com
Jeffery D. Baxter (*pro hac vice*)
jeff.baxter@bakerbotts.com
Brian D. Johnston (*pro hac vice*)
brian.johnston@bakerbotts.com
James C. Williams (*pro hac vice*)
james.williams@bakerbotts.com
Charles Yeh (*pro hac vice*)
charles.yeh@bakerbotts.com
BAKER BOTTS L.L.P.
2001 Ross Avenue, Suite 600
Dallas, TX 75201
Telephone:  214.953.6500
Facsimile:  214.953.6503

Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. and NITRONEX, LLC,<br><br>            Plaintiffs,<br><br>    v.<br><br>INFINEON TECHNOLOGIES AG and INFINEON TECHNOLOGIES AMERICAS CORP.,<br><br>            Defendants. | Case No. CV 16-02859 CAS (PLAx)<br><br>**INFINEON TECHNOLOGIES AMERICAS CORP.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>**Hon. Christina A. Snyder**<br><br>**Date:    October 17, 2016**<br>**Time:    10:00 a.m.**<br>**Crtrm.: 5** |

REPLY IN SUPPORT OF INFINEON AMERICAS' MOTION TO DISMISS 1ST AMENDED COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................... 1

ARGUMENT ............................................................................................ 3

I.    MACOM's second claim for breach of contract claim should be dismissed. ............................................................................................ 3

    A.    MACOM fails to plead facts showing that Infineon America has ███████████████████████████████████. ............ 4

        1.    MACOM does not, and admits that it cannot, identify any Infineon Americas product ████████████████ ██████ ................................................................................. 4

        2.    MACOM also admits that it cannot identify any conduct by Infineon Americas ███████████████████ ██████████████████ ...................................... 7

        3.    MACOM fails to allege where Infineon Americas' alleged conduct occurred. ............................................ 8

    B.    The relevant provision of the 2010 License Agreement ████████████████████████████████████████████ ████████████████████████████████████ ........ 9

II.    MACOM's fifth claim for declaratory judgment of non-infringement should be dismissed. ...................................................................... 12

    A.    MACOM's fifth claim for relief, which seeks a declaration of non-infringement, is not the same as its third claim for relief, which seeks a declaration of no termination. ..................................... 13

        1.    MACOM's declaratory judgment of non-infringement is not limited to the issue of termination of the 2010 License Agreement. .................................................................. 14

        2.    MACOM's declaratory judgment of non-infringement would unfairly impose on Infineon AG the extraordinary burden of determining whether MACOM's twenty-nine GaN-on-Si products infringe thirty-nine patents. ..................... 15

REPLY IN SUPPORT OF INFINEON AMERICAS' MOTION TO DISMISS 1ST AMENDED COMPLAINT

3.      MACOM's declaratory judgment for non-infringement would inevitably raise claim construction, infringement, invalidity, and the other typical patent case issues for all thirty-nine patents. .................................................................. 17

B.      Infineon Americas' termination of the 2010 License Agreement does not raise an actual controversy as to the twenty-nine GaN-on-Si products that are the subject of MACOM's declaratory judgment for non-infringement. ........................................................ 18

III.    MACOM cannot maintain its claim for declaratory judgment of non-infringement for products it has not even identified. .................................... 24

CONCLUSION .................................................................................................. 25

REPLY IN SUPPORT OF INFINEON AMERICAS' MOTION TO DISMISS 1ST AMENDED COMPLAINT

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*ABB Inc. v. Cooper Indus., LLC,*
   635 F.3d 1345 (Fed. Cir. 2011) ....................................................... 19

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ................................................................. 5, 6, 7

*Atlas IP, LLC v. Exelon Corp.,*
   No. 15 C 10746, 2016 WL 2866134 (N.D. Ill. May 17, 2016) .......... 25

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ........................................................................ 8

*Dunn v. GMAC Mortgage, LLC,*
   No. 2:10-CV-03196 JAM, 2011 WL 1230211 (E.D. Cal. Mar. 28,
   2011) ............................................................................................. 12

*Edwards v. Arthur Andersen LLP,*
   189 P.3d 285 (Cal. 2008) ........................................................... 11, 12

*Inglewood Lending Inc. v. G & G Coachella Investments, LLC,*
   651 F. Supp. 2d 1141 (C.D. Cal. 2009) .......................................... 14

*K-Tech Telecomm'ns, Inc. v. Time Warner Cable, Inc.,*
   714 F.3d 1277 (Fed. Cir. 2013) ...................................................... 25

*MedImmune, Inc. v. Genentech, Inc.,*
   549 U.S. 118 (2007) .................................................................. 19, 20

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.,*
   420 F.3d 1369 (Fed. Cir. 2005) ..................................................... 7, 8

*Microsoft Corp. v. DataTern, Inc.,*
   755 F.3d 899 (Fed. Cir. 2014) ....................................................... 24

*Panavise. Panavise Products, Inc. v. Nat'l Products, Inc.,*
   306 F. App'x 570 (Fed. Cir. 2009) .................................................. 22

*Prasco, LLC v. Medicis Pharmaceutical Corp.*,
   537 F.3d 1329 (Fed. Cir. 2008) ........................................................... 17, 18, 19, 23

*SanDisk Corp. v. STMicroelectronics, Inc.*,
   480 F.3d 1372 (Fed. Cir. 2007) ........................................................... 19

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.*,
   208 F.3d 981 (Fed. Cir. 2000) ........................................................... 5, 6

*Vivid Techs., Inc. v. Am. Sci. & Eng'g*,
   200 F.3d 795 (Fed. Cir. 1999) ........................................................... 16

*Wilton v. Seven Falls Co.*,
   515 U.S. 277 (1995) ........................................................... 14

*Xilinx, Inc. v. Invention Inv. Fund I LP*,
   No. 11-CV-0671, 2011 WL 3206686 (N.D. Cal. July 27, 2011) ........................ 24

STATUTES

Cal. Civ. Code, § 1643 (1872) ........................................................... 12

OTHER AUTHORITIES

Ashtor, Jonathan H., Michael Mazzeo, and Samantha Zyontz, Patents
   at Issue: The Data Behind the Patent Troll Debate, 21 Geo. Mason
   L. Rev. 957 (2014) ........................................................... 17

REPLY IN SUPPORT OF INFINEON
AMERICAS' MOTION TO DISMISS 1ST
AMENDED COMPLAINT

1

**INTRODUCTION**

2    Consistent with its pattern of behavior throughout this lawsuit of multiplying

3 proceedings to harass and impose unnecessary burden on Defendants, MACOM

4 amended its complaint to sue Infineon Americas on two unnecessary claims that

5 MACOM fails to properly plead.  These claims are not insignificant.

6    First, MACOM's adds a claim that Infineon Americas breached the license

7 agreement by selling products ███████████████████████████████████

8 ███████    But MACOM fails to plead any facts plausibly showing such a breach.  In

9 fact, MACOM admits in its response that it lacks sufficient information to plead

10 such facts.  MACOM suggests that the pleading requirements should be relaxed and

11 discovery should proceed so it can gather sufficient facts to plead its case.  Such an

12 approach is not only improper, but grossly unfair.  MACOM should not be

13 permitted to use discovery to conduct a fishing expedition to determine whether it

14 can properly bring a lawsuit.  MACOM's adding this claim without a factual basis

15 to do so is consistent with its pattern of harassment throughout this case.

16    Because it cannot plausibly plead breach under the terms of the agreement,

17 MACOM tries to save its claim by proposing a new interpretation of the license

18 agreement that is contrary to the plain language and structure of the agreement and

19 to MACOM's own prior interpretation advanced in its motion for preliminary

20 injunction.  By its terms, the patent license agreement ████████████████████

21 ████████████████████████████████████████████████████████████████

22 ████████████████████████████  ████████████████████████████

23 ████████████████████████████████████████████████    MACOM

24 admits that it cannot identify such a product ██████████████████████████

25 ███████    Thus, MACOM resorts to arguing for a reading of the agreement under

26 which it does not have to do so.  MACOM now claims that the agreement ████████

27 ████████████████████████████████████████████████████████████████

28 ████████████████████████████████████████████████████████████

REPLY IN SUPPORT OF INFINEON
AMERICAS' MOTION TO DISMISS 1ST
AMENDED COMPLAINT

MACOM's new and unsupported interpretation would render the license agreement void under federal and state antitrust laws.  Notably, California law unambiguously voids all agreements that restrain lawful business.  MACOM's interpretation would amount to a ████████████████████████ ████████████████████—a restraint of lawful business.  Therefore, MACOM's interpretation is incorrect as a matter of law.  Consequently, it must plead facts showing Infineon Americas used or sold a product ████████████████ ████████████████████to sufficiently state a claim for breach of the license agreement.  MACOM admits it cannot do so.  Its claim should be dismissed.

Second, MACOM seeks a declaratory judgment of non-infringement for twenty-nine products across thirty-nine patents—1131 distinct infringement determinations, all told.  MACOM downplays the burden and complexity that this claim will create by misleadingly couching it as merely requiring a determination of whether the license agreement is terminated.  But if that were the case, MACOM's claim for declaratory judgment of non-infringement would be entirely duplicative of MACOM's separate claim for declaratory judgment that the license agreement is not terminated.[1]  MACOM's non-infringement claim requires more.  At a minimum, it would require additional determinations of whether the license covers each one of the products identified in MACOM's complaint.  And MACOM attempts to leave the door open to argue non-infringement on other bases, such as that the products do not practice the patents, which will require exactly the sort of technical product-by-product analysis that MACOM claims can be avoided.

MACOM entirely fails to establish the Court's jurisdiction to entertain such a wide-ranging claim for declaratory judgment.  Jurisdiction requires that there be an actual controversy between the parties as to infringement of the twenty-nine specific products for which MACOM seeks declaratory relief.  Yet MACOM fails

---

[1] Infineon Americas stands ready to litigate MACOM's termination claim.

REPLY IN SUPPORT OF INFINEON AMERICAS' MOTION TO DISMISS 1ST AMENDED COMPLAINT

1   to plead any affirmative conduct by Infineon Americas that gives rise to such a

2   controversy.    MACOM does not dispute that Infineon Americas has never

3   accused—expressly or impliedly—any of MACOM's GaN-on-Si RF products of

4   infringement of any patent, much less the thirty-nine patents MACOM identifies.

5        Instead, MACOM points to Infineon Americas' termination of the license

6   agreement.  Termination of the agreement, standing alone, does not create any real

7   and immediate controversy as to whether the twenty-nine identified products are

8   infringing.   At a minimum, MACOM would have to plead that those products

9   actually practice the licensed patents, or that Infineon Americas has taken some

10  action suggesting that they do.  MACOM has done neither.   At most, MACOM

11  offers attorney argument that an entire category of products practice "one or more"

12  of the thirty-nine patents, and sweeping legal conclusions that unspecified ones of

13  those patents are "foundational."  MACOM utterly fails to establish jurisdiction on

14  a product-by-product basis, as the law requires.  As a result, MACOM has not met

15  its burden to establish jurisdiction for its declaratory judgment of non-infringement.

16       MACOM's pattern of compounding litigation to harass Infineon Americas

17  should not be allowed to continue.  The challenged claims should be dismissed.

## ARGUMENT

**I.    MACOM's second claim for breach of contract claim should be dismissed.**

MACOM's second claim for relief asserts that Infineon Americas breached the License Agreement by ███████████████████████████████████████ ████████████████████████████████████████████████████ ████████████   But Infineon Americas could breach the parties' patent license agreement only ████████████████████████████████████ As a result, to plausibly plead a breach of the agreement, MACOM must show at least (1) a product ████████████████████████████████ (2) conduct by Infineon Americas ████████████████████████████████████

REPLY IN SUPPORT OF INFINEON
AMERICAS' MOTION TO DISMISS 1ST
AMENDED COMPLAINT

1   and (3)  that the location of the conduct ████████████████████████████

2   ████████████████   MACOM not only fails to allege such facts, MACOM admits in its

3   Response that it does not have the facts to make these allegations.

4          Lacking such facts, MACOM attempts to relax the pleading requirements by

5   presenting a new interpretation of the License Agreement under which ████████████

6   ███████████████████████████████████████████████████████████████████

7   ███████████████████████████████████████████████████████████████████

8   ███████████████████████████████████████████████████████████████████

9   ████████████████████████████   As discussed below, this anticompetitive reading of

10  the  agreement  cannot  be  squared  with  the  plain  language  and  structure  of  the

11  agreement,  is  inconsistent  with  MACOM's  own  prior  position,  and  would  render

12  the  relevant  provisions  unenforceable  under  federal  and  state  antitrust  law.

13  MACOM's interpretation should therefore be rejected.

14          **A.     MACOM fails to plead facts showing that Infineon America has**

15          ██████████████████████████████████████████████

16          Under  the  proper  interpretation  of  the  now-terminated  License  Agreement,

17  Infineon Americas would have breached MACOM's exclusive patent license only

18  if MACOM can show that Infineon Americas practices a licensed patent within

19  MACOM's  exclusive  field.   MACOM's  claim  fails  on  three  independent  bases:

20  (1) MACOM  does  not  identify  any  Infineon  Americas  product  that  practices  a

21  license patent (let alone provide facts plausibly alleging that is so); (2) MACOM

22  does  not  identify  any  conduct  by  Infineon  Americas  that  would  fall  within  the

23  scope  of  the  licensed  patents,  such  as  an  offer  for  sale  of  a  patent-practicing

24  product; and (3) MACOM does not identify where any such conduct occurred, such

25  that  it  would  be  within  a  territory  covered  by  the  relevant  licensed  patent.   As  a

26  result, MACOM has not plausibly pleaded a breach of the License Agreement.

27          **1.     MACOM does not, and admits that it cannot, identify any
                     Infineon Americas product** ████████████████████████

28      MACOM does not identify a single Infineon Americas product ████████████

REPLY IN SUPPORT OF INFINEON
AMERICAS' MOTION TO DISMISS 1ST
AMENDED COMPLAINT

1   ███████████       MACOM even admits in its Response that it cannot do so.[2]

2   Resp. at 23:11–13.  MACOM explains that it "can hardly be expected" to identify

3   such a product because MACOM "has been unable to obtain Infineon GaN-on-Si

4   RF products." Resp. at 23:11–12.  This explanation confirms that MACOM cannot

5   plausibly plead that any of the unidentified products ████████████

6   ████████████  because it lacks a factual basis on which to do so.  MACOM cites

7   no authority providing an exception to the pleading requirements of the Federal

8   Rules for parties who argue that they cannot obtain product samples.

9        Although MACOM would prefer to take a pass on sufficiently pleading its

10  claim until after trolling the waters in discovery, the Supreme Court has rejected

11  that approach, which wastes party and judicial resources on baseless claims.  The

12  entire thrust of *Iqbal* and *Twombly* is that parties cannot unlock the doors to

13  discovery without first sufficiently alleging plausible facts:  "It is no answer to say

14  that a claim just shy of a plausible entitlement to relief can, if groundless, be

15  weeded out early in the discovery process . . . ."  *Ashcroft v. Iqbal*, 556 U.S. 662,

16  685 (2009).  That is especially true here as MACOM admits that it cannot identify

17  any product and has done no analysis of whether any products ████████████

18      In fact, the Federal Circuit has required more than what MACOM has

19  pleaded even to constitute an adequate pre-filing investigation.  In *View Eng'g, Inc.*

20  *v. Robotic Vision Sys., Inc.*, 208 F.3d 981 (Fed. Cir. 2000), the Federal Circuit

21  found that a patentee failed to adequately investigate where it did not obtain an

_____

[2] It ████████████████████████████████████████████

███████████████████████████████████████████████████

As its motion for preliminary injunction revealed, MACOM's entire basis for
claiming Infineon Americas has created such products is a dubious triple hearsay
statement by an employee in Asia.  Dkt. No. 80-6 ¶¶ 3–4.  These circumstances
demonstrate the wisdom of *Iqbal* and *Twombly*'s requirement of specific, plausible
factual allegations, rather than merely generalized rumors and speculation.

REPLY IN SUPPORT OF INFINEON
AMERICAS' MOTION TO DISMISS 1ST
AMENDED COMPLAINT

1    accused product or compare it against the claims of the patents-in-suit but instead,

2    relied on advertisements and statements to customers.  In particular, the patentee

3    based its allegations of infringement on its President's "belief . . . based on [his]

4    knowledge of the [Robotic] patents, View's own advertising and its claims to

5    customers as to what its machines did, and [his] knowledge and understanding of

6    the technology required [in the field.]"  *View Eng'g*, 208 F.3d at 983.  The court

7    expressly rejected the argument that "there was no way for [Robotic] to determine

8    if View was *actually* infringing the eight patents until [Robotic] had an opportunity

9    to complete at least preliminary discovery."  *Id.* at 985.  Thus, the requirement to

10   analyze particular products before asserting that they practice a patent applies even

11   where some of the necessary information is arguably nonpublic.

12        Because it admits that it has not and cannot identify any particular products

13   and █████████████████████████████████████████████████████████

14   ████████████, MACOM resorts to generalized speculation about Infineon

15   Americas' motives in terminating the License Agreement and sweeping conclusions

16   about the scope of the licensed patents.  MACOM's allegations of "suspicious"

17   timing are no substitute for factual allegations identifying the specific products that

18   underlie its breach claims and plausibly suggesting ████████████████████

19   ████████      Nor is MACOM's conclusory allegation that the licensed patents are

20   "foundational."  Resp. at 22:2–5.  This is tantamount to the bare legal conclusion

21   that all conceivable products must necessarily infringe.  Such a legal conclusion is

22   not entitled to a presumption of truth and should not be credited in evaluating

23   MACOM's complaint.  *See Iqbal*, 556 U.S. at 664.  MACOM offers no supporting

24   factual allegations plausibly suggesting this is the case, such as which patents are

25   considered "foundational" or why.  Moreover, MACOM admits that it is possible to

26   design around "foundational" patents, meaning that products can be designed that

27   do not practice those patents.  Resp. at 21:11–14.  MACOM's attorney argument

28   that Infineon Americas' unspecified products ████████████████████████████

REPLY IN SUPPORT OF INFINEON
AMERICAS' MOTION TO DISMISS 1ST
AMENDED COMPLAINT

1    █████ is entirely speculative and cannot salvage its defective pleading.

2    **2.    MACOM also admits that it cannot identify any conduct by**
3    **Infineon Americas** █████████████████████████████████

4    Even assuming MACOM had sufficiently alleged that a particular Infineon

5    Americas product ████████████████████, MACOM still fails to show any

6    conduct allegedly ██████████████████████████████

7    ████████████████████████

8    MACOM claims that its allegation that Infineon Americas has been

9    "promoting and marketing GaN-on-Si RF products" is sufficient to allege an offer

10   for sale. Resp. at 23:17–26. Yet in the next breath, MACOM admits that it has not

11   alleged facts concerning necessary elements of an offer for sale, such as negotiation

12   of a price term. Resp. at 23:27–24:6. MACOM protests that it cannot make such

13   an allegation so "early in case, before discovery has even commenced," and that it

14   is not required to "show" detailed facts to support its claim. Resp. at 24:5–6. But

15   the Federal Rules and the Supreme Court expressly require a plausible factual

16   showing—MACOM must "show" that it is entitled to relief, meaning in this case,

17   that there has been an offer to sell a patent-practicing product in breach of the

18   License Agreement. *See Iqbal*, 556 U.S. at 679 ("[W]here the well-pleaded facts do

19   not permit the court to infer more than the mere possibility of misconduct, the

20   complaint has alleged—but it has not 'shown'—'that the pleader is entitled to

21   relief.'" (quoting Fed. R. Civ. P. 8(a)(2))).

22   MACOM's pleading falls far short of plausibly alleging the necessary

23   elements for an offer to sell. According to the Federal Circuit, an offer to sell

24   requires that a party "communicate a manifestation of willingness to enter into a

25   bargain, so made as to justify another person in understanding that his assent to that

26   bargain is invited and will conclude it." *MEMC Elec. Materials, Inc. v. Mitsubishi*

27   *Materials Silicon Corp.*, 420 F.3d 1369, 1376 (Fed. Cir. 2005). Notably, *MEMC*

28   held that sending detailed datasheets without any price terms to a potential buyer

REPLY IN SUPPORT OF INFINEON
AMERICAS' MOTION TO DISMISS 1ST
AMENDED COMPLAINT

was not enough. *Id*. at 1376. The only factual allegations that MACOM identifies are that (1) its customers said Infineon Americas promised samples of GaN-on-Si RF products at some future date (FAC ¶ 157) and (2) Infineon Americas released an investor presentation stating that it is developing GaN-on-Si products (FAC, ¶ 160). Even taken as true, neither leads to a reasonable inference that Infineon Americas made an offer to sell. MACOM's suggestion that a presentation created for ***investors***—not customers—constitutes an offer to sell products strains credibility.

MACOM wrongly seeks to avoid the offer for sale requirements set forth in *MEMC* by arguing that *MEMC* presented those requirements in the context of an appeal from summary judgment rather than a motion to dismiss. The procedural posture of *MEMC* does not affect its recitation of the substantive elements required to show an offer for sale. Rule 8 and *Twombly*—not *MEMC*—is the authority for dismissing MACOM's complaint for failure to plead those specific substantive elements at this stage of the litigation. Rule 8 requires factual allegations plausibly demonstrating that each element of each cause of action is satisfied. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (holding that the complaint must set forth "direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory").

### 3.   MACOM fails to allege where Infineon Americas' alleged conduct occurred.

Even assuming MACOM had sufficiently alleged that a particular Infineon Americas product ███████████████ and MACOM had sufficiently alleged all elements showing an offer to sell, MACOM does not identify where any such conduct occurred, ██████████████████████████

████████████████████████████████████

████████████████████████████████████

███████████████████████████ Lacking any allegations as to the location of relevant conduct, MACOM necessarily fails to state a plausible claim.

1      MACOM's counters that it need not allege where any conduct occurred

2  because the patent license agreement in fact ████████████████████████

3  ████████████████████████████████████████████████.  As

4  explained in detail below, this reading of the contract fails as a matter of law.  *See*

5  Sec. I.B *infra*.  A patent's reach is limited to the jurisdiction that issued the patent.

6  Any agreement that extended the patent's reach to other jurisdictions would be a

7  restraint on lawful business and, therefore, void under at least California law.

8      MACOM then half-heartedly argues that the mere allegation that Infineon

9  Americas is a U.S. company suffices to plausibly plead that the necessary conduct

10  occurred in the United States.  Resp. at 25:12–13.  Not so.  U.S. companies

11  routinely conduct activities outside the United States, just as foreign companies

12  routinely conduct business within the United States.  MACOM also argues that it

13  satisfies any territoriality pleading requirement because it alleged that Infineon

14  Americas posted an investor presentation that mentions GaN-on-Si products on a

15  ".com" website.  Resp. at 25:13–16.  This is a complete *non sequitur*.  The domain

16  name of the website hosting the presentation says nothing about where any

17  supposed violation of MACOM's exclusive license occurred.  Furthermore, as

18  discussed above, the presentation itself does not amount to an offer to sell within

19  the scope of a licensed patent, and thus its availability on a United States Internet

20  domain is irrelevant.  Furthermore, even if MACOM has plausibly pleaded United

21  States activity, it fails to tie that activity to any particular patent in the relevant

22  jurisdiction (*i.e.*, a United States patent).

23      At bottom, MACOM provides no facts as to the location of any conduct

24  ████████████████████████████████ mandating dismissal.

25  **B.**    **The relevant provision of the** ████████████████████

26  ████████████████████████████████████████████████

27      Because MACOM cannot plead facts showing that Infineon Americas'

28  breached ████████████████████████████████, MACOM

REPLY IN SUPPORT OF INFINEON
AMERICAS' MOTION TO DISMISS 1ST
AMENDED COMPLAINT

1  wrongly contends that the relevant provision ███████████████████████████

2  ████████████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████████

7  ████████████████████████████  This interpretation of the License Agreement

8  is inconsistent with the plain language and structure of the agreement itself and

9  MACOM's own prior interpretations of the agreement in this case.  Moreover,

10  MACOM argument would also render the agreement illegal and unenforceable.

11        ████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████████

28  ████████████████████████████████████████████████████████████

REPLY IN SUPPORT OF INFINEON
AMERICAS' MOTION TO DISMISS 1ST
AMENDED COMPLAINT

1  ████████████████████████████████████████████████████

2  ████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████

6  ████████████████████████

7    MACOM's new interpretation also contradicts previous interpretations that

8  MACOM advanced in this case.  In MACOM's motion for preliminary injunction,

9  MACOM asserts that the license agreement ███████████████████████

10 ████████████████████████████████████████████████████

11 ████████████████████  Dkt. No. 72-1 at 23:21–24:1.  Counsel for MACOM

12 confirmed in correspondence with counsel for Infineon Americas that this

13 interpretation was the interpretation that MACOM was advancing.  *See* Dkt. No.

14 112-2, Ex. 4.  Now, a month later, MACOM changes course and asserts that the

15 license agreement ██████████████████████████████████████

16 ██████████████████████████████  Resp. at 3:28–

17 4:1; 20:12–14.  MACOM's new reading of the agreement is merely a last-ditch

18 effort save its breach claim from dismissal and should be rejected.

19    Moreover, MACOM's interpretation is necessarily wrong because it would

20 render the license agreement unenforceable under and violative of state and federal

21 antitrust laws.  At a minimum, California law, which MACOM concedes governs

22 the interpretation of the agreement (FAC ¶ 86), would void ██████████

23 ██████████████████████████████████  Section 16600 of

24 the California Business & Professions Code voids any agreement "by which anyone

25 is restrained from engaging in a lawful profession, trade, or business of any kind."

26 Cal. Bus. & Prof. Code, § 16600 (1941).  The California Supreme Court has

27 confirmed that this broad statute is "unambiguous" and should be applied according

28 to its terms.  *Edwards v. Arthur Andersen LLP*, 189 P.3d 285, 291–92 (Cal. 2008)

REPLY IN SUPPORT OF INFINEON
AMERICAS' MOTION TO DISMISS 1ST
AMENDED COMPLAINT

1  (Section 16600 "represents a strong public policy of the state which should not be
2  diluted by judicial fiat").   MACOM's dubious interpretation of the License
3  Agreement falls squarely within Section 16600. ███████████████



9  MACOM's interpretation would thus render the License Agreement void under
10 Section 16600.  Therefore, MACOM's interpretation cannot be correct as a matter
11 of law.  *See* Cal. Civ. Code, § 1643 (1872) ("A contract must receive such an
12 interpretation as will make it lawful, operative, definite, reasonable, and capable of
13 being carried into effect"); *see also Edwards*, 189 P.3d at 296 (holding agreement
14 that released "any and all" claims should not be construed to encompass
15 nonwaivable statutory protections as that would render the agreement unlawful).

16 ███████████████████████████████████████████

17 Contrary to MACOM's argument, its flawed interpretation can and should be
18 rejected in ruling on the instant motion to dismiss.  *See, e.g.*, *Dunn v. GMAC*
19 *Mortgage, LLC*, No. 2:10-CV-03196 JAM, 2011 WL 1230211, at *3 (E.D. Cal.
20 Mar. 28, 2011) (dismissing contract claims with prejudice based on finding that
21 "Defendant's interpretation is the only lawful and reasonable interpretation").  As a
22 result, Infineon Americas breaches ███████████████
23 ███████████████████████████████  As
24 explained above, MACOM fails to plausibly allege any such conduct by Infineon
25 Americas. Sec. I.A *supra.*  Accordingly, it cannot maintain its claim for breach.

26 **II.    MACOM's fifth claim for declaratory judgment of non-infringement**
          **should be dismissed.**

27      MACOM's declaratory judgment of non-infringement should be dismissed

28

REPLY IN SUPPORT OF INFINEON
AMERICAS' MOTION TO DISMISS 1ST
AMENDED COMPLAINT

because MACOM has not shown an actual controversy as to the GaN-on-Si products that are the subject of that claim.  Because MACOM cannot show an actual controversy as to those products, MACOM tries to portray its claim as merely seeking a declaration that the License Agreement is not terminated.  But MACOM has a separate claim seeking precisely this relief (its third claim for relief).  FAC at ¶¶ 188-195 ("Declaratory Judgment – 2010 License Agreement Not Terminated").   MACOM's separate claim for a declaratory judgment of non-infringement (its fifth claim for relief) seeks something more.  Even though MACOM states that its sole basis for non-infringement is that its products are licensed under the License Agreement, a declaration of non-infringement on that basis would require more than a mere determination that the License Agreement is not terminated.  It would also require a finding that the twenty-nine particular products identified in MACOM's complaint qualify as licensed products under that agreement.  Thus, MACOM's problem remains that it has not shown an actual controversy specific to those products that would give the Court jurisdiction to take up this additional issue.

Infineon Americas does not dispute that its termination of the 2010 License Agreement raises an actual controversy.  However, that actual controversy is limited to MACOM's third claim for relief regarding termination.  Importantly, Infineon Americas' termination does not create any *infringement* controversy as to the specific twenty-nine GaN-on-Si products that are the subject of MACOM's separate fifth claim for relief ("Declaratory Judgment — Non-Infringement of the Nitronex Patents by MACOM's GaN-on-Si RF Product").  Because MACOM has not shown an actual controversy as to those twenty-nine GaN-on-Si products, MACOM's claim for declaratory judgment of non-infringement must be dismissed.

**A.**    **MACOM's fifth claim for relief, which seeks a declaration of non-infringement, is not the same as its third claim for relief, which seeks a declaration of no termination.**

MACOM admits that Infineon Americas has not taken any action to put at

REPLY IN SUPPORT OF INFINEON AMERICAS' MOTION TO DISMISS 1ST AMENDED COMPLAINT

issue the twenty-nine GaN-on-Si products that are the subject of MACOM's declaratory judgment for non-infringement.  The only act on which MACOM relies to try to establish an actual controversy is Infineon Americas' termination of the 2010 License Agreement.  As a result, MACOM misleadingly tries to portray its declaratory judgment of non-infringement as somehow limited to the issue of license termination.   Contrary to MACOM's mischaracterization, MACOM's declaratory judgment for non-infringement is not limited to the issue of termination.

MACOM has a separate declaratory judgment claim (its third claim for relief), which is seeking a declaration that the 2010 License Agreement is not terminated.  Resp. at 8:5–18; FAC, ¶¶ 188–195.  Infineon Americas does not dispute that there is a live controversy with respect to that claim.  If MACOM truly seeks the same relief in both its third claim for relief (declaratory judgment of no termination) and its fifth claim for relief (declaratory judgment of non-infringement), then the Court should exercise its discretion to decline hearing the duplicative fifth claim for relief and dismiss it.  *See Inglewood Lending Inc. v. G & G Coachella Investments, LLC*, 651 F. Supp. 2d 1141, 1145 (C.D. Cal. 2009); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) ("[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites.").  But of course the two claims are not the same, which is why MACOM separately pleaded its declaratory judgment of non-infringement, and why MACOM is fighting to avoid dismissal of that separate claim.

### 1.  MACOM's declaratory judgment of non-infringement is not limited to the issue of termination of the 2010 License Agreement.

MACOM's declaratory judgment of non-infringement is not limited to the issue of termination of the License Agreement, as MACOM contends.  MACOM is seeking a finding that its twenty-nine GaN-on-Si products do not infringe the thirty-nine patents listed in the complaint.  To try to portray this claim as equivalent to its

declaratory judgment of no termination, MACOM indicates that it is seeking this finding of non-infringement based on its GaN-on-Si products ███████████ ████████████████ Resp. at 10:24–11:13.  But MACOM is *not* limiting itself to that option.  Rather, MACOM suggests that it may assert non-infringement on grounds completely unrelated to the License Agreement.   Resp. at 13:16-19 ("MACOM should be able to adjudicate its contention that its products do not infringe ██████████████████████████████████████████████████ 13 n.3.  Thus, on its face, the declaratory judgment of non-infringement is much broader in scope than the declaratory judgment of no termination.

Moreover, even if MACOM were to limit itself to ████████████ , a declaration of non-infringement on that basis would require more than a mere determination that the 2010 License Agreement is not terminated.  It would also require a finding that each of the twenty-nine particular products identified in MACOM's  complaint ████████████████████████████████████ Regardless of MACOM's basis for arguing non-infringement, therefore, its fifth claim for relief, which seeks a declaration of non-infringement, is not equal in scope to its third claim for relief, which seeks a declaration of no termination.

**2.    MACOM's declaratory judgment of non-infringement would unfairly impose on Infineon AG the extraordinary burden of determining whether MACOM's twenty-nine GaN-on-Si products infringe thirty-nine patents.**

Although  MACOM  tries  to  portray  its  non-infringement  declaratory judgment as somehow equivalent to its declaratory judgment that the agreement is

---

3 ████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
███████

REPLY IN SUPPORT OF INFINEON AMERICAS' MOTION TO DISMISS 1ST AMENDED COMPLAINT

1    not terminated, they are quite different.  These differences are further revealed by

2    considering the ramifications of allowing the non-infringement claim to proceed.

3        If the Court were to proceed with MACOM's declaratory judgment of non-

4    infringement, Infineon Americas would have to decide whether to counterclaim that

5    each of MACOM's twenty-nine GaN-on-Si products infringes each of the thirty-

6    nine patents identified in the complaint.  These counterclaims are compulsory, not

7    permissive.  *Vivid Techs., Inc. v. Am. Sci. & Eng'g*, 200 F.3d 795, 801–02 (Fed.

8    Cir. 1999) ("As we have discussed, it is generally recognized that when the same

9    patent is at issue in an action for declaration of non-infringement, a counterclaim

10   for patent infringement is compulsory and if not made is deemed waived.").   In

11   other words, if Infineon Americas did not bring a counterclaim for infringement

12   against any of the twenty-nine GaN-on-Si products in response to MACOM's

13   declaratory judgment claim, it would be precluded from ever bringing a future

14   claim of infringement against those products.

15       To determine what, if any, counterclaims of infringement it should bring,

16   Infineon Americas would have to undertake a tremendous amount of work.  That

17   determination would require Infineon Americas to investigate and possibly reverse-

18   engineer all twenty-nine GaN-on-Si products.  It would also have to analyze all

19   thirty-nine patents and construe the claims of those patents.  And it would then need

20   to compare each of the twenty-nine products to the claims of each of the thirty-nine

21   patents.  That would come to 1,131 different comparisons of products to patents.

22   Estimating about 20 claims per patent, that could encompass 22,620 comparisons of

23   products to patent claims.  Completing this daunting task—which has not been

24   performed to date—would require an extension of time of at least six months.

25       MACOM has brought its declaratory judgment of non-infringement for

26   precisely the purpose of imposing this heavy burden on Infineon Americas.

27   Although there presently exists no infringement controversy between the parties on

28   MACOM's GaN-on-Si products, if MACOM succeeds in manufacturing one using

16

its declaratory judgment claim, it will force Infineon Americas into a Hobson's choice either (1) to undertake the tremendous effort and expense to perform this infringement analysis or (2) to forgo counterclaims of infringement to avoid this expense, thereby effectively forfeiting any future ability to enforce its patents against the GaN-on-Si products named in MACOM's complaint. This would be an unfair result and an extreme waste of resources, given that Infineon Americas has not taken any action to put any of the twenty-nine GaN-on-Si products at issue. *Cf. Prasco, LLC v. Medicis Pharmaceutical Corp.*, 537 F.3d 1329, 1341 (Fed. Cir. 2008) ("A patentee has no obligation to spend the time and money to test a competitors' product nor to make a definitive determination, at the time and place of the competitors' choosing, that it will never bring an infringement suit.").

### 3. MACOM's declaratory judgment for non-infringement would inevitably raise claim construction, infringement, invalidity, and the other typical patent case issues for all thirty-nine patents.

MACOM's declaratory judgment of non-infringement would inevitably raise all of the complex issues associated with a typical patent infringement case. And it would do so for thirty-nine patents—an extraordinary large number of patents that would make this case more than ten times larger than a typical patent case (which involves two to four patents on average).[4] Even though MACOM asserts that its twenty-nine products ██████████████████████████████, MACOM attempts to preserve its ability to contest infringement on any of the other grounds that are typical in a patent infringement suit. Resp. at 13:16-19 ("MACOM should be able to adjudicate its contention that its products do not infringe ████████████

████████████████████████████████████████████

---

[4] According to a recent study, Patent Assertion Entities (PAEs, sometimes referred to colloquially as "patent trolls") "assert 3.85 patents per case on average, while non-PAE plaintiffs assert 2.22 patents per case." Ashtor, Jonathan H., Michael Mazzeo, and Samantha Zyontz, Patents at Issue: The Data Behind the Patent Troll Debate, 21 Geo. Mason L. Rev. 957 (2014).

REPLY IN SUPPORT OF INFINEON AMERICAS' MOTION TO DISMISS 1ST AMENDED COMPLAINT

██████████████████████████████████ 13 n.3.   Thus, MACOM purportedly may still argue that its products do not meet specific elements of the patent claims or that specific patent claims are invalid or otherwise unenforceable.[5] Litigation of these issues would entail substantial discovery as to the twenty-nine products and the thirty-nine patents.  Litigation of these issues would also require the court to construe the meaning of the claims of the thirty-nine patents.  Resp. at 13 n.3.   Moreover, both sides would likely produce technical expert reports regarding infringement and MACOM's defenses.   Thus, MACOM's declaratory judgment of non-infringement would raise many more issues than merely whether the license agreement is terminated.

Such a drastic increase in the cost and complexity of this litigation is entirely unjustified given that MACOM is unable to show an actual controversy between the parties as to whether its twenty-nine GaN-on-Si products infringe the thirty-nine patents listed in its complaint.

**B.   Infineon Americas' termination of the 2010 License Agreement does not raise an actual controversy as to the twenty-nine GaN-on-Si products that are the subject of MACOM's declaratory judgment for non-infringement.**

MACOM does not identify a single allegation in its complaint that shows that there is a controversy specific to the twenty-nine GaN-on-Si products identified in MACOM's complaint.  *See Prasco*, 537 F.3d at 1340 (finding no jurisdiction where there was a "complete lack of evidence of a defined, preexisting dispute between the parties concerning" the specific product at issue).  MACOM does not dispute that Infineon Americas has never accused its GaN-on-Si products of infringement.  Nor does MACOM dispute that the only products Infineon has ever accused of infringement—its GaN-on-SiC products—are an entirely distinct technology.

MACOM argues that it has made an adequate showing of an actual

---

[5] Infineon Americas may argue that assignor estoppel precludes MACOM from raising invalidity or unenforceability defenses.

REPLY IN SUPPORT OF INFINEON AMERICAS' MOTION TO DISMISS 1ST AMENDED COMPLAINT

controversy because, under *MedImmune*, it is not required to show that Infineon Americas made an express accusation of infringement.  But *MedImmune* makes clear that there must be a controversy "of sufficient immediacy and reality" surrounding infringement.  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).  Later cases have clarified that this standard generally requires affirmative action by the patentee directed at the specific patents and products the declaratory judgment plaintiff seeks to put at issue.  *Prasco*, 537 F.3d at 1341 (observing that "defendants have not asserted any rights against Prasco related to the patents nor taken any affirmative actions concerning Prasco's current product").

In fact, all of the authority cited by MACOM involved conduct by the patentee that demonstrated a live dispute as to infringement for specific products.  In *ABB*, the patentee sent a letter stating its position that a licensee's outsourcing of manufacturing of a particular licensed product constituted infringing activity outside the scope of the license.  *ABB Inc. v. Cooper Indus., LLC*, 635 F.3d 1345, 1347 (Fed. Cir. 2011).  The letter further threatened that the patentee would "act vigorously to protect its rights" in this regard.  *Id.*  The court thus concluded that this warning letter indicated that there was an "immediate controversy surrounding infringement," as an infringement suit was the only way for the patentee to make good on its threat.  *Id.* at 1348-49.  Similarly, in *SanDisk*, the court found that the patentee demanded royalties based on "specific, identified activity," presented a "thorough infringement analysis," and repeatedly brought up the need for the declaratory judgment plaintiff to take a patent license.  *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1382 (Fed. Cir. 2007) (patentee delivered "a packet of materials, over 300 pages in length, containing, for each of ST's fourteen patents under discussion, a copy of the patent, reverse engineering reports for certain of SanDisk's products, and diagrams showing a detailed infringement analysis of SanDisk's products" and "communicated to SanDisk that it had made a studied and determined infringement determination and asserted the right to a

REPLY IN SUPPORT OF INFINEON AMERICAS' MOTION TO DISMISS 1ST AMENDED COMPLAINT

royalty based on this determination"). And in *MedImmune*, the Supreme Court found a controversy as to infringement because the patentee accused a specific drug of infringement and demanded royalty payments under the license. *MedImmune*, 549 U.S. at 128, 130-31.

Such facts are entirely lacking here. MACOM points to no action by Infineon Americas that creates a specific infringement dispute between the parties. Infineon has made no threat of an infringement suit, nor taken any other action suggesting that even one specific GaN-on-Si RF product is infringing, let alone each of the 29 named products for which MACOM claims there is a controversy.

MACOM claims that Infineon Americas' termination of the License Agreement constitutes such an action. MACOM is mistaken. To be sure, that action establishes an actual controversy in support of MACOM's declaratory judgment of no termination, but it does not create a further controversy as to the additional issues involved in MACOM's declaratory judgment of non-infringement. For the claim at issue here, MACOM must show an actual controversy as to *infringement*—*i.e.*, whether the twenty-nine GaN-on-Si products identified by MACOM infringe the thirty-nine patents listed in the complaint. To even support an inference that termination of the License Agreement raises a controversy as to infringement of the twenty-nine GaN-on-Si products, MACOM would need to show, at minimum, that those twenty-nine products practice the thirty-nine licensed patents or at least that Infineon Americas has taken the position that they do. If those products do not practice the patents, then Infineon Americas' termination of the License Agreement would have no effect on those products whatsoever. MACOM, however, fails to allege that the twenty-nine GaN-on-Si products practice the thirty-nine patents so as to show that termination of the License Agreement even affected those products.[6] Nor does MACOM allege conduct

---

[6] MACOM wrongly portrays Infineon Americas as arguing that, in every case, a plaintiff must admit infringement to bring a declaratory judgment of non-

REPLY IN SUPPORT OF INFINEON AMERICAS' MOTION TO DISMISS 1ST AMENDED COMPLAINT

1   suggesting that Infineon Americas has taken such a position.

2       MACOM contends that it "has pleaded that it practices one or more of the

3   Nitronex Patents."  Resp. at 13:2-21.  Even if this attorney argument could be

4   credited, "one or more" hardly accounts for the thirty-nine distinct patents

5   MACOM seeks to put in issue.  As MACOM's vaguely worded argument makes

6   clear, its allegations are not specific to any particular patents or products and

7   certainly do not encompass the entirety of the twenty-nine products and thirty-nine

8   patents for which it seeks a declaratory judgment.  At most, MACOM offers the

9   sweeping and conclusory allegation that certain unspecified patents are

10  "foundational" and "groundbreaking."  (FAC ¶ 63.)  Notably, MACOM does not

11  even identify which of the thirty-nine patents are "foundational" or provide any

12  factual allegations plausibly suggesting why that is the case.  And elsewhere in its

13  brief, MACOM appears to backpedal, arguing that it should not be required to

14  admit that its products practice particular patents.  Resp. at 13:16-19.

15      The only other conduct on which MACOM relies is a letter Infineon

16  Americas (then IR) sent to MACOM and one of its suppliers.  Resp. at 11 n.2.

17  Contrary to MACOM's suggestion, that letter expressly did not accuse any

18  **MACOM** product of infringement.  ███████████████████████

19  ████████████████████████████████████████████████████████████

20  ███████████████████████████████████████████████  Dkt.

21

22  infringement.  Nonsense.  MACOM's obligation to plead that its GaN-on-Si

23  products practice the licensed patents arises in this case from the fact that MACOM

    is relying *solely* on a terminated license agreement to create a separate infringement

24  controversy specific to those GaN-on-Si products.  Given that Infineon Americas

25  has not taken the position that those particular products practice the licensed patents

    or that those products would be infringing without the terminated license, Infineon

26  Americas' termination of the license agreement could raise an infringement

27  controversy specific to those products, if at all, only if MACOM itself took the

    position that those products practice the licensed patents.

28

REPLY IN SUPPORT OF INFINEON
AMERICAS' MOTION TO DISMISS 1ST
AMENDED COMPLAINT

No. 92-4, Ex. 1. ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████

In the absence of any conduct by Infineon Americas suggesting that MACOM's GaN-on-Si RF products practice the patents, MACOM's vague allegations that termination of the License Agreement puts it at risk because its GaN-on-Si RF products are "arguably infringing" are more akin to the allegations of a "potentially infringing device" rejected by the Federal Circuit in *Panavise*. *Panavise Products, Inc. v. Nat'l Products, Inc.*, 306 F. App'x 570 (Fed. Cir. 2009). There, the declaratory judgment plaintiff alleged that the patentee's conduct had "put [it] under a reasonable and serious apprehension of an imminent suit in light of the fact that [it] ha[d] manufactured and produced a potentially infringing device." *Id.* at 571. Although the plaintiff pleaded that the patentee had sought to enforce the relevant patent against various other entities in litigation, the patentee had "yet to accuse [plaintiff] of infringement or take any actions which may imply such allegations." *Id.* at 573. The Federal Circuit thus concluded that the "lack of any evidence that NPI plans to assert the '420 patent against Panavise prevents us from concluding that Panavise faces any immediate threat of future injury." *Id.* The same result should obtain here, where MACOM relies on speculative harm that it might be subject to suit because its products "arguably infringe" but lacks any action by Infineon Americas to make that harm real or immediate.[7]

---

[7] MACOM attempts to sidestep *Panavise* by suggesting that Infineon Americas should have submitted a "declaration disavowing knowledge of MACOM's GaN-on-Si RF products or any intent to enforce the Nitronex Patents

REPLY IN SUPPORT OF INFINEON AMERICAS' MOTION TO DISMISS 1ST AMENDED COMPLAINT

Ultimately, MACOM's position proves too much.  Without alleging something more on Infineon Americas' part, MACOM's preferred outcome would inappropriately expand the reach of declaratory judgment jurisdiction.  It is common practice for competitors to enter cross-license agreements in which each party obtains a broad license to practice a large portfolio of the other party's patents, which could well number in the hundreds or even thousands of patents.  Under MACOM's view, every time such an agreement were terminated, one or both parties could haul the other in to court to seek a declaratory judgment of non-infringement as to potentially hundreds or thousands of patents without ever alleging any patentee conduct beyond the mere termination and without having to allege any facts showing that there is a real infringement risk because the products at issue practice specific ones of the formerly licensed patents.  MACOM tries to distinguish its claim from this situation by emphasizing various aspects of the parties' past relationship, but none of those details has any bearing on whether there is an actual controversy between the parties regarding infringement.  The case or controversy requirement protects against these very situations by requiring more than merely license termination and a history of cooperation.

Because MACOM fails to allege any act by Infineon Americas that creates an actual controversy as to infringement for any of the specific products at issue, MACOM fails to meet its burden to establish jurisdiction.  Having failed to do so, its claim merely seeks an advisory opinion to which it is not entitled, requiring dismissal.  *See Prasco*, 537 F.3d at 1341-42 ("Although we understand Prasco's desire to have a definitive answer on whether its products infringe defendants' patents, were the district court to reach the merits of this case, it would merely be

---

against MACOM," similar to the evidence the patentee submitting in *Panavise*. Resp. at 15:2-5.  But Infineon Americas raised a facial challenge to subject-matter jurisdiction, and thus reliance on declarations would be inappropriate.

REPLY IN SUPPORT OF INFINEON AMERICAS' MOTION TO DISMISS 1ST AMENDED COMPLAINT

1    providing an advisory opinion.  This is impermissible under Article III.").

2    **III.    MACOM cannot maintain its claim for declaratory judgment of non-infringement for products it has not even identified.**

3

4        The law is well-settled that MACOM cannot establish a controversy over

5    products it chose not to identify because jurisdiction must be established on a

6    product-by-product basis.  *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 911

7    (Fed. Cir. 2014).    Yet MACOM seeks a declaration that an entire class of

8    products—some of which may not even yet exist—do not infringe the 39 identified

9    patents.    Although MACOM identified some specific model numbers, MACOM

10   acknowledges that this was a non-exhaustive list.  MACOM necessarily fails to

11   establish an infringement controversy for products it does not even name.

12       MACOM tries to distinguish *DataTern* by pointing out that it involved the

13   scope of a judgment rather than the standard for pleading.  That the parties there

14   failed to raise the jurisdictional defect at the pleading stage in no way diminishes its

15   relevance here.  Once the issue was raised on appeal from summary judgment, the

16   Federal Circuit took corrective action, narrowing the scope of the judgment to

17   exclude products for which jurisdiction was lacking.  *Id.*  The stage at which the

18   issue arose does not alter the holding that controls the outcome here.  MACOM was

19   required to show jurisdiction on a product-by-product basis, but has failed to do so.

20       MACOM also tries to distinguish the numerous district court decisions cited

21   by Infineon Americas by arguing essentially that its complaint is not quite as bad as

22   the ones dismissed in those decisions because it at least identified *some* of the

23   products for which it seeks a declaratory judgment.  Yet MACOM points to nothing

24   in those decisions suggesting that the outcome would have been different had the

25   complaint named a few more—but still less than all—of the products the plaintiff

26   sought to put in issue.  If anything, they suggest that all products must be named, an

27   approach consistent with the Federal Circuit's holding that jurisdiction must be

28   established on a product-by-product basis.  *See, e.g., Xilinx, Inc. v. Invention Inv.*

REPLY IN SUPPORT OF INFINEON
        AMERICAS' MOTION TO DISMISS 1ST
        AMENDED COMPLAINT

*Fund I LP*, No. 11-CV-0671, 2011 WL 3206686, at *6 (N.D. Cal. July 27, 2011)
("In an action for declaratory judgment . . . for patent non-infringement, the
pleading must specify the products or conduct alleged not to infringe.").

Rule 12(b)(6) also mandates dismissal as to unnamed products. For such
products, MACOM has not provided Infineon Americas fair notice. The identities
of the unnamed products at issue remain known only to MACOM. MACOM's
reliance on *K-Tech Telecomm'ns, Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277
(Fed. Cir. 2013) is unavailing. While *K-Tech* allowed infringement claims to
proceed that were alleged using a broad categorical descriptor, it did so based on
the sample pleading found in Form 18 of the Federal Rules of Civil Procedure,
which former Rule 84 provided was sufficient to state a claim. *Id.* at 1284. Since
the *K-Tech* decision, both Form 18 and Rule 84 have been eliminated by
amendments to the Rules. *See Atlas IP, LLC v. Exelon Corp.*, No. 15 C 10746,
2016 WL 2866134, at *5 (N.D. Ill. May 17, 2016) (rejecting *K-Tech* following
elimination of Form 18 and Rule 84). Given the *K-Tech* court's heavy reliance on
Form 18, its elimination casts serious doubt on the continued viability of such
sweeping categorical product identifications. Moreover, *K-Tech* did not involve a
declaratory judgment of non-infringement, for which jurisdictional requirements
must be met on a product-by-product basis, as explained above.

MACOM could have and should have identified all of its own products for
which it seeks declaratory relief. Because MACOM can neither establish
jurisdiction nor state a claim as to products that it chose not to identify, the Court
should dismiss MACOM's claim as to the unidentified products on this basis alone.

## CONCLUSION

MACOM's claims for declaratory judgment of non-infringement and breach
of contract are insufficiently alleged and would unjustifiably increase the burden
and expense of this litigation. For the reasons set forth above, the Court should
dismiss the challenged claims in their entirety.

REPLY IN SUPPORT OF INFINEON
AMERICAS' MOTION TO DISMISS 1ST
AMENDED COMPLAINT

Dated: September 26, 2016

By: ___/s/ Jeffery D. Baxter_____
David G. Wille
Texas State Bar No. 00785250
E-mail: david.wille@bakerbotts.com
Jeffery D. Baxter
Texas State Bar No. 24006816
E-mail: jeff.baxter@bakerbotts.com
Brian D. Johnston
Texas State Bar No. 24080965
E-mail: brian.johnston@bakerbotts.com
James C. Williams
Texas State Bar No. 24075284
E-mail: james.williams@bakerbotts.com
Charles Yeh
Texas State Bar No. 24075319
E-mail: charles.yeh@bakerbotts.com

BAKER BOTTS L.L.P.
2001 Ross Avenue
Dallas, Texas 75201
Telephone: (214) 953-6791
Facsimile: (214) 953-6503

Attorneys for Infineon Technologies
Americas Corp.

26

REPLY IN SUPPORT OF INFINEON
AMERICAS' MOTION TO DISMISS 1ST
AMENDED COMPLAINT