LINDA M. BURROW, Bar No. 194668
  *burrow@caldwell-leslie.com*
ALISON MACKENZIE, Bar No. 242280
  *mackenzie@caldwell-leslie.com*
CALDWELL LESLIE AND PROCTOR PC
725 South Figueroa Street 31st Floor
Los Angeles, CA  90017-5524
Telephone:  213-629-9040 / Fax:  213-629-9022

DAVID G. WILLE (admitted *pro hac vice*)
  *david.wille@bakerbotts.com*
JEFFERY D. BAXTER (admitted *pro hac vice*)
  *jeff.baxter@bakerbotts.com*
BRIAN D. JOHNSTON (admitted *pro hac vice*)
  *brian.johnston@bakerbotts.com*
JAMES C. WILLIAMS (admitted *pro hac vice*)
  *james.williams@bakerbotts.com*
CHARLES YEH (admitted *pro hac vice*)
  *charles.yeh@bakerbotts.com*
BAKER BOTTS L.L.P.
2001 Ross Avenue, Suite 600
Dallas, TX 75201
Telephone:  214.953.6500 / Fax:  214.953.6503

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. and NITRONEX, LLC,<br><br>             Plaintiffs,<br><br>      v.<br><br>INFINEON TECHNOLOGIES AG, *et al.*,<br><br>             Defendants. | Case No. CV 16-02859 CAS (PLAx)<br><br>**DEFENDANT INFINEON TECHNOLOGIES AG'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT UNDER RULES 12(b)(1), 12(b)(2), AND 12(b)(6)**<br><br>**[Declarations and Exhibits thereto filed concurrently herewith; [Proposed] Order Granting Motion to Dismiss lodged concurrently herewith]**<br><br>**Hon. Christina A. Snyder**<br>**Date:      October 17, 2016**<br>**Time:      10:00 a.m.**<br>**Ctrm.:    5** |

# TABLE OF CONTENTS

I.   MACOM has not met its high burden to show that Infineon AG and Infineon Americas should be treated as one under alter ego. .........................1

    A.   MACOM has not alleged sufficient facts to show unity of interest and ownership. ............................................................................2

    B.   MACOM has not alleged sufficient facts to show fraud or injustice. ...............................................................................................5

II.  MACOM's declaratory judgment for non-infringement should be dismissed for lack of subject matter jurisdiction and for failure to state a claim because Infineon AG does not own the patents at issue....................6

III. MACOM's contract claims should be dismissed for lack of subject matter jurisdiction and for failure to state a claim because Infineon AG is not a party to the agreements at issue. .........................................................7

    A.   MACOM cannot establish agency liability because it failed to allege facts establishing an agency relationship at the time that IR executed the agreements at issue. ....................................................7

    B.   MACOM cannot establish ratification liability because it cannot show that IR purported to execute the agreements on Infineon AG's behalf in 2010................................................................................9

    C.   MACOM cannot bring its contract claims against Infineon AG without showing that Infineon AG agreed to be bound by those agreements. ......................................................................................11

IV.  MACOM has not established personal jurisdiction over Infineon AG.........12

    A.   ███████████████████████  is not relevant to MACOM's claims against Infineon AG. ............................................................13

    B.   MACOM cannot establish specific jurisdiction ███████████ ████████████████████████..........................................14

    C.   MACOM's hearsay statement does not establish that ███████ ████████████████████████..........................................17

i

V.   MACOM's intentional interference claim should be dismissed because the financial interest privilege and manager's privilege bar that claim. ....... 20

    A.   Financial interest privilege bars MACOM's intentional inference claim. ................................................................. 20

    B.   Manager's privilege bars MACOM's intentional inference claim. ........................................................................ 23

VI.   MACOM is not entitled to discovery. ........................................... 25

CONCLUSION ........................................................................................ 25

ii

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................................... 23, 25

*Bangkok Broad. & T.V. Co. v. IPTV Corp.,*
742 F. Supp. 2d 1101 (C.D. Cal. 2010) ............................................ 11

*Bell Atlantic Corporation v. Twombly,*
550 U.S. 544 (2007) ................................................................... 21, 23

*Best Foods v. Aerojet-General Corp.,*
173 F. Supp. 2d 729 (W.D. Mich. 2001) .......................................... 17

*Boehringer Ingleheim Vetmedica, Inc. v. Merial, Ltd.,*
No. 3:09CV212(AWT), 2010 WL 174078 (D. Conn. Jan. 14, 2010) .................. 6

*Bowoto v. Chevron Texaco Corp.,*
312 F. Supp. 2d 1229 (N.D. Cal. 2004) ........................................ 8, 11

*Calvert v. Huckins,*
875 F. Supp. 674 (E.D. Cal. 1995) .................................................... 5

*Carte Blanche (Singapore) PTE., Ltd. v. Diners Club Int'l,*
758 F. Supp. 908 (S.D.N.Y. 1991) .................................................... 10

*Cedars-Sinai Medical Center v. Global Excel Management,*
Case No. 09-3627, 2009 WL 4730882 (C.D. Cal. Dec. 4, 2009) .................. 25

*Changanti v. I2 Phone Intern., Inc.,*
635 F. Supp. 2d 1065 (N.D. Cal. 2007) ........................................... 25

*Doe v. Unocal Corp.*
248 F.3d 915 (9th Cir. 2001) ...................................................... 3, 12

*Dole Food Co. v. Patrickson,*
538 U.S. 468 (2003) ..................................................................... 1, 6

*DSPT Int'l Inc. v. Nahum,*
No. CV 06-0308, 2007 WL 5282563 (C.D. Cal. 2007) ........................ 10

iii

*Emery v. Visa Int'l Serv. Ass'n,*
  95 Cal App. 4th 952 (2002)................................................................9

*Farris v. Int'l Paper Co.,*
  No. 5:13-cv-485, 2014 WL 3657051 (C.D. Cal. July 21, 2014).......................24

*Firstmark Capital Corp. v. Hempel Financial Corp.,*
  859 F.2d 92 (9th Cir. 1988).................................................................5

*Gandelman v. Mercantile Inc. Co. of Am.,*
  187 F.2d 654 (9th Cir. 1951)...............................................................9

*Gerritsen v. Warner Bros. Entm't Inc.*
  112 F. Supp. 3d 1011, 1042 (C.D. Cal. 2015).....................................5, 8, 11, 25

*Harrison Ventures, L.L.C. v. Alta Mira Treatment Center L.L.C.,*
  No. C 10-00188 RS, 2010 WL 1929566 (N.D. Cal. May 12, 2010) ...........23, 24

*Hickory Travel Sys. v. TUI AG,*
  213 F.R.D. 547 (N.D. Cal. 2003) ..........................................................3

*In re Automobile Antitrust Cases I & II,*
  135 Cal. App. 4th 100 (Cal. Ct. App. 2005).............................................4

*In re Gonda,*
  No. 10-58722, 2011 WL 5240154 (N.D. Cal. Oct. 31, 2011)..........................9

*Jones v. Bank of Am.,*
  49 Cal.App.2d 115 (1942) ...................................................................9

*Katzir's Floor & Home Design, Inc. v. M-MLS.com,*
  394 F.3d 1143 (9th Cir. 2004)..............................................................5

*Los Angeles Airways, Inc. v. Davis,*
  687 F.2d 321 (9th Cir. 1982)...............................................................24

*Los Gatos Mercantile, Inc. v. E.I. DuPont De Menours and Co.,*
  No. 13-cv-01180-BLF, 2015 WL 4755335 (N.D. Cal. Aug. 11, 2015) ............................................................................12

*Moss v. U.S. Secret Service,*
  572 F.3d 962 (9th Cir. 2009)...............................................................23

iv

*Phoenix Canada Oil v. Texaco,*
  842 F.2d 1466 (3d Cir. 1988) ............................................................... 8, 9

*Pullen v. Dale,*
  109 F.2d 538 (9th Cir. 1940) .................................................................. 9

*Rakestraw v. Rodrigues,*
  8 Cal. 3d 67 (1972) ................................................................................ 9

*Ranza v. Nike Inc.,*
  793 F.3d 1059 (9th Cir. 2015) ............................................................... 2

*Sade Shoe Co. v. Oschin & Snyder,*
  162 Cal. App. 3d 1174 (Cal. Ct. App. 1984) ....................................... 21

*Sarafian v. Wright Med. Tech.,*
  No. 2:15-cv-09397-CAS(KSx), 2016 WL 1305087 (C.D. Cal.
  2016) ............................................................................................ 3, 4, 12

*Schiavone v. Pearce,*
  77 F. Supp. 2d 284 (D. Conn. 1999) ...................................................... 4

*Schweitzer v. Bank of Am.,*
  42 Cal.App.2d 536 (1941) ................................................................... 10

*Sopcak v. N. Mountain Helicopter Serv.,*
  52 F.3d 817 (9th Cir. 1995) ................................................................. 25

*Southwest Gas Corp. v. Int'l Bhd. of Elec. Workers, ALF-CIO-CLC,*
  No. CV-02-1728-JCM-LRL, 2004 WL 3698057 (D. Nev. Feb. 3,
  2004) ............................................................................................ 10, 12

*Stonebrae, L.P. v. Toll Bros.,*
  No. 08-cv-221, 2008 WL 2157000 (N.D. Cal. May 21, 2008) .......... 21, 22

*Teracom v. Valley Nat'l Bank,*
  49 F.3d 555 (9th Cir. 1995) ................................................................. 25

*Trend Micro Corp. v. Whitecell Software, Inc.,*
  No. C 10-02248 WHA, 2010 WL 4722504 (N.D. Cal. Nov. 15,
  2010) ...................................................................................................... 6

*United States v. Bestfoods,*
  524 U.S. 51 (1998) ................................................................................ 2

v

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Wady v. Provident Life and Accident Ins. Co. of Am.,*
    214 F. Supp. 2d 1060 (C.D. Cal. 2002)................................................................5

*Watkins v. Clemmer,*
    129 Cal.App. 567 (1933) ...................................................................................10

*Wechsler v. Macke Int'l Trade Inc.,*
    327 F. Supp. 2d 1139 (C.D. Cal. 2004) ...............................................................5

DEFENDANT INFINEON TECHNOLOGIES AG'S
REPLY IN SUPPORT OF ITS MOTION TO DISMISS

This case should have been a straightforward contract dispute between MACOM and Infineon Technologies Americas Corp. ("Infineon Americas") about termination of the parties' 2010 License Agreement.  Infineon Americas stands ready to litigate that claim.  Unfortunately, MACOM has repeatedly acted to multiply the proceedings for the purpose of harassing and imposing unnecessary burden and expense on Defendants.  First, MACOM has tried to inject Infineon Americas' indirect German parent Infineon Technologies AG ("Infineon AG") into the case—by alleging that Infineon AG breached an agreement to which it is not even a party; by suing Infineon AG for a declaration of non-infringement based on patents that Infineon AG does not own; and by trying to transform its contract claims against Infineon Americas into a tort claim against Infineon AG.  In addition, MACOM has also sued both Defendants on two additional, unnecessary claims that would greatly complicate the case and that MACOM did not and cannot properly plead.[1]  Most recently, MACOM moved for preliminary injunction on its third claim for relief based on a flimsy triple-hearsay statement, and then MACOM misleadingly submitted a proposed injunction order that improperly encompassed its breach-of-contract claims for which it did not even try to show likelihood of success on the merits.  The proper way to move this case forward is to reject MACOM's litigation tactics and dismiss all claims against Infineon AG.

## I.   MACOM has not met its high burden to show that Infineon AG and Infineon Americas should be treated as one under alter ego.

For purposes of jurisdiction and liability, MACOM wrongly argues that Infineon AG and Infineon Americas should be treated as one under alter ego.  "A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities."  *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003).

---

[1] Infineon AG moves to dismiss MACOM's second and fifth claims for relief on the same grounds that Infineon Americas presented in its motion to dismiss. Thus, Infineon AG continues to incorporate and rely on Infineon Americas' briefing of those issues, including its motion and rely brief.

Thus, as a general principle, corporate separateness insulates a parent corporation from liability created by its subsidiary, notwithstanding the parent's ownership of the subsidiary.  *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998).  Because alter ego is an exception to this general rule, MACOM's burden is high to show that Infineon AG and Infineon Americas should be treated as one.  "To satisfy the alter ego exception, a plaintiff must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice."  *Ranza v. Nike Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) (internal quotations omitted).  MACOM failed to plead sufficient facts to support either prong of the alter ego test.

### A. MACOM has not alleged sufficient facts to show unity of interest and ownership.

The "unity of interest and ownership" prong "envisions pervasive control over the subsidiary, such as when a parent corporation dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation."  *Id.* at 1073.  "Total ownership and shared management personnel are alone insufficient to establish the requisite level of control. "  *Id.*  The facts cited by MACOM show that Infineon AG and Infineon Americas have acted consistent with normal business practices for a parent and subsidiary.  MACOM did not allege facts showing that Infineon AG directed Infineon Americas' day-to-day activities or facts showing that the parties failed to respect corporate formalities.  Thus, MACOM cannot satisfy the "unity of interest and ownership" prong.

In its opposition, MACOM does not even argue that it has alleged facts showing that Infineon AG directed Infineon Americas' day-to-day activities.  In its complaint, MACOM relies on statements from Infineon AG's 2015 Annual Report boasting of corporate integration after the acquisition of International Rectifier Corporation ("IR") (Dkt. 65 at ¶ 20), but MACOM failed to address Infineon AG's

2

case law establishing that such statements do not make a prima facie case of alter ego.  Dkt. 99 at 8:18-9:17 (citing *Hickory Travel Sys. v. TUI AG*, 213 F.R.D. 547, 554 (N.D. Cal. 2003)).

In its opposition, MACOM wrongly contends that it has alleged specific facts demonstrating (1) commingling of assets, (2) treatment of Infineon Americas' assets as Infineon AG's assets; and (3) Infineon AG holding itself out as liable for Infineon Americas' debt.  Dkt. 113 at 16:15-18.  The only fact that MACOM identifies is that Infineon AG provided revenue, assets, and liabilities on a consolidated basis for itself and its subsidiaries in its 2015 Annual Report.[2]  Dkt. 113 at 16:18-21 (citing only to Dkt. 65, ¶ 21).  But "consolidating the activities of a subsidiary into the parent's report is a common business practice" and, thus, does not establish the existence of an alter ego.  *Doe v. Unocal Corp.* 248 F.3d 915, 929 (9th Cir. 2001) (refusing to consider facts from parent company's annual reports); *accord Sarafian v. Wright Med. Tech.*, No. 2:15-cv-09397-CAS(KSx), 2016 WL 1305087 at *4-5 (C.D. Cal. 2016) (Snyder, J.).

Similarly, MACOM wrongly relies on the Annual Report to allege that Infineon AG held itself out as owning the so-called Nitronex Patents and counted Infineon Americas' employees as its own.  Dkt. 113 at 16:21-23 (citing Dkt. 65 at ¶¶ 21, 24).  The Annual Report, however, describes the patents and employees of the entire Infineon Group—not Infineon AG alone.  Ex. 11 at 24 (defining "Infineon" to refer to the entire Infineon Group, including Infineon AG and its consolidated subsidiaries).  As to the patents, MACOM also erroneously relies on a single statement in a press release that, just like the Annual Report, uses the term "Infineon" to describe the collective patent portfolio of the entire Infineon Group.  Dkt. 113 at 16:22 (citing Dkt. 65 at ¶ 25);  Ex. 12 (compare the use of "Infineon" to

---

[2]  The 2015 Annual Report defines "Infineon" as referring to the entire Infineon Group, including Infineon AG and its subsidiaries.  Ex. 11 at 24.  The Annual Report also repeatedly uses the term "consolidated" to make clear that that it is describing Infineon AG and its subsidiaries.

3

1   other references to "Infineon Technologies AG"); *see Sarafian*, 2016 WL 1305087

2   at *5 (refusing to rely on collective references in press release for the same reasons

3   as corporate reporting documents).   Even if the press release had referred

4   specifically to Infineon AG, it would have simply reflected Infineon AG's indirect

5   interest in the patents—not a commingling of assets.

6   ████████████████████████████████████████████████████████

7   ██████████ is also consistent with the normal parent-subsidiary relationship.   *See,*

8   *e.g., In re Automobile Antitrust Cases I & II,* 135 Cal. App. 4th 100, 120, fn. 10

9   (Cal. Ct. App. 2005) (holding that "shared professional services" are "normal and

10  expected" oversight for a foreign parent to exercise over a local subsidiary);

11  *Schiavone v. Pearce*, 77 F. Supp. 2d 284, 290-91 (D. Conn. 1999) (finding that

12  defendant acted in its role as a parent company in providing legal services to a

13  subsidiary and assisting in the negotiation of the subsidiary's contracts).

14      In its complaint, MACOM based its argument that the Defendants did not

15  respect corporate formalities on its misleading factual allegations that "Infineon

16  AG—not Infineon Americas—████████████████████████████████████

17  ██████   Dkt. 65 at ¶ 28.   After Infineon AG pointed out that Infineon Americas did

18  in fact ████████████████████████████████████████████   (Dkt.

19  99 at 9:25-10:7), MACOM declined to re-raise its argument that the ████████

20  ████████████████ supports a failure to respect corporate formalities.[3]

21      Unable to point to any other specific facts supporting its alter ego theory,

22  MACOM resorts to a general citation to five pages of conclusory allegations.   Dkt.

23  113 at 16:24-27 (citing Dkt 65. at ¶¶ 18-37).   Conclusory assertions of various

24  elements of alter ego liability are not sufficient, because MACOM must plead

25          [3]  Contrary to MACOM's mischaracterization, the court in *Choice-Intersil*
26  *Microsystems, Inc. v. Agere Sys. Inc.* did not find alter ego or agency, or even
    disregard any corporate formalities.   The court simply found that because one
27  Infineon subsidiary was able to obtain documents from Infineon AG in the ordinary
    course of business, it should have to produce those same documents in response to
28  a document request. 224 F.R.D. 471, 473 (N.D. Cal. 2004).

4

***specific facts***.  *Gerritsen v. Warner Bros. Entm't Inc.* 112 F. Supp. 3d 1011, 1042 (C.D. Cal. 2015) (rejecting conclusory assertions of various elements of alter ego liability).  The only specific facts alleged by MACOM reflect a normal parent-subsidiary relationship and do not justify disregarding Defendants' corporate form.

      **B.**   **MACOM has not alleged sufficient facts to show fraud or injustice.**

MACOM also failed to allege facts showing any fraud or injustice would result if it were able to pursue its claims against Infineon Americas but not Infineon AG.  "The injustice that allows a corporate veil to be pierced is not a general notion of injustice; rather, it is the injustice that results only when corporate separateness is illusory."  *Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004).  *Wechsler v. Macke Int'l Trade Inc.*, 327 F. Supp. 2d 1139, 1145 (C.D. Cal. 2004) ("[U]nder California law the kind of inequitable result that makes alter ego liability appropriate is an abuse of the corporate form, such as under-capitalization or misrepresentation of the corporate form to creditors." (quoting *Firstmark Capital Corp. v. Hempel Fin. Corp.*, 859 F.2d 92, 94 (9th Cir. 1988)).  MACOM does not allege any fraud as to corporate form.  MACOM does not suggest that Infineon Americas is undercapitalized or that Infineon AG has made efforts to strip Infineon Americas of assets to prevent MACOM from obtaining relief from Infineon Americas.  *See Calvert v. Huckins,* 875 F. Supp. 674, 679-680 (E.D. Cal. 1995).  MACOM fails to point to any fraud or injustice that would result if it were able to pursue its contract claims and declaratory judgment of non-infringement against Infineon Americas but not Infineon AG.  *See Wady v. Provident Life and Accident Ins. Co. of Am.*, 214 F. Supp. 2d 1060, 1070 (C.D. Cal. 2002) (finding no injustice supporting that a parent and its subsidiary are alter egos where the plaintiff may recover damages for breach of contract from the subsidiary that is a party to the contract at issue).

With respect to both prongs of the alter ego test, MACOM has failed to plead the specific facts necessary to overcome the presumption of separateness afforded to a related corporation. *See Dole Food Co.*, 538 U.S. at 475 ("The doctrine of piercing the corporate veil, however, is the rare exception, applied in the case of fraud or certain other exceptional circumstances.").

**II.  MACOM's declaratory judgment for non-infringement should be dismissed for lack of subject matter jurisdiction and for failure to state a claim because Infineon AG does not own the patents at issue.**

To show an actual case or controversy, MACOM must show that Infineon AG owns the patents at issue. *See Trend Micro Corp. v. Whitecell Software, Inc.*, No. C 10-02248 WHA, 2010 WL 4722504, at *3 (N.D. Cal. Nov. 15, 2010); *Boehringer Ingleheim Vetmedica, Inc. v. Merial, Ltd.*, No. 3:09CV212(AWT), 2010 WL 174078, at *9 (D. Conn. Jan. 14, 2010) (finding no case or controversy to support a declaratory judgment claim because the defendant did not own the patents at issue). It is undisputed that Infineon AG does not own the patents at issue.[4] Pelzer Decl. at ¶¶ 8-9; LeFort Decl. ¶ 6. Relying on its alter ego and agency theories, MACOM argues that "Americas' alleged formal ownership can be attributed to AG." Dkt. 113 at 22:7-10. As described above, MACOM failed to show either prong of the alter ego test, and thus, MACOM cannot rely on alter ego to attribute ownership of the patents to Infineon AG. *See supra* § I.

MACOM's agency theory also does not support attributing Infineon Americas' ownership of the patents at issue to Infineon AG. First, MACOM has not provided a legal basis for its assertions that agency theory allows ownership of patents to be attributed from one party to another or that such attribution would subject a party to suit based on patents that it does not, in fact, own. Infineon AG is not aware of any such law.

---

[4] Although MACOM alleges that PTO records reflect that IR owns some patents at issue, those records confirm Infineon Americas' ownership because IR changed its name to Infineon Americas in October 2015. Pelzer Decl. at ¶ 5; LeFort Decl. at ¶ 4.

Moreover, MACOM fails to plead facts to support its agency theory. MACOM asserts that Infineon AG "held itself out to the world as the new owner of IR [and] its patents" (Dkt. 113 at 14:20-22), but MACOM does not plead facts supporting that conclusory assertion.  The only facts to which MACOM points are statements in Infineon AG's Annual Report and a press release referring to the *collective* assets of Infineon AG and its subsidiaries.  *See supra* § I.A.  Those statements cannot make Infineon AG subject to lawsuits based on its subsidiary's patents, because if that were the case, then every corporate parent could be hauled into court based on mere statements about the assets of its subsidiaries or consolidated group.

Because Infineon AG does not own the patents at issue, there is not an actual case or controversy to support MACOM's declaratory judgment of non-infringement, and MACOM fails to plead a claim for relief.

**III.    MACOM's contract claims should be dismissed for lack of subject matter jurisdiction and for failure to state a claim because Infineon AG is not a party to the agreements at issue.**

Because Infineon AG is not a party to the agreements at issue, MACOM admits that its contract claims against Infineon AG depend on an alleged "alter ego or agency relationship." Dkt. 113 at 21:21-22.  As described above, MACOM fails to prove alter ego.  *See supra* § I.  In addition, MACOM has not adequately alleged facts showing that, through agency or ratification, Infineon AG agreed to be bound by the agreements at issue.  As Infineon AG argued in its motion, MACOM cannot show agency or ratification liability because IR signed the agreements in 2010—almost five years before Infineon AG acquired IR. Dkt. 99 at 14:14-20; 14:25-15:2.

**A.    MACOM cannot establish agency liability because it failed to allege facts establishing an agency relationship at the time that IR executed the agreements at issue.**

Agency theory does not establish contract liability where the alleged principal and agent had no relationship when the contract was executed.  In

7

*Gerritsen v. Warner Brothers Entertainment*, the plaintiff sued Warner Brothers for breach of contract based on agreements that the plaintiff had with two other entities, Katja and New Line.   116 F. Supp. 3d 1104, 1147 (C.D. Cal 2015).   Although Warner Brothers was not a party to those agreements, the plaintiff tried to sue Warner Brother under an agency theory.   The Central District of California rejected the plaintiff's agency theory as implausible because the plaintiff did not allege that Katja and New Line had any sort of legal relationship with Warner Brothers ***at the time that the agreements were executed*** in 1999.   *Id.* at 1147.   The companies were not consolidated until 2008, and they had no alleged prior relationship.   *Id.*   The court explained, "California courts have not imposed liability on an agency theory where the apparent creation of the agency post-dates the transaction for which a party seeks to hold the principal vicariously liable."   *Id.*   The court noted that, even if there was an agency relationship following the 2008 consolidation, that would not plausibly plead that Katja and New Line were acting as Warner Brother's agent nine years earlier when the agreements were executed.   *Id.* at 1147-48.   As a result, the court dismissed the plaintiff's breach of contract claim against Warner Brothers based on agency liability.

As in *Gerritsen*, the Court should dismiss MACOM's contract claims based on agency against Infineon AG.   MACOM does not allege facts showing any agency at the time the agreements at issue were executed.   MACOM wrongly focuses on the overall relationship between Infineon AG and Infineon Americas (Dkt. 113 at 14:18-15:12)[5] rather than the parties' relations at the time the agreements were executed.   *See Bowoto v. Chevron Texaco Corp.*, 312 F. Supp. 2d 1229 at 1239-1240 (N.D. Cal. 2004) ("As was noted in *Phoenix Canada Oil v. Texaco*, 842 F.2d 1466, 1477–78 (3d Cir. 1988), the proper inquiry regarding the existence of an agency relationship focused on the relationship between the parent

_____

[5] MACOM's allegations regarding the Defendants' overall relationship also improperly rely on conclusory allegations.  *See supra* § 1.

8

and subsidiary corporation as it bore on plaintiff's breach of contract claim, rather than the more global question of whether any sort of agency relationship existed between the parent and the subsidiary."); *Phoenix Canada Oil*, 842 F.2d at 1478 (analyzing facts showing an agency relationship between a parent and its subsidiary at the time the agreement at issue was executed).

MACOM relies on *Herring Networks, Inc. v. AT&T Services, Inc.*, but that case is easily distinguished.  In *Herring*, the parent corporation allegedly authorized the promises that were the basis of the contract claims at the time those promises were made.  Case No. 2:16-cv-01636-CAS-AGR, 2016 WL 4055636, at *2, *7 n.4 (C.D. Cal. Jul. 25, 2016).  In contrast, MACOM has not alleged facts showing that, when IR executed the agreements at issue in 2010, it was acting on Infineon AG's behalf.  For this reason, the Court should dismiss MACOM's contract claims based on agency against Infineon AG.

### B.   MACOM cannot establish ratification liability because it cannot show that IR purported to execute the agreements on Infineon AG's behalf in 2010.

MACOM's ratification theory does not solve its fundamental problem that IR signed the agreements at issue almost five years before Infineon AG acquired IR. Ratification is intended to address a situation where someone without authority purported to act as an agent for another, and ratification allows the principal to adopt, as his own, that act purportedly done on his behalf.  *Rakestraw v. Rodrigues*, 8 Cal. 3d 67, 73 (1972) (finding that cross-complainant ratified a transaction that her former husband executed using her forged signature); Restatement (Second) Agency § 85.  Thus, "[a] principal cannot ratify the act of the alleged agent, unless the 'agent' purported to act on behalf of the principal."  *In re Gonda*, No. 10-58722, 2011 WL 5240154, at *7 (N.D. Cal. Oct. 31, 2011) (quoting *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal App. 4th 952, 961-62 (2002)).[6]

---

[6] *See also Gandelman v. Mercantile Inc. Co. of Am.*, 187 F.2d 654, 657 (9th Cir. 1951); *Pullen v. Dale*, 109 F.2d 538, 539 (9th Cir. 1940); *Jones v. Bank of Am.*,

9

1    Here, MACOM's ratification theory fails because MACOM has not alleged

2  facts showing that IR purported to execute the agreements on Infineon AG's behalf

3  in 2010.  MACOM does not describe any relationship between Infineon AG and IR

4  before 2015, when Infineon AG acquired IR.   MACOM does not allege facts

5  showing that IR executed the agreements on behalf of anyone other than itself.

6  *Schweitzer v. Bank of Am.*, 42 Cal.App.2d 536, 542 (1941) ("[A] ratification can

7  occur only by approving the act of the agent after the agent performs openly on

8  behalf of his principal and ***not for himself***." (emphasis added)).  As a result, the

9  Court should dismiss MACOM's contract claims based on ratification against

10  Infineon AG.  *See DSPT Int'l Inc. v. Nahum*, No. CV 06-0308, 2007 WL 5282563,

11  at *3 (C.D. Cal. 2007); *Southwest Gas Corp. v. Int'l Bhd. of Elec. Workers, ALF-

12  CIO-CLC*, No. CV-02-1728-JCM-LRL, 2004 WL 3698057 (D. Nev. Feb. 3, 2004)

13  (dismissing breach of contract claims based on ratification against an international

14  union because of the absence of any allegation that the local union who executed

15  the agreement at issue purported to be doing so on behalf the international union);

16  *Carte Blanche (Singapore) PTE., Ltd. v. Diners Club Int'l*, 758 F. Supp. 908, 921

17  (S.D.N.Y. 1991) (holding a parent corporation not liable under ratification for its

18  subsidiary's breach of contract because there was no evidence that the subsidiary

19  was acting as its parent's agent in negotiating the agreement).

20    *Herring Networks, Inc. v. AT&T Services, Inc.* is again distinguishable

21  because, in that case, the plaintiff's uncontroverted allegations established that,

22  when the agents made the promises supporting the breach of contract claim, they

23  represented to the plaintiff that they were acting on behalf of the defendant

24  corporation.  2016 WL 4055636, at *2, *7 n.4.  In contrast, MACOM has not

25  alleged that IR purported to execute the agreements in 2010 on behalf of anyone

26  other than itself.

27  _____

28  49 Cal.App.2d 115, 122 (1942); *Watkins v. Clemmer*, 129 Cal.App. 567, 570-572 (1933) (citing numerous authorities).

**C.    MACOM cannot bring its contract claims against Infineon AG without showing that Infineon AG agreed to be bound by those agreements.**

MACOM suggests that it does not have to show that Infineon AG agreed to be bound by the agreements at issue.  Dkt. 113 at 18:4-8 ("[T]he critical question is whether the parent ratified the conduct that gave rise to the claims, ***not*** whether the parent ratified an underlying contract itself[.]").[7]  But elsewhere, MACOM acknowledges that it must show that Infineon AG is bound by the relevant agreements.  The very reason that MACOM is relying on agency and ratification is to overcome its fundamental problem that Infineon AG is not a party to the agreements at issue.  Dkt. 113 at 21:18-22; *see also* Dkt. 113 at 22:14-15 (stating that MACOM "brought [its intentional interference] claim in the alternative, to apply if AG is found not to be a party to or bound by the relevant agreements").  For that reason, throughout its amended complaint, MACOM wrongly alleges that Infineon AG ratified the agreements at issue.  Dkt. 65 at ¶¶ 35, 235 n. 3.

Furthermore, the cases on which MACOM relies are easily distinguished because they involve torts, not contracts.  *Bowoto*, 312 F. Supp. 2d at 1235 (human rights abuses); *Bangkok Broad. & T.V. Co. v. IPTV Corp.*, 742 F. Supp. 2d 1101, 1120 (C.D. Cal. 2010) (trademark infringement); *see also* Restatement (Second) of Agency, Chapters 6 & 7 (addressing agency liability with separate chapters dedicated to tort and contract).  As discussed above, courts have dismissed contract claims based on agency and ratification where a plaintiff failed to allege facts showing the existence of an agency relationship (or at least a purported agency relationship) at the time the agreement at issue was executed.  *See, e.g., Gerritsen,*

---

[7] If MACOM is contending that Infineon Americas was acting as Infineon AG's agent only in 2016 when Infineon Americas terminated the 2010 License Agreement, that makes no sense.  Infineon AG is not a party to the agreements at issue.  So, if Infineon AG was not already bound by the agreements through agency or ratification, Infineon Americas had to be acting on its own behalf when it terminated the 2010 License Agreement.

116 F. Supp. 3d at 1147-48; *Southwest Gas Corp.*, 2004 WL 3698057.   Because Infineon AG is not a party to the agreements at issue and because Infineon AG is not bound by those agreements through alter ego, agency, or ratification, MACOM's contract claims against Infineon AG should be dismissed.

## IV.   MACOM has not established personal jurisdiction over Infineon AG.

Because MACOM failed to prove alter ego (*see supra* § I), it cannot establish general jurisdiction.[8] Dkt. 113 at 8:2-11, 8:25-9:3 (relying solely on alter ego to try to establish general jurisdiction).   MACOM also cannot establish specific jurisdiction.   MACOM "must plead ***facts*** to meet its prima facie burden."   *See Sarafian*, 2016 WL 1305087 at *5.   The only facts that MACOM submits are ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████████   Infineon AG submitted declarations establishing that ███████████████████████████████████ █████████████████   MACOM contends constitute a breach.   To overcome those declarations, MACOM relies solely on a hearsay statement.   But that hearsay is not evidence, is inconsistent with rest of the record, and does not even address the particular conduct on which MACOM bases its claims.   For these reasons, MACOM cannot establish specific jurisdiction.

---

[8]   MACOM's agency theory also does not support personal jurisdiction. MACOM's allegations relate to Defendants' overall relationship (general jurisdiction) rather than the specific contacts purportedly giving rise to MACOM's claims (specific jurisdiction).   As MACOM admits, it cannot use agency to establish general jurisdiction.   Moreover, "the rationale set forth in *Daimler*—that the Ninth Circuit's agency test inappropriately 'stacks the deck'—would seem to undermine application of the *Unocal* agency test even in specific jurisdiction cases." *Los Gatos Mercantile, Inc. v. E.I. DuPont De Menours and Co.,* No. 13-cv-01180-BLF, 2015 WL 4755335, at *5 (N.D. Cal. Aug. 11, 2015).   MACOM also fails to prove its agency theory for the reasons discussed above. *See* § II and III.

**A.** ███████████████████████████ **is not relevant to MACOM's**

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████ The subject matter of this ████████████

█████████ is not even related to the termination or other actions that purportedly give rise to MACOM's claims against Infineon AG.  As MACOM admits, ████

███████████████████████████████████████████

████████████████████ Dkt. 65 at ¶ 28, 123.  Furthermore, the parent entities (MACOM and Infineon AG) were included on ████████████████

████████████ only because parent corporations ████████████████

██████████████████████ on behalf of their subsidiaries.  The parties simply wanted to ████████████████████████████████████████

Although MACOM is now trying to twist Infineon AG's inclusion into something nefarious, it was MACOM's trial counsel, Amanda Tessar, who provided the initial ████████████████████ including both sides' parent entities.  Ex. 13 (Amanda Tessar email of June 5, 2015).  Ms. Tessar sent ██

████████████████████ to Infineon Americas' general counsel Tim Bixler and patent agent Tony Bramian, [9] because no Infineon AG lawyers had yet been involved in the parties' discussions.  She presumably included both Infineon AG and Infineon Americas in the ████████████ because she viewed them as separate entities and understood that it was typical for parent corporations, like Infineon AG, to provide legal services to subsidiaries, such as Infineon Americas.

---

[9] At the time, they were lawyers for Infineon Americas or its predecessors, as indicated by their email addresses (IRC stands for International Rectifier Corporation, and IFNA stands for Infineon Technologies North America Corp.). Ex. 13.

13

**B.** ███████████████

███

To try to establish specific jurisdiction, MACOM wrongly relies on ████

████████████████████   In particular, MACOM points to

████████████████████████████████████████████████

████████████████████   Those phone calls do not show that

Infineon AG directed Infineon Americas to terminate the parties' agreements or to

take other actions that MACOM alleges constitutes a breach.

MACOM wrongly alleges that after Infineon AG acquired IR, Infineon AG

immediately began to renegotiate the License Agreement.  Dkt. 113 at 4:2-6 (citing

Dkt. 65 at ¶¶ 113-115).  MACOM's conclusory assertion is based on a letter that

Infineon Americas—not Infineon AG—sent.  Dkt. 65 at ¶¶ 113-115; Dkt. No. 99-3,

Ex. 1  Moreover, Infineon Americas' letter ████████████████████

████████████████████████████████████████████████

████████████████████   Dkt. No. 99-3, Ex. 1.   After MACOM assured

Infineon Americas that it was acting within its rights under the agreement, that

matter was never raised again.  MACOM and Infineon Americas had no further

communications regarding the agreements until months later in 2015 when, as

MACOM admits, ████████████████████████████████████

████████████████   Dkt. 65 at 119.  Thus, it was *MACOM* that initiated the parties'

discussions leading to possible renegotiation of the license agreement.

Furthermore, the parties' discussions regarding the agreements involved only

Infineon Americas personnel until its General Counsel Tim Bixler left the

company.  Because Infineon Americas' legal staff was shorthanded due to the

departure of Mr. Bixler, ██████████████████████████████████

███████████████████████████Pelzer Decl. at ¶ 11; LeFort Decl. at ¶ 7.

████████████████████████████████████

████████████████████████████████████████████████

14

Although MACOM contends that the ████████████████ did not expressly announce on the phone calls that they were ████████████████ the evidence shows that MACOM understood, or at least should have understood, that ████████████████████████████ First, their participation ████████████████ should have been obvious because, as MACOM admits, the subject matter of the calls were legal negotiations regarding Infineon Americas' agreements. As discussed above, Infineon AG was not a party to those agreements.

Moreover, the parties' correspondence confirms that both sides understood that the ████████████████████████ Even after ████████████ began participating in the discussions, ████████████████████████ ████████████████████████ ████████████████ And, consistent with that understanding, MACOM continued to direct all correspondence to Infineon Americas, and MACOM did not send—or even copy—any of the correspondence to Infineon AG or the Infineon AG lawyers that participated on the phone calls.

| Date | From | To | Cite |
|------|------|-----|------|
| Dec. 14, 2015 | MACOM CEO, Mr. Croteau | Infineon *Americas* President, Mr. LeFort | Ex. 14 |
| Dec. 16, 2015 | MACOM outside lawyer, Ms. Tessar | Infineon *Americas* General Counsel, Mr. Micholvich | Williams Decl, Ex. 4. |
| Jan. 15, 2016 | MACOM outside lawyer, Ms. Tessar | Infineon *Americas* General Counsel, Mr. Micholvich | Williams Decl, Ex. 5. |
| Feb. 2, 2016 | Infineon *Americas* General Counsel, Mr. Micholvich | MACOM outside lawyer, Ms. Tessar | Williams Decl, Ex. 6. |
| Feb. 11, 2016 | MACOM outside lawyer, Ms. Tessar | Infineon *Americas* General Counsel, Mr. Micholvich | Williams Decl, Ex. 7. |

15

| Date | From | To | Cite |
|---|---|---|---|
| Mar. 22, 2016 | Infineon *Americas* General Counsel, Mr. Micholvich | MACOM outside lawyer, Ms. Tessar | Williams Decl, Ex. 8. |
| Apr. 1, 2016 | MACOM outside lawyer, Ms. Tessar | Infineon *Americas* General Counsel, Mr. Micholvich | Williams Decl, Ex. 9. |
| Apr. 15, 2016 | MACOM outside lawyer, Ms. Tessar | Infineon *Americas* General Counsel, Mr. Micholvich | Williams Decl, Ex. 10. |
| May 19, 2016 | MACOM outside lawyer, Ms. Tessar | Infineon *Americas* General Counsel, Mr. Micholvich (copying IR) | Ex. 15 |
| June 10, 2016 | MACOM outside lawyer, Ms. Tessar | Infineon *Americas* General Counsel, Mr. Micholvich (copying IR and outside lawyer Mr. Baxter) | Ex. 16 |
| June 17, 2016 | MACOM outside lawyer, Ms. Tessar | Infineon *Americas* General Counsel, Mr. Micholvich (copying IR and outside lawyer Mr. Baxter) | Ex. 17 |
| June 24, 2016 | MACOM outside lawyer, Ms. Tessar | Infineon *Americas* General Counsel, Mr. Micholvich (copying IR and outside lawyer Mr. Baxter) | Ex. 18 |
| Aug. 26, 2016 | MACOM outside lawyer, Ms. Tessar | Infineon *Americas* General Counsel, Mr. Micholvich (copying IR and outside lawyer Mr. Baxter) | Ex. 19 |
| Sept. 12, 2016 | MACOM outside lawyer, Ms. Tessar | Infineon *Americas* General Counsel, Mr. Micholvich (copying IR and outside lawyer Mr. Baxter) | Ex. 20 |

Furthermore, the participation of Infineon AG's lawyers on those phone calls does not provide a reasonable basis to infer that Infineon AG directed Infineon Americas to terminate the 2010 License Agreement and to take the other actions that MACOM alleges are breaches of the parties' agreements.  Those phone calls involved legal negotiations relating to the agreements at issue.   Even if

16

1   ███████████████████████████████████████████████████ that does

2   not mean that those lawyers (or other unidentified personnel at Infineon AG) made

3   the subsequent business decisions to terminate or to take the other actions on which

4   MACOM bases its breach allegation.  *See Best Foods v. Aerojet-General Corp.*,

5   173 F. Supp. 2d 729, 751 (W.D. Mich. 2001) ("The court is aware of no case in

6   which legal advice provided by a parent corporation's attorney to a subsidiary

7   represents control of the subsidiary.").  Declarations by persons with knowledge

8   establish ███████████████████████████████████████████

9   ███████████   LeFort Decl. at ¶ 8; Pelzer Decl. at ¶¶ 12-13.

10      **C.**      ████████████████████████

11   ████████████████████████

12      In a final, desperate attempt to save its claim, MACOM offers a hearsay

13   statement in the form of a declaration by its trial counsel, Amanda Tessar.  Ms.

14   Tessar claims that Infineon Americas' General Counsel Mr. Michlovich told her

15   that Infineon AG was in charge of and controlling the decisions relating to the

16   agreements.  Tessar Decl. at ¶ 2.  Mr. Michlovich's alleged statement is hearsay

17   because the statement is being offered against another party (Infineon AG as

18   opposed to Infineon Americas) to prove the truth of the matter asserted.  Moreover,

19   the surrounding circumstances do not support the trustworthiness of the statement.

20      MACOM's trial counsel has repeatedly changed its description of the alleged

21   communications from Infineon Americas, vacillating as to whether there was ever

22   any reference to Infineon AG and whether the subject matter of the alleged

23   decision-making authority related to the agreements or patent matters.  In its

24   original complaint, MACOM's trial counsel alleged that "Infineon [Americas]

25   representatives have told MACOM that their colleagues in Germany have decision-

26   making authority regarding those agreements."  Dkt. 1 at ¶ 17.  After Infineon AG's

27   initial motion to dismiss pointed out that this allegation did not even refer to

28

17

1   Infineon AG (Dkt 59 at 22:17-23), MACOM amended its complaint to try to

2   connect its allegation to Infineon AG.   Notably, at that time, MACOM's trial

3   counsel did *not* allege that the phone calls involved any express reference to

4   Infineon AG, as Ms. Tessar now asserts (Tessar Decl. at ¶ 2).   Instead, MACOM's

5   trial counsel alleged that "Infineon Americas in-house lawyers in the U.S. ***indicated***

6   on several occasions . . . that decisions regarding patent matters were controlled by

7   ***Infineon in Germany***" and that "MACOM ***understood these references*** to be

8   references to Infineon AG."   Dkt. 65 at ¶ 121.   In the amended complaint,

9   MACOM's trial counsel changed the description of the alleged communication

10  from "told" to merely "indicated" and also changed the subject matter of the alleged

11  authority from the "agreements" to "patent matters."   *Compare* Dkt. 65 at ¶ 121

12  *with* Dkt. 1 at ¶ 17.

13       Now MACOM's trial counsel Ms. Tessar has alleged, for the first time, that

14  Mr. Michlovich expressly referred to Infineon AG, and Ms. Tessar has returned to

15  the allegation in the original complaint that the decision-making authority related to

16  the agreements.   Tessar Decl. at ¶ 2.   Ms. Tessar's new-found recollection that Mr.

17  Michlovich expressly referred to Infineon AG stands in stark contrast to trial

18  counsel's prior allegations.   In addition, Ms. Tessar's latest account of the alleged

19  conversation is also undermined by her inability to recall other details, such as

20  when the call took place.   Tessar Decl. at ¶ 2 (Ms. Tessar cannot place the timing of

21  the call with any more specificity than "late 2015 or the first quarter of 2016").

22       The contemporaneous documents also refute Ms. Tessar's latest recollection

23  of the alleged conversation.   For example, in a February 2016 email, Infineon

24  Americas' General Counsel, Mr. Michlovich, informed Ms. Tessar that he was

25  referring her to Mr. Guntersdorfer (one of the Infineon AG lawyers) because Mr.

26  Michlovich was "tied up on other matters"—██████████████████████████

27  ████████████████████████████

28

18

1   Just want to get back to you on your message to call from last week. ***I've have been tied up on other matters*** and suggest that if you still have questions to reach out directly to Michael Guntersdorfer in ***our legal department*** who will be picking up this matter ***in the interim***."

2

3

4   Ex. 21 [Michlovich email dated February 25, 2016] (emphasis added).[11]   Although

5   Ms. Tessar referred to this email in her declaration (Tessar Decl at ¶4), she did not

6   attach the actual email or include any indication of Mr. Michlovich's stated reason

7   for Mr. Guntersdorfer's involvement.

8       Ms. Tessar's conduct throughout the parties' discussions was also

9   inconsistent with her recent professed belief that Infineon AG had decision-making

10  authority and control.  As indicated above, from December 16, 2015 to September

11  12, 2016, Ms. Tessar sent eleven letters regarding the agreements at issue.  ***All*** were

12  directed to Infineon Americas.  She did ***not*** copy anyone at Infineon AG (including

13  the Infineon AG lawyers who participated in the phone calls), even though she now

14  asserts that she believed that Infineon AG had actual decision-making authority

15  (Tessar Decl. at ¶ 9).  For all these reasons, the Court should reject the hearsay

16  statement that MACOM offers to try to thwart dismissal.

17      Even if the Court were to credit the hearsay statement in Ms. Tessar's

18  Declaration, it would be evidence only that ███████████████████████████████

19  ████████████████████████████████████████████████████████████████████

20  █████████████████   That hearsay statement does not show that ████████████████

21  ████████████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████████████████

23  █████████████████████████████   The only evidence in the record as to those

24  subsequent decisions is the uncontroverted declarations of ██████████████████

25  ████████████████████████████████████████

26

27  _____
    [11]   Mr. Michlovich also indicated that Mr. Guntersdorfer is "in our legal department," indicating that he would be acting on behalf of Infineon Americas.

28

19

Because MACOM fails to allege specific facts showing that Infineon AG directed Infineon Americas to terminate the 2010 License Agreement or to take the other actions that it alleges constitutes a breach of the parties' agreement, MACOM has failed to carry its prima facie burden of showing personal jurisdiction.

## V.    MACOM's intentional interference claim should be dismissed because the financial interest privilege and manager's privilege bar that claim.

MACOM improperly brings its intentional interference claim as a backdoor attempt to get around the legal rules preventing it from suing Infineon AG on its contract claims.[12]   MACOM misrepresented to the Court that Infineon "AG does not deny in its motion to dismiss that it interfered with MACOM's contracts." Dkt. 113 at 22:17-18.   To the contrary, Infineon AG argued that MACOM failed to allege sufficient facts in support its conclusory allegation. Dkt. 99 at 19:1-19, 25:7-23.   As explained above, ███████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

████████████   *See supra* § IV.   In addition, the financial interest privilege and manager's privilege bar MACOM's claim for intentional interference.[13]

### A.    Financial interest privilege bars MACOM's intentional inference claim.

The financial interest privilege provides that "[o]ne who has a financial interest in the business of another is privileged purposely to cause him not to enter

___

[12] MACOM wrongly contends that *Culcal Stylco, Inc. v. Vornado, Inc.* establishes a "general rule" that intentional interference exists when a parent interferes with a subsidiary's contracts. Dkt. 113 at 22:18-21.   *Culcal Stylco* does not recognize any such "general rule."   *Culcal Stylco* simply held that a parent is not privileged to interfere with its subsidiary's contracts "under all conceivable circumstances." 26 Cal. App. 3d 879, 883 (Ct. App. 1972).

[13] Contrary to MACOM's assertions, applying these privileges to Infineon AG's interactions with its current subsidiary Infineon Americas is not inconsistent with the fact that IR did not execute the agreements at issue on behalf of Infineon AG five years before Infineon AG acquired IR.

into or continue a relation with a third person in that business if the actor (a) does not employ improper means, and (b) acts to protect his interest from being prejudiced by the relation." *Sade Shoe Co. v. Oschin & Snyder*, 162 Cal. App. 3d 1174, 1181 (Cal. Ct. App. 1984) (quoting Restatement (First) of Torts § 769). Dismissal is appropriate when the complaint alleges facts that satisfy the two elements of the financial interest privilege. *See Stonebrae, L.P. v. Toll Bros.*, No. 08-cv-221, 2008 WL 2157000, at *6 (N.D. Cal. May 21, 2008).

According to the allegations in MACOM's complaint, Infineon AG did not use any improper means to influence Infineon Americas. The focus of the "improper means" element is *Infineon AG's* conduct towards Infineon Americas— not *Infineon Americas'* conduct towards MACOM.[14] *See Stonebrae*, 2008 WL 2157000, at *6 n.3. Relying on the comment to the Restatement of Torts §769 (on which California's financial interest privilege is based), the court in *Stonebrae* held, "for the privilege to apply, the actor cannot use wrongful means upon the person induced to interfere with the relationship, such as pressuring the person influenced by an illegal boycott or abusing a fiduciary relationship." *Id.* at *5. MACOM did not plead that Infineon AG used any improper means (such as an illegal boycott) to influence Infineon Americas. To the contrary, MACOM's only *factual* allegations as to how Infineon AG influenced Infineon Americas are based on Infineon AG's role as a parent corporation to Infineon Americas.[15] *See, e.g.,* Dkt. 65 at ¶¶ 235, 237, 238, 240. Thus, as in *Stonebrae*, this parent-subsidiary relationship supports dismissal based on the financial interest privilege.

---

[14] MACOM erroneously relies on irrelevant allegations regarding Infineon Americas' termination of the 2010 License Agreement. *See, e.g.,* Dkt. 113 at 25:13 (citing Dkt. No. 65 at ¶¶124-29 and 141-47). MACOM also confuses improper *means* with improper *intent*. Dkt. 113 at 25:1.

[15] MACOM's conclusory allegations of "improper means" simply restate the legal element and should not be credited. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007).

21

MACOM fails to address Infineon AG's argument that the facts alleged in MACOM's complaint establish that Infineon AG acted to protect its financial interest.   The complaint could not be clearer in alleging that Infineon AG's motivation was its financial interest:

- ████████████████████████████████████████████████

- ████████████████████████████████████████████████

- "Industry analysts project that GaN-on-Si devices will capture a significant portion of the RF market—and that this market will grow to hundreds of millions of dollars in sales per year by 2020.  Infineon itself predicts that the GaN-on-Si RF cellular infrastructure market (i.e., base stations) will grow to $110 million by 2020 and $460 million by 2025." Dkt. 65 at ¶ 103; *see also* Dkt. 65 at ¶ 160.

- "Infineon AG acquired International Rectifier to . . . expand into MACOM'█████████████████████████ products, █████████████████████████ Notably, I█ the largest share of the RF power cellular infrastructure market by 2025 ($460M, compared to only $380M for GaN-on-SiC and $280M for Si (LDMOS))."  Dkt. 65 at ¶ 112; *see also* Dkt. 65 at ¶ 160.

- ████████████████████████████████████████████████

- ████████████████████████████████████████████████

- "Infineon intends to enter the GaN-on-Si RF market."  Dkt. 65 at ¶ 161; *see also* Dkt. 65 at ¶ 162; *see also* Dkt. 65 at ¶ 239.

MACOM's allegations present an even more compelling case for applying the financial interest privilege than the facts in *Stonebrae.  See Stonebrae*, 2008 WL 2157000, at *6 ("Taking steps to arrest its own (and its subsidiaries') deteriorating

---

[16] MACOM's complaint uses "Infineon" to refer to both Infineon AG and Infineon Americas.

1   financial condition is precisely that kind of purpose that meets the intent
2   requirement of the financial interest privilege.").

3       MACOM's allegation that the termination was done in "bad faith" does not
4   undermine application of the financial interest privilege.  First, MACOM's "bad
5   faith" allegation is conclusory and thus should not be credited.[17]  Moreover,
6   MACOM's "bad faith" allegation relates to Infineon Americas' legal justifications
7   for terminating the 2010 License Agreement—not the ultimate motivation for
8   terminating the agreement.  Thus, those conclusory "bad faith" allegations do not
9   undermine the above specific allegations showing Infineon AG's purported
10  financial motivation.  Accordingly, both elements of the financial interest privilege
11  are satisfied on the face of MACOM's complaint.

12       **B.    Manager's privilege bars MACOM's intentional inference claim.**

13      Based on the allegations in MACOM's complaint, the manager's privilege
14  also bars MACOM's claim for intentional interference with contractual relation.
15  The manager's privilege "applies anytime a business advisor counsels his principal
16  to breach a contract that he reasonably believes to be harmful to his principal's best
17  interest."  *Harrison Ventures, L.L.C. v. Alta Mira Treatment Center L.L.C.*, No. C
18  10-00188 RS, 2010 WL 1929566, at *7 (N.D. Cal. May 12, 2010).

19      MACOM is unable to distinguish *Harrison Ventures*.  MACOM's only
20  argument is that the termination decision in *Harrison Venture* was a "business
21  decision."  Dkt. 113 at 23 n.14.  But MACOM disregards all the allegations in its

22
23

---

24      [17] Although MACOM relies on *Culcal Stylco* for the proposition that
25  MACOM's "conclusory allegations" are sufficient (Dkt. 113 at 25:14-15), that
    1972 district court holding was overruled by the Supreme Court's later decisions in
26  *Twombly* and *Iqbal*.  *See Twombly*, 550 U.S. at 555-56; *Ashcroft v. Iqbal*, 556 U.S.
    662, 681 (2009); *Moss v. U.S. Secret Service*, 572 F.3d 962, 970 (9th Cir. 2009)
27  ("The bald allegation of [an] impermissible motive . . . standing alone, is
    conclusory and therefore not entitled to an assumption of truth.") (citing *Twombly*
28  and *Iqbal)*.

23

complaint portraying Infineon Americas' termination as a business decision. *See, e.g.*, Dkt. 65 at ¶¶ 4, 6, 103, 112, 113, 148, 160-162, 239.

MACOM again wrongly relies on allegations regarding Infineon Americas' legal justification for the termination—not the ultimate motivation in terminating the agreement. Dkt. 113 at 24:10-11 (quoting Dkt. 65 at ¶ 148). Furthermore, even if Infineon AG had additional motivations, the manager's privilege still applies if Infineon AG was partly motivated by a desire to benefit Infineon Americas. *Harrison Ventures*, 2010 WL 1929566 at *6 (citing *Los Angeles Airways, Inc. v. Davis*, 687 F.2d 321, 328 (9th Cir. 1982)).

MACOM also wrongly argues that the manager's privilege applies to individuals but not corporations. Dkt. 113 at 24:4-8. As support, MACOM relies on the following language from *Farris v. International Paper Co.*: "Under California law, the manager's privilege acts primarily as a shield to protect a manager from individual liability to third parties for certain torts." Dkt. 113:10-13 (quoting *Farris v. Int'l Paper Co.*, No. 5:13-cv-485, 2014 WL 3657051, at *7 (C.D. Cal. July 21, 2014)). On its face, MACOM's argument is wrong because it disregards the word "primarily." Worse yet, by adding emphasis to the words "individual liability," MACOM misleadingly suggests that "individual liability" was somehow important to the Court's holding. To the contrary, in *Farris*, an individual—not a corporation—was trying to rely on the manager's privilege. 2014 WL 3657051, at *7. Contrary to MACOM's emphasis, the important language in the above statement was "third parties"—not "individual liability." The individual in *Farris* was trying to bar **his employer's** claim for gross negligence and intentional misrepresentation, and the Court held that the manager's privilege shields liabilities to third parties but not "to the manager's own principal." *Id.*

Also contrary to MACOM's argument, other courts have recognized that the manager's privilege applies to entities, such as companies. *Harrison Ventures*, 2010 WL 1929566 at *7 (applying manager's privilege to a parent company);

24

*Cedars-Sinai Medical Center v. Global Excel Management*, Case No. 09-3627, 2009 WL 4730882, at *6 (C.D. Cal. Dec. 4, 2009) ("The common law advisor's or agent's privilege extends to individuals or entities who serve as business advisors or agents."); *Changanti v. I2 Phone Intern., Inc.*, 635 F. Supp. 2d 1065, 1075 (N.D. Cal. 2007) (applying manager's privilege to a company).

For these reasons, the manager's privilege bars MACOM's claim for intentional interference.

## VI.   MACOM is not entitled to discovery.

Because MACOM has not met its burden of pleading a plausible claim for relief under Rule 8, it is not entitled to conduct discovery. *See Iqbal*, 556 U.S. at 678-79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."); *Gerritsen*, 112 F. Supp. 3d at 1047-48 (citing several supporting decisions). The Court may also deny jurisdiction discovery because MACOM's allegations are conclusory and explicitly denied by Infineon AG and Infineon Americas' declarations. *Teracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995) ("[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery.") In addition, the Court may deny MACOM's request because MACOM failed to file a formal motion for jurisdictional discovery in order to oppose Infineon AG's motion. *See Sopcak v. N. Mountain Helicopter Serv.*, 52 F.3d 817, 819 (9th Cir. 1995).

## CONCLUSION

Infineon Americas is the proper defendant for MACOM's contract and patent claims because it is a party to the 2010 License Agreement at issue and it owns the patents at issue. The Court should reject MACOM's attempt to try to inject Infineon Americas' foreign parent Infineon AG into these disputes.

25

1

2   Dated:  September 26, 2016   JEFFERY D. BAXTER

3                BAKER BOTTS LLP

4

5               By: /s/ *Jeffery D. Baxter*

6                 Jeffery D. Baxter

7                 Attorney for Defendant

                  Infineon Technologies AG

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT INFINEON TECHNOLOGIES AG'S
REPLY IN SUPPORT OF ITS MOTION TO DISMISS