UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | October 31, 2016 |
|---|---|---|---|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC.; ET AL. v. INFINEON TECHNOLOGIES AG; ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

          Not Present          Not Present

**Proceedings:**          **(In Chambers) [REDACTED]:**

**PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION (Dkt. 80, filed August 12, 2016)**

**DEFENDANT INFINEON AMERICAS' MOTION TO DISMISS PLAINTIFFS' SECOND AND FIFTH CLAIMS FOR RELIEF (Dkt. 97, filed August 23, 2016)**

**DEFENDANT INFINEON AG'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT  (Dkt. 99, filed August 23, 2016)**

## I.     INTRODUCTION

On April 26, 2016, plaintiffs MACOM Technology Solutions Holdings, Inc. ("MACOM"), and Nitronex, LLC filed the instant action against defendants Infineon Technologies AG ("Infineon AG") and Infineon Technologies Americas Corp. ("Infineon Americas").  Dkt. 1 ("Compl.").  The gravamen of plaintiffs' complaint is that defendants violated the intellectual property purchase agreement and the license agreement entered into in 2010 by Nitronex Corporation (the predecessor in interest to MACOM) and International Rectifier Corporation (the predecessor in interest to Infineon Americas). Plaintiffs assert eight claims for relief: (1) breach of contract for wrongful termination of a 2010 license agreement; (2) breach of contract for marketing and preparing for sale of products within plaintiffs' exclusive field pursuant to the 2010 license agreement; (3) a declaration that the 2010 license agreement has not been terminated; (4) breach of the covenant of good faith and fair dealing implied in the 2010 agreements; (5) a declaration

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | October 31, 2016 |
|----------|-------------------------|------|------------------|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC.; ET AL. v. INFINEON TECHNOLOGIES AG; ET AL. | | |

of non-infringement; (6) breach of the 2010 intellectual property ("IP") purchase agreement; (7) a declaration that defendants may not transfer to a third party the patents covered by the 2010 agreements without MACOM's consent; and (8) if Infineon AG is not subject to plaintiffs' breach of contract claims, intentional interference with contractual relations against Infineon AG. Id.

On July 8, 2016, defendants filed separate motions to dismiss plaintiffs' complaint. Dkts. 58, 59.[1]  On July 21, 2016, plaintiffs filed their first amended complaint. Dkt. 65. ("FAC").  On July 25, 2016, defendants withdrew their motions to dismiss. Dkt. 66.

On August 12, 2016, plaintiffs filed a motion for a preliminary injunction. Dkt. 80 ("Pls. PI").  Defendants filed their opposition to plaintiffs' motion for a preliminary injunction on September 12, 2016, dkt. 112 ("PI Opp'n"), and MACOM filed its reply on September 29, 2016, dkt. 126.

On August 23, 2016, Infineon Americas filed a motion to dismiss plaintiffs' second and fifth claims for relief.  Dkt. 97 ("Americas MTD").  MACOM filed its opposition to Infineon America's motion to dismiss on September 12, 2016, dkt. 115 ("Opp'n to Americas"), and Infineon Americas filed its reply on October 13, 2016, dkt. 127 ("Americas Reply").

Also on August 23, 2016, Infineon AG filed a motion to dismiss plaintiffs' FAC for lack of personal jurisdiction.  Dkt. 99 ("AG MTD").  Infineon AG's motion also seeks to dismiss plaintiffs' first seven claims for lack of subject-matter jurisdiction and failure to state a claim on which relief may be granted, and plaintiffs' eighth claim for failure to state a claim on which relief may be granted. Id.  MACOM filed its opposition to Infineon AG's motion to dismiss on September 12, 2016, dkt. 113 ("Opp'n to AG"), and Infineon AG filed its reply on October 14, 2016, dkt. 133 ("AG Reply").

## II.     BACKGROUND

Nitronex Corporation was formed in February 1999, and headquartered in Durham, North Carolina.  FAC ¶ 40.  Nitronex developed a semiconductor (material that conducts

---

[1] Except where otherwise noted, parties applied for and were granted permission to file their documents under seal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | October 31, 2016 |
| --- | --- | --- | --- |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC.; ET AL. v. INFINEON TECHNOLOGIES AG; ET AL. | | |

electrical current only under certain conditions) using gallium nitride ("GaN") to form the epitaxial layer of the semiconductor and silicon ("Si") to form the substrate (or wafer) for the semiconductor. Id. ¶¶ 41, 52–53. Nitronex used GaN semiconductors on silicon wafers to produce high-frequency radio frequency devices ("RF GaN-on-Si devices"). Id. ¶¶ 54–57. RF GaN-on-Si devices are used as part of, inter alia, light emitting diode ("LED") devices, id. ¶ 58, and cellular telephone base stations, id. ¶ 87. Nitronex has obtained more than 35 U.S. patents based on its work with gallium nitride. Id. ¶ 63.

In 2004, Nitronex and International Rectifier ("IR"), a company that produced power management products, entered into a license agreement and technology transfer agreement. Id. ¶¶ 67–70. The 2004 license agreement granted IR the right to practice certain Nitronex patents in power management, IR's field of use and required Nitronex to transfer some of its GaN-on-Si technology to IR. Id. at ¶ 71.

## A.    The 2010 IP Purchase and License Agreements

In 2010, Nitronex and IR entered into an IP purchase agreement and new license agreement. Id. ¶ 78; dkt. 65, Ex. 1 ("IP Purchase Agreement"). The 2010 Purchase Agreement assigns to IR 54 U.S. and international patents and applications and the right to file related applications and requires Nitronex and IR to work together to enforce the Nitronex Patents.[2] FAC ¶¶ 79–83; 2010 IP Purchase Agreement. Specifically, IR has the first and primary right to prosecute for an actual, potential or alleged infringement. FAC ¶ 80; 2010 IP Purchase Agreement § 4.02. If, after three months of receiving written notice of actual, potential, or alleged infringement IR has (1) failed to pursue the alleged infringer to desist the allegedly infringing activity, (2) not brought and diligently prosecuted an infringement action, and (3) not entered into a settlement agreement with respect to such alleged infringement, or if IR notifies Nitronex that IR has decided not pursue of those three course of conduct, Nitronex has the right to bring suit to enforce the patents against the alleged infringer. FAC ¶ 81; 2010 IP Purchase Agreement § 4.02. To enable Nitronex to prosecute for an infringement, IR agreed to assign the relevant patents to Nitronex. FAC ¶ 81; 2010 IP Purchase Agreement § 4.02.

---

[2] Thirty-two U.S. patents and applications, along with related applications filed by IR and any patents that issued from these applications comprise the "Nitronex Patents." FAC ¶ 85.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | October 31, 2016 |
|---|---|---|---|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC.; ET AL. v. INFINEON TECHNOLOGIES AG; ET AL. | | |

The 2010 license agreement provides Nitronex a license to the Nitronex Patents, and a sole right to sublicense them. Id. ¶ 88; dkt. 65, Ex. 2 ("License Agreement"). The License Agreement permits *only* Nitronex and IR to practice in certain parts of the "Field of Use" of GaN-on-Si RF devices. FAC ¶ 88; License Agreement. The License Agreement also provides Nitronex with the exclusive right to practice the Nitronex Patents, including as against IR, within Nitronex's exclusive field. FAC ¶ 89; License Agreement. Nitronex's exclusive field includes most RF applications in the Field of Use, except those that operate solely below 100MHz in frequency, including cellular telephone infrastructure base stations and repeaters. FAC ¶¶ 89–90; License Agreement.

The License Agreement prohibits either party to the agreement from assigning, selling, or otherwise transferring an interest or obligation under the Agreement without the consent of the other party. License Agreement § 12.12. Any assignment in violation of that provision is void. Id.

The License Agreement also includes a negative covenant with respect to IR: "IR itself may not directly or indirectly market, sell or service Products in the Exclusive Field and IR may not grant further licenses or sublicenses to any other party under the Licensed Patents to design, develop, make, have made, use, market, sell or service Products in the Field of Use." License Agreement § 2.1; FAC ¶ 91. The License Agreement does *not* include a negative covenant in which Nitronex promises to refrain from practicing the Nitronex Patents outside its fields of use. FAC ¶ 92. Nitronex and IR may terminate the License Agreement only for a material breach that is not cured within 30 days of receipt of written notice of such a breach. Id. ¶ 95; License Agreement § 7.1.

**B.      Acquisitions**

In June 2012, Nitronex was acquired by GaAs Labs and converted to a limited liability company and renamed Nitronex LLC. FAC ¶ 99. On February 13, 2014, MACOM announced the purchase of Nitronex, LLC from GaAs Labs and Nitronex LLC became a wholly-owned subsidiary of MACOM. Id. ¶ 101. MACOM, a semiconductor company that designs and manufactures devices including RF semiconductor products, acquired Nitronex to enter the market for GaN-on-Si devices. Id. ¶¶ 100, 102. Nitronex assigned some of its rights under the 2010 IP Purchase Agreement to MACOM and sublicensed its right under the License Agreement to MACOM. Id. ¶ 104.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL                'O'

| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | October 31, 2016 |
| --- | --- | --- | --- |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC.; ET AL. v. INFINEON TECHNOLOGIES AG; ET AL. | | |

On August 20, 2014, Infineon AG, a German corporation, and IR announced that Infineon AG would acquire IR.  Id. ¶ 106.  Infineon AG stated in its press releases that it acquired IR in part to "expend[] its expertise in compound semi-conductors (Gallium Nitride on Silicone)" and described IR as a "an advanced manufacturer in Gallium Nitride on Silicon based power semiconductors."  Id. ¶ 107.  Infineon AG's acquisition of IR closed on January 13, 2015.  Id. ¶ 109.  IR changed its name to Infineon Technologies Americas Corp. and succeeded to IR's rights and obligations under the Nitronex-IR agreements, including the License and IP Purchase Agreements.  Id. ¶ 17.  Infineon Americas is a Delaware corporation with its headquarters and principal place of business at the former IR headquarters in El Segundo, California.  Id. ¶ 13.  Infineon Americas is a wholly owned subsidiary of Infineon AG.  Id.

### C.    Defendants' Alleged Misconduct

Plaintiffs allege that after Infineon AG acquired IR, Infineon AG attempted to disrupt or renegotiate the Nitronex-IR agreements.  Id. ¶ 113.  For example, plaintiffs allege that in January 2015, Infineon sent MACOM a letter complaining about an April 1, 2014 press release in which MACOM announced an agreement with a supplier of GaN-on-Si wafer for RF applications that included a license to MACOM's intellectual property rights.  Id. ¶ 114.  Infineon also sent a letter to MACOM's supplier complaining of the proliferation of IR's patented technology.  Id. ¶ 116.  Plaintiffs contend that this conduct was intended to chill MACOM's practice of its rights under the 2010 agreements, which permit Nitronex to sublicense the Nitronex Patents.  Id.  Plaintiffs also allege that Infineon largely refused to engage with MACOM in good faith with respect to the enforcement of the Nitronex Patents against third-party infringement.  Id. ¶ 119.[3] According to plaintiffs, Infineon repeatedly attempted to renegotiate the License and IP Purchase Agreements such that MACOM would lose its exclusive rights in the radio frequency fields, even though MACOM repeatedly stated that it would not agree to any modifications to the agreements that would allow Infineon rights in MACOM's exclusive GaN-on-Si RF fields.  Id. ¶ 120.  Infineon AG attorneys participated in phone conversations about the License and IP Purchase Agreements.  Id. ¶ 121.  Plaintiffs allege

---

[3] However, the parties executed a common interest agreement in 2015 when MACOM and Infineon agreed to work together in connection with patent prosecution issues.  FAC ¶ 28; see dkt. 65-3 ("Common Interest Agreement").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|---|
| Case No. | 2:16-CV-02859-CAS(PLAx) | | Date | October 31, 2016 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC.; ET AL. v. INFINEON TECHNOLOGIES AG; ET AL. | | | |

that in-house counsel for Infineon Americas indicated several times that decisions regarding patent matters were controlled by Infineon in Germany. Id.

Also during these phone calls, plaintiffs allege that Infineon representatives, including representatives from Infineon AG, stated that Infineon believed MACOM was infringing on unidentified Nitronex Patents by selling gallium nitride-on-silicon *carbide* ("GaN-on-SiC") devices. Id. ¶ 124. MACOM had been selling GaN-on-SiC products since 2011, before its acquisition of Nitronex. Id. ¶ 126. Plaintiffs believe that neither IR nor Infineon has ever previously or since claimed that any company selling GaN-on-SiC products infringes the Nitronex patents. Id. ¶ 125. MACOM informed Infineon that its sales of GaN-on-SiC products were low in volume and revenue and that it was discontinuing GaN-on-SiC products because its third-party supplier informed MACOM that it could no longer supply the wafers necessary to manufacture GaN-on-SiC products. Id. ¶¶ 126–29.

In late 2015, Infineon informed MACOM that IR and/or Infineon was contemplating assigning some of the Nitronex Patents to an undisclosed third party and that it would proceed without MACOM's consent. Id. ¶¶ 130–31.

On January 15, 2016, MACOM sent Infineon and IR a letter notifying them of a third-party's infringement of five of the Nitronex Patents. Id. ¶ 134. MACOM deemed the January 15 letter as the notice of an actual, potential, or alleged infringement under the 2010 IP Purchase Agreement. Id. ¶ 136. Defendants failed to persuade the infringer to desist, pursue a claim of infringement, or enter into a settlement agreement with the third-party infringer as of April 14, 2016—three months after defendants received notice of the infringement. Id. ¶ 138. On April 15, 2016 MACOM wrote to Infineon with respect to defendants' failure to comply with their obligations under Section 4.02 of the IP Purchase Agreement and demanded that defendants assign the relevant patents back to MACOM so that MACOM had standing to bring suit against the infringing third parties. Id. ¶ 139. Defendants have not assigned the relevant patents back to MACOM. Id. ¶ 140.

In a February 2, 2016 letter to MACOM, Infineon complained of MACOM's GaN-on-SiC sales and asserted that such sales were a material breach of the License Agreement that, if not remedied within 30 days, would allow Infineon to terminate that agreement. Id. ¶ 143. MACOM responded that Infineon's allegations were insufficiently

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | October 31, 2016 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC.; ET AL. v. INFINEON TECHNOLOGIES AG; ET AL. | | |

specific because defendants did not identify any specific MACOM products that were infringing or any specific patents that were infringed. Id. ¶¶ 142, 145. MACOM further stated that MACOM's sales of GaN-on-SiC devices were de minimis and therefore could not constitute a material breach, and that MACOM's GaN-on-SiC products had been "end-of-lifed" because the supply of a necessary element had been cut off. Id. ¶ 145. In a letter dated March 22, 2016, Infineon purportedly terminated the License Agreement. Id. ¶ 147. In that same letter, Infineon for the first time identified the MACOM product that Infineon alleged to be infringing. Id.

Plaintiffs allege that Infineon's purported termination was without cause, done in bad faith, and pretextual. Id. ¶ 148. On information and belief, plaintiffs aver that Infineon AG directed Infineon Americas to terminate or controlled Infineon America's purported termination of the 20120 License Agreement. Id. ¶ 149.

MACOM responded to Infineon's purported termination letter on April 1, 2016, and explained that the termination was without basis and without effect. Id. ¶ 150. MACOM further asserted that it would continue to exercise its rights under the License Agreement. Id. MACOM continues to produce and offer to sell GaN-on-Si RF products. Id. ¶ 152. MACOM alleges that Infineon's termination of the License Agreement puts MACOM and its products at risk of infringement suit and puts MACOM's customers in fear of an infringement suit if they purchase and sue MACOM's products. Id. ¶ 152.

After plaintiffs filed their original complaint, MACOM learned from its customers that Infineon has been promoting and marketing GaN-on-Si RF products for use in cellular base statute applications. Id. ¶ 157. MACOM contacted Infineon by letter in May 2016, to ask Infineon if it was designing, manufacturing, or sampling GAN-on-Si RF base station products, or if was discussing or demonstrating the use of such products with consumers or potential customers. Id. ¶ 158. Plaintiffs contend that Infineon's responses have not provided MACOM with the assurance it sought. Id. In an investor presentation released on July 14, 2016, Infineon stated that it has GaN-on-Si RF products in development for the cellular infrastructure market. Id. ¶ 160. Plaintiffs thus allege that Infineon has been promoting and/or marketing GaN-on-Si RF products for use in cellular base station applications—activities that are within MACOM's exclusive field—in violation of the License Agreement. Id. ¶ 163–64.

As a result of the alleged conduct by defendants, plaintiffs filed the instant action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | October 31, 2016 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC.; ET AL. v. INFINEON TECHNOLOGIES AG; ET AL. | | |

## III.    Infineon AG's Motion to Dismiss for Lack of Personal Jurisdiction

### A.    Legal Standard

When a defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating that the court may properly exercise personal jurisdiction over the defendant. Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006). Where, as here, a court decides such a motion without an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995); Doe v. Unocal Corp., 27 F. Supp. 2d 1174, 1181 (C.D. Cal. 1998), aff'd, 248 F.3d 915 (9th Cir. 2001). The plaintiff's alleged version of the facts is taken as true for purposes of the motion if not directly controverted. AT & T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996); Unocal, 27 F. Supp. 2d at 1181. If the defendant adduces evidence controverting the allegations, however, the plaintiff may not rely on his pleadings, but must "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." Scott v. Breeland, 792 F.2d 925, 927 (9th Cir. 1986) (quoting Amba Mktg. Servs., Inc. v. Jobar Int'l, Inc., 551 F.2d 784, 787 (9th Cir. 1977)). Any "conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." AT & T, 94 F.3d at 588–89 (quotation marks omitted).

Generally, personal jurisdiction exists if (1) it is permitted by the forum state's long-arm statute and (2) the "exercise of that jurisdiction does not violate federal due process." Pebble Beach, 453 F.3d at 1154–55 (citing Fireman's Fund Ins. Co. v. Nat'l Bank of Coops., 103 F.3d 888, 893 (9th Cir. 1996)).

California's long-arm jurisdictional statute is coextensive with federal due process requirements, so that the jurisdictional analysis under state law and federal due process are the same. Cal. Civ. Proc. Code § 410.10; Roth v. Garcia Marquez, 942 F.2d 617, 620 (9th Cir. 1991). In order for a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Depending on the nature of the contacts between the defendant and the forum state, personal jurisdiction is characterized as either general or specific.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL               'O'

| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | October 31, 2016 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC.; ET AL. v. INFINEON TECHNOLOGIES AG; ET AL. | | |

### 1.    General Jurisdiction

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). Whether a defendant's contacts are sufficiently substantial, continuous, and systematic for an exercise of general jurisdiction depends upon a defendant's "[l]ongevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets." Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1224 (9th Cir. 2011) (quoting Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1172 (9th Cir. 2006)); see also Bancroft & Masters, Inc. v. Augusta Nat. Inc., 223 F.3d 1082, 1086 (9th Cir. 2000) ("Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there."). Occasional sales to residents of the forum state are insufficient to create general jurisdiction. See Brand v. Menlove Dodge, 796 F.2d 1070, 1073 (9th Cir. 1986). This standard is exacting, "because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th Cir. 2004).

### 2.    Specific Jurisdiction

A court may assert specific jurisdiction over a claim for relief that arises out of a defendant's forum-related activities. Rano v. Sipa Press, Inc., 987 F.2d 580, 588 (9th Cir. 1993). The test for specific personal jurisdiction has three parts:

(1) The defendant must perform an act or consummate a transaction within the forum, purposefully availing himself of the privilege of conducting activities in the forum and invoking the benefits and protections of its laws;

(2) The claim must arise out of or result from the defendant's forum-related activities; and

(3) Exercise of jurisdiction must be reasonable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | October 31, 2016 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC.; ET AL. v. INFINEON TECHNOLOGIES AG; ET AL. | | |

Id.; see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475–76 (1985).  The plaintiff bears the burden of satisfying the first two prongs, and if either is not satisfied, personal jurisdiction is not established.  Schwarzenegger, 374 F.3d at 802.

    In contracts cases, courts conduct a "purposeful availment" analysis to determine the first prong of the specific jurisdiction test.  Id.  Because a contract is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction," a court must evaluate four factors to determine whether purposeful availment has occurred: (1) prior negotiations, (2) contemplated future consequences, (3) the terms of the contract, and (4) the parties' actual course of dealing.  Burger King, 471 U.S. at 478–79.  A single contract for the sale of goods to a plaintiff in the forum state may be sufficient for specific jurisdiction over a defendant, but only where the contract creates a "substantial connection" with the forum state.  Boschetto v. Hansing, 539 F.3d 1011, 1017 (9th Cir. 2008).  "The foreseeability of causing injury in another state is not a sufficient basis on which to exercise jurisdiction," without more.  Gray & Co. v. Firstenberg Mach. Co., Inc., 913 F.2d 758, 760 (9th Cir. 1990).

    In tort cases, by contrast, courts conduct a "purposeful direction" analysis.  Schwarzenegger, 374 F.3d at 802.  Purposeful direction is analyzed under the "effects test."  Calder v. Jones, 465 U.S. 783, 787–89, (1984); Dole Food Co. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002).  Under the "effects" test, "the defendant must have allegedly: (1) committed an intentional act; (2) expressly aimed at the forum state; (3) causing harm that the defendant knows is likely to be suffered in the forum state."  Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006) (quoting Schwarzenegger, 374 F.3d at 803).  A foreign act with foreseeable effects in the forum state does not always gives rise to specific jurisdiction; there must be "something more."  Bancroft & Masters, 223 F.3d at 1087.  "'[S]omething more' is what the Supreme Court described as 'express aiming' at the forum state."  Id.  The "express aiming" requirement is satisfied "when defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state."  Id.; see also Dole Food, 303 F.3d at 1111.

    If the plaintiff establishes the first two prongs regarding purposeful availment and the defendant's forum-related activities, then it is the defendant's burden to "present a compelling case" that the third prong, reasonableness, has not been satisfied.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | **'O'** |
|---|---|---|---|
| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | October 31, 2016 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC.; ET AL. v. INFINEON TECHNOLOGIES AG; ET AL. | | |

Schwarzenegger, 374 F.3d at 802 (quoting Burger King, 471 U.S. at 477). The third prong requires the Court to balance seven factors: (1) the extent of the defendant's purposeful availment, (2) the burden on the defendant, (3) conflicts of law between the forum state and the defendant's state, (4) the forum's interest in adjudicating the dispute, (5) judicial efficiency, (6) the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. Roth, 942 F.2d at 623.

### B.   Discussion

#### 1.   Specific Personal Jurisdiction

MACOM contends that the Court may exercise jurisdiction over Infineon AG for four reasons. First, MACOM argues that the Court has specific personal jurisdiction over Infineon AG because Infineon AG purposefully directed its activities at California and purposefully availed itself of this district. Opp'n to AG at 9–13. MACOM also argues that the Court has personal jurisdiction over Infineon AG under the theories of (2) agency, (3) alter ego, and (4) ratification. Id. at 13–21. The Court begins by considering the first basis for personal jurisdiction.[4]

#### a.   The Parties' Arguments

Infineon AG argues that the Court does not have specific personal jurisdiction over Infineon AG with respect to any of plaintiffs' claims. First, Infineon AG avers that the Court does not have specific personal jurisdiction over it with respect to plaintiffs' six contract claims because Infineon AG was not a party to the relevant contracts. AG Motion at 11–12. Second, Infineon AG contends that the Court does not have specific personal jurisdiction over it with respect to plaintiffs' fifth claim for relief for non-infringement because MACOM has not demonstrated that Infineon AG had any contacts with the forum from which MACOM's claim arises. Id. at 16. Infineon AG does not own any rights to the patents at issue. Id. Third, Infineon AG avers that the Court does not have specific personal jurisdiction over it with respect to plaintiffs claim for

---

[4] The Court does not address whether it may exercise *general* personal jurisdiction over Infineon AG, which MACOM argues exists under the alter ego theory, because the Court concludes that there is specific jurisdiction on the basis of Infineon AG's own alleged conduct.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | October 31, 2016 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC.; ET AL. v. INFINEON TECHNOLOGIES AG; ET AL. | | |

intentional interference with contractual relations because MACOM cannot point to any contacts by Infineon AG from which MACOM's claim arises. Id. at 17.

Plaintiffs, in turn, allege that Infineon AG attempted to renegotiate the Nitronex/IR agreements, which are California contracts with California choice of law and venue provisions. Opp'n to AG at 9. These negotiations involved multiple communications between Infineon AG, Infineon Americas, and MACOM. Id. MACOM alleges that Infineon AG executed a common interest agreement with MACOM to further the ends of the California contracts. Id. MACOM further avers that the Common Interest Agreement contemplated an ongoing partnership is MACOM, not merely a one-time deal. Id. at 10. Infineon AG *and* Infineon Americas were parties to the Common Interest Agreement, and they entered into it "for themselves and on behalf of any affiliates involved in the prosecution of patent applications that are the subject of this Agreement." Common Interest Agreement.

In response, Infineon AG first argues that the Common Interest Agreement is not relevant to MACOM's claims against Infineon AG. AG Reply at 13. Infineon AG contends that the Common Interest Agreement was signed so that the parties could maintain attorney-client privilege for the purposes of their patent prosecution. Id. Therefore, according to Infineon AG, the Common Interest Agreement is "not even related to the termination or other actions that purportedly give rise to MACOM's claims." Id. Infineon AG further avers MACOM's counsel did not send the Common Interest Agreement to Infineon AG attorneys. Id.

Infineon AG next argues that the participation by Infineon AG attorneys in phone calls does not show that that Infineon AG directed Infineon Americas to terminate the parties' agreements or to take other actions alleged to constitute a breach.[5] Id. at 14. Infineon AG avers that it did not initiate the contract renegotiations with MACOM, rather MACOM's efforts to engage Infineon Americas about the enforcement of the licensed

_____

[5] At oral argument on October 24, 2016, counsel for Infineon AG made substantially the same arguments—i.e., that plaintiffs' alleged injury under their claim for intentional interference with contract does not arise either from the Common Interest Agreement or from Infineon AG's participation in the contract negotiation. The Court is not persuaded that plaintiffs' harm does not at least in part arise from the specified conduct.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | October 31, 2016 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC.; ET AL. v. INFINEON TECHNOLOGIES AG; ET AL. | | |

patents "initiated the parties' discussions leading to possible renegotiation of the license agreement." Id.  According to Infineon AG, the parties' discussions regarding the agreements involved only Infineon Americas personnel until Infineon America's general counsel left the company, at which time Infineon AG lawyers participated in the calls. Id.  Infineon AG contends that its attorneys were acting on behalf of Infineon Americas and further avers that MACOM's email correspondence was directed only to Infineon Americas personnel and MACOM did not copy anyone at Infineon AG on the emails.  Id. at 15, 19.  Lastly, Infineon AG contests the declaration submitted by Amanda Tessar, plaintiffs' trial counsel.  Tessar states that Lawrence Michlovich, an attorney for Infineon Americas, told Tessar during a phone call to "contact Michael Guntersdorfer at Infineon AG in Germany to discuss the agreements, because Infineon AG was in charge of and controlling the decisions relating to them."  Dkt. 114-2.  Infineon AG argues that this statement is inadmissible hearsay and does not reflect Michlovich's statements.  AG Reply at 17–18.  Infineon AG provides language from an email from Michlovich to Tessar in which he states "I've been tied up on other matters and suggest that if you still have questions to reach out directly to Michael Guntersdorfer in our legal department who will be picking up this matter in the interim."  Id. at 19.[6]

## b.    Purposeful Availment

"[A] contract alone does not automatically establish minimum contacts in the plaintiff's home forum."  Picot v. Weston, 780 F.3d 1206, 1212 (9th Cir. 2015) (quoting Boschetto, 539 F.3d at 1017).  However, the Court must "consider 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing."  Picot, 780 F.3d at 1212 (quoting Burger King, 471 U.S. at 479).  Indeed, "[c]ontract negotiations are classic examples of the sort of contact that can give rise to in personam jurisdiction."  Peterson v. Highland Music, Inc., 140 F.3d 1313, 1320 (9th Cir. 1998).  "Under the purposeful availment analysis, defendant need not be physically present or have physical contacts with the forum."  To determine whether purposeful availment has occurred, the Court considers (1) prior negotiations, (2) contemplated future consequences, (3) the terms of the contract, and (4) the parties' actual course of dealing.  Burger King, 471 U.S. at 478–79.

_____

[6] Infineon AG notes that a copy of this email serves as Exhibit 21, but Infineon AG has not attached an Exhibit 21 to its electronic or paper filing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | October 31, 2016 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC.; ET AL. v. INFINEON TECHNOLOGIES AG; ET AL. | | |

    Plaintiffs allege Infineon AG's participation in two sets of contracts: (a) the Purchase and License Agreements and (b) the Common Interest Agreements.  The Court considers both sets of contracts, and any related negotiations, and concludes that all four of the <u>Burger King</u> factors favor a finding of purposeful availment.  First, before the Common Interest Agreement was executed, plaintiffs allege and Infineon AG does not dispute, that MACOM "repeatedly attempted to engage Infineon regarding the enforcement of the Nitronex Patents against ongoing third-party infringement."  FAC ¶ 119.  In addition, Infineon AG does not deny plaintiffs' allegation that Infineon AG attorneys participated in the efforts to renegotiate the Nitronex/IR agreements beginning in January 2015.[7]  It appears that Infineon AG attorneys participated in those negotiations at least through the first quarter of 2016.  <u>See</u> dkt. 102-4 ¶¶ 5, 7 ("Tessar Decl.").  Second, the Common Interest Agreement contemplated an ongoing partnership with MACOM with respect to patent prosecution and MACOM's patent licenses, i.e., future activity with a California corporation in California.  In addition, Infineon AG's efforts to renegotiate the License Agreement, had they been successful, would have had substantial consequences on which, if any, of the Nitronex Patents MACOM could practice.  Third, the terms of the Common Interest Agreement expressly bind Infineon AG itself, not just Infineon Americas.  Fourth, while is not clear precisely how long Infineon AG participated in efforts to renegotiate the License Agreement, plaintiffs allege that Infineon AG employees participated in multiple phone conversations, sometimes without Infineon Americas employees.  FAC ¶ 121; Tessar Decl. ¶¶ 5, 7.  As described above, Infineon AG's participation in the negotiation process may have lasted from January 2015 through the first quarter of 2016.

---

    [7] Infineon AG contends that Infineon AG employees did not initiate those negotiations and that their attorneys' participated in those negotiations only on behalf of Infineon Americas.  However, Infineon AG has cited no authority—and the Court has found none—for the propositions (1) that a foreign agent who engages in acts directed at the forum on behalf of the principal is exempt from personal jurisdiction; or (2) that contract negotiations are insufficient to establish specific personal jurisdiction when the defendant did not initiate the negotiations.  Moreover, plaintiffs allege that Infineon AG originally acquired IR and attempted to renegotiate the License Agreement with MACOM to disrupt MACOM's exclusive rights with respect to GaN-on-Si RF products for Infineon AG's own benefit.  <u>See, e.g.</u>, FAC ¶ 112.  At best, therefore, it remains in dispute whether Infineon AG's participation was solely for Infineon America's benefit.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | October 31, 2016 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC.; ET AL. v. INFINEON TECHNOLOGIES AG; ET AL. | | |

Because the Court concludes that Infineon AG purposefully availed itself of the forum, the Court need not consider whether Infineon AG also purposefully directed its activities at the forum state.

### c.    "But for" Causation

The Court next considers whether plaintiffs' claims arise out of or result from the Infineon AG's forum-related activities. "To determine whether a claim arises out of forum-related activities, courts apply a 'but for' test." Unocal, 248 F.3d at 924. Plaintiffs contend that Infineon AG made, directed, and/or controlled the decisions—including the decisions to attempt to renegotiate the License Agreement, to terminate the License Agreement, to develop and market GaN-on-Si RF products, and to refuse to take action against third-party infringers—that led to plaintiffs' injuries. See FAC ¶ 29; see also dkt. Tessar Decl. ¶ 9. Plaintiffs further allege that the attempted renegotiation of the License Agreement was part of a broader "plan" to disrupt the Nitronex-IR agreements to gain rights to develop the GaN-on-Si products. Id. ¶ 113. For example, plaintiffs aver that when MACOM tried to engage with Infineon regarding enforcement of the Nitronex Patents against third-party infringers, "[i]nstead, Infineon raised the prospect of renegotiating the License and IP Purchase Agreements such that MACOM would lose its exclusive rights in the RF field." FAC ¶ 120. Infineon AG disputes these allegations. For example, in affidavits submitted on behalf of Infineon AG, declarants state, that "the ultimate decision and actions to terminate the License Agreement were of and by Infineon Technologies Americas Corp.[,]" dkt. 99-2 ¶ 8, and "[i]t was for Infineon Technologies Americas Corp. to decide whether to terminate its License Agreement," dkt. 99-3 ¶ 12. However, Infineon AG does not offer non-conclusory, factual evidence to controvert plaintiffs' allegations. Where, as here, the parties introduce conflicting affidavits, the Court resolves conflicts in the plaintiff's favor. See AT & T, 94 F.3d at 588–89. The Court therefore concludes that plaintiffs have adequately alleged that their exclusive right to develop GaN-on-Si RF products would not have been disrupted *but for* Infineon AG's intention to enter the MACOM's exclusive field of GaN-on-Si RF products—as manifested by, inter alia, Infineon AG's efforts to renegotiate the 2010 agreements and its reluctance to cooperate on patent enforcement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|---|
| Case No. | 2:16-CV-02859-CAS(PLAx) | | Date | October 31, 2016 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC.; ET AL. v. INFINEON TECHNOLOGIES AG; ET AL. | | | |

### d.    Reasonableness

The final requirement for specific jurisdiction is reasonableness.  Because plaintiffs have satisfied the first two prongs of the specific jurisdiction test, Infineon AG bears the burden of "present[ing] a compelling case" that the exercise of jurisdiction is not reasonable.  Schwarzenegger, 374 F.3d at 802.  The reasonableness determination requires the consideration of seven factors: (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.  Roth, 942 F.2d at 623; Bancroft, 223 F.3d at 1088 (citing Burger King, 471 U.S. at 476).  Infineon AG does not argue that personal jurisdiction over it would be unreasonable.  Therefore, the Court concludes that exercise of specific personal jurisdiction over Infineon AG is reasonable.

### e.    Summary

As described above, the Court finds that plaintiffs have demonstrated that Infineon AG purposefully availed itself of the forum state, that plaintiffs' claims arise as a result of Infineon AG's forum-related activities, and that the Court's exercise of jurisdiction over Infineon AG is reasonable.  Therefore, plaintiffs have made out a prima facie case of specific personal jurisdiction.[8]  Accordingly, the Court **DENIES** Infineon AG's motion to dismiss plaintiffs' FAC for lack of personal jurisdiction.

## IV.    Motions to Dismiss for Lack of Subject Matter Jurisdiction

### A.    Legal Standard

A motion pursuant to Federal Rule of Civil Procedure Rule 12(b)(1) motion tests whether the court has subject matter jurisdiction to hear the claims alleged in the

---

[8] Because the Court concludes that it may exercise personal jurisdiction over Infineon AG on the basis of Infineon AG's own conduct in relation to the forum, the Court need not address whether it may exercise jurisdiction over Infineon AG under the theories of alter ego, agency, or ratification.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES – GENERAL | | 'O' | |
|---|---|---|---|
| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | October 31, 2016 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC.; ET AL. v. INFINEON TECHNOLOGIES AG; ET AL. | | |

complaint. Fed. R. Civ. P. 12(b)(1). Such a motion may be "facial" or "factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). That is, a party mounting a Rule 12(b)(1) challenge to the court's jurisdiction may do so either on the face of the pleadings or by presenting extrinsic evidence for the court's consideration. See White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000); Thornhill Publishing co. v. General Tel. & Electronics, 594 F.2d 730, 733 (9th Cir. 1979).

Once a Rule 12(b)(1) motion has been raised, the burden is on the party asserting jurisdiction. Sopcak v. N. Mountain Helicopter Serv., 52 F.3d 817, 818 (9th Cir. 1995); Ass'n of Am. Med. Coll. v. United States, 217 F.3d 770, 778–79 (9th Cir. 2000). If jurisdiction is based on a federal question, the pleader must show that he has alleged a claim under federal law and that the claim is not frivolous. See 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1350, pp. 211, 231 (3d ed. 2004). If jurisdiction is based on diversity of citizenship, the pleader must show real and complete diversity, and also that his asserted claim exceeds the requisite jurisdictional amount of $75,000. See id. When deciding a Rule 12(b)(1) motion, the court construes all factual disputes in favor of the non-moving party. See Dreier v. United States, 106 F.3d 844, 847 (9th Cir. 1996).

As a general rule, leave to amend a complaint that has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

**B.    Discussion**

**1.    Infineon AG's Motion to Dismiss Plaintiff's Breach of Contract Claims**

Infineon AG seeks to dismiss plaintiffs' first, second, third, fourth, and seventh claims for relief—plaintiffs' breach of contract claims—for lack of subject matter jurisdiction because Infineon AG argues that is neither a party nor a successor to the IP

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | October 31, 2016 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC.; ET AL. v. INFINEON TECHNOLOGIES AG; ET AL. | | |

Purchase or License Agreements.[9]  AG MTD at 12.  "The general rule in California is that 'only a signatory to a contract may be liable for any breach.'"  St. Vincent Med. Ctr. v. Mega Life & Health Ins. Co., 585 F. App'x 417 (9th Cir. 2014) (quoting Clemens v. Am. Warranty Corp., 193 Cal. App. 3d 444, 452, (1987).  However, Infineon AG concedes that a nonparty may be held liable for the acts of its subsidiary under the alter ego, agency, and ratification theories.  Id. at 13; see whiteCryption Corp. v. Arxan Techs., Inc., No. 15-cv-00754-WHO, 2015 WL 3799585, at *2 (N.D. Cal. June 18, 2015) (corporations may be held liable for the actions of their subsidiaries: "(i) [w]here the circumstances of the organization of the two entities are such that the corporate form should be disregarded ("alter ego" liability); (ii) where the subsidiary acts as an agent of the parent corporation; or (iii) where the parent corporation aids, abets, or ratifies the acts of the subsidiary corporation").

### a.    Liability under the Agency and Ratification Theories

Under California law, an agent is defined as "one who represents another, called the principal, in dealings with third persons."  Cal. Civ. Code § 2295.  "In determining if an agent relationship exists, the court considers three essential characteristics: (1) an agent or apparent agent holds a power to alter the legal relationships between the principal and third persons and between the principal and himself; (2) an agent is a fiduciary with respect to matters within the scope of the agency; and (3) a principal had the right to control the conduct of the agent with respect to matters entrusted to him."  Grober v. Mako Productions, Inc., No.2: 04-cv-08604-SGL-OP, 2008 WL 9027249, *6 (C.D. Cal. Aug. 29, 2008) (citing Garlock Sealing Techs., LLC v. NAK Sealing Techs. Corp., 148 Cal. App. 4th 937, 945 (2007)); Palomares v. Bear Sterns Residential Mortg. Corp., No. 3:07-cv-1899-WQH-BLM, 2008 WL 686683, *4 (S.D. Cal. Mar. 13, 2008). "As a practical matter, the parent must be shown to have moved beyond the establishment of general policy and direction for the subsidiary and in effect taken over

---

[9]  Infineon AG moves to dismiss MACOM's breach of contract claims pursuant to Rule 12(b)(1) because Infineon AG argues that MACOM cannot show an actual case or controversy because Infineon AG is not a party to the agreements.  AG MTD at 2, 12. Infineon AG also argues that, with respect to MACOM's allegations of Infineon AG's liability under the alter ego, agency, and ratification theories, MACOM fails to state a claim on which relief may be granted under Rule 12(b)(6).  Id.  However, it appears that both of Infineon AG's arguments arise under Rule 12(b)(6).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES – GENERAL | | | | 'O' |
|---|---|---|---|---|
| Case No. | 2:16-CV-02859-CAS(PLAx) | | Date | October 31, 2016 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC.; ET AL. v. INFINEON TECHNOLOGIES AG; ET AL. | | | |

performance of the subsidiary's day-to-day operations in carrying out that policy." Sonora Diamond Corp. v. Superior Court, 83 Cal. App. 4th 523, 542 (2000); cf. Bauman v. DaimlerChrysler Corp., 644 F.3d 909, 920–21 (concluding that a parent and subsidiary had an agency relationship because they had an agreement that granted the parent "the right to control nearly every aspect of [the subsidiary's] operations").

Infineon AG argues that MACOM cannot establish agency liability for two reasons. First, MACOM has not shown that Infineon AG controls Infineon Americas such that the subsidiary is "merely the instrumentality" of the parent corporation. AG MTD at 14. Second, Infineon AG argues that agency theory requires a plaintiff to allege facts establishing an agency relationship at the time the contract was executed. AG Reply 8–9. IR and Infineon AG had no relationship at the time the IP Purchase and License Agreements were executed.

To demonstrate agency, MACOM points to the following allegations: Infineon AG has held itself out as the new owner of IR, its patents, and its GaN-on-Si products; Infineon AG merged product lines into an Infineon AG business division, attempted to renegotiate IR's contracts with MACOM, threatened to sell certain Nitronex Patents, accused MACOM's GaN-on-SiC products of infringing the Nitronex Patents, and marketed GaN-on-Si RF products in MACOM's exclusive field; Infineon AG sent threatening letters to MACOM and its supplier; Infineon AG and Infineon Americas share a single website; and Infineon America's purpose is to operate the U.S. arm of Infineon AG. Opp'n to AG 14–15. However, each of these allegations addresses what *Infineon AG* has done. They do not demonstrate that Infineon Americas acts or has acted under Infineon AG's control. They do not relate to the day-to-day operations of Infineon Americas. Therefore, the Court finds that plaintiffs have failed to allege facts showing that Infineon AG exercised day-to-day control over Infineon Americas. Accordingly, Infineon AG may not be held liable for plaintiffs' contract claims under the agency theory.

MACOM's argument for liability under the ratification theory suffers from the same defect. "Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." See Restatement (Third) of Agency § 4.01(1) (2006). "A principal can ratify an act by (a) manifesting assent that the act shall affect the person's legal relationships, or (b) conduct that justifies a reasonable assumption that the person so consents." Id. § 4.01(2). A principal,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | October 31, 2016 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC.; ET AL. v. INFINEON TECHNOLOGIES AG; ET AL. | | |

however, "is not bound by a ratification made without knowledge of material facts about the agent's act unless the principal chose to ratify with awareness that such knowledge was lacking." Id. § 4.01 cmt. b. "Ratification is demonstrated through knowing acceptance after the fact by the principal of an agent's actions." Bowoto v. Chevron Texaco Corp., 312 F. Supp. 2d 1229, 1247 (N.D. Cal. 2004).

To demonstrate ratification, MACOM points to the following allegations: Infineon AG touted its expansion of its GaN-on-Si patent portfolio through its acquisition of IR; Infineon AG participated in discussions with Infineon Americas and MACOM about modifying the terms of the IP Purchase and License Agreements; Infineon AG executed the Common Interest Agreement to further the ends of the IP Purchase and License Agreements; Infineon AG publicly disclosed its intent to sell GaN-on-Si products in MACOM's field. These allegations concern what *Infineon AG* has done. They do not relate to the conduct of Infineon Americas that Infineon AG has subsequently accepted. Accordingly, Infineon AG may not be held liable for plaintiffs' contract claims under the ratification theory.

### b.    Liability under the Alter Ego Theory

It is "a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." United States v. Bestfoods, 524 U.S. 51, 61 (1998) (citations and quotations omitted). One exception to this rule is the alter ego doctrine. See whiteCryption, 2015 WL 3799585, at *2. Under California law, "[a] corporate identity may be disregarded—the 'corporate veil' pierced—where an abuse of the corporate privilege justifies holding the equitable ownership of a corporation liable for the acts of the corporation." Sonora Diamond, 83 Cal. App. 4th at 538; see also Mesler v. Bragg Management Co., 702 P.2d 601, 606 (Cal. 1985) ("The alter ego doctrine arises when a plaintiff comes into court claiming that an opposing party is using the corporate form unjustly and in derogation of the plaintiff's interests. In certain circumstances the court will disregard the corporate entity and will hold the individual shareholders liable for the actions of the corporation."). The purpose of the doctrine is to bypass the corporate entity in order to avoid injustice. Its "essence . . . is that justice be done[,] . . . [and t]hus the corporate form will be disregarded only in narrowly defined circumstances and only when the ends of justice so require." Mesler, 702 P.2d at 607.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | October 31, 2016 |
|---|---|---|---|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC.; ET AL. v. INFINEON TECHNOLOGIES AG; ET AL. | | |

"To demonstrate that the parent and subsidiary are 'not really separate entities' and satisfy the alter ego exception . . . the plaintiff must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice." Unocal, 248 F.3d at 926 (quotation marks omitted). "Conclusory allegations of "alter ego" status are insufficient to state a claim. Rather, a plaintiff must allege specific facts support both of the elements of alter ego liability." Gerritsen v. Warner Bros. Entm't Inc., 112 F. Supp. 3d 1011, 1042 (C.D. Cal. 2015).

## i.    Unity of Interest

To establish unity of interest, the plaintiff must show that "the parent controls the subsidiary 'to such a degree as to render the latter the mere instrumentality of the former." Unocal, 248 F.3d at 926 (quotation marks omitted).  Courts consider numerous factors in making that inquiry, including:

> inadequate capitalization, commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, use of one as a mere conduit for the affairs of the other, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers.

Virtualmagic Asia, Inc. v. Fil-Cartoons, Inc., 99 Cal. App. 4th 228, 245 (2002).

MACOM argues that they have alleged facts demonstrating (1) a comingling of assets, (2) treatment of Infineon America's assets as assets of Infineon AG, and (3) Infineon AG's holding out that it is responsible for Infineon America's debts.  Opp'n to AG at 16.  Specifically, MACOM points to Infineon AG's 2015 annual report, in which Infineon AG reported the revenues, assets, and liabilities of IR (now Infineon Americas) as integrated with the revenues, assets, and liabilities of Infineon AG.  Id.; FAC ¶ 21. Infineon AG's 2015 annual report also stated that "effective October 1, 2015, International Rectifier has been fully absorbed within three segments" of Infineon's business and that Infineon AG was "combin[ing] all [of Infineon AG's and International Rectifier's] development activity relating to GaN-based power semiconductors."  FAC ¶¶ 20, 22.  According to MACOM, in Infineon AG's 2015 annual report and in a September 8, 2015 press release, Infineon AG held itself out to the public as owning the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | October 31, 2016 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC.; ET AL. v. INFINEON TECHNOLOGIES AG; ET AL. | | |

Nitronex Patents. Opp'n to AG at 16; FAC ¶¶ 24–25. MACOM also contends that in the 2015 annual report, Infineon AG treated IR's employees as Infineon AG employees. Opp'n to AG at 16; FAC ¶ 21. MACOM also points to declarations submitted by defendants, in which declarants state that in-house counsel from Infineon AG provided legal services and advice to Infineon Americas and that Infineon AG's in-house counsel participated in telephone calls with MACOM to provide legal services to Infineon Americas. Opp'n to AG at 16; Dkt. 92-3 ¶¶ 7–8; Dkt. 92-2 ¶ 11.

MACOM further contends that it has alleged facts showing that Infineon Americas is a shell or conduit for Infineon AG's business. Opp'n to AG at 16. MACOM points to its complaint, in which plaintiffs allege on information and belief, inter alia, "Infineon AG exercises control over Infineon Americas' day-to-day activities," FAC ¶ 19; Infineon Americas and Infineon AG share a single website, id. ¶ 23; "Infineon AG directs, controls, or acts in concert with Infineon Americas to control the disposition and enforcement of the Nitronex Patents" and "Infineon AG portrays itself as having such direction and control," id. ¶ 26; Infineon AG employees in Germany participated by phone in negotiations with MACOM regarding the Nitronex-IR agreements and "Infineon Americas employees told MACOM that Infineon AG had the decision-making authority regarding those agreements," id. ¶ 27; "Infineon Americas is nothing more than an agent or instrumentality of Infineon AG" and "Infineon AG made, directed, and/or controlled the decisions that led to the acts alleged" in plaintiffs' FAC, id. ¶ 29; and Infineon AG directed Infineon Americas to terminate its contracts with MACOM, id. ¶ 33. MACOM also contends that Infineon AG and Infineon Americas are "unable to separate" themselves, noting that each entity purports to testify for the other and points to defendants' declarations submitted in support of defendants' motions to dismiss. Opp'n to AG at 16–17. For example, Infineon AG's chief financial officer testifies about Infineon America's contracts and Infineon America's president testifies to the acquisition of IR by Infineon AG. Id. at 16; dkt. 92-2 ¶ 8; dkt. 92-3 ¶ 3.

Plaintiffs' burden to demonstrate unity of interest is high. In the Ninth Circuit, evidence showing only "an active parent corporation involved directly in decision-making about its subsidiaries' holdings, but each entity observe[s] all of the corporate formalities necessary to maintain corporate separateness" is not enough to demonstrate unity of interest. Ranza v. Nike, Inc., 793 F.3d 1059, 1073 (9th Cir. 2015) (quotation marks omitted). The Ninth Circuit has also found no alter ego relationship "where the parent company guaranteed loans for the subsidiary, reviewed and approved major

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES – GENERAL | | | ‘O’ |
|---|---|---|---|
| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | October 31, 2016 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC.; ET AL. v. INFINEON TECHNOLOGIES AG; ET AL. | | |

decisions, placed several of its directors on the subsidiary's board, and was closely involved in the subsidiary's pricing decisions." Unocal, 248 F.3d at 928 (citing Kramer Motors, Inc. v. British Leyland, Ltd., 628 F.2d 1175, 1177 (9th Cir. 1980). MACOM has not introduced any evidence showing Infineon AG's day-to-day control over Infineon Americas' activities or a failure to observe corporate formalities. Nor has MACOM shown inadequate capitalization, lack of segregation of corporate records, identical equitable ownership in the two entities, use of the same offices, or identical directors and officers. MACOM has presented some evidence—the 2015 annual report—that tends to show the commingling of funds and other assets and the holding out by Infineon AG that it is liable for the debts of the other. However, "consolidating the activities of a subsidiary into the parent's reports is a common business practice" and "is not enough, however, to justify the conclusion that [the parent corporation] would perform the activities of its U.S. operational subsidiaries were they unavailable to act as its "representative." Unocal, 248 F.3d at 929; see also Hickory Travel Sys., Inc. v. TUI AG, 213 F.R.D. 547, 554 (N.D. Cal. 2003) (concluding that a parent corporation's reference to subsidiaries as divisions and not separate companies, reports of the subsidiaries' earnings in annual statements, boasts of corporate integration, and decisions about restructuring the businesses of some of those subsidiaries are "relevant to alter ego status, but even in combination they do not suffice to make a prima facie case of alter ego relationships. Plaintiff has not shown that management structures are interchangeable and has made only admittedly speculative claims, without any evidentiary support, that [the parent corporation] is involved in the day-to-day management of its subsidiaries."). MACOM does present evidence showing the sharing of employees—specifically Infineon AG's in-house counsel—however, that is not enough to establish alter ego liability. Where, as here, "the evidence demonstrates that [the parent corporation] is active in macromanagement issues but does not show that [the parent corporation] directs [the subsidiary's] routine day-to-day operations, and nothing suggests the entities failed to observe their separate corporate formalities[,] [t]he weight of the evidence therefore persuades" the Court that Infineon AG and Infineon Americas "are not in an alter ego relationship." Ranza, 793 F.3d at 1075.

Because the Court concludes that plaintiffs have not adequately pleaded a prima facie case that there is a unity of interest between Infineon AG and Infineon Americas, the Court concludes that Infineon AG may not be held liable for plaintiffs' contract claims under the alter ego doctrine.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | October 31, 2016 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC.; ET AL. v. INFINEON TECHNOLOGIES AG; ET AL. | | |

### c.   Summary

Infineon AG was not a signatory to the IP Purchase and License Agreements and, as a general rule, may not be held liable for breach of those contracts.  In addition, plaintiffs have failed to show that any of the three exceptions to that rule applies.  Infineon AG has not adequately pleaded that Infineon AG may be held liable for the actions of its subsidiary under the alter ego, agency, or ratification theory.  Therefore, the court **GRANTS** without prejudice Infineon AG's motion to dismiss plaintiffs' first, second, third, fourth, and seventh claims for relief as against Infineon AG for lack of subject matter jurisdiction.[10]

### 2.   Infineon AG's Motion to Dismiss Plaintiffs' Claim for Declaratory Judgment for Non-Infringement

In their fifth claim for relief, plaintiffs seek a declaration that its activities with respect to GaN-on-Si RF products do not infringe the Nitronex Patents and an injunction barring defendants from taking any action or making any statement asserting that the License Agreement has been terminated or that MACOM's GaN-on-Si products are not licensed under that agreement.  FAC ¶¶ 216–17.

Infineon AG argues that MACOM fails to show an actual case or controversy with respect to its fifth claim for relief seeking a declaratory judgment of non-infringement because Infineon AG does not own the patents at issue.  AG MTD at 17; AG Reply at 6. MACOM argues that subject matter jurisdiction is proper because Infineon AG holds itself out as the owner of the Nitronex Patents and, in the alternative, Infineon Americas' ownership of the patents can be attributed to Infineon AG under the agency and alter ego doctrines.

As a general rule, a party that does not own a patent may not sue for infringement of that patent.  See Trend Micro Corp. v. Whitecell Software, Inc., No. 3:10-cv-02248-WHA, 2010 WL 4722504, at *3 (N.D. Cal. Nov. 15, 2010) (holding that a party that does not hold any right title or interest in a patent cannot be sue for infringement of the

---

[10] To the extent Rule 12(b)(6) is applicable, the Court further **GRANTS** Infineon AG's motion on the grounds that plaintiffs first, second, third, fourth, and seventh claims for relief fail to state a claim on which relief may be granted.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | October 31, 2016 |
|----------|--------------------------|------|-------------------|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC.; ET AL. v. INFINEON TECHNOLOGIES AG; ET AL. | | |

patent); <u>Certainteed Corp. v. Knauf Insulation, SPRL</u>, 849 F. Supp. 2d 67, 76 (D.D.C. 2012) ("[T]he defendant does not own the ′980 patent and therefore cannot assert infringement claims against the plaintiff."); <u>Sicom Sys., Ltd. v. Agilent Techs., Inc.</u>, 427 F.3d 971, 976 (Fed. Cir. 2005) (only a party that holds "all substantial rights to a patent" may sue for infringement).

MACOM relies on Infineon AG's 2015 annual report and the September 8, 2015 press release to support its allegation that Infineon AG held itself out as the owner of the Nitronex Patents. Opp'n to AG at 16; FAC ¶¶ 24–25. Infineon AG contends that those documents refer to the collective assets of Infineon AG and its subsidiaries. For example, according to Infineon AG, the 2015 annual report defines "Infineon" as a short form for "Infineon Group." AG Reply at 3.[11] On these facts, the Court finds that plaintiffs have failed to establish that Infineon AG held itself out as the owner of the Nitronex Patents. Moreover, plaintiffs have failed to show that Infineon AG, even if it *had* held itself out as the owner of the patents, would have standing to sue for infringement absent *actual* ownership. In addition, because the Court has already concluded that Infineon AG may not be held liable under the agency and alter ego theories, plaintiffs are not entitled to rely on those theories for the purposes of their declaratory judgment claim.

Accordingly, court **GRANTS** without prejudice Infineon AG's motion to dismiss plaintiffs' fifth claim for relief as against Infineon AG for lack of subject matter jurisdiction.

### 3.    Infineon America's Motion to Dismiss Plaintiffs' Claim for Declaratory Judgment for Non-Infringement

Infineon Americas contends that MACOM's fifth claim of relief for non-infringement should be dismissed for lack of subject matter jurisdiction because (1) MACOM has failed to plead facts establishing that Infineon Americas has created an infringement controversy with respect GaN-on-Si RF products; (2) MACOM has failed

---

[11] Infineon AG directs the Court to view the 2015 annual report at Exhibit 11. <u>See</u> AG Reply at 3. However, Infineon AG has not attached Exhibit 11 to its reply, dkt. 133, or to its motion, dkt. 99. Given the volume of papers filed in this action, the Court directs the parties to attach any cited exhibit to each filing in which it is cited, or to provide the docket number for any cited exhibit that was previously filed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | October 31, 2016 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC.; ET AL. v. INFINEON TECHNOLOGIES AG; ET AL. | | |

to plead facts that establish the plausibility of non-infringement; and (3) MACOM has failed to identify all of the products for adjudication. Americas MTD at 1–2.

Specifically, Infineon Americas argues that MACOM does not allege that Infineon Americas has accused MACOM of infringement with respect to GaN-on-Si RF products. Id. at 12. Infineon Americas contends that the mere termination of the License Agreement or the existence of an unlicensed product does not create an infringement controversy over MACOM's GaN-on-Si products. Id. at 13–14. Infineon Americas further argues that the termination of the License Agreement does not create a threat of suit with respect to MACOM's GaN-on-Si RF activities because the license was terminated on the basis of MACOM's sales of a different type of product, GaN-on-Si*C* products. Id. at 14. Infineon Americas avers that MACOM has failed to allege that its GaN-on-Si RF products actually practice the patents-in-suit. Id. Lastly, Infineon Americas contends that MACOM fails to establish an actual controversy over any products that it does not identify in its complaint. Id. at 15–16.

Where a party seeks a declaratory judgment of non-infringement, "the actual controversy requirement is satisfied when [(1)] a defendant's conduct has created on the part of the declaratory plaintiff a reasonable apprehension that it will face an infringement suit if it commences or continues the activity in question and [(2)] when the plaintiff has actually produced the accused device or has prepared to produce such a device." Indium Corp. of Am. v. Semi-Alloys, Inc., 781 F.2d 879, 882–83 (Fed. Cir. 1985). The Court agrees with plaintiffs that an express threat of suit is a not a prerequisite to an infringement controversy. See SanDisk Corp. v. STMicroelectronics, Inc. 480 F.3d 1372, 1383 (Fed. Cir. 2007) (a course of conduct showing a willingness to enforce the patent right is enough to create a justiciable controversy). "The purpose of a declaratory judgment action cannot be defeated simply by the stratagem of a correspondence that avoids the magic words such as 'litigation' or 'infringement.'" Hewlett-Packard Co. v. Acceleron LLC, 587 F.3d 1358, 1362 (Fed. Cir. 2009) (citation and quotation marks omitted). The Court finds that defendants' course of conduct creates a reasonable apprehension that plaintiffs will face an infringement suit if they continue to produce GaN-on-Si RF products. For example, plaintiffs allege that defendants sent a letter to MACOM's supplier complaining of the proliferation if its "patented technology," FAC ¶ 116; defendants repeated tried to renegotiate the IP Purchase and License Agreements such that MACOM would lose its exclusive rights in the RF field, id. ¶ 120; defendants complained of and then terminated the License Agreement based on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | October 31, 2016 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC.; ET AL. v. INFINEON TECHNOLOGIES AG; ET AL. | | |

MACOM's sale of GaN-on-Si*C*, even though MACOM had been selling such products long before its acquisition of Nitronex and even though other companies sell such products, id. ¶¶ 124–26, 144; and defendants informed MACOM that they were contemplating assigning some Nitronex Patents to a third party and that they did not need MACOM's consent to proceed, id. ¶¶ 120–31.

The Court also agrees that plaintiffs need not plead that their GaN-on-Si RF products practice the patents-in-suit. Where there is a "genuine threat of enforcement," plaintiff is not required, "as a prerequisite to testing the validity of the law in a suit for injunction, that the plaintiff bet the farm, so to speak, by taking the violative action." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 129 (2007). However, the Court notes that plaintiffs do in fact allege that they practice the patents-in-suit. See, e.g., FAC ¶¶ 151–52.

Plaintiffs have identified specific products at issue, stating they continue to produce and offer to sell 29 GaN-on-Si products and listing the part numbers. Id. ¶ 152. However, plaintiffs also use the phrase "including at least the following party numbers," id., before plaintiffs set out the list of 29 products. "In an action for declaratory judgment concerning claims for patent non-infringement, the pleading must specify the products or conduct alleged not to infringe." Xilinx, Inc. v. Invention Inv. Fund I LP, No. 5:11-cv-0671-SI, 2011 WL 3206686, at *6 (N.D. Cal. July 27, 2011); see also Wistron Corp. v. Phillip M. Adams & Associates, LLC, No. 3:10-cv-4458-EMC, 2011 WL 1654466, at *12 (N.D. Cal. Apr. 28, 2011) ("[W]ithout identifying the accused products, there simply is no way to adjudicate an infringement claim. Absent identification of the products accused of infringement, there is no concrete case or controversy or sufficient specificity to satisfy Twombly and Iqbal."). This rule allows defendants to assess the "true nature of any potential counterclaims" and "to mount a meaningful defense." Xilinx, 2011 WL 3206686, at *6. The Court therefore finds that plaintiffs fail to establish an actual controversy over products not identified in the FAC.

In its reply, Infineon Americas argues that a denial of its motion to dismiss the declaratory judgment claim would compel Infineon Americas to determine whether to file counterclaims with respect to each of plaintiffs' 29 identified products, and that would unfairly burden Infineon Americas. See Americas Reply at 16. Infineon cites no authority for the proposition that a plaintiff's claim may be dismissed for imposing too great a burden on the defendant and the Court is not persuaded by this argument.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | October 31, 2016 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC.; ET AL. v. INFINEON TECHNOLOGIES AG; ET AL. | | |

The Court concludes that plaintiffs adequately plead facts establishing an infringement controversy with respect to specifically identified GaN-on-Si products. Accordingly, the Court **GRANTS** without prejudice Infineon America's motion to dismiss plaintiffs' fifth claim for relief to the extent the claim relies on unidentified products. However, the Court otherwise **DENIES** Infineon Americas' motion to dismiss plaintiffs' fifth claim for relief.

## V. Motions to Dismiss for Failure to State a Claim on which Relief May Be Granted

### A. Legal Standard

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | October 31, 2016 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC.; ET AL. v. INFINEON TECHNOLOGIES AG; ET AL. | | |

"[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

Federal Rule of Civil Procedure 8(a) provides that a pleading stating a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to meet this standard, a claim for relief must be stated with "brevity, conciseness, and clarity." See Charles A. Wright & Arthur R. Miller, 5 Fed. Practice and Procedure § 1215 (3d ed.). "The Plaintiff must allege with at least some degree of particularity overt acts which Defendants engaged in that support the Plaintiff's claim." Jones v. Community Redevelopment Agency, 733 F.2d 646, 649 (9th Cir. 1984). The purpose of Rule 8(a) is to ensure that a complaint "fully sets forth who is being sued, for what relief, and on what theory, with enough detail to guide discovery." McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996).

**B.    Discussion**

Infineon AG requests that the Court dismiss plaintiffs' eighth claim for relief (intentional interference with contractual relations) for failure to state a claim on which relief may be granted. AG MTD at 2.[12] Infineon Americas requests that the Court dismiss plaintiffs' second and fifth claims for relief. Americas MTD at 1–2.

---

[12] Infineon AG also requests that the Court dismiss plaintiffs' fifth claim for relief for failure to state a claim on which relief may be granted. Because the Court has already granted Infineon AG's motion to dismiss plaintiffs' fifth claim for relief, see supra

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | October 31, 2016 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC.; ET AL. v. INFINEON TECHNOLOGIES AG; ET AL. | | |

**1.      Infineon AG's Motion to Dismiss Plaintiffs' Intentional Interference Claim**

Plaintiffs bring their intentional interference with contract claim against Infineon AG in the event Infineon AG is found not to be a party to or bound by the relevant agreements.  Opp'n to AG at 22.

> The tort of intentional interference with contract requires allegations of the following elements: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage."

CRST Van Expedited, Inc. v. Werner Enterprises, Inc., 479 F.3d 1099, 1105 (9th Cir. 2007) (quoting Quelimane Co. v. Stewart Title Guar. Co., 960 P.2d 513, 530 (Cal. 1998)).

Infineon AG argues that plaintiffs' claim for intentional interference is barred respectively by the manager's and financial interest privileges.

The manager's privilege "exists whenever a person induces a breach of contract through lawful means in order to protect an interest that has a greater social value than the mere stability of the particular contract in question."  Los Angeles Airways, Inc. v. Davis, 687 F.2d 321, 325 (9th Cir. 1982).  The manager's privilege generally applies in the context of employer-employee relations, id. at 326, but also applies where an agency relationship exists, see California Crane Sch., Inc. v. Nat'l Comm'n for Certification of Crane Operators, No. 2:08-cv-00816-MCE-EFB, 2008 WL 3863426, at *4 (E.D. Cal. Aug. 19, 2008) ("Under California's common law, the manager's privilege protects an agent from individual liability for acts taken on behalf of his employer or principal." (emphasis added)) (citing Huynh v. Vu, 111 Cal. App. 4th 1183, 1194 (2003)); Black Donuts, Inc. v. Sumitomo Corp. of Am., No. 2:10-cv-0454-SVW-SS, 2010 WL 9185024, at *7 (C.D. Cal. Mar. 3, 2010) (in cases presenting the question of "whether the representative of a contracting party may be held liable for the substantive tort of

Section IV.B.2, the Court does not address this basis for dismissing plaintiffs' fifth claim for relief as against Infineon AG.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | October 31, 2016 |
|----------|-------------------------|------|------------------|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC.; ET AL. v. INFINEON TECHNOLOGIES AG; ET AL. | | |

interfering with the contract [,] . . . the so-called 'manager's privilege' immunizes agents from liability for inducing their principals to breach contracts entered into between the principals and third parties."). Indeed, "[t]he privilege is designed to further certain societal interests by fostering uninhibited advice by agents to their principals." Los Angeles Airways, 687 F.2d at 328; Young v. Olympus Am., Inc., No. 2:15-cv-02302-BRO-JC, 2015 WL 3466305, at *9 (C.D. Cal. June 1, 2015) (same).

The manager's privilege applies to individuals and corporations. See, e.g., Cedars-Sinai Med. Ctr. v. Glob. Excel Mgmt., No. 2:09-cv-3627-PSG-AJW, 2009 WL 4730882, at *6 (C.D. Cal. Dec. 4, 2009) ("The common law advisor's or agent's privilege extends to individuals or *entities* who serve as business advisors or agents." (emphasis added)). "Courts in other states have uniformly found that a parent company does not engage in tortious conduct when it directs its wholly-owned subsidiary to breach a contract that is no longer in the subsidiary's economic interest to perform." Boulevard Associates v. Sovereign Hotels, Inc., 72 F.3d 1029, 1036 (2d Cir. 1995) (collecting cases). However, "[t]he protection of the privilege may be lost if the advisor acts with improper intent." Los Angeles Airways, 687 F.2d at 326. Plaintiffs allege that Infineon AG induced and directed the termination of the License Agreement and that the termination was wrongful, pretextual, and in bad faith. See FAC ¶¶ 148, 202, 238. Infineon AG argues that the termination was at least partly motivated by a desire to benefit Infineon Americas. AG Reply at 24. Evaluating Infineon AG's intent "is a highly subjective question." See Los Angeles Airways, 687 F.2d at 326. Taking plaintiffs' allegations as true, the Court finds that it cannot conclude at this stage that Infineon AG did not have an improper motive or that Infineon AG acted for the benefit of Infineon Americas. Therefore, Infineon AG is not entitled to the protection of the manager's privilege.

Infineon AG's financial privilege argument also fails. Under the financial interest privilege, "[o]ne who has a financial interest in the business of another is privileged purposely to cause him not to enter into or continue a relation with a third person in that business if the actor (a) does not employ improper means, and (b) acts to protect his interest from being prejudiced by the relation." Sade Shoe Co. v. Oschin & Snyder, 162 Cal. App. 3d 1174, 1181 (1984) (quoting Restatement (First) of Torts, § 769). The financial interest privilege "is at most a qualified one dependent for its existence upon the circumstances of the case. It is essentially a state-of-mind privilege and therefore its existence cannot normally be satisfactorily determined on the basis of pleadings alone." City of Oakland v. Comcast Corp., No. 4:06-cv-5380 CW, 2007 WL 518868, at *8 (N.D.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | October 31, 2016 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC.; ET AL. v. INFINEON TECHNOLOGIES AG; ET AL. | | |

Cal. Feb. 14, 2007) (quoting Culcal Stylco, Inc. v. Vornado, Inc., 26 Cal. App. 3d 879, 883 (1972). "California courts have expressed a reluctance to resolve this issue on the basis of the pleadings" where "the complaint contained allegations sufficient to support an inference of improper intent . . . or at least failed to contain allegations to show justification or privilege as a matter of law." Stonebrae, L.P. v. Toll Bros., No. 3:08-cv-0221-EMC, 2008 WL 2157000, at *6 (N.D. Cal. May 21, 2008). Accordingly, taking plaintiffs' allegations as true, the Court finds that it cannot conclude at this stage that Infineon AG is entitled to the protection of the financial interest privilege.[13]

Therefore, Infineon AG's motion to dismiss plaintiffs' eighth claim for relief for failure to state a claim is **DENIED**.

> **2.** **Infineon America's Motion to Dismiss Plaintiffs' Breach of Contract Claim for Marketing and Preparing for Sale GaN-on-Si Products**

In their second claim for relief, plaintiffs allege that defendants have breached the License Agreement by wrongfully engaging in activities to market and sell (or at least prepare to sell) GaN-on-Si RF devices within MACOM's exclusive field. FAC ¶ 184.

Infineon Americas argues that MACOM's second claim for relief for breach of contract should be dismissed for failure to state a claim on which relief may be granted because the conduct that plaintiffs allege—marketing and promotion—does not violate the License Agreement. Americas MTD at 8–9. Even though the License Agreement granted Nitronex the exclusive right to "market" products in the field of use, see License Agreement § 2.1, Infineon Americas argues that "market" must be interpreted to refer to the right to "offer to sell" patented products, because the grant of a patent license cannot extend to activity that is not covered by a patent. Id. at 9 n.4. Infineon Americas contends that MACOM has not alleged any facts showing an "offer to sell." Id. at 10. In addition, Infineon Americas argues that MACOM fails to specify where Infineon's

---

[13] With respect to the manager's privilege and the financial interest privilege, Infineon AG's counsel argued at oral argument that plaintiffs complaint, on its face, alleges that Infineon AG's actions were taken in part for the benefit of Infineon Americas. The Court disagrees with Infineon AG's reading of plaintiffs' complaint.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | October 31, 2016 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC.; ET AL. v. INFINEON TECHNOLOGIES AG; ET AL. | | |

alleged conduct occurred, and therefore MACOM fails to plausibly allege a violation of Infineon Americas' patent license. Id. at 10–11.

Plaintiffs argue that they need not plead the elements of a patent infringement claim to adequately plead their breach of contract claim. Opp'n to Americas 18–20. As a result, plaintiffs contend that they need not plead that Infineon's GaN-on-Si RF products practice particular Nitronex Patents, id. at 23, they need not allege that Infineon Americas negotiated a price for such products, id., and they need not plead that Infineon Americas' actions occurred in the United States, id. at 24. Instead, plaintiffs contend that they have adequately alleged that Infineon Americas breached the License Agreement because they allege that Infineon began to develop, market, and offer samples of GaN-on-Si RF products for cellular base station applications and that this conduct violates a specific provision of the License Agreement. Id. at 19–21.

Notwithstanding their contention that they need not plead a patent infringement claim to adequately plead their breach of contract claim, plaintiffs argue that their allegations are also sufficient to plead "traditional patent infringement." Id. at 21. Plaintiffs contend they adequately plead facts showing that Infineon Americas' GaN-on-Si RF products practice one or more Nitronex Patents because, inter alia, plaintiffs have pleaded that the Nitronex Patents are foundational and that IR used the patented technology to develop its GaN-on-Si products before IR was acquired. Id. Plaintiffs argue Infineon Americas promotion and marketing of GaN-on-Si RF products amounts to an offer to sell those products. Id. at 23–24. Plaintiffs contend that at the pleading stage, they need not have used the "magic words" of "offered to sell" or allege that Infineon negotiated a price for such products. Id. at 24. And plaintiffs aver that they have sufficiently pleaded that Infineon Americas' actions occurred in the United States because Infineon Americas is a U.S. company, with facilities and activities in the United States, and Infineon's marketing activities using its ".com" website satisfy the territoriality pleading requirement. Id. at 25.

Infineon Americas contends that MACOM's interpretation of the License Agreement would prevent it from marketing and selling products regardless of whether those products practice the licensed patents. Americas Reply at 11. In its reply, Infineon Americas argues for the first time that such an interpretation would result in an anticompetitive covenant that would be void under state and federal antitrust laws. Id. at 11–12. Specifically, Infineon Americas avers:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | ‘O’ |
|---|---|---|---|
| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | October 31, 2016 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC.; ET AL. v. INFINEON TECHNOLOGIES AG; ET AL. | | |

> MACOM's dubious interpretation of the License Agreement . . . would effectively divide the market between two competitors—separate and apart from any licensed patents—with MACOM getting the Excusive Field worldwide and Infineon promising not to compete in that field in any way. Such a blanket non-compete would restrain Infineon Americas from engaging in the lawful business of marketing and selling products within the Exclusive Field that do not practice the licensed patents.

Id. at 12.  In support of this conclusion, Infineon Americas relies on Edwards v. Arthur Andersen LLP, 189 P.3d 285, 295 (Cal. 2008) and Dunn v. GMAC Mortg., LLC, No. 2:10-cv-03196-JAM, 2011 WL 1230211 (E.D. Cal. Mar. 28, 2011).  In Edwards, the California Supreme Court considered a Termination of Non-Compete ("TONC") agreement, which potential employees were required to sign before they were hired. Edwards, 189 P.3d at 289.  The TONC required employees to, inter alia, release their former employer from "any and all" claims.  Id.  The Edwards court interpreted the "any and all" provision to exclude nonwaivable statutory protections (specifically, the employee's right to indemnification from the employer) in order to construe the provision in such a way as to make it effective, rather than void.  Id. at 296–97.  Similarly, in Dunn, the court relied on the rule that courts must construe any ambiguity in a contract in such a way that will make the contract lawful.  2011 WL 1230211, at *3.  However, Infineon Americas does not cite any authority for the proposition that a contract is anticompetitive if a party agrees not to market or sell products within another party's exclusive field.

The Court agrees with plaintiffs that they need not plead the elements of patent infringement in order to adequately allege breach of contract.  "Particularly in the context of a licensing relationship, it is easy to see how breaching such a promise potentially gives rise to a free-standing contract claim, regardless of whether or not such a breach would also support a claim for patent infringement."  Esoterix Genetic Labs. LLC v. Qiagen Inc., 133 F. Supp. 3d 349, 363 (D. Mass. 2015).  In Esoterix, the plaintiff—the patent owner and licensor—alleged that the defendant, the licensee, breached the licensing agreement.  Id. at 351–52.  Even though the Esoterix court found the plaintiff's patent infringement claims ineligible because the patent covered ineligible subject matter, id. at 360, the court concluded that the plaintiff's breach of contract and patent infringement claims did "not necessarily rise or fall together."  Id. at 363.  The Esoterix court distinguished its case from the facts in Massillon-Cleveland-Akron Sign Co. v. Golden State Advert. Co., 444 F.2d 425 (9th Cir. 1971), in which "the only promise that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | October 31, 2016 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC.; ET AL. v. INFINEON TECHNOLOGIES AG; ET AL. | | |

was breached was an express and specific covenant not to infringe on the patent claims." Esoterix, 133 F. Supp. 3d at 363. Here, as in Esoterix, the scope of the License Agreement is not coextensive with the scope of the patent protection and, as a result, plaintiffs may have a breach of contract claim even absent a patent infringement claim.

Infineon Americas offers no authority for its assertion that the License Agreement would be anticompetitive if interpreted in the manner that plaintiffs suggest. Moreover, neither party has alleged facts addressing whether the License Agreement would be anticompetitive. Accordingly, the Court declines to find, at this stage, that plaintiffs' interpretation of the License Agreement would render the agreement anticompetitive. Cf. United States v. Green, 592 F.3d 1057, 1068 (9th Cir. 2010) ("Generally, the question whether a restraint of trade is unreasonable [under the Sherman Act] involves a detailed factual inquiry.").

The Court therefore **DENIES** Infineon Americas' motion to dismiss plaintiffs' second claim for relief.

### 3. Infineon Americas' Motion to Dismiss Plaintiffs' Claim for Declaratory Judgment for Non-Infringement

Infineon Americas argues that plaintiffs' fifth claim for relief for declaratory judgment for non-infringement fails to state a claim on which relief may be granted because plaintiffs refer to unidentified products in the FAC. Americas MTD at 17.

As the Court describes above with respect to Infineon Americas' 12(b)(1) motion on plaintiffs' fifth claim for relief, plaintiffs have identified specific products at issue, stating they continue to produce and offer to sell 29 GaN-on-Si products and listing the part numbers. FAC ¶ 152. However, plaintiffs also use the phrase "including at least the following party numbers," id., before plaintiffs set out the list of 29 products. "In an action for declaratory judgment concerning claims for patent non-infringement, the pleading must specify the products or conduct alleged not to infringe." Xilinx, 2011 WL 3206686, at *6; see also Wistron Corp., 2011 WL 1654466, at *12 ("[W]ithout identifying the accused products, there simply is no way to adjudicate an infringement claim. Absent identification of the products accused of infringement, there is no concrete case or controversy or sufficient specificity to satisfy Twombly and Iqbal."). The Court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | October 31, 2016 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC.; ET AL. v. INFINEON TECHNOLOGIES AG; ET AL. | | |

therefore finds that plaintiffs fail to adequately plead a claim for relief with respect to products not identified in the FAC.

Accordingly, the Court **GRANTS** without prejudice Infineon America's motion to dismiss plaintiffs' fifth claim for relief to the extent the claim relies on unidentified products. However, the Court otherwise **DENIES** Infineon Americas' motion to dismiss plaintiffs' fifth claim for relief.

## VI.   Preliminary Injunction

### A.   Legal Standard

A "preliminary injunction is an extraordinary and drastic remedy." Munaf v. Geren, 553 U.S. 674, 689–90 (2008). Thus, a district court should enter a preliminary injunction only "upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 22 (2008). Such a showing requires that the plaintiff establish he or she "is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Id. at 20; see Sierra Forest Legacy v. Rey, 577 F.3d 1015, 1021 (9th Cir. 2009); see also Johnson v. Couturier, 572 F.3d 1067, 1081 (9th Cir. 2009); American Trucking Associations, 559 F.3d 1046, 1052 (9th Cir. 2009).

Following Winter, the Ninth Circuit articulated an alternate formulation of the sliding scale test. Post-Winter, serious questions going to the merits and a balance of hardships that tips sharply in favor of the plaintiff can support issuance of a preliminary injunction if plaintiff also shows that there is a likelihood of irreparable injury and the injunction is in the public interest. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011) ("To the extent prior cases applying the 'serious questions' test have held that a preliminary injunction may issue where the plaintiff shows only that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor, without satisfying the other two prongs, they are superseded by Winter, which requires the plaintiff to make a showing on all four prongs. But the 'serious questions' approach survives Winter when applied as part of the four-element Winter test. That is, 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | October 31, 2016 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC.; ET AL. v. INFINEON TECHNOLOGIES AG; ET AL. | | |

long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." (citation omitted)). A "serious question" is one on which the movant "has a fair chance of success on the merits." Sierra On–Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1421 (9th Cir. 1984).

###   B.   Discussion

Plaintiffs seek a preliminary injunction with respect to their third claim for relief, a declaration that the License Agreement has not been terminated.[14] Pls. PI at 1. Specifically, plaintiffs seek an order that the 2010 License Agreement remains "in full force and effect" and that enjoins defendants from "taking any action inconsistent with that License Agreement, including but not limited to any development, marketing, or sales activities in MACOM's Exclusive Field." Dkt. 73-3. In other words, plaintiffs request that the Court preserve the status quo and enjoin defendants from taking any action inconsistent with the existence of a valid contract until that issue has been determined at trial.

###   1.   Success on the Merits

Plaintiffs argue that they will succeed on the merits of their third claim for relief because MACOM's sale of GaN-on-SiC products was outside the scope of the License Agreement. Therefore, plaintiffs aver that MACOM did not breach the License Agreement and Infineon was not entitled to terminate it. Pls. PI at 13–14. Plaintiffs contend that exceeding the scope of a patent license may give rise to a patent infringement suit, but ordinarily does not constitute a breach of contract. Id. at 14. According to plaintiffs, exceeding the scope of a patent license constitutes a breach of contract under only two circumstances: (1) the agreement contains an *express* negative covenant by the licensee not to act beyond the license, id. at 16; or (2) a licensor provided the licensee with confidential technical information or know-how along with the patent license, such that a court *implies* a negative covenant, id. at 17. Because neither circumstance is present in this case, plaintiffs aver that MACOM's sale of GaN-on-SiC

---

[14] Because the Court has dismissed plaintiffs' third claim for relief against Infineon AG, the Court considers plaintiffs' motion for a preliminary injunction only with respect to Infineon Americas.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | October 31, 2016 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC.; ET AL. v. INFINEON TECHNOLOGIES AG; ET AL. | | |

products was not a breach of contract that justified defendants' termination of the 2010 Lease Agreement. Id. at 16–17.

Defendants, in turn, argue that plaintiffs cannot establish a likelihood of success on the merits because plaintiffs breached the License Agreement and, therefore, defendants were entitled to terminate the agreement. PI Opp'n at 5. Defendants set out three bases for finding that plaintiffs breached the License Agreement. First, defendants contend that that an action for breach of contract *is* a remedy available to patent owners when licensees exceed the scope of their license. Id. at 6–7. Second, defendants assert that the License Agreement includes an implied covenant of good faith and fair dealing, a covenant that MACOM breached by selling products outside the scope of the license. Id. at 7–10. And third, defendants aver that the License Agreement included an implied negative covenant not to exceed the scope of the license, which plaintiffs also breached. Id. at 10–11.

The Court first considers whether a breach of contract remedy is appropriate in response to MACOM's sales of GaN-on-SiC products. Courts agree that licensors are only entitled to a breach of contract remedy when a licensee exceeds the scope of the grant if: (1) there is an express negative covenant not to exceed the scope of the patent license or (2) there is an implied negative covenant arising because the defendants provided plaintiffs with confidential technical information or know-how along with the patent license. For example, in considering whether a suit for breach of contract is the proper remedy for a licensee's exceeding the scope of the license, the United States District Court for the Eastern District of Missouri first considered whether there was an express covenant not to exceed the scope of the grant. Monsanto Co. v. E.I. DuPont De Nemours & Co., No. 4:09-cv-00686-ERW, 2010 WL 234951, at *8 (E.D. Mo. Jan. 15, 2010), order vacated in part on reconsideration, No. 4:09-cv-00686-ERW, 2010 WL 3039210 (E.D. Mo. July 30, 2010). The court next considered whether the license agreement contained an implied negative covenant not to operate outside the licensed field. Id. at *9. In making this inquiry, the court identified two factors that lead to a finding of an implied negative covenant: (a) "a restriction on the field of use" and (b) "a grant of technical information" from the licensor to the licensee. Id. at *10. Einhorn explains:

[A] straight patent license is essentially a promise by the licensor to forbear from bringing suit so long as the licensee operates within the terms of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | October 31, 2016 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC.; ET AL. v. INFINEON TECHNOLOGIES AG; ET AL. | | |

grant. Should the licensee transcend the terms of the grant, the licensor has an adequate remedy in a suit for infringement. However, should the license be based upon a grant of technical information, then the balance tips in the opposite direction. Here the licensor has granted more than a mere forbearance from suit. He has actually delivered a package of valuable information to the licensee. Should the licensee exceed the terms of the grant, the sole appropriate remedy is a suit for breach of contract based on an implied covenant not to do so.

Harold Einhorn, 1-1 Patent Licensing Transactions § 1.03[4] (2009). Similarly, the United States District Court for the Southern District of Iowa summarized the consensus among federal courts that a suit for breach of contract is the appropriate remedy when a licensor grants a licensee "technical known-how in addition to the patent licenses." CO2 Techs., Inc. v. Paper-Pak Indus., 830 F. Supp. 2d 656, 661 (S.D. Iowa 2011) (collecting cases); Eli Lilly & Co. v. Emisphere Techs., Inc., 408 F. Supp. 2d 668, 688–89 (S.D. Ind. 2006) (same, relying on Einhorn).

First, the parties do not dispute that the License Agreement does not contain an express negative covenant that plaintiffs may not exceed the scope of the license. Therefore, the Court next considers whether the agreement contains an implied negative covenant. That inquiry requires the Court to consider whether (a) the agreement contains a restriction on the field of use and (b) whether defendants also transferred technical information to plaintiffs, along with the license. The License Agreement includes a restriction on plaintiffs' field of use. See License Agreement §§ 1.3; 2.1. The Court therefore considers whether there was technical transfer from the licensor, IR, to the licensee, Nitronex. Defendants aver that the 2004 agreements between Nitronex and IR required "an exchange of technical information" and that Nitronex was paid to design and develop engineering processes for IR. PI Opp'n at 11. Defendants further argue that as part of the 2010 transaction, Nitronex agreed to pay IR to manufacture the epitaxial wafers for Nitronex and that constituted a technical transfer from IR to Nitronex. Id. at 12. However, the 2004 technology transfer agreement provides for a transfer of technology from Nitronex to IR. See Dkt. 112-2, Ex. 1, 2004 Technology Transfer Agreement 1 ("WHEREAS, Nitronex represents that is has the know-how and capability to design and develop engineering processes to manufacture wafers consisting of specialized epitaxy on silicon, and devices which utilize that epitaxy; and WHEREAS, IR desires to engage Nitronex to design and develop such engineering processes on behalf of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL 'O'

| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | October 31, 2016 |
|----------|--------------------------|------|-------------------|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC.; ET AL. v. INFINEON TECHNOLOGIES AG; ET AL. | | |

IR and Nitronex . . ."); id. § 2.4 ("Nitronex shall transfer and deliver the Technology . . ."). With respect to the License Agreement, the agreement states that IR purchased from Nitronex "all patent rights owned or controlled by Nitronex related to the GaN on Silicon Technology . . . *originally developed by* Nitronex." License Agreement at 1. Moreover, on the day that parties signed the License Agreement, they also signed a memorandum of understanding that states that it "sets forth the general terms and conditions of the proposed agreement to be entered into between [IR] and [Nitronex], pursuant to which *Nitronex would transfer* epitaxial processing of its wafer substrates to IR and IR would initially provide epitaxial processing, qualification and testing services, to be followed by production supply of epi wafers . . . ." Dkt. 112-2, Ex. 2 at 1 ("MOU"). That is, Nitronex transferred its confidential manufacturing process to IR; IR's subsequent use of that manufacturing process, therefore, does not constitute a transfer of technology from IR to Nitronex. Accordingly, the Court concludes that the License Agreement, and the relationship between Nitronex and IR in general, entailed the transfer of technology from Nitronex, the developer of the technology and the licensee, to IR, the licensor. The flow of information, therefore, is the opposite of what is required for a finding of an implied negative covenant. The Court thus finds that the License Agreement did not include an implied negative covenant that plaintiffs would not exceed the scope of the license, and therefore, the Court further concludes that defendants are not entitled to a breach of contract remedy.

The Court is not persuaded by defendants' argument that the implied covenant of good faith and fair dealing prohibits MACOM from selling products outside the scope of the license. See PI Opp'n at 8. Defendants are correct that "California law implies a covenant of good faith and fair dealing in every contract." Mundy v. Household Fin. Corp., 885 F.2d 542, 544 (9th Cir. 1989). The implied covenant of good faith and fair dealing imposes a burden that requires each party to a contract to "refrain from doing anything to injure the right of the other to receive the benefits of the agreement." San Jose Prod. Credit Ass'n v. Old Republic Life Ins. Co., 723 F.2d 700, 703 (9th Cir. 1984) (quoting Egan v. Mutual of Omaha Ins. Co., 24 Cal. 3d 809, 818 (1979)). However, an implied duty of good faith and fair dealing "is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract." McKnight v. Torres, 563 F.3d 890, 893 (9th Cir. 2009) (quoting Spinks v. Equity Residential Briarwood Apartments, 171 Cal. App. 4th 1004, 1033 (2009)). The License Agreement contains no express negative covenant on plaintiffs (i.e., Nitronex did not agree that it would not sell products that exceed the scope

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | October 31, 2016 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC.; ET AL. v. INFINEON TECHNOLOGIES AG; ET AL. | | |

of the license).  Therefore, the implied covenant of good faith and fair dealing cannot be used to create such an implied negative covenant on the part of plaintiffs.  Furthermore, to rely on the implied covenant of good faith and fair dealing to create an implied negative covenant on plaintiffs would contradict the consensus rule described above: courts may find an implied negative covenant to not exceed the grant of the license only where the license agreement contains a restriction on the field of use and where there was a technology transfer from the licensor to the licensee.

The Court finds that plaintiffs can likely establish that defendants were not entitled to a breach of contract remedy for MACOM's sale of GaN-on-SiC products.  Therefore, the Court further finds that plaintiffs can likely establish that defendants did not properly terminate the agreement.  Accordingly, the Court concludes that plaintiffs are likely to succeed on the merits of their third claim for relief, seeking a declaration that the License Agreement has not been terminated.

### 2.    Irreparable Harm

*** [REDACTED] ***

### 3.    Balance of Hardships

Plaintiffs contend that the balance of the hardships weighs in MACOM's favor and the status quo should be maintained, arguing that defendants will suffer less harm from the entry of an injunction than plaintiffs would suffer absent an injunction.  According to plaintiffs, Infineon likely has invested only a few months—since Infineon first announced the termination of the license in March 2016—in developing its own GaN-on-SI RF products, in contrast to the approximately 15 years that MACOM/Nitronex has invested.  Pls. PI at 24.  Plaintiffs' products are fully developed and available for purchase, whereas defendants' products are not yet on the market.  Id. at 25.  Second, GaN-on-Si is only a small part of defendants' business and will be minimally effected by the requested injunction.  Id.

Defendants in turn argue that balance of the hardships weighs in favor of defendants because the relief sought is "vague and overbroad."  PI Opp'n. at 24.  As described below, the Court orders plaintiffs to submit a second proposed order, with a confidential appendix attached that further specifies the conduct enjoined.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | October 31, 2016 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC.; ET AL. v. INFINEON TECHNOLOGIES AG; ET AL. | | |

Accordingly, the Court concludes that the balance of the hardships weighs in plaintiffs' favor.

### 4. Public Interest

Plaintiffs argue that the public interest at stake in this case is the enforcement of contracts as written. Pls. PI at 25; see Fairchild Semiconductor Corp. v. Third Dimension (3D) Semiconductor, Inc., 594 F. Supp. 2d 97, 111 (D. Me. 2009) ("the public interest favors enforcement of private agreements to license technology"). Defendants, in turn, argue that an injunction is not in the public interest because it would adversely affect the public's interest in encouraging competition. However, failure to provide injunctive relief would *also* hinder competition because plaintiffs would be chilled from producing and selling GaN-on-Si RF products if their license is effectively terminated. Moreover, as defendants themselves note, see PI Opp'n at 24 n.21, "[w]hen the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be 'at most a neutral factor in the analysis rather than one that favor[s] [granting or] denying the preliminary injunction.'" Stormans, Inc. v. Selecky, 586 F.3d 1109, 1138–39 (9th Cir. 2009) (quoting Bernhardt v. L.A. County, 339 F.3d 920, 931 (9th Cir. 2003)). The Court therefore concludes that the public interest in this case tips in favor of plaintiffs.

### 5. Scope of Injunctive Relief

Defendants contend that plaintiffs' proposed order on their motion for a preliminary injunction is improper because it is too broad. PI Opp'n. at 21–24. Plaintiffs' proposed order, which is not under seal, reads:

> The Court, having considered Plaintiffs MACOM Technology Solutions Holdings, Inc. and Nitronex, LLC's Motion for Preliminary Injunction, hereby GRANTS Plaintiffs' Motion and ORDERS that the 2010 License Agreement remains in full force and effect. Defendants Infineon Technologies Americas Corp. and Infineon AG, as well as well as their officers, agents, servants, employees, attorneys, and any party acting in concert or participation with any of them, are hereby enjoined from taking any action inconsistent with that License Agreement, including but not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | October 31, 2016 |
|---|---|---|---|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC.; ET AL. v. INFINEON TECHNOLOGIES AG; ET AL. | | |

limited to any development, marketing, or sales activities in MACOM's Exclusive Field.

Dkt. 73-3. Defendants argue that such an order would enjoin them from all possible breaches of the license agreement and would encompass several of plaintiffs' claims for relief, for which plaintiffs have not shown a likelihood of success on the merits. PI Opp'n at 21. For example, plaintiffs first, second, and fourth claims for relief relate to acts that purportedly constitute breach, including marketing products within plaintiffs' exclusive field, refusing to cooperate on enforcement, failing to pursue third party infringers, refusing to assign the licensed patents back to MACOM, and transferring licensed patents to a third party. Id. at 21–22.

In addition, defendants contend that plaintiffs' proposed order violates Federal Rule of Civil Procedure 65(d)(1). Rule 65(d)(1) provides: "Every order granting an injunction and every restraining order must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail--and not by referring to the complaint or other document--the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). According to defendants, the proposed order violates Rule 65(d)(1) because it refers to a separate document and fails to specify the exact conduct that is being enjoined because it prohibits "*any* action" inconsistent with the agreement. PI Opp'n at 23 (emphasis added). As a result, defendants fear that MACOM could move for contempt proceedings based on any of MACOM's various allegations of breach. Id.[15]

Plaintiffs contend that they referred to the License Agreement, instead of incorporating specific provisions of the agreement, because the proposed order is unsealed and defendants have taken the position that the entire License Agreement is confidential. Dkt. 126 at 23. So that Infineon Americas is not subject to contempt for unspecified conduct, the Court **ORDERS** plaintiffs to submit **within seven (7) days** a new proposed order on their motion for injunctive relief that includes a confidential appendix providing Infineon Americas with adequate notice of the acts prohibited by the

---

[15] At oral argument, counsel for Infineon Americas argued that a preliminary injunction should, at most, order that the License Agreement was not properly terminated. Counsel for Infineon Americas asserted that an injunction prohibiting any acts inconsistent with the License Agreement would be too indefinite because the parties disagree as to what conduct would violate the license agreement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES – GENERAL | | | '**O**' |
|---|---|---|---|
| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | October 31, 2016 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC.; ET AL. v. INFINEON TECHNOLOGIES AG; ET AL. | | |

injunction.  See Henry Hope X-Ray Prod., Inc. v. Marron Carrel, Inc., 674 F.2d 1336, 1343 (9th Cir. 1982) (finding that the district court did not err by attaching to its injunction a confidential appendix, transmitted only to the parties, and concluding that the sealed appendix was an "eminently sensible expedient").[16]

### 6.    Summary

For the reasons stated, the Court concludes that plaintiffs have established that they are likely to succeed on the merits with respect to their third claim for relief against Infineon Americas, that they are likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in their favor, and that an injunction is in the public interest.  Accordingly, plaintiffs' motion for a preliminary injunction is **GRANTED** as against Infineon Americas.  The Court **ORDERS** that, pending trial, Infineon Americas not take any action inconsistent with existence of a valid License Agreement.  The Court further **ORDERS** plaintiffs to submit within seven (7) days a new proposed order setting out with greater specificity any further injunctive relief plaintiffs seek with respect to their third claim for relief as against Infineon Americas.

The Court will hear argument regarding the parties' positions with regard to posting a bond, as well the amount of any such bond.

## VII.   CONCLUSION

In accordance with the foregoing:

The Court **DENIES** Infineon AG's motion to dismiss plaintiffs' FAC for lack of personal jurisdiction;

The Court **GRANTS** without prejudice Infineon AG's motion to dismiss plaintiffs' first, second, third, fourth, fifth, and seventh claims for relief as against Infineon

---

[16] Contrary to defendants' contention, plaintiffs need not specify in their new proposed order which specific products defendants are developing in violation of MACOM's patent license, see PI Opp'n at 23 n.20, because—as described above— plaintiffs do not seek a declaration that defendants are infringing on particular patents.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | October 31, 2016 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC.; ET AL. v. INFINEON TECHNOLOGIES AG; ET AL. | | |

AG for lack of subject matter jurisdiction and, to the extent Rule 12(b)(6) is applicable, for failure to state a claim;

The Court **GRANTS** without prejudice Infineon America's motion to dismiss plaintiffs' fifth claim for relief—on both 12(b)(1) and 12(b)(6) grounds—to the extent the claim relies on unidentified products. However, the Court otherwise **DENIES** Infineon Americas' motion to dismiss plaintiffs' fifth claim for relief;

The Court **DENIES** Infineon AG's motion to dismiss plaintiffs' eighth claim for relief for failure to state a claim;

The Court **DENIES** Infineon Americas' motion to dismiss plaintiffs' second claim for relief for failure to state a claim;

The Court **GRANTS** plaintiffs' motion for a preliminary injunction as against Infineon Americas and **ORDERS** that, pending trial, Infineon Americas not take any action inconsistent with existence of a valid License Agreement. The Court further **ORDERS** plaintiffs to submit within seven (7) days a new proposed order setting out with greater specificity, in a sealed appendix, any further injunctive relief plaintiffs seek with respect to their third claim for relief as against Infineon Americas.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |