UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL     'O'

| | | | |
|---|---|---|---|
| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | February 28, 2017 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL. v. INFINEON TECHNOLOGIES AG ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**     (IN CHAMBERS) - DEFENDANT INFINEON TECHNOLOGIES AMERICAS CORPORATION'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT (Dkt. 186, filed December 30, 2016)

DEFENDANT INFINEON TECHNOLOGIES AG'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT (Dkt. 187, filed December 30, 2016)

## I. INTRODUCTION

On April 26, 2016, plaintiffs MACOM Technology Solutions Holdings, Inc. ("MACOM"), and Nitronex, LLC filed the instant action against defendants Infineon Technologies AG ("AG") and Infineon Technologies Americas Corp. ("Americas"). Dkt. 1. The gravamen of plaintiffs' complaint is that defendants breached the intellectual property purchase agreement and the license agreement entered into in 2010 by Nitronex Corporation (the predecessor-in-interest to MACOM) and International Rectifier Corporation (the predecessor-in-interest to Americas).[1]

In their first amended complaint ("FAC"), plaintiffs asserted eight claims for relief: (1) breach of contract for wrongful termination of a 2010 license agreement; (2) breach of contract for marketing and preparing for sale of products within plaintiffs' "exclusive field" under the terms of to the 2010 license agreement; (3) a declaration that the 2010 license agreement has not been terminated; (4) breach of the covenant of good faith and

---

[1] On February 13, 2014, MACOM announced its acquisition of Nitronex; Nitronex became a wholly-owned subsidiary of MACOM. Dkt. 170 ¶ 101.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      'O'

| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | February 28, 2017 |
|---|---|---|---|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL. v. INFINEON TECHNOLOGIES AG ET AL. | | |

fair dealing implied in the 2010 license and intellectual property ("IP") purchase agreements; (5) a declaration of non-infringement; (6) breach of the 2010 intellectual IP purchase agreement; (7) a declaration that defendants may not transfer to a third party the patents covered by the 2010 agreements without MACOM's consent; and (8) if AG is not subject to plaintiffs' breach of contract claims, intentional interference with contractual relations against AG. Dkt. 65 ("FAC").

On October 31, 2016, the Court issued an order in which the Court: (a) denied AG's motion to dismiss plaintiffs' FAC to the extent AG argued that the Court lacked personal jurisdiction; (b) granted without prejudice AG's motion to dismiss plaintiffs' first, second, third, fourth, fifth, and seventh claims for relief; (c) granted without prejudice Americas' motion to dismiss plaintiffs' fifth claim for relief to the extent the claim relied on unidentified products; (d) otherwise denied Americas' motion to dismiss plaintiffs' fifth claim for relief; (e) denied AG's motion to dismiss plaintiffs' eighth claim for relief; and (f) denied Americas' motion to dismiss plaintiffs' second claim for relief. Dkt. 140 ("October Order"). In addition, the Court granted plaintiffs' request for a preliminary injunction against Americas and directed plaintiffs to submit a proposed order detailing the injunctive relief plaintiffs sought. Id.

On November 16, 2016, the Court issued a proposed injunction and requested that the parties serve any objections. Dkt. 158. After receiving briefing on the Court's proposed order, the Court issued a preliminary injunction against Americas on December 7, 2016. Dkt. 177 ("Preliminary Injunction"). On January 3, 2017, Americas appealed to the Federal Circuit Court of Appeals this Court's order granting plaintiffs' motion for a preliminary injunction. Dkt. 193.

On November 28, 2016, plaintiffs filed the operative second amended complaint. Dkt. 170 ("SAC"). The SAC conforms to the October Order in that plaintiffs assert their first, second, third, fourth, fifth, and seventh claims for relief only as against Americas.[2] With respect to plaintiffs' first, second, and sixth claims (which relate to Americas' alleged breach of contract), plaintiffs newly assert a request for alternative relief based on

---

[2] Plaintiffs reserve the right to further amend the complaint to add AG as a party to the contract and declaratory judgment claims should facts discovered later show that AG is an appropriate party to such claims. SAC at 1 n.1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | February 28, 2017 |
|---|---|---|---|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL. v. INFINEON TECHNOLOGIES AG ET AL. | | |

rescission of the 2010 license agreement and 2010 IP purchase agreement. SAC ¶¶ 176, 187, 224; id. at 58 (prayer for relief).

On December 30, 2016, Americas filed a motion to dismiss plaintiffs' second and fifth claims for relief, along with plaintiffs' contingent claims for the relief based on rescission. Dkt. 186 ("Americas MTD"). MACOM filed its opposition to Americas' motion to dismiss on February 1, 2017, dkt. 228 ("Opp'n to Americas"), and Americas filed its reply on February 13, 2017, dkt. 236 ("Americas Reply").

Also on December 30, 2016, AG filed a motion to dismiss plaintiffs' eighth claim (intentional interference with contractual relations) for failure to state a claim on which relief may be granted. Dkt. 187 ("AG MTD"). MACOM filed its opposition to AG's motion to dismiss on January 27, 2017, dkt. 216, and AG filed its reply on February 20, 2017, dkt. 245.

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II. BACKGROUND

The Court and the parties are familiar with the facts of the case as alleged by plaintiffs. Nonetheless, the Court summarizes the facts alleged in the SAC and notes where the operative complaint substantively differs from the FAC.

Nitronex Corporation was formed in February 1999, and headquartered in Durham, North Carolina. SAC ¶ 40. Nitronex developed a semiconductor (material that conducts electrical current only under certain conditions) using gallium nitride ("GaN") to form the epitaxial layer of the semiconductor and silicon ("Si") to form the substrate (or wafer) for the semiconductor. Id. ¶¶ 41, 52–53. Nitronex used GaN semiconductors on silicon wafers to produce high-frequency radio frequency devices ("RF GaN-on-Si devices"). Id. ¶¶ 54–57. RF GaN-on-Si devices are used as part of, inter alia, light emitting diode ("LED") devices, id. ¶ 58, and cellular telephone base stations, id. ¶ 87. Nitronex has obtained more than 35 U.S. patents based on its work with gallium nitride. Id. ¶ 63.

In 2004, Nitronex and International Rectifier ("IR"), a company that produced power management products, entered into a license agreement and technology transfer agreement. Id. ¶¶ 67–70. The 2004 license agreement granted IR the right to practice

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | February 28, 2017 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL. v. INFINEON TECHNOLOGIES AG ET AL. | | |

certain Nitronex patents in power management, IR's field of use, and required Nitronex to transfer some of its GaN-on-Si technology to IR. Id. ¶ 71.

### A. The 2010 IP Purchase and License Agreements

In 2010, Nitronex and IR entered into an IP purchase agreement and new license agreement. Id. ¶ 78; dkt. 170-1 ("IP Purchase Agreement"). The IP Purchase Agreement assigns to IR 54 U.S. and international patents and applications and the right to file related applications and requires Nitronex and IR to work together to enforce the Nitronex Patents.[3] SAC ¶¶ 79–83; IP Purchase Agreement. Specifically, IR has the first and primary right to prosecute for an actual, potential or alleged infringement. SAC ¶ 80; IP Purchase Agreement § 4.02. If, after three months of receiving written notice of actual, potential, or alleged infringement IR has (1) failed to pursue the alleged infringer to desist the allegedly infringing activity, (2) not brought and diligently prosecuted an infringement action, and (3) not entered into a settlement agreement with respect to such alleged infringement, or if IR notifies Nitronex that IR has decided not pursue any of those three courses of conduct, Nitronex has the right to bring suit to enforce the patents against the alleged infringer. SAC ¶ 81; IP Purchase Agreement § 4.02. To enable Nitronex to prosecute for an infringement, IR agreed to assign the relevant patents to Nitronex. SAC ¶ 81; IP Purchase Agreement § 4.02.

The 2010 license agreement provides Nitronex a license to the Nitronex Patents, and a sole right to sublicense them. SAC ¶ 88; dkt. 170-2 ("License Agreement"). The License Agreement permits *only* Nitronex and IR to practice in certain parts of the "Field of Use" of GaN-on-Si RF devices. SAC ¶ 88; License Agreement. The License Agreement also provides Nitronex with the exclusive right to practice the Nitronex Patents, including as against IR, within Nitronex's "Exclusive Field." SAC ¶ 89; License Agreement. Nitronex's exclusive field includes most RF applications in the Field of Use, except those that operate solely below 100MHz in frequency, including cellular telephone infrastructure base stations and repeaters. SAC ¶¶ 89–90; License Agreement.

---

[3] Thirty-two U.S. patents and applications, along with related applications filed by IR and any patents that issued from these applications comprise the "Nitronex Patents." SAC ¶ 85.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | February 28, 2017 |
|---|---|---|---|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL. v. INFINEON TECHNOLOGIES AG ET AL. | | |

The License Agreement prohibits either party to the agreement from assigning, selling, or otherwise transferring an interest or obligation under the License Agreement without the consent of the other party. License Agreement § 12.12. Any assignment in violation of that provision is void. Id.

The License Agreement also includes a negative covenant with respect to IR: "IR itself may not directly or indirectly market, sell or service Products in the Exclusive Field and IR may not grant further licenses or sublicenses to any other party under the Licensed Patents to design, develop, make, have made, use, market, sell or service Products in the Field of Use." License Agreement § 2.1; SAC ¶ 91. The License Agreement does *not* include a negative covenant in which Nitronex promises to refrain from practicing the Nitronex Patents outside its fields of use. SAC ¶ 92. Nitronex and IR may terminate the License Agreement only for a material breach that is not cured within 30 days of receipt of written notice of such a breach. Id. ¶ 95; License Agreement § 7.1.

**B.  Acquisitions**

In June 2012, Nitronex was acquired by GaAs Labs and converted to a limited liability company and renamed Nitronex LLC. SAC ¶ 99. On February 13, 2014, MACOM announced the purchase of Nitronex, LLC from GaAs Labs and Nitronex LLC became a wholly-owned subsidiary of MACOM. Id. ¶ 101. MACOM, a semiconductor company that designs and manufactures devices including RF semiconductor products, acquired Nitronex to enter the market for GaN-on-Si devices. Id. ¶¶ 100, 102. Nitronex assigned some of its rights under the 2010 IP Purchase Agreement to MACOM and sublicensed its rights under the License Agreement to MACOM. Id. ¶ 104.

On August 20, 2014, Infineon AG, a German corporation, and IR announced that Infineon AG would acquire IR. Id. ¶ 106. Infineon AG stated in its press releases that it acquired IR in part to "expand[] its expertise in compound semi-conductors (Gallium Nitride on Silicone)" and described IR as a "an advanced manufacturer in Gallium Nitride on Silicon based power semiconductors." Id. ¶ 107. Infineon AG's acquisition of IR closed on January 13, 2015. Id. ¶ 109. IR changed its name to Infineon Technologies Americas Corp. and succeeded to IR's rights and obligations under the Nitronex-IR agreements, including the License and IP Purchase Agreements. Id. ¶ 17. Infineon Americas is a Delaware corporation with its headquarters and principal place of business at the former IR headquarters in El Segundo, California. Id. ¶ 13. Infineon Americas is a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL     'O'

| | | | |
|---|---|---|---|
| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | February 28, 2017 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL. v. INFINEON TECHNOLOGIES AG ET AL. | | |

wholly owned subsidiary of Infineon AG. Id. Plaintiffs refer to AG and Americas collectively as "Infineon." Id. at 1.

    C.    **Defendants' Alleged Misconduct**

    Plaintiffs allege that after Infineon AG acquired IR, Infineon AG attempted to disrupt or renegotiate the Nitronex-IR agreements. Id. ¶ 113. For example, plaintiffs allege that in January 2015, Infineon sent MACOM a letter complaining about an April 1, 2014 press release in which MACOM announced an agreement with a supplier of GaN-on-Si wafer for RF applications that included a license to MACOM's intellectual property rights. Id. ¶ 114. Infineon also sent a letter to MACOM's supplier complaining of the proliferation of IR's patented technology. Id. ¶ 116. Plaintiffs contend that this conduct was intended to chill MACOM's practice of its rights under the 2010 agreements, which permit Nitronex to sublicense the Nitronex Patents. Id. Plaintiffs also allege that Infineon largely refused to engage with MACOM in good faith with respect to the enforcement of the Nitronex Patents against third-party infringement. Id. ¶ 119.[4] According to plaintiffs, Infineon repeatedly attempted to renegotiate the License and IP Purchase Agreements such that MACOM would lose its exclusive rights in the radio frequency fields, even though MACOM repeatedly stated that it would not agree to any modifications to the agreements that would allow Infineon rights in MACOM's exclusive GaN-on-Si RF fields. Id. ¶ 120. Infineon AG attorneys participated in telephone conversations about the License and IP Purchase Agreements. Id. ¶ 121. Plaintiffs allege that in-house counsel for Infineon Americas indicated several times that decisions regarding patent matters were controlled by Infineon in Germany. Id.

    Also during these telephone calls, plaintiffs allege that Infineon representatives, including representatives from Infineon AG, stated that Infineon believed MACOM was infringing on unidentified Nitronex Patents by selling gallium nitride-on-silicon *carbide* ("GaN-on-SiC") devices. Id. ¶ 124. MACOM had been selling GaN-on-SiC products since 2011, before its acquisition of Nitronex. Id. ¶ 126. Plaintiffs believe that neither IR nor Infineon has ever previously or since claimed that any company selling GaN-on-SiC products infringes the Nitronex Patents. Id. ¶ 125. MACOM informed Infineon that its

---

    [4] However, the parties executed a common interest agreement in 2015 when MACOM and Infineon agreed to work together in connection with patent prosecution issues. SAC ¶ 28; see dkt. 170-3 ("Common Interest Agreement").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | February 28, 2017 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL. v. INFINEON TECHNOLOGIES AG ET AL. | | |

sales of GaN-on-SiC products were low in volume and revenue and that it was discontinuing GaN-on-SiC products because its third-party supplier informed MACOM that it could no longer supply the wafers necessary to manufacture GaN-on-SiC products. Id. ¶¶ 126–29.

In late 2015, Infineon informed MACOM that IR and/or Infineon was contemplating assigning some of the Nitronex Patents to an undisclosed third party and that it would proceed without MACOM's consent. Id. ¶¶ 130–31.

On January 15, May 19, May 25, June 10, June 17, and June 24, 2016, MACOM sent Infineon and IR letters notifying them that third parties were infringing fifteen of the Nitronex Patents.[5] Id. ¶ 134. MACOM deemed these letters notice of an actual, potential, or alleged infringement under the IP Purchase Agreement. Id. ¶ 136. Defendants failed to persuade the infringers to desist, pursue a claim of infringement, or enter into a settlement agreement with the third-party infringers within three months after receiving notice of the infringement. Id. ¶ 138. On April 15, August, 23, August 26, September 12, September 19, and September 26, 2016, MACOM wrote to Infineon with respect to defendants' failure to comply with their obligations under Section 4.02 of the IP Purchase Agreement and demanded that defendants assign the relevant patents back to MACOM so that MACOM had standing to bring suit against the infringing third parties.[6] Id. ¶ 139. Defendants have not assigned the relevant patents back to MACOM. Id. ¶ 140.

In a February 2, 2016 letter to MACOM, Infineon complained of MACOM's GaN-on-SiC sales and asserted that such sales were a material breach of the License Agreement that, if not remedied within 30 days, would allow Infineon to terminate that agreement. Id. ¶ 143. MACOM responded that Infineon's allegations were insufficiently specific because defendants did not identify any specific MACOM products that were infringing or any specific patents that were infringed. Id. ¶¶ 142, 145. MACOM further stated that MACOM's sales of GaN-on-SiC devices were de minimis and therefore could not constitute a material breach, and that MACOM's GaN-on-SiC products had been

---

[5] Plaintiffs' FAC referred only to the June 15, 2016 letter, which addressed five of the Nitronex Patents and one third-party infringer. FAC ¶ 134.

[6] Plaintiffs' FAC referred only to the August 15, 2016 letter. FAC ¶ 139.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | February 28, 2017 |
|---|---|---|---|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL. v. INFINEON TECHNOLOGIES AG ET AL. | | |

"end-of-lifed" because the supply of a necessary element had been cut off. Id. ¶ 145. In a letter dated March 22, 2016, Infineon purportedly terminated the License Agreement. Id. ¶ 147. In that same letter, Infineon for the first time identified the MACOM product that Infineon alleged to be infringing. Id.

Plaintiffs allege that Infineon's purported termination was without cause, done in bad faith, and pretextual. Id. ¶ 148. On information and belief, plaintiffs aver that Infineon AG directed Infineon Americas to terminate or controlled Infineon Americas' purported termination of the License Agreement. Id. ¶ 149.

MACOM responded to Infineon's purported termination letter on April 1, 2016, and stated that the termination was without basis and without effect. Id. ¶ 150. MACOM further asserted that it would continue to exercise its rights under the License Agreement. Id. MACOM continues to produce and offer to sell, or is "on the cusp of producing and/or offering to sell" GaN-on-Si products.[7] Id. ¶ 151. MACOM alleges that Infineon's termination of the License Agreement puts MACOM and its products at risk of infringement suit and puts MACOM's customers in fear of an infringement suit if they purchase and use MACOM's products. Id. ¶ 152.

After plaintiffs filed their original complaint, MACOM learned from its customers that Infineon has been promoting and marketing GaN-on-Si RF products for use in cellular base statute applications. Id. ¶ 157. MACOM contacted Infineon by letter in May 2016, to ask Infineon if it was designing, manufacturing, or sampling GAN-on-Si RF base station products, or if was discussing or demonstrating the use of such products with consumers or potential customers. Id. ¶ 158. Plaintiffs contend that Infineon's responses have not provided MACOM with the assurance it sought. Id. In an investor presentation released on July 14, 2016, Infineon stated that it has GaN-on-Si RF products in development for the cellular infrastructure market. Id. ¶ 160. Plaintiffs thus allege that Infineon has been promoting and/or marketing GaN-on-Si RF products for use in cellular

---

[7] In the FAC, plaintiffs listed 29 GaN-on-Si products that MACOM "continues to produce and offer to sell[.]" FAC ¶ 151. By contrast, in the SAC plaintiffs identify 52 GaN-on-Si products that MACOM "continues to produce and offer to sell, or is "*on the cusp* of producing and/or offering to sell." SAC ¶ 151 (emphasis added).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | February 28, 2017 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL. v. INFINEON TECHNOLOGIES AG ET AL. | | |

base station applications—activities that are within MACOM's exclusive field—in violation of the License Agreement. Id. ¶ 163–64.

As a result of the alleged conduct by defendants, plaintiffs filed the instant action.

## III.   LEGAL STANDARDS

### A.   Rule 12(b)(1)

A motion pursuant to Federal Rule of Civil Procedure Rule 12(b)(1) motion tests whether the court has subject matter jurisdiction to hear the claims alleged in the complaint. Fed. R. Civ. P. 12(b)(1). Such a motion may be "facial" or "factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). That is, a party mounting a Rule 12(b)(1) challenge to the court's jurisdiction may do so either on the face of the pleadings or by presenting extrinsic evidence for the court's consideration. See White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000); Thornhill Publishing co. v. General Tel. & Electronics, 594 F.2d 730, 733 (9th Cir. 1979).

Once a Rule 12(b)(1) motion has been raised, the burden is on the party asserting jurisdiction. Sopcak v. N. Mountain Helicopter Serv., 52 F.3d 817, 818 (9th Cir. 1995); Ass'n of Am. Med. Coll. v. United States, 217 F.3d 770, 778–79 (9th Cir. 2000). If jurisdiction is based on a federal question, the pleader must show that he has alleged a claim under federal law and that the claim is not frivolous. See Charles A. Wright & Arthur R. Miller, 5B Federal Practice and Procedure § 1350 (3d ed.). If jurisdiction is based on diversity of citizenship, the pleader must show real and complete diversity, and also that his asserted claim exceeds the requisite jurisdictional amount of $75,000. See id. When deciding a Rule 12(b)(1) motion, the court construes all factual disputes in favor of the non-moving party. See Dreier v. United States, 106 F.3d 844, 847 (9th Cir. 1996).

As a general rule, leave to amend a complaint that has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| | | | |
|---|---|---|---|
| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | February 28, 2017 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL. v. INFINEON TECHNOLOGIES AG ET AL. | | |

**B.    Rule 12(b)(6)**

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | February 28, 2017 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL. v. INFINEON TECHNOLOGIES AG ET AL. | | |

that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

Federal Rule of Civil Procedure 8(a) provides that a pleading stating a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to meet this standard, a claim for relief must be stated with "brevity, conciseness, and clarity." See Charles A. Wright & Arthur R. Miller, 5 Fed. Practice and Procedure § 1215 (3d ed.). "The Plaintiff must allege with at least some degree of particularity overt acts which Defendants engaged in that support the Plaintiff's claim." Jones v. Community Redevelopment Agency, 733 F.2d 646, 649 (9th Cir. 1984). The purpose of Rule 8(a) is to ensure that a complaint "fully sets forth who is being sued, for what relief, and on what theory, with enough detail to guide discovery." McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996).

### IV. Infineon Americas' Motion to Dismiss

#### A. Plaintiffs' Breach of Contract Claim for Marketing and Preparing for Sale GaN-on-Si Products

Americas requests that the Court dismiss plaintiffs' second claim for relief for failure to state a claim on which relief may be granted. Americas argues that: (1) plaintiffs provide no specific factual allegations as to the conduct of Americas, and instead allege conduct by "Infineon," which plaintiffs define to mean Americas and AG collectively; and (2) plaintiffs fail to plausibly plead that Americas encroached in its exclusive patent license. Americas MTD at 3–5. First, keeping in mind the liberal pleading standard of Rule 8, the Court finds that plaintiffs' allegations regarding "Infineon," which collectively refers to Americas and AG, are sufficient to plead that Americas participated in the alleged underlying conduct. With respect to Americas' second argument, the Court notes that Americas raised this argument in its first motion to dismiss. The SAC restates the FAC in all relevant respects. Therefore, for the reasons set forth in the Court's October Order, the Court concludes that plaintiffs need not plead the elements of patent infringement in order to allege breach of contract. Accordingly, the Court **DENIES** Americas' motion to dismiss plaintiffs' second claim for relief.

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | February 28, 2017 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL. v. INFINEON TECHNOLOGIES AG ET AL. | | |

### B. Plaintiffs' Claim for Declaratory Judgment for Non-Infringement

Americas argues that plaintiffs fail to establish a case or controversy to support their fifth claim for relief for four reasons. Americas MTD at 12. For the most part, the Court finds these arguments unpersuasive.

First, Americas argues that plaintiffs' allegations regarding "future products" do not establish an immediate and real controversy. Id. at 12–15. Plaintiffs allege in the SAC that they are "on the cusp of producing and/or offering to sell" certain GaN-on-Si products. SAC ¶ 152. Because plaintiffs do not allege facts regarding the timing of MACOM's release of future products or the design of those products, Americas contends that it is impossible to evaluate the immediacy or reality of plaintiffs' claims. Americas MTD at 14–15. Americas is correct that "although a party need not have engaged in the actual manufacture or sale of a potentially infringing product to obtain a declaratory judgment of non-infringement," in order to demonstrate an immediate and real controversy, "there must be a showing of meaningful preparation for making or using that product." Cat Tech LLC v. TubeMaster, Inc., 528 F.3d 871, 881 (Fed. Cir. 2008) (quotation marks omitted). Nonetheless, the Court concludes that plaintiffs' allegations that they are "on the cusp" of producing certain GaN-on-Si products are sufficient for pleading purposes. Whether specific GaN-on-Si products are in fact the proper subject of patent protection is better decided on a motion for summary judgment, when all the facts have been fully briefed.

Second, Americas contends that plaintiffs fail to plead facts showing an actual controversy as to whether MACOM's products infringe any of the licensed patents. Id. at 15–17. With respect to Americas' alleged course of conduct, the SAC restates the FAC in all relevant respects. Therefore, for the reasons set forth in the Court's October Order, the Court finds that defendants' course of conduct creates a reasonable apprehension that plaintiffs will face an infringement suit if they continue to produce GaN-on-Si RF products. Accordingly, the Court again concludes that plaintiffs adequately plead facts establishing an infringement controversy with respect to specifically identified GaN-on-Si products.

Third, Americas argues that plaintiffs improperly use a phrase which could entitle plaintiffs to open ended relief. Americas MTD at 19. Specifically, Americas objects to the italicized portion of the following sentence: "MACOM is entitled to a judgment

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | February 28, 2017 |
|---|---|---|---|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL. v. INFINEON TECHNOLOGIES AG ET AL. | | |

declaring that its activities in designing, testing, use, manufacture, having manufactured, offering for sale, selling, and/or importing MACOM's GaN-on-Si RF products, *including those identified above*," do not infringe the Nitronex Patents. Id.; see SAC ¶ 216. In its opposition, MACOM states that this language is a "relic of the First Amended Complaint that was inadvertently not deleted[.]" Opp'n to Americas at 22. Plaintiffs agree that it will not dispute that Paragraph 216 of the SAC is limited only to the products actually identified in Paragraph 151. The Court therefore **ORDERS** the phrase "including those identified above" stricken from Paragraph 216 the SAC.

Fourth, in its reply, Americas contends that plaintiffs' fifth claim for a declaratory judgment of non-infringement is duplicative of plaintiffs' third claim for a declaratory judgment that the termination of the License Agreement has no effect. Americas Reply at 21. Americas asserts that in plaintiffs' opposition, "MACOM concedes that its non-infringement claim is based entirely on its claim that the License Agreement remains in force, and not any technical characteristics of any of the products at issue." Id. As Americas notes, plaintiffs state that they seek "a declaration that *none* of [their] products can infringe because they are all covered by the 2010 License Agreement." Opp'n to Americas at 2–3. Plaintiffs also assert that they raise a "declaratory judgment claim for noninfringement based on the existence of a license that covers all" of their products. Id. at 17. Contrary to Americas' interpretation, the Court does not read these assertions to mean that plaintiffs' fifth and third claims for declaratory relief are duplicative. A declaration that the License Agreement has not been terminated (claim 3) is not the same as a declaration that the License Agreement covers the 52 products that plaintiffs identify (claim 5).

Accordingly, the Court **DENIES** Americas' motion to dismiss plaintiffs' fifth claim for relief.

### C. Plaintiffs' Request for the Alternative Relief of Rescission

In the SAC, plaintiffs for the first time request alternative relief with respect to their first, second, and sixth claims (which relate to Americas' alleged breach of contract) based on rescission of the License Agreement and the IP Purchase Agreement. SAC ¶¶ 176, 187, 224; id. at 58 (prayer for relief). In their opposition, plaintiffs clarify that if Americas succeeds in its argument that the License Agreement is anticompetitive, and therefore void, the proper remedy is rescission of the License Agreement and the IP

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | February 28, 2017 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL. v. INFINEON TECHNOLOGIES AG ET AL. | | |

Purchase Agreement and a return of the Nitronex Patents to MACOM. Opp'n to Americas at 23. Americas argues that plaintiffs' claims for rescission should be dismissed, or in the alternative stricken as irrelevant to the pleaded claims, because rescission is not a form of relief that a court can grant on a California contract. Americas MTD at 20. In addition, Americas contends that plaintiffs' request for rescission is premature and hypothetical, because Americas does not seek to void the License Agreement, but instead argues that plaintiffs' reading of Section 2.1 would render that *section* void. Americas Reply at 23.

    Americas is correct that the Court may not effectuate a rescission of a contract under California law.

> Before 1961, California recognized two methods by which a party to a contract could obtain rescissionary relief: (1) unilateral rescission, followed by an action to enforce the out-of-court rescission; or (2) an action for judicial rescission in which specific judicial relief is granted. In 1961, however, the Legislature abolished the action to obtain judicial rescission and left only an action to obtain relief based on a party effecting rescission. Consequently, any post-1961 rescission must necessarily be accomplished by a party to the contract.

Wong v. Stoler, 237 Cal. App. 4th 1375, 1385 (2015). Ordinarily, a party wishing to rescind a contract must "promptly upon discovering the facts which entitle him to rescind," do two things: "(a) [g]ive notice of rescission to the party as to whom he rescinds; and (b) [r]estore to the other party everything of value which he has received from him under the contract or offer to restore the same upon condition that the other party do likewise, unless the latter is unable or positively refuses to do so." Cal. Civ. Code § 1691. However, a party may also provide notice of rescission through its pleadings: "When notice of rescission has not otherwise been given or an offer to restore the benefits received under the contract has not otherwise been made, the service of a pleading in an action or proceeding that seeks relief based on rescission shall be deemed to be such notice or offer or both." Id. It is undisputed that plaintiffs have not given notice of rescission independent of the SAC.

    Americas argues that the SAC cannot fairly be read to effectuate a rescission and, even if plaintiffs had attempted to rescind by its pleading, the SAC provides no factual

Case 2:16-cv-02859-CAS-PLA   Document 271   Filed 02/28/17   Page 15 of 17   Page ID #:9031

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                                    **'O'**

| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | February 28, 2017 |
|---|---|---|---|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL. v. INFINEON TECHNOLOGIES AG ET AL. | | |

basis to justify rescission. Americas MTD at 21–22. However, plaintiffs contend that the SAC alleges facts upon which they are entitled to rescind. Opp'n to Americas at 24. California Civil Code § 1689 delineates the grounds on which a party may rescind a contract. Section 1689(b) states that "a party to a contract may rescind the contract . . . [i]f the consideration for the obligation of the rescinding party fails, in whole or in part, through the fault of the party as to whom he rescinds." Cal. Civ. Code § 1689(b). Plaintiffs argue that they have alleged that a significant part of the consideration for the IP Purchase Agreement—a license to the Nitronex Patents—has failed due to the purported termination of the License Agreement and Americas' refusal to abide by its enforcement and other obligations under the IP Purchase Agreement. Opp'n to Americas at 24.

Courts appear to disagree as to whether a pleading merely provides notice of rescission or may effectuate the rescission itself. Some courts have concluded that "a pleading seeking relief based upon rescission is one that alleges facts demonstrating a rescission has been effected—not merely facts that, if proved correct, would establish a legal basis to elect a rescission at some point in the future." Myerchin v. Family Benefits, Inc., 162 Cal. App. 4th 1526, 1533 (2008), disapproved of on other grounds by Vill. Northridge Homeowners Ass'n v. State Farm Fire & Cas. Co., 237 P.3d 598, 607 n.5 (Cal. 2010); Basco v. Toyota Motor Corp., No. 09-cv-6307-GHK-RZ, 2011 WL 13127547, at *2 n.2 (C.D. Cal. Apr. 12, 2011) (same). Alternatively, other courts permit the pleading itself to effectuate a rescission. For example, a district court concluded that a party had effectuated rescission because "(1) [it] had grounds to rescind the Policy and (2) [it] effected rescission by serving an answer and counterclaim pleading relief based on rescission." Wells Fargo Bank, N.A. v. Am. Nat. Ins. Co., No. 09-cv-01840-DDP-RZ, 2010 WL 8522163, at *6 (C.D. Cal. Aug. 4, 2010); see also Flagship W., LLC v. Excel Realty Partners, L.P., No. 1:02-cv-5200-OWW-DLB, 2011 WL 4005929, at *4 (E.D. Cal. Sept. 8, 2011) (concluding that the date on which plaintiffs served a pleading seeking relief based on rescission was the date of rescission). The Court is persuaded by this second line of cases, which it finds consistent with the plain language of California Civil Code § 1691. Section 1691 provides that notice—whether given by pleading or otherwise—is the proper means "to effect a rescission a party to the contract." Cal. Civ. Code § 1691. Accordingly, the Court finds that plaintiffs have adequately pleaded their claim for alternative relief based on rescission because: (a) plaintiffs have requested relief based on rescission; and (b) plaintiffs allegations demonstrate that they would have grounds for rescission should Americas' termination of the License Agreement have

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | February 28, 2017 |
|---|---|---|---|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL. v. INFINEON TECHNOLOGIES AG ET AL. | | |

effect. The Court therefore **DENIES** Americas' motion to dismiss plaintiffs' request for alternative relief based on rescission.

### V. Infineon AG's Motion to Dismiss Plaintiffs' Intentional Interference Claim

AG requests that the Court dismiss plaintiffs' claim for intentional interference with contractual relations for failure to state a claim on which relief may be granted. In particular, AG argues that the manager's privilege and financial interest privilege bar plaintiffs' claim for intentional interference with contractual relations. AG raised precisely this argument in its first motion to dismiss. See dkt. 99 at 20–25. The relevant allegations in the SAC are substantially the same as the allegations in the FAC. Therefore, for the reasons set forth in the Court's October Order, the Court finds that it cannot conclude at this stage that AG is entitled to the protection of the manager's privilege or the financial interest privilege. Accordingly, the Court **DENIES** AG's motion to dismiss plaintiffs' eighth claim for relief.

### V. CONCLUSION

In accordance with the foregoing:

The Court **DENIES** Americas' motion to dismiss plaintiffs' second claim for relief.

The Court **ORDERS** the phrase "including those identified above" stricken from Paragraph 216 the SAC.

The Court **DENIES** Americas' motion to dismiss plaintiffs' fifth claim for relief.

The Court **DENIES** Americas' motion to dismiss plaintiffs' request for alternative relief based on rescission.

The Court **DENIES** AG's motion to dismiss plaintiffs' eight claim for relief.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:16-CV-02859-CAS(PLAx) | Date | February 28, 2017 |
|---|---|---|---|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL. v. INFINEON TECHNOLOGIES AG ET AL. | | |

As a result, the Court orders Americas and AG to answer plaintiffs' SAC within **fourteen (14) days** of the date of this order.

IT IS SO ORDERED.

                                       00 : 00
Initials of Preparer      CMJ