# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL    'O'

| | |
|---|---|
| Case No. | 2:16-cv-02859-CAS (PLAx) |
| Date | August 2, 2017 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL. V. INFINEON TECHNOLOGIES AG ET AL. |

Present: The Honorable    **CHRISTINA A. SNYDER**

| Catherine Jeang | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:      Attorneys Present for Defendants:

Not Present      Not Present

**Proceedings:** (IN CHAMBERS) - PLAINTIFFS' MOTION TO STRIKE DEFENDANTS' FIFTH AFFIRMATIVE DEFENSE OF INVALIDITY (Filed July 3, 2017, dkt. 331)

The Court finds this motion appropriate for decision without oral argument. See Fed. R. Civ. P. 78; CD. Cal. L.R. 7–15. Accordingly, the hearing date of August 7, 2017 is vacated, and the matter is hereby taken under submission.

## I. INTRODUCTION

On April 26, 2016, plaintiffs MACOM Technology Solutions Holdings, Inc. and Nitronex, LLC (collectively, "MACOM") filed the instant action against defendants Infineon Technologies AG ("AG") and Infineon Technologies Americas Corp. ("Americas") (collectively, "Infineon"). Dkt. 1. The gravamen of MACOM's complaint is that Infineon breached an intellectual property purchase agreement and license agreement entered into in 2010 by Nitronex Corporation (the predecessor-in-interest to MACOM) and International Rectifier Corporation ("IR") (the predecessor-in-interest to Americas). The 2010 agreement assigned certain patents and patent applications to IR.

On November 28, 2016, plaintiffs filed the operative second amended complaint. Dkt. 170 ("SAC"). On March 24, 2017, AG filed an Answer. Dkt. 291. On June 19, 2017, Americas filed the operative Second Amended Answer. Dkt. 326. Both defendants assert several affirmative defenses, including, as relevant here, patent invalidity. See dkt. 291 at 39:21-26; dkt. 326 ¶ 261.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL     'O'

| | | | |
|---|---|---|---|
| Case No. | 2:16-cv-02859-CAS (PLAx) | Date | August 2, 2017 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL. V. INFINEON TECHNOLOGIES AG ET AL. | | |

On July 3, 2017, MACOM filed the instant motion to strike Infineon's invalidity defense from each defendant's answer. Dkt. 331. Infineon filed an opposition. Dkt. 352. MACOM filed a reply. Dkt. 340.

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II. BACKGROUND

The Court and parties are familiar with the substance of plaintiffs' allegations in the SAC. Accordingly, the Court will provide an abbreviated background here, as it relates to Infineon's affirmative defense.

In 2010, MACOM's predecessor-in-interest, Nitronex, and Infineon's predecessor-in-interest, IR, entered into an IP purchase agreement. SAC ¶ 78; dkt. 170-1 ("Purchase Agreement"). The Purchase Agreement assigns to IR 54 U.S. and international patents and applications. It also assigns the right to file related applications and requires Nitronex and IR to work together to enforce the Nitronex Patents.[1] SAC ¶¶ 79–83; Purchase Agreement.

IR has the first and primary right to prosecute for an actual, potential or alleged infringement. SAC ¶ 80; Purchase Agreement § 4.02. If, after three months of receiving written notice of actual, potential, or alleged infringement IR has (1) failed to pursue the alleged infringer to desist the allegedly infringing activity, (2) not brought and diligently prosecuted an infringement action, and (3) not entered into a settlement agreement with respect to such alleged infringement, or if IR notifies Nitronex that IR has decided not pursue any of those three courses of conduct, Nitronex has the right to bring suit to enforce the patents against the alleged infringer. SAC ¶ 81; Purchase Agreement § 4.02. To enable Nitronex to prosecute infringement, IR agreed that:

---

[1] Thirty-two U.S. patents and applications, along with related applications filed by IR and any patents that issued from these applications comprise the "Nitronex Patents." SAC ¶ 85.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL** 'O'

| Case No. | 2:16-cv-02859-CAS (PLAx) | Date | August 2, 2017 |
|---|---|---|---|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL. V. INFINEON TECHNOLOGIES AG ET AL. | | |

(i) Nitronex shall have the right to use and sue in IR's name and join IR as a party to such litigation and (ii) IR shall take any and all actions requested by Nitronex, at Nitronex's expense (which expense shall be reasonable and documented), to enable Nitronex to exercise its rights under this Section 4.02 (which actions may include, but shall not be limited to, assigning the relevant Transaction Patent(s) to Nitronex, granting Nitronex an exclusive license to the relevant Transaction Patent(s), or granting Nitronex power of attorney with respect to matters related to any such litigation to the extent, in each case, necessary to empower Nitronex to enforce the relevant Transaction Patent(s) against such alleged infringer).

Id.

As part of the Purchase Agreement, IR agreed to execute a license to Nitronex with respect to the Nitronex Patents. SAC ¶ 88; dkt. 170-2 ("License Agreement"). The License Agreement permits *only* Nitronex and IR to practice in certain parts of a defined "Field of Use." SAC ¶ 88; License Agreement. The License Agreement also provides Nitronex with the exclusive right to practice the Nitronex Patents, including as against IR, within Nitronex's "Exclusive Field." SAC ¶ 89; License Agreement. The License Agreement prohibits either party to the agreement from assigning, selling, or otherwise transferring an interest or obligation under the License Agreement without the consent of the other party. License Agreement § 12.12. Any assignment in violation of that provision is void. Id.

The License Agreement also includes a negative covenant with respect to IR: "IR itself may not directly or indirectly market, sell or service Products in the Exclusive Field and IR may not grant further licenses or sublicenses to any other party under the Licensed Patents to design, develop, make, have made, use, market, sell or service Products in the Field of Use." License Agreement § 2.1; SAC ¶ 91. The License Agreement does *not* include a negative covenant in which Nitronex promises to refrain from practicing the Nitronex Patents outside its fields of use. SAC ¶ 92.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:16-cv-02859-CAS (PLAx) | Date | August 2, 2017 |
|---|---|---|---|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL. V. INFINEON TECHNOLOGIES AG ET AL. | | |

## III. LEGAL STANDARD

A motion to strike material from a pleading is made pursuant to Federal Rule of Civil Procedure 12(f). Under Rule 12(f), the Court may strike from a pleading any "insufficient defense" or any material that is "redundant, immaterial, impertinent or scandalous." The essential function of a Rule 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993). A motion to strike is a matter of the district court's discretion. Griffin v. Gomez, No. 98-cv-21038-JW, 2010 WL 4704448, at *4 (N.D. Cal. Nov. 12, 2010).

Because of "the limited importance of pleadings in federal practice," motions to strike pursuant to Rule 12(f) are disfavored. Bureerong v. Uvawas, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996). "Before a motion to strike is granted the court must be convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed." RDF Media Ltd. v. Fox Broad. Co., 372 F. Supp. 2d 556, 561 (C.D. Cal. 2005); see also Sagan v. Apple Computer, Inc., 874 F. Supp. 1072, 1079 (C.D. Cal. 1994) ("if the court is in doubt as to whether the challenged matter may raise an issue of fact or law, the motion to strike should be denied and the sufficiency of the allegations left for adjudication on the merits.").

## IV. DISCUSSION

MACOM contends that Infineon's affirmative defense of patent invalidity should be stricken pursuant to the doctrine of assignee estoppel. Assignee estoppel is an equitable doctrine based in contract law that precludes an assignee of a patent from later asserting that the patent is invalid. According to MACOM, because the Purchase Agreement assigned the Nitronex Patents to Infineon's predecessor-in-interest, Infineon cannot now assert that those same patents are invalid.

As an initial matter, "the 'legal doctrine of assignee estoppel' is not exactly a jurisprudential fixture." Sybron Transition Corp. v. Nixon, Hargrave, Devans & Doyle, 770 F.Supp. 803, 810 (W.D.N.Y. 1991). Indeed, much of the parties' briefing here is directed at whether Lear, Inc. v. Adkins, 395 U.S. 653, 656 (1969), abolished the doctrine

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-02859-CAS (PLAx) | Date | August 2, 2017 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL. V. INFINEON TECHNOLOGIES AG ET AL. | | |

altogether. In Lear, the Court examined whether a licensee could challenge the validity of the licensed-patents. Prior to Lear, courts sought to balance the competing demands of contract law and federal law. "On the one hand, the law of contracts forbids a purchaser to repudiate his promises simply because he later becomes dissatisfied with the bargain he has made. On the other hand, federal law requires, that all ideas in general circulation be dedicated to the common good unless they are protected by a valid patent." Id. at 668. However, preceding attempts to balance these competing values had been "a failure." Id. Thus, the Court elected to weigh federal patent law considerations more heavily and abolish the doctrine of *licensee* estoppel, reasoning, in part, that:

> the equities of the licensor do not weigh very heavily when they are balanced against the important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain. Licensees may often be the only individuals with enough economic incentive to challenge the patentability of an inventor's discovery. If they are muzzled, the public may continually be required to pay tribute to would-be monopolists without need or justification. We think it plain that the technical requirements of contract doctrine must give way before the demands of the public interest in the typical situation involving the negotiation of a license after a patent has issued.

Id. at 670-71.

Since Lear, few courts have addressed the scope of assignee estoppel. Sybron, 770 F.Supp. at 810. However, at least one district court has declined to apply assignee estoppel in light of Lear and permitted a patent assignee to present an invalidity defense. Bull v. Logetronics, Inc., 323 F. Supp. 115, 129 (E.D. Va. 1971). Indeed, the core reasoning of Lear, that contract principles must sometimes give way to the public's interest in the development of ideas in the public domain has intuitive appeal in both contexts, depending upon the facts of the particular case at bar. Although Lear did not squarely address assignee estoppel as compared to licensee estoppel, "[t]he distinction between licensee estoppel and assignee estoppel [has not always been] logical." Coast Metals, Inc. v. Cape, No. 78-276, 1979 WL 25083, at *4 (D.N.J. Dec. 24, 1979). Thus, Justices White and Blackmun have observed that it is "arguably inconsistent" with Lear to prevent an assignee from challenging patent validity. See Brown Transp. Corp. v.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:16-cv-02859-CAS (PLAx) | Date | August 2, 2017 |
|---|---|---|---|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL. V. INFINEON TECHNOLOGIES AG ET AL. | | |

Atcon, Inc., 439 U.S. 1014, 1020 (1978) (dissenting from the denial of certiorari). The foregoing uncertainty about the state of the doctrine weighs against striking Infineon's invalidity defense.

Even where courts have distinguished Lear and applied assignee estoppel, they have often relied upon considerations that are less relevant here. For example, courts sometimes distinguish Lear by noting that an assignment, unlike a license, precludes the assignor from exacting "'tribute' until the patent rights are returned to him." Roberts v. Sears, Roebuck & Co., 573 F.2d 976, 982 (7th Cir. 1978); see also Sybron, 770 F. Supp. at 811 ("The assignor thus has nothing left, and has no legal basis to exact 'tribute' from the public."). Courts also note the inequity of permitting an assignee to obtain the benefits of their bargain while avoiding payment of due consideration. See Sybron, 770 F.Supp. at 811; Coast Metals, Inc. v. Cape, No. 78-cv-276, 1979 WL 25083, at *4 (D.N.J. Dec. 24, 1979) (assignee was "seeking to repudiate its agreement and avoid payments due the inventor"). However, unlike the assignments at issue in these cases, the assignment here did not leave MACOM with nothing. MACOM retains some rights to prosecute infringers as well as practice the Nitronex Patents in MACOM's exclusive field to the exclusion of others. Purchase Agreement § 4.02; License Agreement. Additionally, MACOM does not contend here that Infineon is asserting invalidity to avoid royalty payments or its obligations to pay consideration under the Purchase Agreement and Infineon avers that it has already satisfied all of its payment obligations. In light of the differences between this case and the handful of cases applying assignee estoppel, they are unpersuasive authority here.

Assuming arguendo that assignee estoppel remains good law and might preclude Infineon from asserting an invalidity defense here, the issue is not well suited to resolution at the pleading stage. "Whether estoppel should be applied in a particular case, the Federal Circuit has suggested, should be determined by balancing the equities." Baladevon, Inc. v. Abbott Labs., Inc., 871 F. Supp. 89, 95 (D. Mass. 1994). Thus, resolution of the doctrine may require the Court to weigh not only the equities of each parties' contentions about the Purchase Agreement and License Agreement, but also the circumstances under which those agreements were negotiated and evidence of each parties' performance. See e.g. Roberts v. Sears, Roebuck & Co., 573 F.2d 976, 982 (7th Cir. 1978) (concluding after a trial that the assignee had engaged in fraud and that "[t]here [was] no balance of equities between Sears and plaintiff in their contractual

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-02859-CAS (PLAx) | Date | August 2, 2017 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL. V. INFINEON TECHNOLOGIES AG ET AL. | | |

relations. For this court to employ the public interest in patent law to sanction Sears' conduct is unjustifiable. Certainly nothing in patent law requires this court to permit fraud to go unremedied."). The outcome of that balancing may turn upon factual issues that have not developed yet in this case. Cf. Sybron, 770 F. Supp. at 811 ("it is impossible to tell whether the Roberts Court would have prevented the assignee from attacking the patent had the assignor and assignee therein, as here, been playing on a more level field."); Baladevon, Inc. v. Abbott Labs., Inc., 871 F. Supp. 89, 96 (D. Mass. 1994) (granting motion for summary judgment on the basis of assignee estoppel based, in part, upon the parties' respective leverage during negotiations).

At the pleading stage, the Court is ill-situated to properly balance these equities as between MACOM and Americas. The Court is even less well-situated to balance the equities between MACOM and AG, which was not a party to the Purchase Agreement or License Agreement. Additionally, MACOM alleges rescission of the Purchase Agreement and License Agreement, "such that Plaintiffs retain title to the Nitronex Patents and Infineon has no rights to or under them." SAC ¶¶ 176, 224. If, as MACOM alleges, Infineon has *no rights* in the Nitronex Patents, then there may be little or no reason to preclude Infineon from asserting that the Nitronex Patents are invalid. In light of the foregoing, the question of the application of assignee estoppel is better deferred for resolution on a motion for summary judgment rather than decided at this stage in the litigation.

MACOM has not directed the Court to any case applying assignee estoppel at the pleading stage. Nor has MACOM directed the Court to any binding authority that requires application of assignee estoppel here. The only Federal Circuit case squarely discussing the application of assignee estoppel does not discuss Lear and ultimately held that assignee estoppel was inapplicable to the facts of that case. See Slip Track Sys., Inc. v. Metal Lite, Inc., 113 F. App'x 930, 933 (Fed. Cir. 2004) (affirming the denial of a motion in limine to preclude 50% assignee from offering evidence of invalidity). The absence of on-point or otherwise binding authority here cautions against granting MACOM's motion at the pleading stage. See S.E.C. v. Sands, 902 F. Supp. 1149, 1166 (C.D. Cal. 1995), aff'd sub nom. S.E.C. v. First Pac. Bancorp, 142 F.3d 1186 (9th Cir. 1998) ("Even when the defense under attack presents a purely legal question, courts are reluctant to determine disputed or substantial questions of law on a motion to strike."). As an equitable doctrine, application of assignee estoppel may turn upon equitable

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | |
|---|---|---|---|
| | CIVIL MINUTES – GENERAL | | 'O' |
| Case No. | 2:16-cv-02859-CAS (PLAx) | Date | August 2, 2017 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL. V. INFINEON TECHNOLOGIES AG ET AL. | | |

considerations that have not yet been developed. MACOM may ultimately prevail in its argument that Infineon should not be permitted to assert invalidity in this litigation, but the Court declines to rule that Infineon's invalidity defense is barred as a matter of law or that there are no circumstances in which it may become viable.

In light of the foregoing, MACOM's motion to strike is **DENIED**.

## V. CONCLUSION

MACOM's motion to strike is **DENIED**.

IT IS SO ORDERED.

|  | 00 | 00 |
|---|---|---|
| Initials of Preparer | | CMJ |