LINDA M. BURROW, Bar No. 194668
  lburrow@bsfllp.com
ALISON M. MACKENZIE, Bar No. 242280
  amackenzie@bsfllp.com
BOIES SCHILLER FLEXNER LLP
725 South Figueroa Street 31st Floor
Los Angeles, CA  90017-5524
Telephone:  213-629-9040 / Fax:  213-629-9022

DAVID G. WILLE (admitted *pro hac vice*)
  david.wille@bakerbotts.com
JEFFERY D. BAXTER (admitted *pro hac vice*)
  jeff.baxter@bakerbotts.com
BRIAN D. JOHNSTON (admitted *pro hac vice*)
  brian.johnston@bakerbotts.com
JAMES C. WILLIAMS (admitted *pro hac vice*)
  james.williams@bakerbotts.com
CHARLES YEH (admitted *pro hac vice*)
  charles.yeh@bakerbotts.com
BAKER BOTTS L.L.P.
2001 Ross Avenue, Suite 600
Dallas, TX 75201
Telephone:  214.953.6500 / Fax:  214.953.6503

Attorneys for Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. and NITRONEX, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>INFINEON TECHNOLOGIES AG, *et al.*,<br><br>Defendants. | Case No. CV 16-02859 CAS (PLAx)<br><br>**DEFENDANTS' NOTICE AND *EX PARTE* APPLICATION TO LIMIT THE NUMBER OF ASSERTED CLAIMS**<br><br>**Hon. Christina A. Snyder** |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Infineon Technologies AG ("Infineon AG") and Infineon Technologies Americas Corp. ("Infineon Americas") (collectively "Defendants") hereby apply on an *ex parte* basis for an order limiting the number of asserted claims. As the Court is aware, MACOM contends that Defendants have practiced patents owned by Infineon Americas in MACOM's "Exclusive Field" under the 2010 License Agreement. Currently, MACOM asserts the practice of 212 claims from 17 patents based on MACOM's supplemental interrogatory responses served on November 29th.[1] Prior to its latest interrogatory responses, MACOM had asserted the practice of 31 claims of five patents in connection with its motion for contempt. MACOM continues to try to multiply the proceedings even after representing that it understood that the Court did not "want 58 claims to be construed" and would not be happy having to do so. Ex. 5, 2017-08-07 Hearing Tr. at 6:2-6. An assertion of 212 claims and 17 patents is unreasonable in almost any case, but particularly unreasonable in this case where MACOM has repeatedly represented that the patents are foundational and will necessarily be infringed by any product one or more of Defendants ultimately design. The Court should require MACOM to limit the number of asserted claims to a reasonable number, here 10 claims, prior to the exchange of claim terms for claim construction.

Defendants agreed to expedite the production of discovery of "technical documents" in light of the deadlines relating to claim construction, e.g., the December 15, 2017 deadline to exchange terms for claims construction. As a result, Defendants expedited the production of technical documents beginning on

---

[1] MACOM presently asserts 17 patents and 212 claims as provided in MACOM's supplemental response to Interrogatory No. 2: U.S. Patent Nos. 7,352,015 (25 claims); 8,928,034 (13 claims); 8,937,335 (13 claims); 8,344,417 (11 claims); 8,592,862 (16 claims); 9,461,119 (8 claims); 8,105,921 (9 claims); 9,437,686 (11 claims); 7,247,889 (10 claims); 7,569,871 (5 claims); 8,946,765 (5 claims); 7,071,498 (17 claims); 9,437,687 (12 claims); 9,064,775 (15 claims); 6,611,002 (17 claims); 7,233,028 (12 claims); and EP1343927 B1/DE60128134 (13 Claims).

October 13, 2017 (Exhibit 3) and substantially completed the production on October 28, 2017 (Exhibit 4).  Defendants were hopeful that their expedited production of technical documents would result in a focused infringement allegation from MACOM with regard to which patents Defendants allegedly practiced.  Instead, MACOM asserted 212 claims from 17 patents in its supplemental response and did so with just over two weeks before the December 15 deadline to exchange a list of claim terms to be construed.  In connection with its contempt motion, MACOM asserted the practice of 31 claims of five patents.  Now, it has multiplied the proceedings roughly seven fold. Furthermore, MACOM has actually *added* claims from each of the patents identified in its Motion for Contempt.

As the Court is well aware, litigation of 212 patent claims and 17 patents will be extraordinarily expensive and time consuming.  Moreover, litigation of 212 patent claims and 17 patents will unreasonably and needlessly consume the resources of the Court in sorting through what would undoubtedly be voluminous claim construction briefing and evidence.  Litigation of 212 patent claims and 17 patents certainly does nothing to "secure the just, speedy, and inexpensive determination" of the parties' dispute in this matter. Fed. R. Civ. P. 1.

Defendants are further prejudiced by the unexpected and voluminous number of claims that MACOM now asserts, the vast majority of which MACOM is asserting for the first time in this litigation.  MACOM's inclusion of the multitude of previously unasserted claims only two weeks before the agreed upon December 15, 2017 deadline to exchange terms for claim construction prejudices Defendants' ability to make an adequate determination of which claim terms need to be construed to resolve the differences between the parties.  While the Court has set a status conference on February 7 to address claim construction issues, that is too late to limit the number of claims.  The parties will be put to the task of identifying terms for construction for 212 claims, gathering evidence for constructions of 212

claims, creating expert declarations for construction of 212 claims, searching for prior art and doing a validity analysis of 212 claims, preparing a technology tutorial addressing relevant technical background for 212 claims, and preparing a joint claim construction report. All of these tasks would be unnecessary for the vast majority of claims asserted by MACOM.

Defendants therefore request that the Court order MACOM to limit the number of asserted claims to 10 claims before proceeding with claim construction. The parties would then have ten days to determine the claim terms for construction.

Defendants filed an *ex parte* application rather than a regular motion due to the impending deadline to exchange a list of claim terms for construction and the waste of resources that attends even that exercise when 212 claims and 17 patents are at issue.

This *ex parte* application is made on this Notice; the accompanying memorandum of points and authorities, declaration and exhibits; all of the pleadings and other documents on file in this case; all other matters of which the Court may take judicial notice; and any further argument or evidence that may be received by the Court.

Defendants notified MACOM that Defendants intended to file this *ex parte* application and met and conferred with MACOM on December 4, 2017. MACOM indicated that it opposes this *ex parte* application.

Defendants hereby certify that they have complied with Local Rule 7-19 in connection with this *ex parte* application.

| | | |
|---|---|---|
| 1 | DATED: Dec. 5, 2017 | DAVID G. WILLE |
| 2 | | BAKER BOTTS LLP |

By    */s/ David G. Wille*
      David G. Wille
      Attorney for Defendants
      Infineon Technologies AG and Infineon
      Technologies Americas Corp.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. Introduction

MACOM has asserted 212 claims of 17 patents and left Defendants a little over a two weeks to understand their new allegations with respect to roughly 170 new claims and 12 new patents, do validity searching and analysis, and determine which claim terms in all 212 claims require construction. This imposes an undue burden on Defendants and prejudices its ability to defend against MACOM's allegations—to such an extent that requiring Defendants to do so may violate Due Process. The Federal Circuit has confirmed the authority of a district court to limit the number of patent claims asserted in litigation. Owing in part to the frequency that allegations in patent cases involve a "problematically excessive" number of patent claims, the Federal Circuit Advisory Council created a Model Order that, when entered, restricts Plaintiffs to assertion of a specific number of patent claims prior to claim construction. The Eastern District of Texas has adopted a modified version of the Model Order and other cases have cited it as authority when issuing orders limiting the number of claims a Plaintiff is permitted to assert. While the Model Order establishes default limits, it notes that a lower limit may be appropriate in some cases.

Here, a lower limit of ten claims is appropriate for several reasons. First, the time between MACOM's injection of over 170 new claims and 12 new patents into this litigation and the exchange of a list of claim terms for construction was two and a half weeks. There is hardly enough time for Defendants to analyze these infringement allegations and determine what claim terms need to be construed in such a short time frame. Second, MACOM has repeatedly contended in this litigation that the "Nitronex patents" are "foundational" and that one cannot make a GaN-on-Si RF transistor for base stations without them. If MACOM's contentions are accurate, it should not need 212 chances to prove infringement—ten should be more than enough if it is truly impossible to avoid infringement. Third, MACOM

has also contended that the "Nitronex patents" are pioneering and has represented to customers that only it can make GaN-on-Si RF power transistors due to its rights under these patents. Thus, invalidity should not be a concern for MACOM based upon its representations to the Court. For these and other reasons discussed below, Defendants request that the Court limit MACOM to the assertion of ten patent claims at this stage of the litigation.

**II.   This Court has the Power to Reduce the Number of Asserted Patent Claims**

A district court has the inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The Federal Circuit has expressly approved the practice of ordering the reduction of the number of asserted patent claims, recognizing that "[i]n complex cases . . . the district court 'needs to have broad discretion to administer the proceeding.'" *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1313 (Fed. Cir. 2011); *see also Stamps.com, Inc. v. Endicia, Inc.*, 437 F. App'x 897, 902-03 (Fed. Cir. 2011). District courts have routinely used this authority to focus the dispute to a set of representative claims. *See e.g., Elec. Power Grp., LLC v. Alstom, S.A.*, No. 12-CV-06365-JGB (RZx), 2014 WL 12770399, at *1 (C.D. Cal. Aug. 28, 2014) (finding that "[d]istrict courts possess the authority to limit patent claimants to a set of representative claims" and requiring a reduction prior to claim construction); *Thought, Inc. v. Oracle Corp.*, No. 12-CV-05601-WHO, 2013 WL 5587559, at *4 (N.D. Cal. Oct. 10, 2013) (recognizing the authority of district courts to limit the number of asserted patent claims and requiring the identification of a limited number of claims prior to claim construction); *Tech. Licensing Corp. v. Blackmagic Design Pty Ltd.*, No. 13-CV-05184-SBA (MEJ), 2015 WL 307256, at *2 (N.D. Cal. Jan. 22, 2015) (recognizing the authority of district courts to limit the number of

asserted patent claims and limiting the number of claims asserted) (Mag. J. James). Defendants request that this Court exercise its inherent authority to reduce the number of asserted claims to a reasonable number of claims.

### III. There is Authority For What Constitutes a Reasonable Number of Asserted Patent Claims

There is also authority for setting a particular number as a reasonable number of claims to assert. In July, 2013, the Advisory Council for the United States Court of Appeals for the Federal Circuit made specific recommendations for limiting the number of patent claims to a reasonable number in "A Model Order limiting Excess Patent Claims and Prior Art." Ex. 1, at pp. 7-10. The Advisory Committee's Model Order is preceded by a series of observations that (a) there is a consensus that the number of asserted patent claims is often excessive, (b) that an excessive number of claims results in an asymmetric burden on the responding party, (c) that every unnecessary asserted claim results in a myriad of other unnecessary case-management tasks. Ex. 1, at pp. 3-4. This case, where MACOM asserts infringement of 212 claims in 17 patents, illustrates the truth of those observations.

"Many courts have issued order limiting the number of claims and prior art references in patent cases on an ad hoc basis." Ex. 1, at p. 4. The Model Order recommended a more standardized approach. The Model Order adopts a tiered approach of limiting claims to a total of 32 claims after documents "sufficient to show the operation of the accused instrumentalities" have been produced and to a total of 16 claims after a court's claim construction order. Ex. 1, at pp. 8-9. The limits also included limiting the number of claims per patent to 10 and 5 at each respective stage. *Id.*

Shortly after the Model Order was issued, Courts began to use it as authority.[2] The Eastern District of Texas adopted in 2013 a modified version of the Model Order with the above discussed limits on the number of asserted claims. Exhibit 2. Other Courts have cited to the Model Order. *See, e.g.*, *Unwired Planet LLC v. Google Inc.*, No. 3:12-cv-0504-MMD, 2013 WL 5592896, at *2-3 (D. Nev. Oct. 10, 2013). Other courts have adopted similar limits to the Model Order in specific cases. *Oasis Research, LLC v. Adrive*, LLC, No. 4:10-CV-00435, 2011 WL 7272473, at *2 (E.D. Tex. Sept. 13, 2011) (limiting Plaintiff to assertion of 31 claims prior to Markman hearing); *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, 918 F. Supp. 2d 277, 284 (D. Del. 2013) (limiting Plaintiff to assertion of 30 claims prior to Markman hearing); *Blackmagic Design,* 2015 WL 307256, at *2-5 (in response to Defendant's argument that it would be unduly prejudicial to draft invalidity contentions for 65 claims and engage in the claim construction process for 145 claims, the court limited Plaintiff to assertion of 18 new claims and then to 10 claims total 30 days later); *Thought, Inc.*, 2013 WL 5587559 at *4 (ordering reduction to 32 asserted claims pre claim construction).

While Courts have ordered a limit on the number of claims asserted, prior to claim construction, that is similar to the limits proposed in the Model Order, the Model Order itself suggests that an appropriate limit may well be lower in particular cases. The Model Order encourages the parties to determine if lower limits are appropriate for a particular case. Ex. 1, at p. 6, n. 1. In the *Blackmagic Design* case cited above, a lower limit was adopted based upon the facts of that case. *Blackmagic Design*, 2015 WL 307256 at *2-5.

---

[2] The Model Order was originally on the Federal Circuit website and then removed with little comment. While it is speculation, issues could have been raised about the propriety of an appellate court endorsing a particular district court procedure outside of the boundaries of a decision of a particular case. Whatever the reasons for removal of the Model Order from the website, the Eastern District of Texas adopted a version of the Model Order and other courts have cited to it.

### IV. Defendants Request That This Court Order MACOM to Reduce the Number of Asserted Claims to Ten

Defendants are prejudiced by having to process over 170 newly asserted claims and 12 newly asserted patents in two weeks to identify claim terms for construction. Defendants would be prejudiced by having to litigate 212 asserted claims, only a handful of which will be asserted at trial. The Court would be prejudiced by having to construe claim terms for 212 claims. It is this kind of prejudice that lead to the Model Order.

Defendants contend that limits less than those imposed by the Model Order are appropriate in this case. As discussed above, the Model Order encourages the parties to determine if lower limits are appropriate for a particular case. Ex. 1, at p. 6, n. 1. Here, a lower limit is appropriate for multiple reasons. First, a lower limit is proper due to the short time between MACOM's amendment of its interrogatory answers that first raised 170 new claims and 12 new patents and the due date for serving a list of claim terms for construction. It is unreasonable and prejudicial for Defendants to have to absorb 170 new claims and 12 new patents and make a reasoned decision on what claim terms should be construed in such a short period of time.

Second, because of the context of MACOM's allegations in this case, a lesser number of claims should be ample to prove its case than in the average patent case. Often, there are multiple ways to build a device and achieve a particular result and the issue of infringement may be less clear to the Plaintiff patent owner as a result. But here, MACOM has continually told the Court that there is only one way to build a practical device—specifically by using the inventions claimed in the patents at issue. MACOM has repeatedly argued that the "Nitronex patents" are "foundational" and thus cannot be designed around. Dkt. 126, at p. 21. MACOM has also argued that the "Nitronex patents" must be used to make successful

5

products. Dkt. 72, at pp. 23-24. In fact, MACOM has gone so far as to contend that there are "three dozen foundational Nitronex patents." Dkt. 126, at p. 22.

MACOM's prior representations thus make this an appropriate case to require MACOM to reduce the number of asserted claims to ten right now. If these patents are truly "foundational" and must be used to make successful products, then surely ten shots at proving that is enough, if not overkill from an infringement perspective. According to MACOM, it has "three dozen foundational Nitronex patents" to choose from. If accurate, MACOM certainly should be able to succeed on an infringement claim with ten different opportunities to do so. This is especially true because MACOM has now had discovery of Defendants' technical documents relating to is internal development work.

Third, MACOM may argue that it needs to see Defendants' validity contentions before limiting the number of claims. Like the defendant in *Blackmagic Design,* however, Defendants would be prejudiced by the expense of having to analyze validity for 212 claims. The number of claims is so excessive here that limiting the number of claims prior to validity contentions is warranted. Moreover, MACOM's Senior Vice President and General Manager gave testimony that the Nitronex patents are "pioneering." Virk Decl., Dkt. 72-2, at ¶37. Thus, not only has MACOM represented to the Court that any product one or more of Defendants design must necessarily infringe the patents at issue, it has represented that the patents are valid. If the patents were invalid, then they obviously would not be "pioneering." If the patents are truly pioneering, then MACOM should have nothing to fear from an invalidity perspective. Moreover, MACOM still has ten shots to prove a claim is infringed that is not invalid. That should be an ample number of claims to avoid the risk of ten assertions of invalid claims when, according to MACOM, the patents are "pioneering." Surely MACOM has considered the validity of the "Nitronex patents" before representing to customers that it is the only entity capable of providing GaN-on-Si RF Power transistors for

base stations. Dkt. 72, at p. 22. It would not be credible for MACOM to contend that it needs to see Defendants' validity contentions to select ten patent claims to assert given its prior representations to both this Court and the marketplace with regard to these patents.

But even if the Court felt that ten claims was not enough with respect to the issue of invalidity, MACOM would still have a remedy. As courts have recognized, the plaintiff may later show good cause to assert additional claims where appropriate. *E.g., Masimo Corp.,* 918 F. Supp. 2d at 286.

Fourth, limiting the number of asserted claims to ten at this stage of the litigation is particularly appropriate in this case because MACOM cannot prove the required predicate acts necessary to find a violation of any of the asserted claims. As this Court is aware from the briefing on the motion for contempt, MACOM cannot show (a) that any "product" exists within the meaning of the 2010 License Agreement that could constitute a violation of the agreement, (b) that any prohibited act took place that constitutes practice of the patents (i.e. MACOM cannot show there has been a sale or offer for sale of any product), and/or (c) that any alleged prohibited act took place in the United States or any other country where MACOM has valid patent rights. It is wasteful to spend resources litigating the meaning of claim terms, the validity of patent claims, and their application to hypothetical future products when MACOM cannot even show a predicate act to make out a prima facie case that any patents were practiced in the first place.

Limiting the number of claims at this stage does not prejudice MACOM. Defendants produced the requested technical documents on an expedited schedule and MACOM spent over four weeks with those documents before asserting these 212 claims. MACOM also had expedited discovery in connection with its motion for contempt. Moreover, as set forth above, MACOM has contended that it has "three dozen foundational Nitronex patents" to choose from. Surely ten claims from those patents is enough to prove infringement if MACOM has accurately

7

represented the scope of the patents at issue to the Court. If MACOM cannot determine what claims it wishes to assert at this stage, then it is unclear at what time, if any, MACOM would limit the number of claims asserted. Now that MACOM has received the requested technical discovery, MACOM is in the best position to narrow the dispute, and the Court should order MACOM to take steps to do so and reduce number of claims asserted. *See In re Katz,* 639 F.3d at 1311 (finding that allocating the production burden to the claimant will benefit the decision-making process when claimant is in the best position to narrow the dispute). Additionally, limiting the number of asserted claims does not prevent the Court from augmenting the asserted claims based on a showing of good cause. Thus, MACOM is not prejudiced by a current limit on the number of claims it can assert.

MACOM is never going to assert 212 claims at trial, yet it wants to impose the expense of engaging in claim construction and validity analysis on Defendants and obscure which claims it truly intends to assert. This is wasteful of the resources of the parties as well as the Court. It is also unfair to Defendants given that MACOM has already had discovery of the technical documents of Defendants that were used to make infringement allegations. Rather than waiting for MACOM to choose a time in its strategic interest to reduce the number of claims asserted, Defendants ask the Court to order MACOM to limit the number of claims asserted now to a reasonable number—which should be ten given the facts of this case.

For the foregoing reasons, Defendants respectfully request that the Court grant this *ex parte* application and order MACOM to limit the number of asserted claims to ten claims by December 13 and that the parties exchange proposed terms for construction by December 22, as indicated in the attached proposed order.

8

DEFENDANTS' *EX PARTE* APPLICATION

Dated:  December 5, 2017     DAVID G. WILLE
                             BAKER BOTTS LLP


                             By: /s/ *David G. Wille*
                                 David G. Wille

                                 Attorney for Defendants
                                 Infineon Technologies AG and
                                 Infineon Technologies Americas Corp.

9