Lara J. Dueppen, Bar No. 259075
LDueppen@perkinscoie.com
PERKINS COIE LLP
1888 Century Park East, Suite 1700
Los Angeles, CA 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Amanda Tessar (admitted *pro hac vice*)
ATessar@perkinscoie.com
PERKINS COIE LLP
1900 Sixteenth Street, Suite 1400
Denver, CO 80202-5255
Telephone: 303.291.2300
Facsimile: 303.291.2400

Ramsey M. Al-Salam Bar No. 109506
RAlSalam@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.6835
Facsimile: 206.359.7385

**ATTORNEYS FOR PLAINTIFFS**
(Additional Counsel Listed on Signature Page)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC., a Delaware corporation, and NITRONEX, LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>INFINEON TECHNOLOGIES AG, a corporation organized under the laws of Germany, and INFINEON TECHNOLOGIES AMERICAS CORP., a Delaware corporation,<br><br>Defendants. | Case No. CV 16-02859 CAS (PLAx)<br><br>**MACOM'S OPPOSITION TO DEFENDANTS'** *EX PARTE* **APPLICATION TO LIMIT THE NUMBER OF ASSERTED CLAIMS** |

## I.  INTRODUCTION

Infineon's latest *ex parte* motion complains of a supposed problem that is entirely Infineon's own creation—not to mention one that the Court, anticipating that Infineon would want to have many claim terms construed, has already scheduled to resolve in February.  There is no "asymmetric burden" here that justifies radically narrowing the case now.  Infineon is practicing a host of patents in breach of its promise of an exclusive license to MACOM, and MACOM is entitled to present arguments regarding the full scope of Infineon's breach, no matter how much Infineon regrets demanding that MACOM prove that its designs practice the Nitronex Patents and no matter how much would Infineon now prefers to minimize its own wrongdoing.  Infineon's *ex parte* motion should be denied.

## II.  FACTUAL BACKGROUND

This is ***not*** a traditional patent case.  Infineon—not MACOM—owns and has exclusively licensed to MACOM pioneering Nitronex Patents in a particular field, and Infineon falsely purported to terminate the license at the same time that it made public that it would be entering MACOM's exclusive field.  Infineon is liable for breach of contract (*i.e.*, not patent infringement) if it is practicing Nitronex Patents in MACOM's exclusive field.

Further, the Nitronex Patents are foundational GaN-on-Si patents, meaning that there is no realistic way for Infineon or anyone else to make and sell GaN-on-Si products that do not practice one or more of those patents.  *See, e.g.*, Dkt. 376-2 at ¶¶87-89 (Schubert Dec.).  In other words, if the Nitronex Patents were directed to peanut butter and jelly sandwiches, the patents would claim every type of bread, peanut butter, and jelly from which such a sandwich could be made, as well as every method for making the sandwich.  Although every PB&J sandwich might not infringe every patent, it is not possible to make a PB&J sandwich without practicing at least one, and probably many, of the patents.

That has been MACOM's position from the outset, so MACOM's view was and is that it is a waste of time to do a patent-by-patent analysis of Infineon's GaN-on-Si products. *See, e.g.*, Dkt. 126 at 20-21 (MACOM's PI Reply Brief); Dkt. 324 at 14-15 (Joint Rule 26(f) Report). That being said, if Infineon demands this exercise, it should be done completely and in a manner that illustrates the full extent of Infineon's breach of contract.

And, notably, Infineon *did* insist on engaging in this exercise. *See* Dkt. 324 at 16, 19-23 ("[T]o establish breach, MACOM must show that the alleged [Infineon] GaN-on-Si Products practice the Licensed patents."). Infineon took this position even though it has not proposed to the Court or MACOM a single design for GaN-on-Si products that could avoid all of the Nitronex Patents. MACOM has therefore been forced to review thousands of Infineon technical documents to prove that Infineon is practicing the Nitronex Patents.[1]

Due to Infineon's insistence that MACOM prove that Infineon is practicing the Nitronex Patents, the parties agreed to a schedule for MACOM to respond to the Infineon interrogatory that demands MACOM's contentions. *See* Keese Decl., ¶ 7; Ex. A at 9 (Interrogatory No. 2).[2] Notably (and indisputably), MACOM could

---

[1] As the owner of the patents, Infineon cannot "infringe" them; it can only "practice" them.

[2] That interrogatory demands that MACOM: "Identify each product that you contend Defendants have designed, developed, made, had made, used, offered to sell, sold, marketed, or serviced in the Exclusive Field as defined in the 2010 License Agreement, and, [] for each product, … state whether you contend that product practices any of the Licensed Patents, *identify each practiced claim of the Licensed Patents and explain the factual basis for your contention for each claim by providing a claim chart showing specifically where and how you alleged each element of the claims is found within the product*, including the following information: identification of specific pages of documents sufficient to show that each element is found or not found within the product …." (Emphasis added).

Exhibits to the Declaration of Daniel T. Keese ("Keese Decl."), submitted concurrently with this opposition, are referred to as "Ex. A," "Ex. B," "Ex. C," etc., above.

- 2 -

not provide those contentions until Infineon produced the technical documents that evidence its product designs.  Knowing that, and knowing that the case schedule already required the parties to exchange lists of claim terms for construction on December 15th, Infineon nevertheless agreed that MACOM would provide its contentions approximately four weeks after Infineon's completion of its document production.  *See* Keese Decl., ¶7.

Infineon controlled the timing of its document production, and Infineon chose to backload its production, not completing it until October 28th at 11:58 p.m. CT (*see* Willie Dec., Ex. 4), at which time it provided MACOM with over 7,000 documents (totaling approximately 49,000 pages).  This supplemented an earlier production of technical documents of less than 1,000 pages that Infineon had made on October 13, 2017.  *See id*. at Ex. 3.

MACOM laboriously reviewed these documents in short order (and at significant expense), and the documents confirmed exactly what MACOM has said all along:  Infineon's products practice many of the Nitronex Patent claims.  Then MACOM did exactly what Infineon's interrogatory demanded:  MACOM identified—in chart form—the patent claims that it contends Infineon is practicing.

Infineon now complains that MACOM has identified an "excessive" number of patents and claims, but it is hardly MACOM's fault that Infineon's breach of the contract has been so extensive.  Nor is it MACOM's fault that Infineon demanded that MACOM engage in this exercise in the first instance.

### III. INFINEON IS NOT UNFAIRLY PREJUDICED BY HAVING TO IDENTIFY CLAIMS FOR CONSTRUCTION BY DECEMBER 15TH

Any rational litigant in Infineon's position, faced with the backdrop above, would simply stipulate that it is practicing the Nitronex Patents, in favor of focusing on better arguments (although, admittedly, Infineon may not have any better arguments here).  Instead, Infineon complains about the prejudice *it* will supposedly suffer because MACOM has fully answered the interrogatory that Infineon served

and that MACOM did so on the time frame to which Infineon agreed. Infineon takes this position even though all that it must do by December 15th provide MACOM with a list of claim terms for potential construction.

For absolute clarity, Infineon does not need to provide proposed constructions to MACOM until January 5, 2018. *See* Dkt. 409 (Scheduling Order). Instead, the only thing to be exchanged on December 15th is a ***list*** of claim terms. *Id.* The parties do not even have to provide a report to the Court that lays out the terms for construction until January 19th. *Id.*

Notably, MACOM does ***not*** anticipate submitting many, if any, claim terms for construction. MACOM believes that the plain and ordinary meaning should be applied to the Nitronex Patents in most or all cases. Even Infineon itself has not explained why the Court would need to address an unmanageable list of terms.

In short, there is no emergency here. If MACOM can prepare claim charts for the full set of patents and asserted claims in four and a half weeks, two and half weeks is certainly adequate time for Infineon to review those charts and identify claim terms for potential construction (to the extent any even need construction).

### IV. INFINEON'S ARGUMENTS ABOUT INVALIDITY ARE DIVORCED FROM THE REALITIES OF THIS CASE

Infineon's arguments about supposed prejudice relating to invalidity contentions are a red herring because Infineon knows, or should know, that it will be ultimately barred from relying on invalidity as a defense to its breach. A patent owner cannot contract to grant a party an exclusive license and then, when wanting to breach its exclusive licensing obligations, claim they are invalid. This would frustrate the purposes of the entire contract.

Further, not only would this be inconsistent with its license, but some of the patents that MACOM has identified as being practiced by Infineon are patents that Infineon itself prosecuted to issuance and thus represented to the Patent Office cover patentable inventions. In particular, since its purchase of the Nitronex

Patents in 2010, Infineon has prosecuted Nitronex Patent applications (and children of those applications) that were pending at the time of the 2010 sale and newly filed since then, resulting in patents issuing as recently as October 2016, long after this case was filed. *See* Ex. B ('119 Patent, filed on Dec. 22, 2014, years after the 2010 transfer of the Nitronex Patents). Many of those Infineon (or IR)-prosecuted patents, such as the '119 Patent (Ex. B), the '686 Patent (Ex. C, filed on Dec. 22, 2014 and issued on Sep. 6, 2016), and the '687 Patent (Ex. D, filed on June 18, 2015 and issued on Sep. 6, 2016), ***are the very patents that Infineon is itself now practicing***. *See* Ex. A at 12 (MACOM's Supplemental Interrogatory Response). To suggest that Infineon can represent to the Patent Office that such patents are valid, while simultaneously insisting here that those and related Nitronex Patents are invalid, or to suggest that Infineon stands in the shoes of ordinary accused infringer, is not tenable.

Additionally, as MACOM has argued, Infineon is estopped from asserting invalidity defenses. Dkt. 331 at 1. Although the Court denied MACOM's motion to strike those defenses, ruling that it was premature to resolve this issue at the pleading stage, Infineon knows, or should know, that it will be ultimately precluded from using invalidity as a defense based on the doctrine of assignee estoppel. *See* Dkt. 354 at 7-8 ("MACOM may ultimately prevail in its argument that Infineon should not be permitted to assert invalidity in this litigation….").

Accordingly, to the extent that Infineon insists on arguing its own patents are invalid, it is a burden it has placed on itself based on an unwinnable defense. Even then, however, December 15th is ***not*** the deadline for providing those contentions, as Infineon's *ex parte* application might otherwise imply. Indeed, there is no deadline for invalidity contentions currently in the schedule, and MACOM will agree to a deadline after February 7, 2017, thereby mitigating any alleged prejudice Infineon might "suffer" from having to prepare invalidity contentions for its own patents before knowing whether or how the case will be narrowed.

## V. MACOM IS PREJUDICED IF INFINEON'S MOTION IS GRANTED

It is unfair to MACOM that Infineon repeatedly attempts to treat this case as a traditional patent infringement case. This is, instead, a breach of contract case that relates to whether Infineon violated its promise to MACOM of exclusivity for the Nitronex Patents. The evidence so far establishes that Infineon has done so in spades. The extent of Infineon's wrongdoing should not be permitted to be minimized or artificially undercut by limiting MACOM to only a short list of patent claims that can be presented. Infineon has not cited a single authority to the contrary, relying only on patent cases in support of its arguments.

Moreover, it would be particularly inequitable to require MACOM to narrow the case at this stage, given all the dynamics in play with validity arguments (discussed above), and where there is substantial uncertainty as to whether or how Infineon will attempt to invalidate its own patents (or which ones that it will target).

In short, at this stage of the case, it does not make sense to limit MACOM's assertions, especially to a small number of asserted claims, as Infineon proposes.

## VI. THE COURT HAS ALREADY PROVIDED A PROCEDURE FOR RESOLUTION OF THE ISSUES RAISED BY INFINEON'S MOTION

This Court anticipated that there might be a dispute about how many claim terms need be construed and has scheduled a special hearing to resolve any such dispute at 12:00 pm PT on February 7th. *See* Ex. E (Aug. 7, 2017 Tr.) at 6:2-8:18 (the Court stating it would set a status conference to "discuss whether we're dealing with more claims than necessary"). The Court specifically contemplated that, ***after*** the parties submitted the joint report on disputed and agreed claim constructions, "if we decide you have more claims to be construed than I think are necessary, then you can amend the report." *Id.* at 7:14-16. In short, the scheduled hearing will take place, by the Court's design, ***before*** Infineon's opening claim construction brief is due, so—to the extent that this Court deems that Infineon must narrow the list of terms for construction (or MACOM must narrow the number of total claims in

dispute)—Infineon will have more than adequate time to adjust.

Infineon's counsel agreed in August that the Court's plan "would make sense." *Id.* at 7:5. There is no reason to deviate now from the Court's plan.

**VII. INFINEON'S PROPOSAL GOES TOO FAR**

To the extent that the Court is inclined to grant Infineon's request, which MACOM submits that it should not do at this stage, Infineon's proposal as to how the case should be narrowed is overly aggressive and prejudicial to MACOM. The model rules that Infineon cites are those that apply in traditional patent cases, which is not what this case is. Even if this were a traditional patent case, however, those model rules would allow for dramatically *more* claims than Infineon proposes here.

The Federal Circuit model order cited by Defendants, for instance, contains a limitation of 32 claims, even setting aside that the Federal Circuit has since withdrawn that order. Likewise, the cited Eastern District of Texas allows 32 claims to proceed to claim construction, not 10.

Similarly, all of the cases that Infineon cites allowed for a much larger number of asserted claims than the ten that Infineon proposes. *See In re Katz Interactive Call Processing Pat. Litig.,* 639 F.3d 1303, 1309 (Fed. Cir. 2011) (approving district court's initially limit for patentee of 40 claims per defendant group, not to exceed a total of 64 claims); *Tech. Licensing Corp. v. Blackmagic Design Pty Ltd.*, No. 13-CV-05184, 2015 WL 307256, at *5 (N.D. Cal. Jan. 22, 2015) (allowing patentee to add 18 new asserted claims to the 80 already asserted); *Electric Power Grp., LLC v. Alstom, S.A.*, No. 12CV06365, 2014 WL 12770399, at *2 (C.D. Cal. Aug. 28, 2014) (allowing 16 claims to proceed for 3 asserted patents); *Masimo Corp. v. Philips Elecs. N.A. Corp.*, 918 F. Supp. 2d 277, 286 (D. Del. 2013) (30 claims permitted); *Thought, Inc. v. Oracle Corp.*, 12-CV-05601-WHO, 2013 WL 5587559, at *4 (N.D. Cal. Oct. 10, 2013) (32 claims permitted); *Unwired Planet LLC v. Google Inc.*, No. 3:12-CV-0504, 2013 WL 5592896, at *4 (D. Nev. Oct. 10, 2013) (55 claims permitted); *Oasis Research, LLC v. Adrive, LLC*, No.

4:10-CV-00435, 2011 WL 7272473, at *2 (E.D. Tex. Sept. 13, 2011) (31 claims permitted. Further, it is incorrect to suggest that the *Blackmagic* case involved an initially lower limit than the Federal Circuit Model Order. In that case, the patentee was moving to add additional claims to the 80 it had already asserted. 2015 WL 307256, at *2. It was these ***additional*** claims that were limited to 18 total, after the parties had already submitted contentions on the previous 80 claims. *Id.*

In short, Infineon cites ***no*** precedent for limiting the asserted claims to just ten. Infineon's approach would force MACOM, without the benefit of Infineon's invalidity positions, to pick and choose less than one claim per patent from the large number of patents that Infineon is practicing. Therefore, to the extent that the Court does require MACOM to narrow the list of claims at this early stage (which, again, MACOM submits is not appropriate at this stage), MACOM asks that the Court pick a more reasonable number than ten, and one that would allow MACOM to assert a minimum of three claims per patent, and that the Court also allow MACOM to add additional claims if Infineon is unexpectedly successful in its attempts to invalidate any of the claims on the narrowed list or if new evidence is discovered relating to Infineon's products and designs.

DATED: December 7, 2017     **PERKINS COIE LLP**

By:/s/ *Amanda Tessar*
    Lara J. Dueppen, Bar No. 259075
    LDueppen@perkinscoie.com
    PERKINS COIE LLP
    1888 Century Park East, Suite 1700
    Los Angeles, CA 90067-1721
    Telephone: 310.788.9900
    Facsimile: 310.788.3399

    Amanda Tessar (*pro hac vice*)
    ATessar@perkinscoie.com
    Elizabeth Banzhoff (*pro hac vice*)
    EBanzhoff @perkinscoie.com
    PERKINS COIE LLP

| | |
|---|---|
| 1 | 1900 Sixteenth Street, Suite 1400 |
| 2 | Denver, CO  80202-5255<br>Telephone:  303.291.2357<br>Facsimile:  303.291.2457 |
| 3 | |
| 4 | Ramsey M. Al-Salam Bar No. 109506<br>RAlSalam@perkinscoie.com |
| 5 | PERKINS COIE LLP<br>1201 Third Avenue, Suite 4900 |
| 6 | Seattle, WA 98101-3099<br>Telephone:  206.359.6835<br>Facsimile:  206.359.7385 |
| 7 | |
| 8 | Philip A. Morin, Bar No. 256864<br>PMorin@perkinscoie.com |
| 9 | PERKINS COIE LLP<br>11988 El Camino Real, Suite 350 |
| 10 | San Diego, CA  92130-2594<br>Telephone:  858.720.5700 |
| 11 | Facsimile:  858.720.5799 |
| 12 | Daniel T. Keese, Bar No. 280683 |
| 13 | DKeese@perkinscoie.com<br>PERKINS COIE LLP |
| 14 | 1120 N.W. Couch Street, 10th Floor<br>Portland, OR  97209-4128 |
| 15 | Telephone:  503.727.2000<br>Facsimile:  503.727.2222 |
| 16 | |
| 17 | Morgan Chu (State Bar No. 70446)<br>(mchu@irell.com) |
| 18 | Joseph M. Lipner (State Bar No. 155735)<br>(jlipner@irell.com) |
| 19 | Ellisen Turner (State Bar No. 224842)<br>(eturner@irell.com) |
| 20 | IRELL & MANELLA LLP |
| 21 | 1800 Avenue of the Stars, Suite 900<br>Los Angeles, CA 90067-4276 |
| 22 | Telephone:  310-277-1010<br>Facsimile:  310-203-7199 |
| 23 | |
| 24 | Nima Hefazi (State Bar No. 272816)<br>(nhefazi@irell.com) |
| 25 | IRELL & MANELLA LLP<br>840 Newport Center Drive, Suite 400 |
| 26 | Newport Beach, CA  92660<br>Telephone:  949-760-0991 |
| 27 | Facsimile:  949-760-5200 |
| 28 | **ATTORNEYS FOR PLAINTIFFS** |