
Amanda Tessar (*pro hac vice*)
ATessar@perkinscoie.com
PERKINS COIE LLP
1900 Sixteenth Street, Suite 1400
Denver, CO 80202-5255
Telephone: 303.291.2300
Facsimile: 303.291.2400

**ATTORNEY FOR PLAINTIFFS**
(Additional Counsel Listed On Signature Page)

DAVID G. WILLE (*pro hac vice*)
  david.wille@bakerbotts.com
BAKER BOTTS L.L.P.
2001 Ross Avenue, Suite 600
Dallas, TX 75201
Telephone: 214.953.6500 Fax: 214.953.6503

**ATTORNEY FOR DEFENDANTS**
(Additional Counsel Listed On Signature Page)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC., a Delaware corporation, and NITRONEX, LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>INFINEON TECHNOLOGIES AG, a corporation organized under the laws of Germany, and INFINEON TECHNOLOGIES AMERICAS CORP., a Delaware corporation, and,<br><br>Defendants. | Case No. CV16-02859-CAS (PLAx)<br><br>**JOINT REPORT REGARDING CLAIM CONSTRUCTION**<br><br>Hearing Date: February 7, 2018<br><br>Hearing Time: 12:00 P.M.<br>Courtroom: 8D<br><br>Complaint Filed: April 26, 2016<br>Discovery Cutoff: June 29, 2018<br>Pre-Trial Conference: Feb. 4, 2019<br>Trial Date: Feb. 26, 2019 |

Plaintiffs MACOM Technology Solutions Holdings, Inc. and Nitronex, LLC (collectively, "MACOM") and Defendants Infineon Technologies Americas Corp. and Infineon Technologies AG (collectively, "Defendants" or "Infineon") respectfully submit the following Joint Report Regarding Claim Construction.

## I. Introduction

The parties have agreed to one construction. MACOM additionally asks the Court to construe one other claim term, and Infineon seeks construction of fifteen other terms. The parties provide, in table format, the claim terms on which the parties have and have not reached agreement, along with proposed constructions. Additionally, MACOM argues that Defendants are estopped from arguing that terms of the Nitronex Patents are indefinite. Defendants have not responded to the substance of MACOM's estoppel arguments because Defendants argue that this joint report is not the proper procedure for MACOM to present those estoppel arguments.

## II. Estoppel

**MACOM's Position:**

The posture of this case is unusual. MACOM alleges that Infineon breached promises made to MACOM in an exclusive patent license agreement by practicing the patented inventions in MACOM's exclusive field. MACOM's predecessor assigned the underlying patents and applications to Infineon's predecessor in 2010. Infineon's predecessor, and then Infineon itself, continued to prosecute those pending, assigned applications—as well as new applications that Infineon filed based off them—many of which ultimately matured into patents. In the process of prosecuting those continuing applications, Infineon successfully advocated to the Patent Office that its claims were valid in order to get the patents issued. Both the originally-assigned patents and some of the newly-issued patents (*i.e.*, those prosecuted by Infineon) are amongst those that Infineon is now accused of practicing in violation of its contractual promises.

When confronted with its breach of the agreement, Infineon reversed itself, now taking the position that many of the asserted patent claims, including those that Infineon itself had prosecuted, are invalid for indefiniteness—*i.e.*, that Infineon cannot figure out what the claims that it authored and obtained mean. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. ---, ---, 134 S. Ct. 2120, 2129 (2014) (explaining that a patent claim is indefinite if it does not "inform those skilled in the art about the scope of the invention with reasonable certainty"). Specifically, Infineon contends that all asserted claims of the '417, '862, and '921 Patents and Claim 9 of the '889 Patent, are invalid for indefiniteness. Infineon is estopped from taking this position, however, under the doctrines of judicial and assignee estoppel.

***Judicial Estoppel:*** First, Infineon is estopped from asserting that the '417, '862, and '921 Patents are invalid for indefiniteness under the doctrine of judicial estoppel. Infineon itself admittedly prosecuted the claims of each of those patents before the United States Patent and Trademark Office ("Patent Office"). In other words, Infineon authored the claims at issue and successfully advocated to the Patent Office that the claims were definite and valid. This is precisely the opposite of the position that Infineon now takes—*i.e.*, that these same claims are invalid because a person of ordinary skill in the art cannot understand what they mean. Having successfully argued for the validity of the claims to the Patent Office, Infineon is judicially estopped from now asserting that they are invalid as indefinite.

"Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996).[1]

---

[1] The Federal Circuit, which hears appeals of patent cases, applies the law of the regional circuit on judicial estoppel. *Lampi Corp. v. American Power Prods., Inc.*, 228 F.3d 1365, 1377 (Fed. Cir. 2000).

The doctrine applies to statements made in administrative proceedings:

> Unsurprisingly given its name, judicial estoppel is often articulated as applying to 'judicial' proceedings. However, many cases have applied the doctrine where the prior statement was made in an administrative proceeding, and we are not aware of any case refusing to apply the doctrine because the prior proceeding was administrative rather than judicial.

*Rissetto*, 94 F.3d at 605 (collecting authorities); *see also Trustees in Bankruptcy of North American Rubber Thread Co. v. United States*, 593 F.3d 1346 (Fed. Cir. 2010) ("Judicial estoppel applies just as much when one of the tribunals is an administrative agency as it does when both tribunals are courts.") (finding judicial estoppel barred domestic producer from taking inconsistent position with respect to effective date for revocation of anti-dumping duty order); *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1427 (7th Cir. 1993) ("Though called ***judicial*** estoppel, the doctrine has been applied, rightly in our view, to proceedings in which a party to an administrative proceeding obtains a favorable order that he seeks to repudiate in a subsequent judicial proceeding.") (emphasis in original).

Courts have specifically held that patent owners cannot take positions inconsistent with positions they took before the Patent Office. *See Forest Labs., Inc. v. Abbott Labs*, 239 F.3d 1305, 1314 (Fed. Cir. 2001) ("This statement is an unmistakable assertion made to the PTO in support of patentability. Even if it was not necessary to secure allowance of the claim, particularly with respect to the water limitation, such a statement may operate to preclude the patentee from claiming otherwise in an infringement suit.").

Therefore, even if the patent claims identified by Infineon were actually indefinite (which they are most certainly not), it would not matter. Judicial estoppel turns on the fact that Infineon successfully advocated before the Patent Office that they ***were*** patentable, and Infineon cannot now take the contrary position during these claim construction proceedings. *See, e.g., Transclean Corp. v. Jiffy Lube Intern., Inc.*, 474 F.3d 1298, 1306 (Fed. Cir. 2007) (holding that the plaintiff's prior

representation concerning privity were binding under judicial estoppel, even "when the actual circumstances do not necessarily support that conclusion"). Accordingly, the Court should preclude Infineon from now arguing that claims it previously drafted and successfully advocated to the PTO were valid are actually invalid.

Infineon's claim below that it is not moving *at this time* for a judgement that the claims are invalid, but only seeking a construction of indefiniteness so that it can evaluate infringement, is a red herring. If a patent claim is indefinite, then it is invalid, and there is no need for any further infringement analysis. *E.g.*, *Nautilus*, 134 S. Ct. at 2125 ("A lack of definiteness renders invalid 'the patent or any claim in suit.'"). Indeed, the case that Infineon selectively quotes for the proposition that indefiniteness is supposedly an infringement defense actually instead overturned a noninfringement finding precisely because the claims were invalid. *Honeywell Int'l, Inc. v. ITC*, 341 F.3d 1332, 1352 (Fed. Cir. 2003) ("Despite its holding that the claims were invalid, the Commission let stand the administrative law judge's finding that the claims were not infringed.… To the extent that the Commission attempted to perform an infringement analysis of indefinite claims, we vacate that finding as moot.").

*Assignee Estoppel:* Additionally, and as a separate basis for estopping Infineon from presenting its indefiniteness arguments, Infineon is barred from doing so for all claims by the doctrine of assignee estoppel. Nitronex (now MACOM) conditioned its assignment of the Nitronex Patents on, among other things, Infineon giving MACOM an exclusive license in its field. Infineon cannot now avoid its obligations by asserting that the patents are invalid so it can practice them in MACOM's field. To use a land analogy, Infineon's position is equivalent to a buyer acquiring land conditioned on the promise that it give the seller the exclusive right to occupy a portion of the land, only then to refuse to vacate that portion of the land on the basis that the underlying deed is flawed. Such a position is patently inequitable and justifies the application of assignee estoppel. *See, e.g.,*

*Sybron Transition Corp. v. Nixon, Hargrave, Devans & Doyle*, 770 F.Supp. 803, 811 (W.D.N.Y. 1991) (noting that absent assignee estoppel, the buyer of a patent could "obtain its benefits and control it and refuse to pay the agreed consideration"). Although the Court denied MACOM's motion to strike such invalidity defenses at the pleading stage (Dkt. 331), it expressly reserved the right to revisit the issue at a later time. Dkt. 354 at 7-8. The Court should do so now, where the facts are developed—*i.e.*, the specific claims asserted to be indefinite (as well as the identity of the party who prosecuted them) are now known. In short, MACOM asks that the Court preclude Infineon from asserting that the patents that it exclusively licensed to MACOM in order to induce MACOM to sell those patents to Infineon are invalid.

***Procedure For Resolution Of Estoppel Dispute:*** Finally, MACOM responds to Infineon's argument that it is procedurally improper for MACOM to raise the estoppel issues here and Infineon's claim that it has supposedly had only "three days" to contemplate these estoppel issues, such that they are not ripe for resolution and such that Infineon has not had a chance to fully consider them.

These suggestions are incorrect. MACOM raised and the parties briefed estoppel defenses many months ago, when Infineon for the first time took the novel position that its own patents are invalid in an attempt to justify its breach of the license agreement. Then, after Infineon first identified the particular claims that it asserts are invalid for indefiniteness on January 5, 2018—many of which, as Infineon obviously knew already, that Infineon had prosecuted itself—MACOM agreed to confer regarding claim construction issues on exactly the day that Infineon proposed. During that conference on January 11, 2018, MACOM informed Infineon (as Infineon could not have been surprised to hear) that MACOM would assert in this report that Infineon is estopped from arguing that patents, including patents that Infineon prosecuted itself, are invalid for indefiniteness. Infineon was certainly aware that MACOM intended to raise the

1  estoppel issues in this report.

2      The estoppel issues here (and particularly the judicial estoppel issue) are not
3  complicated legal issues, and they are ripe for resolution. If the Court would like
4  further briefing, MACOM would be happy to provide it in the connection with the
5  Markman submissions, but it is worth nothing that Infineon has not cited a single
6  case or argument below that shows that estoppel should not apply here.

7      **Defendants' Position:**

8      Defendants contemplated that this joint report would be limited to a list of
9  agreed and disputed constructions. Defendants understood that the purpose of the
10 report is to apprise the Court of the number of terms in dispute. Defendants do not
11 believe that this report should be used to address the parties' substantive disputes,
12 including whether the disputed terms can be construed or what those constructions
13 may be.

14     MACOM, however, insisted on including several pages of attorney
15 argument. MACOM provided Defendants a draft copy of the above estoppel
16 arguments less than three days before the joint report was due to be filed with the
17 Court. Thus, Defendants have not had sufficient time to research and address
18 MACOM's arguments. Moreover, when MACOM sent its argument, MACOM
19 stated that "this document doesn't constitute full briefing on either issue." Daniel
20 Keese email dated Tues. Jan. 16, 2018, 10:29 PM Central. Thus, both sides agree
21 that this joint report does not provide either side a fair opportunity to fully brief the
22 issues that MACOM raises. This joint report is not the proper procedure for
23 MACOM to present its estoppel arguments. MACOM should file a motion or
24 include its argument in its claim construction briefs.

25     Moreover, MACOM previously moved to strike Defendants' affirmative
26 defense of invalidity based on the doctrine of assignee estoppel, Dkt. 331, and the
27 Court denied MACOM's motion, finding that the record was not sufficiently
28 developed to decide the issue of assignee estoppel at the pleading stage. Dkt. No.

354. MACOM fails to identify any changed circumstance that would warrant the Court to reconsider its prior decision.

There is no need to consider assignee or judicial estoppel at this stage of the litigation because the parties are presenting claim construction disputes—not arguing invalidity. Although Defendants contend that certain terms are indefinite, Defendants are not now moving for a determination of invalidity. The meaning of the claims—including whether the claims have a meaning—must be resolved to determine whether, as MACOM alleges, Defendants practice the asserted claims in violation of MACOM's exclusive license. If the claims do not have a clear meaning (i.e., are indefinite), then it is impossible to determine whether Defendants are practicing the claims. For example, in *Honeywell International, Inc. v. International Trade Comm'n*, the Federal Circuit vacated a finding of infringement as to indefinite claims. 341 F.3d 1332, 1352 (Fed. Cir. 2003). The court explained

> A determination of infringement requires a two-step analysis. "First, the court determines the scope and meaning of the patent claims asserted ... [and secondly,] the properly construed claims are compared to the allegedly infringing device." Because the claims are indefinite, the claims, by definition, cannot be construed. Without a discernable claim construction, an infringement analysis cannot be performed.

*Id.* (internal citations omitted) (quoting *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc)). Thus, to determine whether Defendants are practicing the asserted claims as MACOM alleges, the Court must first determine the meaning of the claims (which necessarily requires resolving whether those claims are indefinite). Thus, indefiniteness must be addressed, regardless of MACOM's arguments that Defendants are estopped from arguing invalidity.

Defendants disagree with MACOM's statements of the facts and the law relating to the judicial and assignee estoppel issues. But this joint report is not the proper mechanism to address and resolve either of those issues. Defendants reserve the right to present those arguments in the future.

**III. The Parties' Proposed Agreed And Disputed Constructions**

In the tables below, the parties have provided the claim terms for which the parties have agreed to a construction or have proposed disputed constructions along with their positions regarding the construction of the terms.

**A. Agreed Constructions For Terms Infineon Requests Be Construed**

The parties have agreed on the following construction for one of the terms Infineon requested by construed:

| | Term | Agreed Construction |
|---|---|---|
| 1. | "silicon substrate"<br><br>'002 Patent, Claim 8;<br>'015 Patent, Claims 14 and 41;<br>'417 Patent, Claim 1;<br>'889 Patent, Claim 9;<br>'921 Patent, Claim 15;<br>'927(EP) Patent, Claims 3 and 10; | Any substrate that includes a silicon layer at its topside (*i.e.*, upper) surface. |

**B. Disputed Constructions For Term MACOM Requests Be Construed**

The parties dispute the construction of the following term that MACOM asks the Court to construe:

| | Term | MACOM's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|---|
| | **'015 Patent Terms** | | |
| 1. | "on the entire top surface of the silicon substrate"<br><br>'015 Patent, Claim 41 | On essentially the entire top surface of the silicon substrate, although minor defects might exist. | *See* constructions of "silicon substrate" and "an amorphous silicon nitride-based material layer formed directly on the entire top surface of the silicon substrate." |

-8-

## C. Disputed Constructions For Terms Infineon Requests Be Construed

The parties dispute the constructions of the following terms that Infineon asks the Court to construe:

| | Term | MACOM's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|---|
| | **Weeks Patent Family Terms** | | |
| 1. | "compositionally-graded layer"<br><br>'034 Patent Claim 13;<br>'119 Patent Claim 14;<br>'335 Patent Claim 3;<br>'686 Patent Claim 6;<br><br>"compositionally graded transition layer"<br><br>'921 Claim 15;<br>'927(EP) Claims 3 and 10; | No construction is needed; the plain and ordinary meaning to one of skill in the art should be applied, including that "compositionally graded" means "having a composition that varies across at least a portion of the thickness of the layer. "Transition layer" and "layer" both can include multiple layers or sub-layers.<br><br>*See, e.g.*, Dkt. 349 at 12; Dkt. 349-1 at 19-24, 27-31, 50-68; Dkt. 376 at 17-20; Dkt. 376-2 at 2, 16-20, 24-26; Dkt. 391 at 2-3; Dkt 392 at 5-7. | A layer having a composition that varies across at least a portion of the thickness of the layer. |
| 2. | "intermediate layer"<br><br>'034 Patent, Claim 13;<br>'119 Patent, Claim 14;<br>'335 Patent, Claim 3;<br>'686 Patent, Claim 6;<br>'862 Patent, Claim 16;<br>'921 Patent, Claim 15;<br>'927(EP) Patent, Claims 3 and 10; | No construction is needed; the plain and ordinary meaning to one of skill in the art should be applied.<br><br>*See generally, e.g.*, Dkt. 349 at 12; Dkt. 349-1 at 19-31, 35-36, 41-42, 49-51, 55-56, 60-66; Dkt. 376 at 19-20; Dkt. 376-2 at 2, 6, 20-22, 24-26; Dkt. 391 at 2-3; Dkt 392 at 6- | A layer with a generally constant composition throughout its thickness located between the substrate and the gallium nitride material layer. |

| | Term | MACOM's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|---|
| | | 7. | |
| 3. | "substantially matches"<br><br>'417 Patent, Claim 1;<br>'862 Patent, Claim 16;<br>'921 Patent, Claim 15; | No construction is needed; the plain and ordinary meaning to one of skill in the art should be applied, including that an intentional difference between two layers greater than those introduced by the manufacturing process can substantially match.<br><br>*See, e.g.*, Dkt. 349 at 12; Dkt. 349-1 at 19-27, 30-31, 36-37, 42-43; Dkt. 376 at 15-17; Dkt. 376-2 at 1-2, 5-7, 8-16, 22-24; Dkt. 391 at 2-3; Dkt 392 at 3-4. | Compositions that are the same, setting aside slight differences introduced by the manufacturing process. |
| 4. | "a composition of said transition layer at a top surface thereof substantially matches a composition of said gallium nitride material layer at a bottom surface thereof"<br><br>'417 Patent, Claim 1;<br>'921 Patent, Claim 15;<br><br>"a composition of said transition layer at a top surface thereof substantially matches a composition of said III-nitride layer at a bottom surface thereof" | No construction is needed; the plain and ordinary meaning to one of skill in the art should be applied. See above construction for "substantially matches.".<br><br>*See, e.g.*, Dkt. 349 at 12; Dkt. 349-1 at 19-27, 30-31, 36-37, 42-43; Dkt. 376 at 15-17; Dkt. 376-2 at 1-2, 5-7, 8-16, 22-24; Dkt. 391 at 2-3; Dkt 392 at 3-4. | Indefinite. |

| | Term | MACOM's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|---|
| | '862 Patent, Claim 16; | | |
| 5. | "consisting of"<br><br>'775 Patent, Claim 2;<br>'927(EP) Patent, Claim 10; | No construction is needed; "consisting of" has a well-established meaning as a matter of law when used in a Markush group, as here, including that a Markush claim is a particular kind of patent claim that lists alternative species or elements that can be selected as part of the claimed invention. | Being formed exclusively of. |
| 6. | "an alloy of gallium nitride selected from the group consisting of $Al_xIn_yGa_{(1-x-y)}N$, $In_yGa_{(1-y)}N$, and $Al_xGa_{(1-x)}N$."<br><br>'927(EP) Patent, Claim 10; | No construction is needed; the plain and ordinary meaning to one of skill in the art should be applied, including that x may equal zero, y may equal zero, and the sum of (x+y) may equal zero, representing a relative amount of each respective element as a percentage of the total amount of Group III elements (Al, In, Ga). | An alloy of gallium nitride selected from the group consisting of $Al_xIn_yGa_{(1-x-y)}N$, $In_yGa_{(1-y)}N$, and $Al_xGa_{(1-x)}N$, wherein x, y, (1-x-y), (1-x), and (1-y) are decimals greater than 0 and less than 1, representing a relative amount of each respective element as a percentage of the total amount of all Group III elements (Al, In, Ga). |
| 7. | "said transition layer is discontinuously graded"<br><br>'775 Patent, Claim 2; | No construction is needed; the plain and ordinary meaning to one of skill in the art should be applied, including that "transition layer" can include multiple layers or | A compositionally-graded layer that is discontinuously graded. |

-11-

| Term | MACOM's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| | sub-layers and that "compositionally-graded" and "transition" are not exact synonyms. | |
| **'015 Patent Terms** | | |
| 8. "an amorphous silicon nitride-based material layer formed directly on a majority of the top surface of the substrate"<br><br>'015 Patent, Claim 14; | A non-crystalline silicon nitride-based material layer formed on a majority of the top surface of the substrate with no intervening layer. | An amorphous silicon nitride-based material deposited as a separate layer on a majority of the top surface of the substrate rather than converting the top surface of the substrate to silicon nitride-based material. |
| 9. "an amorphous silicon nitride-based material layer formed directly on the entire top surface of the silicon substrate"<br><br>'015 Patent, Claim 41; | A non-crystalline silicon nitride-based material layer formed on essentially the entire top surface of the silicon substrate, with no intervening layer, although minor defects might exist. | An amorphous silicon nitride-based material deposited as a separate layer on the entire top surface of the substrate rather than converting the top surface of the substrate to silicon nitride-based material. |
| **'889 Patent Terms** | | |
| 10. "a silicon nitride-based material layer formed between the silicon substrate and the III-nitride material region"<br><br>'889 Patent, Claim 9; | No construction is needed; the plain and ordinary meaning to one of skill in the art should be applied. | Indefinite. |

-12-

| Term | MACOM's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| **'002 Patent Terms** | | |
| 11. "at least one via extending from a backside of the substrate" '002 Patent, Claim 8; | No construction is needed; the plain and ordinary meaning to one of skill in the art should be applied, including that the backside of the substrate is the bottom of the substrate and that the via need not be created using a particular manufacturing process (e.g., this claim is not limited to vias that are etched from the backside of the substrate to the front side of the substrate). | An opening etched into the backside of the substrate (i.e., the bottom surface of the substrate furthest from the gallium nitride material region). |
| 12. "the via is formed through the substrate " '002 Patent, Claim 8; | No construction is needed; the plain and ordinary meaning to one of skill in the art should be applied, including that the via forms a vertical conducting path through the substrate and that the via need not be created using a particular manufacturing process (e.g., this claim is not limited to vias that are etched from the backside of the substrate to the front side of the substrate). | The opening is etched from the bottom surface to at least the top surface of the substrate. |
| **'498 Patent Terms** | | |
| 13. "an electrode-defining layer formed over the gallium nitride material | No construction is needed; the plain and ordinary meaning to one | A layer deposited over the gallium nitride material |

| Term | MACOM's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| region and including a via formed therein, a cross-sectional area at a top of the via being greater than a cross-sectional area at a bottom of the via"<br><br>'498 Patent, Claim 10; | of skill in the art should be applied. | region and etched to form an opening, where the area of the opening at the top is greater than the area of the opening at the bottom in the planes parallel to that layer. |
| **Terms Common Across Multiple Patent Families** ||| 
| 14. "gallium nitride material"<br><br>'002 Patent, Claim 8;<br>'015 Patent, Claims 14 and 41;<br>'417 Patent, Claim 1;<br>'498 Patent, Claim 10;<br>'921 Patent, Claim 15;<br>'927(EP) Patent, Claims 3 and 10; | Infineon's proposed claim term may be confusing outside of the fuller context in which it appears in the identified claims, where "gallium nitride material" is not a stand-alone noun, but instead modifies other nouns that follow (*i.e.*, "gallium nitride material *region*" (in the '002, '015, and '498 patents) and "gallium nitride material *layer*" (in the '417, '921, and '927 (EP) patents). Regardless, no construction is needed, and the plain and ordinary meaning of the term(s) to one of skill in the art should be applied, including that "gallium nitride material" includes gallium nitride and any of its alloys, such as aluminum gallium nitride ($Al_xGa_{(1-x)}N$), indium gallium nitride ($In_yGa_{(1-y)}N$), aluminum indium gallium nitride | Gallium nitride and any of its alloys, such as aluminum gallium nitride, indium gallium nitride, aluminum indium gallium nitride, gallium arsenide phosporide nitride, aluminum indium, and gallium arsenide phosporide nitride. |

| | Term | MACOM's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|---|
| | | ($Al_xIn_yGa_{(1-x-y)}N$), gallium arsenide phosporide nitride ($GaAs_aP_bN_{(1-a-b)}$), aluminum indium gallium arsenide phosporide nitride ($Al_xIn_yGa_{(1-x-y)}As_aP_bN_{(1-x-b)}$), amongst others. Typically, when present, arsenic and/or phosphorous are at low concentrations (*i.e.*, less than 5 weight percent). | |
| 15. | "III-nitride"<br><br>'862 Patent, Claim 16;<br><br>"III-nitride material"<br><br>'889 Patent, Claim 9; | "III-nitride:"<br>No construction is needed; the plain and ordinary meaning to one of skill in the art should be applied.<br><br>"III-nitride material:" Infineon's proposed claim term may be confusing outside of the fuller context in which it appears in the identified claims, where "III-nitride material" is not a stand-alone noun, but instead modifies another noun that follows (*i.e.*, "III-nitride material *region*"). Regardless, no construction is needed; the plain and ordinary meaning to one of skill in the art should be applied, including that "III-nitride material" includes any Group III element-nitride | Any Group III element-nitride compound including boron nitride, aluminum nitride, gallium nitride, indium nitride and thallium nitride, as well as any alloys including Group III elements and Group V elements. |

| Term | MACOM's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
|  | compound including boron nitride (BN), aluminum nitride (AlN), gallium nitride (GaN), indium nitride (InN) and thalium nitride (TIN), as well as any alloys including Group III elements and Group V elements (e.g., $Al_xGa_{(1-x)}N$, $Al_xIn_yGa_{(1-x-y)}N$, $In_yGa_{(1-y)}N$, $Al_yIn_{(1-y)}N$, $GaAs_aP_bN_{(1-a-b)}$, $Al_xIn_yGa_{(1-x-y)}As_aP_bN_{(1-a-b)}$ and the like). Typically, when present, arsenic and/or phosphorous are at low concentrations (*i.e.*, less than 5 weight percent). |  |

Dated: January 19, 2018

By: _/s/ Jeffery D. Baxter_
David G. Wille
Texas State Bar No. 00785250
E-mail: david.wille@bakerbotts.com
Jeffery D. Baxter
Texas State Bar No. 24006816
E-mail: jeff.baxter@bakerbotts.com
Brian D. Johnston
Texas State Bar No. 24080965
E-mail: brian.johnston@bakerbotts.com
James C. Williams
Texas State Bar No. 24075284
E-mail: james.williams@bakerbotts.com
Charles Yeh
Texas State Bar No. 24075319
E-mail: charles.yeh@bakerbotts.com
BAKER BOTTS L.L.P.
2001 Ross Avenue
Dallas, Texas 75201
Telephone: (214) 953-6791
Facsimile: (214) 953-6503

Lind M. Burrow, Bar No. 194668
 *burrow@caldwell-leslie.com*
Alison Mackenzie, Bar No. 242280
 *mackenzie@caldwell-leslie.com*
BOIES SCHILLER FLEXNER LLP
725 South Figueroa Street 31st Floor
Los Angeles, CA 90017-5524
Telephone:213-629-9040
Fax:213-629-9022

**ATTORNEYS FOR INFINEON TECHNOLOGIES AMERICAS CORP. AND INFINEON TECHNOLOGIES AG**

By: _/s/ Amanda Tessar_
Lara J. Dueppen, Bar No. 259075
LDueppen@perkinscoie.com
PERKINS COIE LLP
1888 Century Park East, Suite 1700
Los Angeles, CA 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Amanda Tessar (pro hac vice)
ATessar@perkinscoie.com
Elizabeth Banzhoff (pro hac vice)
EBanzhoff @perkinscoie.com
PERKINS COIE LLP
1900 Sixteenth Street, Suite 1400
Denver, CO 80202-5255
Telephone: 303.291.2300
Facsimile: 303.291.2400

Philip A. Morin, Bar No. 256864
PMorin@perkinscoie.com
PERKINS COIE LLP
11988 El Camino Real, Suite 350
San Diego, CA 92130-2594
Telephone: 858.720.5700
Facsimile: 858.720.5799

Daniel T. Keese, Bar No. 280683
DKeese@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Telephone: 503.727.2000
Facsimile: 503.727.2222

Morgan Chu (State Bar No. 70446)
(mchu@irell.com)
Joseph M. Lipner (State Bar No. 155735)
(jlipner@irell.com)
Ellisen Turner (State Bar No. 224842)
(eturner@irell.com)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
Telephone: 310-277-1010
Facsimile: 310-203-7199

Nima Hefazi (State Bar No. 272816)
(nhefazi@irell.com)
IRELL & MANELLA LLP

840 Newport Center Drive, Suite 400
Newport Beach, CA 92660
Telephone: 949-760-0991
Facsimile: 949-760-5200

**ATTORNEYS FOR PLAINTIFFS MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. AND NITRONEX, LLC**