UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
|---|---|---|---|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

Not Present                    Not Present

**Proceedings:**     (IN CHAMBERS) - CLAIM CONSTRUCTION ORDER

## I.     INTRODUCTION

On April, 26, 2016, M/A-COM Technology Solutions Holdings, Inc. and Nitronex, LLC initiated this action against Infineon Technologies AG, Infineon Technologies Americas Corporation, and International Rectifier Corporation. The parties' dispute involves, in part, an allegation that Infineon breached an exclusive license agreement with MACOM by practicing the inventions claimed in a collection of patents (collectively, the "Nitronex Patents") in MACOM's exclusive field of use. This Claim Construction Order construes disputed terms in some of those patents. [1, 2]

The Court initially set a claim construction briefing schedule on November 6, 2017. Dkt. 409. The parties accordingly filed their Joint Claim Construction Chart and Prehearing Statement. Dkt. 418. On February 7, 2018, the Court held a Status Conference on Claim Construction and ordered the parties to meet and confer and file a

---

[1] For purposes of the remainder of this Claim Construction Order only, MACOM and Nitronex will be referred to collectively as "MACOM" and all defendants will be referred to collectively as "Infineon."

[2] Specifically, this Order refers to terms at issue in: U.S. Patent Nos. 8,344,417 ("the '417 Patent"), 8,105,921 ("the '921 Patent"), 8,592,862 ("the '862 Patent"), 8,928,034 ("the '034 Patent"), 8,937,335 ("the '335 Patent"), 9,064,775 ("the '775 Patent"), 9,437,686 ("the '686 Patent"), 9,461,119 ("the '119 Patent"), EP1343927 ("EP '927"), 7,352,015 ("the '015 Patent"), 7,247,889 ("the '889 Patent"), and 6,611,002 ("the '002 Patent"). See Dkt. 418.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
|---|---|---|---|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

Supplemental Joint Report.  Dkt. 423.  On February 14, 2018, the parties filed a Supplemental Joint Report Regarding Claim Construction.  Dkt. 428.  On March 2, 2018, the parties each filed an Opening Claim Construction Brief.  Dkt. 439 ("Defs.' Opening"); Dkt. 440 ("Pls.' Opening).  On March 23, 2018, the parties each filed a Responsive Claim Construction Brief to the other's opening brief.  Dkt. 451 ("Pls.' Response"); Dkt. 452 ("Defs.' Response").

A Markman hearing was held on April 27, 2018.  Before the hearing, a Tentative Claim Construction Order was circulated to the parties.  For the reasons stated herein, the Court adopts the constructions set forth below.

## II.    BACKGROUND

### A.    "Weeks Family" Patents

The "Weeks Family" Patents ("Weeks Patents"), nicknamed after the inventor T. Warren Weeks, Jr., include the '417, '921, '862, '034, '335, '775, '686, '119, and EP '927 Patents.  The Weeks Patents claim priority to U.S. Patent Application No. 09/736,972, now U.S. Patent No. 6,649,287 and share a common specification.  Although the parties cite claims from various patents within the Weeks Patents, the parties generally cite to the specification of the '417 Patent.

The Weeks Patents first describe difficulties with using Gallium Nitride ("GaN") materials in semiconductor applications.  The Weeks Patents note that while GaN materials may have benefits in semiconductor technologies, it is difficult to grow GaN on a substrate, as "differences in the properties between gallium nitride materials and substrates can lead to difficulties in growing layers suitable for many applications."  '417 Patent at 1:39-41.  The Weeks Patents purport to solve these problems by introducing additional layers between the GaN material layer and substrate, such as a "transition layer," which "lower[s] stresses in the gallium nitride material layer which can result from differences in thermal expansion rates between the gallium nitride material and the substrate."  Id. at 2:4-8.

### B.    The '015 Patent

The '015 Patent is not in the Weeks Patent family, but incorporates the Weeks Family parent patent, the '287 Patent, by reference.  '015 Patent at 7:16-21.  It similarly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

relates to semiconductor materials employing a gallium nitride material layer and a substrate layer.  '015 Patent at Abstract, 3:18-35.  The '015 Patent discloses using a "strain-absorbing layer," such as a silicon nitride-based material layer, to reduce stress on the substrate layer.  Id.  This stress relief on the substrate layer, in turn, "limits formation of other types of defects in other overlying layers (e.g., gallium nitride material region), amongst other advantages."  Id. at Abstract; see also id. at 3:27-32.

> **C.    The '889 Patent**

The Weeks Family parent patent is also incorporated by reference in the '889 Patent.  '889 Patent at 6:53-55.  The '889 Patent describes shortcomings with growing III-nitride materials "(e.g., gallium nitride materials)" on silicon substrates.  Id. at 2:41-45.  Specifically, the '889 Patent discloses methods to "limit[] the formation and/or effect of [] parasitic channels."  Id. at 2:48-50.  According to the '889 Patent, parasitic channels are "typically formed at a top surface of the silicon substrate and can provide a mechanism for undesired energy absorption within the structure."  Id. at 2:45-48.  The '889 Patent purports to solve problems with parasitic channels, for example, by using a layer of material that "forms a barrier that limits, or prevents, dopant accumulation on the silicon substrate surface, amongst other functions."  Id. at 4:57-63.

> **D.    The '002 Patent**

The '002 Patent also incorporates the Weeks Family parent patent by reference.  '002 Patent at 5:12-14.  The '002 Patent is titled "Gallium Nitride Material Devices and Methods Including Backside Vias."  It discloses semiconductor devices having "vias," although it does not specifically define the term "via."  In its Opening Claim Construction Brief, MACOM characterizes "vias" as "vertical interconnect accesses, which are pathways through layers of a device that allow for electrical connections to be made from above one or more particular layers to below the particular layers."  Pls.' Opening at 29.  As the title of the patent suggests, the '002 Patent specifically focuses on forming "backside vias," or vias formed on the "bottom surface" of a semiconductor device.  '002 Patent at 1:49; see also id. at 1:62-64, Figs. 1-8.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
|---|---|---|---|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

## III.   LEGAL STANDARD

Claim construction begins with an examination of the intrinsic evidence of record, which includes the patent claims,[3] the specification,[4] and, if in evidence, the prosecution history.[5]  Phillips v. AWH Corp., 415 F.3d 1303, 1316-17 (Fed. Cir. 2005) (en banc).

--------

[3] The first source courts turn to in order to define the scope of the invention is "the words of the claims themselves, both asserted and nonasserted." Abbott Labs. v. Andrx Pharms., Inc., 452 F.3d 1331, 1336 (Fed. Cir. 2006) (quoting Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996)).  "[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms" and "the context in which a term is used in the asserted claim can be highly instructive." Phillips v. AWH Corp., 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc).  Claim language is generally interpreted consistently across different claims.  Id.

[4] "The claims, of course, do not stand alone," but instead "must be read in view of the specification, of which they are a part." Phillips, 415 F.3d at 1315, 1315-17 (internal quotations omitted); see also Vitronics, 90 F.3d at 1582 ("[T]he specification is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term").  However, it is improper to read limitations from the written description into a claim.  Tate Access Floors, Inc. v. Maxcess Techs. Inc., 222 F.3d 958, 966 (Fed. Cir. 2000) (citations omitted); see also Phillips, 415 F.3d at 1320 (quoting SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc., 242 F.3d 1337, 1340 (Fed. Cir. 2001)) (referring to reading a limitation from the written description into the claims as "one of the cardinal sins of patent law").  Conversely, "an interpretation [which excludes a preferred embodiment] is rarely, if ever, correct and would require highly persuasive evidentiary support." Vitronics, 90 F.3d at 1583.

[5] The prosecution history "contains the complete record of all the proceedings before the Patent and Trademark Office, including any express representations made by the applicant regarding the scope of the claims." Vitronics, 90 F.3d at 1582.  "[B]ecause the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." Phillips, 415 F.3d at 1317.  Despite this, the prosecution history "can often inform the meaning of the claim language by demonstrating how the inventor understood the invention." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
|---|---|---|---|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

Courts also may use extrinsic evidence, for example dictionaries, treatises, and expert or inventor testimony, to resolve ambiguities in the disputed claim terms, but "while extrinsic evidence can shed useful light on the relevant art … it is less significant than the intrinsic record in determining the legally operative meaning of claim language.[6] Phillips, 415 F.3d at 1317-18 (internal citations omitted) (quoting C.R. Bard, Inc. v. U.S. Surgical Corp., 388 F.3d 858, 862 (Fed. Cir. 2004)). Technical extrinsic evidence, such as dictionaries, encyclopedias, and technical treatises, may similarly be consulted to help determine the meaning of claim terms.[7] Phillips, 415 F.3d 1322-23. All evidence – both intrinsic and extrinsic – should be viewed from the perspective of a person of ordinary skill in the relevant art at the time the invention was filed. Markman v. Westview Instruments Inc., 52 F.3d 967, 979-80 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996).

Generally, courts begin with a presumption that "claim terms are to be given their ordinary and customary meaning." Aylus Networks, Inc. v. Apple Inc., 856 F.3d 1353, 1358 (Fed. Cir. 2017) (internal quotations omitted) (citing Aventis Pharm. Inc. v. Amino Chems. Ltd., 715 F.3d 1363, 1373 (Fed. Cir. 2013)). "Properly viewed, the 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent." Phillips, 415 F.3d at 1321. "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." Id. at 1314.

---

[6] "The sequence of steps used by the judge in consulting various sources is not important; what matters is for the court to attach the appropriate weight to be assigned to those sources in light of the statutes and policies that inform patent law." Phillips, 415 F.3d at 1324.

[7] In Phillips, the Federal Circuit cautioned that "heavy reliance on the dictionary divorced from the intrinsic evidence risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its particular context, which is the specification." Phillips, 415 F.3d at 1321 (holding that a court should not start with a dictionary to determine the plain meaning of a term, and only then turn to the specification in order to determine whether to narrow that meaning in light of the intrinsic evidence).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

The Federal Circuit recognizes two exceptions to the general rule that claim terms are given their ordinary and customary meaning as understood by a person of ordinary skill in the art in the context of the patent intrinsic record: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." Thorner v. Sony Computer Entm't Am. LLC, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (citing Vitronics, 90 F.3d at 1580). To act as her own lexicographer, the patentee must "'clearly set forth a definition of the disputed claim term' other than its plain and ordinary meaning." Id. (quoting CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359, 1366 (Fed. Cir. 2002)); Helmsderfer v. Bobrick Washroom Equip., Inc., 527 F.3d 1379, 1381 (Fed. Cir. 2008) (patentee must "clearly express an intent" to depart from the plain and ordinary meaning). To effect a clear disavowal or disclaimer in the patent specification, the applicant must make clear "that the invention does not include a particular feature . . . even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question." SciMed, 242 F.3d at 1341; see also Thorner, 669 F.3d at 1366. Similarly, during prosecution, a patent applicant can "make[ ] clear that the invention does not include a particular feature, or is clearly limited to a particular form of the invention." Hill-Rom Servs., Inc. v. Stryker Corp., 755 F.3d 1367, 1372 (Fed. Cir. 2014) (internal quotations and citations omitted). If the plain language of the claim is to be narrowed, any disclaimer of a broader construction must be "clear and unmistakable." Cordis Corp. v. Boston Scientific Corp., 561 F.3d 1319, 1329 (Fed. Cir. 2009); Home Diagnostics, Inc. v. Lifescan, Inc., 381 F.3d 1352, 1358 (Fed. Cir. 2004).

## IV.   DISCUSSION

### A.   Constructions Upon Which the Parties Agree

In their original Joint Claim Construction and Prehearing Statement (Dkt. 418), the parties agreed to the following construction:

| Term | Claims | Construction |
|---|---|---|
| "silicon substrate" | '002 Patent, Claim 1; '015 Patent, Claims 1 and 36; '417 Patent, Claim 1; '889 Patent, Claim 9; | Any substrate that includes a silicon layer at its topside (i.e., upper) surface. |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

| | '921 Patent, Claim 15; EP '927 Patent, Claim 1[8] | |
|---|---|---|

**B.  Disputed Constructions**

    **1.  "compositionally-graded layer" / "compositionally-graded transition layer"**

| Term | Claims | MACOM's Construction | Infineon's Construction |
|---|---|---|---|
| "compositionally-graded layer" / "compositionally-graded transition layer" | '034 Patent, Claim 13; '119 Patent, Claim 13; '335 Patent, Claim 3; '686 Patent, Claim 6; | No construction is needed; the plain and ordinary meaning to one of skill in the art should be applied, including that "compositionally-graded" means "having | "a layer having a composition that varies across at least a portion of the thickness of the layer" |

        [8] For many of the terms discussed in this Order, the parties seek construction of language that does not appear in their listed patent claims.  It appears that the parties may be relying on language contained in the related independent claim.  For instance, in the parties' Joint Report Regarding Claim Construction and Opening briefs, both parties list the term "silicon substrate" as appearing in dependent Claim 8 of the '002 Patent.  See Dkt. 418.  However, the term actually appears in independent Claim 1, from which Claim 8 depends.  A similar situation arises for '015 Patent, Claims 14 and 41 (depend from Claim 1 and 36, and those claims include the claim term "silicon substrate"); and EP '927, Claims 3 and 10 (depend from Claim 1, which includes the term).  See Pls.' Opening at 23 n.9.  For clarity, as appropriate for each term, the Court lists the claims in which the particular term actually appears and from which the parties' listed claims (presumably the asserted claims) depend.  The claims listed by the parties, if they differ, are listed in corresponding footnotes.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
|---|---|---|---|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

| | / '921 Patent, Claim 1; EP '927 Patent, Claim 1[9] | a composition that varies across at least a portion of the thickness of the layer." "Transition layer" and "layer" both can include multiple layers or sublayers. | |
|---|---|---|---|

The claim terms "compositionally-graded layer" and "compositionally-graded transition layer" appear in several of the Weeks Patents. For instance, the term "compositionally-graded layer" appears in Claim 13 of the '119 Patent, which recites:

> 13.  A semiconductor structure comprising:
> a substrate;
> an intermediate layer comprising first and second aluminum nitride layers formed above said substrate, at least one of said first and second aluminum nitride layers being substantially free of gallium;
> a transition layer including at least one **compositionally-graded layer**.

'119 Patent, Claim 13 (emphasis added). Similarly, Claim 1 of the '335 Patent recites, inter alia, "a transition layer including at least one compositionally-graded layer and a superlattice." '335 Patent, Claim 1; see also '034 Patent, Claims 1, 20.

The term "compositionally-graded transition layer," meanwhile, occurs, for example, in Claim 1 of the '921 Patent, which recites:

---

[9] The parties list the terms "compositionally-graded layer" and "compositionally-graded transition layer" as appearing in the following claims: '034 Patent, Claim 13; '119 Patent, Claim 14; '335 Patent, Claim 3; '686 Patent, Claim 6; '921 Patent, Claim 15; and EP '927, Claims 3 and 10.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

1.    A method of producing a semiconductor material comprising:

forming **a compositionally-graded transition layer** over a silicon
      substrate; and
forming a gallium nitride material layer over the transition layer;
wherein a composition of said transition layer at a top surface thereof
      substantially matches a composition of said gallium nitride
      material layer at a bottom surface thereof.

'921 Patent, Claim 1 (emphasis added).  It also appears in certain claims of EP '927,
including Claim 1, which recites:

1.    A semiconductor material (10) comprising:
      a silicon substrate (14);
      **a compositionally-graded transition layer (12)** formed over the
            substrate, the transition layer including a back surface (18) and
            a top surface (20), wherein the transition layer comprises a
            gallium nitride alloy and a gallium concentration in the
            transition layer increases from the back surface to the front
            surface of the transition layer;
      an intermediate layer (28) formed over the substrate (14) and under
            the transition layer (12); and
      a gallium nitride material layer (16) formed over the transition layer,
            the gallium nitride material layer having a crack level of less
            than 0.005 $\mu m/\mu m^2$

EP '927, Claim 1 (emphasis added).

The parties each submit their arguments regarding the terms "compositionally-
graded layer" and "compositionally-graded transition layer" together, including
respective proposed constructions that are the same for the two terms.  The parties agree
that the construction of the claim terms "compositionally-graded layer" and
"compositionally-graded transition layer" should cover the concept of "having a
composition that varies across at least a portion of the thickness of the layer."  Pls.'
Opening at 4; Defs.' Opening at 2.  As Infineon notes, the specification of the Weeks
Patents includes an express definition of the phrase "compositionally-graded layer," that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

tracks this aspect of its proposed construction, stating, "[a]s used herein, the term 'compositionally-graded layer' refers to a layer having a composition that varies across at least a portion of the thickness of the layer." '417 Patent at 4:4-6. The parties' principal dispute is whether the term "layer" in both claim terms should be limited to a singular layer or whether it should be construed to include multiple layers. Pls.' Opening at 3-6; Defs.' Opening at 2-10.

In its responsive brief, MACOM for the first time significantly highlights a difference between the patent specification's use of the two terms. MACOM argues that the term "compositionally-graded **transition** layer" can be, for example, a combination of a compositionally-graded layer and a superlattice. Pls.' Response at 3 (citing '417 Patent at 6:12-17). MACOM also argues that Infineon's assertions about the limits of "compositionally-graded layer" are "not true for a compositionally-graded transition layer." Id. at 3. Despite this, MACOM still advocates that the two terms should be construed the same.

However, the claim language of the Weeks Patents themselves indicates that the two terms carry different meanings from one another in the context of the patents. For instance, the term "compositionally-graded layer" appears in the claims as a component of a claimed transition layer. See, e.g., '119 Patent, Claim 13; '335 Patent, Claim 1. As noted, in Claim 13 of the '119 Patent, the claim language refers to "a transition layer **including at least one** compositionally-graded layer." '119 Patent, Claim 13 (emphasis added). This claim language supports that a "compositionally-graded layer" is just one layer of many potential layers in a transition layer.

The term "compositionally-graded transition layer," on the other hand, is used in the claims as reference to a transition layer itself. See, e.g., '921 Patent, Claim 1. Indeed, Claim 1 of the '921 Patent first refers to the "compositionally-graded transition layer" and thereafter refers to "the transition layer" or "said transition layer." Claim 7 of the '921 Patent, which depends from Claim 1, refers to the "compositionally-graded transition layer" of Claim 1 as "the transition layer" and further recites:

7.     The method of claim 1, wherein **the transition layer comprises** a superlattice including **a series of alternating $Al_xIn_yGa_{(1-x-y)}N$ / $Al_AIn_BGa_{(1-A-B)}N$ layers.**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**         **'O'**

| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
|---|---|---|---|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

'921 Patent, Claim 7 (emphasis added). Claim 7 of the '921 Patent thus provides explicit support for a construction of "compositionally-graded transition layer" that covers multiple layers.

Claim 1 of EP '927 similarly refers to "the transition layer," which derives antecedent basis from the phrase "a compositionally-graded transition layer (12)." Consistent with European Patent Office practice the "12" in parenthesis after "compositionally-graded transition layer" refers to the label 12 used in the patent figures and specification. See European Patent Convention, Rule 43(7), "Form and Content of Claims" ("Where the European patent application contains drawings including reference signs, the technical features specified in the claims shall preferably be followed by such reference signs relating to these features, placed in parentheses . . . "). The Weeks Patents' specification, including EP '927's specification, discloses an embodiment depicted in Figures 3A and 3B where a "transition layer," labeled "12," "may be a compositionally-graded strained layer superlattice 22" and "[s]uperlattice 22 includes alternating layers 24a, 24b of semiconductor compounds." EP '927 at [0033]. In other words, as with Claim 7 of the '921 Patent, a "compositionally-graded transition layer (12)," like the one claimed in EP '927, should be construed to cover the Weeks Patents' disclosed embodiment of a "transition layer 12" comprised of multiple layers.

The same "superlattice" embodiment in the Weeks Patents also supports the conclusion that a "compositionally-graded layer," unlike a "compositionally-graded transition layer," is only a single layer. The Weeks Patents explain that a "transition layer **12** may be formed of a combination of a **single layer having a graded composition** and a superlattice." Id. at 6:12-14 (emphasis added). An understanding of "compositionally-graded layer" as a single layer is also supported by the Weeks Patents' specific definition of the term itself. '417 Patent at 4:4-6 ("As used herein, the term 'compositionally-graded layer' refers to a layer having a composition that varies across at least a portion of the thickness of the layer."). These aspects of the Weeks Patent specification put emphasis on the existence of the "compositionally-graded layer" as a single layer consistent with the plain and ordinary meaning of the singular term "layer" and support a construction limiting this term to mean a single layer.[10]

---

[10] At the hearing, MACOM argued that the term "layer" as a general matter is "recursive," meaning that it can be used to refer to a single layer or to a collection of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
|---|---|---|---|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

The parties express some dispute over whether a single layer having a graded composition can be graded in a stepwise manner, as depicted, for instance, in Figures 2A and 2B of the Weeks Patents. See Pls.' Opening at 5; Defs.' Opening at 4. At the hearing, MACOM sought clarity as to whether the Court's tentative construction of "compositionally-graded layer" would encompass these scenarios. Infineon specifically argued both in its briefs and at the hearing that its proposed construction of "compositionally-graded layer" as encompassing a single layer "does not exclude the embodiments of Figures 2A and 2B." Defs.' Response at 2.

The Weeks Patents' disclosure similarly suggests that Figures 2A through 2I can be considered applicable to a single layer. For instance, after describing Figures 2A through 2I, the Weeks Patents disclose Figures 3A and 3B as embodiments depicting a transition layer as a superlattice comprised of multiple layers. The Weeks Patents note, "[i]n some cases, the composition across each individual layer **24***a*, **24***b* is varied **according to any of the manners described above**." '417 Patent at 5:43-46. Indeed, the Weeks Patents provide no basis to conclude that during manufacturing, the process parameters could not be adjusted in a way that would create a single layer with a step-wise composition. See, e.g., '417 Patent at 9:47-49. The declarations of Infineon's expert, Dr. Shealy, support the understanding. Dkt. 439-1 ("Shealy Decl."), ¶ 24; Dkt. 452-1 ("Shealy Rebuttal Decl."), ¶ 2; but see Dkt. 451-1 ("Schubert Rebuttal Decl."), ¶ 8 (arguing that "growth temperature" as disclosed in the patents "cannot be adjusted instantaneously"). MACOM's expert, Dr. Schubert, similarly notes that the embodiment disclosed in Figure 2A, for example, could be understood as "a single layer having two different step-varied compositions." Dkt. 440-1 ("Schubert Decl."), ¶ 31.

To the extent MACOM's argument, with its reference to "sublayers," seeks an interpretation that would effectively provide the term "compositionally-graded layer" with the same scope as the term "compositionally-graded transition layer," MACOM's arguments are unpersuasive for the reasons already stated. However, the Court agrees

---

layers (like a "layer cake" made of multiple layers). MACOM does not present dictionary definitions or other evidence to support this general position. It is also irrelevant in light of the intrinsic record, which demonstrates that the applicant used the term in different ways depending on the particular context.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|
| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

that a single layer may include step-varied compositions within that layer, as depicted in
Figures 2A and 2B of the Weeks Patents.

MACOM argued at the hearing that it was advocating for the same construction of
both "compositionally-graded layer" and "compositionally-graded transition layer"
because both terms include the underlying term "layer." MACOM noted the presumption
in patent law that a claim term has the same meaning throughout the patent at issue. See
Omega Eng'g, Inc, v. Raytek Corp., 334 F.3d 1314, 1334 (Fed. Cir. 2003). In the current
circumstances, particularly the claim language and specification's disclosure, it would be
inappropriate to apply such a presumption. Indeed, Federal Circuit authority supports the
conclusion that "the same claim term can have different constructions depending upon
the context of how the term is used within the claims and specification." Aventis Pharm.
Inc. v. Amino Chemicals Ltd., 715 F.3d 1363, 1374 (Fed. Cir. 2013). For the reasons
stated, this is the case here.

Both at the hearing and in its briefing, Infineon relied on portions of the
prosecution history of EP '927 to support its narrower proposed construction for the
phrase "compositionally-graded transition layer." During prosecution of EP '927, the
applicant stated,

> The Examiner argues that the composition of the buffer layers is chosen, i.e.
> graded, to include indium in a gallium nitride film and thus anticipates claim
> 1. However, choosing compositions of buffer layers is not the same as
> forming a compositionally-graded transition layer. For example, the first
> and second buffer layers may comprise the material having the same
> composition, but deposited under different conditions. Therefore, we submit
> that there is no clear and unambiguous description from what material the
> first and second buffer layers are formed and, thus, that there is
> compositionally-graded transition layer.

Defs.' Opening, Ex. G at 112. The parties present competing arguments regarding this
disclosure. According to Infineon, "[a]pplicants argued that the prior art – with its three
individual layers of constant composition – did not 'describe a compositionally-graded
transition layer formed over the substrate.'" Defs.' Opening at 9 (quoting Dkt. 439-9 at
112-113). Referring to the same portion of the prosecution history, MACOM asserts that
"[applicant's] argument was not that the claims excluded a layer with sublayers, but that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
|---|---|---|---|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

the actual layers in [the prior art] were not compositionally-graded because they had the same, not varying, compositions." Pls.' Response at 5. Additionally, MACOM asserts that the prosecution history actually supports its construction because the Examiner maintained his rejection and interpreted the claim term as "encompassing three separate sublayers, each with a constant composition internally, but different compositions between the separate buffer sublayers." Id.

At the hearing, Infineon reiterated that the layers in the prior art reference itself distinguished by the applicant were different compositions, and further argued that the Examiner's later rejection of the applicant's arguments was immaterial to the prosecution history disclaimer analysis. Infineon, however, did not focus on the actual statements made by the applicant in prosecution, but on language from the prior art reference itself. The record shows that the statements made by the applicant during the prosecution of EP '927 were ambiguous. Indeed, Infineon has not identified a statement from the applicant where it expressly stated that multiple layers cannot constitute a transition layer. The statements the applicant actually made are insufficient to create a disclaimer regarding the scope of the phrase "compositionally-graded transition layer," as the term is used in the claims and specification.

At the hearing, Infineon also reiterated its arguments regarding statements made by the patent applicant in an office action on April 13, 2017—after the Asserted Patents were issued and litigation was underway—in a Weeks Patent application that has not yet issued. See Pls.' Response at 4. In the tentative construction, the Court had concluded that under the unique circumstances, no weight should be given to the statements. Infineon urged that it is not aware of any cases relating to prosecution history disclaimer where a court can consider the motives of a party in deciding whether to consider the applicant's statements. The Court remains concerned about the very unique and particular circumstances surrounding these statements and is not persuaded that it lacks discretion to evaluate them in determining whether or not prosecution history disclaimer applies. The Federal Circuit has noted that it "presume[s], **unless otherwise compelled**, that the same claim term in the same patent or related patents carries the same construed meaning." Omega Eng'g, Inc. v. Raytek Corp., 334 F.3d 1314, 1334 (Fed. Cir. 2003) (emphasis added).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
|---|---|---|---|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

In any event, the statements cited by Infineon are, at most, ambiguous in the context of the full April 13, 2017 Response to the Office Action. <u>See generally</u> Defs.' Opening, Ex. E.  The applicant stated that its one proposed independent claim

> [r]ecites that the claimed semiconductor material comprises, *inter alia*, <u>a</u> compositionally-graded transition <u>**layer**</u> having a back surface and a top surface.  Further according to claim 16, the compositionally-graded transition <u>**layer**</u> comprises a gallium nitride alloy and a gallium concentration in the compositionally-graded transition layer increases from the back surface to the front surface.  In rejecting claim 16, the Office Action equated <u>**three different layers**</u> in the Shibata reference (n layer <u>**4**</u> of silicon-doped $(Al_{x2}Ga_{1-x2})_{y2}In_{1-y2}N$, [the] light-emitting layer <u>**5**</u> of Zinc and [the] p layer <u>**61**</u> of magnesium-doped $(Al_{x2}Ga_{1-x2})_{y2}IN_{1-y2}N)$ to Applicant's claimed compositionally-graded transition layer.  This finding, *i.e.* that three layers can be one layer, strips the term 'layer' of any appreciable meaning.

> \*          \*          \*

> "Layer," properly construed, means 'one thickness, course, or fold laid or lying over or under another." . . . This construction is also consistent with the specification (see Figures 1, 3A, 3B and 6-9 of the present application) . . .

> \*          \*          \*

> The Examiner construes the term 'layer' so broadly to include <u>**three different layers 4, 5, and 61**</u> of Shibata's light-emitting diode 10.  No reasonable construction of the term "layer" can include three separate layers . . . . <u>**None of the individual layers 4, 5 and 61**</u> of Shibata's light-emitting diode 10 identified in the Office Action is a compositionally-graded transition layer comprising a gallium nitride alloy and a gallium concentration that increases from the back surface to the front surface of the layer.

<u>Id.</u> at 7, 8, 9 (emphasis in original).  The ambiguity surrounding the scope of the term "layer" as used in the context of the patent specification prevents this disclosure from representing a clear and ambiguous disclaimer.  Importantly, in defining a layer, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
| --- | --- | --- | --- |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

applicant noted that its "proper construction" "is also consistent with the specification," citing Figures 1, 3A, 3B and 6-9.  See id. at 8.  Figures 3A and 3B, however, are the same superlattice embodiments disclosed in the Weeks Patents that are asserted here and which depict "alternating **layers** 24 *a*, 24 *b* of semiconductor compounds having different compositions."  U.S. Patent Pub. 2017/0047407A1, [0038] (emphasis added).  The other figures depict "transition layer **12**," for which the application similarly explains, "transition layer **12** may be formed of a combination of a single layer having a graded composition and a superlattice."  Id. at [0041].  The applicant's statements during prosecution emphasize that the three layers in the prior art reference are "three different layers," including by referring to the prior art reference layers by their individual figure label numbers, i.e., "individual layers 4, 5 and 61."  The applicant's reference to the Weeks Patent figures, as well as its emphasis on the particular labels of the prior art reference layers, makes the applicant's statements too ambiguous to constitute a clear disclaimer of a multi-layer compositionally-graded transition layer for all the earlier patents in the Weeks Patent family.  This is beside the fact that limiting the scope of the term "compositionally-graded transition layer" in the Asserted Patents based on the statements in this later, pending application would be inconsistent with express language in the claims of the Asserted Patents, which specifically refer to a "compositionally-graded transition layer" comprised of multiple layers.  See, e.g., '921 Patent, Claim 1, 7.

As mentioned, the parties do not appear to dispute that the phrase "compositionally-graded" means "having a composition that varies across at least a portion of the thickness of the layer."  Because Infineon advocates for a construction of "layer" as a single layer for both claim terms, Infineon does not have occasion to argue whether each of the individual layers of a multi-layer transition layer must be compositionally-graded.  A review of the intrinsic record supports finding that in instances where a "compositionally-graded transition layer" comprises multiple layers, not all individual layers must be compositionally-graded.  Specifically, the Weeks Patents explain in the context of the "superlattice" embodiment, "[s]uperlattice 22 includes alternating layers **24***a*, **24***b* of semiconductor compounds having different compositions. . . .  In other cases, the composition of individual layers **24***a*, **24***b* is constant across the thickness of the individual layer . . ."[11]  '417 Patent at 5:42-48.  The Weeks Patents go on

---

[11] During the hearing, MACOM also posited that it would be "arguable" whether a superlattice represented a compositionally-graded layer under the Court's construction. This same disclosure supports the conclusion that the individual alternating layers **24** *a*,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

to state, "the thicknesses of individual layers **24***a*, **24***b* is varied across transition layer **12** to provide compositional grading." Id. at 5:49-51. In other words, while the Weeks Patents would require compositional grading across a multi-layer "compositionally-graded transition layer," the individual layers themselves need not be compositionally-graded.

For the reasons stated, "compositionally-graded layer" is construed as "a layer having a composition that varies across at least a portion of the thickness of the layer" and "compositionally-graded transition layer" is construed as "a layer or combination of layers that have a composition that varies across at least a portion of the layer or across a portion of the combination of layers."

### 2. "intermediate layer"

| Term | Claims | MACOM's Construction | Infineon's Construction |
|---|---|---|---|
| "intermediate layer" | '034 Patent, Claim 11; '119 Patent, Claim 13; '335 Patent, Claim 1; '686 Patent, Claim 4; '862 Patent Claim 16; '921 Patent, Claim 15; EP '927 Patent, Claim 1[12] | No construction is needed; the plain and ordinary meaning to one of skill in the art should be applied. | "a layer with a generally constant composition throughout its thickness located between the substrate and the gallium nitride material layer" |

**24** *b* may be compositionally-graded layers consistent with the compositionally-graded layers depicted in Figure 2, but that the overall superlattice itself is not a single, compositionally-graded layer.

[12] The parties list the term "intermediate layer" as appearing in the following claims: '034 Patent, Claim 13; '119 Patent, Claim 14; '335 Patent, Claim 3; '686 Patent, Claim 6; '862 Patent, Claim 16; '921 Patent, Claim 15; and EP '927, Claims 3 and 10.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

The claim term "intermediate layer" appears in several of the Weeks Patents, including in Claim 11 of the '034 Patent. Claim 11 of the '034 Patent recites:

> 11.    A semiconductor structure comprising:
> a substrate;
> an **intermediate layer** comprising a first aluminum nitride alloy
>      formed over at least one layer, said first aluminum nitride alloy
>      being substantially free of gallium, said at least one layer being
>      situated over said substrate;
> a transition layer comprising a superlattice, said transition layer not
>      consisting entirely of said superlattice;
> a gallium nitride layer formed over said transition layer.

'034 Patent, Claim 11 (emphasis added). Claim 1 of the '335 Patent similarly states, "an intermediate layer comprising aluminum nitride formed above said substrate, said intermediate layer being substantially free of gallium." '335 Patent, Claim 1; see also EP '927 Patent, Claim 1 ("an intermediate layer formed over the substrate (14) and under the transition layer (12)"); '862 Patent, Claim 16 (dependent claim); '921 Patent, Claim 15 (dependent claim).

Notably, Claim 13 of the '119 Patent states, "an intermediate layer comprising first and second aluminum nitride layers formed above said substrate, at least one of said first and second aluminum nitride layers being substantially free of gallium." '119 Patent, Claim 13. Claim 4 of the '686 Patent recites, inter alia, "an intermediate layer comprising a first aluminum nitride alloy" and dependent Claim 5 recites, inter alia, "[t]he semiconductor structure of claim 4, wherein said intermediate layer comprises a second aluminum nitride alloy." '686 Patent, Claims 4 and 5. Claim 32 of EP '927 is a dependent claim requiring "wherein the intermediate layer (28) has a constant composition." EP '927, Claim 32.

The parties do not appear to dispute that the intermediate layer must simply lie somewhere between the gallium nitride material layer and the substrate. See, e.g., Defs.' Opening at 11 n.4. This is generally supported by the Weeks Patent claims. For instance, EP '927 states the intermediate layer is "formed over the substrate (14) and under the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
|---|---|---|---|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

transition layer (12)." EP '927, Claim 1. In addition, the specification explains, "semiconductor material **10** includes an intermediate layer **28** between silicon substrate **14** and transition layer **12** … It should be understood that intermediate layer **28** may also be positioned between transition layer **12** and gallium nitride material layer **16**." '417 Patent at 8:23-28. Further, the specification explains that "[i]t should be understood that when a layer is referred to as being 'on' or 'over' another layer or substrate, it can be directly on the layer or substrate, or an intervening layer may also be present." Id. at 3:64-67. The specification supports an understanding that the intermediate layer must simply be located "somewhere" between the gallium nitride material layer and the substrate, potentially with other layers in between.

The parties' main disagreement, similar to the term "compositionally-graded layer," is whether the intermediate layer must 1) have "a generally constant composition throughout its thickness" and/or 2) be a single layer. Pls.' Opening at 6-7; Defs.' Opening at 11. Infineon argues that an intermediate layer must have a generally constant composition based on a portion of the Weeks Patent specification that states, "[t]he composition of the intermediate layer is generally constant throughout its thickness." Defs.' Response at 3; '417 Patent at 8:34-35. MACOM disputes that this statement creates a requirement that an intermediate layer be a constant thickness, stating, "[a]lthough the specification notes that the intermediate layer is 'generally' of constant composition, there is no requirement that it must always be so." Pls.' Opening at 7 (citing '417 Patent at 8:54-56).

Alone, the statement from the specification that "[t]he composition of the intermediate layer is generally constant throughout its thickness" is ambiguous as to whether it means 1) all intermediate layers must have compositions that are "generally constant" or 2) in general (but perhaps not always), intermediate layers will have constant compositions. But the specification further discloses a preferred method of growing an intermediate layer, stating, "[w]hen depositing the gallium nitride material layer (or the intermediate layer), however, the process parameters **are maintained constant so as to provide a film having a constant composition**." '417 Patent at 9:67-10:3 (emphasis added). This statement strongly supports the conclusion that the patent applicant intended the phrase "is generally constant throughout its thickness" to mean that all intermediate layers have a generally constant thickness, as Infineon argues.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
|----------|--------------------------|------|-------------|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

Notably and perhaps comparably, with respect to the gallium nitride material layer, the patent states, "[t]he composition of gallium nitride material layer 16 is generally constant across its thickness as distinguished with transition layer 12. Thus, x and/or y are generally fixed when gallium nitride material is formed of any of the aforementioned compound alloys." Id. at 6:37-42. Similarly, in describing the potential compositions of the intermediate layer, the specification suggests that the intermediate layer would be composed of the same GaN alloy throughout the layer. See id. at 8:36-47. Meanwhile, the specification refers at length to the varying compositions of the transition layer. Id. at 4:14-5:2. In combination, these portions of the specification support the conclusion that intermediate layers must have compositions that are generally constant.

In addition to supporting the conclusion that an intermediate layer must have a generally constant composition, a review solely of the specification might also suggest that an intermediate layer may only comprise a single layer. However, the claims of the Weeks Patents suggest the opposite conclusion. Claim 5 of EP '927, for instance, refers to an intermediate layer comprising two aluminum nitride alloys. Similarly, Claim 13 of the '119 Patent refers to an intermediate layer as comprised of two "aluminum nitride **layers**" that may have differing compositions. '119 Patent, Claim 13; see also '034 Patent, Claim 19 ("an intermediate layer comprising first and second aluminum nitride layers formed above said substrate").

At first glance, the competing statements in the specification and claims may not appear easy to reconcile. But another portion of the patent specification states, "[i]n some embodiments of the invention, more than one intermediate layer **28** having different compositions may be provided." '417 Patent at 8:54-56. The claims and specification, taken in combination and considering this disclosure, support finding that particularly as to the claims of EP '927, the '119 Patent, and the '034 Patent, an "intermediate layer" can constitute multiple layers, but each layer must have a generally constant composition. This conclusion aligns with the specification's disclosure while also accounting for the limitations of these patent claims that relate to an intermediate layer comprised of multiple alloys or layers.

The parties did not address the term "intermediate layer" in their arguments at the claim construction hearing, and the Court finds no basis to depart from its tentative construction in view of the parties' arguments related to any of the other disputed terms.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

For the reasons stated, "intermediate layer" is construed as "one or more layers, where individual layers have a generally constant composition throughout their thickness."

### 3. "substantially matches"

| Term | Claims | MACOM's Construction | Infineon's Construction |
|---|---|---|---|
| "substantially matches" | '417 Patent, Claim 1; '862 Patent, Claim 1; '921 Patent, Claim 1[13] | No construction is needed; the plain and ordinary meaning to one of skill in the art should be applied, including that an intentional difference between two layers greater than those introduced by the manufacturing process can substantially match. | "compositions that are the same, setting aside slight differences introduced by the manufacturing process" |

The claim term "substantially matches" appears in various claims of the Weeks Patents, including Claim 1 of the '417 Patent. Claim 1 of the '417 Patent recites:

1. A semiconductor structure comprising:
   a transition layer over a silicon substrate;
   a gallium nitride material layer over said transition layer;
   wherein a composition of said transition layer at a top surface thereof **substantially matches** a composition of said gallium nitride material layer at a bottom surface thereof.

---

[13] The parties list the term "substantially matches" as appearing in the following claims: '417 Patent, Claim 1; '862 Patent, Claim 16; and '921 Patent, Claim 15.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

'417 Patent, Claim 1 (emphasis added); see also '921 Patent, Claim 1 (method claim with same "wherein" clause), '862 Patent, Claim 18 (semiconductor FET claim with same "wherein" clause), '417 Patent, Claim 18 (same). Claim 1 of the '862 Patent similarly states, "wherein a composition of said transition layer at a top surface thereof substantially matches a composition of said III-nitride layer at a bottom surface thereof." '862 Patent, Claim 1.

Infineon separately requests construction of the standalone term "substantially matches" and the larger phrases in which the term appears in the patent claims. And notably, Infineon submits a proposed construction for the term alone, but argues that the full phrases that include the term "substantially matches" in the Weeks Patent claims render those claims indefinite.

The Weeks Patent specification states,

[i]n some cases, the sum of (x+y) at back surface **18** is greater than 0.4, greater than 0.6, greater than 0.8 or ever higher. In some preferred embodiments, (x+y)=1 at back surface **18**, so that transition layer **12** is free of gallium at the back surface. In some cases, the sum of (x+y) is less than 0.3, less than 0.2, or even less at front surface **20**. ***In some preferred embodiments, the sum of (x+y)=0 at front surface 20, so that transition layer 12 has a composition of GaN at the front surface. It may be <u>particularly preferred</u> for transition layer 12 to have a composition of GaN at front surface 20, when gallium nitride material layer 16 has a composition of GaN. <u>In other cases</u> when gallium nitride material layer is composed of an alloy of GaN, it <u>may be preferable</u> for the composition of transition layer 12 at front surface 20 to be the same as the composition of gallium nitride material layer 16.*** In some cases, transition layer **12** is free of gallium at back surface **18** and has a composition of GaN at front surface **20**.

'417 Patent at 4:26-61 (emphasis added). The parties dispute whether the this portion of the specification supports finding that the term "substantially matches," as used in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' | |
|---|---|---|---|---|
| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 | |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | | |

Weeks Patent claims, must be limited to covering compositions that are the same (setting
aside slight differences introduced by manufacturing), as Infineon proposes, or can
include both intentional and unintentional differences between compositions, as
MACOM proposes.  Pls.' Opening at 8-10; Defs.' Opening at 12-14.  At the hearing,
MACOM explained that it intended its proposal to allow for a mismatch of as much as
30% in the amount of GaN between the GaN material layer and the transition layer.
MACOM identified this value based on disclosure in the patent specification stating with
respect to the transition layer, "[i]n some preferred embodiments, the sum of (x+y) is less
than 0.3, less than 0.2, or even less at front surface **20**."  '417 Patent at 4:50-52.  Infineon
notes that the term "substantially matches" itself does not appear in the specification, and
argues that the sole disclosure comparing the compositions of the transition layer and
GaN material layer describes the compositions as the same.  For that reason, Infineon
argues that "substantially matches" in the context of the patent claims should likewise be
understood to mean, essentially, "the same."

At first blush, these portions of the specification and other portions that the parties
rely on are not particularly helpful in determining the scope of the phrase "substantially
matches," since they do not use the term itself and rely on disclosure relating to preferred
embodiments about the compositions of the layers being exactly the same.  But other
Weeks Patent claims use the term "substantially" in different contexts that inform the
meaning of the phrase "substantially matches."  For instance, dependent Claims 11
through 13 of the '921 Patent recite:

> 11.  The method of claim 1, wherein the gallium nitride material layer has
> a crack level of less than 0.005 $\mu m/\mu m^2$.
>
> 12.  The method of claim 1, wherein the gallium nitride material layer has
> a crack level of less than 0.001 $\mu m/\mu m^2$.
>
> 13.  The method of claim 1, wherein the gallium nitride material layer is
> substantially free of cracks.

'921 Patent, Claims 11-13; see also '417 Patent, Claims 11-13.  The Weeks Patents
specifically explain that "[i]n some cases, gallium nitride material has a very low crack

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

level of less than 0.001 $\mu m/\mu m^2$. In certain cases, it may be preferable for gallium nitride material layer **16** to be **substantially crack-free** as defined by a crack layer of less than 0.0001 $\mu m/\mu m^2$." '417 Patent at 7:16-20 (emphasis added). MACOM argues that this disclosure supports its construction of the term "substantially matches," but in a different way than the Court finds relevant. MACOM notes that a crack layer of less than 0.0001 $\mu m/\mu m^2$ is equivalent to 0.1 $mm/mm^2$ and concludes that "a person of ordinary skill in the art would have understood 'substantially matching' does not mean ***no*** difference, but means a difference that results in no or minimal cracking of the GaN material layer and minimization of other defects." Pls.' Opening at 9 (citing Schubert Decl., ¶¶ 45-47).

MACOM's argument recognizes that "substantially free of cracks," i.e., a crack layer of less than 0.0001 $\mu m/\mu m^2$, means "no or minimal cracking." Pls.' Opening at 9. To be consistent with this use and understanding of the term "substantially," it would be logical for the overall phrase "substantially matches" to mean "no or minimal mismatch." This conclusion would be consistent with the Weeks Patents' disclosure that it is "particularly preferred for transition layer 12 to have a composition of GaN at front surface 20, when gallium nitride material layer 16 has a composition of GaN" and alternatively "it may be preferable for the composition of transition layer 12 at front surface 20 to be **the same as** the composition of gallium nitride material layer 16." '417 Patent at 4:52-59 (emphasis added).

Moreover, as Infineon notes, during patent prosecution, the applicant added the phrase "substantially matches" to the patent claims and relied on it to distinguish other Weeks Patents that did not include the phrase. The applicant stated:

Applicants have expressly taught that, in one embodiment, it may be preferable that a composition at the top surface of the transition layer (e.g., top surface 20 of transition layer 12) be the same as the composition of the gallium nitride material layer (e.g., gallium nitride material layer 16). . . . Applicants have currently amended independent claim 1 to affirmatively recite the limitation: "wherein a composition of said transition layer at a top surface thereof substantially matches a composition of said gallium nitride material layer at a bottom surface thereof."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

Dkt. 439-13 at 7 (emphasis in original) (Feb. 2, 2011 Response to Non-Final Office Action during prosecution of '921 Patent.).  In other words, the applicant characterized its "substantially matches" amendment by reference to the Weeks Patent's disclosure of a preferred embodiment where the GaN material layer and top surface of the transition layer have the same composition.  To clarify, the Court does not view this statement as a disclaimer, but instead as disclosure consistent with the applicant's use of the term "substantially" in other contexts in the patent specification to refer at most to only minor differences or features in the compositions.  See Phillips, 415 F.3d at 1317 (the prosecution history "can often inform the meaning of the claim language by demonstrating how the inventor understood the invention.").

MACOM's proposal for a broader construction of the term "substantially matches" is unpersuasive.  MACOM essentially argues that the goal of the Weeks Patents is to reduce cracks in the GaN material layer, and any match between the transition layer and GaN material layer that accomplishes this goal would constitute a "substantial match."  As Infineon notes, the portion of the specification referring to a GaN material layer and transition layer with the same composition, as well as the claim language related to "substantially matching," is a particular preferred embodiment of the Weeks Patents to which these claims are specifically directed.  Given the specification's disclosure and the prosecution history's emphasis on compositions that are "the same" between the two layers, anything more than an insignificant difference between compositions themselves—not just the *effect* of particular composition combinations—would go beyond the meaning of the phrase "substantially matches" in the context of the Weeks Patents.  Moreover, because the applicant during prosecution history added this phrase specifically to distinguish other Weeks Patents, concluding that "substantially matches" could refer to the same broad range of composition mismatches potentially disclosed by the Weeks Patents would render this phrase and the distinction between the patents superfluous.

The parties' other dispute regarding this term is whether differences between the two layers must be unintentional or can include intentional differences.  There is insufficient disclosure in the patent claims or specification to support introducing a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
|---|---|---|---|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

knowledge requirement into the phrase "substantially matches." Without more information about the effect of such a construction on other aspects of the case, such as non-infringement or invalidity, an intentionality limitation is unsupported by the record and the term will not be limited specifically to minor differences that are "unintentional." Infineon's proposal, however, is helpful to the extent it reflects an example of what level of degree of difference in composition is covered by the claim term. MACOM argued in both its briefing and at the hearing that such a limited degree of difference in composition would go to the other extreme and read the term "substantially" out of the claims. MACOM did not argue, however, that this tailored understanding of the term "substantially" would be inconsistent with the use of "substantially" in the context of "substantially crack-free." In addition, as Infineon noted, the use of the phrase "such as those introduced by the manufacturing process" in the Court's construction is exemplary, not limiting. MACOM has not adequately explained how this construction makes the phrase "substantially matches" equivalent to "the same." MACOM's argument that the term "substantially" would be read out of the claims by the Court's construction is unpersuasive.

"Substantially matches" is construed as "is the same, setting aside slight differences such as those introduced by the manufacturing process, compared to."

4. **"a composition of said transition layer at a top surface thereof substantially matches a composition of gallium nitride material layer at a bottom surface thereof" / "a composition of said transition layer at a top surface thereof substantially matches a composition of said III-nitride layer at a bottom surface thereof"**

| Term | Claims | MACOM's Construction | Infineon's Construction |
|---|---|---|---|
| "a composition of said transition layer at a top surface thereof substantially matches a | '417 Patent, Claim 1; '921 Patent, Claim 1 | No construction is needed; the plain and ordinary meaning to one of skill in the art should be applied. See above | Indefinite |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-02859-CAS(PLAx) | | Date | May 9, 2018 |
|---|---|---|---|---|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | | |

| composition of said gallium nitride material layer at a bottom surface thereof" / "a composition of said transition layer at a top surface thereof substantially matches a composition of said III-nitride layer at a bottom surface thereof" | / '862 Patent, Claim 1[14] | construction for "substantially matches." | |
|---|---|---|---|

Although agreeing that the phrase "substantially matches" is definite, Infineon contends that the full claim phrases where the term appears are indefinite because "the patents provide insufficient guidance as to how to identify the two portions whose compositions must be compared." Defs.' Opening at 14. MACOM responds that Infineon is judicially estopped from making indefiniteness arguments and also that "there can be no serious question that the claim terms that Infineon argues are indefinite are understandable to a person of ordinary skill in the art. Pls.' Opening at 17.

MACOM argues that the phrases are sufficiently definite because "[a] person of ordinary skill in the art can readily understand the difference between a 'transition layer' and a 'gallium nitride material layer' based on the specification." Id. at 18. MACOM details the differences in the functions of the transition layer and the gallium nitride material layer and argues that one of ordinary skill in the art would be able to distinguish

---

[14] The parties list the claim phrases that include the term "substantially matches" as appearing in the following claims: '417 Patent, Claim 1; '921 Patent, Claim 15; and '862 Patent, Claim 16.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
|---|---|---|---|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

between the layers based on these differences. <u>Id.</u> Specifically, "[t]he GaN material layer is [] part of the active region formed by adding dopants" and the transition layer "bridge[s] the gap between the substrate and the GaN material layer to minimize cracking and defects in the active GaN material layer." <u>Id.</u>

Infineon argues that the specification describes multiple layers that are composed of gallium nitride or one of its alloys, such that the "chemical composition of layers does not allow one type of layer to be distinguished from another." Defs.' Opening at 15-16. Infineon counters MACOM's argument regarding the differing functions of the layers, arguing that the layers have overlapping functions that would similarly make it difficult to distinguish between the layers. Defs.' Response at 6-7. For instance, Infineon argues that MACOM's approach "entirely fails to account for the further difficulty of distinguishing these two layers from any intermediate layers" because "the transition layer and the intermediate layer are described as having the same functions." <u>Id.</u>

A claim term is indefinite if, "[the] claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." <u>Nautilus, Inc. v. Biosig Instruments, Inc.</u>, 134 S. Ct. 2120, 2124, 189 L. Ed. 2d 37 (2014). The burden is on the defendant to prove indefiniteness by clear and convincing evidence. <u>BASF Corp. v. Johnson Matthey Inc.</u>, 875 F.3d 1360, 1365 (Fed. Cir. 2017).

In its Tentative Order, the Court identified intrinsic and extrinsic evidence supporting a conclusion that a person of skill in the art would be able to tell where a particular layer begins and ends. For instance, with respect to other claim terms, Infineon emphasized that the Weeks Patents disclose various preferred methods for growing the layers of the semiconductor material. <u>See, e.g.</u> Defs.' Opening at 4-5 (describing how the layers are grown as part of arguments for terms "compositionally-graded layer" and "compositionally-graded transition layer"). The Weeks Patents refer to depositing the GaN layer and transition layer through a "metalorganic chemical vapor deposition" (MOCVD) process and specifically describe some considerations for growing each layer through such a process. '417 Patent at 8:57-10:3. An argument that a person of skill in the art would not be able to tell where a particular layer begins and ends would be unpersuasive in light of this disclosure.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
|---|---|---|---|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

This is particularly true as to the claims of the '921 Patent, which are method claims.  For instance, Claim 1 of the '921 Patent recites:

> 1.   A method of producing a semiconductor material comprising:
>      forming a compositionally-graded transition layer over a silicon
>           substrate; and
>      forming a gallium nitride material layer over the transition layer;
>      wherein a composition of said transition layer at a top surface thereof
>           substantially matches a composition of said gallium nitride
>           material layer at a bottom surface thereof.

'921 Patent, Claim 1.  The Court is not persuaded that a person of skill in the art would be unable to discern with reasonable certainty when she had switched from production of a transition layer to production of a gallium nitride material layer.  Indeed, with respect to another claim term, Infineon asserts that when the chemical reaction forming a particular layer is stopped, "an observable physical interface is formed, distinguishing the layer from any adjacent layer that may be subsequently formed on top of the layer."  Defs.' Opening at 4 (citing Shealy Decl., ¶ 23).  Infineon's expert specifically states,

> [e]ach layer is grown by a chemical reaction that, when stopped, creates an
> observable, physical interface.  That physical interface remains observable,
> even if the chemical reaction is restarted again to grow another layer of the
> same composition.  Thus, the boundaries of individual layers are physical
> and can be observed.  One layer can be distinguished by another both by
> virtue of the separate growth processes by which they are created and by the
> physical interface that separates them.

Shealy Decl., ¶ 23; see also Shealy Rebuttal Decl., ¶ 4.  Infineon's own expert testimony thus supports the conclusion that a person of skill in the art could identify the boundaries between the semiconductor layers.[15]

---

[15] Of course, MACOM's expert disagrees with Dr. Shealy on this point, stating,

> [w]hile there would normally be an observable interface if there is a
> compositional difference between the top of one layer and the bottom of an
> overlying layer, the same is not true if the bottom of the overlying layer has

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**              **'O'**

| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
|---|---|---|---|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

At the hearing, Infineon stood by its expert's statements that a person of skill in the art can identify boundaries between semiconductor layers, but asserted that these statements are irrelevant to its indefiniteness argument. Instead, Infineon urged that these claim phrases are indefinite because a person of skill in the art would not know how to label or identify the layers of an example semiconductor layer. Infineon specifically walked through examples in the Weeks Patents specification comparing the transition layer and the intermediate layer to support its arguments that both layers were disclosed as having the same functions, thickness, concentration of GaN, and placement in the semiconductor material.

Notably, none of the Asserted Claims that include the "substantially matches" phrases require an intermediate layer. Instead, like Claim 1 of the '921 Patent, the relevant independent claims of the '417 and '862 Patents only recite a transition layer and a GaN material layer. At most, dependent claims of these patents require an intermediate layer "over the silicon substrate and under the transition layer." See, e.g., '921 Patent, Claim 15. Such a layer would not intervene between the GaN material layer and the transition layer. A person of skill in the art reviewing the plain language of the claims would thus have no cause for concern regarding alleged similarities between the transition layer and an un-claimed intermediate layer somewhere between the transition layer and the GaN material layer.

Infineon's indefiniteness argument would only gain traction to the extent an intervening layer might be present between a GaN material layer and a transition layer in a hypothetical example that is not required by the claims. Even so, the Court still finds it relevant that Infineon believes a person of skill in the art can readily identify boundaries between layers. The Court also finds it relevant that Infineon advocated for—and the Court has adopted—a construction of "substantially matches" that requires the comparison between the GaN material layer and the transition layer to be the same,

---

the same composition as the top of the layer below. . . . [T]here would not necessarily be an observable physical difference at the interface of the layers.

Schubert Rebuttal Decl., ¶ 10; see also id. at ¶ 11 (arguing that there would not "necessarily be a stop in the deposition reaction between intermediate and transition layers and between the transition and GaN material layers.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
|----------|--------------------------|------|-------------|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

setting aside slight differences such as those introduced by the manufacturing process, compared to one another. For a hypothetical intervening layer to be present and the hypothetical semiconductor material to meet the limitations of the claims, the intervening layer would likely similarly need to substantially match the composition of the GaN material layer.

In addition, as MACOM notes, the specification describes the particular functions served by each of the layers and their specific contribution to the claimed semiconductor material. Pls.' Response at 10. For instance, the GaN material layer is the sought-after portion of the material that "permits highly energetic electronic transitions to occur." '417 Patent at 1:30; see also id. at 1:26-62, 3:62-63. The transition layer, meanwhile, "is compositionally-graded to lower stresses in the gallium nitride material layer which can result from differences in thermal expansion rates between the gallium nitride material and the substrate," reducing cracks in the GaN layer. Id. at 2:1-10. The intermediate layer "may further relieve stress in gallium nitride material layer **16**" and "may permit reduction of the thickness of transition layer **12**." Id. at 8:28-30, 8:32-35. An intermediate layer, moreover, as construed has a generally constant composition throughout its thickness. MACOM's expert further states that a person of skill would be able to identify the various layers based on "characteristics such as the placement of the specific layers, their thicknesses, the coefficients of thermal expansion, and the function within the stack of layers." Schubert Rebuttal Decl., ¶ 20. It is Infineon's burden, to show by clear and convincing evidence, that a person of skill in the art reviewing the intrinsic record would be unable to understand the scope of the claims with reasonable certainty. Even though Infineon has identified disclosure in the intrinsic record for its argument that the transition layer and intermediate layer cannot be readily distinguished by a person of skill in the art, Infineon's arguments do not persuade the Court that the particular claim phrases at issue are indefinite at this stage, particularly because the claims at issue do not recite an intermediate layer.

Liberty Ammunition, Inc. v. United States is distinguishable. 835 F.3d 1388 (Fed. Cir. 2016), cert. denied, 137 S. Ct. 1825 (2017). Liberty Ammunition involved construction of the term "reduced area of contact" for a projectile bullet. Id. at 1397. The Federal Circuit noted that "reduced area of contact" is a term of degree, and that the district court's construction created circumstances where numerous baseline projectiles resulted in mixed results as to infringement. Id. Here, beyond the term "substantially matches," the claim phrase does not involve a term of degree. There is no dispute based

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
|---|---|---|---|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

on the claim language that it is the transition layer that must be compared to the GaN material layer.

Although Infineon purports to formulate its indefiniteness arguments based on a discussion of the patent intrinsic record, Infineon appears to be focusing less on the disclosure of the patent, which identifies the various layers of the disclosed semiconductor material, but on the theoretical application of the claim language to a theoretical semiconductor product.  But applying the words of a claim to determine whether they cover a particular device is the exercise performed when making a patent infringement determination.  And as another court in this district recently noted, "a claim is not indefinite merely because it is difficult to determine whether one's own product infringes, for this difficulty may lie in the inadequacy of testing procedures rather than imprecision in the claim language." *Kaneka Corp. v. Zhejiang Medicine Co., Ltd. et al.*, No. LACV 11-02389 SJO (SSx), Dkt. 845, at *20-21 (C.D. Cal. Apr. 5, 2018) (collecting cases).

On this record, Infineon has not shown by clear and convincing evidence that these two claim phrases—(1) "a composition of said transition layer at a top surface thereof substantially matches a composition of said gallium nitride material layer at a bottom surface thereof" and (2) "a composition of said transition layer at a top surface thereof substantially matches a composition of said III-nitride layer at a bottom surface thereof"—are indefinite.[16]  No construction of these phrases is necessary.

/ / /

/ / /

/ / /

/ / /

/ / /

---

[16] Because the Court finds that the phrase is definite, it does not address MACOM's estoppel arguments.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

5. **"an alloy of gallium nitride selected from the group consisting of $Al_xIn_yGa_{(1-x-y)}N$, $In_yGa_{(1-y)}N$, and $Al_xGa_{(1-x)}N$"**

| Term | Claims | MACOM's Construction | Infineon's Construction |
|---|---|---|---|
| "an alloy of gallium nitride selected from the group consisting of $Al_xIn_yGa_{(1-x-y)}N$, $In_yGa_{(1-y)}N$, and $Al_xGa_{(1-x)}N$" | EP '927 Patent, Claim 4[17] | No construction is needed; the plain and ordinary meaning to one of skill in the art should be applied, including that x may equal zero, y may equal zero, representing a relative amount of each respective element as a percentage of the total amount of Group III elements (Al, In, Ga). | "an alloy of gallium nitride selected from the group consisting of $Al_xInyGa_{(1-x-y)}N$, $In_yGa_{(1-y)}N$, and $Al_xGa_{(1-x)}N$, wherein x, y, (1-x-y), (1-x) and (1-y) are decimals greater than 0 and less than 1, representing a relative amount of each respective element as a percentage of the total amount of all Group III elements (Al, In, Ga)" |

This claim term, "an alloy of gallium nitride selected from the group consisting of $Al_xIn_yGa_{(1-x-y)}N$, $In_yGa_{(1-y)}N$, and $Al_xGa_{(1-x)}N$," appears in Claim 4 of EP '927, which depends from Claim 1. Claims 1 and 4 recite:

1.      A semiconductor material (10) comprising:
a silicon substrate (14);
a compositionally-graded transition layer (12) formed over the
substrate, the transition layer including a back surface (18) and
a top surface (20), wherein the transition layer **comprises a
gallium nitride alloy** and a gallium concentration in the

---

[17] The parties list the claim phrase "an alloy of gallium nitride selected from the group consisting of $Al_xIn_yGa_{(1-x-y)}N$, $In_yGa_{(1-y)}N$, and $Al_xGa_{(1-x)}N$" as appearing in EP '927, Claim 10.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
|---|---|---|---|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

transition layer increases from the back surface to the front
surface of the transition layer;
an intermediate layer (28) formed over the substrate (14) and under
the transition layer (12); and
a gallium nitride material layer (16) formed over the transition layer,
the gallium nitride material layer having a crack level of less
than $0.0005 \mu m/ \mu m^2$.

4.      A semiconductor material according to any preceding claim, wherein
the transition layer (12) comprises **an alloy of gallium nitride selected
from the group consisting of $Al_xIn_yGa_{(1-x-y)}N$, $In_yGa_{(1-y)}N$, and $Al_xGa_{(1-x)}N$.**

EP '927 Patent, Claims 1, 4 (emphasis added).  The parties' primary dispute regarding
this claim term is whether the subscripts x or y as used in Claim 4 of EP '927 can equal
zero.  Pls.' Opening at 19; Defs.' Opening at 17-18.  Specifically, Infineon emphasizes
that the claim phrase refers to "an **alloy** of gallium nitride."  Defs.' Opening at 18
(emphasis added).

MACOM cites to claims in other Weeks Patents to support its argument that x and
y can equal zero.  See Pls.' Opening at 20.  Specifically, MACOM refers to Claims 1 and
2 of the '686 Patent and very similar clauses in Claims 1 and 2 of the '775 Patent.
Claims 1 and 2 of the '686 Patent recite:

1.      A semiconductor structure formed by a method comprising:
forming a discontinuously graded transition layer comprising **an alloy
of gallium nitride consisting of $Al_xIn_yGa_{(1-x-y)}N$;**
forming a gallium nitride layer over said transition layer.

2.      The semiconductor structure of claim 1, **wherein a value of y of said
transition layer is selected from the group consisting of zero and
substantially zero.**

'686 Patent, Claims 1 and 2 (emphasis added).  Infineon distinguishes these claims as
"significantly different from the limitation in dispute here."  Defs.' Response at 8.
Infineon notes that in Claims 1 and 2 of the '686 Patent, if y is zero, the resulting

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
|---|---|---|---|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

composition is still an alloy of aluminum nitride, AlGaN. <u>Id.</u> Infineon also emphasizes that Claim 4 of EP '927 includes three different formulas rather than one, and construing the terms in the context of Claim 4 to require that x and y have a non-zero value avoids "improper redundancy." <u>Id.</u>

In its responsive brief, MACOM raises additional claims, and specifically claims in the Weeks Family parent patent, the '287 Patent, to support its argument that x and y can equal zero. For instance, Claim 31 of the '287 Patent recites: "wherein the transition layer comprises an alloy of gallium nitride selected from the group consisting of $Al_xIn_yGa_{(1-x-y)}N$, $In_yGa_{(1-y)}N$, and $Al_xGa_{(1-x)}N$, wherein $0≤x≤1$ and $0≤y≤1$."

Infineon, meanwhile, relies on the specification to argue that an alloy of gallium nitride cannot be equivalent to the chemical composition "GaN." The Background of the Invention section of the Weeks Patents states, "[g]allium nitride materials include gallium nitride (GaN) and its alloys such as aluminum gallium nitride (AlGaN), indium gallium nitride (InGaN), and aluminum indium gallium nitride (AlInGaN)." '417 Patent at 1:26-28. The Weeks Patents further explain, "[a]ccording to one set of embodiments, transition layer **12** is composed of an alloy of gallium nitride such as $Al_xIn_yGa_{(1-x-y)}N$, $Al_xGa_{(1-x)}N$, and $In_yGa_{(1-y)}N$. It should be understood, however, that transition layers having other compositions may also be used." <u>Id.</u> at 4:14-16. The Weeks Patents later state,

> [i]t may be particularly preferred for transition layer **12** to have a **composition of GaN** at front surface **20**, when gallium nitride material layer **16** has a composition of GaN. **In other cases <u>when gallium nitride material layer is composed of an alloy of GaN</u>**, it may be preferable for the composition of transition layer **12** at front surface **20** to be the same as the composition of gallium nitride material layer **16**.

<u>Id.</u> at 4:52-59 (emphasis added). The specification's disclosure thus consistently distinguishes between gallium nitride and its alloys.

At the hearing, MACOM seemed to assert for the first time that gallium in the absence of nitride and vice-a-versa could also be considered a GaN alloy. This position is unpersuasive for the same reasons.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
| --- | --- | --- | --- |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

Ultimately, claim language in the other Weeks Patents claims supports the conclusion that x and/or y can equal zero at some point in the claimed transition layer. However, the Court notes that Claim 1 refers to "a **compositionally-graded** transition layer (12) . . . wherein the transition layer **comprises a gallium nitride alloy**." EP '927, Claim 1 (emphasis added). On its face, the claim language thus does not require that the layer be a gallium nitride alloy throughout the entire thickness of the compositionally-graded transition layer. It does, however, require a change in composition; a gallium nitride alloy need only be present somewhere in the layer. In other words, while the Weeks Patents claims support the conclusion that x and y can equal zero, at least one of x and y must be non-zero at some point in the layer. And conversely, at least one of x and y must be less than one at some point in the layer. The patent specification is clear that GaN and gallium nitride alloys are different, and Claim 1 specifically requires that the transition layer comprise a gallium nitride alloy.

At the hearing, Infineon urged that with respect to the first formula, $Al_xIn_yGa_{(1-x-y)}N$, the Court should clarify that both x and y must be non-zero at some point in the transition layer. The claim requires that "the transition layer (12) comprises **an alloy of gallium nitride selected from the group consisting of $Al_xIn_yGa_{(1-x-y)}N$, $In_yGa_{(1-y)}N$, and $Al_xGa_{(1-x)}N$**." EP '927, Claim 4 (emphasis added). In other words, to meet the limitations of the claim, just one of the three alloys must be present somewhere in the transition layer. Under these circumstances, the Court finds it unnecessary to specify as to each of the particular listed alloys further requirements for the x and y subscripts. If AlInGaN is not present somewhere in the layer, then either InGaN or AlGaN will have to be present in order to meet the claim limitation (which would be equivalent to either x or y being zero throughout the layer in the formula $Al_xIn_yGa_{(1-x-y)}N$).

For the reasons stated, no construction is needed for the phrase "[a]n alloy of gallium nitride selected from the group consisting of $Al_xIn_yGa_{(1-x-y)}N$, $In_yGa_{(1-y)}N$, and $Al_xGa_{(1-x)}N$."

/ / /

/ / /

/ / /

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
|---|---|---|---|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

**6.  "said transition layer is discontinuously graded"**

| Term | Claims | MACOM's Construction | Infineon's Construction |
|---|---|---|---|
| "said transition layer is discontinuously graded" | '775 Patent, Claim 1[18] | No construction is needed; the plain and ordinary meaning to one of skill in the art should be applied, including that "transition layer" can include multiple layers or sub-layers and that "compositionally-graded" and "transition" are not exact synonyms. | "a compositionally-graded layer that is discontinuously graded" |

The term "said transition layer is discontinuously graded" appears in Claim 1 of the '775 Patent.  Claim 1 of the '775 Patent recites:

1.      A semiconductor structure comprising:
a transition layer comprising an alloy of gallium nitride consisting of
$Al_xIn_yGa_{(1-x-y)}N$;
a gallium nitride layer over said transition layer;
wherein **said transition layer is discontinuously graded**.

'775 Patent, Claim 1 (emphasis added).

MACOM argues that Infineon's construction improperly interchanges the term "compositionally-graded" for "transition."  Pls.' Opening at 20-21.  MACOM argues that there are other claims in the Weeks Patents "that recite a 'compositionally-graded transition layer,' making clear that, when the patentee wanted to incorporate both concepts, it did so."  Id. at 21 (citing '921 Patent, Claims 1, 15).  MACOM also argues

---

[18] The parties list the claim phrase "said transition layer is discontinuously graded" as appearing in '775 Patent, Claim 2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
|---|---|---|---|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

that layers made up of components or sublayers should not be excluded from the claim language because a discontinuously-graded transition layer "necessarily has portions that have nonvarying compositions, such as a step-graded layer or a superlattice." Id.

"[Infineon] contends that the discontinuously-graded transition layer of Claim [1] must be a single layer and, therefore, a compositionally-graded layer." Defs.' Opening at 21. Infineon argues that the modifiers "continuous" and "discontinuous" are used by those skilled in the arts to "describe grading across the thickness of an individual layer as opposed to grading across multiple layers." Id. (citing Shealy Decl., ¶¶ 74-75). Infineon asserts that it is not arguing that "transition layer" and "compositionally-graded transition layer" are always interchangeable, but rather that, in this particular context, the phrasing is necessary given the claim's requirement that the transition layer be "discontinuously graded." Defs.' Response at 8-9.

Here, at least from Infineon's perspective, the core dispute is whether the phrase "discontinuously graded" necessarily requires that the transition layer be limited to a single, "compositionally-graded layer." The Weeks Patents use the term "discontinuous" only two times in the specification, stating first,

> **The composition in transition layer 12 may be graded across its thickness in a number of different manners. For example, the composition may be graded continuously, <u>discontinuously</u>, across the entire thickness, or across only a portion of the thickness**. As described above, the composition may be graded by varying the concentration of one or more of the elements (i.e., Ga, Al, In). FIGS. 2A to 2I illustrate exemplary manners in which the composition may be graded by varying the concentration of one of the elements as a function of thickness across transition layer **12**.

'417 Patent at 5:3-12 (emphasis added). Second, the Weeks Patents further specifically note, "FIG. 2H shows a **<u>discontinuous</u> variation of concentration** as a function of thickness." '417 Patent at 5:31-32 (emphasis added).

Infineon's argument that a transition layer can only be discontinuously graded when it consists of a single layer would take an improperly narrow view of Weeks Patent disclosure. Although true that the term "discontinuous" is used only twice in the Weeks Patent specification, both times it is used consistent with its plain and ordinary meaning.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

There is no disclosure in the specification requiring that a discontinuous variation can only occur across a single layer. Requiring that a transition layer be a single layer because the term "discontinuous" is used in the patent specification only in connection with single layers would improperly limit the meaning and scope of a commonly-understood term.

Moreover, when discussing the superlattice embodiment, the Weeks Patents state,

Referring to FIGS. 3A and 3B, transition layer **12** may be a compositionally-graded strained layer superlattice **22** according to another embodiment of the present invention. Superlattice **22** includes alternating layers **24** *a*, **24** *b* of semiconductor compounds having different compositions. In some cases, the composition across each individual layer **24** *a*, **24** *b* is varied according to any of the manners described above. **In other cases, the composition of individual layers 24 *a*, 24 *b* is constant across the thickness of the individual layer as shown in the concentration profile of FIGS. 4A and 4B. As shown in FIGS. 3B (and 4B), the thicknesses of individual layers 24 *a*, 24 *b* is varied across transition layer 12 to provide compositional grading.**

Id. at 5:39-51 (emphasis added). This disclosure does not use the term "discontinuous," but describes circumstances where compositional grading could effectively be discontinuous based on the potential variations in thickness and/or composition across multiple layers. Infineon has not provided a sufficient basis to support excluding this embodiment, which includes multiple layers, from the scope of the claim phrase.

The parties did not address the term "said transition layer is discontinuously graded" in their arguments at the claim construction hearing, and the Court finds no basis to depart from its tentative construction in view of the parties' arguments related to any of the other disputed terms.

For the reasons stated, no construction is necessary for the phrase "said transition layer is discontinuously graded."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
|---|---|---|---|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

7. **"an amorphous silicon nitride-based material layer formed directly on the entire top surface of the silicon substrate"**

| Term | Claims | MACOM's Construction | Infineon's Construction |
|---|---|---|---|
| "an amorphous silicon nitride-based material layer formed directly on the entire top surface of the silicon substrate" | '015 Patent, Claim 36[19] | "a non-crystalline silicon nitride-based material layer formed on essentially the entire top surface of the silicon substrate, with no intervening layer, although minor defects might exist" | "an amorphous silicon nitride-based material deposited as a separate layer on the entire top surface of the substrate rather than converting the top surface of the substrate to silicon nitride-based material" |

The claim term "an amorphous silicon nitride-based material layer formed directly on the entire top surface of the silicon substrate" appears in Claim 36 of the '015 Patent. Claim 36 recites:

36.  A semiconductor structure comprising:
a silicon substrate including a top surface;
**an amorphous silicon nitride-based material layer formed directly on the entire top surface of the silicon substrate** and having a thickness of less than 100 Angstroms;
a nitride-based material overlying layer formed on the amorphous silicon nitride-based material layer; and
a gallium nitride material region formed on the overlying layer.

---

[19] The parties list "the entire top surface" claim phrase as appearing in '015 Patent, Claim 41.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
|---|---|---|---|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

'015 Patent, Claim 36 (emphasis added). The parties have two main disputes regarding the term: (1) whether the "amorphous silicon nitride-based material layer" can be formed only through deposition or through nitridation (also called "conversion")[20, 21] and (2) whether "on the entire top surface of the silicon substrate" should be construed to exclude any defects or as "on essentially the entire top surface."

The '015 Patent states,

[a]s described further below, in some embodiments, the strain-absorbing layer may be formed by nitridating a top surface region of a silicon substrate. That is, the surface region of the substrate may be converted from silicon to a silicon nitride-based material to form the strain-absorbing layer. It should be understood that, as used herein, such strain-absorbing layers may be referred to as being "formed on the substrate", "formed over the substrate", "formed directly on the substrate" and as "covering the substrate". Such phrases also refer to strain-absorbing layers that are formed by depositing a separate layer (e.g., using a separate nitrogen source and silicon source) on the top surface of the substrate and are not formed by converting a surface region of the substrate.

---

[20] The '015 Patent states, "in some embodiments, the strain-absorbing layer may be formed by nitridating a top surface region of a silicon substrate. That is, the surface region of the substrate may be converted from silicon to a silicon nitride-based material to form the strain-absorbing layer." '015 Patent at 5:37-42. Based on this disclosure, each party adopts a different word to represent this formation process—MACOM chooses "nitridation" and Infineon chooses "conversion." See, e.g., Pls.' Opening at 23, Defs.' Opening at 22. The '015 Patent later again refers to "nitridating a top surface" "in a nitridation process." '015 Patent at 12:8-9. The Court will accordingly refer to the process as "nitridation," but takes the terms used by the parties to mean the same thing.

[21] In a footnote, MACOM asserts, "the dispute regarding whether the claims exclude nitridation processes also applies to all other claims of the '015 Patent, including asserted Claim 14." Pls.' Opening at 23.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
|---|---|---|---|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

'015 Patent at 5:37-50.  Infineon argues that the phrase "an amorphous silicon nitride-based material layer formed directly on the entire top surface of the silicon substrate" only refers to forming the layer through deposition because it includes the phrase "on the entire top surface of" and thus does not exactly track one of the four specific phrases called out by the patent specification.  See id. at 5:43-45 ("formed on the substrate," "formed over the substrate," "formed directly on the substrate," and "covering the substrate.").  Infineon also insists that nitridation cannot occur directly on a top surface region and instead only occurs on a region below the top surface.  Defs.' Opening at 23-24 (citing '015 Patent at 5:37-42).

In the sentences preceding the disclosure of the four specific phrases, the '015 Patent specifically refers to "nitriding **a top surface region** of a silicon substrate."  Id. at 5:38-39 (emphasis added); see also Schubert Rebuttal Decl., ¶ 41 (explaining that "[a] person of ordinary skill in the art would understand, however, that after the nitridation process, the silicon nitride layer has been formed on the surface of the remaining portion of the substrate.").  The language in the claims also otherwise tracks the language of one of the four phrases, "formed **directly on** the substrate."  Infineon's proposal relies on unnecessarily parsing the exact words and phrases used in the specification to support a limiting construction, but Infineon provides insufficient basis to support doing so.

At the hearing, Infineon reiterated its argument that nitridation cannot occur on the top surface of the substrate and instead occurs below the top region of the substrate.  However, when asked for clarification, Infineon agreed that the top surface of the substrate is also affected by the nitridation.  In other words, it is not that nitridation occurs underneath a top surface of the substrate with the top surface itself remaining the same.  Instead, nitridation converts the entire "top surface region" of the substrate, as the intrinsic record states.  '015 Patent at 5:38-39.  Infineon's argument classifying nitridation as occurring "below the top surface" is inconsistent with this understanding.  Moreover, following Infineon's logic, at least two of the other phrases condoned by the patent to refer to nitridation would also be incorrect: "formed over the substrate" and "covering the substrate," as these phrases would suggest a process that does not necessarily occur "below the top surface" of the substrate.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
|---|---|---|---|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

At the hearing, Infineon also reiterated an argument that the presumption that different claim terms have different meanings applies in this scenario. Infineon, however, does not identify other phrases in the claims of the same patent to support this argument. Instead, Infineon focuses on the four phrases identified by the specification as representing both nitridation and deposition, and the use of one of those phrases in a related patent. These arguments remain unpersuasive. Indeed, the '015 Patent lists at least four general phrases—not a single phrase—that could be used to mean both nitridation and deposition. That the phrase used in the claims of the '015 Patent does not exactly track one of those four phrases is an insufficient basis to limit the scope of the '015 Patent claims. MACOM also argued that the phrase "on the top surface" was included in the claim language simply to identify the exact surface on which the nitridation or conversion occurs, as opposed to, for example, the bottom surface or side surfaces. This position is persuasive and consistent with the explicit language of the claims.

Infineon also relies on the prosecution history to support its argument that the claims are limited to silicon nitride layers formed through deposition. Defs.' Response at 9. However, the prosecution history reveals only that the applicant elected to prosecute device claims rather than method claims. See Dkt. 452-5 ("Defs.' Ex. T") at 4. It does not support Infineon's argument for limiting the device claims to a particular process of manufacturing a semiconductor material.

Regarding the parties' dispute over the meaning of the word "entire" in the context of this claim phrase, MACOM argues that the specification does not address whether minor defects in the silicon nitride layer caused by dirt or clamps would lead a product to fall outside of the scope of the claims. Pls.' Opening at 25. MACOM argues that the phrase should be construed to account for such defects. Id. (citing Schubert Decl., ¶¶ 78-81.) Infineon notes that the '015 Patent specifically includes other claims covering less than the entire top surface. Defs.' Opening at 24 (citing '015 Patent, Claim 1). Infineon argues there is "no rule requiring that a claim be interpreted to cover alleged 'typical' embodiments," such as manufacturing processes using clamps. Defs.' Response at 10. Infineon also again relies on the prosecution history to support its argument, noting that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

during prosecution, the applicant narrowed the claim scope by changing the phrase "substantially the entire top surface" to "the entire top surface." Defs.' Ex. T at 18.

As Infineon notes, not all of the claims of the '015 Patent refer to "on the entire top surface" like Claim 36. For example, Claim 1 of the '015 Patent refers to "an amorphous silicon nitride-based material layer formed directly on a majority of the top surface of the substrate." '015 Patent, Claim 1. Claim 2 then narrows the scope to require that the silicon nitride-based layer is formed "directly on the entire top surface of the substrate." Id. at Claim 2.

Likewise, the '015 Patent specification states,

[i]n the illustrative embodiment, the strain-absorbing layer **covers** substantially the entire top surface of the substrate. . . . In other embodiments, the strain-absorbing layer may **cover** a majority of the top surface of the substrate (e.g., greater than 50 percent or greater than 75 percent of the top surface area). Also, in the illustrative embodiment, strain-absorbing layer **12 is formed** across the entire area between the substrate and the overlying layer. That is, the strain-absorbing layer **separates the substrate and the overlying layer at all points** with the strain-absorbing layer being directly on the substrate and the overlying layer being directly on the strain-absorbing layer.

'015 Patent at 5:51-64 (emphasis added). Infineon's cited portion of the prosecution history is consistent with this disclosure and the understanding that the phrase the "entire" top surface has a specific meaning distinguished from phrases like "substantially the entire top surface" and "a majority of the top surface." Indeed, as this disclosure from the specification states, greater than 75% of the top surface area could be considered "a majority." Notably, a speck of dirt that is accidentally incorporated into a silicon nitride-based material layer would not seem to be inconsistent with either this disclosure or even Infineon's proposed construction, which refers to the process of "**depositing**" the layer on a top surface. MACOM's argument in its opening brief, however, makes clear that its proposal to include the phrases "essentially the entire" and "although minor defects might

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

exist" in the construction of this term are also intended to account for larger defects, including "locations where the top of the substrate is blocked, for example, by clamps." See Pls.' Opening at 25 (citing Schubert Decl., ¶ 78). MACOM's argument that these "defects" should be covered by the claim term is unpersuasive. In addition to the intrinsic evidence discussed, as Infineon points out, MACOM's expert's statement that manufacturing processes do not "typically" cover the entire substrate "apparently conced[es] that it is possible to make a silicon nitride layer that covers the entire substrate." Defs.' Response at 10; see also Shealy Decl., ¶ 35 ("Although claims may have been used at times, they were certainly not required.").

For the reasons stated, "an amorphous silicon nitride-based material layer formed directly on the entire top surface of the silicon substrate" need not be construed.

### 8. "a silicon nitride-based material layer formed between the silicon substrate and the III-nitride material region"

| Term | Claims | MACOM's Construction | Infineon's Construction |
|---|---|---|---|
| "a silicon nitride-based material layer formed between the silicon substrate and the III-nitride material region" | '889 Patent, Claim 9 | No construction is needed; the plain and ordinary meaning to one of skill in the art should be applied. | Indefinite. |

The claim term "A silicon nitride-based material layer formed between the silicon substrate and the III-nitride material region" appears in Claim 9 of the '889 Patent, which depends from independent Claim 1. Claims 1 and 9 recite:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
|---|---|---|---|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

1.      A semiconductor structure comprising:
   a silicon substrate having a resistivity of greater than $10^2$ Ohms-cm,
      the silicon substrate including a top surface region having a
      peak free carrier concentration of less than $10^{17}/cm^3$; and
   a III-nitride material region formed over the top surface of the silicon
      substrate.

9.      The structure of claim 1, further comprising **a silicon nitride-based
material layer formed between the silicon substrate and the III-nitride
material region**.

'889 Patent, Claims 1, 9 (emphasis added).  Infineon argues this claim phrase is indefinite because the specification introduces uncertainty as to the intended meaning of the term. Specifically, the '889 Patent specification states that when a layer is "formed between" the substrate and III-nitride region, the "III-nitride material region may be formed directly on the substrate."  '889 Patent at 5:3-6.  However, the '889 Patent also states that to be formed "directly on" means "no intervening structure is present."  Id. at 3:8-9. Infineon argues, "[t]hese contradictory statements make no sense, and the '889 Patent provides no guidance on how to reconcile these statements with the plain and ordinary meaning of 'formed between.'"  Defs.' Opening at 26.  MACOM argues that Infineon is relying on a "typo" (Pls.' Response at 14 (citing Schubert Rebuttal Decl., ¶ 45)) to support its argument, and further notes that even if the relevant sentence in the specification is taken at face value it uses the phrase "III-nitride material region **may be** formed directly on the substrate."  Pls.' Response at 14 n.6 (citing '889 Patent at 5:5-6 (emphasis added)).

The full disputed phrase of the patent specification states:

Structures of the invention may include a layer formed between the substrate and the III-nitride material region.  Thus, in these cases, the III-nitride material region may be formed directly on the substrate.  In some cases,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
|---|---|---|---|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

structures may include more than one layer between the substrate and the III-nitride material region.

'889 Patent at 5:3-8. The patent elsewhere states,

> [w]hen a structure (e.g., layer and/or device) is referred to as being "on" or "over" another structure (e.g., layer or substrate), it can be directly on the structure, or an intervening structure (e.g., a layer, air gap) also may be present. A structure that is "directly on" another structure means that no intervening structure is present. It should also be understood that when a structure is referred to as being "on" or "over" another structure, it may cover the entire structure, or a portion of the structure.

Id. at 3:4-12. In the Tentative Order, the Court observed that neither of these passages **requires** that a III-nitride region be formed directly on the substrate. See id. at 5:5-6 ("the III-nitride region **may be** formed directly on the substrate."). The Court also suggested that this disclosure might contemplate a situation where a layer formed between the substrate and the III-nitride material region only covers a portion of the surface, so that there may be direct contact between other portions of the III-nitride material and substrate.

At the hearing, Infineon argued that even MACOM recognized that the patent's disclosure included an inconsistency, and implied that it would be improper to "fix" such an inconsistency as the Court did in its tentative analysis. Infineon, however, did not respond to the fact that the specification passage it relies on uses permissive language. Infineon also did not dispute that the claim language on its face is clear. Infineon has failed to persuasively argue that a person of skill in the art, first and foremost reading the claim language and considering that language in the context of the specification as a whole, would be unable to discern the meaning of this claim phrase with reasonable certainty.

The scope of the claim phrase "a silicon nitride-based material layer formed between the silicon substrate and the III-nitride material region" is reasonably certain and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-02859-CAS(PLAx) | Date | May 9, 2018 |
|---|---|---|---|
| Title | MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC. ET AL V. INFINEON TECHNOLOGIES AG ET AL | | |

no construction of the phrase is necessary. For that reason, MACOM's estoppel arguments will again not be addressed.

### 9. "the via is formed through the substrate"

| Term | Claims | MACOM's Construction | Infineon's Construction |
|---|---|---|---|
| "the via is formed through the substrate" | '002 Patent, Claim 8 | No construction is needed; the plain and ordinary meaning to one of skill in the art should be applied, including that the via forms a vertical conducting path through the substrate and that the via need not be created using a particular manufacturing process (*e.g.*, this claim is not limited to vias that are etched from the backside of the substrate to the front side of the substrate). | "the opening is etched from the bottom surface to at least the top surface of the substrate" |

The claim term "the via is formed through the substrate" appears in Claim 8 of the '002 Patent, which depends from Claim 1. Claims 1 and 8 recite:

1.    A semiconductor structure comprising:
    a silicon substrate having at least one via extending from a backside of
        the substrate;
    an electrical contact formed in the via; and
    a gallium nitride material region formed over the substrate.