1  LINDA M. BURROW, Bar No. 194668
2    *lburrow@bsfllp.com*
   ALISON MACKENZIE, Bar No. 242280
3    *amackenzie@bsfllp.com*
4  BOIES SCHILLER FLEXNER LLP
   725 South Figueroa Street 31st Floor
5  Los Angeles, CA  90017-5524
   Telephone:  213-629-9040 / Fax:  213-629-9022
6  Attorneys for Defendants

7  Amanda Tessar (admitted *pro hac vice*)
8  ATessar@perkinscoie.com
   PERKINS COIE LLP
9  1900 Sixteenth Street, Suite 1400
   Denver, CO  80202-5255
10 Telephone:  303.291.2300
   Facsimile:  303.291.2400
11 **ATTORNEYS FOR PLAINTIFFS**

12 (Additional Counsel Listed on Signature Page)

13

14              **UNITED STATES DISTRICT COURT**
15     **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

16 MACOM TECHNOLOGY                    Case No. CV 16-02859 CAS (PLAx)
   SOLUTIONS HOLDINGS INC. and
17 NITRONEX, LLC,                      **JOINT STIPULATION**
                                       **REGARDING DEFENDANTS'**
18              Plaintiffs,            **MOTION TO COMPEL**

19      v.                            Mag. Judge: Hon. Paul L. Abrams
                                      Hearing Date: June 27, 2018
20                                    Hearing Time: 10:00 a.m.
   INFINEON TECHNOLOGIES AG, *et*     Courtroom: 780, 7th Floor
21 *al.*,
                                      Discovery Cutoff: June 29, 2018
22              Defendants.           Pretrial Conference: February 4, 2019
23                                    Trial Date: February 26, 2019

24

25

26

27

28

1  **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

2      **PLEASE TAKE NOTICE** that on June 27, 2018, at 10:00 A.M., or as soon

3  thereafter as this matter may be heard, in the courtroom of the Honorable Paul L.

4  Abrams, located in the Roybal Federal Building and United States Courthouse, 255

5  E. Temple Street, Courtroom 780, 7th Floor, Los Angeles, CA 90012, Defendants

6  Infineon Technologies AG ("Infineon AG") and Infineon Technologies Americas

7  Corporation ("Infineon Americas") (collectively, "Defendants") will and hereby do

8  move this Court to compel Plaintiff MACOM Technology Solutions Holdings Inc.

9  ("MACOM" or "Plaintiff," and collectively with Nitronex, LLC, "Plaintiffs") to

10  respond to Defendants' discovery requests and produce documents.

11      The parties discussed, by telephone, the grounds of Defendants' motion on

12  March 26, 2018, April 9, 2018, April 11, 2018, May 14, 2018, May 15, 2018, and

13  May 18, 2018.  The parties could not reach a resolution and therefore file the

14  following Joint Stipulation pursuant to Civil Local Rule 37-2.

15

16   Dated:  May 31, 2018            **JEFFERY D. BAXTER**

17                                   **BAKER BOTTS LLP**

18

19

20   By: /s/ *Jeffery D. Baxter*

      Jeffery D. Baxter (admitted *pro hac vice*)
21    jeff.baxter@bakerbotts.com

22   **ATTORNEY FOR DEFENDANTS**

23

24

25

26

27

28

i

1

**Table of Contents**

2

3    INTRODUCTION .................................................................................2

4        A.    Defendants' Introductory Statement ........................................2

5

6        B.    Plaintiffs' Introductory Statement..........................................4

7    ARGUMENT ......................................................................................8

8        C.    Defendants' Interrogatory No. 10 ..........................................8

9            1.    Defendants' Argument ........................................17

10               a)    Background....................................................17

11

12               b)    Plaintiffs must provide the factual bases for their lost profits damage claims, including the identity of the alleged customers and customer projects which resulted in Plaintiffs' lost sales, the time periods during which Plaintiffs lost sales, facts relating to causation, and how Plaintiffs propose to measure the amount of lost sales or profits................................................................20

13

14

15

16

17               c)    Plaintiffs must provide the factual bases of their damages claim relating to delayed execution of agreements with manufacturing partners, including the identity of the agreements and manufacturing partners, facts relating to how long execution of each agreement was delayed, facts relating to how Defendants caused each delay, facts relating to how each delay harmed Plaintiffs, and how Plaintiffs propose to measure the amount of damages. ..................24

18

19

20

21

22

23               d)    Plaintiffs must identify the legal and factual bases for any financial remedies that they seek. ....................................25

24

25               e)    Plaintiffs cannot delay a full response to Interrogatory No. 10 until the expert stage because this interrogatory seeks facts supporting Plaintiffs' damages contentions...26

26

27           2.    Plaintiffs' Argument:  This Issue Is Moot ...........................27

28       D.    Defendants' Request for Production No. 216......................................29

1.         Defendants' Argument ........................................................34

    a)     Background......................................................................34

    b)     Plaintiffs' responses to Defendants' RFPs improperly incorporate by reference responses to other, unrelated RFPs. ................................................................................35

    c)     Plaintiffs must produce documents responsive to RFP 216 by providing sales documents and invoices referenced in their spreadsheets. ..........................................................36

2.         Plaintiffs' Argument ..........................................................38

      a.     MACOM's Response Complies With Rule 34.........38

      b.     Infineon Seeks Duplicative Documents That Are Unduly Burdensome To Collect ................................39

E.    Defendants' Requests for Production Nos. 150, 152, and 153...........44

   1.         Defendants' Argument ........................................................50

    a)     Background......................................................................51

    b)     Plaintiffs' responses to RFPs 150, 152, and 153 contain the familiar deficiency of vague and non-responsive incorporation by reference of other, unrelated responses.51

    c)     Plaintiffs must produce documents responsive to RFPs 150, 152, and 153 because market share information, which Plaintiffs allude to in response to Interrogatory No. 10, is probative of Plaintiffs' lost profits theory.......................52

   2.         Plaintiffs' Argument: This Issue Is Moot ............................53

F.    Defendants' Requests for Production Nos. 203, 206, and 209...........53

   1.         Defendants' Argument ........................................................57

    a)     Background......................................................................57

    b)     Plaintiffs must produce documents responsive to RFPs 203, 206, and 209 because these documents will show their

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

relationship with their partner, which Plaintiffs put at issue
in their response to Interrogatory No. 10. ........................59

2.      Plaintiffs' Argument:  This Issue Is Moot ..........................60

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1       **INTRODUCTION**

2           Pursuant to Local Civil Rule 37-2, Defendants Infineon Technologies AG

3   ("Infineon AG") and Infineon Technologies Americas Corporation ("Infineon

4   Americas") (collectively, "Defendants") and Plaintiff MACOM Technology

5   Solutions Holdings and Nitronex, LLC, (collectively, "Plaintiffs" or "MACOM"), file

6   this Joint Stipulation Regarding Defendants' Motion to Compel Discovery

7   Responses.

8       **A.      Defendants' Introductory Statement**

9           In August 2017, Defendants served their Interrogatory No. 10 on Plaintiffs,

10  seeking the factual and legal bases supporting Plaintiffs' damages contentions.  Over

11  nine months later, with the close of fact discovery in approximately one month,

12  Plaintiffs have *still* not responded to this interrogatory by stating the facts supporting

13  their damages theory.

14          Plaintiffs' failure to adequately respond to Interrogatory No. 10 inhibits

15  Defendants' discovery of facts underlying Plaintiffs' damages theory.  As a result,

16  this motion seeks to compel Plaintiffs' compliance with four sets of requests:

17  (1) Defendants' Interrogatory No. 10, which seeks the factual and legal support for

18  Plaintiffs' damages contentions; (2) Defendants' Request for Production ("RFP") No.

19  216, which requests certain of Plaintiffs' financial documents, such as invoices;

20  (3) Defendants' RFPs 150, 152, and 153, which seek documents relating to the market

21  share of Plaintiffs' Covered Products and the identity and market share of any

22  competing products; and (4) Defendants' RFPs 203, 206, and 209, which seek

23  documents and communications relating to ST Microelectronics, one of Plaintiffs'

24  key manufacturing partners and suppliers.  At a high level, these discovery requests

25  seek information central to Plaintiffs' damages theory.

26          As Plaintiffs recently stated in their supplemental response to Interrogatory No.

27  10 (which is a subject of this motion), Plaintiffs seek lost profits.  With respect to this

28  Interrogatory, Plaintiffs must identify the facts supporting this theory.  As discussed

2

in detail below, Plaintiffs arbitrarily blew past an agreed deadline for supplementing their response to Interrogatory No. 10, with no notice to Defendants of their intent to do so until the very date of that deadline.  When Plaintiffs finally served their supplemental response, it remained deficient.  By vaguely referencing only one aspect of Defendants' allegedly wrongful conduct, the response failed to link Plaintiffs' damages theories to the specific causes of action for which they purport to seek damages.  Further, by glossing over the results of this allegedly wrongful conduct, the response omits any meaningful details.  For example, Plaintiffs allege that Defendants "diverted customer interest" from certain of Plaintiffs' products—without identifying a single customer, timeframe, or communication and without explaining how Defendants did so.  Lacking factual details like these, Plaintiffs' response to Interrogatory No. 10 prevents Defendants from understanding Plaintiffs' damages theory and conducting meaningful fact discovery on it.

Turning to Plaintiffs' responses to Defendants' RFPs, RFP 216 requests financial documents, such as invoices, that are critical to Plaintiffs' lost profits theory; Plaintiffs purport to have summarized these documents in summary sales spreadsheets but have not provided them.  RFPs 150, 152, and 153 seek information relating to the market share for Plaintiffs' Covered Products and the identity and market share of any competing products, which again will show Plaintiffs' position in the market and how Defendants allegedly affected it.  RFPs 203, 206, and 209 seek information relating to ST Microelectronics, one of Plaintiffs' main suppliers of component parts for the Covered Products; in response to Interrogatory No. 10, Plaintiffs allege that Defendants harmed agreements and relationships with manufacturing partners, and through these RFPs, Defendants seek to probe that allegation with respect to ST.

Before even considering the content of Plaintiffs' responses to the RFPs, many are formally deficient.  Throughout their responses, Plaintiffs consistently merely "incorporate by reference" other responses, without ever providing a direct response to the request at issue.  This practice makes understanding Plaintiffs' responses

needlessly difficult because interpreting the response to one simple RFP leads down a rabbit hole of many other responses.  Unsurprisingly, the incorporated responses to *other requests* invariably fail to state whether responsive documents are being produced for the specific request at issue.  Determining what documents, if any, are actually being produced in response to the request at issue thus requires a good deal of guesswork.  Such a tactic is improper.

Substantively, Plaintiffs' RFP responses miss the mark.  In order to understand Plaintiffs' alleged lost profits, Defendants are entitled to the actual financial and sales documents in Plaintiffs' possession.  And because this theory necessarily implicates the strength of Plaintiffs' position in the marketplace, Defendants must explore that position through the market shares of Plaintiffs' products and competing products, as well as through Plaintiffs' key supplier.

For the following reasons, Defendants request that Plaintiffs (1) supplement their response to Interrogatory No. 10 by providing facts to support their damages theory and legal contentions connecting this theory to their claims for relief; (2) produce documents responsive to RFP 216; (3) produce documents responsive to RFPs 150, 152, and 153; and (4) produce documents responsive to RFPs 203, 206, and 209.

### B.  Plaintiffs' Introductory Statement

Three of the four issues in Infineon's joint stipulation (those related to Interrogatory No. 10, RFP Nos. 150, 152, and 153, and RFP Nos. 203, 206, and 209) are now moot, as MACOM has agreed to provide the requested information.  MACOM asked Infineon to withdraw its motion and re-serve it with the single remaining issue (RFP No. 216), but Infineon repeatedly refused. Ex. C, D.  It also refused MACOM a three-day extension to respond to this joint stipulation, despite the Memorial Day weekend that fell during MACOM's seven-day response time. *Id*.  Indeed, Infineon refused any discussions with MACOM about any alternative briefing schedule other than that in the Local Rules. *Id*.  This approach is apparently

due to Infineon's desire to have its first motion to compel (*i.e.*, this largely-moot one) heard "first," on June 20th, at all costs—even if it has to violate the Local Rules to accomplish that goal.[1]

With respect to the single issue that remains for resolution, RFP No. 216, Infineon's request is unreasonable and disproportionate to its legitimate needs of this case. By way of background, MACOM and Infineon are parties to a 2010 License Agreement that gives MACOM exclusive rights to practice foundational gallium-nitride-on-silicon ("GaN-on-Si") patents. Dkt. 141 at 3-5. Through that same agreement, Infineon promised that it would ***not*** market or sell products in MACOM's exclusive field. *Id.* When Infineon purported to terminate the parties' agreement in 2016, this suit followed. Dkt. 1. The reason for Infineon's pretextual termination soon became clear when MACOM learned of and added claims of breach of contract based on Infineon's activities in marketing and selling products in MACOM's exclusive field. Dkt. 65. Meanwhile, MACOM moved for a preliminary injunction, seeking a declaration that MACOM's license remains in effect. Judge Snyder granted MACOM's motion, and the Federal Circuit has since affirmed as a matter of law that the license remains in effect. Dkt. 141; Dkt. 419.

As explained in detail in its existing response to Infineon's damages

---

[1]  Infineon cannot file this Joint Stipulation on a timeline to have it be heard on June 20th consistently with the Local Rules. Ex. C; L.R. 37-2.2 (allowing one day for non-moving party to review final stipulation). Moreover, rather than combining all of its discovery complaints in a single motion, Infineon served a second motion that raises ten more (also meritless) complaints three days after the first. That second motion will be set to be heard on June 27th, along with a motion that MACOM is filing. It would be most logical to consider all pending discovery issues together on the 27th, but Infineon refused to proceed that way. Ex. D. Infineon's insistence on jamming MACOM with two motions (totaling almost 150 pages with Infineon's sections alone) right before the Memorial Day holiday weekend, and then refusing to agree to a reasonable briefing schedule, ***cannot*** be blamed on the fact that discovery closes shortly, since the parties are discussing a two-month (or possibly longer) extension of the schedule. Dkt. 504.

interrogatory (Interrogatory No. 10, quoted below), Infineon's improper marketing in MACOM's exclusive field has negatively impacted MACOM's sales and expected sales, causing MACOM to suffer lost profits now and in the future.  Given the relevance of MACOM's GaN-on-Si sales to these damages theories, MACOM prepared detailed spreadsheets itemizing *all* of its GaN-on-Si and GaN-on-SiC sales. These spreadsheets are drawn from MACOM's sales database and use the same information that MACOM regularly uses and relies on as part of its ordinary business operations.  Hansen Dec., ¶¶3-4.  Indeed, MACOM is a publicly-traded company, and even its outside independent auditors rely on precisely this type of data for their work.  *Id.*  There is not a more reliable source for this information.  *Id.*

The spreadsheets that MACOM produced to Infineon contain summary sales data, neatly organized with both quarterly totals and totals per product.  But they *also* provide back-up data for each and every individual sale of each GaN-on-Si product.  *See* Ex. A.  For every one of the thousands of individual product sales that are summarized, MACOM also provides in the spreadsheets, among other information: the product number and product line that are the subject of each individual sale; the purchaser's name; the location/country where the purchaser is located; the shipment date; the price of the product sold; an identification of whether the sale was made to a distributor; if so, the name of the end customer purchasing from the distributor (where that information is known by MACOM); and the standard cost associated with the product of the sale.  *Id.*

Infineon did not provide the Court with these spreadsheets, despite their centrality to its motion.  MACOM therefore provides an example in Exhibit A. These spreadsheets have thousands of individual entries.  *E.g.* Ex. A at 12-29.

Infineon has provided no reason to question the accuracy of the detailed sales reports MACOM provided.  Nevertheless, Infineon served RFP No. 216, which seeks "[a]ll documents representing U.S. and worldwide sales" (whatever that means), for GaN-on-Si and GaN-on-SiC sales, "including all invoices referenced in

1   MACOM-INF-03[]5806, MACOM-INF- 03[]5807, and MACOM-INF-03[]5808."

2       It would be disproportionately burdensome for MACOM to collect the

3   requested documents.  Each invoice (for ▮▮▮▮▮▮▮ transactions) would have to be

4   manually pulled from MACOM's system.  Hansen Dec., ¶¶9-10.  Even assuming

5   that it only took 5 minutes per document, that would total over 110 man-hours—

6   nearly three weeks full-time for a MACOM employee—all just to get data already

7   in the spreadsheets.  *Id.* at ¶9.  The invoices, moreover, do not add anything

8   meaningful to the analysis; they merely contain the same information in the

9   spreadsheet.  *Id.* at 8.

10       The only reason Infineon has given for needing this data is the speculation

11   that it wants "[t]o search for valuable information potentially omitted from these

12   spreadsheets, and to verify the spreadsheets' accuracy."  But Infineon has not

13   suggested any reason to doubt the veracity of the data in the spreadsheets.  There is

14   no justification for this onerous demand.

15       MACOM respectfully requests that the Court deny Infineon's motion.

16

17

18

19

20

21

22

23

24

25

26

27

28

**ARGUMENT**

**C.    Defendants' Interrogatory No. 10**

Below are Defendants' Interrogatory No. 10 and Plaintiffs' response and supplemental response.

INTERROGATORY NO. 10

State in complete detail all financial remedies, including any claim for damages in the form of lost profits or a reasonable royalty, to which You contend You are entitled in this case, including without limitation all factual and legal bases for such contentions and a detailed description of the amount of such damages and how such damages have been calculated, the accused products for which You claim damages, the type and amount of damages sought on a product-by-product basis, the time period for which damages are sought, the basis and methodology used to calculate any such amounts, any profits You contend You lost, the amount of such lost profits, the period of time during which You claim such lost profits, the method by which You have calculated that amount, the form of royalty You contend is appropriate, any royalty rate You contend should apply and the royalty base You contend it should be applied to, the factors by which You calculated that royalty rate, including Your assessment of the facts set forth in *Georgia Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), the factors by which You determined the royalty base to which the rate should be applied, and an identification of all Documents that You contend support Your alleged financial remedies and Persons with knowledge regarding the same.

RESPONSE TO INTERROGATORY NO. 10

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects to the Interrogatory as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Interrogatory as compound. MACOM objects to this Interrogatory as premature. MACOM objects

8

to the terms "detail," "financial remedies," "claim for damages," "contend," "factual and legal bases," "detailed description," "accused products," "damages," "basis," "methodology," "calculate," "profits," "method," 'Royalty," "Royalty rate," "Royalty base," "factors," and "identification" as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Interrogatory on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to the extent this Interrogatory seeks information in Defendants' possession and/or that is publicly available. MACOM objects to the extent this Interrogatory calls for expert testimony. MACOM objects to the extent this Interrogatory seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects that this Interrogatory is not reasonably limited as to time and thus seeks to impose undue burden on MACOM. MACOM objects to this Interrogatory to the extent it seeks third-party confidential information that MACOM is not permitted to disclose under applicable protective orders and/or private agreements. MACOM objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: This Interrogatory is premature and calls for information more appropriately sought during expert discovery. MACOM will supplement its response to this Interrogatory at the appropriate time during expert discovery.

MACOM's investigation of the subject matter of this Interrogatory is ongoing. Pursuant to Federal Rule of Civil Procedure 26(e), MACOM reserves the right to supplement this Response as further information becomes available.

SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 10

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows:

Infineon's request is premature because of its own failure to provide fact discovery and because damages is more appropriately a topic of expert testimony and discovery. MACOM reserves the right to supplement and modify the contentions described in this response.



10





MACOM also incorporates by reference its response to Interrogatory No. 15.

MACOM's investigation of the subject matter of this Interrogatory is ongoing. Pursuant to Federal Rule of Civil Procedure 26(e), MACOM reserves the right to supplement this Response as further information becomes available.

Below are Defendants' Interrogatory No. 15 and Plaintiffs' response and supplemental response, which are incorporated by reference into Plaintiffs' response to Interrogatory No. 10.

INTERROGATORY NO. 15

Describe all factual and legal bases for your contentions that you are entitled to rescind the 2010 License[] Agreement and/or the 2010 IP Purchase Agreement, including but not limited identification of the statutory subsections in Cal. Civ. Code § 1689 on which MACOM is relying and the factual and legal basis for your assertion that such statutory subsection is satisfied.

<u>RESPONSE TO INTERROGATORY NO. 15</u>

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects to the Interrogatory as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Interrogatory as compound. MACOM objects to this Interrogatory to the extent it lacks foundation. MACOM objects to this Interrogatory as premature. MACOM objects to the terms "factual," "legal," "bases," "contentions," "entitled," "rescind," "Licensed Agreement," "identification," "statutory subsection," "relying," "assertion," and "satisfied" as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Interrogatory on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to the extent this Interrogatory seeks information in Defendants' possession and/or that is publicly available. MACOM objects to the extent this Interrogatory seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects that this Interrogatory is not reasonably limited as to time and thus seeks to impose undue burden on MACOM. MACOM objects to this Interrogatory to the extent it seeks third-party confidential information that MACOM is not permitted to disclose under applicable protective orders and/or private agreements. MACOM objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: This Interrogatory lacks foundation and misconstrues MACOM's contentions. MACOM does not contend it currently holds title to the Nitronex Patents. Rather, MACOM identified rescission as a potential alternative form of relief in its Second Amended Complaint to the extent that Infineon takes the position or succeeds on arguments that the 2010 License or IP Purchase Agreements are void or invalid under state or federal

antitrust laws (or otherwise) or to the extent that rescission is otherwise permitted as a remedy under the law. Additionally, MACOM contends that Infineon is obligated under Section 4.02 to assign title to identified Nitronex Patents for enforcement because of Infineon's failure to enforce the Nitronex Patents itself.

MACOM's investigation of the subject matter of this Interrogatory is ongoing. Pursuant to Federal Rule of Civil Procedure 26(e), MACOM reserves the right to supplement this Response as further information becomes available.

SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 15

Subject to and without waiving the foregoing general and specific objections, MACOM supplements its response as follows:

California law provides that "one party to a contract may rescind the contract if the other party refuses or fails to fully perform." *Larson v. Warner Bros. Entm't Inc.*, No. 2:04-CV-08400-ODW, 2013 WL 1164434, at *4 (C.D. Cal. Mar. 20, 2013). "Rescission is not a freestanding cause of action, but rather relief that may be granted as a result of unlawful conduct." *Moreno v. Citibank, N.A.*, No. C 09-5339 CW, 2010 WL 1038222, at *4 (N.D. Cal. Mar. 19, 2010). A party is allowed to seek rescission as an alternative remedy for damages. *See, e.g., Lenard v. Edmonds*, 151 Cal.App.2d 764, 768, 312 P.2d 308, 310 (Cal. Dist. Ct. App. 1957) ("[R]escission and damages are alternative remedies..."); *DeCampos v. State Comp. Ins. Fund*, 122 Cal.App.2d 519, 526, 265 P.2d 617, 620-21 (Cal. Dist. Ct. App 1954). One can effect rescission through "the service of a pleading in an action or proceeding that seeks relief based on rescission." Cal. Civ. Code § 1691; *see also* Dkt. 271 at 15.

Cal. Civ. Code Section 1689(b)(2) states that a party may rescind "[i]f the consideration for the obligation of the rescinding party fails, in whole or in part, through the fault of the party as to whom he rescinds." A party may exercise

14

its right to rescind for a partial failure of consideration "although there has been a partial performance by the party against whom the right is exercised." *Coleman v. Mora*, 263 Cal. App. 2d 137, 150, 69 Cal. Rptr. 166, 173 (Ct. App. 1968).

There are multiple grounds for rescission here, including but not limited to those identified in MACOM's initial response to this Interrogatory, and as the facts described in MACOM's Second Amended Complaint support. First, the 2010 IP Purchase Agreement provides that in return for International Rectifier paying $6,000,000 outright, executing the 2010 License Agreement back to Nitronex, executing a $270,500 purchase order for various materials and services, and paying an additional $3,000,000 for equity in Nitronex, Nitronex would assign to International Rectifier fifty-four U.S. and international patents and applications, as well as the right to file related applications. The 2010 License Agreement, in turn, granted Nitronex exclusive rights to develop and sell GaN-on-Si products for many of the most valuable RF applications, including cellular telephone infrastructure base stations and repeaters. "Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." Cal. Civ. Code § 1642; *Versaci v. Super. Ct.*, 26 Cal. Rptr. 3d 92, 97–98 (Cal. App. 4th Dist. 2005) ("It is a familiar rule ... that where several papers covering the same subject matter are executed by ... the same parties ..., all are to be considered together, and with the same effect as if all had been incorporated in one document.") (citation omitted).

Through no fault of MACOM's, Infineon purported to terminate the 2010 License Agreement in a letter dated March 22, 2016.

In addition, Infineon breached the 2010 License Agreement by wrongfully engaging in activities to market and sell (or prepare to sell) GaN-on-Si RF devices in MACOM's Exclusive Field.

Further, Section 4.02 of the 2010 IP Purchase Agreement, titled "Infringement Prosecution," specifies a procedure for enforcement of the Nitronex Patents against third-party infringers. For instance, Section 4.02 provides that if International Rectifier (now Infineon) fails to pursue an infringement action or otherwise resolve third-party infringement within a specified time period, then Nitronex (now MACOM) shall have the right to sue the third-party infringer and that International Rectifier (now Infineon) must take all actions requested by Nitronex (including assigning back to Nitronex any patents that are subject to a notice of infringement) to enable Nitronex to exercise its rights under Section 4.02. Nevertheless, Infineon has failed to enforce the Nitronex Patents against third-party infringers or assign those patents back to MACOM.

The 2010 License Agreement providing Nitronex with continued exclusive rights to use the Nitronex Patents was a material part of the consideration for the IP Purchase Agreement. Similarly, Infineon's failure to enforce its patents against third-party infringers and refusal to assign the Nitronex Patents back to MACOM are a material breach of the IP Purchase Agreement. Infineon's breaches and misconduct constitute grounds for rescission. *See Superior Motels, Inc. v. Rinn Motor Hotels, Inc.*, 195 Cal. App. 3d 1032, 1051, 241 Cal. Rptr. 487, 495 (Ct. App. 1987); *Brown v. Nat'l Elec. Works*, 168 Cal. 336, 338, 143 P. 606, 607 (1914) (reversing rejection of rescission claim where contract was not fully performed despite completion of financial obligations); *Wilson v. Corrugated Kraft Containers*, 117 Cal. App. 2d 691, 696, 256 P.2d 1012, 1016 (1953) (affirming rescission of contract where defendant did not sell all corrugated paper products as promised despite plaintiff's full financial performance); *see also Reed v. Gallagher*, 248 Cal. App. 4th 841, 860, 204 Cal. Rptr. 3d 178, 192 (2016) ("The consequence of rescission is ... the restoration of the parties to their former positions by requiring each to return whatever consideration has been received.") (citation omitted).

MACOM's investigation of the subject matter of this Interrogatory is ongoing. Pursuant to Federal Rule of Civil

16

Procedure 26(e), MACOM reserves the right to supplement
this Response as further information becomes available.

### 1.   Defendants' Argument

Interrogatory No. 10 requests, in short, all financial remedies sought by
Plaintiffs in the form of lost profits or a reasonable royalty, including without
limitation all factual and legal bases for these contentions, and including without
limitation a detailed description of damages calculations and methodologies, the type
and amount of damages sought on a product-by-product basis, and other similarly
detailed information relating to any lost profits or reasonable royalty measures.

Plaintiffs' response states their damages theory in the abstract: lost profits and
unjust enrichment.  Plaintiffs, however, fail to provide the factual and legal bases for
these damages claims so as to enable Defendants to engage in meaningful discovery.
And the law does not support Plaintiffs' sole specific objection—that damages
contentions are premature before expert reports.  Plaintiffs must adequately respond
to Interrogatory No. 10.

### a)   Background

On August 2, 2017, Defendants served their First Set of Interrogatories, which
included Interrogatory No. 10 directed towards Plaintiffs' damages contentions.  On
September 15, 2017, Plaintiffs responded to these interrogatories.  In their initial
response to Interrogatory No. 10, Plaintiffs repeated a paragraph of boilerplate
objections, added that information on their damages contentions was more properly
the subject of expert discovery, and stated that they were continuing to investigate
and would supplement their response.

On March 5, 2018, the parties met and conferred regarding Interrogatory No.
10.  Defendants were prepared to compel a full and complete answer to this
interrogatory at that juncture.  To convince Defendants not to move for a complete
answer to Interrogatory No. 10, Plaintiffs agreed that they would supplement their
answer to Interrogatory No. 10 by April 13, 2018.  Ex. 1, March 5, 2018 Meet and

1    Confer email chain, at March 26, 2018 4:11 PM email from Caballero to Banzhoff.

2         On April 11, 2018, the parties met and conferred on issues relating to other

3    discovery requests.  To temper Defendants' concerns, Plaintiffs told Defendants to

4    wait for their supplemental interrogatory responses, which Defendants believed were

5    just two days away according to the parties' prior agreement.  *Id.* at April 13, 2018

6    2:56 PM email from Caballero to Banzhoff.

7         On April 13, 2018—the promised delivery date of Plaintiffs' supplemental

8    response to Interrogatory No. 10—Plaintiffs notified Defendants that Plaintiffs would

9    not supplement their interrogatory response as promised.  Plaintiffs indicated that they

10   would not supplement their response until May 4, 2018.  *Id.* at April 13, 2018 12:28

11   PM email from Banzhoff to Caballero.  Plaintiffs offered no explanation for the

12   additional delay or their failure to notify Defendants of the delay until the agreed-

13   upon April 13 deadline, notwithstanding that the parties met and conferred on other

14   issues just two days prior.  *Id.*

15        If, at the parties' initial meet and confer on March 5, Plaintiffs had told

16   Defendants that Plaintiffs would need two months until May 4 to supplement

17   Interrogatory No. 10, Defendants would have immediately sought to compel so that

18   they would receive a full and complete answer with sufficient time to prepare and take

19   discovery before the June 29 fact discovery cut-off.

20        On May 2, 2018, Plaintiffs ended their three-week, unilateral extension by

21   supplementing their response to Interrogatory No. 10.   But then, Plaintiffs'

22   supplement was inadequate.  For most of Plaintiffs' causes of action, Plaintiffs did

23   not even provide a damage claim.  The only cause of action specifically referred to in

24   Plaintiffs' response was their second claim for breach of exclusivity.  But even with

25   respect to that claim, Plaintiffs still did not fully disclose their damages contentions

26   and continued to withhold key facts needed to guide Defendants' discovery.  For

27   example, Plaintiffs purport to seek lost profits from lost sales, but Plaintiffs failed to

28   identify the customers from whom Plaintiffs lost sales.  Plaintiffs also failed to

identify the customer projects that resulted in lost sales.  As another example, MACOM alleges that Defendants' "delayed execution of agreements between MACOM and manufacturing partners," but Plaintiffs failed to identify the manufacturing partners at issue.  Furthermore, Plaintiffs failed to disclose the facts relating to causation—the facts showing that Defendants' alleged wrongful conduct caused any of the alleged harm.

Plaintiffs' continued failure to provide the key facts to support their damages contentions has left Defendants in the dark during the crucial weeks leading towards the close of discovery.  As a result, Defendants *still* do not know the facts on which they need discovery.  And by the time this motion is ultimately resolved, fact discovery will be nearly closed.  In short, by taking a unilateral, weeks-long extension of an agreed-upon deadline to supplement their response to Interrogatory No. 10, and by consistently omitting the facts supporting their damages contentions from their response to an interrogatory served in August 2017, Plaintiffs will have effectively denied Defendants fact discovery on damages.

On May 4, 2018, counsel for Defendants sent a letter to counsel for Plaintiffs, identifying deficiencies in Plaintiffs' supplemental response to Interrogatory No. 10. Defendants explained how Plaintiffs' vague responses lacked basic responsive information such that they failed to give sufficient detail to support their damages theories.  For example, Defendants pointed to a portion of Plaintiffs' response accusing Defendants of "caus[ing] customers to doubt whether [Plaintiffs] had the necessary rights to sell [their] own products."  Defendants asked of Plaintiffs, among other things: "What particular customers doubted that Plaintiffs had the necessary rights?  When did those customers first doubt whether Plaintiffs had the necessary rights?  What is Plaintiffs' evidence of this doubt?"

On May 14 and 15, 2018, the parties met and conferred regarding this interrogatory in accordance with Local Rule 37.1.  Ex. 2, May 14, 15, and 18, 2018 Meet and Confer email from Caballero to Banzhoff.  Plaintiffs asserted that they need

not provide a full response to Interrogatory No. 10 because Defendants allegedly have

not fully responded to Plaintiffs' Interrogatory No. 8.[2]  The parties could not resolve

their dispute.

> **b)     Plaintiffs must provide the factual bases for their lost profits damage claims, including the identity of the alleged customers and customer projects which resulted in Plaintiffs' lost sales, the time periods during which Plaintiffs lost sales, facts relating to causation, and how Plaintiffs propose to measure the amount of lost sales or profits.**

Plaintiffs allege that "Infineon's conduct in marketing in MACOM's Exclusive Field has caused MACOM to lose years of sales it had anticipated and reasonably expected."  But Plaintiffs refuse to identify (1) the customers and customer projects which resulted in their alleged lost sales; (2) the time periods during which Plaintiffs lost sales; (3) the facts relating to causation (*i.e.*, facts purporting to show that Defendants' alleged marketing—as opposed to other factors—caused those lost sales); or (4) how Plaintiffs propose to calculate the amount of lost sales or profits. This information is responsive to Interrogatory No. 10, which requests the "factual and legal bases" for Plaintiffs' lost profits damages claim, "the amount of such lost

---

[2] This position lacks legal support.  "A party may not excuse its failure to comply with discovery obligations by claiming that its opposing party is similarly delinquent.  Nor may a party condition its compliance with its discovery obligations on receiving discovery from its opponent." *Fresenius Med. Care Holding Inc. v. Baxter Intern., Inc.*, 224 F.R.D. 644, 653 (N.D. Cal. 2004); *see also Richardson v. City of Antioch*, C-08-3470 JSW EMC, 2009 WL 982118, at *1 (N.D. Cal. Apr. 13, 2009) ("The Court does not look favorably upon a 'tit-for-tat' approach to discovery.").

Even if Plaintiffs' discovery obligations depended on Defendants' compliance with their own discovery obligations (which they do not), Defendants fully responded to Plaintiffs' Interrogatory No. 8.  Plaintiffs posit an extraordinary lost profits theory, while Defendants seek a straightforward reasonable royalty.  Though it is beside the point, Defendants' interrogatory response regarding a reasonably royalty involves less information than Plaintiffs' interrogatory response on the more complex lost profits theory.

profits," "the period of time during which You claim such lost profits", and "the method by which You have calculated that amount."

In this base station market, Plaintiffs, Defendants, and other suppliers compete for specific base station projects. For each base station project, the customer holds a competition among various suppliers. After testing and evaluating each supplier's products, the customers selects one or more products to "design-in" to the base station. If a supplier loses this competition, it is called a "design loss," and the supplier's product is not designed into the base station. If a supplier wins this competition, it is call a "design win," and the supplier's product is designed into the base station. When the base station goes into production, the supplier makes sales for its products used in the manufacture of the base station.

In this case, Plaintiffs allege that Infineon Americas has marketed GaN-on-Si RF products for cellular basestation applications in the Exclusive Field in violation of Nitronex's alleged exclusive patent rights under the 2010 License Agreement at issue. Plaintiffs do not dispute that their exclusive patent rights are limited to GaN-on-Si RF products and do not extend to other technologies, such as GaN-on-SiC and LDMOS. Although Infineon AG has worked on developing GaN-on-Si technology that could potentially be used in future RF products, Defendants currently have no GaN-on-Si RF products that could be offered to or sold to customers. The only RF products that Defendants have ever sold are LDMOS and GaN-on-SiC products, the marketing and sale of which are indisputably not prohibited by the agreements at issue.

Plaintiffs have refused to provide the factual bases of their lost profits damages claim. For example, Plaintiffs have refused to identify the customers or the specific customer projects which resulted in lost sales. For those unidentified customers and customer projects, Plaintiffs also do not provide any facts purporting to show that Defendants' alleged illegal GaN-on-Si marketing caused any lost sales. Plaintiffs do not identify what alleged illegal GaN-on-Si marketing activity purportedly affected the customer, when that alleged marketing activity took place, or evidence that this

1  activity—as opposed to other factors (such Defendants' legal marketing of LDMOS

2  or GaN-on-SiC products, competition from other companies, or Plaintiffs' technical

3  problems with their own products)—caused the customer not to select Plaintiffs'

4  products.  Lacking any factual bases for its damages claim, Plaintiffs also fail to

5  describe any method for determining the amount of lost sales and lost profits.

6  　　　Except for references to four documents and a single chart,[3] Plaintiffs' meager

7  response speaks in generalities without providing any facts.  This is improper.  *See*

8  *Lanard Toys Ltd. v. Dolgencorp LLC Etc*, 3:15-CV-849-J-34PDB, 2016 WL

9  7031327, at *4 (M.D. Fla. Feb. 26, 2016) (granting motion to compel supplemental

10  response to a damages contention interrogatory where plaintiff's response

11  "describe[d] the categories of damages [plaintiff] [sought], as it had in its pleading,

12  but describe[d] no evidence supporting those damages.").  Though Plaintiffs need not

13  produce precise calculations in their response, they must at least identify the facts

14  supporting their damages claims.  *See Mobile Storage Tech., Inc. v. Fujitsu Ltd.*, C

15  09-03342 JF (PVT), 2010 WL 1292545, at *1 (N.D. Cal. Mar. 31, 2010) ("Even

16  without an actual calculation of damages and an exact determination of the applicable

17  royalty rate, plaintiff . . . shall provide the factual basis for its damages claim, the

18  identification of all facts to support its damages theories, and any factual information

19  underlying the *Georgia-Pacific* factors.").  In one infringement case, for example, the

20  court ordered a supplemental response to a damages contention interrogatory where

21  the plaintiff failed to provide a meaningful response because "in order to claim, e.g.,

22  lost profits, plaintiffs must have some underlying data that (at a minimum) reflects

23  the fact that their profits have decreased (or would have increased more) during the

24

25  _____

26  　　　[3] This table purports to list Plaintiffs' predicted revenues and margins by
financial year "[b]efore the impact of [Defendants'] marketing activities began to be

27  felt."  It does not cite a source for its data, explain who made these calculations, define
when "the impact of [Defendants'] marketing activities began to be felt," or state

28  when Plaintiffs made these predictions.

period of time related to defendants' infringing conduct."  *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, CV 08-889-SLR, 2013 WL 12291705, at *1 (D. Del. Oct. 22, 2013) (footnotes omitted).

According to Plaintiffs' response, Defendants "convinced customers that Infineon would be an alternative source for GaN-on-Si products, caused customers to doubt whether MACOM had the necessary rights to sell its own products, delayed execution of agreements between MACOM and manufacturing partners, and diverted customer interest from MACOM's GaN-on-Si products."  But these generic allegations are useless absent the facts on which Plaintiffs will rely.  Instead, they raise more questions than they answer.

When Plaintiffs say that Defendants "convinced customers that Infineon would be an alternative source for GaN-on-Si products," they do not identify a single customer, the date or nature of a single communication, or a single project that they lost as a result (let alone the details of any such projects).  The same is true when Plaintiffs allege that Defendants "caused customers to doubt whether MACOM had the necessary rights to sell its own products"—no customer identities, no dates, no explanation of how Defendants caused this result, and no lost projects as a result. Finally, if Defendants' "diver[sion] [of] customer interest from MACOM's GaN-on-Si products" allegedly damaged Plaintiffs, as they contend in their response, Plaintiffs must provide facts to answer similar questions—which customers' interest was diverted, when and how was it diverted, and which projects were lost as a result (as well as the details of those projects).

Plaintiffs must provide the factual bases for the broad allegations in response to Interrogatory No. 10.  They must identify the factual contentions supporting their lost profits theory, which should include, among other things, (1) the customers and customer projects which resulted in their alleged lost sales; (2) the time periods during which Plaintiffs lost sales; (3) the facts relating to causation (*i.e.*, facts purporting to show that Defendants' alleged marketing—as opposed to other factors—caused those

lost sales); and (4) how Plaintiffs propose to calculate the amount of lost sales or profits.    Because Plaintiffs' response to Interrogatory No. 10 contains no such information, Plaintiffs must supplement their response.

> **c)**     **Plaintiffs must provide the factual bases of their damages claim relating to delayed execution of agreements with manufacturing partners, including the identity of the agreements and manufacturing partners, facts relating to how long execution of each agreement was delayed, facts relating to how Defendants caused each delay, facts relating to how each delay harmed Plaintiffs, and how Plaintiffs propose to measure the amount of damages.**

Plaintiffs allege that Defendants' activities "delayed execution of agreements between MACOM and manufacturing partners."   Plaintiffs are relying on this allegation to support a recovery of damages.   But Plaintiffs do not provide the most basic facts necessary to understand Plaintiffs' damages claim:

- What agreements were delayed?
- Who were the manufacturing partners?
- Which party (Plaintiffs or the unidentified manufacturing partners) chose to delay execution of each agreement?
- How long was execution of each agreement delayed?   When was each agreement executed?  When would each agreement have been executed, but for Defendants' activities?
- What activities by Defendants caused the delay in execution of each agreement?
- How did the delay in the execution of each agreement harm Plaintiffs?
- How do Plaintiffs purport to measure the harm or amount of damages associated with the alleged delay in execution of each agreement?

Again, this information is responsive to Interrogatory No. 10, which requests the "factual and legal bases" for any claim for damages claim and "a detailed description of the amount of such damages and how such damages have been calculated."   This basic information is necessary to understand Plaintiffs' damages

claim and to determine what factual discovery, if any, is necessary to rebut that damages claim.

### d)   Plaintiffs must identify the legal and factual bases for any financial remedies that they seek.

Interrogatory No. 10 requests the factual and legal bases for Plaintiffs' financial remedies, including identification of the *particular claims* for relief on which each financial remedy and claim for damages is sought.  In their interrogatory response, Plaintiffs describe generally lost profits and unjust enrichment damages, but the only basis that Plaintiffs provide for these damages is their general allegations regarding Infineon America's marketing of GaN-on-Si RF products.  For example, for their lost profits claims, Plaintiffs state, "For instance, Infineon's conduct in *marketing in MACOM's Exclusive Field* has caused MACOM to lose years of sales it had anticipated and reasonably expected."  Similarly, for their unjust enrichment claim, Plaintiffs state, "*Infineon's activities in GaN-on-Si*, and the litigation here that followed from them, have had a chilling effect, casting doubt on MACOM's GaN-on-Si value proposition and unjustly enriching Infineon by delaying adoption of that technology."  Both these general allegations relate to Plaintiffs' Second Claim for Relief predicated on Infineon America's alleged marketing of GaN-on-Si RF products in the Exclusive Field.  *See* Ex. 3, Dkt. 449, Plaintiffs' Third [Redacted] Amended Complaint for Breach of Contract and Declaratory Judgment at 51 ("SECOND CLAIM FOR RELIEF – Against Infineon Americas (Breach of Contract – Marketing and Preparations for Sale of GaN-on-Si Products within MACOM's Exclusive Field of the 2010 License Agreement)").

Plaintiffs' interrogatory response does not provide any financial remedy for any of the other wrongful action alleged in Plaintiffs' Third Amended Complaint:

- Infineon America's termination of the 2010 License Agreement (1st, 3rd, 4th, and 8th claims)

- Infineon America's refusal to assign one or more Nitronex Patents back to Plaintiffs (4th and 6th claims)

- Infineon America's allegation that the one or more claims of Nitronex Patents are invalid (4th claim)

- Infineon America's alleged attempt to transfer any of the Nitronex Patents (7th claim)

- Infineon AG's alleged intentional interference (8th claim)

Plaintiffs cannot withhold damages theories for other claims that they continue to assert. *See Milwaukee Elec. Tool Corp. v. Chervon N. Am. Inc.*, 14-CV-1289-JPS, 2017 WL 2445845, at *7 (E.D. Wis. June 6, 2017) (finding response to damages interrogatory "mostly sufficient" where it "identified with specificity the documents supplying the facts supporting [plaintiffs'] damages claim" but ordering plaintiffs to "identify their damages theory or theories."). If Plaintiffs claim no damages or financial remedies on (for example) their First Claim for Relief for wrongful termination, Plaintiffs need not discuss the wrongful termination claim in their response; if, however, Plaintiffs seek damages on this claim, their response must discuss it. The same goes for Plaintiffs' other claims.

e) **Plaintiffs cannot delay a full response to Interrogatory No. 10 until the expert stage because this interrogatory seeks <u>facts</u> supporting Plaintiffs' damages contentions.**

Boilerplate objections aside, Plaintiffs object that Interrogatory No. 10 is premature "because damages is more appropriately a topic of expert testimony and discovery."

Plaintiffs disregard the difference between fact and expert discovery. *See In re Cyclobenzaprine Hydrochloride*, 2013 WL 12291705 at *1 ("[E]xperts must rely on facts for their opinions. Facts are the subject of fact discovery, and parties are required to disclose such facts before the facts are massaged and manipulated by their expert witnesses."). Expert reports must be based on facts. In order to locate and understand the facts necessary to generate meaningful expert reports, the parties must engage in

26

fact discovery.  In order to engage in meaningful fact discovery, Plaintiffs must fully respond to Interrogatory No. 10 by providing the factual bases for their damages contentions.  For example, Defendants need to know what customers are at issue with respect to damages, what projects at these customers are the ones for which Plaintiffs lost sales, and what alleged interactions with these customers allegedly caused Plaintiffs to lose sales.  If these crucial facts are not disclosed until expert reports as Plaintiffs propose, then Defendants will be unable to take fact discovery regarding the factual premises of Plaintiffs' damages claim.

Courts routinely reject Plaintiffs' position that forthcoming expert reports can respond to in-the-moment factual interrogatories.  In *THX, Ltd. v. Apple, Inc.*, a patent defendant's damages interrogatory asked plaintiff to "describe in detail the basis, measure, and proper calculation of any and all damages sought in this Litigation, including without limitation: the measure and proper calculation, if any, of a reasonable royalty, royalty base, and royalty rate; lost profits; price erosion; and any claim of willful infringement."  13CV01161HSGDMR, 2016 WL 2899506, at *6 (N.D. Cal. May 13, 2016).  The plaintiff's response "[did] not provide clear answers about the basis, measure, and proper calculation of damages [the plaintiff sought] in this litigation." *Id*.  Despite the plaintiff's objection that a more detailed response was premature in light of forthcoming expert reports, the court ordered the plaintiff to supplement its response.  *Id.* at 7 ("Courts in this district have compelled patent plaintiffs to provide the factual bases for their damages claim through initial disclosures and written discovery, *over protestations that responsive information will be forthcoming through expert reports*" (emphasis added)).

Plaintiffs have no specific and valid objections to Interrogatory No. 10.  They must respond with enough detail to give their damages contentions meaning.

### 2.    Plaintiffs' Argument:  This Issue Is Moot

This issue is moot.  As can be seen above, MACOM's response to Interrogatory No. 10—which purported to cover damages theories for eight separate claims in a

single interrogatory—was lengthy, detailed, and complete.[4]  This is apparent even without reference Infineon's own response to MACOM's damages interrogatory, which (setting aside its recitation of the *Georgia-Pacific* factors (*i.e.*, the general legal standard applicable to damages in every patent case)) was only one paragraph long and provided no information about Infineon's damages theory.  *See* Ex. E.  By contrast, MACOM's response was more than sufficient to place Infineon on notice of MACOM's damages theory.  MACOM does not believe any more information is necessary, nor does it believe that Infineon's attempt to propound a dozen more follow-up interrogatories, as it does in the bullet points above, is appropriate.

Nonetheless, now that MACOM believes that it better understands Infineon's request (aspects of which were not clearly articulated during meet-and-confers), in the interest of reaching an agreement, MACOM has agreed that it will supplement its response to Interrogatory No. 10 with the following information, to the extent it is not already included in its response:

1.    Customers and opportunities that were lost due to Defendants' actions;

2.    The time periods during which MACOM lost these opportunities;

3.    How MACOM will be calculating its lost profits;

4.    An explanation of the facts that MACOM will rely upon to show causation, including in connection with delays related to manufacturing partners.

Ex. C at 5.  This agreement fully moots Infineon's motion—or, to the extent that it does not, MACOM does not understand what further Infineon is requesting.

---

[4]  MACOM will not respond in kind to Infineon's spurious allegations against MACOM and its counsel.  MACOM will simply state for the record that Infineon's complaint that MACOM took too long to supplement Interrogatory No. 10 is not credible in light of the fact that Infineon took *six months* (and required MACOM to follow up *eight* times) before it agreed to supplement its own response—and Infineon's supplemental response still says nothing of substance.  Ex. 1 at 2.

1   In response to MACOM's agreement to give Infineon what it seeks through

2   this motion, Infineon said only that it "rejects" MACOM's proposed supplementation

3   and refused to withdraw this part of its motion.  Ex. C at 2.  But it has not told

4   MACOM what additional information it needs or could possibly ask for beyond the

5   categories above.  *Id.*

6   In any event, MACOM respectfully requests that the Court deny Infineon's

7   motion on Interrogatory No. 10 as moot.

8   **D.     Defendants' Request for Production No. 216**

9   Below are Defendants' RFP 216 and Plaintiffs' response.

10   REQUEST FOR PRODUCTION NO. 216

11   All documents representing U.S. and worldwide

12   sales of the Covered Products, including all invoices

       referenced in MACOM-INF-0305806, MACOM-INF-

13   0305807, and MACOM-INF-0305808.

14   RESPONSE TO REQUEST FOR PRODUCTION NO. 216

15   MACOM incorporates the General Objections and

16   Objections to Definitions and Instructions set forth above.

     MACOM objects to the Request as overly broad, unduly

17   burdensome, vague, and ambiguous. MACOM objects to

18   this Request to the extent it is duplicative of previous

     discovery requests served by Infineon. MACOM objects to

19   the terms "representing," "sales," "Covered Products,"

20   "invoices," and "referenced" as overly broad, unduly

     burdensome, vague, and ambiguous. MACOM objects to

21   this Request on the grounds that it fails to describe the

22   information requested with reasonable particularity.

     MACOM objects to the extent this Request seeks

23   information that is not relevant to the subject matter of this

24   action and/or is not proportional to the needs of the case.

     MACOM objects that this Request is not reasonably limited

25   as to time and thus seeks to impose undue burden on

26   MACOM. MACOM objects to this Request to the extent it

     seeks third-party confidential information that MACOM is

27   not permitted to disclose under applicable protective orders

28   and/or private agreements. MACOM objects to this Request

29

to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: MACOM incorporates by reference its responses to Request Nos. 54, 133, 139, and 140.

Below are Defendants' RFPs 54, 133, 139, and 140 and Plaintiffs' responses, which are incorporated by reference into Plaintiffs' response to RFP 216.

REQUEST FOR PRODUCTION NO. 54

Documents sufficient to show the volume of sales, revenue, and profit from MACOM's GaN-on-SiC products in each year from 2013 to the present.

RESPONSE TO REQUEST FOR PRODUCTION NO. 54

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects to the Request as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to the terms "volume," "sales," "revenue," "profit," and "products" as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to the extent this Request seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects to this Request to the extent it seeks third-party confidential information that MACOM is not permitted to disclose under applicable protective orders and/or private agreements. MACOM objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows:

MACOM will produce responsive, non-privileged documents sufficient to show its sales and revenue for GaN-on-SiC products from 2013 to present, to the extent they exist and can be located upon a reasonable search. Negotiations with Defendants are ongoing as to the timing of document productions.

REQUEST FOR PRODUCTION NO. 133

Documents sufficient to identify the dates during which each Covered Product was marketed, promoted, offered for sale or sold.

RESPONSE TO REQUEST FOR PRODUCTION NO. 133

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects to the Request as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects that this Request is duplicative of previous discovery requests served by Infineon. MACOM objects to the terms "marketed," "promoted," "offered for sale," and "sold" as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to the extent this Request seeks information that is publically available and/or equally accessible to Defendants. MACOM objects to the extent this Request seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects that this Request is not reasonably limited as to time and thus seeks to impose undue burden on MACOM. MACOM objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: MACOM will produce responsive, non-privileged documents sufficient to show the dates of sales for its GaN-on-Si products from 2014 to present and MACOM's GaN-

on-SiC products from 2011 to present, to the extent they exist and can be located upon a reasonable search. Negotiations with Defendants are ongoing as to the timing of document productions.

REQUEST FOR PRODUCTION NO. 139

Documents sufficient to identify all entities that have purchased any of the Covered Products and the location of those entities.

RESPONSE TO REQUEST FOR PRODUCTION NO. 139

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects to the Request as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects that this Request is duplicative of previous discovery requests served by Infineon. MACOM objects to the terms "entities," "purchased," "covered products," and "location" as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to the extent this Request seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects that this Request is not reasonably limited as to time and thus seeks to impose undue burden on MACOM. MACOM objects to this Request to the extent it seeks third-party confidential information that MACOM is not permitted to disclose under applicable protective orders and/or private agreements. MACOM objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: MACOM will produce responsive, non-privileged documents sufficient to identify the customers who purchased MACOM's GaN-on-Si products from 2014 to

present and MACOM's GaN-on-SiC products from 2011 to present, as well as the country associated with those customers in MACOM's sales database, to the extent they exist and can be located upon a reasonable search. Negotiations with Defendants are ongoing as to the timing of document productions.

REQUEST FOR PRODUCTION NO. 140

Documents sufficient to show all U.S. and worldwide sales of the Covered Products. The sales information should be as specific as possible and, at a minimum, include the location of each sale, the amount of each sale, and the identity and location of each purchasing entity. The sales information should be broken down by month, quarter, or whatever other time period that MACOM uses in its ordinary course of business.

RESPONSE TO REQUEST FOR PRODUCTION NO. 140

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects to the Request as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects that this Request is duplicative of previous discovery requests served by Infineon. MACOM objects to the terms "worldwide sales," "covered product," "sales information," "specific," "location," "identity," "location," "purchasing entity," "time period," and "ordinary course of business" as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to the extent this Request seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects that this Request is not reasonably limited as to time and thus seeks to impose undue burden on MACOM. MACOM objects to this Request to the extent it seeks third-party confidential information that MACOM is not permitted to disclose under applicable protective orders and/or private agreements. MACOM objects to this Request to the extent it seeks information protected by the

33

attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: MACOM will produce responsive, non-privileged documents sufficient to show the sales of MACOM's GaN-on-Si products from 2014 to present and MACOM's GaN-on-SiC products from 2011 to present, to the extent they exist and can be located upon a reasonable search. Negotiations with Defendants are ongoing as to the timing of document productions.

## 1.   Defendants' Argument

### a)   Background

On March 30, 2018, Defendants served RFP 216, and Plaintiffs responded on April 30, 2018.  On May 4, 2018, counsel for Defendants sent a letter to counsel for Plaintiffs, identifying deficiencies in this response and explaining how Plaintiffs' incorporation by reference failed to address RFP 216.  On May 14 and 15, 2018, the parties met and conferred regarding this RFP in accordance with Local Rule 37.1 but could not resolve their dispute.  Ex. 2, May 14, 15, and 18, 2018 Meet and Confer email from Caballero to Banzhoff.

Through RFP 216, Defendants seek specific financial documents.  This RFP identifies the precise type of documents sought and even a precise place where Plaintiffs have referenced them.   Yet Plaintiffs respond only with boilerplate objections and by incorporating by reference answers to unrelated responses.  In doing so, Plaintiffs ignore the RFP's language.   Plaintiffs must produce documents responsive to RFP 216.

1
2

                 **b)**      **Plaintiffs' responses to Defendants' RFPs improperly incorporate by reference responses to other, unrelated RFPs.**

3      Plaintiffs' improper use of incorporation by reference recurs throughout their
4   responses.[5]  Plaintiffs' response to RFP 216 demonstrates the problems with this
5   practice—in their response to RFP 216, Plaintiffs simply incorporate by reference
6   responses to four other RFPs.

7      This practice makes understanding Plaintiffs' responses needlessly difficult.
8   Moreover, such responses are, "in essence, no response at all" under Rule 34(b).  *See*
9   *Day v. Bos. Edison Co.*, 150 F.R.D. 16, 18 (D. Mass. 1993) (compelling response to
10   an RFP after plaintiff previously answered "[s]ee answer to interrogatories 7, 8, 11,
11   12, 16, 18, and 19"); *Cotromano v. United Techs. Corp.*, 13-80929-CIV, 2015 WL
12   12862726, at *2 (S.D. Fla. Aug. 19, 2015) ("Directing a party to documents produced
13   in its initial disclosure or in prior discovery requests, without more, is an insufficient
14   response pursuant to Rule 34(b).").  In short, these responses do not pass muster under
15   the Federal Rules.

16      Further, these responses, even if permitted as a matter of form, are not
17   responsive.  *Cf. MGP Ingredients, Inc. v. Mars, Inc*., CIVA06-2318-JWL-DJW, 2007
18   WL 3274800, at *5 (D. Kan. Nov. 6, 2007) ("Plaintiff's answer to First Interrogatory
19   No[.] 1 simply is not responsive to subpart b of First Interrogatory No. 2.").  Plaintiffs
20   cannot respond to an RFP by merely pointing out that they have responded to other,
21   different RFPs.

22      RFP 216 requests documents, including invoices, representing worldwide sales
23   of the Covered Products (as shown on Plaintiffs' summary sales spreadsheets).
24   Plaintiffs' incorporated responses ignore RFP 216's specific request for the invoices
25   used to populate these summary sales spreadsheets.  Plaintiffs' use of incorporation

26
27
28

---

     [5] This issue is separately addressed below in Subpart II.C.1 (regarding RFPs 150, 152, and 153).

by reference appears to be a convoluted way of saying a simple thing—Plaintiffs refuse to produce documents in response to this request.

These incorporates-by-reference responses are long and cumbersome.  They show Plaintiffs' unwillingness to provide straightforward, simple answers. This formally improper tactic not only hides the ball, but also obscures Plaintiffs' refusal to produce relevant, responsive, and probative documents.  Plaintiffs must respond to and produce documents responsive to *this* RFP, not only to other RFPs.

### c)   Plaintiffs must produce documents responsive to RFP 216 by providing sales documents and invoices referenced in their spreadsheets.

RFP 216 requests "[a]ll documents representing U.S. and worldwide sales of the Covered Products, including all invoices referenced in [Plaintiffs' three summary sales spreadsheets]."  Plaintiffs responded by directing Defendants to their responses to four other requests for production, none of which mentions the specific invoices referenced in the spreadsheets requested by RFP 216.

In response to other requests and interrogatories, Plaintiffs provided summary sales spreadsheets, identified by Bates number in RFP 216.  To search for valuable information potentially omitted from these spreadsheets, and to verify the spreadsheets' accuracy, Defendants need the source documents Plaintiffs compiled and used to create these spreadsheets—namely, the invoices requested in RFP 216.

Documents such as these cannot be withheld because Plaintiffs purport to have summarized them in the spreadsheets.  In *Swapalease, Inc. v. Sublease Exchange.com, Inc.*, the district court admonished a patent plaintiff claiming lost profits for responding to discovery requests for financial information and documents by producing a summary spreadsheet.  1:07-CV-45, 2009 WL 10680101, at *8 (S.D. Ohio Mar. 5, 2009).  Although the defendant's discovery request was moot,[6] the court

---

[6] While the defendant's motion to compel was pending, the court granted the defendant's motion for summary judgment.  *Swapalease*, 2009 WL 10680101 at *1.

explained that the defendant was entitled to the financial documents underlying the plaintiff's summary spreadsheets and sanctioned the plaintiff for not producing them:

> the Court finds that [the plaintiff] did not respond in good faith to [the defendant's] requests to produce financial documents . . . [The defendant's] correspondence made more than clear that it was seeking documents and records which supported [the plaintiff's] damages claim.  It was not reasonable for [the plaintiff] to produce a spreadsheet with no supporting documentation and believe that it would meet [the defendant's] request for financial information.  This type of production would have been unsatisfactory in a routine tort case, much less in complex patent litigation with experienced trial counsel.  It was even less defensible to produce yet another unsupported spreadsheet in response to [the defendant's] request for financial information after the Court's conference with the parties made clear beyond any reasonable misunderstanding that [the defendant] was seeking more than just summaries.  Therefore, [the plaintiff's] failure to produce the financial information requested by [the defendant] can only have been in bad faith.

*Id.* at *8.   As in *Swapalease*, Defendants are entitled to the source documents underlying Plaintiffs' summary sales spreadsheets, and RFP 216 unambiguously requests them, with specific reference to the class of documents sought (invoices) and the spreadsheets (which are identified by Bates number).

Further, production of the actual invoices is proportional to the needs of this case.  By creating their spreadsheets, Plaintiffs have already compiled and analyzed the relevant invoices and sales documents.   RFP 216 asks that they turn over documents that they have already located.   This intuitive next step imposes little burden on Plaintiffs while providing Defendants crucial means for verifying Plaintiffs' spreadsheets and damages theory.   Thus, Plaintiffs must produce documents responsive to RFP 216.

2. **Plaintiffs' Argument**

a. **MACOM's Response Complies With Rule 34**

Infineon spends much of its brief complaining that MACOM used incorporation-by-reference in its responses. MACOM's responses fully comply with the letter and spirit of Rule 34. MACOM expressly stated the limits that would control its search by referring to the documents MACOM agreed to produce in previous requests.

Notably, MACOM's practice of incorporation by reference has been a response to the fact that Infineon has taken a scorched earth approach to discovery, serving hundreds of overlapping and duplicative requests for production that often make it difficult to understand with precision what Infineon wants (other than it wants *everything* and it wants that everything in the way most expensive for MACOM). Here, for instance, Infineon's RFP No. 216 asks for all documents "representing" MACOM's U.S. and worldwide sales, but it apparently only wants invoices—and so it illogically complains that "all documents representing MACOM's U.S. and worldwide sales" does not include the types of documents MACOM agreed to produce in response to early RFPs for documents showing "the volume of sales, revenue, and profit from MACOM's GaN-on-SiC products in each year from 2013 to the present" (RFP No. 54), "the dates during which each Covered Product was marketed, promoted, offered for sale or sold" (RFP No. 133), "all entities that have purchased any of the Covered Products and the location of those entities (RFP No 139), and "all U.S. and worldwide sales of the Covered Products" (RFP No. 140). But, when all of those requests are considered together, MACOM's response is eminently reasonable and common-sense.

MACOM's approach complies with Rule 34 by stating the limits that controlled MACOM's search. *See* Fed. R. Civ. P. 34, 2015 comment ("An objection that states the limits that have controlled the search for responsive and relevant materials qualifies as a statement that the materials have been 'withheld.'").

1    Infineon cannot seriously contend that its able patent counsel is unable to read

2    MACOM's earlier responses and understand what MACOM is agreeing to produce.

3           The out-of-district cases cited by Infineon (none of which were cited as part

4    of the parties' meet-and-confers) do not stand for the proposition that MACOM's

5    use of incorporation by reference is prohibited.  For instance, *Day v. Boston Edison*

6    *Co.*, 150 F.R.D. 16, 18 (D. Mass. 1993), involved a party referring only to

7    *interrogatory* responses as a response to a request for production.  Likewise, *MGP*

8    *Ingredients, Inc. v. Mars, Inc.*, CIVA06-2318-JWL-DJW, 2007 WL 3274800, at *5

9    (D. Kan. Nov. 6, 2007), involved *interrogatory* responses.  And *Cotromano v.*

10   *United Techs. Corp.*, 13-80929-CIV, 2015 WL12862726, at *2 (S.D. Fla. Aug. 19,

11   2015), actually supports MACOM's position here.  There, the party merely stated in

12   two of its responses that "Plaintiff does not have any documents responsive except

13   what could be obtained by downloading documents available on-line and except for

14   documents produced in response to request 11 if any."  The court took issue with the

15   fact that the producing party had not identified what it was producing or withholding

16   in response to request 11, not merely with the fact that request 11 was incorporated

17   into a later response.  *Id.*  That stands in stark contrast to MACOM's responses,

18   where it expressly identified what it was producing in the earlier requests.

19                    **b.    Infineon Seeks Duplicative Documents That Are Unduly
                            Burdensome To Collect**

20

21          RFP No. 216 seeks invoices that underlie the sales spreadsheets MACOM

22   produced.  Infineon has identified no real need for this information, other than its

23   baseless speculation that something might be missing from the spreadsheets

24   (although it is not clear how a supposedly "missing" transaction would be spotted

25   through the invoices for the sales transactions that *are* in the spreadsheet).

26   MACOM should not be forced to undertake this burden when the information will

27   provide not even a marginal increase in relevant data to Infineon.

28          RFP No. 216 seeks "[a]ll documents representing U.S. and worldwide sales of

1  the Covered Products, including all invoices referenced in MACOM-INF-03[]5806,

2  MACOM-INF- 03[]5807, and MACOM-INF-03[]5808."[7]

3        The three spreadsheets identified in this request are not just summary data, as

4  Infineon's argument above suggests.  Instead, they contain exhaustive backup

5  information about MACOM's sales of both its GaN-on-Si and GaN-on-SiC products

6  as far back as it had them available.  *See* Ex. A at 12-29.  For each and every one of

7  the thousands of individual product sales that are itemized in these spreadsheets,

8  MACOM provides, among other information: the product number and product line

9  that are the subject of the sale; the purchaser's name; the location/country in which

10 the purchaser is located; the shipment date; the price of the product sold; an

11 identification of whether the sale was made to a distributor; if so, the name of the

12 end customer purchasing from the distributor (where that information is known by

13 MACOM); and the standard cost associated with the product of the sale.  Ex. A at

14 12-29.  At Infineon's request, MACOM even updated these spreadsheets to also

15 include the standard cost for each product sold.  *Id.* [8]

16       A screenshot of a single page of one of MACOM's spreadsheets—a

17 screenshot that contains only a tiny fraction of the provided sales data—visually

18 illustrates the volume of information provided:

19

20

21 _____

22 [7]  Once typos in Infineon's request are corrected, the three referenced documents
are MACOM's sales spreadsheets.  MACOM-INF-213787 (Ex. A), is a version

23  of MACOM-INF-035806 that includes standard cost information, per a request
from Infineon.  It is otherwise the same as MACOM-INF-035806.

24

25 [8]  For its part, Infineon has not even produced summary sales spreadsheets, much

26  less back-up documents, for its own relevant product sales.  MACOM is
currently moving to compel such sales spreadsheets.  MACOM does not seek to

27  impose unnecessary burden on Infineon by demanding back-up documentation at
the outset, however, and does not plan to request such back-up documents unless

28  legitimate concerns about the accuracy of any spreadsheets arise.

1
2
3
4
5
6
7
8
9
10
11
12
13



14   MACOM's spreadsheets were generated using MACOM's internal sales data

15   system.  This system is highly reliable and where MACOM itself goes to obtain

16   sales information when it needs it.  Hansen Dec., ¶¶3-4.  This is also the data that

17   MACOM's independent auditors rely on.  *Id.*  There is not a better source at

18   MACOM for sales data.  *Id.* ¶4.  Moreover, anything in the spreadsheets is a "***direct***

19   ***reflection***" of what is contained in the underlying invoices.  *Id.* ¶8 (emphasis

20   added).

21   Courts routinely confirm that sales spreadsheets are a perfectly reliable and

22   acceptable method for a party to provide its sales data.  *See, e.g.*, *Hannah's*

23   *Boutique, Inc. v. Surdej*, No. 13-CV-2564, 2015 WL 3856551, at *9 (N.D. Ill. June

24   19, 2015) (denying motion compel and approving spreadsheets that "contain data for

25   every sales transaction that Peaches made in the store or on any of their three

26   websites"); *Mathison v. Orioxi Int'l Corp.*, No. C07-0129, 2008 WL 2219948, at *2

27   (N.D. Iowa May 28, 2008) (deeming spreadsheets of gross receipts for various sales,

28   related expenses, and gross profit sufficient and holding that "[d]efendant is not

41

1  required to produce the documents underlying the information set forth in the

2  spreadsheets").

3         Infineon is wrong in its unsupported speculation that production of the

4  invoices would impose "little burden" on MACOM.  In fact, it would be enormously

5  burdensome (such that it is not at all proportional to the needs of the case) to require

6  MACOM to produce them.  There are ████████ separate sales transactions

7  referenced in these spreadsheets.  And each invoice referenced in them would have

8  to be hand-pulled from MACOM's system; there is no automated way for MACOM

9  to pull these documents all at once.  Hansen Dec., ¶¶9-10.  Even assuming that it

10 only took five minutes per document to locate the document and print them, that

11 would amount to over 110 man-hours (not including the time and expense for

12 MACOM's counsel to label and produce the documents).  *Id*.  This is not a

13 reasonable request, given that Infineon already has the relevant data in the

14 spreadsheets MACOM has produced.

15        The lack of proportionality here is further amplified when considering

16 Infineon's reason stated above for needing the underlying invoices:  "[t]o search for

17 valuable information potentially omitted from these spreadsheets, and to verify the

18 spreadsheets' accuracy."  Pure speculation is not a reason to impose such a large

19 burden on MACOM.  "Discovery is not to be used for a fishing expedition to

20 investigate mere speculation." *Mullally v. Havasu Landing Casino*,

21 EDCV071626VAPDTB, 2012 WL 13013031, at *1 (C.D. Cal. June 21, 2012)

22 (*citing Calderon v. U.S. Dist. Court for the N. Dist. of Cal*., 98 F.3d 1102, 1106 (9th

23 Cir. 1996)); *NW Pipe Co. v. DeWolff, Boberg and Assocs., Inc.,* EDCV 10-0840-

24 GHK, 2012 WL 137585, at *6 (C.D. Cal. Jan. 17, 2012) (denying motion to compel

25 where only stated explanation of need for documents was "to test whether certain

26

27

28

42

1   alleged financial or reporting improprieties had an impact on plaintiff's calculation

2   of damages"). [9]

3          Infineon cites a single case from the Southern District of Ohio in support of

4   its extreme position, *Swapalease*.  As an initial matter, this is the first time Infineon

5   has identified this case to MACOM, which is not consistent with the Local Rules'

6   meet-and-confer requirements.  More substantively, *Swapalease* is readily

7   distinguishable for multiple reasons.  First, the Ohio court criticized the defendant in

8   that case for providing only an "unsupported spreadsheet" that was just a summary

9   of Swapalease's financial status.  *Swapalease, Inc. v. Sublease Exchange.com, Inc.*,

10  1:07-CV-45, 2009 WL 10680101, at *5, *8 (S.D. Ohio Mar. 5, 2009).  Here, by

11  contrast, MACOM's spreadsheet does not rest on summary data, but instead

12  provides transaction-by-transaction back-up data, given full details of every single

13  product sale made.  *See* Ex. A at 12-29.

14         Second, the situation here is also different from *Swapalease* because

15  MACOM submits a sworn declaration providing information about the database

16  from which its spreadsheets were collected and that describes MACOM's own

17  internal reliance on the database information.  *Compare Swapalease*, 2009 WL

18  10680101, at *8 *with* Hansen Dec., ¶¶3-4.  Third, and perhaps most importantly, the

19  producing party in *Swapalease* did not present the court with arguments regarding

20  the burdens entailed with compliance or the proportionality of the need for the

21  information against those burdens.  The court therefore never had reason to evaluate

22  the arguments presented by MACOM here.

23

_____

24  [9]   The relevance of the GaN-on-SiC products is unclear, given that the Court and

25  Federal Circuit have rejected as a matter of law that GaN-on-SiC sales could be a
    breach justifying termination of MACOM's motion.  *See* Dkt. 141 at 37-41.  It is

26  additionally worth noting that the Court recently granted Infineon's request to

27  stay its GaN-on-SiC patent infringement claim against MACOM, meaning that it
    cannot reasonably request more information regarding MACOM's GaN-on-SiC

28  products.  See Dkt. 509.

1    In sum, Infineon's request here seems only designed to increase the burden on

2  MACOM, as it will offer no meaningful information for Infineon and will cause

3  much burden and expense for MACOM.  For these reasons, MACOM respectfully

4  requests that the Court deny Infineon's motion to compel.

5  **E.    Defendants' Requests for Production Nos. 150, 152, and 153**

6  Below are Defendants' RFPs 150, 152, and 153 and Plaintiffs' responses.

7  REQUEST FOR PRODUCTION NO. 150

8

9    All documents concerning the market share of
   MACOM or Nitronex relating to the Covered Products.

10  RESPONSE TO REQUEST FOR PRODUCTION NO. 150

11

12    MACOM incorporates the General Objections and
   Objections to Definitions and Instructions set forth above.

13  MACOM objects to the Request as overly broad, unduly

14  burdensome, vague, and ambiguous. MACOM objects that
   this Request is duplicative of previous discovery requests

15  served by Infineon. MACOM objects to the terms

16  "concerning," "market share," "relating to," and "covered
   patents" as overly broad, unduly burdensome, vague, and

17  ambiguous. MACOM objects to this Request on the

18  grounds that it fails to describe the information requested
   with reasonable particularity. MACOM objects to the

19  extent this Request seeks information that is not relevant to

20  the subject matter of this action and/or is not proportional
   to the needs of the case. MACOM objects that this Request

21  is not reasonably limited as to time and thus seeks to impose

22  undue burden on MACOM. MACOM objects to this
   Request to the extent it seeks third-party confidential

23  information that MACOM is not permitted to disclose

24  under applicable protective orders and/or private
   agreements. MACOM objects to this Request to the extent

25  it seeks information protected by the attorney-client

26  privilege and/or attorney work product doctrine and/or any
   other applicable privilege or immunity.

27

28    Subject to and without waiving the foregoing general
   and specific objections, MACOM responds as follows:

44

MACOM incorporates by reference its responses to Request Nos. 23, 24, 80, and 81.

REQUEST FOR PRODUCTION NO. 152

Documents sufficient to identify other products competing with the Covered Products.

RESPONSE TO REQUEST FOR PRODUCTION NO. 152

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects to the Request as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects that this Request is duplicative of previous discovery requests served by Infineon. MACOM objects to the terms "other products," "competing," and "covered products" as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to the extent this Request seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects that this Request is not reasonably limited as to time and thus seeks to impose undue burden on MACOM. MACOM objects to this Request to the extent it seeks third-party confidential information that MACOM is not permitted to disclose under applicable protective orders and/or private agreements. MACOM objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: MACOM incorporates by reference its responses to Request Nos. 23, 24, 80, and 81.

REQUEST FOR PRODUCTION NO. 153

All documents comparing the Covered Products to other competing products.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 153

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects to the Request as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects that this Request is duplicative of previous discovery requests served by Infineon. MACOM objects to the terms "comparing," "covered products," "other competing products" as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to the extent this Request seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects that this Request is not reasonably limited as to time and thus seeks to impose undue burden on MACOM. MACOM objects to this Request to the extent it seeks third-party confidential information that MACOM is not permitted to disclose under applicable protective orders and/or private agreements. MACOM objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: MACOM incorporates by reference its responses to Request Nos. 23, 24, 80, and 81.

Below are Defendants' RFPs 23, 24, 80, and 81 and Plaintiffs' responses, which are incorporated by reference into Plaintiffs' responses to RFPs 150, 152, and 153.

## REQUEST FOR PRODUCTION NO. 23

All documents concerning business proposals or roadmaps for acquiring Nitronex, LLC, including documents concerning the intellectual property owned, licensed, or assigned to Nitronex, LLC related to GaN-on-Si and GaN-on-SiC.

RESPONSE TO REQUEST FOR PRODUCTION NO. 23

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects to the Request as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to the terms "concerning," "business proposals," "roadmaps," "intellectual property," "owned," "licensed," "assigned," and "related to" as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to the extent this Request seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: MACOM will produce responsive, non-privileged documents that relate to the Nitronex Patents, to the extent they exist and can be located upon a reasonable search. Negotiations with Defendants are ongoing as to the timing of document productions.

REQUEST FOR PRODUCTION NO. 24

All documents and communications concerning business projections related to the acquisition of Nitronex, LLC by MACOM in 2014, including projections of the design, development, and sales of products using GaN-on-Si and GaN-on-SiC.

RESPONSE TO REQUEST FOR PRODUCTION NO. 24

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects to the Request as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to the terms "communications," "concerning," "business projections," "related to," "acquisition," "projections,"

"design," "development," "sales," "products," and "using" as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to the extent this Request seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects that this Request is not reasonably limited as to time and thus seeks to impose undue burden on MACOM. MACOM objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: MACOM will produce responsive, non-privileged documents, to the extent they exist and can be located upon a reasonable search. Negotiations with Defendants are ongoing as to the timing of document productions.

REQUEST FOR PRODUCTION NO. 80

All documents concerning your factual basis for the contentions of irreparable harm and damages resulting from the alleged breach of contract, including all documents concerning actual or projected sales, actual or projected value of products and intellectual property rights relating to GaN-on-Si, actual or projected profits from potential sublicensees and/or customers, uncertainty regarding MACOM's business activities, and increased legal and other fees as it relates to any of Defendants' alleged actions.

RESPONSE TO REQUEST FOR PRODUCTION NO. 80

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects to the Request as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request as compound. MACOM objects to the terms "concerning," factual basis," "contentions," "irreparable harm," "damages," "resulting," "breach of contract,"

"actual," "projected," "sales," "value," "products," "intellectual property rights," "relating to," "potential," "sublicensees," "customers," "uncertainty," "business activities," "legal," "other fees," "relates to," and "alleged actions" as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to the extent this Request seeks information in Defendants' possession. MACOM objects to the extent this Request seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects that this Request is not reasonably limited as to time and thus seeks to impose undue burden on MACOM. MACOM objects to this Request to the extent it seeks third-party confidential information that MACOM is not permitted to disclose under applicable protective orders and/or private agreements. MACOM objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: MACOM will produce responsive, non-privileged documents to the extent they exist and can be located upon a reasonable search. Negotiations with Defendants are ongoing as to the timing of document productions.

REQUEST FOR PRODUCTION NO. 81

All documents concerning industry or market projections relating to GaN-on-Si RF or GaN-on-SiC products, including industry or market projections for each of the years from 2004 to the present.

RESPONSE TO REQUEST FOR PRODUCTION NO. 81

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects to the Request as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to

this Request as compound. MACOM objects to the terms "concerning," "industry," "market projections," "relating to," and "products" as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to the extent this Request seeks information in Defendants' possession. MACOM objects to the extent this Request calls for expert testimony. MACOM objects to the extent this Request seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects that this Request is not reasonably limited as to time and thus seeks to impose undue burden on MACOM. MACOM objects to this Request to the extent it seeks third-party confidential information that MACOM is not permitted to disclose under applicable protective orders and/or private agreements. MACOM objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: MACOM will produce responsive, non-privileged documents to the extent they exist and can be located upon a reasonable search. Negotiations with Defendants are ongoing as to the timing of document productions.

**1.     Defendants' Argument**

RFP 150 requests documents concerning Plaintiffs' market share relating to the Covered Products.  RFPs 152 and 153 seek documents showing the identity of competing products and the market share of competing products.

Plaintiffs continue to improperly incorporate by reference non-responsive answers to other RFPs.  By doing so, they ignore the relevance and importance of what Defendants actually seek by these requests—documents and information showing the market share for Plaintiffs' Covered Products compared with the market share for competing products, which is critical to assessing their claim for lost profits.

### a)   Background

On October 2, 2017, Defendants served RFPs 150, 152, and 153, and on November 1, 2017, Plaintiffs responded.  Because these responses once again merely incorporated other responses, on March 7, 2018, counsel for Defendants sent a letter to counsel for Plaintiffs, identifying deficiencies in Plaintiffs' responses.  On March 26, 2018, the parties met and conferred regarding these Requests in accordance with Local Rule 37.1 but could not resolve their dispute.  On May 9, 2018, counsel for Defendants sent another letter to counsel for Plaintiffs, identifying deficiencies in Plaintiffs' responses.  On May 18, 2018, the parties again met and conferred regarding these Requests but could not resolve their dispute.  Ex. 2, May 14, 15, and 18, 2018 Meet and Confer email from Caballero to Banzhoff.

### b)   Plaintiffs' responses to RFPs 150, 152, and 153 contain the familiar deficiency of vague and non-responsive incorporation by reference of other, unrelated responses.

In response to RFPs 150, 152, and 153, Plaintiffs incorporate their responses to RFPs 23, 24, 80, and 81.  These incorporated responses deal with different topics entirely:

- In response to RFP 23, Plaintiffs agreed to produce documents relating to the Nitronex Patents.

- In response to RFP 24, Plaintiffs agreed to produce documents and communications regarding business projections in MACOM's 2014 acquisition of Nitronex, LLC.

- In response to RFP 80, Plaintiffs agreed to produce documents relating to sales, the value of products and intellectual property rights relating to GaN-on-Si, profits, uncertainty regarding MACOM's business activities, and legal fees.

- In response to RFP 81, Plaintiffs agreed to produce documents relating to industry and market projections for GaN-on-Si RF and GaN-on-SiC products.

These responses typify the issues caused by Plaintiffs' repeated incorporation by reference. For example, Plaintiffs do not explain how "documents that relate to the Nitronex Patents," produced in response to RFP 23, respond to RFP 152's request for documents identifying products that *compete with* the Covered Products. Are Plaintiffs producing responsive documents in response to RFP 152? Are they taking the position that "documents that relate to the Nitronex Patents" and the others from their incorporated responses are fully responsive to RFPs 150, 152 and 153? Are they refusing to produce, in whole or in part, without explaining the basis for this refusal? Even after sifting through the winding trail of Plaintiffs' responses, Defendants are left to guess.

        **c)**    **Plaintiffs must produce documents responsive to RFPs 150, 152, and 153 because market share information, which Plaintiffs allude to in response to Interrogatory No. 10, is probative of Plaintiffs' lost profits theory.**

As discussed above with respect to Interrogatory No. 10, Plaintiffs are seeking lost profits damages. Information about Plaintiffs' market share, competitors, and those competitors' products is highly relevant to Plaintiffs' lost profits damages theory. And market share evidence has been specifically used by the Federal Circuit in calculating lost profit damages on infringement claims. *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1578 (Fed. Cir. 1989).

So far, Plaintiffs have agreed to produced only future market projections. But documents regarding Plaintiffs' and their competitors' actual market share are also relevant to Plaintiffs' lost profits damages claim. Historical market share data and competing products are precisely what Defendants need to understand Plaintiffs' lost profits theory and precisely what courts compel parties to produce. *See Kannar v. Alticor Inc.*, 209CV2500PSGVBKX, 2010 WL 11519604, at *2 (C.D. Cal. Jan. 20,

52

2010) (compelling production of years' worth of an accused product's historical market share data).  Because market share information for the Covered Products and their competitors is relevant to Plaintiffs' lost profits theory, Plaintiffs must produce documents responsive to RFPs 150, 152, and 153.

### 2.     Plaintiffs' Argument: This Issue Is Moot

This issue is moot.

The parties conferred on this issue for the first time[10] on Friday, May 18.  Ex. F at 2.  Infineon served its joint stipulation two business days later on Tuesday, May 22nd, before MACOM had a chance to confirm that most or all documents responsive to these requests have been produced.  But MACOM has now confirmed to Infineon that it already has or will produce "non-privileged documents responsive to RFPs 150, 152, and 153 regarding GaN-on-Si products, to the extent they exist and could be located upon a reasonable search."  *Id.*

MACOM requested that Infineon remove this issue from the joint stipulation, but Infineon refused.  Ex. C at 3.

MACOM respectfully requests that the Court deny Infineon's motion to compel on these requests as moot.

### F.     Defendants' Requests for Production Nos. 203, 206, and 209

Below are Defendants' RFPs 203, 206, and 209, and Plaintiffs' responses.

REQUEST FOR PRODUCTION NO. 203

> All documents related to MACOM's relationship with ST regarding GaN-on-Si or GaN-on-SiC wafers, parts, products, technology or rights under any of the Licensed Patents.

---

[10]  Infineon's suggestion that the parties conferred in March about these RFPs is incorrect.  As evidenced by Infineon's own summary of the call, the parties only conferred about Infineon's general objection to the practice of incorporating earlier RFP responses by reference.  No substantive specific issues or complaints relating to RFPs 150, 152 or 153 were raised or discussed.  Ex. B.

RESPONSE TO REQUEST FOR PRODUCTION NO. 203

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects to the Request as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request to the extent it is duplicative of previous discovery requests served by Infineon. MACOM objects to the terms "related to," "relationship," "regarding," "wafers," "parts," "products," "technology," "rights," and "Licensed Patents" as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to the extent this Request seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects that this Request is not reasonably limited as to time and thus seeks to impose undue burden on MACOM. MACOM objects to this Request to the extent it seeks third-party confidential information that MACOM is not permitted to disclose under applicable protective orders and/or private agreements. MACOM objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: MACOM will produce responsive, non-privileged agreements with ST Microelectronics related to the Nitronex Patents, to the extent they exist and can be located upon a reasonable search. MACOM anticipates substantially completing its document production by March 30, 2018.

REQUEST FOR PRODUCTION NO. 206

All documents related to ST's development of GaN-on-Si or GaN-on-SiC technology, including any documents reflecting ST's capacity to produce GaN-on-Si or GaN-on-SiC wafers, ST's plans for supplying GaN-on-Si or GaN-

on-SiC wafers to third parties, and ST's plans or strategy for developing markets outside wireless infrastructure.

RESPONSE TO REQUEST FOR PRODUCTION NO. 206

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects that this Request seeks documents that are more appropriately sought from ST Microelectronics. MACOM objects to the Request as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request to the extent it is duplicative of previous discovery requests served by Infineon. MACOM objects to the terms "related to," "development," "capacity," and "plans" as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to the extent this Request seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects that this Request is not reasonably limited as to time and thus seeks to impose undue burden on MACOM. MACOM objects to this Request to the extent it seeks third-party confidential information that MACOM is not permitted to disclose under applicable protective orders and/or private agreements. MACOM objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: Documents regarding "ST's development," "ST's capacity," and "ST's plans" are not properly sought from MACOM.

REQUEST FOR PRODUCTION NO. 209

All documents relating to the decision to announce MACOM's collaboration with ST, including any documents relating to when, where, and how to announce

55

MACOM's collaboration with ST and any documents relating to postponing or abstaining from announcing MACOM's collaboration with ST.

RESPONSE TO REQUEST FOR PRODUCTION NO. 209

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects to the Request as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request to the extent it is duplicative of previous discovery requests served by Infineon. MACOM objects to the terms "relating to," "decision," "collaboration," "postponing," and "abstaining" as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to the extent this Request seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects that this Request is not reasonably limited as to time and thus seeks to impose undue burden on MACOM. MACOM objects to this Request to the extent it seeks third-party confidential information that MACOM is not permitted to disclose under applicable protective orders and/or private agreements. MACOM objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: MACOM will produce responsive, non-privileged agreements with ST Microelectronics related to the Nitronex Patents, to the extent they exist and can be located upon a reasonable search. MACOM anticipates substantially completing its document production by March 30, 2018.

**1.     Defendants' Argument**

**a)     Background**

On February 12, 2018, Defendants served RFPs 203, 206, and 209, and on March 14, 2018, Plaintiffs responded.  On March 30, 2018, counsel for Defendants sent a letter to counsel for Plaintiffs regarding the arbitrary limitations in Plaintiffs' responses.  On April 9, 2018, and April 11, 2018 the parties met and conferred regarding these RFPs in accordance with Local Rule 37.1.  In an attempt to resolve the parties' dispute, Defendants offered revised, narrower versions of each of these requests:

- RFP 203
  - Original—"All documents related to MACOM's relationship with ST regarding GaN-on-Si or GaN-on-SiC wafers, parts, products, technology or rights under any of the Licensed Patents."
  - Defendants' Proposal—"Documents relating to MACOM's strategic reasons for entering into a relationship with ST and communications with MACOM's customers regarding MACOM's relationship with ST."
- RFP 206
  - Original—"All documents related to ST's development of GaN-on-Si or GaN-on-SiC technology, including any documents reflecting ST's capacity to produce GaN-on-Si or GaN-on-SiC wafers, ST's plans for supplying GaN-on-Si or GaN-on-SiC wafers to third parties, and ST's plans or strategy for developing markets outside wireless infrastructure."
  - Defendants' Proposal—"Documents sufficient to show ST's capacity to produce GaN-on-Si or GaN-on-SiC wafers, ST's plans for supplying GaN-on-Si or GaN-on-SiC wafers to third parties, and ST's plans or strategy for developing markets outside wireless infrastructure."
- RFP 209
  - Original—"All documents relating to the decision to announce

57

MACOM's collaboration with ST, including any documents relating to when, where, and how to announce MACOM's collaboration with ST and any documents relating to postponing or abstaining from announcing MACOM's collaboration with ST."

o Defendants' Proposal—"Documents sufficient to show the reasons for the decision as to when, where, and how to announce MACOM's collaboration with ST and for any decision to postpone or abstain from announcing MACOM's collaboration with ST."

Ex. 4, April 9 and 11, 2018 Meet and Confer email chain, at April 18, 2018 3:29 PM email from Caballero to Banzhoff.

During this conference, the parties also discussed RFP 204,[11] with Defendants agreeing to narrow their RFP to "[a]ll communications with ST relating to this lawsuit, the 2010 IP Purchase Agreement, 2010 License Agreement, the Licensed Patents, or Defendants." *Id*. Plaintiffs agreed to produce documents responsive to Defendants narrowed proposal. *Id*. at April 30, 2018 6:04 PM email from Banzhoff to Caballero. Because Plaintiffs agreed to Defendants' proposed revision of RFP 204, Defendants agreed not to move to compel with respect to RFP 204. *Id*. at May 15, 2018 1:59 PM email from Caballero to Banzhoff.

Regarding RFPs 203, 206, and 209, however, Plaintiffs rejected even Defendants' narrowed requests, without adding any additional context beyond their boilerplate objections and without proposing any alternative language. *Id*. at April 30, 2018 6:04 PM email from Banzhoff to Caballero. Accordingly, the parties were unable to resolve their differences regarding these three RFPs.

---

[11] Defendants' original RFP 204 read: "All communications with ST relating to GaN-on-Si or GaN-on-SiC technology, this lawsuit, the 2010 IP Purchase Agreement, 2010 License Agreement, the Licensed Patents, or Defendants."

**b)**     **Plaintiffs must produce documents responsive to RFPs 203, 206, and 209 because these documents will show their relationship with their partner, which Plaintiffs put at issue in their response to Interrogatory No. 10.**

In general, these RFPs seek documents relating to ST Microelectronics, one of Plaintiffs' partners who provides wafer manufacturing so that Plaintiffs could provide GaN-on-Si products to customers.  These RFPs seek a specific set of documents relating to ST, limited to documents or communications relating to rights to GaN-on-Si and GaN-on-SiC technology, the relevant agreements, Defendants, and Plaintiffs' collaboration with ST.  As stated in Plaintiffs' response to Interrogatory No. 10, Plaintiffs seek lost profit damages based, in part, on their allegation that Defendants' conduct "delayed execution of agreements between MACOM and manufacturing partners."  As detailed above, this response does not identify a single manufacturing partner.  But through other documents and publicly available information, Defendants believe ST may be an important supplier (*i.e.*, manufacturing partner) of Plaintiffs.  Thus, the RFPs at issue seek documents relating to Plaintiffs' and ST's relationship—which is highly relevant to Plaintiffs' lost profits claim.  The requests may also be relevant to the extent Plaintiffs' relationship with ST was important to customers or affected sales.

To probe the creation of this relationship, as well as the marketing and business decisions behind it, RFP 209 requests documents relating to the decision to announce Plaintiffs' collaboration with ST.  Likewise, because Plaintiffs' Interrogatory No. 10 response states that Defendants delayed some such business arrangements, RFP 209 requests documents regarding any decision to postpone this announcement.  Plaintiffs should be compelled to produce *at least* these responsive and highly relevant documents requested by RFP 209.

RFP 203 requests documents related to MACOM's relationship with ST regarding GaN-on-Si or GaN-on-SiC wafers, parts, product, technology and patent rights.  Defendants are entitled to understand the importance of ST as a manufacturing

partner, both to Plaintiffs' internal business plans and to Plaintiffs' potential customers. This is especially true in light of Plaintiffs' allegations that it was damaged by delays in getting agreements with manufacturing partners in place. Plaintiffs should be compelled to produce documents responsive to RFP 203.

Additionally, RFP 206 relates to Plaintiffs' broad theory that they were poised to become an industry leader, expecting a "ramp up" in sales and profits, but that Defendants' allegedly wrongful conduct undercut this ramp up. Because of Plaintiffs' important relationship with ST as a wafer supplier, Plaintiffs' ability to ramp up necessarily depends on ST's ability to do the same. If ST could not have provided Plaintiffs with sufficient quantities of wafers to meet Plaintiffs' hypothetical ramp up, Plaintiffs themselves could not have ramped up products for customers. Based on this rationale, RFP 206 seeks information related to ST's ability to provide GaN-on-Si or GaN-on-SiC wafers to Plaintiffs. What was ST's production capacity? Was ST manufacturing wafers for other parties? Was ST devoting its resources to developing and manufacturing components entirely outside of wireless infrastructure?

In light of Plaintiffs' lost profits claim and interrogatory response squarely putting its manufacturing partner relationships at issue, Plaintiffs cannot avoid producing documents responsive to RFPs 203, 206, and 209.

### 2.   Plaintiffs' Argument:  This Issue Is Moot

This issue is moot.

MACOM has confirmed its agreement to Infineon's proposal for these requests, namely that MACOM will produce, to the extent that MACOM has these documents and they can be located upon a reasonable search:

- Documents relating to MACOM's strategic reasons for entering into a relationship with ST and communications with MACOM's customers regarding MACOM's relationship with ST.

- Documents sufficient to show ST's capacity to produce GaN-on-Si or GaN-on-SiC wafers.

- Documents sufficient to show ST's plans for supplying GaN-on-Si or GaN-on-SiC wafers to third parties.

- Documents sufficient to show ST's plans or strategy for developing markets outside wireless infrastructure.

- Documents sufficient to show the reasons for the decision as to when, where, and how to announce MACOM's collaboration with ST and for any decision to postpone or abstain from announcing MACOM's collaboration with ST.

*See* Ex. C at 5; Ex. 4 at 5-6.  This is in addition to MACOM's prior agreement to produce non-privileged communications with ST Micro relating to this lawsuit, the 2010 IP Purchase Agreement, 2010 License Agreement, the Licensed Patents, or Defendants.  Ex. 4 at 4.

Notably, MACOM made a proposal to Infineon regarding it ST-related requests, including those that are now the subject of this motion, on April 30, 2018.  Ex. 4 at 2.  Infineon ignored MACOM's request (and two follow-up emails) for over two weeks—all the while Infineon was working on this lengthy joint stipulation.  *Id.* at 1-2.  Then, Infineon rejected MACOM's proposal out of hand.  *Id.* at 1.  Before MACOM could respond with any further discussion, Infineon served this joint stipulation.  This history demonstrates the unreasonableness with which Infineon has approached this motion.

MACOM requested that Infineon remove this issue from the joint stipulation, given that it is now moot.  Infineon refused.  Ex. C at 2.  Accordingly, MACOM respectfully requests that the Court deny Infineon's motion to compel on this issue.

**MACOM's Conclusion**

Infineon's unreasonable litigation tactics are exemplified by this overly-long motion to compel, which MACOM was required to oppose (largely unnecessarily, given the mootness of most of the issues) over the Memorial Day holiday weekend after Infineon refused a three-day extension.  The only open issue for resolution by

61

the Court, for Request No. 216, should be denied.  This request seeks only duplicative information that: (a) Infineon has not articulated an adequate need for; and (b) would be unduly and disproportionately burdensome for MACOM to collect.  MACOM therefore respectfully requests that the Court deny Infineon's motion to compel in its entirety.

1    Dated:  May 31, 2018           **BAKER BOTTS LLP**

2

3                                   By: /s/ *Jeffery D. Baxter*
David G. Wille (admitted *pro hac vice*)

4                                   *david.wille@bakerbotts.com*
Jeffery D. Baxter (admitted *pro hac vice*)

5                                   *jeff.baxter@bakerbotts.com*
Brian D. Johnston (admitted *pro hac vice*)

6                                   *brian.johnston@bakerbotts.com*
James C. Williams (admitted *pro hac vice*)

7                                   *james.williams@bakerbotts.com*
Charles Yeh (admitted *pro hac vice*)

8                                   *charles.yeh@bakerbotts.com*

9                                   Josue Caballero (admitted *pro hac vice*)

10                                 *josue.caballero@bakerbotts.com*

11                                 BAKER BOTTS L.L.P.

12                                 2001 Ross Avenue, Suite 900
Dallas, TX 75201

13                                 Telephone: 214.953.6500

14                                 Fax: 214.953.6503

15

16                                 **ATTORNEYS FOR DEFENDANTS**

17

18                                 **PERKINS COIE LLP**

19                                 By:/s/ *Amanda Tessar*

20                                   Lara J. Dueppen, Bar No. 259075
LDueppen@perkinscoie.com

21                                   PERKINS COIE LLP
1888 Century Park East, Suite 1700

22                                   Los Angeles, CA 90067-1721
Telephone:  310.788.9900

23                                   Facsimile:  310.788.3399

24

25                                   Amanda Tessar (*pro hac vice*)
ATessar@perkinscoie.com

26                                   Elizabeth Banzhoff (*pro hac vice*)
EBanzhoff@perkinscoie.com

27                                   PERKINS COIE LLP
1900 Sixteenth Street, Suite 1400

28                                   Denver, CO  80202-5255

63

Telephone:  303.291.2357
Facsimile:  303.291.2457

Ramsey M. Al-Salam, Bar No. 109506
RAlSalam@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone:  206.359.6835
Facsimile:  206.359.7385

Philip A. Morin, Bar No. 256864
PMorin@perkinscoie.com
PERKINS COIE LLP
11988 El Camino Real, Suite 350
San Diego, CA  92130-2594
Telephone:  858.720.5700
Facsimile:  858.720.5799

Daniel T. Keese, Bar No. 280683
DKeese@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

Morgan Chu (State Bar No. 70446)
(mchu@irell.com)
Ellisen Turner (State Bar No. 224842)
(eturner@irell.com)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
Telephone:  310-277-1010
Facsimile:  310-203-7199

ATTORNEYS FOR PLAINTIFFS