| | |
|---|---|
| 1 | Amanda Tessar (admitted *pro hac vice*) |
| 2 | ATessar@perkinscoie.com<br>PERKINS COIE LLP |
| 3 | 1900 Sixteenth Street, Suite 1400<br>Denver, CO  80202-5255 |
| 4 | Telephone:  303.291.2300<br>Facsimile:  303.291.2400 |
| 5 | |
| 6 | Ramsey M. Al-Salam<br>RAlsalam@perkinscoie.com |
| 7 | PERKINS COIE LLP<br>1201 Third Avenue Suite 4900 |
| 8 | Seattle, WA  98101-3099<br>Telephone: 206.359.6385 |
| 9 | Facsimile: 206.359.7385 |
| 10 | **ATTORNEYS FOR PLAINTIFFS**<br>(Additional Counsel Listed on Signature Page) |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC., a Delaware corporation, and NITRONEX, LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>INFINEON TECHNOLOGIES AG, a corporation organized under the laws of Germany, and INFINEON TECHNOLOGIES AMERICAS CORP., a Delaware corporation,<br><br>Defendants. | Case No. CV 16-02859 CAS (PLAx)<br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON ESTOPPEL**<br><br>**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL** |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ............................................................................................. 1

II. RELEVANT AND UNDISPUTED FACTS ................................................... 2

III. SUMMARY JUDGMENT OF ESTOPPEL SHOULD BE GRANTED ....... 4

    A. Assignee Estoppel Applies to All the Patents .......................................... 4

    B. Judicial Estoppel Applies to the Patents That Infineon Prosecuted ................................................................................................. 8

    C. The Estoppel Applies to Infineon AG .................................................... 11

IV. CONCLUSION ............................................................................................. 13

**CASES**

*Agha-Khan v. U.S.*,
   No. 1:15-CV-00042-AWI, 2015 WL 5734380 (E.D. Cal. Sept. 29, 2015) .................................................................................................. 14

*Alcohol Monitoring Sys., Inc. v. ActSoft, Inc.*,
   No. 07-cv-02261-PAB, 2011 WL 5075619 (D. Co. 2011) ................................ 11

*Analog Devices, Inc. v. Linear Tech. Corp.*,
   479 F. Supp. 2d 202 (D. Mass. 2007) ................................................................. 11

*Chaveriat v. Williams Pipe Line Co.*,
   11 F.3d 1420 (7th Cir. 1993) .............................................................................. 10

*Coast Metals, Inc. v. Cape*,
   No. 78-276, 1979 WL 25083 (D.N.J. Dec. 24, 1979) ............................. 6, 7, 8, 10

*Diamond Sci. Co. v. Ambico, Inc.*,
   848 F.2d 1220 (Fed. Cir. 1988) ............................................................. 6, 7, 9, 13

*Franklin v. Dudley*,
   No. C08-1223BHS, 2012 WL 4468774 (E.D. Cal. Sept. 27, 2012) ................... 14

*Geffner v. Linear Rotary Bearings, Inc.*,
   124 F.3d 229 (Fed. Cir. 1997) ............................................................................. 9

*In re Ark-LA-Tex Timber Co., Inc.*,
   482 F.3d 319 (5th Cir. 2007) ........................................................................ 12, 13

*In re Johnson*,
   518 F.2d 246 (10th Cir. 1975) ............................................................................ 15

*Lampi Corp. v. Am. Power Prods., Inc.*,
   228 F.3d 1365 (Fed. Cir. 2000) .......................................................................... 10

*Lia v. Saporito*,
   909 F. Supp. 2d 149 (E.D.N.Y. 2012), *aff'd*, 541 F. App'x 71 (2d Cir. 2013) ............................................................................................. 14

*Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*,
   692 F.3d 983 (9th Cir. 2012) .............................................................................. 14

*New Hampshire v. Maine*,
   532 U.S. 742 (2001) ............................................................................................ 15

*Reed Elsevier, Inc. v. Muchnick*,
  559 U.S. 154 (2010) .................................................................................. 12, 13

*Rissetto v. Plumbers & Steamfitters Local 343*,
  94 F.3d 597 (9th Cir. 1996) ................................................................................ 10

*Roberts v. Sears, Roebuck & Co.*,
  573 F.2d 976 (7th Cir. 1978) ................................................................................ 7

*Salessi v. Cmmw. Land Title Ins. Co.*,
  SA CV 08-01274-DOC, 2013 WL 5676209 (C.D. Cal. Oct. 16, 2013) .................................................................................................................. 14

*Shamrock Techs., Inc. v. Med. Sterilization, Inc.*,
  903 F.2d 789 (Fed. Cir. 1990) ........................................................................... 13

*Slip Track Sys., Inc. v. Metal Lite, Inc.*,
  113 Fed. Appx. 930 (Fed. Cir. 2004) .......................................................... 6, 7, 8

*Steen v. John Hancock Mut. Life Ins. Co.*,
  106 F.3d 904 (9th Cir. 1997) ............................................................................. 14

*Sybron Transition Corp. v. Nixon, Hargrave, Devans & Doyle*,
  770 F. Supp. 803 (W.D.N.Y. 1991) ............................................................. 6, 7, 8

*Toyo Tire & Rubber Co. Ltd. v. Hong Kong Tri-Ace Tire Co.*,
  281 F.Supp.3d 967 (C.D. Cal. 2017) ............................................................ 11, 12

*Trustees in Bankr. of N. Am. Rubber Thread Co. v. U.S.*,
  593 F.3d 1346 (Fed. Cir. 2010) ......................................................................... 10

*Tuitama v. Nationstar Mortg. LLC*,
  CV1409956MMMAGRX, 2015 WL 12744269 (C.D. Cal. Apr. 13, 2015) .................................................................................................................. 14

*Washington Mut. Inc. v. United States*,
  636 F.3d 1207 (9th Cir. 2011) ........................................................................... 14

*Wyler Summit P'ship v. Turner Broad. Sys., Inc.*,
  235 F.3d 1184 (9th Cir. 2000) ........................................................................... 12

*Zendel v. Circle Location Servs., Inc.*,
  CV1107963SJOCWX, 2012 WL 12877182 (C.D. Cal. Apr. 5, 2012) .................................................................................................................. 14

**STATUTES**

35 U.S.C. §§102 and 103 ............................................................................................... 3, 5

## I. INTRODUCTION

Plaintiffs MACOM Technology Solutions Holdings, Inc., and Nitronex, LLC (collectively "MACOM") respectfully seek summary judgment that Defendants (collectively "Infineon") are barred by the doctrines of assignee estoppel and judicial estoppel from contending that the patents-at-issue are invalid. Summary judgment is appropriate because the material facts are undisputed and the legal principles are clear. Defendant Infineon Technologies Americas Corp. ("Infineon Americas") was assigned the patents in exchange for, among other things, its promises that: (1) MACOM would be given the exclusive right to practice the patented inventions in a defined field; and (2) Infineon would enforce the patents against infringers or, if it did not, would give MACOM the opportunity to do so.

███████████████████████████████████████████████████████
███

Infineon now seeks to avoid those obligations by arguing that the patents are invalid. Infineon's claims are inconsistent with its contractual obligations and undermine the entire purpose of the agreement. Infineon promised not to practice the patents in MACOM's exclusive field, but now seeks to escape this promise by arguing the patents are invalid. If successful, Infineon's promise of an exclusive field was illusory. Similarly, Infineon cannot enforce the patents when it has taken a position that they are invalid. Because MACOM relied on Infineon's promises of an exclusive license and enforcement, Infineon is estopped under the doctrine of assignee estoppel from asserting that the patents are invalid.

In addition, Infineon Americas "prosecuted" many of the applications that led to the issuance of the patents-at-issue. In doing so, Infineon represented to the United States Patent and Trademark Office that the patent claims were directed to patentable inventions (*e.g.,* that they met the requirements of 35 U.S.C. §§102 and 103). Having successfully advocated for the issuance of the patents, Infineon is precluded, by the doctrine of judicial estoppel, from now contending they are

invalid. Courts consistently hold that a party is estopped from taking a position in litigation that is directly contrary to a position that it previously successfully advocated to an administrative agency, such as the Patent and Trademark Office.

Further, **both** Defendants, not just Infineon Americas, are subject to estoppel. Although Infineon Technologies AG ("Infineon AG") has argued that only Infineon Americas could be estopped, Infineon AG is subject to both forms of estoppel because it is in privity with Infineon Americas through its parent-subsidiary relationship.

## II.    RELEVANT AND UNDISPUTED FACTS

The facts relevant to assignee estoppel and judicial estoppel are undisputed and are set forth in the Statement of Uncontroverted Facts filed herewith.[1] They are summarized here for the Court's convenience.

In 2010, MACOM's predecessor (Nitronex Corporation) and Infineon Americas (then-named International Rectifier Corporation or "IR") entered into two related agreements, an Intellectual Property Purchase Agreement ("IP Purchase Agreement") and a License Agreement ("License Agreement"). Dkt. No. 445 at ¶2 (Third Amended Complaint); Dkt. No. 454-1 at ¶2 (Infineon Answer); Al-Salam Decl. Exh. 1 (IP Purchase Agreement); Al-Salam Decl. Exh. 2 (License Agreement). As part of the transaction, MACOM assigned to Infineon Americas fifty-four patents and patent applications. *See* Al-Salam Decl. Exh. 1 at Exhibit B: Purchased Patents (IP Purchase Agreement).

In return, Infineon provided MACOM an exclusive patent license in a defined field of use, with the right to sublicense. Al-Salam Decl. Exh. 2 at ¶2.1 (License Agreement). Infineon further agreed to ███████████████

---

[1] The Court denied MACOM's motion to strike Infineon's invalidity contentions at the pleading stage, in part, to allow additional facts to be developed on the issue of assignee estoppel. Dkt. No. 354. As explained below, the relevant facts are undisputed and warrant summary judgment.

■■■ Al-Salam Decl., Exh. 1 at ¶4.02 (IP Purchase Agreement).  If Infineon was unsuccessful in stopping infringement and had not diligently prosecuted an infringement action, MACOM had the right to enforce the patents against the alleged infringer, including the right to sue in Infineon's name and/or join Infineon as a party to the litigation.  *Id.* ■■■

*Id.* at ¶¶3.01, 4.02.

In addition, Infineon agreed to take responsibility for prosecuting pending applications, to regularly advise MACOM of the status of the applications, and to give MACOM advance notice before it abandoned any applications.  Al-Salam Decl. Exh. 2 at ¶4.01 (License Agreement).

Pursuant to these agreements, Infineon successfully prosecuted before the United States Patent and Trademark Office eight of the applications that led to the patents-at-issue.  Al-Salam Decl. at ¶ 7.[2]  In doing so, Infineon authored the relevant patent claims and took the position before the Patent Office that the claims are directed to a valid invention.  *Id.* at ¶ 8.  Patent validity requires, among other things, that the claims describe an invention that is new and not obvious as compared to the prior art.  35 U.S.C. §§ 102, 103.  For seven of the eight applications, Infineon expressly stated that the claims are "patentably novel and inventive."  Al-Salam Decl. at ¶ 8.

---

[2]  For purposes of this motion, MACOM focuses only on the narrowed list of patents at issue following the Court's order limiting the number of patent claims to fifteen.  The following eight of those patents were based on applications that Infineon prosecuted: 8,105,921; 8,344,417; 8,592,862; 8,928,034; 8,937,335; 9,461,119; 9,437,686; 9,064,775.  The arguments apply, of course, to any Nitronex patents prosecuted by Infineon or its predecessor.

Defendant Infineon AG is the parent of Infineon Americas. Dkt. No. 291 at ¶13.

These facts warrant the grant of summary judgment on estoppel against both Defendants.

## III. SUMMARY JUDGMENT OF ESTOPPEL SHOULD BE GRANTED

### A. Assignee Estoppel Applies to All the Patents

"Assignee estoppel is an equitable doctrine which, under appropriate circumstances, bars the assignee of a patent from contesting the validity of the assigned patent." *Slip Track Sys., Inc. v. Metal Lite, Inc.*, 113 Fed. Appx. 930, 933 (Fed. Cir. 2004) (unpublished[3]) (citations omitted). "For example, circumstances may warrant application of the doctrine to prevent an assignee from avoiding royalty payments otherwise due under an assignment contract by challenging the validity of the assigned patent." *Slip Track Sys.*, 113 Fed. Appx. at 933. Absent assignee estoppel, the buyer of a patent could, unfairly, "obtain its benefits and control it and refuse to pay the agreed consideration." *Sybron Transition Corp. v. Nixon, Hargrave, Devans & Doyle*, 770 F. Supp. 803, 811 (W.D.N.Y. 1991) (quotation and citations omitted); *see Coast Metals, Inc. v. Cape,* No. 78-276, 1979 WL 25083, at *4 (D.N.J. Dec. 24, 1979).

Assignee estoppel is also appropriate where the patent assignee is enforcing, or has the duty to enforce, the patent. *See Diamond Sci. Co. v. Ambico, Inc.*, 848 F.2d 1220, 1224 (Fed. Cir. 1988) ("If an assignee of a patent were allowed to challenge the patent, it could be placed in the legally awkward position of simultaneously attacking and defending the validity of the same patent.").

Because patentholders rarely want to invalidate their own patents, the doctrine of assignee estoppel infrequently arises—typically only when assignees are trying to escape contractual obligations in the assignment contract (*i.e.*, the situation

---

[3] A copy of the *Slip Track* decision is attached hereto as Exhibit 9.

here).[4] Courts have consistently held over the years, however, that an assignee is estopped as a matter of law from contesting the validity of its patent.

    For example, in *Coast Metals,* 1979 WL 25083, at *1, the plaintiff sought to invalidate a patent it was assigned and to rescind its contracts with the inventors-assignors. The court rejected the attempt, holding that, because of the doctrine of assignee estoppel, plaintiff could not contest the validity of the patent. *Id.* at *5. The court noted that, if the plaintiff could bring its suit attacking the patent, it would be able to "retain a monopoly while at the same time attacking the patent." *Id.* Unless and until the patent was invalidated, "[n]o one else could use the [patented technology] for fear of infringement." *Id.* In essence, the transaction of assigning a patent is a "'bargain and sale' of its subject matter and the amount agreed to must be paid" and cannot be avoided by later arguing the patent is invalid. *Id.* at *4*; see also Roberts v. Sears, Roebuck & Co.,* 573 F.2d 976, 982 (7th Cir. 1978) (affirming district court's decision not to decide the validity of the patent when invalidity was raised by assignee of a patent to attempt to avoid a claim based on the assignment contract); *Sybron*, 770 F. Supp. at 812 (assignee estoppel applied to bar argument in legal malpractice suit that party would have prevailed if its attorneys had adequately preserved invalidity defense, noting that "permitting the owner/assignee to assert patent invalidity allows it to escape its obligation to make full payment for the patent it had purchased").

    These principles apply with particular force in the instant case, where Infineon's claims of invalidity directly contravene its contractual commitments.

---

[4] Assign*or* estoppel, a cousin doctrine, comes up more frequently. "Assignor estoppel is an equitable doctrine that prevents one who has assigned the rights to a patent (or patent application) from later contending that what was assigned is a nullity." *Diamond Sci.*, 848 F.2d at 1224. Although *Diamond Scientific* involved assignor estoppel, the Federal Circuit also recognized assignee estoppel in that opinion. *Id.* at 1223-24. Hence, cases involving both the doctrines of assignor estoppel and assignee estoppel frequently rely on this case as the source of both doctrines. *See Slip Track Sys., Inc.*, 113 Fed. Appx. at 933.

-5-

Infineon, in exchange for the assignment of the patents, promised MACOM an exclusive license and further agreed to enforce the patents against infringers or to give MACOM the opportunity to do so[5]. If Infineon succeeds in its assertion that the patents are invalid, MACOM's exclusivity is illusory. Similarly, Infineon's position that the patents are invalid undermines both parties' ability to enforce the patents against infringers. The circumstances in the instant case justify the application of the doctrine of assignee estoppel at least as much as in situations where the assignee is attempting to avoid paying royalties. There is no material difference between an assignee's attempt to avoid paying royalties, and Infineon's attempt, in this case, to avoid its commitments of an exclusive license and enforcement.

Infineon's prior attempts to distinguish *Slip Track* also fail. Although the Federal Circuit declined to apply assignee estoppel in that decision, it was due to unique facts that are not present here. In particular, the defendant there argued that Slip Track's '760 patent was invalid in light of the '203 patent, a patent half-owned by Slip Track. Slip Track was thus forced to assert invalidity of the '203 patent to protect the validity of its '760 patent, not because it was trying to escape the bargain it had previously reached with the assignor. In other words, Metal Lite's actions "forced Slip Track to choose between protecting the validity of either the '760 patent or the '203 patent. Slip Track made the natural decision to protect its greater of two property interests, the '760 patent." *Slip Track*, 113 Fed. Appx. at 933. Infineon faces no such conundrum here.

The fact that courts have noted the rarity of cases that raise assignee estoppel issues does not mean that the doctrine has lost vitality. *E.g., Sybron*, 770 F. Supp. at 811; *Coast Metals, Inc. v. Cape*, No. 78-276, 1979 WL 25083, at *5 (D.N.J. Dec.

---

[5] Infineon has in the past emphasized that it also made a payment to MACOM. While the payment was partial consideration for the assignment, it does not change the fact that Infineon's invalidity contentions would vitiate its contractual obligations.

-6-

24, 1979). Instead, the rarity of the cases instead reflects that most patentees try to preserve, rather than undermine, the value of their patents.[6]

The two cases Infineon previously cited for the proposition that assignee estoppel is not consistently applied also do not support its position. In *Geffner v. Linear Rotary Bearings, Inc.*, the court declined to allow the assertion of the affirmative defense of assignee estoppel because plaintiff belatedly raised the defense. 936 F. Supp. 1150, 1155 (E.D. N.Y. 1996). Specifically, the plaintiff waited until ***after*** the bench trial had already taken place to seek to amend its complaint to add the defense. Further, on appeal, the Federal Circuit held that the agreement in that case was actually a *license*, not an assignment, and therefore assignee estoppel could not apply. *Geffner v. Linear Rotary Bearings, Inc.*, 124 F.3d 229 (Fed. Cir. 1997). Likewise, *Bull v. Logetronics, Inc.*—a case that has not been cited by a single court as precedent for the proposition that assignee estoppel has been abolished in the 45+ years since it was decided—seems to have involved a patent *license*, not a patent assignment. 323 F. Supp. 115, 118 (E.D. Va. 1971) (discussing breach claims for failure to pay "royalties called for by the exclusive licensing agreement").

Infineon is trying to do in this case ***exactly*** what the doctrine of assignee estoppel is designed to prevent: asserting invalidity of patents to avoid its contractual obligations. Indeed, Infineon's actions are even worse because it takes directly inconsistent positions; it is simultaneously asserting that MACOM is infringing the patents and then, when it wants to practice in MACOM's exclusive field, asserting that the same patents are invalid. *Cf. Diamond Sci. Co. v. Ambico,*

---

[6] The Supreme Court case previously cited by Infineon, *Kimble v. Marvel Entertainment, LLC,* did not evaluate or consider the doctrine of assignee estoppel. 135 S. Ct. 2401 (2015). *Kimble* instead analyzed the antitrust rule that prohibits patentholders from charging royalties after patent expiration. There is no argument here that the Nitronex Patents have expired or that royalties are due.

-7-

*Inc.*, 848 F.2d 1220, 1224–25 (Fed. Cir. 1988) ("If an assignee of a patent were allowed to challenge the patent, it would be placed in the legally awkward position of simultaneously attacking and defending the validity of the same patent."); *Coast Metals*, 1979 WL 25083 at *4-5 ("Coast owns the patent. If it were able to bring this suit it would be able to retain a monopoly while at the same time attacking the patent. No one else could use the [patented technology] for fear of infringement. Indeed, Coast could well be in the position of simultaneously attacking and defending the patent.").

**B.      Judicial Estoppel Applies to the Patents That Infineon Prosecuted**

Assignee estoppel is sufficient to support summary judgment that Infineon is estopped from invalidating the patents-in-suit. In addition, however, judicial estoppel is an independent basis for summary judgment on the long list of patents that Infineon itself prosecuted.

"Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996).[7] The doctrine applies to statements made in administrative proceedings:

> Unsurprisingly given its name, judicial estoppel is often articulated as applying to 'judicial' proceedings. However, many cases have applied to the doctrine where the prior statement was made in an administrative proceeding, and we are not aware of any case refusing to apply the doctrine because the prior proceeding was administrative rather than judicial.

*Id.* at 604-5 (collecting authorities); *see also Trustees in Bankr. of N. Am. Rubber Thread Co. v. U.S.*, 593 F.3d 1346, 1354 (Fed. Cir. 2010); *Chaveriat v. Williams*

---

[7] The Federal Circuit, which hears appeals of patent cases, applies the law of the regional circuit on judicial estoppel. *Lampi Corp. v. Am. Power Prods., Inc.*, 228 F.3d 1365, 1377 (Fed. Cir. 2000).

*Pipe Line Co.*, 11 F.3d 1420, 1427 (7th Cir. 1993) ("[T]he doctrine has been applied, rightly in our view, to proceedings in which a party to an administrative proceeding obtains a favorable order that he seeks to repudiate….").

Courts have specifically held that patent owners cannot take positions inconsistent with those taken before the Patent Office. *See Alcohol Monitoring Sys., Inc. v. ActSoft, Inc.*, No. 07-cv-02261-PAB, 2011 WL 5075619, at *5 (D. Co. 2011) ("Judicial estoppel could apply should plaintiff assert a position that is contrary to the positions plaintiff took in front of the PTO."); *Analog Devices, Inc. v. Linear Tech. Corp.*, 479 F. Supp. 2d 202, 212 (D. Mass. 2007) ("ADI is estopped from arguing that these two circuits it said were not obvious for purposes of patentability [to the PTO] are now mere commercial production details already familiar to those of ordinary skill in the art.").

The courts apply three factors in determining whether estoppel applies:

> "First, a party's later position must be 'clearly inconsistent' with its earlier position." *New Hampshire*, 532 U.S. at 750, 121 S. Ct. 1808 (citation omitted). "Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.'" *Id.* (citation omitted). "A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 751, 121 S. Ct. 1808.

*Toyo Tire & Rubber Co. Ltd. v. Hong Kong Tri-Ace Tire Co.*, 281 F.Supp.3d 967, 981 (C.D. Cal. 2017).

These three factors support the application of judicial estoppel here. First, Infineon's position that the claims are invalid is clearly inconsistent with the

-9-

position it took before the Patent Office, when it advocated that the claims were patentable.

Second, Infineon was successful in convincing the Patent Office to issue the claims. The Patent Office accepted Infineon's arguments and allowed the applications to issue as the patents-at-issue.

Third, Infineon would derive an unfair advantage if it were allowed now to contravene its earlier position so it can operate in MACOM's exclusive field. Accordingly, the factors support the application of judicial estoppel, and the Court should preclude Infineon from arguing that claims it successfully advocated to the Patent Office were valid are actually invalid. *See Toyo Tire*, 281 F.Supp.3d at 981 (finding that judicial estoppel barred defendant from challenging the validity of plaintiff's trade dress where defendant had previously entered into stipulation that trade dress was valid and protectable).

The only cases previously cited by Infineon on the issue of judicial estoppel are inapt. In *Wyler Summit*, for example, the court held that plaintiff had not taken an inconsistent position, so estoppel did not apply. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 235 F.3d 1184, 1190-91 (9th Cir. 2000) ("[T]he fact that Mr. Wyler claimed $50,000 … on his taxes does not … contradict Wyler Summit's current claim…."). In contrast, Infineon has taken inconsistent positions before the Patent Office and here. Similarly, in the only other cases cited by Infineon, the party not estopped was *unsuccessful* in advocating an earlier inconsistent position. In *Reed Elsevier*, for example, the defendant had previously asserted, unsuccessfully, both that the district court did not have subject matter jurisdiction over a class action and that it did have jurisdiction to approve a settlement. *Reed Elsevier, Inc. v. Muchnick,* 559 U.S. 154 (2010). The Supreme Court held these *unsuccessful* positions did not create estoppel. Similarly, in *Ark-LA-Tex Timber*, the Fifth Circuit acknowledged that the "doctrine of judicial estoppel prohibits parties from deliberating changing positions according to the exigencies of the

moment ….". *In re Ark-LA-Tex Timber Co., Inc.,* 482 F.3d 319, 332-33 (5th Cir. 2007). The court did not apply judicial estoppel, however, because the party to be estopped "was not successful in persuading the [court] to accept its earlier position" and because the "failure to assert a particular position does not trigger estoppel." *Id*. at 332-33 (also noting that estoppel applies to ***positions*** taken). These situations are clearly distinct from the instant case, where Infineon ***did prevail*** that the claims were patentable and their current position creates the "perception that [the Patent Office] was misled." *Reed Elsevier*, 559 U.S. at 170.

## C. The Estoppel Applies to Infineon AG

In connection with claim construction, Infineon AG asserted that even if Infineon Americas were estopped, Infineon AG is not estopped because it is not the assignee of the patents and did not prosecute the relevant patent applications. This is wrong. Estoppel applies to Infineon AG because it is in ***privity*** with Infineon Americas. Both the doctrines of assignee and judicial estoppel estop parties in privity with parties otherwise estopped.

Assignee estoppel applies to those in privity with the assignee. *See Diamond Sci.,* 848 F.2d at 1225 (noting, in case acknowledging the doctrines of assignor and assignee estoppel, that "there are still circumstances in which the equities of the contractual relationships between the parties should deprive one party (***as well as others in privity with it***) of the right to bring that challenge") (emphasis added). This issue has come up frequently in the context of assignor estoppel, where courts consistently hold that privies of an assignor are estopped, just like the assignor itself. *See MAG Aerospace Indus., Inc.*, 2015 WL 12488489, at *4 ("[A]ssignor estoppel is an equitable doctrine that prohibits an assignor of a patent or patent application, ***or one in privity with him***, from attacking the validity of that patent when he is sued for infringement by the assignee.") (emphasis added) (citations omitted); *Shamrock Techs., Inc. v. Med. Sterilization, Inc.*, 903 F.2d 789, 793-94 (Fed. Cir. 1990) ("[A]ssignor estoppel is an equitable doctrine ... that is mainly

concerned with the balance of the equities between the parties. ... Those in privity with the assignor partake of that balance; hence, extension of the estoppel to those in privity is justified.") (internal quotations omitted). The reason for the rule is manifest: the estopped party should not be able to avoid application of the equitable estoppel doctrine by having its privies assert a defense it could not. The exact same reasoning applies for assignee estoppel.

Further, Infineon AG is in privity with Infineon Americas; thus, the doctrine of assignee estoppel applies to bar it from raising an invalidity defense as well. Infineon Americas is a wholly-owned subsidiary of Infineon AG. "[P]rivity exists between a parent corporation and its wholly-owned subsidiary." *Zendel v. Circle Location Servs., Inc.*, CV1107963SJOCWX, 2012 WL 12877182, at *4 (C.D. Cal. Apr. 5, 2012); *see also, e.g., Agha-Khan v. U.S.,* No. 1:15-CV-00042-AWI, 2015 WL 5734380, at *6 (E.D. Cal. Sept. 29, 2015) (recognizing parents and subsidiaries as a category of privies); *Tuitama v. Nationstar Mortg. LLC*, CV1409956MMMAGRX, 2015 WL 12744269, at *10 (C.D. Cal. Apr. 13, 2015) (finding parent to be in privity with subsidiary); *Salessi v. Cmmw. Land Title Ins. Co.,* SA CV 08-01274-DOC, 2013 WL 5676209, at *9 (C.D. Cal. Oct. 16, 2013) ("Privity can be shown through a corporate parent and its wholly-owned subsidiary.").

Judicial estoppel also extends to those in privity with the party taking inconsistent positions. *Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 996 (9th Cir. 2012) (finding that beneficiaries were in privity with positions taken by executor and thus were subject to judicial estoppel); *Washington Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011) ("Collateral estoppel applies … against a party that is in privity to a party in previous litigation."); *Steen v. John Hancock Mut. Life Ins. Co.*, 106 F.3d 904, 910 (9th Cir. 1997); *Franklin v. Dudley*, No. C08-1223BHS, 2012 WL 4468774, at *2 (E.D. Cal. Sept. 27, 2012); *Lia v. Saporito*, 909 F. Supp. 2d 149, 175 (E.D.N.Y. 2012), *aff'd*,

541 F. App'x 71 (2d Cir. 2013) (holding that judicial estoppel applies "against a party that is in privity to a party in [a] prior litigation"); *In re Johnson*, 518 F.2d 246, 252 (10th Cir. 1975) ("Under the doctrine of judicial estoppel a party ***and his privies*** who have knowingly and deliberately assumed a particular position are estopped from assuming an inconsistent position to the prejudice of the adverse party.") (emphasis added).

Just as is the case for Infineon Americas, it would also make no sense to allow Infineon AG to argue invalidity. The result would be that Infineon would be taking advantage of a corporate shell game because Infineon AG would be able to assert defenses that its subsidiary is precluded from raising. Equity supports the grant of summary judgment against both Infineon Americas and Infineon AG. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (noting that the purpose of the doctrine of judicial estoppel is "to protect the integrity of the judicial process" by "prohibiting parties from deliberately changing positions according to the exigencies of the moment") (citation omitted).

## IV.  CONCLUSION

For the reasons above, MACOM should be granted summary judgment that assignee and judicial estoppel applies to both Infineon Americas and Infineon AG, such that judgment is entered in favor of MACOM on Infineon Americas' Fifth Affirmative Defense and Infineon AG's Fifth Affirmative Defense and Infineon is precluded from asserting any further arguments of patent invalidity in this case.

Respectfully submitted this 4th day of June, 2018.

**PERKINS COIE LLP**

By: */s/ Amanda Tessar*
Amanda Tessar (*pro hac vice*)
ATessar@perkinscoie.com
Elizabeth Banzhoff (*pro hac vice*)
EBanzhoff@perkinscoie.com

PERKINS COIE LLP
1900 Sixteenth Street, Suite 1400
Denver, CO  80202-5255
Telephone:  303.291.2300
Facsimile:  303.291.2400

Ramsey M. Al-Salam
RAlsalam@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue Suite 4900
Seattle, WA  98101-3099
Telephone: 206.359.6385
Facsimile: 206.359.7385

Lara J. Dueppen, Bar No. 259075
LDueppen@perkinscoie.com
PERKINS COIE LLP
1888 Century Park East, Suite 1700
Los Angeles, CA 90067-1721
Telephone:  310.788.9900
Facsimile:  310.788.3399

Daniel T. Keese, Bar No. 280683
DKeese@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

Morgan Chu (State Bar No. 70446)
(mchu@irell.com)
Ellisen Turner (State Bar No. 224842)
(eturner@irell.com)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
Telephone:  310-277-1010
Facsimile:  310-203-7199

**ATTORNEYS FOR PLAINTIFFS**

-14-