1  LINDA M. BURROW, Bar No. 194668
2    *lburrow@bsfllp.com*
   BOIES SCHILLER FLEXNER LLP
3  725 South Figueroa Street 31st Floor
   Los Angeles, CA  90017-5524
4  Telephone:  213-629-9040 / Fax:  213-629-9022
5
6  DAVID G. WILLE (admitted *pro hac vice*)
     *david.wille@bakerbotts.com*
7  JEFFERY D. BAXTER (admitted *pro hac vice*)
     *jeff.baxter@bakerbotts.com*
8  BRIAN D. JOHNSTON (admitted *pro hac vice*)
9    *brian.johnston@bakerbotts.com*
   BAKER BOTTS L.L.P.
10 2001 Ross Avenue, Suite 900
11 Dallas, TX 75201
12 Telephone:  214.953.6500 / Fax:  214.953.6503
   Attorneys for Defendants
13
                  UNITED STATES DISTRICT COURT
14    CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION
15
   MACOM             TECHNOLOGY        Case No. CV 16-02859 CAS (PLAx)
16 SOLUTIONS   HOLDINGS   INC.   and
   NITRONEX, LLC,                       **DEFENDANTS' OPPOSITION TO**
17                                      **MACOM'S MOTION FOR LEAVE**
                                        **TO AMEND COMPLAINT**
18             Plaintiffs,
                                        Hearing Date: June 18, 2018[1]
19       v.                             Hearing Time: 10:00 a.m.
                                        Courtroom: D, 8th Floor
20
21 _____
22 [1] Plaintiffs filed a first motion set for hearing on June 11 and a second motion set for
   hearing on June 18, both of which were improperly noticed.  As explained in
23 Defendants' opposition to the first improperly noticed motion, Plaintiffs' motion
   should have been set for hearing no earlier than June 25, 2018.  Dkt. 508; *see also*
24 *Aguilar v.  Ocwen Fin. Corp.*, No. 14-CV-07675-MWF, 2015 WL 1345279, at *2
   (C.D. Cal. Mar. 24, 2015) ("[The L.R. 7-3 conference requirement] also serves the
25 important purpose of providing the opposing party sufficient notice as to the
   contents of a proposed Motion and an opportunity to negotiate on the hearing date.
26 This allows for the preparation of an adequate response given the otherwise short
   briefing schedule for motions provided for by the Local Rules.").  Thus, Defendants
27 file this opposition to the second improperly noticed motion based on the correct
   June 25 hearing date.
28

1  INFINEON TECHNOLOGIES AG, *et al.*,

2

3                    Defendants.

Complaint Filed: April 26, 2016
Discovery Cutoff: June 29, 2018
Pretrial Conference: March 4, 2019
Trial Date: March 26, 2019

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2

BACKGROUND ...................................................................................................2

3

LEGAL STANDARD ..........................................................................................4

4

5

ARGUMENT .......................................................................................................5

6

I.    Plaintiffs' motion for leave should be denied based on Plaintiffs' undue
      delay and lack of diligence. ......................................................................5

7

8      A.     Plaintiffs could have brought their unfair competition claim years
              ago when they filed their intentional interference claim against

9              Infineon AG. .....................................................................................6

10     B.     Plaintiffs waited almost a year to add their allegations that
              Infineon Americas has shifted GaN-Si activities to other Infineon
11             affiliates. ...........................................................................................7

12

13     C.     Plaintiffs were not diligent in bringing their new claims based on
              the ███████████████. ...............................................................9

14

15   II.   Plaintiffs' delay prejudices Defendants because there is not sufficient
          time to complete discovery on the existing claims, much less the new

16        claims that Plaintiffs seek to add. ..........................................................12

17     A.     Plaintiffs have resisted discovery on the existing claims in the
              case. ................................................................................................12

18

19            1.     Plaintiffs have refused to disclose their damages
                    contentions on the existing claims, preventing Defendants

20                   from proceeding with fact witness depositions. .......................12

21            2.     Plaintiffs served deposition notices for twenty-three fact
                    witnesses and have refused to narrow their requests to ten

22                   witnesses so that Defendants can schedule and prepare

23                   their witnesses for deposition. ................................................15

24     B.     The parties will need several additional months to complete
              discovery if Plaintiffs are allowed to amend at this late date. ..............16

25

26            1.     Defendants will file a motion to dismiss, which means that
                    the parties will not know the scope of the claims in dispute

27                   until mid-August at the earliest. .............................................16

28

2.      Defendants will need additional time to serve written
        discovery on Plaintiffs' new claims before proceeding
        with depositions. ........................................................................ 19

C.      Plaintiffs have already amended their complaint three times,
        showing the prejudice of moving the target once again. ...................... 20

CONCLUSION ............................................................................................. 20

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

4

5

*Bioriginal Food & Sci. Corp. v. Biotab Nutraceuticals, Inc.*,
   2:13-CV-05704-CAS EX, 2015 WL 2129653 (C.D. Cal. May 6,
   2015) (Snyder, J.) ...................................................................................... 4, 5

6

7

*Spin Master Ltd v. Your Store Online*,
   CV 09-2121 CAS JCX, 2010 WL 4883884 (C.D. Cal. Nov. 22,
   2010) (Snyder, J.) .............................................................................. 5, 19, 20

8

9

*Cal-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ................................................................................. 17

10

11

*Gould v. Motel 6, Inc.*,
   CV 09-8157 CAS FMOX, 2011 WL 759472 (C.D. Cal. Feb. 22,
   2011) (Snyder, J.) .................................................................................... 4, 12

12

13

*Khoury v. Maly's of Cal., Inc.*,
   14 Cal. App. 4th 612 (1993) ........................................................................ 17

14

15

*Moreno v. Los Angeles Cty. Sheriff's Dep't*,
   213CV07570CASMANX, 2015 WL 4652637 (C.D. Cal. Aug. 3,
   2015) (Snyder, J.) .......................................................................................... 7

16

17

*United States v. First Nat. Bank of Circle*,
   652 F.2d 882 (9th Cir. 1981) ......................................................................... 5

18

19

*Walker v. Countrywide Home Loans, Inc.*,
   98 Cal. App. 4th 1158 (2002) ...................................................................... 16

20

21

STATUTES

22

California Business & Professions Code § 17200 ............................................. 16

23

OTHER AUTHORITIES

24

FED. R. CIV. P. 15 .......................................................................................... 4, 5

25

FED. R. CIV. P. 16 ..................................................................................... 4, 5, 12

26

27

FED. R. CIV. P. 30 ........................................................................................... 15

28

iii

1

Fed. R. Civ. P. 33 ................................................................................................ 10, 11

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants Infineon Technologies AG and Infineon Technologies Americas Corp. file this memorandum in opposition to Plaintiffs' Motion for Leave to Amend Complaint. Dkt. 506. Plaintiffs' attempt to alter and expand the scope of the case on the eve of the close of fact discovery wreaks havoc with the case schedule and severely prejudices Defendants' ability to prepare their defenses for trial. Defendants attempted to mitigate the prejudice and eliminate the need to oppose this motion by proposing a four-month extension to the schedule, but Plaintiffs refused to agree to that proposal. In conferring on the new schedule in accordance with the Court's order continuing the trial date, the parties appear to have reached agreement to push the fact discovery cutoff back to August 31 (a two-month extension) even though it requires compressing later deadlines. Thus, it has become apparent that even Plaintiffs concede that a minimum of a two-month extension of discovery is necessary. As explained in detail below, Defendants continue to believe that a four-month extension (*i.e.*, an additional two months beyond what Plaintiffs are willing to agree upon) is required to cure the prejudice that will result from Plaintiffs' late-arriving fourth amended complaint.

Plaintiffs' new claims will necessitate new discovery requests (and inevitably new motions to compel). Moreover, the many deficiencies in Plaintiffs' proposed complaint will necessitate motions on the pleadings, which will prolong the uncertainty about the scope of this case. Until the discovery can be taken (and compelled if necessary) and the uncertainty resolved, the parties cannot reasonably proceed with depositions. Even under the extension the parties are negotiating, there will not be sufficient time to avoid prejudice to Defendants. If the Court is inclined to permit Plaintiffs to amend yet a fourth time at the eleventh hour, Defendants respectfully request a further extension of the schedule.

Absent such an extension, Plaintiffs' proposed amendment should be denied as too prejudicial. And such prejudice is especially unwarranted given Plaintiffs' lack of diligence in pursuing this amendment. Most of the "new" facts were in

1

Plaintiffs' possession for months, and in some cases, **years** before Plaintiffs sought leave to amend.  There is no legitimate excuse for Plaintiffs' attempt to ambush Defendants at the close of discovery with new claims that could have been brought earlier.  Plaintiffs' motion should be denied.

## BACKGROUND

Plaintiffs have previously amended their complaint **three** times.  The last of these amendments came on February 16, 2018—the final day under this Court's Scheduling order for amending pleadings. Dkt. 409.

Plaintiffs' latest amendment, their proposed Fourth Amended Complaint, includes three categories of new claims.  First, Plaintiffs seek to bring a new claim for unfair competition.  Second, Plaintiffs seek to bring new claims for breach of contract and intentional interference based on allegations that Infineon Americas shifted GaN-Si activities to Infineon AG and other Infineon affiliates.  Third, Plaintiffs seek to bring new claims for breach of contract and intentional interference based on a license agreement with ███████████████████████. Defendants address each of these three categories of claims below.

Although Plaintiffs' motion for leave focuses primarily on its new claims regarding the ████████████████, those claims are less significant than the other two claims in the overall context of this lawsuit.  In fact, Plaintiffs are simply using the ████████████████ as a Trojan horse to try to sneak in the other two claims regarding unfair competition and shifting activities from Infineon Americas to Infineon AG—claims for which Plaintiffs' lack of diligence is more readily apparent.   Even the Trojan horse is weak, however, because Plaintiffs have also known about those issues for months.

This lawsuit is and has always been about Plaintiffs' improper attempt to interfere with Infineon AG's legal competitive activities.  This lawsuit stems from two agreements executed in 2010 between two small U.S. companies, Nitronex and International Rectifiers ("IR").  At the time these agreements were made, Infineon

AG had no relationship with either party to the agreements and no involvement in either party's business.  Infineon AG was not involved in the negotiation of the agreements.  Indeed, Infineon AG saw those agreements only five years later when it purchased IR (which was later renamed Infineon Americas).  Based solely on that corporate transaction, Plaintiffs brought this lawsuit in an improper attempt to opportunistically leverage Infineon AG's subsidiary's contract to try to hobble one of their competitors in the marketplace.

Plaintiffs' first attempt to bind Infineon AG was to bring breach of contract claims against Infineon AG.  In their Original Complaint and First Amended Complaint, Plaintiffs failed to distinguish between the two defendants, Infineon AG and Infineon Americas. They sought to blur the distinction between these separate entities so that it could bring their contract claims against both defendants.  That was improper because Infineon AG is ***not*** a party to the agreements as issue.  As a result, the Court dismissed all contract claims against Infineon AG.  Dkt. 141 at 17–25.  On the same basis, the Court also refused to enjoin Infineon AG when Plaintiffs moved for a preliminary injunction.  Dkt. 141 at 37 n.14.

Plaintiffs' second attempt to bind Infineon AG is their intentional interference claim.  Plaintiffs argue that Infineon AG, as the parent corporation, can be liable for its subsidiary's breach of the agreements at issue.  In effect, Plaintiffs seek to transform their contract claims against a subsidiary corporation into a tort claim against the parent corporation.  Plaintiffs' extraordinary claim would upset the basic principle that corporations can write contracts to bind some entities but not others. Multiple legal privileges protect a parent corporation so that a party cannot transform every contract claim against a subsidiary into a tort claim against the parent corporation.  Based on these privileges, Plaintiffs' intentional interference claim should be dismissed before trial.  *See* Dkts. 187, 245.

In any case, Plaintiffs' intentional interference claim never supported the extraordinary injunction that Plaintiffs seek—which is to bind Infineon AG as if it

3

were a party to the IR agreements at issue.  The intentional interference claim supports, at most, an injunction prohibiting Infineon AG from interfering with *IR's performance* (now, Infineon Americas's performance) under the IR agreements at issue.  But, in reality, Plaintiffs have never been much concerned about Infineon Americas or its activities.  Rather, Plaintiffs have been focused on Infineon AG's independent GaN-Si technology development that—as Plaintiffs well know— existed well *before* Infineon AG ever purchased IR.  Indeed, before the IR acquisition, Plaintiffs approached Infineon AG seeking to cooperate with respect to GaN-Si.  But after Plaintiffs learned of Infineon AG's pending acquisition of IR, Plaintiffs abruptly switched tactics by ending all efforts to cooperate and, instead, seeking to stretch the IR agreements to stifle legitimate competition.

With their unfair competition claim and their new allegation about shifting GaN-Si activities from Infineon Americas to Infineon AG, Plaintiffs seek to obtain an injunction against Infineon AG's separate GaN-Si activities as if Infineon AG were a party to the IR agreements at issue.  Plaintiffs even admit that their motivation for bringing this unfair competition is to try to obtain such an improper injunction against Infineon AG.  Mot. at 8:6–11.

## LEGAL STANDARD

Because Plaintiffs seek leave to amend their complaint *after* the February 16, 2018 deadline to amend pleadings (Dkt. 409), Plaintiffs must satisfy the standards for both Rules 16(b)(4) and 15(a).  *Bioriginal Food & Sci. Corp. v. Biotab Nutraceuticals, Inc.*, 2:13-CV-05704-CAS EX, 2015 WL 2129653, at *2 (C.D. Cal. May 6, 2015) (Snyder, J.).

Federal Rule of Civil Procedure 16(b)(4) governs modifications to a scheduling order.  Under Rule 16(b)(4), a scheduling order "may be modified only for good cause and with the judge's consent."  FED. R. CIV. P. 16(b)(4).  The "good cause" standard focuses primarily on the diligence of the party seeking the amendment.  *Gould v. Motel 6, Inc.*, CV 09-8157 CAS FMOX, 2011 WL 759472, at

*2 (C.D. Cal. Feb. 22, 2011) (Snyder, J.).   The Court should also consider the existence or degree of prejudice to the opposing party in granting the motion and to the moving party in denying the motion, as well as "the impact of a modification at that stage of the litigation on the orderly and efficient conduct of the case."   *United States v. First Nat. Bank of Circle*, 652 F.2d 882, 887 (9th Cir. 1981).

Rule 15(a) governs the amendment of pleadings.   Under Rule 15(a), a party can amend its pleadings only by obtaining the opposing party's consent or the court's leave, which should be granted "when justice so requires."   FED. R. CIV. P. 15(a)(2).   Courts consider five factors in this analysis: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of the amendment; and (5) whether the plaintiff has previously amended its complaint.   *Bioriginal*, 2015 WL 2129653 at *3.   The most important of these factors is prejudice to the opposing party.   *Id*.   The decision of whether to grant leave to amend is entrusted to the district court's discretion, and where, as here, the amending party has already had one or more opportunities to amend, that discretion is especially broad.   *Spin Master Ltd v. Your Store Online*, CV 09-2121 CAS JCX, 2010 WL 4883884, at *6 (C.D. Cal. Nov. 22, 2010) (Snyder, J.).

# ARGUMENT

To open discovery in this case to Plaintiffs' new set of amended claims would make the discovery schedule, already rendered unworkable by Plaintiffs' discovery tactics, even more unworkable.   Plaintiffs cannot demonstrate compliance with the Local Rules, good cause under Rule 16, or that justice requires the amendment under Rule 15.   Plaintiffs' motion should be denied.

## I.   **Plaintiffs' motion for leave should be denied based on Plaintiffs' undue delay and lack of diligence.**

Plaintiffs' proposed amended complaint includes three categories of new claims.   First, Plaintiffs seek to bring a new claim for unfair competition.   Second, Plaintiffs seek to bring new claims for breach of contract and intentional

interference based on the allegation that Infineon Americas shifted GaN-Si activities to Infineon AG and other Infineon affiliates.  Third, Plaintiffs seek to bring new claims for breach of contract and intentional interference based on a license agreement with ███████████████████.  Defendants address each of these new allegations below and show that Plaintiffs were not diligent in bringing these claims.

**A.    Plaintiffs could have brought their unfair competition claim years ago when they filed their intentional interference claim against Infineon AG.**

Plaintiffs have no excuse for their delay in bringing their new cause of action for unfair competition.  This claim appears to be largely based on Plaintiffs' allegations of intentional interference against Infineon AG.  Fourth Am. Compl. at ¶ 290.  Thus, Plaintiffs could have brought this unfair competition claim years ago when they filed that intentional interference claim.  Plaintiffs provide no explanation for their failure to do so.

To try to cover up their failure to plead unfair competition when they brought their intentional interference claim, Plaintiffs point to the sale of Defendants' GaN-on-SiC and LDMOS RF Power business to Cree.  Mot. at 4:2–19.  But Plaintiffs never explain why that sale was ***necessary*** to support a claim for unfair competition. The Cree sale is ***not*** even recited as a factual basis for the unfair competition claim. Fourth Am. Compl. at ¶ 290 (no mention of Cree).  The Cree sale is just a smokescreen to hide the fact that Plaintiffs could have brought their unfair competition claim years ago when they filed their intentional interference claim against Infineon AG.

Moreover, the Cree sale could not excuse Plaintiffs' delay because ███████ ████████████████████████████████████ several months before the deadline to amend.  ████████████████████████████████████████ ██████████████████████████████████.  Dkt. 505 at 4 n.2.  Plaintiffs point to the March 6, 2018 press release announcing the Cree sale, but they do not state

1   what details they learned through the March 6, 2018 press release that ███████
2   ██████████████████████████████████.   Nor do Plaintiffs explain why
3   details in the press release were necessary to bring their unfair competition claim.
4   Even if the press release somehow strengthened Plaintiffs' ability to bring their
5   unfair competition claim in some unspecified way, the fact remains that ██████
6   ███████████ long before the press release.   *See Moreno v. Los Angeles Cty.*
7   *Sheriff's Dep't*, 213CV07570CASMANX, 2015 WL 4652637, at *7 (C.D. Cal. Aug.
8   3, 2015) (Snyder, J.) (discovering new facts about previously identified individuals
9   that strengthened the proposed amended claims did not amount to good cause
10  because plaintiff knew of those individuals' general involvement for much longer).

11  **B.    Plaintiffs waited almost a year to add their allegations that**
12  **Infineon Americas has shifted GaN-Si activities to other Infineon affiliates.**

13      Plaintiffs seek to add new claims for breach of contract and intentional
14  interference based on allegations that Infineon Americas transferred GaN-on-Si
15  activities to other Infineon affiliates.   Plaintiffs' proposed Fourth Amended
16  Complaint includes the following new language in its second, fourth, and eighth
17  claims for relief[2]:

18  • **Second claim for relief**.  "Further, Infineon Americas has breached the
19      2010 License Agreement by transferring its GaN-on-Si RF business
20      activities for base station products to its affiliates to avoid its promises and
21      obligations under that agreement."  Fourth Am. Compl. at ¶ 220.

22  • **Fourth claim for relief**. "Infineon Americas has breached the implied
23      covenant of good faith and fair dealing by transferring GaN-on-Si RF
24      power technology and operations to Infineon AG or its entities outside the

25  _____

26  [2] A problem with Plaintiffs' proposed amended complaint and their prior complaint
    is that they combine what are really multiple separate claims under a single "claim
27  for relief."   Thus, while Plaintiffs have tried to make it look like they have only
    added one cause of action, in fact they have added many more.
28

7

1   United States and failing to enforce the Nitronex Patents against Infineon

2   AG or other Infineon entities." *Id.* at ¶ 243.

3   • **Eighth claim for relief**. "Infineon AG has also ████████████████

4   ████████████████████████████████████████████████

5   ████████████████████████████████████████████████

6   ████████████████████████████████████████████████

7   ████████████████████████████████████████████████

8   ████████████████████████████████████████████████

9   ████████████████████████████████████████████████

10  ███████████████████████████████████████████████."

11  *Id.* at ¶ 281

12  In support of these new claims, Plaintiffs add related factual allegation elsewhere in

13  their Fourth Amended Complaint. *See, e.g., id.* at ¶ 9 (second bullet point).

14      These new claims are based on allegations that Plaintiffs made ***almost a year***

15  ***ago*** during the parties' briefing on Plaintiffs' motion for contempt.  In their motion

16  for contempt filed on July 24, 2017, Plaintiffs alleged that Infineon Americas was

17  using "f████████████████████████████████████████████

18  ████████████████████████████████████████████████

19  ████" Dkt. 349 at 1.  Similarly, in their reply brief filed on August 14, 2017,

20  Plaintiffs argued that Infineon Americas was "████████████████████

21  ████" Dkt. 343-1; Dkt. 376 at 1 (Heading A).[3]

22  _____

23  [3] Defendants dispute these allegations. ████████████████████████

    ████████████████████████████████████████████████████████

    ████████████████████████████████████████████████████████

27  ██████████████████████. Dkt. 368 at 20–23; *see also id.* at Facts, I.B,
    II.B, II.C, III.B.  Plaintiffs have tried to turn Infineon Americas' efforts to comply

28  with the preliminary injunction into a cause of action.

1    Plaintiffs provide no excuse for their decision to wait almost a year to amend

2    their complaint to add these allegations.   Plaintiffs could have added these

3    allegations well before the deadline to amend.   Plaintiffs were not diligent, and their

4    motion for leave to add these allegations should be denied.[4]

5    **C.    Plaintiffs were not diligent in bringing their new claims based on the** ███████████████

6

7    Plaintiffs seek to add new claims for breach of contract and intentional

8    interference based on allegations relating to the ████████████.   Plaintiffs'

9    proposed Fourth Amended Complaint includes the following new language in its

10   fourth, sixth, seventh, and eighth claims for relief:

11   • **Fourth claim for relief**:   "Infineon Americas has breached the implied

12      covenant of good faith and fair dealing governing the 2010 IP Purchase

13      Agreement by, at the direction and under the control of Infineon AG,

14   ████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████

18   ████████████████████████████████████████." Fourth Am.

     Compl. at ¶ 242.

19   • **Sixth claim for relief**.   "Infineon has breached the 2010 IP Purchase

20      Agreement by ████████████████████████████████████████

21

22   _____

23   [4] In November, Plaintiffs identified the patents they allege that Infineon Americas
     infringes ("the Asserted Patents").   Based on the alleged shifting of GaN-Si

24   activities to Infineon AG, Plaintiffs now allege that Infineon AG also infringes those
     same Asserted Patents and that Infineon Americas has failed to enforce the Asserted

25   Patents against Infineon AG.   Thus, Plaintiffs seek to add the Asserted Patents to
     the list of patents that they allege Infineon Americas failed to enforce against third

26   parties and thus should be assigned back to Nitronex.   Fourth Am. Compl. at ¶ 261.
     For the same reasons discussed above, Plaintiffs could have added these allegations

27   almost a year ago when they first alleged that Infineon Americas was shifting GaN-
     Si activities to Infineon AG.

28

9

1   ████████████████████████████████████████████████████

2   ███████████████  in violation of Section 4.02 of the 2010 IP Purchase

3   Agreement." *Id.* at ¶ 262.

4   • **Seventh claim for relief**. "It [Infineon Americas] has ████████████

5   ████████████████████████████████████████████████████

6   ████████████████████████████████████"  Fourth Am. Compl. at ¶

7   267.  Plaintiffs seek a "declaration that Infineon's purported ███████████

8   ████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████

10   ██████████████████████"  *Id.* at ¶ 271.

11   • **Eighth claim for relief**.  Infineon AG's actions and instruction to Infineon

12   Americas wrongfully induced it to "enter into contractual arrangements

13   inconsistent with the requirements of the 2010 IP Purchase Agreement."

14   *Id.* at ¶ 280

15   Plaintiffs complain that Defendants waited too long to produce the ███████████

16   ███████████  and then produced it by hiding it within a large production of

17   documents.  But Defendants produced the ██████████████████ in the normal course

18   of discovery—***before*** the deadline to substantially complete production.

19   Moreover, contrary to Plaintiffs' suggestion that Defendants hid the

20   agreement, Defendants identified it by Bates number in their supplemental response

21   to Interrogatory No. 7.  That interrogatory asked Defendants to identify any sales or

22   licenses involving the Nitronex Patents.  On March 26, Defendants served a

23   supplemental response identifying the ██████████████████.  The ██████████████

24   ██████████  was not hidden in a long string cite to various Rule 33(d) documents.

25   The supplemental response identified only ***one*** document by Bates number, and the

26   response identified it as a license agreement with ██████████.  The entire

27   supplemental response was:

28

Infineon AG reserves the right to supplement its response and objections as necessary after considering additional information obtained or reviewed through further discovery or investigation, or if Plaintiffs subsequently assert an interpretation that differs from that of Infineon AG.

Ex. 1, Infineon AG's Supplemental Responses to Plaintiffs' Interrogatories 2 and 7, at 13.   Thus, Defendants specifically and clearly identified the ████████████ for Plaintiffs.

In view of this interrogatory response, Plaintiffs fail to explain why it took almost two months to file their motion for leave to amend.  While good cause for an amendment may exist through the discovery of new facts after the cutoff for amended pleadings, that is not so where the moving party sits on its hands after learning of those facts, as Plaintiffs did here.  Instead, this Court has considered the moving party's diligence and actions after learning of the new facts.

In *Zurich Am. Ins. Co. of Ill. v. First Rate Staffing Corp.*, for example, a defendant discovered new facts supporting a new counterclaim and moved to amend only one month later, during which time the parties engaged in settlement discussions.  217CV04864CASKSX, 2018 WL 1773623, at *3 (C.D. Cal. Apr. 10, 2018) (Snyder, J.).  The defendant in *First Rate* explained that its month-long delay resulted from the settlement discussions, but Plaintiffs here have ***no explanation*** for their even longer delay.  What is more, this Court in *First Rate*, along with granting the amendment, continued the other deadlines in the case by four months, which is precisely what Defendants here proposed.  *Id*.

Plaintiffs cite several cases for the sweeping proposition that a court can "grant leave to amend after the deadline for amendment of pleadings—even many months after the deadline—where there is good cause and justice so requires."  Dkt. 505 at 6.  But Plaintiffs' cases are distinguishable.  In *Dobbs v. Terex Corp.*, this

11

Court granted a motion for leave to file an amended complaint, filed three months after the deadline to amend pleadings, only because the defendant did not oppose the motion.  EDCV16-2547-CAS(KKX), 2017 WL 6271281, at *2 (C.D. Cal. Dec. 4, 2017) (Snyder, J.).  In *Gould*, this Court permitted an amendment to add a new named plaintiff to a putative class action (not to bring entirely new legal theories) while fact discovery was ongoing and before certification motions were filed; the early stage of *Gould* and simplicity of the amendment contrast with the late stage of this case and complexity of Plaintiffs' amendment.  2011 WL 759472 at *5. Further, the defendants in *Gould* outright refused to provide discovery, forcing the plaintiffs to find the new class representative through an independent investigator, while here, Defendants specifically and timely identified the ███████████ in response to Interrogatory No. 7.  *Id*. at *3.

Plaintiffs could have moved to amend sooner.  They did not, and they do not explain this delay.  As a result, Plaintiffs lack good cause for their amendment under Rule 16.

## II.     Plaintiffs' delay prejudices Defendants because there is not sufficient time to complete discovery on the existing claims, much less the new claims that Plaintiffs seek to add.

### A.     Plaintiffs have resisted discovery on the existing claims in the case.

Plaintiffs have not been prosecuting this case like a typical plaintiff.  Rather than working to move the case forward expeditiously, Plaintiffs have engaged in tactics to resist discovery to prevent Defendants from preparing their defense.

#### 1.     Plaintiffs have refused to disclose their damages contentions on the existing claims, preventing Defendants from proceeding with fact witness depositions.

Defendants have been unable to proceed with discovery because Plaintiffs refuse to disclose the factual bases of their damages claim.

Over ten months ago, on August 2, 2017, Defendants served an interrogatory asking for Plaintiffs' damages contentions.  Plaintiffs initially refused to provide any substantive response, taking the position that damages was more properly the

subject of expert discovery.  In March, Defendants met and conferred with Plaintiffs and were prepared to move to compel an answer to this interrogatory.  At the last minute, to prevent Defendants from seeking court intervention, Plaintiffs promised to provide a supplemental interrogatory within three weeks.  Ex. 2, March 5, 2018 Meet and Confer email chain, at March 26, 2018 4:11 PM email from Caballero to Banzhoff.  But then, without any prior notice, Plaintiffs failed to follow through on that promise.   On the date when Plaintiffs were to serve their supplemental interrogatory answer (April 13), Plaintiffs instead sent an email stating they had decided to take an additional three weeks to supplement that interrogatory answer. *Id.* at April 13, 2018 12:28 PM email from Banzhoff to Caballero.

When Plaintiffs eventually supplemented their interrogatory answer in May, Plaintiffs failed to include the very information they had agreed to provide when the parties had met and conferred in March.  For most of Plaintiffs' causes of action, Plaintiffs did not describe their damages claim at all.   The only cause of action referred to in Plaintiffs' response was their second claim for relief (i.e., Plaintiffs' claim that Infineon Americas has marketed GaN-on-Si RF product in violation of Nitronex's alleged exclusive patent rights).   But even with respect to that claim, Plaintiffs did not fully disclose their damages contentions and continued to withhold key facts needed to guide Defendants' discovery.  For example, Plaintiffs purport to seek lost profits from lost sales, but Plaintiffs withhold the names of the customers and customer projects that resulted in lost sales.  As another example, Plaintiffs allege that Defendants' "delayed execution of agreements between MACOM and manufacturing partners," but Plaintiffs withhold the names of the manufacturing partners at issue.  Furthermore, Plaintiffs failed to disclose the facts relating to causation—the facts showing that Defendants' alleged wrongful conduct caused any of the alleged harm.

Defendants again met and conferred with Plaintiffs about their deficient interrogatory, but Plaintiffs refused to provide any further supplementation.  As a

result, Defendants prepared a joint stipulation to seek court intervention. After Defendants served their joint stipulation, Plaintiffs offered to provide some, but not all, of the missing information, so as to try to convince Defendants to withdraw the joint stipulation. Ex. 3, First Joint Stipulation email chain, at May 26, 2018 2:41 PM email from Banzhoff to Baxter. At that time, with only about one month left of discovery, Defendants refused to withdraw the joint stipulation until Plaintiffs served the supplement interrogatory response. *Id.* at May 26, 2018 4:09 PM and May 28 4:21 PM emails from Baxter to Banzhoff. Since then, Defendants have asked repeatedly when Plaintiffs will serve the supplemental response, finally disclosing the factual bases of Plaintiffs' damages contentions. Ex. 4, Interrogatory No. 10 email chain, at June 1, 2018 8:23 AM and June 4, 2018 10:20 AM emails from Baxter to Banzhoff. But Plaintiffs have refused to respond with a date. And given that Plaintiffs have a history of repeatedly not living up to the agreements they make to forestall court intervention, Defendants cannot rely upon yet another empty promise.

Thus, over two years after Plaintiffs filed suit, Defendants still lack the most basic understanding of Plaintiffs' damages claim. As a result, Defendants are unable to determine what fact witnesses Defendants need to depose, what topics to include in their 30(b)(6) deposition notices of Plaintiffs, or what additional third-party discovery may be needed (such as depositions of Plaintiffs' customers or manufacturing partners). Thus, Plaintiffs have prevented Defendants from proceeding with fact discovery.

Plaintiffs have also failed to produce documents for numerous categories of relevant documents. At the end of June, there will be a hearing on motions to compel for both parties involving dozens of requests for production. Once these motions are decided, it will no doubt take some time for Plaintiffs to produce whatever documents they are compelled to produce. Only after that happens and after the Court rules on any briefing associated with any new claims can depositions

14

occur.  Defendants assume that Plaintiffs are not going to agree to produce their witnesses twice.

### 2. Plaintiffs served deposition notices for twenty-three fact witnesses and have refused to narrow their requests to ten witnesses so that Defendants can schedule and prepare their witnesses for deposition.

Plaintiffs have refused to narrow their deposition requests to a reasonable number of witnesses so that the parties can proceed with those depositions.  At the August 7, 2017 scheduling conference, the Court decided to stick with the limitations in the Federal Rules.  Ex. 5, Aug. 7, 2017 Tr. at 18:9–14.  So, the parties are limited to 10 depositions per side.  FED. R. CIV. P. 30.

Nevertheless, Plaintiffs have served deposition notices for *twenty-three* fact witnesses.[5]  In response, Defendants requested that Plaintiffs narrow their requests to ten fact witnesses so that the parties can proceed with discovery. Ex. 6, First Depositions email chain, at May 24, 2018 2:29 PM email from Baxter to Banzhoff. Plaintiffs have refused, insisting that they need more depositions.  Defendants requested that Plaintiffs identify the number of depositions that they wish to take. *Id.* at May 24, 2018 2:29 PM, May 25, 2018 8:16 AM, and May 30, 2018 1:48 PM emails from Baxter to Tessar.  But Plaintiffs have insisted on the same 100-hour limit that the Court rejected at the scheduling conference. *Id.* at May 24, 2018 4:12 PM email from Tessar to Baxter; Ex. 7, Second Depositions email chain, at May 29, 2018 6:46 PM email from Banzhoff to Baxter.  At the August 7, 2017 scheduling conference, Plaintiffs argued for an hours limit rather than a numerical limit of the number of depositions. Ex. 5, Hearing Tr., at 17:7–11.  The Court strongly rejected

---

[5] These fact witnesses include (1) Infineon Americas; (2) Infineon AG; (3) Edmund Neo; (4) Gerhard Wolf; (5) Guillaume Bigny; (6) Hakan Davidsson; (7) Hugo Herman; (8) John Murphy; (9) Manu Jain; (10) Simon Ward; (11) Hans Ohman; (12) Harri Jyvaesjaervi; (13) Helmut Brech; (14) James Jeong; (15) James Kim; (16) Lew-is Liu; (17) Lisa Wang; (18) Norman Chen; (19) Petteri Rantanen; (20) Philipp Schierstaedt; (21) Steffen Metzger; (22) Peter Kim; and (23) Chankyung Choi.

that approach: "I don't think we do it that way in this district and I've certainly never done it.  What I really want is for you to take a ***finite number of depositions***." *Id*. at 18:1–3 (emphasis added). But Plaintiffs have refused to propose a deposition limit in terms of ***the number of depositions***.  Thus, Defendants have been unable to schedule their witnesses for deposition or to prepare them for deposition.  The parties still must meet and confer about deposition limits.

> **B.    The parties will need several additional months to complete discovery if Plaintiffs are allowed to amend at this late date.**
>
> > **1.    Defendants will file a motion to dismiss, which means that the parties will not know the scope of the claims in dispute until mid-August at the earliest.**

Plaintiffs' motion correctly anticipates that its amendment, if allowed, will necessitate additional motions on the pleadings.  Many of the claims Plaintiffs seek to add by this amendment are legally flawed and will necessitate additional motions on the pleadings.  The uncertainty about the scope of the case created by Plaintiffs' decision to amend with a defective pleading at the tail end of fact discovery will be extremely prejudicial unless the schedule is adjusted to allow for several additional months of fact discovery.

Plaintiffs' proposed unfair competition claim under California Business & Professions Code § 17200 (the "UCL") is riddled with defects.  The test for a violation of the UCL is disjunctive—"a plaintiff may show that the acts or practices at issue are either unlawful or unfair or deceptive." *Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158, 1169 (2002).  Plaintiffs' proposed complaint purports to assert all three bases but fails to allege supporting factual allegations to do so.  First, Plaintiffs identify no actions whatsoever that constitute deceptive or fraudulent actions by Infineon AG.  Second, Plaintiffs purport to identify numerous actions as unfair practices, but none of them are legally cognizable.  Because Infineon AG and MACOM are indisputably competitors, Plaintiffs cannot state a claim under the UCL's "unfair" prong in the absence of facts showing that Infineon

16

1  AG's conduct "threatens an incipient violation of an antitrust law, or violates the

2  policy or spirit of one of those laws."  *See Cal-Tech Commc'ns, Inc. v. L.A. Cellular*

3  *Tel. Co.*, 20 Cal. 4th 163, 187 (1999).  Plaintiffs have not even attempted to (and

4  cannot) plead such facts.  It is Plaintiffs' actions and motives in this litigation that

5  are anticompetitive, not Defendants' actions.   Third, on the "unlawful" prong,

6  Plaintiffs' vague assertion that Infineon AG's conduct "contravenes the legislatively

7  declared policy against unfair methods of business competition" is mere boilerplate

8  and "does not describe the manner in which [Defendant's] practice is 'unlawful.'"

9  *See Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th 612, 619 (1993).  And finally,

10  Plaintiffs improperly seek a remedy of restitution, but their proposed pleading fails

11  to identify any property that was both lost by Plaintiffs and acquired by Infineon

12  AG, as the UCL requires.

13       Plaintiffs' proposed new claims relating to the ███████████████ are also

14  defective.  For example, Plaintiffs claim that Infineon America breached the implied

15  covenant of good faith and fair dealing because the ███████████████████

16  "████████████████████████████████████████████████████████████."

17  Fourth Am. Compl. at ¶ 242.  This claim is legally unsupportable because it would

18  impermissibly contravene the express terms of the IP Purchase Agreement.  Section

19  3.01 on Revenue-Sharing states, "████████████████████████████████████

20  ████████████████████████████████████████████████████."  Ex. 8,

21  IP Purchase Agreement, at § 3.01 (emphasis added).    Moreover, Plaintiffs'

22  allegation that Infineon Americas intentionally sought to license some of the patents

23  for less than ████████ would have been willing to pay solely to avoid ████████

24  ████████████████ defies common sense and lacks facial plausibility.   If

25  Infineon Americas could have convinced ████████ to pay additional money,

26  Infineon Americas would plainly have done so because Infineon Americas itself

27  would have ended up with more licensing revenue.

28       Moreover, Plaintiffs cannot bring suit about any dispute about the portion of

1    cash consideration that is subject to revenue sharing, because ███████████

2    ████████████████████████████████████████████████████████████

3    ████████████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████████

7    ████████████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████████████

9    ███████████████. *Id.* at § 12.01(b).  Plaintiffs have not even attempted to follow these

10   procedures.

11          Plaintiffs' motion for leave to file yet a fourth amended complaint on the eve

12   of the close of fact discovery creates substantial uncertainty about the scope of the

13   case and makes it impossible for the parties to complete depositions.  The many

14   defects in Plaintiffs' proposed amended complaint, some of which are highlighted

15   above, only serve to compound the uncertainty.  The motion practice necessitated by

16   the proposed amendment will likely be resolved only shortly before the close of fact

17   discovery, even based on a two-month extension of that deadline the parties have

18   agreed upon based on the new trial date provided by the Court.  Thus, the proper

19   scope of the case will become clear only as fact discovery is drawing to a close.  But

20   discovery will be stalled in the meantime.  Defendants cannot properly prepare and

21   present their witnesses for deposition without knowing what claims are in the case.

22   Similarly, Defendants need to know how to allocate their limited time with

23   Plaintiffs' witnesses.  Knowing the scope of the case to be tried is critical for

24   selecting the right areas for exploration.  The small window of time that would

25   remain after pleading motions are resolved would be insufficient for both sides to

26   complete depositions.  Thus, absent an additional extension of the schedule,

27   Plaintiffs' proposed amended pleading would unfairly prejudice Defendants' ability

28   to properly conduct discovery and prepare their case for trial.

**2.     Defendants will need additional time to serve written discovery on Plaintiffs' new claims before proceeding with depositions.**

Even setting aside the need for motions on the pleadings to challenge the new complaint, the timing of the new complaint puts the case schedule in jeopardy, even as adjusted.  Recognizing the prejudice in such late-arriving amendments, this Court has rejected attempts to amend made even more than two months before the fact discovery cutoff, *even where good cause was shown*.  *See Spin Master*, 2010 WL 4883884 at *6 (denying motion to amend filed October 20 because granting the amendment would necessitate extension of December 31 discovery cutoff, prejudicing the defendant).  Plaintiffs' motion, which they filed prematurely under the Local Rules, came on May 21, 2018, barely one month ahead of the then-extant fact discovery cutoff of June 29, 2018.  Even under the timeline the parties are negotiating based on the Court's new trial date, the contemplated August 31 cutoff is less than three months away and does not provide sufficient time for full and fair discovery into Plaintiffs' new claims.

Defendants will need time to propound additional written discovery requests based on Plaintiffs' new causes of action, as Plaintiffs' motion acknowledges.  Among other things, Defendants will need to serve document requests and contention interrogatories to understand the factual and legal bases for Plaintiffs' new claims.   Moreover, it is likely that full responses will not be readily forthcoming.  Thus, there will need to be time for discovery motions as well, as demonstrated by Defendants' outstanding motions to compel on *thirty* discovery requests and the history of Defendants' attempts to discover Plaintiffs' damages contentions, recounted briefly above.  Indeed, given Defendants' experiences with trying to extract such information from Plaintiffs in the past, receiving proper answers to such discovery will likely necessitate rounds of meet-and-confers, followed by waiting for supplements that, when they finally arrive, will turn out to be insufficient, and finally motion practice to seek court intervention.  It is therefore

likely that such answers and documents will be received close to or after the current fact discovery cutoff, even as extended.

Defendants should not be forced to proceed with depositions based on mere speculation as to how Plaintiffs intend to prove their claim. Plaintiffs' decision to seek an eleventh-hour pleading amendment should not give them the right to trial by ambush. Granting the motion to amend would be unfairly prejudicial unless it is accompanied by a further extension of the schedule to permit the parties to get the documents and answers they seek on the new claims before beginning depositions.

### C. Plaintiffs have already amended their complaint three times, showing the prejudice of moving the target once again.

On the final factor, Plaintiffs admit that they have amended their complaint *three times* previously. In this situation, the court's discretion to deny yet another request for leave to amend is "especially broad." *Spin Master*, 2010 WL 4883884 at *6. And regardless of the explanation offered for these amendments, this amendment represents Plaintiffs' *fourth* bite at the apple, again underscoring the prejudice to Defendants in granting the amendment. Plaintiffs' allegations have been a moving target, so much so that, even on the eve of the discovery deadline, Defendants lack certainty regarding the issues involved in this case. The very filing of this *fourth* request for leave to amend has moved the target once again, leaving Defendants wondering about what is involved in this case until the resolution of this motion and subsequent motions to dismiss. Plaintiffs' numerous amendments weigh against granting leave to amend, regardless of the explanations for them.

## CONCLUSION

Granting Plaintiffs leave to amend would prejudice Defendants, the course of this litigation, and the parties' ability to meet other deadlines, which already cannot realistically be met. Plaintiffs' delay in bringing this motion only exacerbates those problems. Plaintiffs' motion should be denied, or, if it is granted, the remaining deadlines in the case should be extended accordingly.

1   Dated:  June 4, 2018

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BAKER BOTTS LLP**

By: /s/ *Jeffery D. Baxter*
David G. Wille (admitted *pro hac vice*)
*david.wille@bakerbotts.com*
Jeffery D. Baxter (admitted *pro hac vice*)
*jeff.baxter@bakerbotts.com*
Brian D. Johnston (admitted *pro hac vice*)
*brian.johnston@bakerbotts.com*
James C. Williams (admitted *pro hac vice*)
*james.williams@bakerbotts.com*
Charles Yeh (admitted *pro hac vice*)
*charles.yeh@bakerbotts.com*
Josue Caballero (admitted *pro hac vice*)
*josue.caballero@bakerbotts.com*

BAKER BOTTS L.L.P.
2001 Ross Avenue, Suite 900
Dallas, TX 75201
Telephone: 214.953.6500
Fax: 214.953.6503

**ATTORNEYS FOR DEFENDANTS**