1 | LINDA M. BURROW, Bar No. 194668
2 |    *lburrow@bsfllp.com*
   ALISON MACKENZIE, Bar No. 242280
3 |    *amackenzie@bsfllp.com*
4 | BOIES SCHILLER FLEXNER LLP
   725 South Figueroa Street 31st Floor
5 | Los Angeles, CA  90017-5524
   Telephone:  213-629-9040 / Fax:  213-629-9022
6 |
7 |
8 | DAVID G. WILLE (admitted *pro hac vice*)
   *david.wille@bakerbotts.com*
9 | JEFFERY D. BAXTER (admitted *pro hac vice*)
   *jeff.baxter@bakerbotts.com*
10 | BRIAN D. JOHNSTON (admitted *pro hac vice*)
   *brian.johnston@bakerbotts.com*
11 | JAMES C. WILLIAMS (admitted *pro hac vice*)
   *james.williams@bakerbotts.com*
12 | CHARLES YEH (admitted *pro hac vice*)
13 |    *charles.yeh@bakerbotts.com*
14 | BAKER BOTTS L.L.P.
   2001 Ross Avenue, Suite 900
15 | Dallas, TX 75201
16 | Telephone:  214.953.6500 / Fax:  214.953.6503
17 | Attorneys for Defendants

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| MACOM TECHNOLOGY SOLUTIONS HOLDINGS INC. and NITRONEX, LLC, | Case No. CV 16-02859 CAS (PLAx) |
| | **JOINT STIPULATION REGARDING DEFENDANTS' SECOND MOTION TO COMPEL DISCOVERY RESPONSES AND PRODUCTION OF DOCUMENTS** |
| Plaintiffs, | |
| v. | Mag. Judge: Hon. Paul L. Abrams |
| | Hearing Date: June 27, 2018 |
| INFINEON TECHNOLOGIES AG, *et al.*, | Hearing Time: 10:00 a.m. |
| | Courtroom: C, 8th Floor |
| Defendants. | Discovery Cutoff: June 29, 2018 |
| | Pretrial Conference: March 4, 2019 |
| | Trial Date: March 26, 2019 |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on June 27, 2018, at 10:00 A.M., or as soon thereafter as this matter may be heard, in the courtroom of the Honorable Paul L. Abrams, located in the Roybal Federal Building and United States Courthouse, 255 E. Temple Street, Courtroom 780, 7th Floor, Los Angeles, CA 90012, Defendants Infineon Technologies AG ("Infineon AG") and Infineon Technologies Americas Corporation ("Infineon Americas") (collectively, "Defendants") will and hereby do move this Court to compel Plaintiff MACOM Technology Solutions Holdings ("MACOM" or "Plaintiff," and collectively with Nitronex, LLC, "Plaintiffs") to respond to Defendants' discovery requests.

The parties discussed, by telephone, the grounds of Defendants' motion on January 25, 2018, March 26, 2018, April 9, 2018, May 14, 2018, May 15, 2018, and May 18, 2018.  The parties could not reach a resolution and therefore file the following Joint Stipulation pursuant to Civil Local Rule 37-2.

Dated:  June 5, 2018

**JEFFERY D. BAXTER**
**BAKER BOTTS LLP**

By: /s/ *Jeffery D. Baxter*

Jeffery D. Baxter (admitted *pro hac vice*)
jeff.baxter@bakerbotts.com

**ATTORNEY FOR DEFENDANTS**

i

**Table of Contents**

I.   INTRODUCTION ...........................................................................................1

    A.   Defendants' Introductory Statement ......................................................1

    B.   Plaintiffs' Introductory Statement..........................................................4

II.  ARGUMENT .................................................................................................5

    A.   Defendants' Interrogatory No. 18 ..........................................................5

        1.   Defendants' Argument...................................................................9

           a)   Background..........................................................................9

           b)   Plaintiffs must fully respond to Interrogatory No. 18 by providing information about offers for sale (such as design opportunities) and other categories of information because Plaintiffs' other documents reveal the existence of such data. .....................................11

        2.   Plaintiffs' Argument ....................................................................14

           a.   Interrogatory No. 18 Is Overbroad And Compound ........15

           b.   Infineon Has Not Justified The Burdensome Discovery That It Demands For Offers For Sale By Showing How They Are Relevant ...............................16

           c.   MACOM Has Nevertheless Provided Infineon With All Relevant Information Under Rule33(d) ....................17

    B.   Defendants' Requests for Production Nos. 108, 109, 111, 112, 115, 116, 118, 120, 121, and 127.........................................................19

        1.   Defendants' Argument.................................................................49

           a)   Background.........................................................................49

           b)   Plaintiffs' responses improperly incorporate by reference other responses without addressing the RFP at issue. ...................................................................50

           c)   Aside from their deficient form, Plaintiffs must produce documents responsive to the Prior Art and

Inventor RFPs, which could be dispositive of this case. .................................................................52

2.   Plaintiffs' Argument ..............................................54

a.   MACOM's Responses Comply with Rule 34 ................54

b.   This Discovery Is Not Properly Sought From MACOM ...............................................................55

c.   MACOM Has Agreed To Produce The Materials Relevant To Validity That It Can Reasonably Produce .................................................................57

d.   Infineon Is Estopped From Pursuing Invalidity ..............57

C.   Defendants' Interrogatory No. 11 and Request for Production No. 135 ........................................................................59

1.   Defendants' Argument ............................................62

a)   Background ..........................................................63

b)   Plaintiffs must fully respond to Interrogatory No. 11 by describing their business operations and the tasks each entity performs with respect to each product or service. .................................................................64

c)   Plaintiffs do not adequately respond to Interrogatory No. 11 by merely stating which entities "typically" make sales ...........................................................65

d)   Plaintiffs must produce documents responsive to RFP 135, which goes beyond identifying the entity that makes a sale. ...............................................65

2.   Plaintiffs' Argument ..............................................67

D.   Defendants' Interrogatory No. 12 and Request for Production No. 97 ........................................................................69

1.   Defendants' Argument ............................................72

a)   Background ..........................................................72

b)   Plaintiffs must identify and produce responsive third-party communications relating to this lawsuit, MACOM's rights under the Purchased patents, and Defendants. .................................................................73

2.   Plaintiffs' Argument .................................................................75

a.   Interrogatory No. 12 Is Impermissibly Overbroad, And Infineon Has Refused To Respond To The Exact Same Request From MACOM .........................................75

b.   Request No. 97 Is Similarly Overbroad, And MACOM Has Already Provided A Reasonable Response .........................................77

E.   Defendants' Request for Production No. 190 .........................................78

1.   Defendants' Argument .................................................................79

a)   Background.................................................................79

b)   Plaintiffs must produce responsive documents showing certain communications with Morgan Stanley, who helped Plaintiffs attempt to purchase certain of Defendants' assets. .........................................79

2.   Plaintiffs' Argument .................................................................80

F.   Defendants' Request for Production No. 212 .........................................82

1.   Defendants' Argument .................................................................83

a)   Background.................................................................83

b)   Forcing Defendants to subpoena third-party GaAs Labs does not allow Plaintiffs to disregard their discovery obligations.........................................83

2.   Plaintiffs' Argument .................................................................85

G.   Defendants' Request for Production No. 38 .........................................87

1.   Defendants' Argument .................................................................88

a)   Background.................................................................88

b)     Documents responsive to RFP 38 relate to Plaintiffs' damages claim. ................................................................89

2.    Plaintiffs' Argument .........................................................90

H.    Defendants' Requests for Production Nos. 214 and 215 .....................92

1.    Defendants' Argument....................................................94

a)     Background.............................................................94

b)     Documents responsive to RFPs 214 and 215 will reveal "facts and circumstances" that may show whether Plaintiffs violated their negative implied covenant of good faith and fair dealing...........................95

2.    Plaintiff's Argument .......................................................96

I.    Defendants' Interrogatory No. 17 ........................................99

1.    Defendants' Argument...................................................102

a)     Background............................................................102

b)     Plaintiffs fail to answer Interrogatory No. 17. ..............102

2.    Plaintiffs' Argument .....................................................103

J.    Defendants' Request for Production No. 204 ....................................104

1.    Defendants' Argument...................................................105

a)     Background............................................................105

b)     Plaintiffs must produce documents responsive to RFP 204 for the substantive reasons explained in Defendants' First Motion to Compel. ............................109

2.    Plaintiffs' Argument .............................................................110

v

# I.     INTRODUCTION

Pursuant to Local Civil Rule 37-2, Defendants Infineon Technologies AG ("Infineon AG") and Infineon Technologies Americas Corporation ("Infineon Americas") (collectively, "Defendants") and Plaintiffs MACOM Technology Solutions Holdings and Nitronex, LLC, (collectively, "MACOM" or "Plaintiffs"), file this Joint Stipulation Regarding Defendants' Second Motion to Compel Discovery Responses.

## A.     Defendants' Introductory Statement

This motion seeks to compel Plaintiffs to provide fully responsive answers and documents to ten requests or sets of requests: (1) Defendants' Interrogatory No. 18, which requests financial and sales information, including information on offers for sale and design opportunities; (2) Defendants' Requests for Production ("RFPs") Nos. 108, 109, 111, 112, 115, 116, 118, 120, 121, and 127, which seek information regarding prior art and the inventors of the patents-in-suit; (3) Defendants' Interrogatory No. 11 and Defendants' RFP 135, which involve Plaintiffs' own operations and structure, such as sales and distribution channels; (4) Defendants' Interrogatory No. 12 and Defendants' RFP 97, which involve specific categories of third-party communications; (5) Defendants' RFP 190, which seeks communications between Plaintiffs and Morgan Stanley regarding an attempt by Plaintiffs to purchase certain of Defendants' assets; (6) Defendants' RFP 212, which seeks valuation documents of Nitronex, LLC; (7) Defendants' RFP 38, which seeks license agreements relevant to Plaintiffs' damages claims; (8) Defendants' RFPs 214 and 215, which seek documents and communications from Plaintiffs' involvement and motivations in certain technology transfers, agreements, and licenses; (9) Defendants' Interrogatory No. 17, which seeks the identities of key individuals; and (10) Defendants' RFP 204, which seeks information regarding one of Plaintiffs' suppliers, ST Microelectronics.

The first item at issue is Defendants' Interrogatory No. 18.  Plaintiffs response directs Defendants to three summary sales spreadsheets, which lack many classes of data sought by this interrogatory.  During the meet and confer process, Plaintiffs pointed Defendants to another summary document.  But even this document is incomplete.  As shown by Plaintiffs' internal communications, Plaintiffs track other fields of responsive data that should be contained in this report.

The second set of requests involved in this motion includes ten RFPs that seek information regarding prior art and the inventors of the patents-in-suit.  Plaintiffs respond to these RFPs by incorporating by reference responses to other requests.  This ploy does not yield responsive answers.  Plaintiffs must produce documents responsive to these requests, which focus on a dispositive issue in this case.

The third set of requests is an RFP and an interrogatory revolving around Plaintiffs' business operations.  Because these requests seek discovery on Plaintiffs' own operations, Plaintiffs should be able to respond with minimal burden.  Instead, Plaintiffs snub full portions of the requests and provide only selected information, without a valid objection for disregarding the rest.

The fourth set of requests is an RFP and an interrogatory.  These requests seek third-party communications—specifically, those related to this lawsuit, MACOM's rights under the purchased patents, and Defendants.  Plaintiffs arbitrarily limit their responses to only emails and customer communications.  This is inappropriate.  Plaintiffs cannot rewrite Defendants' requests without a proper objection.

The fifth category contains a single RFP seeking communications with a specific third party who advised Plaintiffs on a potential purchase of Defendants' business assets.  These communications would shed light on Plaintiffs' business decisions and affairs. Underscoring their importance, these communications occurred shortly before this lawsuit was filed and cover a subject at the core of this dispute.

The sixth category is also a single RFP, which seeks valuations of Nitronex and its intellectual property when GaAs Labs (which is affiliated in some way with

MACOM, *see* Ex. 1, GaAs Labs' Portfolio Webpage Printout) acquired Nitronex. Plaintiffs objected to this request on the basis that it calls for documents outside of their possession, custody, or control.  Defendants pointed out that this is not a valid objection.  The fact that *some* documents are outside Plaintiffs' possession, custody, or control does not prevent them from producing those documents that are in their possession, custody, or control.  Defendants asked Plaintiffs to produce whatever documents are in their possession, custody, or control, or to state they do not have any documents in their possession, custody, or control.  Plaintiffs refused.

The seventh and eighth sets of requests contain in total three RFPs, each of which seeks information relating to technology transfers, agreements, and licenses entered into by Plaintiffs.  Such documents and communications will again show the state of Plaintiffs' business in specifically identified and highly relevant areas.  They will also be relevant to the value of the patents at issue.  Plaintiffs again rewrite these requests so that they can produce only what little they prefer to produce.

The ninth item is Interrogatory No. 17.  Plaintiffs' deficient response simply points to a stack of documents.  These documents do not answer this interrogatory, and the Federal Rules do not permit this cumbersome incorporation by reference in response to an interrogatory.

The tenth and final item is a single RFP.  Following a meet and confer, Defendants offered a narrowed version of this RFP, and Plaintiffs agreed to produce responsive documents.  Later correspondence revealed that Plaintiffs were no longer willing to do so, however.  Plaintiffs must produce responsive documents.

In their responses, Plaintiffs often rewrite the requests, disregarding the relevance of the specific information actually sought.  Further, Plaintiffs often respond by employing a frustrating incorporation by reference tactic that directs Defendants to a number of responses to different request in lieu of a direct response to the particular request at issue.  By doing so, Plaintiffs obscure their position as to whether they will be producing responsive documents and what documents will be withheld

1    or on what basis.  And Plaintiffs repeatedly neglect their discovery obligations by

2    arguing that documents could be sought from third parties or are publicly available.

3    Plaintiffs cannot shift their discovery obligations to other parties, especially where

4    Plaintiffs fail to identify the precise documents subject to this objection.  Defendants'

5    motion to compel should be granted in its entirety.

6           **B.    Plaintiffs' Introductory Statement**

7           This is the second (although probably not the last) in a baseless series of

8    motions to compel brought by Defendants Infineon Technologies AG ("Infineon

9    AG") and Infineon Technologies Americas Corporation ("Infineon Americas")

10   (collectively, "Infineon").

11          Infineon has approached motion practice the same way that it has approached

12   discovery:  demand everything (relevant or not) , compromise on nothing, and

13   wholly disregard the principles of proportionality that are a cornerstone of the

14   Federal Rules of Civil Procedure.  *See, e.g.*, *Menell v. Rialto Unified Sch. Dist.*, No.

15   EDCV152124VAPKKX, 2016 WL 3452920, at *1 (C.D. Cal. June 20, 2016) (under

16   the Federal Rules, parties "have a collective responsibility to consider the

17   proportionality of all discovery and consider it in resolving discovery disputes").

18          It is Infineon's burden on this motion to compel to establish that its requests

19   satisfy the relevance requirement of Federal Rule of Civil Procedure 26.  *States v.*

20   *McGraw-Hill Companies, Inc.*, No. CV130779DOCJCGX, 2014 WL 12589667, at

21   *3 (C.D. Cal. June 13, 2014).  In all instances, Infineon fails to meet this standard.

22   "Although relevancy is broadly defined for the purposes of discovery, it does have

23   ultimate and necessary boundaries." *Centeno v. City of Fresno*, No.

24   116CV00653DADSAB, 2016 WL 7491634, at *4 (E.D. Cal. Dec. 29, 2016)

25   (emphasis added).  It is not simply enough to announce, *ipso dixit*, that the

26   information that it seeks is "relevant" or "central." *Audio MPEG, Inc. v. HP Inc.*,

27   No. 16-MC-80271-HRL, 2017 WL 950847, at *5 (N.D. Cal. Mar. 10, 2017) (finding

28   that a party's "conclusory statements" that requested data is "relevant to damages"

1  failed to satisfy its burden to demonstrate relevance); *AngioScore, Inc. v. TriReme*

2  *Med., Inc.*, No. 12-CV-03393-YGR JSC, 2014 WL 6706873, at \*3 (N.D. Cal. Nov.

3  25, 2014) ("Defendants' conclusory statements regarding the relevance of the

4  documents sought fail to satisfy their burden to demonstrate relevance.").  It must

5  explain why in way that is coherent and consistent with the claims and arguments in

6  dispute.

7      Infineon is a much larger company than company than MACOM, with annual

8  revenues in 2017 that dwarfed MACOM's by more than 12 times.  *See, e.g.*,

9  https://www.infineon.com/cms/en/about-infineon/press/general-information/facts-

10 figures/ (reporting Infineon 2017 revenues of almost $9 billion (the equivalent of

11 €7,603 million)); http://files.shareholder.com/downloads/AMDA-

12 G79D4/6289561165x0x964130/A4FEFAE7-68E3-4601-AA5B-

13 CC6796A44052/MTSI_2016-2017_Quarterly_Revenue_by_End_Market.pdf

14 (reporting MACOM fiscal year 2017 revenues totaling approximately $700 million).

15 Its approach throughout this litigation has been to delay, draw things out, and

16 impose as much burden and expense on MACOM as it can.  The present motion

17 epitomizes that strategy.

18     Infineon raises ten issues in the present motion to compel (in addition to the

19 four issues it raised in a joint stipulation served three days before this one), all of

20 which are unduly burdensome, seek largely irrelevant information, or which have

21 been mooted—and ***none*** of which can be granted consistently with the principles of

22 proportionality that must guide any decision on a motion to compel.  Infineon's

23 motion should be denied in its entirety.

24

25 **II.    ARGUMENT**

26     **A.    Defendants' Interrogatory No. 18**

27     Below are Defendants' Interrogatory No. 18 and Plaintiffs' response and

28 supplemental response.

5

<u>INTERROGATORY NO. 18</u>

For each of your GaN-Si Products and GaN-SiC
Products, describe in detail each and every sale or offer for
sale of such products, including an identification of the
customer or potential customer to whom the sale or offer for
sale was made; the date on which the sale or offer for sale
was made; the price at which such product was sold or
offered for sale (including any list price, discount price,
discount, rebate, and other financial arrangement or
transaction affecting the value of the sale or offer for sale);
the quantity of such product included in the sale or offer for
sale; all fixed and variable costs for such product that was
sold or offered for sale; the profit and profit margin that you
realized or would have realized on each sale or offer for
sale; whether an offer resulted in a design win or design loss
or was otherwise accepted or rejected; the identification of
any additional offers, counterproposals, or further
negotiations that resulted from an offer for sale and the
outcome of those additional offers, counterproposals, or
further negotiations (such as a design win, design loss, or
actual sale); if any offer for sale resulted in a design win or
sales or was otherwise accepted, the terms (including
product price) of any design win, sales, or agreement that
resulted from the offer for sale; and if any offer for sale did
not result in a design win or sales or was not otherwise
accepted, the reasons why the offer did not result in a design
win or sales or was not otherwise accepted; and the
identification of the Bates numbers of the bids, proposals,
price quotes, design wins, design losses, negotiations,
communications, agreements, or other documents
evidencing the sale or offer for sale.

<u>RESPONSE TO INTERROGATORY NO. 18</u>

MACOM incorporates the General Objections and
Objections to Definitions and Instructions set forth above.
MACOM objects to the Interrogatory as overly broad,
unduly burdensome, vague, and ambiguous. MACOM
objects to this Interrogatory as compound. MACOM
objects to the terms "detail," "sale," offer for sale,"
"customer," "potential customer," "price," "list price,"

1   "discount price," "discount rebate," "other financial
2   arrangement or transaction," "affecting," "fixed and
    variable costs," "profit," "profit margin," "resulted,"
3   "design win," "design loss," "accepted," "rejected,"
4   "offers," "counterproposals," "further negotiations,"
    "resulted from," "why," "negotiations," and
5   "communications" as overly broad, unduly burdensome,
6   vague, and ambiguous. MACOM objects to this
    Interrogatory on the grounds that it fails to describe the
7   information requested with reasonable particularity.
8   MACOM objects to the extent this Interrogatory seeks
    information that is not relevant to the subject matter of this
9   action and/or is not proportional to the needs of the case.
10  MACOM objects that this Interrogatory is not reasonably
    limited as to time and thus seeks to impose undue burden
11  on MACOM. MACOM objects to this Interrogatory to the
12  extent it seeks third-party confidential information that
    MACOM is not permitted to disclose under applicable
13  protective orders and/or private agreements. MACOM
14  objects to this Interrogatory to the extent it seeks
    information protected by the attorney-client privilege
15  and/or attorney work product doctrine and/or any other
16  applicable privilege or immunity.

17       Subject to and without waiving the foregoing general
18  and specific objections, MACOM responds as follows:

19       MACOM's historical sales of its GaN-on-SiC
20  products were *de minimis*, meaning that the potential
    damages from those sales do not justify the cost of litigating
21  Infineon's present infringement claims against those
    historical (and now discontinued) products. Therefore, for
22  purposes of this litigation, MACOM does not intend to
23  contest that its discontinued GaN-on-SiC products practice
    the five patents asserted by Infineon (U.S. Patent Nos.
24  7,569,871, 7,135,720, 7,352,016, 7,995,540, and
25  7,071,498). Pursuant to Federal Rule of Civil Procedure
    33(d), MACOM states that it will produce documents
26  showing MACOM's GaN-on-SiC sales worldwide from
27  2011 to present and also incorporates its response to
    Interrogatory No. 16 here.

28

7

With respect to GaN-on-Si, discovery has been stayed regarding much of the information requested by this Interrogatory, and MACOM therefore declines to respond at this time on that basis. That said, MACOM states that it will produce non-privileged communications with Tier 1 basestation customers related to the Nitronex Patents and/or GaN-on-Si marketing, to the extent they exist and can be located upon a reasonable search. Pursuant to Federal Rule of Civil Procedure 33(d), MACOM refers Infineon to those materials.

MACOM's investigation of the subject matter of this Interrogatory is ongoing. Pursuant to Federal Rule of Civil Procedure 26(e), MACOM reserves the right to supplement this Response as further information becomes available.

SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 18

Subject to and without waiving the foregoing general and specific objections, MACOM supplements its response as follows:

MACOM has produced spreadsheets with detailed information regarding its GaN-on-SiC sales. Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, MACOM directs Infineon to the documents Bates-labeled MACOM-INF-035807 and MACOM-INF-035808.

MACOM has also produced a spreadsheet with detailed information regarding its GaN-on-Si sales. Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, MACOM directs Infineon to the document Bates-labeled MACOM-INF-035806.

MACOM's investigation of the subject matter of this Interrogatory is ongoing. Pursuant to Federal Rule of Civil Procedure 26(e), MACOM reserves the right to supplement this Response as further information becomes available.

1          **1.    Defendants' Argument**

2          Plaintiffs' response to Interrogatory No. 18 amounts to three summary sales

3   spreadsheets.  *See* Ex. 2, MACOM-INF-035807, First GaN-on-SiC Summary Sales

4   Spreadsheet; Ex. 3, MACOM-INF-035808, Second GaN-on-SiC Summary Sales

5   Spreadsheet; Ex. 4, MACOM-INF-035806, GaN-on-Si Summary Sales Spreadsheet.

6   These spreadsheets omit wholesale categories of financial information that

7   Interrogatory No. 18 requests and that Plaintiffs track.  Because Plaintiffs' response

8   ignores key language seeking *offers* for sale and because Plaintiffs ignore key data

9   fields that they already track, Plaintiffs must amend their response to provide this

10  information.

11         **a)    Background**

12         On December 15, 2017, Plaintiffs supplemented their response to Interrogatory

13  No. 18.  On May 9, 2018, counsel for Defendants sent a letter to counsel for Plaintiffs,

14  detailing how the summary sales spreadsheets and their data, which Plaintiffs

15  produced in response to this interrogatory, did not adequately respond.  Defendants

16  explained that Plaintiffs' spreadsheets contain only ***actual*** sales but do not provide

17  information about ***offers*** for sale.  Offers for sale would include design opportunities

18  for which Plaintiffs have competed or are competing, whether or not they have yet

19  resulted in an actual sale.  In the relevant base station market, Plaintiffs, Defendants,

20  and other suppliers compete for specific base station projects, sometimes called

21  "design opportunities."   For each base station project, the customer holds a

22  competition among various suppliers.  After testing and evaluating each supplier's

23  products, the customers selects one or more products to "design-in" to the base station.

24  If a supplier loses this competition, it is called a "design loss," and the supplier's

25  product is not designed into the base station.  If a supplier wins this competition, it is

26  call a "design win," and the supplier's product is designed into the base station.  When

27  the base station goes into production, the supplier makes sales for its products used in

28  the manufacture of the base station.

Defendants interrogatory directed to all offers for sale thus would include all design opportunities for which Plaintiffs competed, including design losses that ultimately resulted in no actual sale.  Interrogatory No. 18 requests information about offers for sale because business opportunities that Plaintiffs *lost* are particularly relevant to Plaintiffs' lost profits claims.  Defendants specifically pointed out that Interrogatory No. 18 requests detailed information regarding design-ins and other projects for which Plaintiffs competed, but Plaintiffs provided no such information.  Further, even with respect to the spreadsheets that Plaintiffs identified, Defendants explained the spreadsheets do not provide all the information that Defendants requested with respect to the actual sales—the spreadsheets are missing, for example, sales dates (as opposed to ship dates), discounts and other alternative financial arrangements, and fixed and variable costs.

On May 14, 2018, Plaintiffs sent a letter in response identifying a specific report that they produced.  Ex. 5, May 14, 2018 letter from Elizabeth Banzhoff to Josue Caballero.  That report was not actually identified in their interrogatory response.  And even more importantly, while this report provides information about *some* offers for sale of the products at issue, Plaintiffs were unwilling to confirm that it encompassed all such offers.  And even as to the design opportunities that are included, it omits wholesale categories of critical data called for by the interrogatory, which Plaintiffs' other documents suggest could easily have been included in the report.

On May 18, 2018, the parties met and conferred regarding this interrogatory in accordance with Local Rule 37.1.  Defendants explained that the report alone, even if it had been identified in their interrogatory response rather than merely in their May 14, 2018 letter, did not fully respond to the interrogatory.  Defendants also noted the missing classes of information from Plaintiffs' spreadsheets and pointed out that some explanation of the meanings of the columns in the report would likely be required to fully answer.  Plaintiffs stated they would consider supplementing their response to

1   include this information.

2       A week later, Plaintiffs stated that they would "supplement [their] response to

3   identify this spreadsheet, as well as potentially other documentation under Rule

4   33(d)."  Ex. 6, May 14, 15, and 18, 2018 Meet and Confer email chain, at May 24,

5   2018 8:32 PM email from Banzhoff to Caballero.  But, as Defendants had explained,

6   the design opportunities report alone is not sufficient to respond to the interrogatory.

7   Yet Plaintiffs provided no assurances that they would provide anything further, saying

8   that they would "potentially" include unspecified "other" documentation. The parties

9   thus reached an impasse.  *Id*. at May 25, 2018 6:09 PM email from Caballero to

10  Banzhoff.

11          **b)    Plaintiffs must fully respond to Interrogatory No. 18 by
12                  providing information about offers for sale (such as
                    design opportunities) and other categories of
13                  information because Plaintiffs' other documents reveal
                    the existence of such data.**

14      Plaintiffs' spreadsheets identified in their interrogatory response are limited to

15  incomplete information about actual sales, but provide no information about ***offers*** of

16  sale, which Interrogatory No. 18 explicitly mentions.  Because Plaintiffs' damages

17  model involves lost profits, Defendants must know what profits Plaintiffs actually lost

18  (that is—design opportunities unsuccessfully competed for), but Plaintiffs'

19  spreadsheets offer only information about ***actual*** sales.  Unless Plaintiffs describe in

20  detail their *offers* for sale (*e.g.,* projects for which they competed, lost, and thus had

21  no actual sales), Defendants are left without the best evidence of Plaintiffs' lost

22  profits—sales that Plaintiffs offered but did not make.  Likewise, offers for sale that

23  have resulted in design wins, but which have not yet materialized into actual sales

24  bear upon Plaintiffs' damages claim, which is apparent based on projections of future

25  revenue streams.  Such future revenue would necessary result from accepted offers

26  for sale, regardless of whether actual sales had yet been made.

27      On this point, Plaintiffs stated in their May 14, 2018 letter that they provided

28  "information about design opportunities," citing to a document from their production.

Ex. 5, May 14, 2018 letter from Elizabeth Banzhoff to Josue Caballero (citing Ex. 7, MACOM-INF-090151, Financial Report).  As an initial matter, Plaintiffs' response to Interrogatory No. 18 speaks nothing of this document.  Although Plaintiffs have now offered to supplement their response to identify this design opportunities report, that does not resolve the dispute.  Ex. 6, May 14, 15, and 18, 2018 Meet and Confer email chain, at May 24, 2018 8:32 PM email from Banzhoff to Caballero.  First and foremost, Plaintiffs have provided no assurances (and were unwilling to do so during the meet and confer) that the report contained information about all offers for sale of the relevant products, as opposed to merely a subset.

Moreover, even if the report detailed all offers for sale, it provides insufficient information about each to sufficiently respond to the interrogatory, omitting critical information such as whether the offer for sale resulted in a design win or design loss, the reason for any loss, and the pricing and other details of the offer.  Based on Plaintiffs' other documents, it appears that the Salesforce system from which this report was generated includes other fields that might speak to this information, but Plaintiffs omitted these fields from the report.  Ex. 7, MACOM-INF-090151, Financial Report.

1  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  At a minimum, because the report omits fields of

5  pertinent and responsive data tracked by Plaintiffs, Plaintiffs should be required to

6  generate a new report for all offers to sell the relevant products to basestation

7  customers that includes all available fields.

8         Such data is critical to Plaintiffs' lost profits theory.  For example, the reasons

9  why Plaintiffs lost out on design opportunities (*i.e.*, "Loss/Cancel Reason[s]") would

10  shed light on whether such losses are attributable to Defendants' allegedly wrongful

11  conduct or to other factors.  Interrogatory No. 18 seeks this exact information by

12  asking "if any offer for sale did not result in a design win or sales or was not otherwise

13  accepted, the reasons why the offer did not result in a design win or sales or was not

14  otherwise accepted."  Yet even though Plaintiffs apparently track this data, it is in

15  neither their response to Interrogatory No. 18 nor the report that they the claim

16  contains responsive information on design opportunities.  *Compare* Ex. 7, MACOM-

17  INF-090151, Financial Report, *with* Ex. 8, MACOM-INF-041699, October 2, 2017

18  email from Markus Schaefer to numerous MACOM individuals, *and* Ex. 9, MACOM-

19  INF-043327, May 26, 2017 email from Markus Schaefer to numerous MACOM

20  individuals.  Plaintiffs must provide a current version of that report that, at the very

21  least, contains all base station customer opportunities and ***all*** available data fields.

22  Because these reports are likely generated from an existing database, it would not be

23  burdensome for Plaintiffs to generate a report including all available fields.[1]  That

24

25  _____

26         [1] Indeed, the metadata on Ex. 7, MACOM-INF-090151, Financial Report, indicates that this report was created on March 28, 2018, just before the substantial

27  completion deadline in this case.  Caballero Decl. at ¶ 8.  Thus, it is likely that Plaintiffs generated this report solely for this litigation and therefore can easily

28  generate additional reports.

would be less burdensome than what Plaintiffs have already done, by selectively deciding what fields to include or exclude.

Finally, Plaintiffs' summary sales spreadsheets identified in their interrogatory response and the design opportunities report identified in their May 14, 2018 letter fail to provide other types of information requested in Interrogatory No. 18. They are silent on profit and profit margin. In terms of pricing, the spreadsheets provide one figure for "Net Value in LC," without mentioning, comparing, or offering the list price, discount price, rebates, or any other arrangements affecting the value of a transaction. Plaintiffs omit information on costs, additional offers, counterproposals, or further negotiations; they omit information on the reasons why design wins or sales were not accepted; and they omit Bates numbers of bids, proposals, price quotes, or similar items.

As shown through Plaintiffs' own documents, Plaintiffs track many of these data fields, yet they omit them from their response to Interrogatory No. 18 and from the design opportunities report identified in their letter, which purportedly provides fully responsive information. And because Plaintiffs' documents show that Plaintiffs track these specific types of data fields, the burden of producing responsive answers containing this data is low—Plaintiffs need only run the same reports discussed in their internal documents and provide the *full* report, rather than an arbitrarily limited version that cloaks the very information Defendants have requested.

### 2.    Plaintiffs' Argument

Infineon's request here is overbroad, compound, and unreasonable. It seeks entire categories of information that are unlikely to move the needle on any issue in dispute. MACOM has nonetheless provided all available information to Infineon to demonstrate each of its sales (and offers for sale). Infineon has not demonstrated why the information MACOM provided is insufficient for its purposes in this case; it just summarily claims it is insufficient.

### a. Interrogatory No. 18 Is Overbroad And Compound

Interrogatory No. 18 is vastly overbroad and compound. In a single interrogatory, Infineon attempts to jam in multiple separate topics. This is impermissible. *U.S. ex rel. O'Connell v. Chapman Univ.*, 245 F.R.D. 646, 649 (C.D. Cal. 2007) (denying motion to compel responses to compound interrogatories); *Withers v. eHarmony, Inc.*, No. CV 09-2266-GHK(RCX), 2010 WL 11520197, at *3 (C.D. Cal. Apr. 1, 2010) (denying motion to compel where compound interrogatory included "at least seven 'discrete subparts'").

For instance, this single (very long) interrogatory purports to cover in one place both GaN-on-Si and GaN-on-SiC—two entirely separate product lines. It also seeks information about *every* sale, although—as explained in response to Infineon's first motion to compel—there are ▮▮▮▮▮ separate transactions. For each, Infineon wants to know not just information about the customer, date, volume, and revenues of sales, but also information about the costs and profits for each product and sale. Not only that, it also seeks information about a separate topic: *offers to sell* that were unsuccessful. These, of course, raise a completely different set of information and material and implicate a different set of source data. From the face of the interrogatory alone, the burdensome nature of this interrogatory is manifest: it is necessarily burdensome to accumulate the volume of information requested on disparate topics implicating multiple product lines and different groups of personnel. *Shoemake v. McCormick, Summers & Talarico II, LLC*, No. 10-2514-RDR, 2011 WL 5553652, at *6 (D. Kans. Nov. 15, 2011) (finding request "to be facially overbroad" where it was "couched in such broad language as to make arduous the task of deciding which of numerous documents may conceivably fall within its scope"); *Linnebur v. United Tel. Ass'n*, No. 10-1379-RDR, 2011 WL 5103300, at *1 (D. Kans. Oct. 27, 2011) (stating that "if the discovery requests appear facially objectionable in that they are overly broad or seek information that does not appear relevant, the burden is on the movant to demonstrate how the requests are not objectionable"); *Twigg v. Pilgrim's Pride*

*Corp.*, No. 3:05-CV-40, 2007 WL 676208, at *5 (N.D.W. Va. Mar. 1, 2007) (noting that where "it is obvious from the wording of the request . . . that discovery is overly broad and unduly burdensome" a party need not make specific objections to discovery requests) (citation omitted).  Infineon puts too much on one interrogatory.

> ### b.   Infineon Has Not Justified The Burdensome Discovery That It Demands For Offers For Sale By Showing How They Are Relevant

Infineon's showing of supposed relevance for offers for sale misses the mark. Infineon's arguments hopelessly mix up the information that would be relevant to a patent infringement claim and the information that is relevant to a breach of contract claim.

In this case, Infineon asserts a claim of patent infringement against MACOM's GaN-on-Si products—a claim which is premised on the argument (an argument now rejected by both this Court and the Federal Circuit, Dkt. 140; Ex. 13) that Infineon supposedly terminated MACOM's license, making MACOM's activities unlicensed. Dkt. 454-1 at ¶¶382-402.  Infineon also asserts a claim of patent infringement against MACOM's GaN-on-SiC products, based on the argument that they are beyond the scope of the license.  *Id.* ¶¶295-381.

Offers for sale are admittedly relevant to patent infringement claims, because 35 U.S.C. §271(a) makes offers for sale of a patented invention an infringement. But—at Infineon's instigation—***both*** of Infineon's patent infringement claims been stayed.  Dkt. 509.  Offers for sale are therefore not the proper subject of discovery at this time based on those claims.

Infineon might theoretically argue that MACOM's offers for sales of GaN-on-SiC products are relevant to its theory that it was justified in purporting to terminate MACOM's license.  But, as mentioned above, this Court and the Federal Circuit have rejected that argument as a matter of law.  Dkt. 140; Ex. 13.  That argument can hardly justify the relevant discovery therefore.

It is true that MACOM asserts a claim of breach of contract against Infineon, but that claim is based on ***Infineon's*** violations of its promises of exclusivity to MACOM for GaN-on-Si products in certain fields.  Dkt. 445 at ¶¶190-201.  In other words, with respect to MACOM's breach of contract claim, it is ***Infineon's*** conduct with respect to GaN-on-Si that is at issue, not MACOM's.  Dkt. 445 at ¶¶190-201.

Although Infineon is correct that MACOM seeks lost profits it has suffered due to Infineon's breaches, MACOM need not (and does not intend to) prove those lost profits by itemizing every offer for sale that it has ever made.  To the contrary, the facts that—for instance—market adoption of MACOM's technology has been delayed and that customers have told MACOM that they are waiting for Infineon's promised competing products can all support MACOM's claim, regardless of whether or not MACOM made formal "offers to sell" on particular dates to particular customers.  25 C.J.S. Damages § 166 ("In order for profits to be recovered as an element of damages [for breach of contract], there must be reasonable proof of the amount thereof, and any reasonable method of estimating prospective profit is acceptable.").  Infineon cites no case for the proposition that MACOM must prove its damages by proving its offers for sale in a contract case, nor can it.

In short, it is entirely unclear why such extensive discovery into offers for sale are justified.  Infineon has not met its burden on this point.

### c.   MACOM Has Nevertheless Provided Infineon With All Relevant Information Under Rule33(d)

Notwithstanding the impermissible breadth of Infineon's interrogatory and the lack of relevance, MACOM explicitly pointed under Rule 33(d) to the business records it had produced in an effort to ***answer*** Infineon's Interrogatory—not to avoid it, as Infineon suggests.  *O'Connor*, 185 F.R.D. at 277.

First, MACOM produced detailed spreadsheets about its sales of all basestation products.  These are not "summary spreadsheets," as Infineon attempts to characterize them.  Although they do include, as just one component, summary totals, they also

include backup data, with detailed information such as: the product number and product line that are the subject of each individual sale; the purchaser's name; the location/country where the purchaser is located; the shipment date; the price of the product sold; an identification of whether the sale was made to a distributor; if so, the name of the end customer purchasing from the distributor (where that information is known by MACOM); and the standard cost associated with the product of the sale. *See* Dkt. 512-3.

Second, MACOM pointed to a spreadsheet from Salesforce, the customer relations database computer program that MACOM itself uses to track its GaN design opportunities with basestation customers.  Ex. 7.  This spreadsheet contains detailed information including the identity of the customer for each opportunity listed, a description of the opportunity, the MACOM part that will be utilized for it, the projected design win date, projections for sales, and the MACOM's salesperson associated with that projects.  After Infineon's complaints that it could not tell which of the items in this spreadsheet were wins and losses, MACOM even updated this spreadsheet with an additional column that indicates whether the project is pending, a win, or a loss.  Ex. A.  And, as Infineon points out, MACOM produced numerous other emails and reports that contain design win and loss information—which only serves to prove that MACOM did provide this information when it is available.  *E.g.*, Exs. 8-9.

Third, MACOM conducted a reasonable search and produced all of the communications with basestation customers it located regarding GaN, MACOM, Infineon, and other topics relevant to this case—communications from which Infineon can reconstruct the requested offers for sale just as easily as MACOM. Where the burdens on the plaintiff and the defendant in locating requested information are equal, then the Federal Rules offer Rule 33(d) as a solution to reduce burden. *Laryngeal Mask Co. v. Ambu A/S*, No. 07CV1988-DMS NLS, 2009 WL 9530357, at *1 (S.D. Cal. Mar. 20, 2009) (noting that Rule 33(d) "provides that a party may

#:22502

respond to an interrogatory by designating specific documents when the burden of ascertaining the answer from the documents is equal for both sides").

Infineon nevertheless seems to suggest that MACOM's response is deficient because it did not provide this information in narrative form.  But MACOM should not be required to create for this litigation a narrative of each of thousands of line items in spreadsheets and email communications.  Infineon's Interrogatory No. 18 is precisely the type of interrogatory that can and is routinely answered by way of Rule 33(d).  *See, e.g.*, *O'Connor v. Boeing N. Am., Inc.*, 185 F.R.D. 272, 277 (C.D. Cal. 1999) (citing *Sable v. Mead Johnson and Co.*, 110 F.R.D. 553, 556 (D. Mass. 1986) (one "prerequisite for invoking the Rule 33[(d)] option is that there be a burden on the interrogated party if it were required to answer the interrogatories in the traditional manner").[2]

In sum, Infineon's Interrogatory No. 18 is overbroad and compound.  Infineon has shown no legitimate need for the requested information, much less a need for it in the format requested or a need that would justify the burden imposed by this request.  MACOM has nevertheless pointed Infineon to information that responds to the interrogatory and which Infineon can analyze to locate for itself the information it seeks.  MACOM therefore respectfully requests that the Court deny Infineon's motion with respect to Interrogatory No. 18.

**B.   Defendants' Requests for Production Nos. 108, 109, 111, 112, 115, 116, 118, 120, 121, and 127**

Below are Defendants' RFPs 108, 109, 111, 112, 115, 120, 121, and 127 (the "Prior Art RFPs"), Defendants' RFPs 116 and 118 (the "Inventor RFPs"), and Plaintiffs' responses.

---

[2]  To the extent that MACOM did not originally cite certain of the documents in its original response, MACOM agreed to supplement its response to Interrogatory No. 18 with this information, although Infineon summarily deemed that unacceptable.  Ex. 6 at 1.

REQUEST FOR PRODUCTION NO. 108

All documents concerning or constituting Prior Art to any of the Licensed Patents or any of the Related Patents or Applications, including all Prior Art known to Nitronex and/or MACOM to the Licensed Patents.

RESPONSE TO REQUEST FOR PRODUCTION NO. 108

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects to the Request as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request as duplicative of previous discovery requests served by Infineon. MACOM objects to the terms "concerning," "constituting," "prior art," "licensed patents," "related patents," "applications," and "known" as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to the extent this Request seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects that this Request is not reasonably limited as to time and thus seeks to impose undue burden on MACOM. MACOM objects to this Request to the extent this seeks information that is publicly available and/or equally accessible to Defendants. MACOM objects to the extent this Request calls for expert testimony. MACOM objects to this Request to the extent it seeks third-party confidential information that MACOM is not permitted to disclose under applicable protective orders and/or private agreements. MACOM objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: MACOM incorporates by reference its responses to Requests for Production Nos. 3, 5, 9, 10, 37, 38, 100, and 101 and Interrogatory Nos. 4 and 7.

REQUEST FOR PRODUCTION NO. 109

All documents and communications in which MACOM, Nitronex, and/or a third party has addressed any alleged Prior Art to one or more of the Licensed Patents.

RESPONSE TO REQUEST FOR PRODUCTION NO. 109

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects to the Request as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request as duplicative of previous discovery requests served by Infineon. MACOM objects to the terms "communications," "a third party," "addressed," "alleged Prior Art," and "Licensed Patents" as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to the extent this Request seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects that this Request is not reasonably limited as to time and thus seeks to impose undue burden on MACOM. MACOM objects to this Request to the extent this seeks information that is publicly available and/or equally accessible to Defendants. MACOM objects to the extent this Request calls for expert testimony. MACOM objects to this Request to the extent it seeks third-party confidential information that MACOM is not permitted to disclose under applicable protective orders and/or private agreements. MACOM objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: MACOM incorporates by reference its responses to Requests for Production Nos. 3, 5, 9, 10, 37, 38, 100, and 101 and Interrogatory Nos. 4 and 7.

<u>REQUEST FOR PRODUCTION NO. 111</u>

All documents and communications relating to any development, use, communication, or sales of any GaN-on-Si or GaN-on-SiC product before the filing date of any of the Licensed Patents.

<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 111</u>

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects to the Request as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request as duplicative of previous discovery requests served by Infineon. MACOM objects to the terms "communications," "relating to," "development," "use," "communication," "sales," "product," "filing date," and "Licensed Patents" as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to the extent this Request seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects that this Request is not reasonably limited as to time and thus seeks to impose undue burden on MACOM. MACOM objects to this Request to the extent this seeks information that is publicly available and/or equally accessible to Defendants. MACOM objects to the extent this Request calls for expert testimony. MACOM objects to this Request to the extent it seeks third-party confidential information that MACOM is not permitted to disclose under applicable protective orders and/or private agreements. MACOM objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: MACOM incorporates by reference its responses to Requests for Production Nos. 3, 5, 9, 10, 37, 38, 100, and 101 and Interrogatory Nos. 4 and 7.

## REQUEST FOR PRODUCTION NO. 112

All documents concerning the Licensed Patents, including but not limited to: inventor notebooks, patent prosecution files, invention disclosure forms, minutes from patent committee meetings, evaluations of the validity or enforceability of the Licensed Patents, Prior Art to the Licensed Patents and MACOM's and/or Nitronex's first awareness of such Prior Art.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 112

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects to the Request as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request as duplicative of previous discovery requests served by Infineon. MACOM objects to the terms "concerning," "Licensed Patents," "inventor notebooks," "patent prosecution files," "invention disclosure forms," "minutes from patent committee meetings," "prior art," and "first awareness" as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to the extent this Request seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects that this Request is not reasonably limited as to time and thus seeks to impose undue burden on MACOM. MACOM objects to this Request to the extent this seeks information that is publicly available and/or equally accessible to Defendants. MACOM objects to the extent this Request calls for expert testimony. MACOM objects to this Request to the extent it seeks third-party confidential information that MACOM is not permitted to disclose under applicable protective orders and/or private agreements. MACOM objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

23

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: MACOM incorporates by reference its responses to Requests for Production Nos. 3, 5, 9, 10, 37, 38, 100, and 101 and Interrogatory Nos. 4, 7, and 8.

REQUEST FOR PRODUCTION NO. 115

All documents related to patents, publications, abstracts, papers, articles, presentations or speeches invented, authored or given, in whole or in part, by any of the inventors of the Licensed Patents concerning the subject matter of any of the Licensed Patents.

RESPONSE TO REQUEST FOR PRODUCTION NO. 115

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects to the Request as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request as duplicative of previous discovery requests served by Infineon. MACOM objects to the terms "related to," "patents," "publications," "abstracts," "papers," "articles," "presentations," "speeches," "invented," "authored," "given," "inventors," "subject matter," and "Licensed Patents" as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to the extent this Request seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects that this Request is not reasonably limited as to time and thus seeks to impose undue burden on MACOM. MACOM objects to this Request to the extent this seeks information that is publicly available and/or equally accessible to Defendants. MACOM objects to this Request to the extent it seeks third-party confidential information that MACOM is not permitted to disclose under applicable protective orders and/or private agreements. MACOM objects to this Request to the extent it seeks information protected by the attorney-

client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: MACOM incorporates by reference its responses to Requests for Production Nos. 3, 5, 9, 10, 37, 38, 100, and 101 and Interrogatory Nos. 4 and 7.

REQUEST FOR PRODUCTION NO. 116

All documents regarding prior testimony of any of the inventors of the Licensed Patents in the context of any adversarial proceeding in the United States or in any other country.

RESPONSE TO REQUEST FOR PRODUCTION NO. 116

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects to the Request as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request as duplicative of previous discovery requests served by Infineon. MACOM objects to the terms "prior testimony," "inventors," "Licensed Patents," and "adversarial proceeding" as overly broad, unduly burdensome, vague, and ambiguous.

MACOM objects to this Request on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to the extent this Request seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects that this Request is not reasonably limited as to time and thus seeks to impose undue burden on MACOM. MACOM objects to this Request to the extent this seeks information that is publicly available and/or equally accessible to Defendants. MACOM objects to this Request to the extent it seeks third-party confidential information that MACOM is not permitted to disclose under applicable protective orders and/or private agreements. MACOM objects to this Request to the extent it seeks information protected by the attorney-

client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: This Request calls for public information that is equally available to Defendants. MACOM will not undertake a search in response to this Request.

REQUEST FOR PRODUCTION NO. 118

All communications between one or more of MACOM and Nitronex and any of the named inventors of the Licensed Patents.

RESPONSE TO REQUEST FOR PRODUCTION NO. 118

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects to the Request as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request as duplicative of previous discovery requests served by Infineon. MACOM objects to the terms "communications," "inventors," and "Licensed Patents" as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to the extent this Request seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects that this Request is not reasonably limited as to time and thus seeks to impose undue burden on MACOM. MACOM objects to this Request to the extent it seeks third-party confidential information that MACOM is not permitted to disclose under applicable protective orders and/or private agreements. MACOM objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: This Request is overbroad and disproportionate to the needs of

the case. MACOM is willing to meet and confer with Defendants regarding this Request, if they are willing to narrow it so that it targets issues relevant to this case.

REQUEST FOR PRODUCTION NO. 120

For each of the Licensed Patents, all documents concerning any public use in the United States, offer for sale or first sale in the United States, or public disclosure of any of the subject matter described or claimed in the patent before the filing date of the application for the patent in the United States.

RESPONSE TO REQUEST FOR PRODUCTION NO. 120

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects to the Request as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request as duplicative of previous discovery requests served by Infineon. MACOM objects to the terms "concerning," "public use," "offer for sale," "first sale," "public disclosure," "subject matter," "described," "claimed," and "Licensed Patents" as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to the extent this Request calls for legal conclusions. MACOM objects to this Request on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to the extent this Request seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects that this Request is not reasonably limited as to time and thus seeks to impose undue burden on MACOM. MACOM objects to this Request to the extent this seeks information that is publicly available and/or equally accessible to Defendants. MACOM objects to this Request to the extent it seeks third-party confidential information that MACOM is not permitted to disclose under applicable protective orders and/or private agreements. MACOM objects to this Request to the extent it seeks information protected by the attorney-client

privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: MACOM incorporates by reference its responses to Requests for Production Nos. 3, 5, 9, 10, 37, 38, 100, and 101 and Interrogatory Nos. 4 and 7.

REQUEST FOR PRODUCTION NO. 121

All documents that show any modes contemplated by any of the inventors for carrying out each invention claimed in each of the Licensed Patents, including the best mode of carrying out the invention(s) claimed in each of the Licensed Patents or Related Patents or Applications (as the phrase "best mode") is used in 35 U.S.C. § 112, ¶ 1).

RESPONSE TO REQUEST FOR PRODUCTION NO. 121

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects to the Request as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request as duplicative of previous discovery requests served by Infineon. MACOM objects to the terms "show," "modes," "contemplated," "inventors," "carrying out," "invention," "Licensed Patents," and "Related Patents or Applications" as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to the extent this Request calls for legal conclusions. MACOM objects to this Request on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to the extent this Request seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects that this Request is not reasonably limited as to time and thus seeks to impose undue burden on MACOM. MACOM objects to this Request to the extent this seeks information that is publicly available and/or equally accessible to Defendants. MACOM objects to this Request to the extent it seeks third-party confidential information that MACOM is not

permitted to disclose under applicable protective orders and/or private agreements. MACOM objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: MACOM incorporates by reference its responses to Requests for Production Nos. 3, 5, 9, 10, 37, 38, 100, and 101 and Interrogatory Nos. 4 and 7.

REQUEST FOR PRODUCTION NO. 127

All documents concerning any search requested or performed for prior art to any Licensed Patent or any of the Related Patents or Applications.

RESPONSE TO REQUEST FOR PRODUCTION NO. 127

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects to the Request as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects that this Request is duplicative of previous discovery requests served by Infineon. MACOM objects to the terms "concerning," "search," "requested," "prior art," "Licensed Patent," and "Related Patents or Applications" as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to the extent this Request calls for legal conclusions. MACOM objects to this Request on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to the extent this Request seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects that this Request is not reasonably limited as to time and thus seeks to impose undue burden on MACOM. MACOM objects to this Request to the extent it seeks third-party confidential information that MACOM is not permitted to disclose under applicable protective orders and/or private agreements. MACOM objects to this Request to the extent

it seeks information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: MACOM incorporates by reference its responses to Requests for Production Nos. 3, 5, 9, 10, 37, 38, 100, and 101 and Interrogatory Nos. 4 and 7.

Below are Defendants' RFPs 3, 5, 9, 10, 37, 38, 100, and 101, and Interrogatories Nos. 4, 7, and 8, and Plaintiffs' responses, which Plaintiffs incorporate by reference into their responses to the Prior Art RFPs.  Also reproduced below are Defendants' RFPs 11, 12, and 16, and Plaintiffs' responses, which Plaintiffs incorporate by reference into their response to RFP 10.

REQUEST FOR PRODUCTION NO. 3

Documents sufficient to show the current and past ownership, assignment, purchase, and any other transfer of rights related to the "Purchased Patents" including any ownership, assignments, purchase, and any other transfer of rights to and from MACOM or between any entities affiliated with MACOM.

RESPONSE TO REQUEST FOR PRODUCTION NO. 3

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects to the Request as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to the terms "ownership," "assignment," "purchase," "transfer of rights," "related to," "Purchased Patents," and "affiliated" as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to the extent this Request seeks information in Defendants' possession and/or that is publicly available. MACOM objects to the extent this Request seeks information that is not relevant to the subject matter of this action and/or is not

30

proportional to the needs of the case. MACOM objects that this Request is not reasonably limited as to time and thus seeks to impose undue burden on MACOM. MACOM objects to this Request to the extent it seeks third-party confidential information that MACOM is not permitted to disclose under applicable protective orders and/or private agreements. MACOM objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: The assignment records for the Nitronex Patents at issue in this case are of public record. Further, Defendants—not MACOM—have possession and control over information related to the ownership of the Nitronex Patents since 2010. MACOM will produce the 2010 IP Purchase Agreement that details the assignment of the Nitronex Patents from Nitronex to International Rectifier. Additionally, MACOM will produce any intracompany sublicenses or other transfers of rights relating to its own license rights in the Nitronex Patents. MACOM also incorporates by reference its responses to Request Nos. 5, 9, 10, 37, 38, 100, and 101. Negotiations with Defendants are ongoing as to the timing of document productions.

REQUEST FOR PRODUCTION NO. 5

Documents sufficient to show which entities have control, ownership, or license of any rights under the "Purchased Patents," including any ownership, assignment of rights, or licenses held by MACOM or any affiliated entities.

RESPONSE TO REQUEST FOR PRODUCTION NO. 5

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects to the Request as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to the terms "control," "ownership," "license," "rights,"

"Purchased Patents," and "affiliated entities" as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to the extent this Request seeks information in Defendants' possession and/or that is publicly available. MACOM objects to the extent this Request seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects that this Request is not reasonably limited as to time and thus seeks to impose undue burden on MACOM. MACOM objects to this Request to the extent it seeks third-party confidential information that MACOM is not permitted to disclose under applicable protective orders and/or private agreements. MACOM objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: The assignment records for the Nitronex Patents at issue in this case are of public record. Further, Defendants—not MACOM—have possession and control over information related to the ownership of the Nitronex Patents since 2010. MACOM will produce the 2010 IP Purchase Agreement that details the assignment of the Nitronex Patents from Nitronex to International Rectifier. Additionally, MACOM will produce any intracompany sublicenses or other transfers of rights relating to its own license rights in the Nitronex Patents. MACOM also incorporates by reference its responses to Request Nos. 3, 9, 10, 37, 38, 100, and 101. Negotiations with Defendants are ongoing as to the timing of document productions.

REQUEST FOR PRODUCTION NO. 9

All documents concerning any agreements, purchases, transfers of intellectual property rights, or contracts, between any of two or more of the following:

Plaintiffs, Defendants, MACOM, Nitronex Corporation, GaAs Labs, International Rectifier, including but limited to:

      (a)     agreements between Nitronex Corporation and International Rectifier;

      (b)     agreements between Nitronex Corporation and MACOM;

      (c)     agreements between Nitronex Corporation and GaAs Labs; and

      (d)     agreements between Nitronex Corporation and Nitronex, LLC.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 9

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects to the Request as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to the terms "agreements," "purchases," "transfers," "intellectual property rights," and "contracts" as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to the extent this Request seeks information in Defendants' possession. MACOM objects to the extent this Request seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects that this Request is not reasonably limited as to time and thus seeks to impose undue burden on MACOM. MACOM objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: The assignment records for the Nitronex Patents at issue in this case are of public record. Further, Defendants—not MACOM—have possession and control over information

related to the ownership of the Nitronex Patents since 2010. MACOM will produce the 2010 IP Purchase Agreement that details the assignment of the Nitronex Patents from Nitronex to International Rectifier. Additionally, MACOM will produce any intracompany sublicenses or other transfers of rights relating to its own license rights in the Nitronex Patents, as well as the Membership Purchase Agreement, dated February 13, 2014, relating to MACOM's acquisition of Nitronex. MACOM also incorporates by reference its responses to Request Nos. 3, 5, 10, 100, and 101. Negotiations with Defendants are ongoing as to the timing of document productions.

REQUEST FOR PRODUCTION NO. 10

All documents concerning the 2010 IP Purchase Agreement, the 2010 License Agreement, the Common Interest Agreement, the 2004 License Agreement, and the Technology Transfer Agreement.

RESPONSE TO REQUEST FOR PRODUCTION NO. 10

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects to the Request as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request as compound. MACOM objects to the terms "concerning," "Common Interest Agreement," and "Technology Transfer Agreement" as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to the extent this Request seeks information in Defendants' possession. MACOM objects to the extent this Request seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects that this Request is not reasonably limited as to time and thus seeks to impose undue burden on MACOM. MACOM objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

34

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: MACOM will produce the 2010 IP Purchase Agreement, 2010 License Agreement, Common Interest Agreement, 2004 License Agreement, and Technology Transfer Agreement. Additionally, MACOM will produce responsive, non-privileged documents relating to the negotiation, execution, and performance of the 2010 IP Purchase Agreement, 2010 License Agreement, Common Interest Agreement, 2004 License Agreement, and Technology Transfer Agreement, to the extent they exist and can be located upon a reasonable search. MACOM also incorporates by reference its responses to RFP Nos. 3, 5, 9, 11, 12, 16, 37, 38, 100, and 101. Negotiations with Defendants are ongoing as to the timing of document productions.

REQUEST FOR PRODUCTION NO. 11

All documents (whether internal or external) concerning any analysis, negotiation, or communication by MACOM in forming, negotiating, drafting, or analyzing the 2010 License Agreement, the 2010 IP Purchase Agreement, the Common Interest Agreement, the 2004 License Agreement, and the Technology Transfer Agreement, including any analysis or discussion of language included, inserted, deleted, omitted, edited, in the 2010 License Agreement, the 2010 IP Purchase Agreement, and the Common Interest Agreement.

RESPONSE TO REQUEST FOR PRODUCTION NO. 11

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects to the Request as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request as compound. MACOM objects to the terms "internal," "external," "analysis," "negotiation," "communication," "forming," "negotiating," "drafting," "analyzing," "inserted," "omitted," and "edited" as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request on the grounds that it fails

to describe the information requested with reasonable particularity. MACOM objects to the extent this Request seeks information in Defendants' possession. MACOM objects to the extent this Request seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects that this Request is not reasonably limited as to time and thus seeks to impose undue burden on MACOM. MACOM objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: MACOM will produce the 2010 IP Purchase Agreement, 2010 License Agreement, Common Interest Agreement, 2004 License Agreement, and Technology Transfer Agreement. Additionally, MACOM will produce responsive, non-privileged documents relating to the negotiation, execution, and performance of the 2010 IP Purchase Agreement, 2010 License Agreement, Common Interest Agreement, 2004 License Agreement, and Technology Transfer Agreement, including any non-privileged analysis or discussion of language included, inserted, deleted, omitted, or edited in the 2010 License Agreement, the 2010 IP Purchase Agreement, and the Common Interest Agreement, to the extent such documents exist and can be located upon a reasonable search. MACOM also incorporates by reference its responses to RFP Nos. 10, 16, and 37. Negotiations with Defendants are ongoing as to the timing of document productions.

REQUEST FOR PRODUCTION NO. 12

All communications between Nitronex Corporation and International Rectifier concerning the 2010 License Agreement, the 2010 IP Purchase Agreement, the Common Interest Agreement, the 2004 License Agreement, and the Technology Transfer Agreement.

RESPONSE TO REQUEST FOR PRODUCTION NO. 12

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects to the Request as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request as compound. MACOM objects to the terms "communications," "concerning," and "Technology Transfer Agreement" as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to the extent this Request seeks information in Defendants' possession. MACOM objects to the extent this Request seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects that this Request is not reasonably limited as to time and thus seeks to impose undue burden on MACOM. MACOM objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: MACOM will produce responsive, non-privileged documents to the extent they exist and can be located upon a reasonable search. Negotiations with Defendants are ongoing as to the timing of document productions.

REQUEST FOR PRODUCTION NO. 16

All documents concerning any analysis, negotiation, or communication by Nitronex Corporation or its affiliated entities in forming, negotiating, drafting, or analyzing the 2004 License Agreement and the Technology Transfer Agreement, including any analysis or discussion of language included, inserted, deleted, omitted, edited, in the 2004 License Agreement and the Technology Transfer Agreement.

RESPONSE TO REQUEST FOR PRODUCTION NO. 16

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects to the Request as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to the terms "analysis," "negotiation," "communication," "affiliated entities," "forming," "negotiating," "drafting," "analyzing," "inserted," "deleted," "omitted," and "edited" as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to the extent this Request seeks information in Defendants' possession. MACOM objects to this Request on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to the extent this Request seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects that this Request is not reasonably limited as to time and thus seeks to impose undue burden on MACOM. MACOM objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: MACOM will produce responsive, non-privileged documents regarding the negotiation of the 2004 License Agreement and the Technology Transfer Agreement between IR and Nitronex, to the extent they exist and can be located upon a reasonable search. MACOM also incorporates by reference its responses to RFP Nos. 9, 10-12, 37, 100, and 101. Negotiations with Defendants are ongoing as to the timing of document productions.

REQUEST FOR PRODUCTION NO. 37

All documents concerning the 2010 License Agreement, the 2010 IP Purchase Agreement, and the Common Interest agreement during the period following Infineon AG's acquisition of International Rectifier in 2015, including letters concerning the April 1st, 2014 MACOM press release related to GaN-on-Si wafers.

38

1

<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 37</u>

2

3       MACOM incorporates the General Objections and
Objections to Definitions and Instructions set forth above.
4
MACOM objects to the Request as overly broad, unduly
5
burdensome, vague, ambiguous, and unintelligible.
6       MACOM objects to the terms "concerning," "April 1st,
2014 MACOM press release," and "related to" as overly
7
broad, unduly burdensome, vague, and ambiguous.
8       MACOM objects to this Request on the grounds that it fails
to describe the information requested with reasonable
9
particularity. MACOM objects to the extent this Request
10      seeks information in Defendants' possession. MACOM
objects to the extent this Request seeks information that is
11
not relevant to the subject matter of this action and/or is not
12      proportional to the needs of the case. MACOM objects that
this Request is not reasonably limited as to time and thus
13
seeks to impose undue burden on MACOM. MACOM
14      objects to this Request to the extent it seeks information
protected by the attorney-client privilege and/or attorney
15
work product doctrine and/or any other applicable privilege
16      or immunity.

17      Subject to and without waiving the foregoing general
and specific objections, MACOM responds as follows:
18
MACOM does not understand what "April 1, 2014" press
19      release is referenced in this Request, but assumes that
Infineon meant to reference a March 31, 2014 MACOM
20
press release. As best as MACOM can understand, given
21      both its language and its overlap with other similar
Requests, this specific Request must seek MACOM's
22
communications with Defendants regarding that March 31,
23      2014 press release. Based on that understanding, MACOM
will produce responsive, non-privileged documents, to the
24
extent they exist and can be located upon a reasonable
25      search. MACOM also incorporates by reference its
responses to RFP Nos. 3, 5, 9, 10, 100, and 101.
26
Negotiations with Defendants are ongoing as to the timing
27      of document productions.

28

39

<u>REQUEST FOR PRODUCTION NO. 38</u>[3]

All documents concerning MACOM's contracts, agreements, licenses, and technology transfers to third parties related to the "Purchased Patents" and intellectual property related to GaN-on-Si and GaN-on-SiC technology.

<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 38</u>

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects to the Request as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to the terms "concerning," "contracts," "agreements," "licenses," "technology transfers," "third parties," "related to," "Purchased Patents," "intellectual property," and "technology" as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to the extent this Request seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects that this Request is not reasonably limited as to time and thus seeks to impose undue burden on MACOM. MACOM objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: MACOM will produce responsive, non-privileged license agreements in its possession related to the Nitronex Patents, to the extent they exist and can be located upon a reasonable search. Negotiations with Defendants are ongoing as to the timing of document productions.

<u>REQUEST FOR PRODUCTION NO. 100</u>

---

[3] Defendants are moving to compel a response to RFP 38, which is discussed in full below. This RFP and Plaintiffs' response are reproduced here for convenience and are also reproduced below.

All communications concerning Nitronex's licensing of its intellectual property, including communications to International Rectifier and communications to third-parties regarding potential or consummated licenses of one or more of the Purchased Patents.

RESPONSE TO REQUEST FOR PRODUCTION NO. 100

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects to the Request as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to the terms "concerning," "licensing," "intellectual property," "communications," "third-parties," "potential," "consummated licenses," "one or more," and "Purchased Patents" as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to the extent this Request seeks information in Defendants' possession or that is publicly available. MACOM objects to the extent this Request seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects that this Request is not reasonably limited as to time and thus seeks to impose undue burden on MACOM. MACOM objects to this Request to the extent it seeks third-party confidential information that MACOM is not permitted to disclose under applicable protective orders and/or private agreements. MACOM objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: MACOM will produce responsive, non-privileged Nitronex communications with International Rectifier and other third parties relating to its licensing of the Nitronex Patents, to the extent they exist and can be located upon a reasonable search. MACOM also incorporates by reference its responses to Request Nos. 3, 5, 9, 10, 12, and 101.

Negotiations with Defendants are ongoing as to the timing of document productions.

REQUEST FOR PRODUCTION NO. 101

All documents concerning Nitronex's licensing of one or more of the Purchased Patents, including any offers to third-parties to license one or more of the Purchased Patents.

RESPONSE TO REQUEST FOR PRODUCTION NO. 101

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects to the Request as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to the terms "concerning," "licensing," "Purchased Patents," "offers," "third-parties," and "license" as overly broad, unduly burdensome, vague, ambiguous, and to the extent they call for legal conclusions. MACOM objects to this Request on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to the extent this Request seeks information in Defendants' possession or that is publicly available. MACOM objects to the extent this Request seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects that this Request is not reasonably limited as to time and thus seeks to impose undue burden on MACOM. MACOM objects to this Request to the extent it seeks third-party confidential information that MACOM is not permitted to disclose under applicable protective orders and/or private agreements. MACOM objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: MACOM will produce responsive, non-privileged licenses to the Nitronex Patents, to the extent they exist and can be located upon a reasonable search. MACOM also

incorporates by reference its responses to Request Nos. 3, 5, 9, 10, 12, and 100. Negotiations with Defendants are ongoing as to the timing of document productions.

INTERROGATORY NO. 4

For each of the Licensed Patents that you contend that Defendants practice or have practiced in the Exclusive Field as defined in the 2010 License Agreement, identify the date and circumstances of each time Plaintiffs, any Named Inventor, or any of Plaintiffs' agents or attorneys involved in the preparation and prosecution of any Asserted Patent discovered or otherwise obtained knowledge of any item of Prior Art, including without limitation an identification of the Person(s) with such knowledge, the extent of their knowledge, and when and how each such Person obtained such knowledge, and an identification of all Documents pertaining to such facts.

RESPONSE TO INTERROGATORY NO. 4

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects to the Interrogatory as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Interrogatory as premature. MACOM objects to the terms "involved in the preparation and prosecution of any Asserted Patent," "Asserted Patent," "identification," "such knowledge," "extent of their knowledge," and "when and how each such Person obtained such knowledge" as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Interrogatory on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to this Interrogatory to the extent it seeks information that is more available from Infineon's own files or from the inventors of the Nitronex Patents. MACOM objects to the extent this Interrogatory seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects to this Interrogatory to the extent it seeks information protected by the attorney-

client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows:

This Interrogatory is premature. Discovery is ongoing and Infineon has to date provided only limited information about its GaN-on-Si RF products (based on its own reading of the requirements of the Court's order dated March 17, 2017 and entered on March 21, 2017 (Dkt. 284)).

To the extent that this Interrogatory seeks information discernible from the United States or European public patent prosecution files for each Nitronex Patents, MACOM agrees to procure and produce those public records and refers Infineon to them pursuant to Federal Rule of Civil Procedure 33(d).

To the extent that this Interrogatory seeks information about the knowledge of inventors on the Nitronex Patents, many of whom are no longer Nitronex or MACOM employees, that information should be sought from the inventors themselves.

To the extent that this Interrogatory seeks information beyond what is found in the public patent file wrappers accessible to MACOM, MACOM additionally notes that Nitronex's patent prosecution files relating to the Nitronex Patents were transferred to International Rectifier's designated counsel (Farjami & Farjami) as part of the assignment of the Nitronex Patents to International Rectifier in 2010. Since 2010, International Rectifier (and now Infineon, as International Rectifier's successor) have prosecuted the Nitronex Patents using their choice of patent prosecution counsel. As such, the information sought by this Interrogatory is largely in Infineon's possession, custody, and control, not MACOM's. MACOM requests that Infineon produce all patent prosecution files for the Nitronex Patents.

Finally, MACOM notes that it maintains that any claim of invalidity by Infineon for the Nitronex Patents is

barred by the doctrine of assignee estoppel— rendering the subject matter of this Interrogatory irrelevant to any issue legitimately in dispute in this litigation and the burden of responding to this Interrogatory not proportional to Infineon's legitimate discovery needs for this case.

MACOM's investigation of the subject matter of this Interrogatory is ongoing. Pursuant to Federal Rule of Civil Procedure 26(e), MACOM reserves the right to supplement this Response as further information becomes available.

INTERROGATORY NO. 7

Separately for each claim of the Licensed Patents that you contend that Defendants practice or have practiced in the Exclusive Field as defined in the 2010 License Agreement, describe in detail on an element-by-element basis, all facts related to its conception and reduction to practice, including without limitation identifying the date of conception, the date of reduction to practice of its subject matter, all acts You contend represent diligence occurring between the dates of conception and reduction to practice, each Person involved in such conception, diligence and/or reduction to practice, where the invention was first reduced to practice, when, where, and to whom the invention was first disclosed, and each Person, including third parties, who worked on the development of the alleged invention(s) described and claimed in the Asserted Patents, each such Person's role and the dates and places each such Person assisted, supervised, or was otherwise so involved, and all Documents and Things evidencing or supporting these facts.

RESPONSE TO INTERROGATORY NO. 7

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects to the Interrogatory as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Interrogatory as compound. MACOM objects to this Interrogatory as premature. MACOM objects to the terms "Asserted Patents," "practice or have

practiced," "of its subject matter," "all acts You contend represent diligence," "each Person involved in such conception, diligence and/or reduction to practice," "to whom the invention was first disclosed," and "worked on the development of the alleged invention(s)" as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Interrogatory on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to this Interrogatory to the extent it seeks information that is more available from Infineon's own files or from the inventors of the Nitronex Patents. MACOM objects to the extent this Interrogatory calls for expert testimony. MACOM objects to the extent this Interrogatory seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows:

This Interrogatory is premature. Discovery is ongoing and Infineon has to date provided only limited information about its GaN-on-Si RF products (based on its own reading of the requirements of the Court's order dated March 17, 2017 and entered on March 21, 2017 (Dkt. 284)). In other words, Infineon has not provided the discovery requested by MACOM about its products (and "technologies") that would allow MACOM to fully identify the list of Nitronex Patents and claims that those products practice. Additionally, Infineon has not identified any Nitronex Patents that it asserts are invalid, much less identified the basis for any such claim of invalidity or the prior art and dates of such prior art upon which it relies. It has similarly not provided any invalidity claim charts for any Nitronex Patent. Absent all of that information, it is impossible for MACOM to respond to this Interrogatory at this time.

Nevertheless, to the extent that this Interrogatory seeks information discernible from the United States and European public patent prosecution files for each Nitronex Patents, MACOM agrees to procure and produce those public records and refers Infineon to them pursuant to Federal Rule of Civil Procedure 33(d).

To the extent that this Interrogatory seeks information about the knowledge of inventors on the Nitronex Patents, many of whom are no longer Nitronex or MACOM employees, that information should be sought from the inventors themselves.

To the extent that this Interrogatory seeks information beyond what is found in the public patent file wrappers accessible to MACOM, MACOM additionally notes that Nitronex's patent prosecution files relating to the Nitronex Patents were transferred to International Rectifier's designated counsel (Farjami & Farjami) as part of the assignment of the Nitronex Patents to International Rectifier in 2010. Since 2010, International Rectifier (and now Infineon, as International Rectifier's successor) have prosecuted the Nitronex Patents using their choice of patent prosecution counsel. As such, the information sought by this Interrogatory is largely in Infineon's possession, custody, and control, not MACOM's. MACOM requests that Infineon produce all patent prosecution files for the Nitronex Patents.

Finally, MACOM notes that it maintains that any claim of invalidity by Infineon for the Nitronex Patents is barred by the doctrine of assignee estoppel— rendering the subject matter of this Interrogatory irrelevant to any issue legitimately in dispute in this litigation and the burden of responding to this Interrogatory not proportional to Infineon's legitimate discovery needs for this case.

MACOM's investigation of the subject matter of this Interrogatory is ongoing. Pursuant to Federal Rule of Civil Procedure 26(e), MACOM reserves the right to supplement this Response as further information becomes available.

INTERROGATORY NO. 8

State whether any Person on behalf of Plaintiffs has requested or conducted an investigation or opinion of the validity or invalidity (including any Prior Art search), enforceability or unenforceability, scope of claims, infringement or noninfringement, of the Purchased Patents or Licensed Patents, and if the answer is anything other than an unqualified no, for each such investigation identify all facts relating to such investigation or opinion, including: each Person who requested the investigation or opinion and the date of the request; each Person who furnished any Document upon which the investigation or opinion was based in whole or in part, and an identification of each such Document; each Person who participated in the investigation or opinion, prepared or reported the results of the investigation or opinion and identify the date of any such report, whether draft or final; each Person who received, read or had access to a draft or final report of such investigation or opinion, or any conclusion set forth therein; and whether any decision was made or action taken by or on behalf of Plaintiffs in whole or in part as a result of such investigation or opinion, and describe in detail each such decision and action.

RESPONSE TO INTERROGATORY NO. 8[4]

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects to the Interrogatory as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Interrogatory as compound. MACOM objects to this Interrogatory as premature. MACOM objects to the terms "requested or conducted an investigation or opinion," "unqualified no," "participated in the investigation or opinion, prepared or reported the results of the investigation or opinion," "had access to," "conclusion set forth therein," and "whether any decision was made or action taken" as overly broad, unduly burdensome, vague,

[4] The only one of Plaintiffs' responses to the Prior Art RFPs to incorporate Plaintiffs' response to Interrogatory No. 8 is RFP 112.

and ambiguous. MACOM objects to this Interrogatory on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to the extent this Interrogatory calls for expert testimony. MACOM objects to the extent this Interrogatory seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects that this Interrogatory is not reasonably limited as to time and thus seeks to impose undue burden on MACOM. MACOM objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: MACOM is not aware of any non-privileged validity, invalidity, enforceability, unenforceability, scope of claims, infringement, or noninfringement opinions or investigations for the Nitronex Patents, other than the analyses provided to Infineon as part of the briefing or in pre-suit letters in connection with this case.

MACOM's investigation of the subject matter of this Interrogatory is ongoing. Pursuant to Federal Rule of Civil Procedure 26(e), MACOM reserves the right to supplement this Response as further information becomes available.

### 1.    Defendants' Argument

Rather than giving straightforward and simple answers to Defendants' requests, Plaintiffs "incorporate by reference" responses to requests for entirely different documents.  This improper tactic hides the ball and attempts to cloak Plaintiffs' refusal to produce relevant, responsive, and probative documents.  Plaintiffs must produce documents responsive to the Prior Art and Inventor RFPs, which are critical to a dispositive issue in this case.

### a)    Background

On October 2, 2017, Defendants served the Prior Art and Inventor RFPs.  On November 1, 2017, Plaintiffs served their responses.  On March 7, 2018, counsel for

49

Defendants sent a letter to counsel for Plaintiffs, identifying deficiencies in Plaintiffs' responses.  Defendants detailed how Plaintiffs' mere incorporation of responses to other requests did not actually respond to any of the Prior Art or Inventor RFPs. Defendants further pointed out that, to the extent these requests seek publicly available information, Plaintiffs nevertheless must produce documents within their possession, custody, or control.  Counsel for Plaintiffs responded with a letter on March 16, 2018, offering generally that incorporation by reference is a commonly accepted legal practice, without identifying portions of their incorporated responses that are relevant to these RFPs.  On March 26, 2018, the parties met and conferred regarding these RFPs in accordance with Local Rule 37.1 but could not resolve their dispute.

On May 9, 2018, counsel for Defendants sent another letter to counsel for Plaintiffs, recounting each Prior Art and Inventor RFP and each response that Plaintiffs incorporated into their responses to these requests, again demonstrating how the incorporated responses do not actually respond to the specific RFPs at issue.  On May 18, 2018, the parties again met and conferred regarding these RFPs but could not resolve their dispute.

### b) Plaintiffs' responses improperly incorporate by reference other responses without addressing the RFP at issue.[5]

A recurring issue in Plaintiffs' discovery responses is their use of incorporation by reference.  Plaintiffs' responses to the Prior Art RFPs demonstrate the problems with this practice.   In response to each of these nine RFPs, Plaintiffs simply incorporate by reference their responses to eight unrelated RFPs and two unrelated

---

[5] In the first Joint Stipulation Regarding Defendants' First Motion to Compel, Defendants pointed out numerous examples of similar responses in which Plaintiffs misused incorporation by reference.  The pervasiveness of this practice throughout Plaintiffs' responses necessitates raising this issue again in connection with the requests addressed in the instant motion because they suffer from the same deficiencies.

interrogatories.  This practice makes understanding Plaintiffs' responses needlessly difficult.  Further, Plaintiffs purport to respond to specific RFPs by pointing to unresponsive documents.  These are not appropriate responses.

After cutting through the boilerplate introductions to Plaintiffs' Prior Art responses, each response contains a mere one sentence incorporating by reference Plaintiffs' other responses.  Such responses are, "in essence, no response at all" under Rule 34(b).  *See Day v. Bos. Edison Co.*, 150 F.R.D. 16, 18 (D. Mass. 1993) (compelling response to an RFP after plaintiff answered "[s]ee answer to interrogatories 7, 8, 11, 12, 16, 18, and 19"); *Cotromano v. United Techs. Corp.*, 13-80929-CIV, 2015 WL 12862726, at *2 (S.D. Fla. Aug. 19, 2015) ("Directing a party to documents produced in its initial disclosure or in prior discovery requests, without more, is an insufficient response pursuant to Rule 34(b).").  These responses do not pass muster under the Federal Rules.

Just as important, these responses, even if permitted as a matter of form, are not responsive.  *Cf. MGP Ingredients, Inc. v. Mars, Inc*., CIVA06-2318-JWL-DJW, 2007 WL 3274800, at *5 (D. Kan. Nov. 6, 2007) ("Plaintiff's answer to First Interrogatory No[.] 1 simply is not responsive to subpart b of First Interrogatory No. 2").  Plaintiffs cannot respond to an RFP by merely pointing out that they have responded to other, different RFPs.  The Prior Art RFPs request information, communications, and documents relating to or constituting: prior art to the Licensed Patents and Related Patents or Applications (RFPs 108, 109, 127); development, use, or sales of GaN-on-Si or GaN-on-SiC products before the filing date of the Licensed Patents (RFP 111); items such as inventor notebooks and evaluations of validity or enforceability of the Patents (RFP 112); the work of the inventors of the Licensed Patents(RFP 115); public disclosures, uses, and modes contemplated by the inventors for carrying out each invention (RFPs 120, 121).  In short, the Prior Art RFPs request prior art to the patents at issue, which bears directly upon the validity of the patents.

Puzzlingly, the incorporated responses primarily relate to various agreements, such as licensing agreements, regarding the patents, and not to prior art at all.  In the incorporated response to RFPs 3 and 5, Plaintiffs agree to produce the 2010 IP Purchase Agreement that details the assignment of the Nitronex Patents from Nitronex to International Rectifier, any intracompany sublicenses or other transfers of rights relating to their own license rights in the Nitronex Patents.  In response to RFP 9, Plaintiffs add that they will produce the Membership Purchase Agreement, dated February 13, 2014, relating to MACOM's acquisition of Nitronex.  Similarly, in response to RFP 10, Plaintiffs agree to produce a series of IP purchase, license, and transfer agreements and documents related thereto  Plaintiffs' response to RFP 37 agrees to produce Plaintiffs' communications with Defendants regarding a press release, and their response to RFP 38 agrees to produce license agreements.  In response to RFPs 100 and 101, Plaintiffs agree to produce licenses to the Nitronex Patents and communications relating to licensing of them.  Finally, the responses to Interrogatories Nos. 4 and 7, which are the same, assert claims of assignee estoppel and offer only the prosecution files for the Nitronex Patents.

None of these incorporate responses reveal whether Plaintiffs intend to search for the documents regarding prior art sought in the disputed request.  Indeed, by definition, these other incorporated responses to *other RFPs* do not address the Prior Art RFPs at all.  These responses fail to even indicate whether Plaintiffs intend to produce or are refusing produce documents responsive to these requests (let alone what the grounds for such refusal might be).  Plaintiffs should be compelled to produce documents responsive to *these* requests.  Defendants ask that the Court require Plaintiffs to amend all their discovery responses to provide full, substantive responses without such incorporation by reference.

        **c)**    **Aside from their deficient form, Plaintiffs must produce documents responsive to the Prior Art and Inventor RFPs, which could be dispositive of this case.**

Whether the Nitronex Patents are valid is a potentially dispositive issue in this

case, making prior art discovery relating to the validity and enforceability of these patents not just relevant but critical to this lawsuit. Unless and until the invalidity issues are settled—whether on the merits or based on estoppel—Plaintiffs cannot ignore their discovery obligations on a dispositive issue.

Throughout their objections to the Prior Art and Inventor RFPs, Plaintiffs repeat that such information is "publicly available and/or equally accessible to Defendants." Not so. For example, RFP 116 requests "[a]ll documents regarding prior testimony of any of the inventors of the Licensed Patents *in the context of any adversarial proceeding in the United States or in any other country*." Plaintiffs' refusals to produce any documents because this RFP "calls for public information that is equally available to Defendants" disregard that the phrase "adversarial proceeding in the United States or in any other country" encompasses more than a docket sheet on PACER. Instead, this phrase captures confidential arbitrations and sealed court proceedings. Quite contrary to Plaintiffs' assertion, such information is *not* "equally accessible" to Defendants.

Further, Plaintiffs do not deny that they may have prior art documents responsive to these requests. As such, they must produce what they have, even if this information is publicly available. *Regal Elecs., Inc. v. Pulse Eng'g, Inc.*, 5:03CV1296JWRS, 2005 WL 3078983, at *3 (N.D. Cal. Nov. 16, 2005). In *Regal Elecs.*, despite the plaintiff's objection that such information was publicly available, the court compelled responses to requests for production of

> 1) all documents and things referring or relating to preparation and/or prosecution of any foreign patent application related to, or claiming priority from, a patent application that led to the [patent-in-suit] and 2) all prior art known to [plaintiff] relating to the subject matter disclosed or claimed in the [patent-in-suit] or any U.S. or foreign patents or patent applications corresponding in whole or in part to such patent, including, but not limited to, prior art cited or referred to during the preparation or prosecution of any such patents or patent applications.

*Id.* at *2.  The court rejected the plaintiff's irrelevance arguments as lacking any basis, emphasizing that the documents "may be relevant to the validity and enforceability" of the patent.  *Id.* at *3.  The same applies here—the prior art and inventor documents and communications sought by these RFPs are relevant to the Nitronex Patents' validity and enforceability.  It matters not that relevant documents may be publicly available; Plaintiffs must produce their responsive documents.

### 2.      Plaintiffs' Argument

Infineon attempts to lump together ten separate requests into one section, but fails to justify its need for the information sought by each request or why what MACOM has provided already is insufficient.  As has become its practice, it simply summarily states that MACOM's responses are deficient.  MACOM's responses comply with Rule 34.  Furthermore, the requests themselves focus on information in Infineon's possession.  It is not proportional to the needs of the case for Infineon to pursue the requests as phrased, given their overbreadth.

More importantly, however, Judge Snyder will shortly be hearing a motion (which she ordered MACOM to file as a motion for summary judgment) on whether Infineon is permitted to pursue estoppel arguments at all.  Until that issue is resolved, MACOM should not be required to provide discovery that may never be needed.  At a minimum, this portion of Infineon's motion should be held in abeyance while Judge Snyder resolves the estoppel issues.

### a.      MACOM's Responses Comply with Rule 34

Preliminarily, as discussed in detail in the first joint stipulation filed by Infineon on May 31, 2018 (Dkt. 512-1), MACOM's practice of incorporating prior RFP responses, which in turn state the specific searches MACOM would conduct, by reference is fully consistent with Rule 34 and is particularly appropriate here, where Infineon has served dozens of overlapping requests.  Rather than burden the Court with pages of argument on this issue again, MACOM refers the Court to the arguments previously made on this point—proving yet again that incorporation by

reference can be an efficient mechanism for handling duplicative and overlapping points.

### b.    This Discovery Is Not Properly Sought From MACOM

Turning to the merits, Infineon's arguments are completely untethered to the factual background and the unusual procedural posture of this case.  A short explanation is in order to make this point.

*Infineon* is the owner of the patents at issue in this case, and it promised MACOM when it gave MACOM an exclusive license to those patents that Infineon would not itself practice the patents in MACOM's exclusive field.  A few years later, when Infineon decided that it wanted to enter MACOM's exclusive field, Infineon then purported to terminate MACOM's license, leading to this suit.  Among other claims, MACOM asserts breach of contract against Infineon based on Infineon's activities in MACOM's exclusive field.  Dkt. 445 at ¶¶190-201.

To defend against MACOM's claims of breach, Infineon asserts that the patents—*i.e.*, the very same patents that Infineon owns (having bought them from MACOM's predecessor)—are invalid, such that it need not abide by its contractual promise to stay out of MACOM's exclusive field.  Dkt. 454-1 at ¶¶277.  In other words, it is Infineon, not MACOM, that claims that the patents are invalid, and thus bears the burden of searching for and producing prior art.  *Diodem, LLC v. Lumenis Inc.*, No. CV03-2142 GAF RCX, 2005 WL 6225364, at *1 (C.D. Cal. Sept. 15, 2005) (noting that "[b]ecause [a] patent is presumed valid, invalidity must be established by clear and convincing evidence"); *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009) (stating that "an alleged infringer who raises invalidity as an affirmative defense has the ultimate burden of persuasion to prove invalidity by clear and convincing evidence, as well as the initial burden of going forward with evidence to support its invalidity allegation")

Moreover, requests that seek all information about "prior art" are routinely struck down as overbroad.  *Orthopedic Equip. Co. v. United States*, No. 250-77, 1978

WL 21467, at *2 (Ct. Cl. Sept. 8, 1978) (stating that a defendant's request "to conduct an exhaustive prior art search of all documents, articles, or known devices in existence, in addition to all patents even remotely relevant to the patent in suit" placed an unjustifiable burden upon plaintiffs).  Parties are required to serve targeted requests directed to particular prior art references; other approaches do not withstand challenge.  *Orthopedic Equip. Co. v. United States*, No. 250-77, 1978 WL 21467, at *2 (Ct. Cl. Sept. 8, 1978) (stating that a defendant's request "to conduct an exhaustive prior art search of all documents, articles, or known devices in existence, in addition to all patents even remotely relevant to the patent in suit" placed an unjustifiable burden upon plaintiffs).  Infineon's demands for this information from MACOM violate these principles.  Although Infineon has the burden of proving patent invalidity, it has to date not identified a single prior art reference on which it bases its claims of invalidity and refuses to narrow its own prior art requests in a reasonable manner.

Further, it is Infineon, as the owner of the asserted patents, who now has all of the prosecution files, assignment materials, and other documents relevant to invalidity for the patents at issue.  Indeed, in 2010, Nitronex (MACOM's predecessor) turned over all of its files for the Nitronex Patents to International Rectifier (Infineon's predecessor).  Infineon thus has had possession and control over information related to the ownership (among other topics) of the patents-at-issue for the past eight years.  DKt. 449 at 1.  Infineon has also had exclusive possession and control of the prosecution of the patents, much of which has taken place outside the public eye.

Finally, and perhaps most importantly, if MACOM (or its predecessor) had possessed any material prior art at the time it prosecuted the Nitronex Patents, it would have had to disclose such information to the Patent Office at the time it prosecuted the patents.  All of those prosecution files were turned over to Infineon in 2010.  Therefore, in response to the present RFPs, MACOM has appropriately directed Infineon to all of the files and prior art in Infineon's control.  It puzzles MACOM as

to why Infineon would seek documents regarding prosecution of the patents at issue when it has controlled the prosecution of these patents since the 2010 transaction underlying this case. MACOM does not understand what else Infineon expects MACOM to provide for many of the requests.

### c. MACOM Has Agreed To Produce The Materials Relevant To Validity That It Can Reasonably Produce

Despite the problems discussed above with Infineon's invalidity requests, MACOM nevertheless made good faith efforts to produce documents that could reasonably be produced. For instance, MACOM has produced the public file wrappers accessible to it for all of the Nitronex Patents. Banzhoff Dec., ¶2. These materials span over 10,000 pages and are located in MACOM's production at MACOM-INF-018274-MACOM-INF-035314. Similarly, it has agreed to conduct a reasonable search for and produce all documents relating broadly to the Nitronex Patents. *See, e.g.*, Responses to RFP Nos. 38, 100, 101, above. And it has done so; Infineon has not lodged a single complaint that MACOM has not complied with this agreement. Moreover, MACOM agreed to conduct a reasonable search for and produce all documents relating to the IP Purchase Agreement, which was the agreement by which the Nitronex Patents were transferred to Infineon. *See* Responses to RFP Nos.5, 9, 10, 11, 12, 16, above. And it is has done so, producing—for instance—documents relating to the negotiation and execution of that agreement. These productions should more than satisfy any legitimate requests.

### d. Infineon Is Estopped From Pursuing Invalidity

Setting all of the above issues, however, there is a larger issue with Infineon's requests that means that the Court should ***not*** resolve this issue now: Infineon is estopped from pursuing arguments of patent invalidity. It is estopped both under the doctrine of assignee estoppel, which precludes an assignee of patents from arguing that they are invalid to escape having to provide the consideration for the assignment (here, the promise of exclusivity), and under the doctrine of judicial estoppel, because

1   the owner of the patents cannot take different positions with respect to validity before

2   a Court than it did before the Patent Office in obtaining the patents. *See, e.g.*, Dkt.

3   418 at 1-5.

4         Recognizing the importance of this issue, and wanting to avoid burden for the

5   parties, Judge Snyder ordered MACOM to file a motion for summary judgment on

6   estoppel, which she has set for a hearing in mid-July. Dkt. 496. Concerns about

7   efficiency and avoiding unnecessary discovery were top of mind for her in ordering

8   this briefing. *Id.* at 1 (finding that "judicial economy will be served by a determination

9   regarding the estoppel issues raised by the parties"). Judge Snyder even moved the

10  hearing on this estoppel issue a full month earlier than originally scheduled based on

11  the concerns about wasted discovery efforts. Ex. C.[6]

12        Infineon requested, and MACOM agreed, that Infineon could postpone its

13  responses to MACOM's invalidity discovery requests to Infineon pending resolution

14  of the estoppel issues. Ex. D. MACOM has no desire to impose unnecessary burden

15  on Infineon. MACOM therefore made this agreement even though Infineon controls

16  all of the information about its invalidity theories (which it has never provided) and

17  the overwhelming volume of documents that might relate to invalidity issues

18  generally. It is particularly unreasonable for Infineon to insist on proceeding with the

19  invalidity discovery against MACOM when MACOM has not insisted that this

20  discovery proceed for Infineon.[7]

21        For these reasons, MACOM therefore respectfully requests that the Court deny

22  Infineon's motion to compel or, in the alternative, hold this issue in abeyance until

23  _____

24  [6]  Judge Snyder has also moved the trial date back and order the parties to confer
25       regarding an extension of the remainder of the case schedule. Dkt. 510. Based
         on the initial discussions of the parties, it appears that there is likely to be
26       agreement that fact discovery will not close until the end of August.

27  [7]  When MACOM pointed this out, Infineon said that the invalidity discovery
         against MACOM must proceed because invalidity is relevant to other issues
28       besides Infineon's defense of invalidity. Ex. D. This makes no sense.

1  Judge Snyder resolves MACOM's estoppel motion.

2  **C.**   **Defendants' Interrogatory No. 11 and Request for Production No.**
3         **135**

4         Below are Defendants' Interrogatory No. 11, Defendants' RFP 135, and
5  Plaintiffs' responses.

6         INTERROGATORY NO. 11

7              Describe with particularity the corporate structure of
8         Plaintiffs and their activities, including without limitation
          an identification of: all MACOM and Nitronex corporate
9         entities, including those presently or formerly existing in
10        the past ten (10) years; the ownership of, organization
          structure of, and the executive and board members of each
11        such entity; the countries in which each such entity operates
12        or otherwise has a business presence; the U.S. judicial
          districts in which each such entity operates or otherwise has
13        a business presence; the business activities of each such
14        entity; the product(s) and service(s) made, used, sold,
          offered for sale, imported, developed, tested, serviced, or
15        supported by each such entity, and the role of each such
16        entity with respect to each such product.

17        RESPONSE TO INTERROGATORY NO. 11

18             MACOM incorporates the General Objections and
19        Objections to Definitions and Instructions set forth above.
          MACOM objects to the Interrogatory as overly broad,
20        unduly burdensome, vague, and ambiguous. MACOM
21        objects to this Interrogatory as compound. MACOM
          objects to the terms "particularity," "corporate structure,"
22        "activities," "corporate entities," "formerly existing,"
23        "ownership," "organization structure," "operates,"
          "business presence," "business activities," "product(s),"
24        "service(s)," "made," "used," Sold," offered for sale,"
25        "imported," "developed," "tested," "serviced,"
26        "supported," and "role" as overly broad, unduly
          burdensome, vague, and ambiguous. MACOM objects to
27        this Interrogatory on the grounds that it fails to describe the
28        information requested with reasonable particularity.

MACOM objects to the extent this Interrogatory seeks information that is publicly available. MACOM objects to the extent this Interrogatory seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects that this Interrogatory is not reasonably limited as to time and thus seeks to impose undue burden on MACOM. MACOM objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: In response to Request for Production Nos. 1, 2, 4, and 6, MACOM has agreed to produce, among other documents, responsive, non-privileged documents entity organizational charts sufficient to show the organization of MACOM and relevant affiliates from the time of its acquisition of Nitronex in 2014 to present, to the extent they exist and can be located upon a reasonable search. Pursuant to Federal Rule of Civil Procedure 33(d), MACOM refers Infineon to those materials.

MACOM's investigation of the subject matter of this Interrogatory is ongoing. Pursuant to Federal Rule of Civil Procedure 26(e), MACOM reserves the right to supplement this Response as further information becomes available.

SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11

Subject to and without waiving the foregoing general and specific objections, MACOM supplements its response as follows:

Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, MACOM also refers Infineon to the documents Bates-labeled MACOM-INF-088005, MACOM-INF-088006, MACOM-INF-088007, MACOM-INF-088008, MACOM-INF-088009, MACOM-INF-088010, MACOM-INF-088011, MACOM-INF-088012, MACOM-INF-

088013, MACOM-INF-088014, MACOM-INF-088015, MACOM-INF-088016, MACOM-INF-088017, MACOM-INF-088018, MACOM-INF-088019, MACOM-INF-088020, MACOM-INF-088021, MACOM-INF-088022, MACOM-INF-088023, MACOM-INF-088024, MACOM-INF-088025, and MACOM-INF-088026. MACOM further states that MACOM Technology Solutions Inc. is typically the MACOM entity that makes sales to end customers located in the United States and MACOM Technology Solutions International Ltd. is typically the MACOM entity that makes sales to end customers located outside the United States. MACOM does not make intra-company sales of its products.

MACOM's investigation of the subject matter of this Interrogatory is ongoing. Pursuant to Federal Rule of Civil Procedure 26(e), MACOM reserves the right to supplement this Response as further information becomes available.

REQUEST FOR PRODUCTION NO. 135

Documents sufficient to show the distribution or sales channels for the Covered Products, including documents sufficient to show the entire chain-of-title of the Covered Products from manufacture to sale to the end-user.

RESPONSE TO REQUEST FOR PRODUCTION NO. 135

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects to the Request as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects that this Request is duplicative of previous discovery requests served by Infineon. MACOM objects to the terms "distribution," "sales channels," "covered products," "entire chain-of-title," "manufacture," "sale," and "end-user" as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to the extent this Request seeks information that is not relevant to the subject matter of this action and/or is not proportional

61

to the needs of the case. MACOM objects that this Request is not reasonably limited as to time and thus seeks to impose undue burden on MACOM. MACOM objects to this Request to the extent it seeks third-party confidential information that MACOM is not permitted to disclose under applicable protective orders and/or private agreements. MACOM objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: MACOM will produce responsive, non-privileged documents sufficient to identify the customers who purchased MACOM's GaN-on-Si products from 2014 to present and MACOM's GaN-on-SiC products from 2011 to present, to the extent they exist and can be located upon a reasonable search. Negotiations with Defendants are ongoing as to the timing of document productions.

### 1.    Defendants' Argument

Interrogatory No. 11 and RFP 135 request information relating to Plaintiffs' business operations, such as their sales and distribution channels. Plaintiffs' refusal to respond to these requests leaves Defendants in the dark as to the details of how Plaintiffs manufacture, distribute, and sell their products. Without proper responses, Defendants cannot figure out where Plaintiffs' products travel from start to finish and how they get to each stop along the way. Supply chain is a crucial factor in base station customers willingness to work with a particular supplier. Thus, the full details of Plaintiffs' supply chain bears upon the reasons for their lack of success in the marketplace. Without this information, Defendants cannot fairly respond to Plaintiffs' damages and lost profits theories. Plaintiffs must explain their own business operations and should have little trouble doing so.

a)      **Background**

On August 2, 2017, Defendants served Interrogatory No. 11, and on May 2, 2018, Plaintiffs supplemented their response to this interrogatory.  On May 4, 2018, counsel for Defendants sent a letter to counsel for Plaintiffs, pointing out a lack of necessary and responsive details in Plaintiffs' supplemental response.  For example, Defendants noted Plaintiffs' failure to identify the business activities of MACOM Technology Solutions Holdings, Inc. and Nitronex, LLC, including *which* products and services the relevant entities make, use, sell, offer for sale, import, develop, test, service, or support.  On May 14 and 15, 2018, the parties met and conferred regarding this interrogatory in accordance with Local Rule 37.1 but could not resolve their dispute.

On October 2, 2017, Defendants served RFP 135, and on November 1, 2017, Plaintiffs responded.  On March 7, 2018, counsel for Defendants sent a letter to counsel for Plaintiffs, explaining that Plaintiffs' response failed to account for the full chain-of-title of the Covered Products from manufacture through sale.  Counsel for Plaintiffs responded with a letter on March 16, 2018, and the parties met and conferred in accordance with Local Rule 37.1 regarding this request on March 26, 2018. Plaintiffs agreed to examine this request further and determine whether they would produce relevant documents showing the identity of the MACOM entity that makes, transfers, and sells covered products, including distribution and sales channels.  On May 4, 2018, counsel for Plaintiffs explained to counsel for Defendants via email that Plaintiffs purported to answer this RFP in their response to Interrogatory No. 11, which states that "MACOM Technology Solutions Inc. is typically the MACOM entity that makes sales to end customers located in the United States and MACOM Technology Solutions International Ltd. is typically the MACOM entity that makes sales to end customers located outside the United States."  Because this interrogatory response did not provide the documents requested by RFP 135, however, the parties reached an impasse and were unable to resolve this request.

b)   **Plaintiffs must fully respond to Interrogatory No. 11 by describing their business operations and the tasks each entity performs with respect to each product or service.**

Plaintiffs have staked their case on their lost profits and allege that Defendants' wrongful conduct deprived them of future sales.  In order to understand what sales Plaintiffs allegedly lost and why, Defendants must understand how Plaintiffs' business operates.  Interrogatory No. 11 seeks such information.

Plaintiffs' supplemental response and the documents cited therein ignore perhaps the most critical portion of Interrogatory No. 11—what do Plaintiffs *do*?  The documents cited in the response are merely various iterations of a chart showing the parent/child relationships between various legal entities, but provide no information about what each of those entities actually do with respect to the products and business at issue.  *E.g.*, Ex. 10, MACOM-INF-088005, MACOM Technology Solutions. Worldwide Legal Structure.  Plaintiffs' narrative response identifies a U.S. *sales* entity and a foreign *sales* entity.  But Interrogatory No. 11 goes beyond sales. Specifically, Plaintiffs do not explain "the product(s) and service(s) made, used, sold, offered for sale, imported, developed, tested, serviced, or supported by each such entity, and the role of each such entity with respect to each such product."  Not only do Plaintiffs fail to identify the specific products and services for which each entity takes certain actions, but they omit "the role of each such entity with respect to each such product."  Does it develop, test, and manufacture?  Does it distribute, market and sell?  A simple answer should follow this simple question—what do Plaintiffs *do*?

Further, a full interrogatory response is proportional to the needs of this case. First, the burden of fully responding is low.  After all, this interrogatory only asks Plaintiffs *about themselves*, and Plaintiffs should be readily able to discuss their own business activities without much burden.  Second, an insight into Plaintiffs' business activities, including specifically which entities take which actions with respect to which products and services, is critical to Defendants' understanding of Plaintiffs' manufacturing and supply chain, cost structures, and consequently their lost profits

theory.  Defendants must know the business behind Plaintiffs' products.  Defendants must know who makes the products and their component parts, who markets them, who sells them, and every step in between.  Thus, Plaintiffs should be compelled to fully respond to Interrogatory No. 11.

   **c)  Plaintiffs do not adequately respond to Interrogatory No. 11 by merely stating which entities "typically" make sales.**

In part, Interrogatory No. 11 asks Plaintiffs to state "the product(s) and service(s) . . . sold [or] offered for sale . . . , and the role of each such entity with respect to each such product."  Plaintiffs respond that MACOM Technology Solutions Inc. "typically" sells to end customers in the U.S., while MACOM Technology Solutions International Ltd. "typically" sells to end customers outside the United States.

Plaintiffs' insertion of the qualifier "typically" renders their response useless. Defendants still do not have a full response on which MACOM entities sell to end users.  What do Plaintiffs mean by "typically"?  How often do these "typical" patterns hold true?   How often are there exceptions to Plaintiffs' "typical" practices? Plaintiffs' vague response lacks the detail necessary to give it any meaning.

If Plaintiffs mean that in *all* situations MACOM Technology Solutions Inc. sells to end customers in the U.S. and MACOM Technology Solutions International Ltd. sells to end customers outside the U.S., they should supplement their interrogatory response to say so.   Otherwise, they should supplement their interrogatory response to meaningfully describe their sales operations, including by identifying any other entities that make sales.  In either event, they must supplement their response.

   **d)  Plaintiffs must produce documents responsive to RFP 135, which goes beyond identifying the entity that makes a sale.**

In a similar vein, RFP 135 seeks information regarding the "distribution or sales channels for the Covered Products, including documents sufficient to show the entire

chain-of-title of the Covered Products from manufacture to sale to the end-user." Plaintiffs agree to produce only documents regarding "the customers who purchased MACOM's GaN-on-Si products from 2014 to present and MACOM's GaN-on-SiC products from 2011 to present."  Further, at the parties' meet and confers, Plaintiffs implied that their response to Interrogatory No. 11, which identifies entities that "typically" make sales in the U.S. and abroad, responds to this RFP by confirming that no intra-company sales occur.

Initially, Plaintiffs' misplaced response to Interrogatory No. 11 does not respond to RFP 135.  As described above, Plaintiffs qualify this response by saying that certain entities "typically" make certain sales.  With this qualifier, Plaintiffs' answer to Interrogatory No. 11 is meaningless—both on its own and with respect to RFP 135.

Even if such a vague interrogatory response were somehow responsive, it addresses only a narrow sliver of RFP 135—the final sale from a MACOM entity to an end user.  And Plaintiffs' response to RFP 135, which agrees to produce only documents to identify certain customers, glosses over the RFP's core—the distribution or sales *channels* and *the entire chain-of-title*.  RFP 135 asks how, and through what entities, products go from beginning of manufacture to end user, from wafer processing to device fabrication to final packaged product to sales channels to final customer.  Through their responses to Interrogatory No. 11 and RFP 135, Plaintiffs *might* explain the final step in that sequence.  But Plaintiffs do not explain or agree to produce anything else, such as documents relating to distribution and the full chain-of-title (from manufacture through final sale) of a Covered Product.

This full picture defines Plaintiffs' damages theory, and this Court has compelled production of documents identifying distribution channels.  *B-K Lighting, Inc. v. Vision3 Lighting*, CV062825MMMPLAX, 2007 WL 9627564, at *2 (C.D. Cal. Aug. 24, 2007) (Abrams, M.J.) (compelling identification of defendant's distribution channels for certain products after the court entered a protective order, mooting

defendant's argument that it need not produce because no protective order was in place).  Defendants must know, from start to finish, how and where Plaintiffs moved their Covered Products.  With this knowledge, Defendants can understand how their allegedly wrongful conduct impacted this movement and ultimately damaged Plaintiffs.  Defendants would be able to track and cross reference cost information with customer information and entity information.  Further, especially in light of this information's importance, producing it imposes no undue burden on Plaintiffs, who are the only entities in a position to disclose documents relating to their own internal procedures.  Thus, Plaintiffs should produce documents fully responsive to RFP 135.

### 2.    Plaintiffs' Argument

Infineon argues that it must have a narrative description of the "business operations" of a large public company.  Infineon initially says it cannot tell "which products" MACOM sells.  But this is not the case; MACOM has provided a specific spreadsheet to Infineon outlining every single product sale relevant to this case.

Infineon then argues that it must know "where Plaintiffs' products travel from start to finish and how they get to each stop along the way."  *See supra*, at Section (C)(1)(c).  But it is not clear what this relevant to.  This case is not about MACOM's distribution channels or which geographies that its products are shipped through.  *See generally* Dkt. 445.  It is about Infineon's breaches of its promise of worldwide exclusivity to MACOM.  *Id.*  Infineon seems to be fishing, but these requests are simply too vague for MACOM to even understand what Infineon hopes to accomplish.

Furthermore, requests for a cataloging of MACOM's "business activities," exactly as found in Interrogatory No. 11, are impermissibly overbroad.  *Mailhoit v. Home Depot U.S.A., Inc.*, CV1103892DOCSSX, 2012 WL 12884129, at *2 (C.D. Cal. Sept. 4, 2012); *Segan v. Dreyfus Corp.*, 613 F.2d 695, 696 (2d Cir. 1975) (interrogatories seeking defendants' "entire business history" constituted an impermissible "fishing expedition of large proportions").  It is not a "simple

question," as Infineon contends.  Rather, it of course is unduly burdensome to respond to requests for, as Infineon demands, something so vague as "tell us everything that MACOM does," which is exactly what Infineon requests.  *Alexander v. F.B.I.*, 186 F.R.D. 21, 40 (D.D.C. 1998) (holding that a party need not supplement its responses to a request that is "facially over broad" and would require the responding party to "speculate ... and scour all possible records to determine" the requested information). This exercise is particularly absurd in light of the fact that MACOM and Infineon are direct competitors.  Infineon understands what MACOM's business is.

MACOM can say this, however:  It has now produced more than 200,000 pages of documents that detail its "business activities" with respect to the relevant GaN products in dispute in the case.  That is its entire production, of course, but the breadth of a request for all business activities leaves MACOM little other option but to point to everything it has produced.

Additionally, in an attempt to satisfy Infineon, MACOM has pointed Infineon to the types of organizational charts that these requests may have been originally intended to elicit.  *See* MACOM's Supp. Response to Interrogatory No. 11, quoted above; Ex. 10.  MACOM has also produced communications with customers and potential customers for its GaN-on-Si business.

Similarly, in regards to RFP No. 135, MACOM has explained to Infineon which MACOM entities typically make sales to end customers both within and outside of the United States, although it is not clear why this matters or why anything more specific than a confirmation of the typical practice is needed, given that the revenues of MACOM's subsidiaries are all rolled up to the MACOM parent.  *See,* http://ir.macom.com/secfiling.cfm?filingID=1493594-17-55&CIK=1493594 MACOM Annual Report Form 10-K, November 15, 2017).

MACOM also confirmed that it does not make intra-company sales of its products, further rendering the requested information irrelevant.  *See* MACOM's Supp. Response to Interrogatory No. 11, quoted above.

MACOM has also produced documents that identify each and every customer who purchased MACOM's GaN-on-Si products from 2014 to the present and MACOM's GaN-on-SiC products from 2011 to present, as well as that customer's location and the MACOM plant from which the product was shipped.

MACOM does not understand what additional information Infineon wants regarding "chain of title," "distribution," or "sales channels," or even what issue in the case that could be relevant to.

MACOM has been more than accommodating of Infineon's requests.  It has done so even in the face of corporate shell games that ***Infineon*** has played in this case, denying that certain Infineon entities are bound by Infineon's agreements with MACOM or responsible for its breaches or for complying with the injunction against Infineon Americas.  In contrast to the positions taken by Infineon, MACOM does not deny that the MACOM entities that are parties to this suit will take responsibility for the actions of their worldwide affiliates for purposes of the issues in this litigation.

Accordingly, MACOM respectfully requests that the Court deny Infineon's motion to compel.

**D.** **Defendants' Interrogatory No. 12 and Request for Production No. 97**

Below are Defendants' Interrogatory No. 12, Defendants' RFP 97, and Plaintiffs' responses.

<u>INTERROGATORY NO. 12</u>

Describe with particularity all Communications You have had with any third party relating to this Action or to Defendants, including without limitation an identification of: the form of the Communication (e.g., telephone call, meeting, letter, e-mail, etc.); a summary of the substance of the Communication; the date and place of the Communication; a list identifying each Person who participated in or was present at, involved in, or connected with the Communication, including the company for which each Person served as a representative or agent; a list

identifying each Document that memorializes or refers to the Communication; and all statements made relating to this Action or to Defendants.

RESPONSE TO INTERROGATORY NO. 12

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects to the Interrogatory as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Interrogatory as compound. MACOM objects to the terms "particularity," "any third party," "relating to," "this Action," "form," "summary," "participated," "present," "involved in," "connected with," "memorializes," and "refers to" as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Interrogatory on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to the extent this Interrogatory seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects that this Interrogatory is not reasonably limited as to time and thus seeks to impose undue burden on MACOM.

MACOM objects to this Interrogatory to the extent it seeks third-party confidential information that MACOM is not permitted to disclose under applicable protective orders and/or private agreements. MACOM objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: In response to Request for Production Nos. 34, 73, 74, 96, 97, 98, and 99, MACOM has agreed to produce responsive, non-privileged documents that may have information responsive to this Interrogatory, to the extent they exist and can be located upon a reasonable search. Pursuant to Federal Rule of Civil Procedure 33(d), MACOM refers Infineon to those materials.

MACOM's investigation of the subject matter of this Interrogatory is ongoing. Pursuant to Federal Rule of Civil Procedure 26(e), MACOM reserves the right to supplement this Response as further information becomes available.

SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12

Subject to and without waiving the foregoing general and specific objections, MACOM supplements its response as follows:

Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, MACOM refers Infineon to the documents Bates-labeled    MACOM-INF-104785,    MACOM-INF-048858,, MACOM-INF-110128, MACOM-INF-075705, MACOM-INF-119743, MACOM-INF-189060, MACOM-INF-122189,    MACOM-INF-124891,    MACOM-INF-090646, MACOM-INF-090675, MACOM-INF-090735, MACOM-INF-090809, MACOM-INF-090845, MACOM-INF-090855,    MACOM-INF-090983,    MACOM-INF-090985, MACOM-INF-090987, MACOM-INF-090989, MACOM-INF-090991; MACOM-INF-090628; MACOM-INF-090629;    MACOM-INF-090646;    MACOM-INF-090647; MACOM-INF-090735; MACOM-INF-090736; MACOM-INF-090806; MACOM-INF-090809; MACOM-INF-090810;    MACOM-INF-090845;    MACOM-INF-090846; MACOM-INF-090855; MACOM-INF-090859; MACOM-INF-090983; MACOM-INF-090985; MACOM-INF-090987; and MACOM-INF-090989.

MACOM's investigation of the subject matter of this Interrogatory is ongoing. Pursuant to Federal Rule of Civil Procedure 26(e), MACOM reserves the right to supplement this Response as further information becomes available.

REQUEST FOR PRODUCTION NO. 97

All communications by MACOM to third parties regarding the present litigation and MACOM's basis for its rights under the Purchased patents, including communications to Nokia regarding MACOM's basis for its rights under the Purchased Patents.

71

<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 97</u>

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects to the Request as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to the terms "communications," "third parties," "regarding," "present litigation," "basis," "rights," and "Purchased Patents" as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to the extent this Request seeks information in Defendants' possession or that is publicly available. MACOM objects to the extent this Request seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects that this Request is not reasonably limited as to time and thus seeks to impose undue burden on MACOM. MACOM objects to this Request to the extent it seeks third-party confidential information that MACOM is not permitted to disclose under applicable protective orders and/or private agreements. MACOM objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: MACOM will produce responsive, non-privileged communications with GaN basestation customers regarding this litigation and/or the Nitronex Patents, to the extent they exist and can be located upon a reasonable search. Negotiations with Defendants are ongoing as to the timing of document productions.

**1.    Defendants' Argument**

    **a)    Background**

On August 2, 2017, Defendants served Interrogatory No. 12, and on May 2, 2018, Plaintiffs supplemented their response.  On May 4, 2018, counsel for

Defendants sent a letter to counsel for Plaintiffs, explaining that Plaintiffs' simple production of documents insufficiently responds to this interrogatory, which requests a description "all Communications," including more than just emails.  Defendants explained that Plaintiffs' production of emails and other documents would not account for communications such as phone calls.  On May 14 and 15, 2018, the parties met and conferred regarding this interrogatory in accordance with Local Rule 37.1 but could not resolve their dispute.

On August 2, 2017, Defendants served RFP 97, and on September 15, 2017, Plaintiffs responded.  On January 25, 2018, the parties met and conferred regarding this Request in accordance with Local Rule 37.1.  Because, however, Plaintiffs limited their response to "GaN basestation customers," to the exclusion of shareholders, the press, suppliers, competitors, and other third parties, the parties could not resolve their dispute.

**b)      Plaintiffs must identify and produce responsive third-party communications relating to this lawsuit, MACOM's rights under the Purchased patents, and Defendants.**

Interrogatory No. 12 asks Plaintiffs to identify and describe certain third-party communications, limited to those "relating to this Action or to Defendants."  This narrowly tailored request would reveal communications central to Plaintiffs' lost profits theory.  If, for example, a third-party customer told Plaintiffs that it was purchasing from Defendants rather than Plaintiffs, the details of this communication (such as that customer's reasons for making that decision) would show whether Plaintiffs have any claim for lost profits on the basis of that customer's choice.  RFP 135 requests similar communications.  Moreover, some of the documents identified by Plaintiffs establish that Plaintiffs and their trial counsel had detailed oral discussions with customers about this lawsuit.  *See* Ex. 11 ███████████████

███████████████████████████████████  Those discussions may

1   have influenced customers' sales and business decision.  As a result, Plaintiffs' lost

2   profits damages theory puts those customer discussions at issue.

3         In response to Interrogatory No. 12, Plaintiffs identify some, but not all,

4   communications.  And there are surely more still to be identified.  For example, some

5   of the documents identified by Plaintiffs refer to telephone discussion with customers

6   that appear to relate to Defendants and this lawsuit, but the documents do not provide

7   the requested information about those discussion.  F█████████████████████████

8   ████████████████████████████████████████████████████████████████████████

9   ████████████  but Plaintiffs have not provided the requested information about that

10  telephone call.  *See id*.  In other cases, Plaintiffs produced several email chains

11  indicating that discussions that began as emails ended with in-person or telephone

12  communications.  *See* Ex. 12, ██████████████████████████████████████████

13  ████████████████████████████  Interrogatory No. 12 is not limited to emails or call

14  logs; Plaintiffs must describe any such phone calls, in-person discussions, and other

15  communications.  *See United States v. Fleetwood Enters., Inc.*, 702 F. Supp. 1082,

16  1094 (D. Del. 1988) (ordering plaintiff to respond to an interrogatory by describing

17  written *and oral* communications with third parties concerning its litigation and other

18  proceedings involving defendant).

19        Admittedly, only a handful of the e-mails identified begin or end in oral

20  discussions.   But  this  scarcity  is  all  the  more  reason  for  producing  such

21  communications, as Plaintiffs' burden to submit a full response will likely be low.

22  After all, one would not expect that there would be a large number of communications

23  with third parties about Defendants and this lawsuit, as opposed to about Plaintiffs'

24  own business activities.  On the flip side, the relevance and importance of these

25  communications are high.  Plaintiffs allege that Defendants' wrongful conduct hurt

26  Plaintiffs'  position  in  the  marketplace.   What  was  that  position,  and  how  were

27  Plaintiffs broadcasting that position to third parties?  How did Plaintiffs explain to

28  third parties the harm allegedly caused by Defendants?  Did they downplay it to save

74

1  face?  Did they emphasize it to explain their circumstances?  And importantly, how
2  consistent was Plaintiffs' position throughout these communications?

3      In response to RFP 97, Plaintiffs agree to produce only certain customer
4  communications.  Again, this narrow production overlooks the importance of
5  Plaintiffs' theory of this case.  If Defendants' allegedly wrongful conduct harmed
6  Plaintiffs' position in the marketplace, Plaintiffs may have discussed that harm in the
7  context of this litigation with third parties.  If Plaintiffs discussed this lawsuit with
8  *potential* customers, who ultimately did not make purchases, Plaintiffs' agreement to
9  produce only customer communications would omit these critical communications.
10  Thus, these communications are relevant and important, and Plaintiffs must produce
11  documents responsive to RFP 97.

12          **2.**     **Plaintiffs' Argument**

13             a.    Interrogatory No. 12 Is Impermissibly Overbroad, And
                  Infineon Has Refused To Respond To The Exact Same
14                    Request From MACOM

15      In Interrogatory No. 12, Infineon asks MACOM to "[d]escribe with
16  particularity all Communications You have had with any third party relating to this
17  Action or to Defendants," with no temporal limit or a limitation to relevant third
18  parties, such as basestation customers.  This is not a "narrowly tailored request."

19      Nevertheless, MACOM produced (and then identified in its response to
20  Interrogatory No. 12 where possible) all written communications it was able to
21  identify that discuss Defendants or the litigation.  Some of these summarize or
22  reference oral communications, and thus are responsive under Rule 33(d).  Infineon
23  identifies many of these documents in its discussion above, demonstrating that
24  MACOM has provided this information to Infineon where it has it available.  But it
25  is unreasonable, as Infineon's motion requests, to ask MACOM to also describe *every*
26  *single phone call or conversation that has ever transpired with anyone* relating to
27  this case or mentioning Infineon.

28

Courts are rightly wary of such overly broad requests seeking unlimited communications. *See, e.g. Menuel v. Herz Corp.*, 2009 WL 10665026 at *9 (N.D. Ga. Dec. 9, 2009) (deeming 30(b)(6) deposition topics "overly broad 'catch-all' requests covering without limitation 'virtually every conversation, discussion, complaint, request, response, document, etc.");  *Wright v. Tenergy Christ Water, LLC*, 2008 WL 11377723 at *6 (D. Conn. April 14, 2008) (suggesting that interrogatory requesting "the date, time, place description, and witnesses to every conversation defendant ever had with an individual" where conversations were "regularly" held would constitute "an impermissibly overly broad interrogatory").

Infineon's motion is particularly hypocritical when its own response to similar discovery requested by MACOM is considered.  MACOM served an interrogatory on Infineon for "all communications, including but not limited to oral and written statements, representations, and marketing activities between Infineon and any of Nokia, Ericsson, ZTE, Huawei, or Samsung, related to actual or potential GaN-on- Si RF products or technologies, Infineon's intellectual property rights, and/or MACOM."  Ex. E.  This is obviously more narrowly tailored than Infineon's Interrogatory No. 12, as it identifies the exact third-party communications sought (the five basestation customers).

In response, Infineon identified only documents and did not provide descriptions of any oral communications.  *Id.*  Moreover, Infineon did ***not*** produce any communications between Infineon's ***counsel*** and basestation customers, although such communications have surely occurred over the course of the litigation relating to the litigation, indemnity negotiations, the injunction, and production of customer documents.  MACOM did not play games; it produced documents in this category, even when Infineon has not.  This makes its follow-up requests about communications about the preliminary injunction between MACOM and Ericsson particularly hypocritical.  Additionally, and notably, Judge Snyder found that Infineon ***violated*** the preliminary injunction by initially failing to notify customers of the injunction.

76

Dkt. 398 at 9 ("Infineon Americas failed to produce any other documents demonstrating that it provided notice of the injunction to other customers at any time."). It is ironic that Infineon is now attempting to fault MACOM for updating customers on these issues in the face of Infineon's failure to do so.

Indeed, when the parties conferred regarding Infineon's Interrogatory No. 12 to MACOM, MACOM asked whether Infineon would be willing agree to provide the same supplementation for Interrogatory No. 1 as it was requesting from MACOM on Interrogatory No. 12. Infineon refused. Ex. 6 at 3. That Infineon is unwilling to provide the same supplementation it requests from MACOM (on a more narrow request) is telling. MACOM believes that the present request with respect to Interrogatory No. 12 should be denied, but—to the extent it is not—Infineon should be ordered to provide the same discovery from MACOM that it moves MACOM to provide and which it has refused to provide itself.

### b. Request No. 97 Is Similarly Overbroad, And MACOM Has Already Provided A Reasonable Response

Request No. 97 poses a sweeping request for "all communications by MACOM to third parties regarding the present litigation and MACOM's basis for its rights under the Purchased patents." MACOM nevertheless *agreed* to produce documents in response to this request, although it reasonably limited its search to only the basestation customers that are the subject of the claims here.

Infineon complains above that MACOM has only agreed to produce "certain customer communications," arguing that it must understand what third-party customers have told MACOM. But MACOM *has* produced its communications with all basestation customers, and there is no dispute that these basestation customers are the *only* customers that matter in this case, where Infineon is attempting to invade its promise of exclusivity to MACOM for the basestation market. Infineon's argument is so divorced from the reality of what is at issue in the case, it almost seems it must have been drafted by someone with no knowledge of the case. Infineon's breaches of

77

1    MACOM's exclusivity have occurred in the basestation field, and MACOM's claim

2    for damages is based on lost sales to these basestation customers.

3        Infineon has not articulated why communications with any other third party

4    beyond basestation customers (such as a customer for another line of MACOM's

5    business–*e.g.*, military radars) could be relevant or proportional here, such that the

6    burden of conducting searches of many different custodians files could be justified,

7    where the issues in the case are focused on sales to and communications with

8    basestation customers alone.   Infineon, moreover, has not agreed to produce

9    communications with any customers outside of the basestation business (indeed, it

10   has not even produced its communications **with** basestation customers, as is the

11   subject of MACOM's concurrent motion to compel).

12       Because MACOM has produced all responsive documents relevant to Request

13   No. 97 related to basestation customers, MACOM respectfully requests that the Court

14   deny Infineon's motion to compel be denied for that RFP as well.

15   **E.    Defendants' Request for Production No. 190**

16       Below are Defendants' RFP 190 and Plaintiffs' response.

17   REQUEST FOR PRODUCTION NO. 190

18
19       All communications between Morgan Stanley,
     including its affiliates and agents, and MACOM regarding
20   any work performed by Morgan Stanley under the letter
     agreement dated March 16, 2015 related to the "Base
21   Station Business assets" of Infineon AG.

22   RESPONSE TO REQUEST FOR PRODUCTION NO. 190

23
24       MACOM incorporates the General Objections and
     Objections to Definitions and Instructions set forth above.
25   MACOM objects to the Request as overly broad, unduly
     burdensome, vague, and ambiguous. MACOM objects to
26   the terms "communications," "Morgan Stanley,"
     "affiliates," "agents," "work performed," "letter
27   agreement," "Base Station Business assets" and "Infineon
     AG" as overly broad, unduly burdensome, vague, and
28

ambiguous. MACOM objects to this Request on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to the extent this Request seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects to this Request to the extent it seeks third-party confidential information that MACOM is not permitted to disclose under applicable protective orders and/or private agreements or other confidentiality obligations. MACOM objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity. MACOM objects to the extent this Request seeks information that is already in Infineon's possession.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: As drafted, this Request is overbroad and disproportionate to the needs of the case, and seeks information that is already in Infineon's possession.

### 1.     Defendants' Argument

#### a)     Background

On February 6, 2018, Defendants served RFP 190, and on March 8, 2018, Plaintiffs responded.  On March 30, 2018, counsel for Defendants sent a letter to counsel for Plaintiffs, explaining that Plaintiffs' objections were misplaced.  On April 9, 2018, the parties met and conferred regarding this Request in accordance with Local Rule 37.1 but could not resolve their dispute.

#### b)     **Plaintiffs must produce responsive documents showing certain communications with Morgan Stanley, who helped Plaintiffs attempt to purchase certain of Defendants' assets.**

RFP 190 seeks certain communications between Plaintiffs and Morgan Stanley. By the March 16, 2015 letter agreement referenced in RFP 190, ██████████

██████████████████████████████████████████

██████████████████████████████████████████

1 ████████████████████████████████████████████████████████

2 ██████████

3         Plaintiffs respond to RFP 190 by offering nothing.  They object that the request

4 is overbroad and disproportionate to the needs of this case.  They add that Defendants

5 already have the information sought.

6         The communications sought by RFP 190 are relevant to this case.  Plaintiffs'

7 ████████████████████████████████████████████████████████

8 ███████████████████████████████████████████Plaintiffs have alleged that

9 Defendants' wrongful activities have inflated the value of Defendants' RF base station

10 business.  Thus, the value Plaintiffs themselves attributed to the business at a time

11 before such allegedly wrongful conduct began is highly relevant to Plaintiffs' unjust

12 enrichment claim.

13         Plaintiffs' objection that Defendants already possess the communications

14 sought by RFP 190 fails.  Plaintiffs do not explain how Defendants came to possess

15 these communications, nor do they identify specific, responsive communications that

16 they refuse to produce on this basis.  Such a response is insufficient because Plaintiffs

17 have an obligation to produce documents in their possession, custody, or control.  *See*

18 *Walt Disney Co. v. DeFabiis*, 168 F.R.D. 281, 284 (C.D. Cal. 1996) ("[D]efendant . . .

19 has not produced documents and has merely referred to documents he claims to be in

20 the possession of plaintiff.  Such responses are insufficient; defendant . . . is required

21 to produce documents he has in his possession, custody or control, *regardless of*

22 *whether he believes plaintiff already has those documents*" (emphasis added)).

23         Plaintiffs have no valid objections to RFP 190.  They must produce responsive

24 documents.

25             **2.     Plaintiffs' Argument**

26         This issue is moot.

27         In 2015, Infineon and MACOM very briefly discussed a business transaction

28 ████████████████████████████████████████████Infineon knows

80

1   this, because Infineon was a party to those discussions.  Infineon also knows that the

2   deal went nowhere. Other than a few preliminary discussions between high-level

3   MACOM and Infineon executives, nothing happened for this deal.

4          MACOM, meanwhile, had signed Morgan Stanley up to advise on the deal in

5   case it did proceed.  Although this fact is not particularly relevant, MACOM has not

6   tried to hide it.  Indeed, it produced the engagement letter and indemnity agreement

7   with Morgan Stanley in response to other overbroad requests from Infineon.  And it

8   is the engagement letter with Morgan Stanley that then inspired RFP No. 190.

9   MACOM also did not withhold any documents from its searches related to this issue,

10  and it in fact produced to Infineon internal communications referencing its hiring of

11  Morgan Stanley.  The fact is, since these discussions went nowhere (as Infineon is

12  aware), there is simply not much of anything for MACOM to produce on this topic.

13         Despite the very peripheral relevance of these issues to the case, Infineon issued

14  a subpoena to Morgan Stanley for the same materials that are sought by RFP No. 190.

15  Ex. G.  MACOM understands that Morgan Stanley searched for documents in

16  response to the subpoena, found nothing beyond the engagement letter, has so

17  informed Infineon, and that Infineon is not pursuing discovery from Morgan Stanley.

18         Nevertheless, Infineon makes this issue the subject of motion practice here,

19  burdening MACOM and the Court unnecessarily.  Rather than waste further time on

20  this issue, MACOM has now conducted a supplemental search for any additional

21  communications with Morgan Stanley and confirms that it has identified a single

22  additional communication (an exchange of a draft engagement letter) with Morgan

23  Stanley in addition to what was already produced, that it will also agree to produce.

24  It has nothing further to produce responsive to RFP No. 190.  This is hardly surprising,

25  given that—as Infineon well knows—the parties' March 2015 discussions about a

26  deal never progressed.

27         This issue is therefore moot and Infineon's motion should be denied.

28

## F.   Defendants' Request for Production No. 212

Below are Defendants' RFP 212 and Plaintiffs' response.

REQUEST FOR PRODUCTION NO. 212

All documents concerning any valuation of Nitronex, LLC before or during GaAs Labs' acquisition of Nitronex, LLC including any valuation of Nitronex, LLC's technology or intellectual property rights

RESPONSE TO REQUEST FOR PRODUCTION NO. 212

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects to the Request as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request to the extent it is duplicative of previous discovery requests served by Infineon. MACOM objects to the terms "concerning," "any valuation," "GaAs Labs' acquisition," "technology," and "intellectual property rights" as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to the extent this Request seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects that this Request is not reasonably limited as to time and thus seeks to impose undue burden on MACOM. MACOM objects to this Request to the extent it seeks third-party confidential information that MACOM is not permitted to disclose under applicable protective orders and/or private agreements. MACOM objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: This Request seeks information outside of MACOM's possession, custody, or control and that is overbroad and

disproportionate to the needs of the case. MACOM will not produce documents in response to this Request.

### 1.    Defendants' Argument

#### a)    Background

On March 30, 2018, Defendants served RFP 212, and on April 30, 2018, Plaintiffs responded. On May 4, 2018, counsel for Defendants sent a letter to counsel for Plaintiffs, explaining the high relevance of information sought in this request and reminding Plaintiffs of their obligation to produce documents within their possession, custody, or control. On May 14 and 15, 2018, the parties met and conferred regarding this Request in accordance with Local Rule 37.1 but could not resolve their dispute.

#### b)    Forcing Defendants to subpoena third-party GaAs Labs does not allow Plaintiffs to disregard their discovery obligations.

RFP 212 seeks documents regarding GaAs Labs' acquisition of Nitronex, LLC and any valuations of Nitronex's intellectual property. GaAs Labs acquired Nitronex and then later sold Nitronex to MACOM. Defendants have seen information indicating that GaAs Labs and MACOM at one time were commonly owned or controlled by the same person. And it appears that GaAs Labs remains affiliated with MACOM in some way. GaAs Labs's website shows MACOM's logo and describes it as part of GaAs Labs's "portfolio." *See* Ex. 1, GaAs Labs' Portfolio Webpage Printout.

Once again, the requested documents would contain critical valuation data, showing the worth of Nitronex's technology and their intellectual property rights at issue in this case

Plaintiffs refuse to produce documents in response to this request, objecting that it calls for documents outside their possession, custody, or control. Plaintiffs indicated during meet and confers that they have no corporate affiliation with GaAs Labs. This assertion is belied by GaAs Labs' website, however, where the "Portfolio" page lists "MACOM Technology Solutions Inc." as its sole affiliate. *Id*. On this

faulty reasoning, Plaintiffs claim that they need not produce any documents in response to RFP 212 and that instead, Defendants should subpoena GaAs Labs (which Defendants have done).

Even assuming that GaAs Labs' website means something other than exactly what it says, Plaintiffs still must produce responsive documents. Plaintiffs' objection ignores the rules of discovery, which permit Defendants to serve a request "to produce . . . items *in the responding party's possession, custody, or control*." FED. R. CIV. P. 34(a)(1) (emphasis added). By definition, RFP 212 cannot seek documents outside Plaintiffs' possession, custody, or control. *See Zamperla, Inc. v. I.E. Park SrL*, 613CV1807ORL37KRS, 2014 WL 12614505, at *4 (M.D. Fla. Nov. 3, 2014) ("Objections to producing documents not in [the producing party's] possession, custody or control . . . are unnecessary. Rule 34 requires production only of documents in a party's possession, custody or control.").

Further, RFP 212 does not request *GaAs Labs'* documents, which Defendants will receive in due course pursuant to a subpoena served on GaAs Labs. Instead, RFP 212 requests documents "*concerning* any valuation of Nitronex, LLC *before or during GaAs Labs' acquisition* of Nitronex, LLC . . ." This RFP seeks documents concerning valuations *of Nitronex*, not documents residing only in GaAs Labs' files. The reference to GaAs Labs identifies the relevant time period, not the sole entity responsible for handling these documents.

Regardless, Plaintiffs have an obligation to produce responsive documents in their possession, custody, or control. And this Court has rejected the proposition that Plaintiffs need not comply with this obligation because their responsive documents may overlap with a third party's to-be-produced documents. In *Prime Focus Creative Servs. Canada, Inc. v. Legend3D, Inc.*, the defendant sought communications between the plaintiff and SunTrust, a third party who acted as the administrative agent for lenders involved in transactions regarding one of the patents-in-suit. CV152340MWFPLAX, 2016 WL 6662724, at *1, 3 (C.D. Cal. July 8, 2016)

(Abrams, M.J.).  The plaintiff argued that the defendant's subpoena on SunTrust obviated the need for this request because SunTrust already produced these documents.  *Id*. at *3.  This Court, rejecting the plaintiff's argument, explained that the defendant's request was proportional to the needs of the case: "Defendant is entitled to see what plaintiff has in *its* possession, custody, or control, and need not rely on SunTrust to complete its production when plaintiff has access to the same information and has not shown that production is otherwise burdensome."  *Id*. (emphasis original).  Here, as in *Prime Focus*, production of a specific class of documents from a certain time period is not burdensome, and Plaintiffs' objection is misplaced.

Finally, the documents requested by RFP 212 are relevant.  Plaintiffs allege that Defendants' wrongful conduct caused lost profits and rely on projections of anticipated future revenue.  The profits allegedly lost by Plaintiffs depend on their ability to have earned these profits in the first place.  And at the center of Plaintiffs' potential profits is the value of the Nitronex Patents.  The valuation placed on Nitronex when it was acquired represents a snapshot of the market value of that technology and the projections of the future potential for the business at the time. Plaintiffs cannot deny the germaneness of these valuations to this action, and indeed, aside from a boilerplate objection, they do not raise a relevance objection.  Plaintiffs must produce documents responsive to RFP 212.

## 2.     Plaintiffs' Argument

Although MACOM has attempted to moot this nonsensical request several times, Infineon continues to revive it without reason.  By way of background, in 2012, GaAs Labs acquired Nitronex.  In 2014, MACOM acquired Nitronex from GaAs Labs.

Infineon's request broadly seeks ***GaAs Labs*** information from MACOM: "[a]ll documents concerning any valuation of Nitronex, LLC before or during ***GaAs Labs'***

1  *acquisition* of Nitronex, LLC including any valuation of Nitronex, LLC's technology

2  or intellectual property rights."

3      As MACOM has explained to Infineon, "GaAs Labs is a separate company

4  from MACOM, and is neither controlling, controlled by, nor under common control

5  with MACOM."  Ex. 6 at 2; Ex. F.  It therefore makes no sense to seek GaAs Labs

6  information  from  MACOM.    Infineon  vaguely  says,  "Defendants  have  seen

7  information indicating that GaAs Labs and MACOM at one time were commonly

8  owned or controlled by the same person," but does not state what this alleged

9  information is and provides no reason to suggest that any such information is current

10  today.  Indeed, all Infineon provides is a single page it claims to be from a GaAs Labs

11  website that discusses MACOM, but nowhere does that website say that MACOM is

12  owned or controlled by GaAs Labs.

13      Regardless, MACOM ***confirmed*** to Infineon that it has produced all relevant

14  documents found through searches.  In an email dated May 24, 2018, MACOM stated

15  the following:

16
17          To the extent that it has located any GaAs Labs documents in
            MACOM's possession during its prior searches for documents
18          responsive to Infineon's requests (including its requests relating
            to, *e.g.*, MACOM's acquisition of Nitronex assets from GaAs
19          Labs,  the  Nitronex  Patents,  and  the  2010  IR/Nitronex
20          Agreements), it has not withheld any such documents from its
            production on the basis of the fact that they are GaAs Labs
21          documents.  In other words, if a responsive GaAs Labs document
            happened to be in MACOM's possession and it was located
22          during earlier searches, it was produced.  There is therefore no
23          reason to now go back and repeat searches.

24  Ex. 6 at 2.

25      And, to the extent it is true that, as Infineon confusingly states above, "[t]he

26  reference to GaAs Labs identifies the relevant time period, not the sole entity

27  responsible for handling these documents," MACOM has also confirmed that it has

28  searched for and produced responsive documents, such as "documents related to

valuation of Nitronex" (Request No. 18) and "documents related to valuations of the Nitronex Patents in connection with MACOM's acquisition of Nitronex" (Request No. 19).  Ex. F.  Thus, it is unclear what more Infineon expects from this request.

MACOM has fully complied with this Request.  MACOM respectfully requests that the Court deny Infineon's motion to compel.

## G.    Defendants' Request for Production No. 38

Below are Defendants' RFP 38 and Plaintiffs' response.

REQUEST FOR PRODUCTION NO. 38

All documents concerning MACOM's contracts, agreements, licenses, and technology transfers to third parties related to the "Purchased Patents" and intellectual property related to GaN-on-Si and GaN-on-SiC technology.

RESPONSE TO REQUEST FOR PRODUCTION NO. 38

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects to the Request as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to the terms "concerning," "contracts," "agreements," "licenses," "technology transfers," "third parties," "related to," "Purchased Patents," "intellectual property," and "technology" as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to the extent this Request seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects that this Request is not reasonably limited as to time and thus seeks to impose undue burden on MACOM. MACOM objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows:

> MACOM will produce responsive, non-privileged license
> agreements in its possession related to the Nitronex Patents,
> to the extent they exist and can be located upon a reasonable
> search. Negotiations with Defendants are ongoing as to the
> timing of document productions.

### 1.  Defendants' Argument

RFP 38 seeks "[a]ll documents concerning MACOM's contracts, agreements, licenses, and technology transfers to third parties related to the 'Purchased Patents' and intellectual property related to GaN-on-Si and GaN-on-SiC technology."

Plaintiffs agree to produce "non-privileged license agreements in [their] possession related to the Nitronex Patents" in response to RFP 38.  In other words, with respect to the Nitronex Patents, Plaintiffs agreed to produce ***only licenses***—refusing to produce any other contracts, agreements, or technology transfers relating to the Nitronex Patents.  Furthermore, with respect to GaN-on-Si and GaN-on-SiC technology, Plaintiffs refuse to produce any of the requested documents (contracts, agreements, licenses, and technology transfers).  In this case, the parties dispute the value of both the Nitronex Patents and the GaN-on-Si and GaN-on-SiC technology covered by the patents.  The requested agreements are discoverable because they are likely relevant to the value of the patents and the technology covered by those patents.

### a)  Background

On August 2, 2017, Defendants served RFP 38 and on September 15, 2017, Plaintiffs responded.  On January 25, 2018, the parties met and conferred regarding this RFP in accordance with Local Rule 37.1, and Plaintiffs offered an arbitrarily limited response of "license agreements in [their] possession related to the Nitronex Patent."  Because Plaintiffs refused to produce other contracts, agreements, and technology transfers generally, and refused to produce *any* agreements (including licenses) relating to GaN-on-Si and GaN-on-SiC technology other than the Nitronex patents, the parties could not resolve their dispute.

88

      **b)**    **Documents responsive to RFP 38 relate to Plaintiffs' damages claim.**

Plaintiffs agree to produce "non-privileged license agreements in [their] possession related to the Nitronex Patents" in response to RFP 38.

With respect to the Nitronex Patents, Plaintiffs agreed to produce only licenses—refusing to produce any other contracts, agreements, or technology transfers relating to the Nitronex Patents. The parties dispute the value of the Nitronex Patents at issue. Just like licenses, these other types agreements are relevant to the value of these patents. For example, if Plaintiffs assigned rights under the patents to another party, that would be relevant to the value of the patents. If Plaintiffs agreed not to sue a third party, that would be equivalent to a license and be relevant to the value of the patent just like the licenses that Plaintiffs have agreed to produce. If Plaintiffs encumbered the patents in other ways, that would also be relevant to the patents' value.

Furthermore, with respect to GaN-on-Si and GaN-on-SiC technology, Plaintiffs refuse to produce ***any*** of the requested documents (contracts, agreements, licenses, and technology transfers). Again, the value of GaN-on-Si and GaN-on-SiC technology is a hotly disputed issue in this case, and the requested documents are highly relevant to the value of that technology. Furthermore, Plaintiffs' damages claim appears to rely on their argument that Plaintiffs—and Plaintiffs alone—can market and sell GaN-on-Si RF products to basestation customers. If Plaintiffs have any contracts, agreements, licenses, and technology transfers relating to Gan-on-Si technology, that would greatly undermine the basis of Plaintiff's damages claim. Furthermore, if Plaintiffs transferred GaN-on-Si technology to another party, such an agreement may constitute an implicit license to the Nitronex Patents, and thus, it would be relevant to the value of the Nitronex Patents, just like the licenses that Plaintiffs have agreed to produce.

## 2.   Plaintiffs' Argument

This issue is moot.   Request No. 38 seeks "[a]ll documents concerning MACOM's contracts, agreements, licenses, and technology transfers to third parties related to the 'Purchased Patents' and intellectual property related to GaN-on-Si and GaN-on-SiC technology."

Infineon complains that MACOM "only" agreed to produce licenses "relating to the Nitronex Patents."   This does not reflect an "arbitrary limitation" on MACOM's part, as Infineon contends.   Instead, it reflects the realities of the agreements between MACOM and Infineon that are in dispute in this case.   Under those agreements, MACOM has rights to sublicense the Nitronex Patents in certain fields.   It is the sublicenses that MACOM has given that are relevant to this case and which MACOM has agreed to produce.   MACOM has no other licenses or agreements relating to the Nitronex Patents of which it is aware beyond those that it has already produced.

But Infineon's RFP goes beyond the Nitronex Patents and also overbroadly seeks any agreements related to *any* MACOM GaN technology, even those unrelated to the disputes in this case.   The request is not tied to the agreements between MACOM and Infineon or even the Nitronex Patents that are relevant here.   To the extent that Infineon is seeking agreements on any subject (including subjects beyond patent licenses) that MACOM may have with any customer, business partner, or anyone else with respect to GaN technology and IP that has no connection with this case, this is inappropriate.   Nor has Infineon even attempted to justify the overbroad scope of such a request.

If Infineon's concern is whether MACOM has produced all agreements relating to the Nitronex Patents, it has no cause for concern; those have all been produced.   It is entitled to nothing more.   Moreover, to the extent that Infineon is seeking other documents relating to MACOM's agreements relating to the Nitronex Patents, MACOM has agreed to and has produced these documents as well.   For instance, as explained in MACOM's opposition to the motion to compel that Infineon filed on

May 31, 2018, Dkt. 513, MACOM has agreed to produce the following documents in excess of Infineon's Request No. 38, to the extent that they are in MACOM's possession and can be located upon a reasonable search:

- Documents relating to MACOM's strategic reasons for entering into a relationship with ST and communications with MACOM's customers regarding MACOM's relationship with ST.

- Documents sufficient to show ST's capacity to produce GaN-on-Si or GaN-on-SiC wafers.

- Documents sufficient to show ST's plans for supplying GaN-on-Si or GaN-on-SiC wafers to third parties.

- Documents sufficient to show ST's plans or strategy for developing markets outside wireless infrastructure.

- Documents sufficient to show the reasons for the decision as to when, where, and how to announce MACOM's collaboration with ST and for any decision to postpone or abstain from announcing MACOM's collaboration with ST.

Dkt. 513 at 60-61.

This is *in addition to* MACOM's prior agreement to produce non-privileged communications with ST relating to this lawsuit, the 2010 IP Purchase Agreement, 2010 License Agreement, the Licensed Patents, or Defendants. *Id.* at 61.

Similarly, MACOM agreed to produce its communications with IQE, regarding the litigation, Infineon, and the Nitronex Patents in response to RFP No. 174. Ex.14 at 3.

Thus, MACOM has more than adequately provided Infineon with relevant communications with its licensees. In any event, MACOM should not have to guess at what Infineon is seeking. MACOM has interpreted Infineon's requests to the best of its ability and is providing everything it can think of as being relevant, as described

above.   MACOM respectfully requests that the Court deny Infineon's motion to compel on this issue.

### H.   Defendants' Requests for Production Nos. 214 and 215

Below are Defendants' RFPs 214 and 215 and Plaintiffs' responses.

REQUEST FOR PRODUCTION NO. 214

All documents concerning the transfer of Epi manufacturing to IR, including communications involving John Bell, Charlie Shalvoy, Scott Kahler, Kin Tan, John Roberts and/or Pradeep Rajagopal.

RESPONSE TO REQUEST FOR PRODUCTION NO. 214

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects to the Request as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request to the extent it is duplicative of previous discovery requests served by Infineon. MACOM objects to the terms "concerning," "transfer," "Epi manufacturing," and "involving" as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to the extent this Request seeks information in Defendants' possession. MACOM objects to the extent this Request seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects that this Request is not reasonably limited as to time and thus seeks to impose undue burden on MACOM. MACOM objects to this Request to the extent it seeks third-party confidential information that MACOM is not permitted to disclose under applicable protective orders and/or private agreements. MACOM objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: As

drafted, this Request is overly broad, unduly burdensome, and disproportionate to the needs of the case. MACOM is willing to meet and confer with Defendants regarding this Request, provided that Defendants first narrow it to a reasonable scope.

REQUEST FOR PRODUCTION NO. 215

All communications involving John Bell, Charlie Shalvoy, Scott Kahler, Kin Tan, John Roberts and/or Pradeep Rajagopal concerning the Technology Transfer Agreement.

RESPONSE TO REQUEST FOR PRODUCTION NO. 215

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects to the Request as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request to the extent it is duplicative of previous discovery requests served by Infineon. MACOM objects to the terms involving," "concerning," and "the Technology Transfer Agreement" as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to the extent this Request seeks information in Defendants' possession. MACOM objects to the extent this Request seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects that this Request is not reasonably limited as to time and thus seeks to impose undue burden on MACOM. MACOM objects to this Request to the extent it seeks third-party confidential information that MACOM is not permitted to disclose under applicable protective orders and/or private agreements. MACOM objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: As

drafted, this Request is overly broad, unduly burdensome, and disproportionate to the needs of the case. MACOM is willing to meet and confer with Defendants regarding this Request, provided that Defendants first narrow it to a reasonable scope.

### 1.  Defendants' Argument

RFP 214 requests documents concerning the transfer of Epi manufacturing to IR, including communications involving six identified individuals.  Similarly, RFP 215 seeks communications regarding the Technology Transfer Agreement that involve these same six identified individuals.

Plaintiffs agree to produce nothing in response to RFPs 214 and 215.  These responses ignore the importance of these requests.  Plaintiffs contend that the Court should not imply a negative covenant against Nitronex into the license agreement because no technology was transferred from IR to MACOM.  These documents relate to Nitronex and IR's business relationship, which included trying to use IR's manufacturing capability to assist Nitronex with its technology.  Contrary to MACOM's argument that IR did not provide any technology to Nitronex, these documents may show that IR did, in fact, provide technology to Nitronex during the parties' business relationship.  Without any valid objections to these RFPs, Plaintiffs must produce responsive documents.

### a)  Background

On March 30, 2018, Defendants served RFPs 214 and 215, and on April 30, 2018, Plaintiffs responded.  On May 4, 2018, counsel for Defendants sent a letter to counsel for Plaintiffs, pointing to the relevance of these documents and the specific nature of these requests, which identify relevant individuals *by name*.  On May 14 and 15, 2018, the parties met and conferred regarding these RFPs in accordance with Local Rule 37.1 but could not resolve their dispute.

1

         **b)**      **Documents responsive to RFPs 214 and 215 will reveal "facts and circumstances" that may show whether Plaintiffs violated their negative implied covenant of good faith and fair dealing.**

One of the issues in dispute is whether Infineon Americas properly terminated the 2010 License Agreement in dispute.  In that License Agreement, Infineon Americas granted Nitronex an exclusive license to practice the Licensed Patents in a defined technical area called the "Field of Use."  The License Agreement states that Nitronex's license is "in the Field of Use *only*."  Infineon Americas contends that Plaintiffs sold products outside that Field of Use, justifying termination of the License Agreement.  In response, Plaintiffs contend that Nitronex did not promise to refrain from practicing the Licensed Patents outside the Field of Use.  Infineon Americas, however, contends that the Court should imply such a promise in the form of a implied negative covenant.  One of the fact issues relevant to an implied negative covenant is the parties' relationship, including whether any trade secrets or other technology was transferred between the parties.

The requested documents relate to Nitronex and IR's business relationship, which included trying to use IR's manufacturing capability to assist Nitronex with its technology.  Plaintiffs contend that IR did not provide any technology to Nitronex. The requested documents relate to the parties' business relationship, and Defendants believe that these documents will show that IR did, in fact, provide technology to Nitronex during that business relationship.  By seeking communications and documents involving the identified agreements, these RFPs would uncover documents relating to the parties' performance under the relevant agreements. Specifically, because RFPs 214 and 215 seek documents and communications relating to certain identified transfers of technology and manufacturing responsibilities, responsive documents will likely show whether IR provided any technology or know-how to Nitronex. If there was any such technology transfer, these facts would support

95

implying a negative covenant in the parties' License Agreement, prohibiting Nitroenx from practicing outside the field of use.

To ease the burden of searching for such documents, Defendants have identified the specific individuals likely to have the responsive documents and communications.

In the past, Plaintiffs have wrongly contended that the issues of termination and a negative implied covenant have been finally decided.  That is not true.  In its opinion on the Court's preliminary injunction, the Federal Circuit stated, "Other facts and circumstances may give rise to an implied covenant not to practice outside a licensed field of use."  Ex. 13, January 29, 2018 Federal Circuit Opinion, Dkt. 419, at 8–9.  The Federal Circuit invited the parties to develop the "facts and circumstances" necessary to determining whether Plaintiffs were under an implied negative covenant prohibiting them from practicing outside the field of use and whether they violated that implied covenant.  RFPs 214 and 215 take the Federal Circuit up on its invitation by seeking information relevant to an implied negative covenant.

Plaintiffs' sole, non-boilerplate objection in response to these RFPs is that RFPs 214 and 215 are overbroad, without an explanation of how or why.  RFPs 214 and 215 identify specific custodians *by name* and seek only documents and communications involving these employees as they relate to specific projects, transfers, and agreements, which the RFPs also identify by name.  For these reasons, Plaintiffs must produce documents responsive to RFPs 214 and 215.

### 2.    Plaintiff's Argument

This requested discovery cannot be justified and is disproportionate to the needs of the case.  This Court has squarely rejected Infineon's argument that the License Agreement contains an implied negative covenant.  *See* Dkt. 140 at 41.  Infineon chose not to appeal that issue, so the Federal Circuit did not consider it.  Infineon's suggestion that the Federal Circuit indicated that it could pursue this theory is therefore highly misleading.  The Federal Circuit, specifically stated that that under

"*[o]ther* facts and circumstances," there could be an implied negative covenant.  Ex. 13 at 8-9 (emphasis added).  But it did *not* suggest that any such facts or circumstances were present here.  Nor are they.

To the extent that there could be an implied negative covenant in Infineon's license to MACOM, it would have to arise because *Infineon* transferred technology to *MACOM*.  But the Court expressly determined that "the 2004 technology transfer agreement provides for a transfer of technology *from Nitronex* **[MACOM]** to [Infineon]."  *Id.*; *see also* Dkt. 126-1.  Even Infineon's own documents emphatically and unequivocally confirm that the direction of the transfer was only from Nitronex to IR, and never the other way around.  *See* Ex. B ("To re-iterate NO process info is to be communicated to Nitronix [sic]. No nucleation or bake info! They can suggest, IR should listen but not communicate!!").  Infineon cites no evidence to the contrary, just wild speculation that these documents "may" show something that contradicts the Court's previous findings and Infineon's own unequivocal statements.  This is unreasonable.  Against this backdrop, it is clear that Infineon is merely attempting to impose unnecessary burden on MACOM.

And the nature of the requests at issue are particularly burdensome (unjustifiably so) on their face.  Request Nos. 214 and 215 seek "all documents" and "all communication" from *six separate custodians*.  That is disproportionate to any reasonable suggestion as to the importance of the information sought to the case.  Infineon does not even include any temporal limitations on these requests.

Moreover, MACOM has *agreed* to provide Infineon with responsive documents regarding the performance of the agreements between MACOM and Infineon that would capture technical transfers from Nitronex to International Rectifier, if any such transfers had occurred.  For instance, MACOM has already agreed to (and now has) conducted reasonable searches for a vast amount of information related to the transfer of epi manufacturing of IR and the technology transfer agreement, including, among other categories of documents:

97

- Documents relating to the negotiation of the 2010 IP Purchase Agreement, 2010 License Agreement, Common Interest Agreement, 2004 License Agreement, and Technology Transfer Agreement" (*see* MACOM's Responses to Request Nos. 10, 11);

- Documents relating to the execution of the 2010 IP Purchase Agreement, 2010 License Agreement, Common Interest Agreement, 2004 License Agreement, and Technology Transfer Agreement" (*see* MACOM's Responses to Request Nos. 10, 11);

- Documents relating to the performance of the 2010 IP Purchase Agreement, 2010 License Agreement, Common Interest Agreement, 2004 License Agreement, and Technology Transfer Agreement" (*see* MACOM's Responses to Request Nos. 10, 11);

- Documents regarding the negotiation of the 2004 License Agreement and Technology Transfer Agreement between IR and Nitronex" (see MACOM's Response to Request No. 16); and

- Communications between Nitronex Corporation and International Rectifier concerning the 2010 License Agreement, the 2010 IP Purchase Agreement, the Common Interested Agreement, the 2004 License Agreement, and the Technology Transfer Agreement" (see MACOM's Response to Request No. 12).

When conferring with Infineon on RFPs 214 and 215, MACOM asked Infineon what information it believes it needs beyond the above categories. Infineon was unable to articulate anything specific, and it does not do so in this motion to compel either. *See* Ex. 6 at 2. Again, Infineon's rigid insistence on only full agreement to its overbroad requests, without any justification, seems only intended to create undue burden on MACOM and has no basis in legitimate needs in the case.

Under these circumstances, it would be disproportionately burdensome to

require a search of multiple additional custodians.  For these reasons, MACOM respectfully requests that the Court deny this portion of Infineon's motion.

## I.   Defendants' Interrogatory No. 17

Below are Defendants' Interrogatory No. 17 and Plaintiffs' response and supplemental response.

### INTERROGATORY NO. 17

Separately for each of your GaN-Si Products and GaN-SiC products, identify (1) the senior managers and project or team leaders responsible for the design and development of the product; (2) the three persons most knowledgeable about the design, development, structure, functionality, or operation of the product; (3) the senior managers and project or team leaders responsible for the marketing of the product; (4) the three persons most knowledgeable about the marketing of the product; (5) the senior managers and project or team leaders responsible for the sales of the product; and (6) the three persons most knowledgeable about the sales of the product. For each person you identify, provide the person's name, title, a description of his/her involvement and responsibilities with respect to the GaN-Si Products and/or GaN-SiC Products, and the dates during which he/she worked on or was responsible for each such product. If the responsibilities for marketing or sales are divided by geography, customer, or other basis, then the identification of senior managers and project or team leaders should include at least the persons responsible for each portion of the sales and marketing (e.g., those persons responsible for each country, continent, or other geographic division, or the persons responsible for each customer), and describe each person's responsibility and the basis for the division of responsibility.

### RESPONSE TO INTERROGATORY NO. 17

MACOM incorporates the General Objections and Objections to Definitions and Instructions set forth above. MACOM objects to the Interrogatory as overly broad, unduly burdensome, vague, and ambiguous. MACOM

objects to this Interrogatory as compound. MACOM objects to this Interrogatory as premature. MACOM objects to the terms "identify," "products," "senior managers," "project or team leaders," "responsible," "design," "development," "structure," "functionality," "operation," "marketing," "sales," "most knowledgeable," "involvement," "portion," "basis," and "division of responsibility" as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Interrogatory on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to the extent this Interrogatory seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects that this Interrogatory is not reasonably limited as to time and thus seeks to impose undue burden on MACOM. MACOM objects to this Interrogatory to the extent it seeks third-party confidential information that MACOM is not permitted to disclose under applicable protective orders and/or private agreements. MACOM objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: To the extent this Interrogatory requests that MACOM provide information regarding MACOM's GaN-on-Si products, it is premature because discovery regarding those products has been stayed. *See* Order dated August 7, 2017 (Dkt. 366). Nevertheless, in response to Request for Production No. 1, 2, 4, and 6, MACOM has agreed to produce, among other documents, responsive, non-privileged organizational charts that identify MACOM employees involved with the design, development, and marketing of MACOM's

GaN-on-Si products from the time of the Nitronex acquisition in 2014 to present, to the extent they exist and can be located upon a reasonable search. Pursuant to Federal Rule of Civil Procedure 33(d), MACOM refers Infineon to those materials.

MACOM's historical sales of its GaN-on-SiC products were *de minimis*, meaning that the potential damages from those sales do not justify the cost of litigating Infineon's present infringement claims against those historical (and now discontinued) products. Therefore, for purposes of this litigation, MACOM does not intend to contest that its discontinued GaN-on-SiC products practice the five patents asserted by Infineon (U.S. Patent Nos. 7,569,871, 7,135,720, 7,352,016, 7,995,540, and 7,071,498). This Interrogatory is therefore moot to the extent it seeks information related to GaN-on-SiC, and MACOM will not respond to that portion of it.

MACOM's investigation of the subject matter of this Interrogatory is ongoing. Pursuant to Federal Rule of Civil Procedure 26(e), MACOM reserves the right to supplement this Response as further information becomes available.

SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 17

Subject to and without waiving the foregoing general and specific objections, MACOM supplements its response as follows:

With respect to MACOM's GaN-on-SiC products, MACOM filed a notice with the Court on October 16, 2017, stating that "MACOM will not contest, for the purposes of this litigation, that the GaN-on-SiC RF products listed in Exhibit A practice the Asserted Patents." (ECF No. 406, at ¶4.) This concession fully resolves the technical issues relating to Infineon's First Counterclaim and also fully moots the portion of this Interrogatory directed to GaN-on-SiC.

MACOM's investigation of the subject matter of this Interrogatory is ongoing. Pursuant to Federal Rule of Civil Procedure 26(e), MACOM reserves the right to supplement this Response as further information becomes available.

## 1.        Defendants' Argument

### a)        Background

On August 2, 2017, Defendants served Interrogatory No. 17, which asks Plaintiffs to identify specific personnel for their GaN-on-Si products.  On November 29, 2017, Plaintiffs supplemented their response to this interrogatory but still failed to answer the interrogatory.  Although Plaintiffs cite to Rule 33(d), they fail to identify any documents that respond to this interrogatory.  On January 25, 2018, the parties met and conferred regarding this interrogatory in accordance with Local Rule 37.1 but could not resolve their dispute.

### b)        Plaintiffs fail to answer Interrogatory No. 17.

Interrogatory No. 17 is simple.  It simply asks Plaintiffs to identify the following individuals for their GaN-on-Si and GaN-on-SiC products:

> (1) the senior managers and project or team leaders responsible for the design and development of the product;

> (2) the three persons most knowledgeable about the design, development, structure, functionality, or operation of the product;

> (3) the senior managers and project or team leaders responsible for the marketing of the product;

> (4) the three persons most knowledgeable about the marketing of the product;

> (5) the senior managers and project or team leaders responsible for the sales of the product; and

> (6) the three persons most knowledgeable about the sales of the product.

Plaintiffs have not provided any substantive response.  Although Plaintiffs invoke Rule 33(d), Plaintiffs fail to identify any specific documents as required under that rule.  Plaintiffs' answer is plainly insufficient.

Plaintiffs contend that the interrogatory is premature because Infineon America's infringement claim against Plaintiffs' GaN-on-Si products is stayed.

While that infringement claim is stayed, Defendants are still entitled to discovery regarding Plaintiffs' GaN-on-Si products because those products are also relevant to claims that are not stayed.  In particular, Plaintiffs are seeking lost profile damages in the form their lost sales of *their GaN-on-Si products*.  Thus, those products— including their marketing and sales—are highly relevant to the claims at issue.

Plaintiffs' response states that Plaintiffs will produce organizational charts, but it fails to specifically identify those organizational charts as required under Rule 33(d), which states that the responding party must "specify[] the records that must be reviewed."  Moreover, even if Plaintiffs identified organization charts, those charts would not likely provide the responsive information.  An organizational chart may include tens, if not hundreds, of names.  Such a chart would not tell Defendants which *three* persons are most knowledgeable about the marketing of Plaintiffs' GaN-on-Si products or which *three* persons are most knowledgeable about the sales of Plaintiffs' GaN-on-Si products.  This identification of three person is deliberation so as to assist Defendants in determining who, in particular, to depose during discovery.  By refusing to identify these individuals, Plaintiffs are trying to impede Defendants' ability to select the correct individuals to depose in this case.

For these reasons, Plaintiffs should be compelled to fully respond to Interrogatory No. 17 by identifying the senior managers and project or team leaders and the three persons most knowledgeable about the items identified in the interrogatory.

### 2. Plaintiffs' Argument

Initially, this interrogatory is entirely moot as it relates to information for MACOM's personnel involved with GaN-on-SiC products.  The Court recently stayed Infineon's GaN-on-SiC infringement claim at Infineon's request, so it is unclear why Infineon served a motion to compel on this issue.  Dkt. 509.

In regards to MACOM's GaN-on-Si products, this interrogatory is flagrantly compound.  Infineon has the audacity to describe the interrogatory as "simple," before

1   then immediately listing out *six* different areas of request.

2   Nonetheless, MACOM has provided Infineon organizational charts that

3   identify the MACOM personnel involved in each of the various aspects of its GaN-

4   on-Si business in response to Requests for Production Nos. 1, 2, 4, and 6.   This is

5   more than sufficient to satisfy this interrogatory.  *See U.S. ex rel. Fry v. Guidant*

6   *Corp.*, No. 3:03-0842, 2009 WL 3181315, at *2 (M.D. Tenn. Sept. 29, 2009) (denying

7   motion to compel where party cited organizational charts in response to

8   interrogatories about various employees and noted the parties also had the opportunity

9   for 30(b)(6) depositions on this topic).

10   As indicated by the lack of citation above, Infineon never told MACOM during

11   the parties' meet-and-confer that supplementation to formally cite these

12   organizational charts in response to Interrogatory No. 17 was part of the relief it would

13   seek.  Rather, it generally indicated that it did not think these organizational charts

14   were sufficient.  Banzhoff Dec. ¶3.  Now that it appears that part of the relief Infineon

15   seeks now is such supplementation, however, MACOM will amend its response to

16   Interrogatory No. 17 to cite to the relevant documents already produced in this case.

17   MACOM respectfully requests that the Court otherwise deny Infineon's motion to

18   compel on this issue.

19   **J.     Defendants' Request for Production No. 204**

20   Below are Defendants' RFP 204 and Plaintiffs' response.

21   REQUEST FOR PRODUCTION NO. 204

22   All communications with ST relating to GaN-on-Si

23   or GaN-on-SiC technology, this lawsuit, the 2010 IP
     Purchase Agreement, 2010 License Agreement, the

24   Licensed Patents, or Defendants.

25   RESPONSE TO REQUEST NO. 204

26   MACOM incorporates the General Objections and
     Objections to Definitions and Instructions set forth above.

27   MACOM objects to the Request as overly broad, unduly
     burdensome, vague, and ambiguous. MACOM objects to

28

104

this Request to the extent it is duplicative of previous discovery requests served by Infineon. MACOM objects to the terms "communications," "relating to," and "Licensed Patents" as overly broad, unduly burdensome, vague, and ambiguous. MACOM objects to this Request on the grounds that it fails to describe the information requested with reasonable particularity. MACOM objects to the extent this Request seeks information that is not relevant to the subject matter of this action and/or is not proportional to the needs of the case. MACOM objects that this Request is not reasonably limited as to time and thus seeks to impose undue burden on MACOM. MACOM objects to this Request to the extent it seeks third-party confidential information that MACOM is not permitted to disclose under applicable protective orders and/or private agreements. MACOM objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, MACOM responds as follows: MACOM will produce responsive, non-privileged agreements with ST Microelectronics related to the Nitronex Patents, to the extent they exist and can be located upon a reasonable search. MACOM anticipates substantially completing its document production by March 30, 2018.

## 1.   Defendants' Argument

Plaintiffs' mischaracterization of the facts and the parties' communications has forced Defendants to seek court intervention on a compromise that Plaintiffs offered, Defendants accepted, and then Plaintiffs apparently withdrew.  Plaintiffs should be compelled to provide documents responsive to RFP 204, at a minimum those they are already agreed they would be willing to produce in response to Defendants' compromise proposal.

### a)   Background

On February 12, 2018, Defendants served RFP 204, and on March 14, 2018,

Plaintiffs responded.  On March 30, 2018, counsel for Defendants sent a letter to counsel for Plaintiffs regarding the arbitrary limitations in Plaintiffs' response.  On April 9, 2018, and April 11, 2018 the parties met and conferred regarding this RFP in accordance with Local Rule 37.1.  In an attempt to resolve the parties' dispute, Defendants offered a revised, narrower version of this request:

- RFP 204
    - o Original—"All communications with ST relating to GaN-on-Si or GaN-on-SiC technology, this lawsuit, the 2010 IP Purchase Agreement, 2010 License Agreement, the Licensed Patents, or Defendants."
    - o Defendants' Proposal—"All communications with ST relating to this lawsuit, the 2010 IP Purchase Agreement, 2010 License Agreement, the Licensed Patents, or Defendants."

Ex. 14, April 9 and 11, 2018 Meet and Confer email chain, at April 18, 2018 3:29 PM email from Caballero to Banzhoff.  Defendants followed-up by email on April 18, 2018, again offering this revised version of RFP 204.  *Id.*

On April 30, 2018—21 days after Defendants offered their narrowed version of RFP 204 at the meet and confer, and 12 days after Defendants re-urged this compromise by email—Plaintiffs responded that they would "produce non-privileged communications with ST relating to this lawsuit, the 2010 IP Purchase Agreement, 2010 License Agreement, the Licensed Patents, or Defendants, to the extent they exist and can be located upon a reasonable search."  *Id.* at April 30, 2018 6:04 PM email from Banzhoff to Caballero.  This agreement was equivalent to Defendants' narrowed proposal.

On May 7, 2018, Plaintiffs emailed Defendants regarding different issues from the April 9 and 11 meet and confers.  Specifically, Plaintiffs inquired into the status of "both parties' requests related to Project Sky" and Plaintiffs' RFP 134 to Defendants.  *Id.* at May 7, 2018 6:29 PM email from Banzhoff to Caballero.  Plaintiffs

1    followed up on those issues four days later.  *Id*. at May 11, 2018 10:12 AM email

2    from Banzhoff to Caballero.  At no point did Plaintiffs again mention RFP 204.

3        On May 15, 2018, Defendants emailed Plaintiffs and accepted Plaintiffs' April

4    30, 2018 offer regarding RFP 204 because it was consistent with Defendants'

5    narrowed version offered over a month earlier.  *Id*. at May 15, 2018 1:59 PM email

6    from Caballero to Banzhoff.  Based on the understanding that Plaintiffs would

7    produce responsive documents, Defendants told Plaintiffs that they would not move

8    to compel a response to RFP 204.  *Id*.  Defendants specifically noted, however, that

9    regarding other requests related to RFP 204, on which the parties had not reached an

10   agreement, Defendants would move to compel.  *Id*.

11       On May 22, 2018, Defendants served their portion of the Joint Stipulation

12   regarding their First Motion to Compel on Plaintiffs.  Ex. 15, Joint Stipulation on

13   Defendants' First Motion to Compel email chain, at May 22, 2018 9:32 PM email

14   from Caballero to Banzhoff.  Based on the parties' agreement, offered in Plaintiffs'

15   April 30 email and accepted in Defendants' May 15 email, Defendants did not move

16   to compel on RFP 204.  And, consistent with Defendants' May 15 email, Defendants

17   *did* move to compel on RFPs 203, 206, and 209.  *See* Ex. 14, April 9 and 11, 2018

18   Meet and Confer email chain, at May 15, 2018 1:59 PM email from Caballero to

19   Banzhoff ("Based on [our agreement], we will not proceed with a motion to compel

20   as to RFP 204.  However, the other RFPs (203, 206, and 209) request relevant and

21   discoverable information and are proportional to the issues in this matter.

22   Accordingly, *we plan on moving to compel production of responsive documents as to*

23   *those requests*" (emphasis added)).

24       After receiving Defendants' portion of the Joint Stipulation regarding

25   Defendants' First Motion to Compel, Plaintiffs expressed "surprise[]" at seeing RFPs

26   203, 206, and 209 as the subject of a motion to compel.  Ex. 15, Joint Stipulation on

27   Defendants' First Motion to Compel email chain, at May 23, 2018 9:36 AM email

28   from Banzhoff to Caballero.  Plaintiffs' accused Defendants of never responding to

Plaintiffs' April 30 offer.  *Id*.  Defendants reminded Plaintiffs of the May 15, 2018 email, in which Defendants accepted Plaintiffs' offer as to RFP 204 but told Plaintiffs that they planned to move on RFPs 203, 206, and 209.  *Id*. at May 23, 2018 11:09 AM email from Caballero to Banzhoff.  Defendants did exactly what they said they would do in the May 15 email.

Plaintiffs then accused Defendants of ignoring their April 30 proposal for two weeks (despite being prompted twice for a response), rejecting their proposals, and "promptly" serving a motion to compel.  *Id*. at May 24, 2018 12:41 PM email from Banzhoff to Caballero.  These accusations contain several misstatements.  First, although Defendants took from April 30 to May 15 to respond to Plaintiffs' proposal, Plaintiffs took from the April 9 meet and confer until April 30 to respond to Defendants' narrowed request in the first place.  Second, Plaintiffs never followed-up seeking a response with respect to their proposal on RFP 204 (and related RFPs 203, 206, and 209); instead, the follow-ups were limited to Project Sky and Plaintiffs' RFP 134.  Ex. 14, April 9 and 11, 2018 Meet and Confer email chain, at May 7, 2018 6:29 PM email from Banzhoff to Caballero; *id*. at May 11, 2018 10:12 AM email from Banzhoff to Caballero.  Third, Defendants' served their motion to compel regarding RFPs 203, 206, and 209 *a full week* after accepting Plaintiffs' proposal on RFP 204.

Finally, and most importantly, Defendants *never* "rejected" Plaintiffs' offer with respect to RFP 204.  Instead, as Defendants' May 15 email explicitly states, Defendants *accepted* Plaintiffs' offer with respect to RFP 204.  *Id*. at May 15, 2018 1:59 PM email from Caballero to Banzhoff.  For that precise reason, Defendants did not move to compel on RFP 204.

Based on Plaintiffs claim that Defendants rejected their proposal regarding RFP 204, it now appears that Plaintiffs no longer intend to produce the documents they had formerly agreed to in response to this request, necessitating Defendants' motion to compel on RFP 204.  Ex. 15, at May 24, 2018 7:03 PM email from Caballero to Banzhoff.

1
2

        **b)**        **Plaintiffs must produce documents responsive to RFP 204 for the substantive reasons explained in Defendants' First Motion to Compel.**

3        In the Joint Stipulation regarding Defendants' first Motion to Compel,

4 Defendants' explained the relevance of ST Microeletronics, as well as the importance

5 of the documents requested by related RFPs.  To restate that background as it applies

6 here, RFP 204, along with related RFPs 203, 206, and 209, seek documents relating

7 to ST Microelectronics, one of Plaintiffs' partners who provides wafer manufacturing

8 so that Plaintiffs could provide GaN-on-Si products to customers.  These RFPs seek

9 a specific set of documents relating to ST, limited to documents or communications

10 relating to rights to GaN-on-Si and GaN-on-SiC technology, the relevant agreements,

11 Defendants, and Plaintiffs' collaboration with ST.  As stated in Plaintiffs' response to

12 Interrogatory No. 10, which Defendants detailed in the Joint Stipulation regarding

13 their first Motion to Compel, Plaintiffs seek lost profit damages based, in part, on their

14 allegation that Defendants' conduct "delayed execution of agreements between

15 MACOM and manufacturing partners."  As detailed in that first Joint Stipulation, this

16 response does not identify a single manufacturing partner.  But through other

17 documents and publicly available information, Defendants believe ST may be an

18 important supplier (*i.e.*, manufacturing partner) of Plaintiffs.  Thus, the RFPs at issue

19 seek documents relating to Plaintiffs' and ST's relationship—which is highly relevant

20 to Plaintiffs' lost profits claim.  The requests may also be relevant to the extent

21 Plaintiffs' relationship with ST was important to customers or affected sales.

22        This rationale applies to RFP 204, which (as narrowed) seeks "all

23 communications with ST relating to this lawsuit, the 2010 IP Purchase Agreement,

24 2010 License Agreement, the Licensed Patents, or Defendants."  If Defendants

25 delayed Plaintiffs' creation of an agreement with ST, documents responsive to this

26 RFP would show it.  And because Plaintiffs themselves state in their response to

27 Interrogatory No. 10 that such a delay is central to their case for lost profits, discovery

28 relating to Plaintiffs' relationship with ST exceeds mere relevance.  It is critical.  As

a result, Plaintiffs must produce their communications with ST regarding the narrow set of topics identified in RFP 204.

## 2.    Plaintiffs' Argument

This issue is moot.

Infineon spends an impressive ***three pages*** just to manufacture a dispute where there is none.  Infineon seems intent on misunderstanding MACOM's position so that it can multiply the discovery disputes before the Court in an attempt to cast MACOM in a bad light.

Infineon narrowed its Request No. 204 to communications with ST Micro relating to this lawsuit, the 2010 IP Purchase Agreement, the 2010 License Agreement, the Nitronex Patents, or Defendants.  Ex. 14 at 5.  MACOM ***agreed*** to this proposal.  *Id.* at 4.  MACOM has never retracted this agreement or did anything to call it into question.

Infineon later feigned confusion, suggesting that MACOM had retracted this agreement (which it had not), and then immediately served this motion to compel the next day.

MACOM has not changed its position on Request No. 204, does not understand why this issue is included in this motion, and, as repeatedly stated, confirms that it will produce all communications with ST relating to this lawsuit, the 2010 IP Purchase Agreement, 2010 License Agreement, the Nitronex Patents, or Defendants.

MACOM respectfully requests that the Court deny Infineon's motion to compel on this request as moot as well.

Dated:  June 6, 2018

**BAKER BOTTS LLP**

By: /s/ *Jeffery D. Baxter*
David G. Wille (admitted *pro hac vice*)
*david.wille@bakerbotts.com*
Jeffery D. Baxter (admitted *pro hac vice*)
*jeff.baxter@bakerbotts.com*
Brian D. Johnston (admitted *pro hac vice*)
*brian.johnston@bakerbotts.com*
James C. Williams (admitted *pro hac vice*)
*james.williams@bakerbotts.com*
Charles Yeh (admitted *pro hac vice*)
*charles.yeh@bakerbotts.com*
Josue Caballero (admitted *pro hac vice*)
*josue.caballero@bakerbotts.com*

BAKER BOTTS L.L.P.
2001 Ross Avenue, Suite 900
Dallas, TX 75201
Telephone: 214.953.6500
Fax: 214.953.6503

**ATTORNEYS FOR DEFENDANTS**

**PERKINS COIE LLP**

By:/s/ *Elizabeth Banzhoff*
Lara J. Dueppen, Bar No. 259075
LDueppen@perkinscoie.com
PERKINS COIE LLP
1888 Century Park East, Suite 1700
Los Angeles, CA 90067-1721
Telephone:  310.788.9900
Facsimile:  310.788.3399

Amanda Tessar (*pro hac vice*)
ATessar@perkinscoie.com
Elizabeth Banzhoff (*pro hac vice*)
EBanzhoff@perkinscoie.com
PERKINS COIE LLP
1900 Sixteenth Street, Suite 1400
Denver, CO  80202-5255
Telephone:  303.291.2357

111

Facsimile:  303.291.2457

Ramsey M. Al-Salam, Bar No. 109506
RAlSalam@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone:  206.359.6835
Facsimile:  206.359.7385

Philip A. Morin, Bar No. 256864
PMorin@perkinscoie.com
PERKINS COIE LLP
11988 El Camino Real, Suite 350
San Diego, CA  92130-2594
Telephone:  858.720.5700
Facsimile:  858.720.5799

Daniel T. Keese, Bar No. 280683
DKeese@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

Morgan Chu (State Bar No. 70446) (mchu@irel
Ellisen Turner (State Bar No. 224842) (eturner@
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
Telephone:  310-277-1010
Facsimile:  310-203-7199

**ATTORNEYS FOR PLAINTIFFS**