1 | Amanda Tessar (admitted *pro hac vice*)
ATessar@perkinscoie.com
2 | PERKINS COIE LLP
1900 Sixteenth Street, Suite 1400
3 | Denver, CO  80202-5255
Telephone:  303.291.2300
4 | Facsimile:  303.291.2400
5 | **ATTORNEYS FOR PLAINTIFFS**

6
LINDA M. BURROW, Bar No. 194668
7 |   *lburrow@bsfllp.com*
ALISON MACKENZIE, Bar No. 242280
8 |   *amackenzie@bsfllp.com*
9 | BOIES SCHILLER FLEXNER LLP
725 South Figueroa Street 31st Floor
10 | Los Angeles, CA  90017-5524
Telephone:  213-629-9040 / Fax:  213-629-9022
11
12 | Attorneys for Defendants

13 | (Additional Counsel Listed on Signature Page)

14
15 | **UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

16 | MACOM TECHNOLOGY | Case No. CV 16-02859 CAS (PLAx)
17 | SOLUTIONS HOLDINGS INC. and | **JOINT STIPULATION**
NITRONEX, LLC, | **REGARDING INFINEON'S**
18 | | **DISCOVERY RESPONSES**
19 | Plaintiffs, | **REDACTED VERSION OF**
20 | | **DOCUMENT PROPOSED TO BE**
**FILED UNDER SEAL**
21 | v. |
22 | INFINEON TECHNOLOGIES AG, *et* | Mag. Judge: Hon. Paul L. Abrams
*al.*, | Hearing Date: June 27, 2018
23 | | Hearing Time: 10:00 a.m.
Defendants. | Courtroom: C, 8th Floor
24 |
25 | | Discovery Cutoff: June 29, 2018
Pretrial Conference: March 4, 2019
26 | | Trial Date: March 26, 2019
27
28

# TABLE OF CONTENTS

I.   INTRODUCTIONS ................................................................................1

   A.   MACOM's Introduction.............................................................1

      1.  MACOM's Claims ..............................................................1

      2.  Products And Customers At Issue .....................................2

      3.  Infineon's Refusal To Provide Discovery .........................2

   B.   Defendants' Introduction ..........................................................4

II.  FACTUAL BACKGROUND ..................................................................7

   A.   MACOM's Factual Background ...............................................7

      1.  Infineon Refuses to Produce Documents About Its Acquisition of IR...7

      2.  Infineon Refuses To Provide Its Noninfringement Theories To MACOM ................................9

      3.  Infineon Refuses to Produce Customer Communications ..................12

      4.  Infineon Refuses To Produce Documents Regarding Its Affirmative Defenses ................................18

      5.  Infineon Refuses To Provide Information On GaN-on-SiC or LDMOS ................................21

   B.   Defendants' Factual Background .............................................28

III. LEGAL STANDARD ........................................................................29

   A.   MACOM's Statement On The Legal Standard ......................29

   B.   Defendants' Statement On The Legal Standard .....................29

IV. ARGUMENT .....................................................................................30

   A.   MACOM's Argument ..............................................................30

      1.  Infineon Must Provide Information About Its Valuation of IR ..........30

      2.  Infineon Must Provide Its Noninfringement Theories ........................31

      3.  Infineon's Customer Communications Are Indisputably Relevant, But It Has Not Conducted A Reasonable Search For Them ......................34

      4.  Infineon Must Produce Documents Regarding Its Affirmative Defenses ................................35

      5.  Infineon Must Respond To Requests For GaN-on-SiC And LDMOS Documents ................................36

**B.   Defendants' Argument** ...............................................................37

   1.   Plaintiffs are not entitled to <u>all</u> documents relating to the IR acquisition (RFPs 44 and 136)...............................................................37

   2.   Plaintiffs fail to show that they are entitled to any relief with respect to Interrogatory Nos. 12 and 13 regarding non-infringement...................40

      a)   Plaintiffs failed to meet and confer on Defendants' responses to Interrogatory Nos. 12 and 13, as required under the Local Rules……………………………………………………..40

      b)   Defendants have answered Interrogatory No. 12, and Plaintiffs have failed to specify what additional information Plaintiffs are seeking…………………………………………44

      c)   Defendants are willing to respond to Interrogatory No. 13 but only to the extent that Plaintiffs identify specific Requests for Admission to stay within the Court's 25-interrogatory limit……………………………………………………48

   3.   Plaintiffs' complaints about Defendants' production of customer communications (RFPs 16, 19, 20, 21 and 83) were never raised during any meet and confer and are not properly before the Court. ...............49

      a)   Background…………………………………………...51

      b)   Plaintiffs' motion should be summarily denied based on their flagrant disregard for the Local Rule 37-1 conference requirement…………………………………………53

      c)   Plaintiffs' unreasonable expectations regarding the volume of documents they would receive do not excuse their failure to meet and confer on their new complaints…………………..55

   4.   The law does not support Plaintiffs' overbroad and vague requests for "all documents" that "relate to" Defendants' affirmative defenses (RFPs 88 and 104–118)........................................................57

      a)   Background…………………………………………...58

      b)   Plaintiffs' RFPs 88 and 104 through 118 are too broad and vague to support a meaningful search and production by Defendants…………………………………………59

   5.   Documents relating to Defendants' sales, pricing, and projections for GaN-on-SiC and LDMOS are not relevant to a legally valid damages theory (RFPs 125, 126, 127, 137, 138, 141, 142, 144, and 145)..........62

      a)   Plaintiffs cannot recover unjust enrichment……………...63

      b)   Although lost profits may be a legally proper theory of recovery, the damages are Plaintiffs' lost sales—not Defendants' sales…………………………………………64

      c)   Plaintiffs' requests are overbroad and not proportional to the

needs of this case……………………………………..66

     d) Plaintiffs identify no problems with Defendants' response to RFP 137, which the parties did not discuss at their meet and confer……………………………………………………67

**V.   CONCLUSION ........................................................................ 67**

  **A.   MACOM's Conclusion** ............................................................ 67

  **B.   Defendants' Conclusion** ........................................................ 68

# I.   INTRODUCTIONS

Pursuant to Civil Local Rule 37-2, Plaintiffs MACOM Technology Solutions Holdings, Inc. and Nitronex, LLC ("MACOM" or "Plaintiffs") and Defendants Infineon Technologies AG ("Infineon AG") and Infineon Technologies Americas Corporation ("Infineon Americas") (collectively, "Infineon" or "Defendants") file this Joint Stipulation regarding Infineon's discovery responses.  This joint stipulation is brought after conferences of counsel on January 25, March 5, March 26, April 5, April 11, and May 18,2018.

## A.   MACOM's Introduction[1]

## 1.   MACOM's Claims

This case involves Infineon AG's acquisition of International Rectifier ("IR") (now Infineon Americas), followed by Infineon's attempts to avoid, terminate, misconstrue, and ignore its obligations under a series of 2010 agreements between IR and Nitronex (now MACOM).  *See generally* Dkt. 445 (Third Amended Complaint).  MACOM alleges that Infineon Americas has breached (and is continuing to breach) promises that Infineon Americas made to MACOM in an exclusive license to the foundational "Nitronex Patents."  Among other breaches, MACOM claims that Infineon Americas is in breach of its promise that Infineon will ***not*** market or sell GaN-on-Si products in MACOM's exclusive field, which includes the right to develop, manufacture, and sell GaN-on-Si RF products for certain applications, such as cellular basestations.  Dkt. 445 at ¶¶88, 190-201.

Infineon Americas is the wholly-owned subsidiary of its co-defendant, Infineon AG.  *Id.* at ¶¶158-68.  Infineon AG made the decision to purchase

---

[1]   MACOM proposed to Infineon that the parties combine all ongoing discovery disputes into a single, omnibus joint stipulation before submitting it to the Court. Infineon refused.  Ex. 1.  MACOM therefore was forced to submit this separate joint stipulation (and will likely have one additional joint stipulation to submit about other brewing disputes in the coming weeks).

International Rectifier to get access to its GaN-on-Si products and intellectual property (including the intellectual property in dispute in this case), re-name it Infineon Americas and merge it into Infineon's existing U.S. subsidiary, induce Infineon Americas to breach its agreements with MACOM, and then to shift activities that Infineon Americas is not permitted to do under its contracts with MACOM to Infineon AG and other Infineon affiliates.  Dkt. 445 at ¶¶2-10; Dkt. 500-1 at ¶281.  Based on these actions and others, MACOM asserts a claim for intentional interference with contractual relations against Infineon AG.  Dkt. 445 at ¶¶248-60.

## 2.    Products And Customers At Issue

Cellular basestations are a critical part of what is commonly called a "cell phone tower."  *See* Dkt. 81-4 at ¶6 (attached hereto as Ex. 18).  Basestations are owned and operated by mobile phone service providers such as AT&T, Verizon, T-Mobile, and Sprint.  *Id.* at ¶8.  These mobile phone service providers typically do not design or manufacture the equipment they use in their basestations.  *Id.*  Instead, they purchase the equipment from suppliers of basestation equipment, such as Ericsson, ZTE, Nokia, and Huawei (so-called "Tier 1" customers).  *Id.*  In fact, the basestation equipment market is one of the most concentrated markets in the world, with just the four Tier 1 suppliers—Ericsson, ZTE, Huawei, and Nokia—controlling approximately 90% of the market.  *Id.* at ¶26.

As a result of these unique market conditions, much of this case centers around Infineon's activities marketing within MACOM's exclusive field to these basestation equipment companies.  Dkt. 445 at ¶¶190-201.

## 3.    Infineon's Refusal To Provide Discovery

Infineon is bent on preventing MACOM from obtaining complete discovery on relevant issues in this case.

First, Infineon has refused to produce documents about its acquisition of IR (the original party to the contract with MACOM that was acquired by Infineon AG),

which is central to MACOM's intentional interference claim.

Second, Infineon has defended against MACOM's claim of breach by claiming that its GaN-on-Si product designs do not practice the Nitronex Patents, and therefore it does not act in breach of the contract by marketing them in MACOM's exclusive field.  MACOM has provided thousands of pages of detailed charts explaining its contentions as to how Infineon *is* practicing the Nitronex Patents.  Infineon, by contrast, refuses to provide any meaningful disclosure of its "noninfringement" arguments.  MACOM has attempted to get this information through various methods:  an interrogatory seeking noninfringement charts (which Infineon responded only to state that MACOM had not proved infringement), requests for admission (which Infineon denied in a blanket fashion), and an interrogatory seeking an explanation of any denials of requests for admission (which Infineon refused to respond to).

Third, despite the centrality of Infineon's marketing to basestation customers and Infineon's agreement to produce communications with customers (including the four above—Ericsson, ZTE, Huawei, and Nokia—and a fifth, Samsung), Infineon has failed to conduct a reasonable search for its communications with these customers, as demonstrated by both the identity of the custodians that it has chosen to search (or, more to the point, the identity of the custodians that it has *not* searched) and the unexpectedly low numbers of communications with these customers that Infineon has actually produced.  In total, Infineon has only produced 306 documents that are to or from these customers out of its production of over 50,000 documents—and, in almost all circumstances, it has done so when an Infineon Americas employee was part of the communication (or had the communication forwarded to it).  When considering that these customers are located outside the United States, though, it is not a surprise to see so few communications, given that Infineon almost entirely focused its searches on Infineon Americas employees.  Notably, and critically for this motion, Infineon did *not* search for the

emails for the customer account managers that its own witnesses have identified as being responsible for the relationships with at least Nokia, Huawei, ZTE, and Samsung.  Banzhoff Decl., ¶24.

Fourth, Infineon has refused to produce documents regarding *any* of its myriad affirmative defenses.  Infineon cannot pursue defenses while simultaneously refusing to provide relevant discovery to MACOM.

Fifth, and finally, Infineon has refused to produce information about products and technologies that directly compete with GaN-on-Si and therefore form a key part of MACOM's damages theory.

**B.    Defendants' Introduction**

Plaintiffs' motion should be denied for each of the following five disputes.

1.    <u>IR acquisition.</u>  The IR acquisition was an enormous corporate acquisition—involving products, business lines, manufacturing facilities, technology, and intellectual property ***completely unrelated*** to this lawsuit.  To give the Court some perspective, Infineon AG acquired IR for $3 ***billion***— ███████████████ ███████████████████████████████████████.  *See* Ex. A, Hack and Sheahan, "Infineon agrees to buy Int'l Rectifier for $3 billion in cash," Reuters, August 20, 2014.  Based on these figures, the technology, patents and agreement at issue in this lawsuit was ***less than*** ██████ of the IR acquisition.  Plaintiffs' argument ████████████████████ drove the $3 billion acquisition of the entire IR corporation strains credulity.  Nevertheless, if Plaintiffs want to make this spurious argument, Defendants have agreed to produce those documents that may be relevant: IR acquisition documents relating to the technology, patents, and agreements at issue (*i.e.*, GaN-on-Si technology, Nitronex, the Nitronex Patents, the 2004 License Agreement, the 2010 IP Purchase Agreement, or the 2010 License Agreement).  Plaintiffs provide ***no justification*** for seeking **<u>ALL</u>** IR acquisition documents— including those ***<u>unrelated</u>*** to the technology, patents, and agreements at issue.

2.    <u>Non-infringement.</u>    Plaintiffs next seek to compel responses to

-4-

Interrogatories Nos. 12 and 13 regarding noninfringement.  Plaintiffs **never** met and conferred with Defendants regarding their responses to these interrogatories.  As to Interrogatory No. 12, Defendants provided a substantive response, including a three-page narrative of non-infringement arguments that apply across all asserted claims and almost 30 pages of individual claim charts identifying non-infringement positions on element-by-element basis.  Plaintiffs wrongly omitted this interrogatory response from the Joint Stipulation (in violation of Local Rule 37-2.1) so that they could argue that Defendants provided no substantive response.  Plaintiffs also failed to identify what specific additional information they are seeking.  As to Interrogatory No. 13, Defendants objected because the interrogatory exceeds the Court's 25-interroagory limit.  Plaintiffs' Interrogatory No. 13 incorporates by reference 176 Requests for Admission and, if effect, turns each into a separate interrogatory.  In their objections, Defendants indicated that they would answer for whatever specific RFAs Plaintiffs identify up to the Court's 25-interrogatory limit.  Plaintiffs never attempted to meet and confer.  Based on Plaintiffs' failure to meet and confer, Plaintiffs' motion should be denied, and Plaintiffs should be sanctioned for forcing Defendants through this lengthy and time-consuming motions practice, without taking the simple and necessary step of picking up the phone to discuss the issues involved.

       3.   <u>Customer communications.</u>  Plaintiffs' motion should also be denied with respect to its complaints relating to Defendants' production of customer communications about GaN-on-Si.  The parties **never** met and conferred about the complaints about Defendants' search Plaintiffs raise in this motion.  Prior to receiving the motion itself, Defendants had no idea that Plaintiffs would be moving to compel on these requests.  Indeed, until the motion was served, Plaintiffs' last word on the subject was an e-mail stating that Plaintiffs would **not** be filing a motion on these requests.  Had Plaintiffs actually raised their concerns with Defendants before filing, as the Local Rules require, it is likely the parties could have resolved or at least narrowed this dispute.  Indeed, after learning about the complaints via receipt of this

stipulation, Defendants requested that Plaintiffs withdraw this issue from its motion so that the parties could have a meaningful meet and confer to try to resolve the issue, but Plaintiffs refused to do so.  Defendants stand ready to meet and confer with Plaintiffs in a good faith attempt to eliminate or minimize the dispute.  But until Plaintiffs are willing to do so, the Court should refuse to entertain this issue.

4.     Affirmative Defenses.  In their fourth set of requests, Plaintiffs seek production of documents that "relate to" all of Defendants' affirmative defenses in response to sixteen RFPs.  During the parties' meet and confer, Defendants explained that these incredibly broad requests left Defendants in the dark as to what types of documents were actually being requested and how Defendants might go about searching for them.  Defendants offered to produce all documents that they would rely upon at trial with respect to each affirmative defense.  Plaintiffs seemed receptive of this compromise but have now had second thoughts—notwithstanding that Plaintiffs are not entitled to *"all documents"* that *"relate to"* each of Defendants' affirmative defenses, as sought by these broadly worded RFPs.

5.     GaN-SiC and LDMOS sales.  Finally, Plaintiffs seek to compel production of documents regarding Defendants' GaN-SiC and LDMOS sales.  This lawsuit, however, relates to different technology referred to as GaN-Si.  As a result, Plaintiffs do not even attempt to argue that the requested documents are related to the liability issues in this case.  Instead, Plaintiffs rely solely on their damages claim to seek these documents.  Defendants' sales, however, could be relevant to only an unjust enrichment claim, but Plaintiffs are not legally entitled to unjust enrichment under California law where there is an express contract, which Plaintiffs allege exists between the parties.  To the extent Plaintiffs seek this information as relevant to their lost profits claim, Plaintiffs offer no explanation about how ***Defendants'*** sales are relevant to Plaintiffs' lost profits.  Aside from their legal irrelevance, Plaintiffs' requests are extraordinarily broad, seeking a whole industry's worth of documents.

For the reasons explained below, Plaintiffs' motion should be denied in its

entirety.

## II.     FACTUAL BACKGROUND

### A.     MACOM's Factual Background

### 1.     Infineon Refuses to Produce Documents About Its Acquisition of IR

Central to MACOM's complaint, and particularly its tortious interference claim, are Infineon AG's actions in acquiring IR (now Infineon Americas), followed by Infineon AG causing Infineon Americas to purport to terminate MACOM's exclusive license (and then to breach it). *See generally* Dkt. 445. Accordingly, MACOM has sought documents regarding Infineon's reasons for acquiring IR, which are fundamental to MACOM's tortious interference claims, as well as its breach of contract claims. Moreover, Infineon AG has asserted the affirmative defense of the financial interest privilege (Dkt. 291), which also brings its own reasons for acquiring IR under scrutiny.

In Request No. 44, MACOM sought documents regarding Infineon's reasons for acquiring IR. Infineon did not agree to produce responsive documents, saying only that it would produce documents of far narrower scope—*i.e.*, those related to "GaN-Si technology, Nitronex, the Nitronex Patents, the 2004 License Agreement, the 2010 IP Purchase Agreement, or the 2010 License Agreement."

MACOM requested a conference on this issue. *See* Ex. 16. When the parties conferred, Infineon continued to refuse to produce anything beyond this subset of documents. *See* Ex. 17.

MACOM also served a request specifically seeking information about Infineon's valuation of IR before it purchased it. *See* Ex. 20, Request No. 136. This request was markedly similar to Infineon's Request No. 18, which sought information about MACOM's valuation of Nitronex before its acquisition—which MACOM agreed to produce. Nonetheless, Infineon refused to produce ***any*** documents in response to MACOM's Request No. 136, even though such documents are clearly relevant and important in the case.

-7-

**REQUEST FOR PRODUCTION NO. 44**

All documents relating to Infineon's acquisition of International Rectifier and Infineon's reasons for acquiring International Rectifier.

**RESPONSE:**

Defendants object to this Request because the phrases "Infineon's acquisition" and "Infineon's reasons" are vague, ambiguous, overbroad, and unduly burdensome, at least because the definition fails to provide the requisite specificity to determine which, if any, of Defendants the Request refers to. Defendants will properly limit production to documents related to Defendants, Infineon Americas and Infineon AG, subject to further objections. Defendants object to this Request as overly broad and unduly burdensome because it seeks discovery of "[a]ll documents relating to Infineon's acquisition of International Rectifier and Infineon's reasons for acquiring International Rectifier" without limitation. Defendants object to this Request as overly broad and unduly burdensome because it seeks information not limited to one or more claims or defenses of one or more of the parties. For example, not all documents relating to the acquisition of International Rectifier are relevant or likely to lead to the discovery of information relevant to this lawsuit. Defendants will produce responsive document to the extent that they relate to GaN-Si technology, Nitronex, the Nitronex Patents, the 2004 License Agreement, the 2010 IP Purchase Agreement, or the 2010 License Agreement.

Furthermore, Defendants object to this Request to the extent it calls for information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, and/or any other applicable privilege or immunity, or that is otherwise protected from disclosure. Defendants further object to this Request insofar as it requests documents that may contain any trade secret or other confidential research, development, or commercial information of Defendants, or of any third party to the extent such documents are in the possession of Defendants pursuant to confidentiality and nondisclosure restrictions imposed by contract or law, without a protective order or equivalent protections by agreement of the parties in place to protect the confidentiality of such materials.

Subject to the foregoing General and Specific objections, Defendants has produced or will produce relevant, non-privileged, non-cumulative, non-duplicative documents, located after a reasonable search, responsive to this request, to the extent that such

documents exist and are in Defendants' custody, possession, and control and to the extent that such documents relate to GaN-Si technology, Nitronex, the Nitronex Patents, the 2004 License Agreement, the 2010 IP Purchase Agreement, or the 2010 License Agreement.

**REQUEST FOR PRODUCTION NO. 136**

All documents regarding Infineon's valuation of International Rectifier prior to its acquisition.

**RESPONSE:**

In addition to the foregoing general objections, Defendants object to this Request as overbroad and unduly burdensome in that it seeks "[a]ll documents regarding Infineon's valuation of International Rectifier prior to its acquisition" because it seeks information unrelated to any claims or defenses of one or more of the parties and because it does not place any limitation on the relevant time period. Further, Defendants object to this Request insofar as it requests documents that may contain any trade secret or other confidential research, development, or commercial information of Defendants, or of any third party to the extent such documents are in the possession of Defendants pursuant to confidentiality and non-disclosure restrictions imposed by contract or law, without a protective order or equivalent protections by agreement of the parties in place to protect the confidentiality of such materials. Additionally, Defendants object to this Request to the extent it calls for information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, and/or any other applicable privilege or immunity, or that is otherwise protected from disclosure. Defendants also object to this Request as duplicative of Request No. 44.

Based on the foregoing general and specific objections, Defendants will not produce documents in response to this request.

2.     **Infineon Refuses To Provide Its Noninfringement Theories To MACOM**

In this case, Infineon has taken the position that, for MACOM to prove its claims that Infineon is breach of its promise that Infineon will ***not*** market or sell GaN-on-Si products in MACOM's exclusive field, MACOM must prove that Infineon's products meet the limitations of specific claims of specific Nitronex Patents.

Infineon therefore served an interrogatory seeking MACOM's "infringement" theories for all of the claims that MACOM alleges that Infineon is practicing.  In response, MACOM provided thousands of pages of detailed "infringement" charts for Infineon's products.[2]  These were all served in November of 2017.  An exemplar chart demonstrating the specificity of MACOM's allegations is attached as Exhibit 8.

Infineon denies that it practices any claim of any of the many Nitronex Patents in breach of its promise of exclusivity to MACOM.  Dkt. 461 at ¶275.  MACOM has attempted two approaches to extract Infineon's position as to the technical arguments as to why it supposedly does not practice the patents at issue.  First, it served an interrogatory on Infineon that requested Infineon's "noninfringement" arguments.  *See* Ex. 9 at 7 (Interrogatory No. 12).  Second, it served RFAs that lay out each of Infineon's products and the patent claims currently at issue and ask for Infineon's admission or denial as to whether Infineon's products practice the elements of each claim.  Ex. 10 at Request Nos. 6-181.  MACOM also served an interrogatory seeking an explanation for Infineon's denial of any RFAs, Interrogatory No. 13.  Ex. 11.

Unfortunately, Infineon chose to stonewall in its response to each of these requests.  For Interrogatory No. 12, Infineon provided a chart for each patent claim that provides ***no*** information about its noninfringement positions.  *See* Ex. 9.  Instead, for each claim, Infineon states only that "Plaintiffs have not shown" or "Plaintiffs' infringement analysis does not show" that Infineon's products meet the relevant claim language.  *E.g.,* Ex. 9 at 11.  Indeed, Infineon refused to even

---

[2]  Because this is a contract case (not a patent infringement case), and because Infineon currently owns the Nitronex Patents, these are not technically "infringement" charts, but they do demonstrate that Infineon practices the Nitronex Patents in the same way that an infringement chart would.  These charts also contain the same contents that an infringement chart would, if MACOM owned the patents and Infineon was an unlicensed infringer.

acknowledge in its interrogatory response that its products are semiconductor devices, a position that cannot be credibly defended.  *Id.*  Essentially, it provided a chart with nothing of substance in it.[3]

For the RFAs and Interrogatory No. 13, Infineon also played coy.  It denied all of the RFAs, but it refused to provide an explanation of the denial in Interrogatory No. 13, claiming instead that MACOM needed to serve individual interrogatories directed to each of the RFAs (*see* Ex. 11), despite the fact that it successfully advocated for a limit of only twenty-five interrogatories in this case. The parties discussed these issues, and Infineon's deficient responses, at length, and they have even partially briefed the issue before the Court in connection with Infineon's unsuccessful attempt to quash the RFAs.  *See* Dkt. 472-2.  Infineon has nevertheless maintained its responses stating only that MACOM has not proved infringement are proper.  *See id.*

Interrogatory No. 13 requests:

**INTERROGATORY NO. 13:**

For any of Requests for Admission Nos. 5-181 for which your response was not an unqualified admission, explain why, including an identification of which particular element(s) you do not believe the identified product practices, and all factual and legal bases for that belief.

**RESPONSE:**

In addition to the foregoing general objections, Infineon Americas objects to this Interrogatory as overly broad, unduly burdensome, vague, and ambiguous in that it seeks information related to 176 Requests for Admission. Infineon Americas further objects to this interrogatory as it is compound and includes more than one discrete subpart that constitutes separate interrogatories that counts toward the limit on interrogatories that Plaintiffs are permitted to propound under Federal Rule of Civil Procedure 33 and all applicable Court orders. Plaintiff, thus, has exceeded the limit on interrogatories permitted under

---

[3]  For space reasons, MACOM has not pasted the request and 50-page chart with no substantive responses here.  These are contained in Ex. 9.

Federal Rule of Civil Procedure 33 and all applicable Court orders. Additionally, Defendants object to this Interrogatory as premature given that responses to MACOM's Request for Admission 5-181 are not yet due.

      Subject to and without waiving the foregoing general and specific objections, Defendants respond that this Interrogatory is premature. If and when Defendants respond to MACOM's Request for Admissions, MACOM is free to serve individual interrogatories to specifically identified responses to MACOM's Requests for Admission that don't exceed the limit on interrogatories that Plaintiff is permitted to propound under Federal Rule of Civil Procedure 33 and all applicable Court orders.

### 3.    Infineon Refuses to Produce Customer Communications

MACOM has sought Infineon's communications with the five relevant basestations customers: Ericsson, Nokia, ZTE, Huawei, and Samsung. *See, e.g.,* Ex. 3 at Request Nos. 16, 19, 20, 21, 83. These requests are set forth below in full.

Infineon *agreed* it would produce documents responsive to requests for customer communications. *Id.* One would expect, moreover, that Infineon would have a large number of communications with its customers, both because the types of products at issue in this case are generally designed over a period of years, hand-in-hand with customers, and because Infineon was offering multiple different competing products (GaN-on-Si, GaN-on-SiC, and LDMOS) to its customers simultaneously. *See, e.g.*, Dkt. 217-9 at ¶¶11-20; Ex. 6 (Tr. of Infineon R&D Director S. Ward, at 92:18-93:12 ("discussion with the customer as to their application" that requires a "large application team")). But Infineon did not conduct a reasonable search for such documents and produce them from the sources and witnesses from whom they would most naturally be obtained.

MACOM was aware at the outset that Infineon might not produce the most relevant customer communications. Therefore, when Infineon began its productions, MACOM wrote to Infineon and raised its concerns that Infineon was not providing customer communications. Infineon's counsel responded to assure

MACOM that "[w]e have and will continue to produce customer communications as indicated in our responses to your document requests."  Ex. 4 (email from Infineon dated March 2, 2018).

MACOM further met-and-conferred with Infineon on the issue of customer communications in March, 2018.  Ex. 5.  During that meet and confer, Infineon went even further and stated that it was not only not withholding customer communications, but that it was specifically conducting a search for communications with basestation customers.  *See id.*

Infineon's assurances turned out to be false.  To date, Infineon has only produced 306 documents (out of over 50,000) that are to or from customers.  *See* Banzhoff Decl. ¶25.  This low number alone makes clear that Infineon did not adequately search for these communications.  This low number of hits is unsurprising, however, given that Infineon has not produced a single document from, and therefore has presumably failed to conduct any searches of the emails for, the very Infineon account managers who are responsible for the basestation customers.  *Compare* Ex. 7, Hugo Tr. at 22:18-29:25 (identifying account managers for basestation customers that do not appear as custodians in Infineon's documents, including ███████████████████████████████████████████

███████████████████████████ *with* Banzhoff Decl. ¶25.

Notably, the overwhelming majority (*i.e.*, 228 of the 306 customer communications that Infineon **has** produced are communications with Ericsson.  Banzhoff Decl. ¶25.  This contrasts to much smaller numbers produced for Huawei (13), Nokia (51), and ZTE (8), and Samsung (6).  *Id.*  This is perhaps unsurprising, however, since Infineon **did** search at least some of the Infineon personnel responsible for the Ericsson relationship.  *Id.*; Ex. 7.

Even for Ericsson, however, it appears (based on MACOM's review of the limited number of customer communications produced) that Infineon necessarily must have applied unduly narrow search terms to its production—perhaps only

"GaN-on-Si."  But Infineon employees have often resorted to vaguely referring to "GaN" generally or "code" names, like "low-cost alternative," when they wanted to avoid appearing in breach of Infineon's agreements with MACOM.  *See, e.g.*, Ex. 23.

Many of MACOM's requests call for Infineon's communications with basestation customers, including the following (all of which Infineon promised to conduct a "reasonable search" in response to):

**REQUEST FOR PRODUCTION NO. 16:**

All documents relating to Infineon's statements, representations, and communications, to customers, potential customers, the media, investors, and investment analysts relating to its present or future GaN-on-Si RF technologies, wafers, products, technology plans, product plans, or wafer plans.

**RESPONSE:**

Defendants object to this Request because the term "Infineon's" is vague, ambiguous, overbroad, and unduly burdensome, at least because the definition fails to provide the requisite specificity to determine which, if any, of Defendants the Request is directed towards. Defendants will properly limit production to documents related to one or more Infineon Americas and/or Infineon AG.

Defendants object to the terms and phrases "statements," "representations," "communications," "customers", "potential customers," "the media," "investors," and "investment analysts," as vague and ambiguous. Defendants also object to this Request as overly broad and unduly burdensome because it seeks discovery of "[a]ll documents relating to . . . present or future GaN-on-Si RF technologies, wafers, products, technology plans, product plans, or wafer plans" without limitation. Defendants object to this Request as overly broad and unduly burdensome because it seeks information not limited to a claim or defense of one or more of the parties.

Defendants also object to this Request to the extent it purports to require Defendants to furnish information that is equally available and/or publicly accessible to MACOM.

Defendants further object to this Request as overly broad and unduly burdensome because it does not place any limitation on the relevant time period.

-14-

Subject to the foregoing General and Specific objections, *Defendants has produced or will produce relevant, non-privileged, non-cumulative, non-duplicative documents from January 13, 2015 to present, located after a reasonable search, responsive to this request,* to the extent that such documents exist and are in Defendants' custody, possession, and control.

## REQUEST FOR PRODUCTION NO. 19

All documents relating to any communications, meetings, or contacts between Infineon and any third party (including to Nokia, Ericsson, Huawei, ZTE and any other maker of wireless infrastructure equipment) regarding current, future, or potential GaN-on-Si RF technology, wafers, and/or products.

## RESPONSE:

Defendants object to this Request because the phrase "between Infineon and any third party" is vague, ambiguous, overbroad, and unduly burdensome, at least because the definition fails to provide the requisite specificity to determine which, if any, of Defendants the Request refers to. Defendants will properly limit production to documents related to communications between Infineon Americas and/or Infineon AG and third parties. Defendants object to this Request as overly broad and unduly burdensome because it seeks discovery of "[a]ll documents . . . regarding current, future, or potential GaN-on-Si RF technology, wafers, and/or products" without limitation.

Defendants object to this Request as overly broad and unduly burdensome because it seeks information not limited to a claim or defense of one or more of the parties. For example, it is not limited to Defendants' GaN-on-Si RF technology, wafers, or products. Defendants further object to this Request to the extent it is duplicative of one or more of Request Nos. 16 and 17. Defendants further object to this Request as overly broad and unduly burdensome because it does not place any limitation on the relevant time period.

Subject to the foregoing General and Specific objections, *Defendants has produced or will produce relevant, non-privileged, non-cumulative, non-duplicative documents limited to communications regarding Defendants' GaN-on-Si RF technology, wafers, and/or products from January 13, 2015 to present, located after a reasonable search, responsive to this request*, to the extent

that such documents exist and are in Defendants' custody, possession, and control.

## REQUEST FOR PRODUCTION NO. 20

All documents relating to any communications, meetings, or contacts between Infineon and any third party (including to Nokia, Ericsson, Huawei, ZTE and any other maker of wireless infrastructure equipment) regarding MACOM's GaN-on-Si products or this litigation.

## RESPONSE:

Defendants object to this Request because the term "Infineon" is vague, ambiguous, overbroad, and unduly burdensome, at least because the definition fails to provide the requisite specificity to determine which, if any, of Defendants the Request is directed towards. Defendants will properly limit the production of documents to those related to communications between third parties and one or more of Defendants, Infineon Americas and Infineon AG.

Defendants also object to this Request to the extent this Request seeks information in the possession, custody, or control of MACOM and/or third parties. Furthermore, Defendants object to this Request to the extent it calls for information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, and/or any other applicable privilege or immunity, or that is otherwise protected from disclosure. Defendants further object to this Request insofar as it requests documents that may contain any trade secret or other confidential research, development, or commercial information of Defendants, or of any third party to the extent such documents are in the possession of Defendants pursuant to confidentiality and non-disclosure restrictions imposed by contract or law, without a protective order or equivalent protections by agreement of the parties in place to protect the confidentiality of such materials.

Defendants further object to this Request to the extent it is duplicative of one or more of Request Nos. 16 and 17. Defendants further object to this Request as overly broad and unduly burdensome because it does not place any limitation on the relevant time period.

Subject to the foregoing General and Specific objections, ***Defendants has produced or will produce relevant, non-privileged, non-cumulative, non-duplicative documents from January 13, 2015 to present, located after a reasonable search, responsive to this***

***request***, to the extent that such documents exist and are in Defendants' custody, possession, and control.

## REQUEST FOR PRODUCTION NO. 21

All documents relating to the Ericsson AAS AFE module "collaboration activity."

## RESPONSE:

Defendants object to this Request as overly broad and unduly burdensome because it seeks discovery of "all documents relating to the Ericsson AAS AFE module 'collaboration activity'" without limitation. Defendants will properly limit production to documents related to GaN-on-Si RF products Defendants further object to the extent this Request seeks information in the possession, custody, or control of MACOM and/or third parties other than Defendants. Furthermore, Defendants object to this Request to the extent it calls for information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, and/or any other applicable privilege or immunity, or that is otherwise protected from disclosure. Defendants also object to this Request insofar as it requests documents that may contain any trade secret or other confidential research, development, or commercial information of Defendants, or of any third party to the extent such documents are in the possession of Defendants pursuant to confidentiality and non-disclosure restrictions imposed by contract or law, without a protective order or equivalent protections by agreement of the parties in place to protect the confidentiality of such materials.

Defendants object to this Request as overly broad and unduly burdensome because it seeks information not limited to a claim or defense of one or more of the parties. For example, it is not limited to GaN-on-Si RF technology, wafers, or products.

Subject to the foregoing General and Specific objections, ***Defendants has produced or will produce relevant, non-privileged, non-cumulative, non-duplicative documents, located after a reasonable search, responsive to this request***, to the extent that such documents exist and are in Defendants' custody, possession, and control and to the extent that those documents relate to GaN-on-Si RF technology, wafers, or products

## REQUEST FOR PRODUCTION NO. 83

All documents relating to any communication with Nokia, Ericsson, Huawei, ZTE, and/or any other maker of wireless infrastructure equipment regarding Infineon's intention to offer a full portfolio of RF power products based on multiple technologies (such as GaN, LDMOS, or others).

**RESPONSE:**

In addition to the foregoing general objections, Defendants object to this Request as duplicative of MACOM's Request for Production No. 19. Defendants further object to this Request as overbroad and unduly burdensome in that it seeks "[a]ll documents relating to any communication with Nokia, Ericsson, Huawei, ZTE, and/or any other maker of wireless infrastructure equipment regarding Infineon's intention to offer a full portfolio of RF power products based on multiple technologies." Defendants further object to this Request as overly broad and unduly burdensome because it does not place any limitation on the relevant time period. Defendants object to the use of the terms "maker of wireless infrastructure equipment," "intention to offer a full portfolio," "RF power products," and "based on multiple technologies," as rendering the Request vague, ambiguous, overly broad, and unduly burdensome.

Subject to and without waiving these general and specific objections, ***Defendants have produced or will produce relevant, non-privileged, noncumulative, non-duplicative documents, located after a reasonable search, responsive to this Request limited to Defendants' communications with Nokia, Ericsson, Huawei, ZTE, or Samsung from January 13, 2015 to present***, to the extent that such documents exist and are in Defendants' custody, possession, and control. Negotiations with MACOM are ongoing as to the timing of document productions.

(Emphasis added.)

## 4.     Infineon Refuses To Produce Documents Regarding Its Affirmative Defenses

In their answers, Infineon Americas and Infineon AG individually and collectively asserted a long list of affirmative defenses, including (among others) prosecution history estoppel, illegality/unenforceability of Section 2.1 of the 2010 License Agreement, financial interest privilege, advisor's privilege, competitors'

privilege, "equitable defense," failure to mitigate damages, and "limitations on damages."[4]  Dkt. 291; Dkt. 323-1.

MACOM has made repeated efforts to obtain discovery on these affirmative defenses, only to be blocked by Infineon at every turn.

First, MACOM propounded Request for Production No. 88, which sought: "All documents related to Infineon's affirmative defenses, as set forth in Infineon Americas' Second Amended Answer and Counterclaim (Dkt. 323-1) and Infineon AG's Answer and Affirmative Defenses (Dkt. 291)."  Ex. 21.  Infineon responded that "Defendants will not produce documents in response to this Request."  *Id*.

MACOM then sought to meet-and-confer with Infineon on this issue.  Ex. 12. (January 4, 2018 letter).  When the parties conferred, Infineon maintained its objection to producing any documents in response to this request, contending that it was overbroad.  Ex. 13.

Although it disagreed with Infineon's position, MACOM nevertheless then served requests directed to each individual affirmative defense Infineon raised (example pasted below) to attempt to resolve Infineon's objection.  *See* Ex. 14 at Request Nos. 104-118.

When Infineon responded to these requests, it ***still*** refused to produce any documents.  *Id*.  MACOM again conferred with Infineon, but Infineon remained steadfast in its refusal to produce any responsive documents regarding its affirmative defenses.  *See* Ex. 15.

**<u>REQUEST FOR PRODUCTION NO. 88</u>**
    All documents related to Infineon's affirmative defenses, as set forth in Infineon Americas' Second Amended Answer and Counterclaim (Dkt. 323-1) and Infineon AG's Answer and Affirmative Defenses (Dkt. 291).

---

[4]  At the time these requests were propounded, the operative answers were Infineon's answers to the Second Amended Complaint, Dkt. 291 and 323-1. Infineon has since amended its answers to add additional defenses, but the original defenses list here remain at issue.

**RESPONSE:**

In addition to the foregoing general objections, Defendants object to this Request as vague, ambiguous, overbroad and unduly burdensome in that it seeks "All documents related to Infineon's affirmative defenses" without limitation and to the extent it seeks documents that are not proportional to the needs of this action. Defendants further object to this Request as overbroad and unduly burdensome as it fails to state with particularity the documents sought by the Request. Furthermore, Defendants object to this Request to the extent it calls for information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, and/or any other applicable privilege or immunity, or that is otherwise protected from disclosure. Defendants also object to the extent this Request seeks information in the possession, custody, or control of MACOM and/or third parties other than Defendants.

Based on the foregoing general and specific objections, Defendants will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 109**

All documents related to Infineon's affirmative defense of "Illegality/Unenforceability of Section 2.1."

**RESPONSE:**

In addition to the foregoing general objections, Defendants object to this Request as vague, ambiguous, overbroad and unduly burdensome in that it seeks "[a]ll documents related to Infineon's affirmative defense of 'Illegality/Unenforceability of Section 2.1,'" as it fails to state with particularity the documents sought by the Request. Additionally, Defendants object to this Request to the extent it calls for information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, and/or any other applicable privilege or immunity, or that is otherwise protected from disclosure. Defendants also object to the extent this Request seeks information in the possession, custody, or control of MACOM and/or third parties other than Defendants. Further, Defendants object to this request in that it amounts to a request to marshal all of Defendants' evidence.

Based on the foregoing general and specific objections, Defendants will not produce documents in response to this request.[5]

---

[5]   For space reasons, MACOM includes a single exemplar of its individual

### 5.   Infineon Refuses To Provide Information On GaN-on-SiC or LDMOS

For RF power amplifier products for basestations, there are three competing technologies.  Traditionally, these products were made from wafers of silicon (Si) using a process known as LDMOS (laterally diffused metal oxide semiconductor).  *See* Ex. 18 at ¶12.  LDMOS technologies are cheap, but struggle to meet today's performance requirements.  *Id.* at ¶13.  GaN-on-SiC and GaN-on-Si have therefore emerged as alternatives to LDMOS.  *Id.* at ¶¶14-18.

GaN-on-SiC products perform well, but are expensive.  *Id.* at ¶15.  GaN-on-Si presents the happy medium:  it is cheaper than GaN-on-SiC, but performs better than LDMOS.  MACOM placed its bets—and invested enormous sums of money—on its belief that GaN-on-Si is the product of the future.  Market adoption for these types of products can be slow, however, given that it takes years to design the products in question, which are technically complex, and given that customers are risk-averse.

MACOM offers only GaN-on-Si RF basestation products.  Historically, Infineon has offered GaN-on-SiC products and LDMOS products.  With its purchase of IR and the events that have followed, Infineon is attempting to also launch GaN-on-Si products.

Infineon's actions before this suit was filed and during the first two years it has been litigated demonstrate why revenues relating to GaN-on-SiC and LDMOS sales are relevantly.  First, in purporting to terminate MACOM's license agreement (an action that the Federal Circuit has already confirmed as a matter of law was ineffective), Infineon sowed market confusion with customers who were no longer sure that they could safely buy from MACOM.  Ex. 19.  Second, MACOM contends that Infineon did its best to persuade customers to wait for ***Infineon's***

---

requests, does not include each of Request Nos. 104-118.  Those requests are set forth in Ex. 14, and are similar in form to Request No. 109, set forth here.

GaN-on-Si products to be ready—using its GaN-on-SiC and LDMOS products meanwhile—rather than buying MACOM.  *Id.*  Such actions necessarily diverted GaN-on-Si sales away from MACOM.[6]

Accordingly, in Request Nos. 125-126, MACOM sought basic sales, projection, strategy, and pricing documents from Infineon regarding GaN-on-SiC and LDMOS technologies.  Ex. 20.  MACOM has made clear in its damages interrogatory response the relevancy of this information to its damages theory.  *See* Ex. 19.  Infineon has refused to produce any such documents.  Infineon limited its responses, which seek information relating to projections and business strategy documents for Infineon's PL54 or RF Power group, to only documents that "relate to RF GaN-on-Si."  Ex. 20.  Likewise, in response to Request No. 127, Infineon only agreed to produce documents related to industry reports discussing GaN-on-Si and not either GaN more generally or GaN-on-SiC specifically.  *See id.*  In response to Request Nos. 137-138, Infineon refused to produce documents regarding its pricing for GaN-on-SiC and LDMOS products.  *See id.*  Similarly, Infineon refused to produce any documents regarding Infineon's strategy or projections for 5G cellular technologies as they relate to GaN-on-SiC or LDMOS in response to Request Nos. 141-142 and 144-145.  *See id.*

**REQUEST FOR PRODUCTION NO. 125**

All documents relating to any revenue, cost, or profit projections for the PL54 or RF Power group.

**RESPONSE:**

In addition to the foregoing general objections, Defendants object to this Request as overbroad and unduly burdensome in that it

---

[6]  More recently, two years into this litigation, Infineon announced the sale of its GaN-on-SiC and LDMOS RF power technologies to a third-party company for $430 million.  Given that Infineon's breaches of its agreements with MACOM artificially inflated the value of these sold assets, the sale of the business is also relevant to MACOM's damages theory, as MACOM's damages interrogatory response explains.

seeks "all documents relating to any revenue, cost, or profit projections for the PL54 or RF Power group" because it seeks information unrelated to any claims or defenses of one or more of the parties and because it does not place any limitation on the relevant time period. Defendants also object to this Request insofar as it requests documents that may contain any trade secret or other confidential research, development, or commercial information of Defendants, or of any third party to the extent such documents are in the possession of Defendants pursuant to confidentiality and  non-disclosure restrictions imposed by contract or law, without a protective order or equivalent protections by agreement of the parties in place to protect the confidentiality of such materials.

Subject to and without waiving these general and specific objections,

Defendants will produce relevant, non-privileged, non-cumulative, non-duplicative documents, located after a reasonable search, responsive to this Request, to the extent that such documents relate to RF GaN-on-Si, exist, and are in Defendants' custody, possession, and control.

## REQUEST FOR PRODUCTION NO. 126:

All quarterly business reviews or other documents for the PL54 or RF Power group related to business strategy, performance, plans, and/or projections.

## RESPONSE:

In addition to the foregoing general objections, Defendants object to this Request as overbroad and unduly burdensome in that it seeks "all quarterly business reviews or other documents for the PL54 or RF Power group related to business strategy, performance, plans, and/or projections" because it seeks information unrelated to any claims or defenses of one or more of the parties and because it does not place any limitation on the relevant time period. Defendants further object to the terms "business reviews," "business strategy," and performance" as vague and ambiguous. Defendants also object to this Request insofar as it requests documents that may contain any trade secret or other confidential research, development, or commercial information of Defendants, or of any third party to the extent such documents are in the possession of Defendants pursuant to confidentiality and non-disclosure restrictions imposed by contract or law, without a protective order or equivalent protections by agreement of the parties in place to protect the confidentiality of such materials.

Defendants further object to this Request to the extent it calls for information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, and/or any other applicable privilege or immunity, or that is otherwise protected from disclosure.

Subject to and without waiving these general and specific objections, Defendants will produce relevant, non-privileged, non-cumulative, non-duplicative documents, located after a reasonable search, responsive to this Request, to the extent that such documents related to RF GaN-on-Si, exist, and are in Defendants' custody, possession, and control.

## REQUEST FOR PRODUCTION NO. 127

All industry reports related to the basestation industry, including any reports discussing GaN-on-Si, GaN-on-SiC, and/or LDMOS.

## RESPONSE:

In addition to the foregoing general objections, Defendants object to this Request as overbroad and unduly burdensome in that it seeks "all industry reports related to the basestation industry, including any reports discussing GaN-on-Si, GaN-on-SiC, and/or LDMOS" because it seeks information unrelated to any claims or defenses of one or more of the parties and because it does not place any limitation on the relevant time period. Defendants also object to the term "basestation industry" and "reports" as ambiguous and vague. Defendants also object to the extent this Request seeks information in the possession, custody, or control of MACOM and/or third parties other than Defendants. Further, Defendants object to this Request insofar as it requests documents that may contain any trade secret or other confidential research, development, or commercial information of Defendants, or of any third party to the extent such documents are in the possession of Defendants pursuant to confidentiality and non-disclosure restrictions imposed by contract or law, without a protective order or equivalent protections by agreement of the parties in place to protect the confidentiality of such materials.

Subject to and without waiving these general and specific objections, Defendants will produce relevant, non-privileged, non-cumulative, non-duplicative documents, located after a reasonable search, relating to reports discussing GaN-on-Si in the base station industry, to the extent that such documents exist and are in Defendants' custody, possession, and control.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## REQUEST FOR PRODUCTION NO. 137

All documents regarding Infineon's prices, or intended prices, of GaN-on-Si products or technology for basestations.

## RESPONSE:

In addition to the foregoing general objections, Defendants object to this Request as overbroad and unduly burdensome in that it seeks "[a]ll documents regarding Infineon's prices, or intended prices, of GaN-on-Si products or technology for basestations" because it seeks information that is not relevant to one or more claims of one or more of the parties or proportional to the needs of this case. Further, Defendants object to this Request insofar as it requests documents that may contain any trade secret or other confidential research, development, or commercial information of Defendants pursuant to confidentiality and non- disclosure restrictions imposed by contract or law, without a protective order or equivalent protections by agreement of the parties in place to protect the confidentiality of such materials. Additionally, Defendants object to this Request to the extent it calls for information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, and/or any other applicable privilege or immunity, or that is otherwise protected from disclosure.

Subject to and without waiving these general and specific objections, Defendants will produce relevant, non-privileged, non-cumulative, non-duplicative documents, located after a reasonable search, responsive to this Request, to the extent that such documents relate to GaN-on-Si RF, exist, and are in Defendants' custody, possession, and control.

## REQUEST FOR PRODUCTION NO. 138

All documents regarding Infineon's prices, or intended prices, of GaN-on- SiC products or technology for basestations.

## RESPONSE:

In addition to the foregoing general objections, Defendants object to this Request as overbroad and unduly burdensome in that it seeks "[a]ll documents regarding Infineon's prices, or intended prices, of GaN-on-Sic products or technology for basestations" because it seeks information that is not relevant to one or more claims of one or more of the parties or proportional to the needs of this case.

-25-

Further, Defendants object to this Request insofar as it requests documents that may contain any trade secret or other confidential research, development, or commercial information of Defendants pursuant to confidentiality and non- disclosure restrictions imposed by contract or law, without a protective order or equivalent protections by agreement of the parties in place to protect the confidentiality of such materials. Additionally, Defendants object to this Request to the extent it calls for information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, and/or any other applicable privilege

or immunity, or that is otherwise protected from disclosure.

Based on the foregoing general and specific objections, Defendants will not produce documents in response to this request.

## REQUEST FOR PRODUCTION NO. 141

All documents regarding Infineon's strategy for GaN-on-SiC technology or products for 5G.

## RESPONSE:

In addition to the foregoing general objections, Defendants object to this Request as overbroad and unduly burdensome in that it seeks "[a]ll documents regarding Infineon's strategy for GaN-on-SiC technology or products for 5G" because it seeks information that is not relevant to one or more claims of one or more of the parties or proportional to the needs of this case. Further, Defendants object to this Request insofar as it requests documents that may contain any trade secret or other confidential research, development, or commercial information of Defendants pursuant to confidentiality and non-disclosure restrictions imposed by contract or law, without a protective order or equivalent protections by agreement of the parties in place to protect the confidentiality of such materials. Additionally, Defendants object to this Request to the extent it calls for information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, and/or any other applicable privilege or immunity, or that is otherwise protected from disclosure.

Based on the foregoing general and specific objections, Defendants will not produce documents in response to this request.

## REQUEST FOR PRODUCTION NO. 142

All documents regarding Infineon's strategy for LDMOS technology or products for 5G.

**RESPONSE:**

In addition to the foregoing general objections, Defendants object to this Request as overbroad and unduly burdensome in that it seeks "[a]ll documents regarding Infineon's strategy for LDMOS technology or products for 5G" because it seeks information that is not relevant to one or more claims of one or more of the parties or proportional to the needs of this case. Further, Defendants object to this Request insofar as it requests documents that may contain any trade secret or other confidential research, development, or commercial information of Defendants pursuant to confidentiality and non-disclosure restrictions imposed by contract or law, without a protective order or equivalent protections by agreement of the parties in place to protect the confidentiality of such materials. Additionally, Defendants object to this Request to the extent it calls for information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, and/or any other applicable privilege or immunity, or that is otherwise protected from disclosure.

Based on the foregoing general and specific objections, Defendants will not produce documents in response to this request.

**REQUEST FOR PRODUCTION NO. 144**

All documents regarding revenue, cost, or profit projections for GaN-on-SiC technology or products for 5G.

**RESPONSE:**

In addition to the foregoing general objections, Defendants object to this Request duplicative of RFP No. 141. Defendants also object as overbroad and unduly burdensome in that it seeks "[a]ll documents regarding revenue, cost, or profit projections for GaN-on-SiC technology or products for 5G" because it seeks information that is not relevant to one or more claims of one or more of the parties or proportional to the needs of this case. Further, Defendants object to this Request insofar as it requests documents that may contain any trade secret or other confidential research, development, or commercial information of Defendants pursuant to confidentiality and non-disclosure restrictions imposed by contract or law, without a protective order or equivalent protections by agreement of the parties in place to protect the confidentiality of such materials. Additionally, Defendants object to this Request to the extent it calls for information protected from discovery by the attorney-client privilege, the attorney work-

product doctrine, and/or any other applicable privilege or immunity, or that is otherwise protected from disclosure.

Based on the foregoing general and specific objections, Defendants will not produce documents in response to this request.

## REQUEST FOR PRODUCTION NO. 145

All documents regarding revenue, cost, or profit projections for LDMOS technology or products for 5G.

## RESPONSE:

In addition to the foregoing general objections, Defendants object to this Request duplicative of RFP No. 142. Defendants also object as overbroad and unduly burdensome in that it seeks "[a]ll documents regarding revenue, cost, or profit projections for LDMOS technology or products for 5G" because it seeks information that is not relevant to one or more claims of one or more of the parties or proportional to the needs of this case. Further, Defendants object to this Request insofar as it requests documents that may contain any trade secret or other confidential research, development, or commercial information of Defendants pursuant to confidentiality and non-disclosure restrictions imposed by contract or law, without a protective order or equivalent protections by agreement of the parties in place to protect the confidentiality of such materials. Additionally, Defendants object to this Request to the extent it calls for information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, and/or any other applicable privilege or immunity, or that is otherwise protected from disclosure. Based on the foregoing general and specific objections, Defendants will not produce documents in response to this request.

## B.    Defendants' Factual Background

Plaintiffs bring this motion to compel responses to five sets of discovery requests.  For many of these issues, Plaintiffs ignored the Local Rules of this Court by failing to properly meet and confer (or even attempting to meet and confer) under Local Rule 37-1.  This noncompliance alone justifies denying Plaintiffs' motion as to these requests.  As demonstrated by Defendants' arguments below,[7] Plaintiffs' motion

---

[7] Local Rule 37-2.1 provides that "[f]or example, if the sufficiency of an answer

1    should be denied in its entirety.  Defendants will address Plaintiffs' factual allegations

2    below with the arguments.

3    **III.    LEGAL STANDARD**

4           **A.    MACOM's Statement On The Legal Standard**

5           A party may "obtain discovery regarding any nonprivileged matter that is

6    relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  Relevancy is

7    construed broadly to encompass "any matter that bears on, or that reasonably could

8    lead to other matter[s] that could bear on any issue that is or may be in the case."

9    *Godinez v. Alta-Dena Certified Dairy*, CV151652RSWLSSX, 2016 WL 6917270, at

10   *1 (C.D. Cal. Jan. 22, 2016) (citation omitted).  "Discovery should ordinarily be

11   allowed under the concept of relevancy unless it is clear that the information sought

12   can have no possible bearing upon the subject matter of this action."  *Id.* (citation

13   omitted).  "The party seeking production has the burden of showing relevancy, and

14   once that burden is met, the burden shifts to the party opposing production to show

15   that other sources exist from which the information is readily obtainable."

16   *Rutherford v. Palo Verde Health Care Dist.*, EDCV1301247JAKSPX, 2014 WL

17   12632904, at *3 (C.D. Cal. Dec. 1, 2014)

18          **B.    Defendants' Statement On The Legal Standard**

19          "Parties may obtain discovery regarding any nonprivileged matter that is

20   relevant to any party's claim or defense and proportional to the needs of the case . . ."

21   FED. R. CIV. P. 26(b)(1).  "On motion or on its own, the court must limit the frequency

22   or extent of discovery otherwise allowed by these rules or by local rule if it determines

23

24   _____

     to an interrogatory is in issue, the stipulation shall contain, verbatim, both the
25   interrogatory and the allegedly insufficient answer, followed by each party's
     contentions as to that particular interrogatory, separately stated."  L.R. 37-2.1.  To
26   comply with this provision, Defendants discuss the background contentions for
     each particular set of requests in each corresponding argument section, as set forth
27   below.  Here, Defendants discuss the factual background generally to conform to
     the format Plaintiffs selected in this Joint Stipulation.
28

1  that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be

2  obtained from some other source that is more convenient, less burdensome, or less

3  expensive; (ii) the party seeking discovery has had ample opportunity to obtain the

4  information by discovery in the action; or (iii) the proposed discovery is outside the

5  scope permitted by Rule 26(b)(1)." FED. R. CIV. P. 26(b)(2)(C).  Though relevance is

6  a gateway concern, "discovery must be narrowly tailored and must not be a fishing

7  expedition."  *Prime Healthcare Centinela, LLC v. Kimberly-Clark Corp.*, CV 14-

8  8390-DMG(PLAx), 2016 WL 7045608, at *2 (C.D. Cal. Mar. 23, 2016) (Abrams,

9  M.J.) (quotations and alterations omitted).  A court will not compel responses to

10  requests that are "impermissibly overbroad, and if answered would produce much

11  tangential if not irrelevant information."  *Id*. (quotations omitted).

12  **IV.   ARGUMENT**

13  **A.     MACOM's Argument**

14        Infineon cannot hide its reasons for acquiring IR, noninfringement theories,

15  customer communications, and facts related to its affirmative defenses or damages

16  from MACOM.  This information is undisputedly relevant to the case, and MACOM

17  has pursued numerous avenues to obtain this information from Infineon.  Infineon

18  should be compelled to provide it.

19  **1.     Infineon Must Provide Information About Its Valuation of IR**

20        Infineon AG's actions in acquiring IR (now Infineon Americas), followed by

21  Infineon AG causing Infineon Americas to avoid, terminate, misconstrue, and

22  ignore its obligations under a series of 2010 agreements between IR and Nitronex

23  (now MACOM), are central to MACOM's tortious interference claim, as well as its

24  breach of contract claims. *See generally* Dkt.  445.  Accordingly, MACOM has

25  sought documents regarding Infineon's reasons for acquiring IR.  Ex. 3 at Request

26  No. 44, Ex. 20 at Request No.136.  Infineon would only agree to provide any

27  information about the acquisition if it directly refers to GaN-on-Si, however.  Ex. 3

28  at Request No. 44.  Infineon has also refused to produce documents about Infineon's

valuation of IR before the acquisition, despite serving a parallel request to MACOM for its valuation of Nitronex before it acquired it (Request No. 18 sought "All documents concerning any valuation of Nitronex, LLC before or during MACOM's acquisition of Nitronex, LLC").

Infineon's refusals are improper.  Infineon must provide information about all the reasons it acquired IR, and cannot limit it to merely those related to GaN-on-Si. MACOM must be able to understand the full picture of the acquisition to proceed with its claims.  *Pappas v. Naked Juice Co. of Glendora*, No. CV118276JAKPLAX, 2012 WL 12885108, at *3 (C.D. Cal. Oct. 18, 2012) (holding that plaintiffs were "entitled to the full range of documents sought given their relevance to [their] claims" despite defendant's attempt to limit the scope of plaintiffs' requests without consent); *see also Woodard v. Labrada*, EDCV16189JGBSPX, 2017 WL 1018306, at *3 (C.D. Cal. Mar. 6, 2017) ("A 'relevant matter' under Rule 26(b)(1) is any matter that 'bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.'") (citation omitted).  MACOM therefore requests the Court compel Infineon to produce all documents responsive to Request Nos. 44 and 136.

## 2.      Infineon Must Provide Its Noninfringement Theories

MACOM has attempted to learn Infineon's noninfringement theories through a variety of avenues, including Interrogatories No. 12 and 13.  But Infineon has refused to provide a substantive response to these interrogatories, leaving MACOM with ***no*** information as to what theories Infineon intends to advance at trial as to why it supposedly does not practice the Nitronex Patents.  This is improper.

A defendant must provide a plaintiff with its noninfringement contentions when requested*.  Halo Elecs., Inc. v. Bel Fuse Inc.,* C07-06222 RMW HRL, 2010 WL 4586380, at *4 (N.D. Cal. Nov. 4, 2010) (granting motion to compel noninfringement contentions); *Stamps.com, Inc. v. Endicia, Inc., PSI Sys. Inc.*, CV 06-7499ODWCTX, 2009 WL 2576371, at *4 (C.D. Cal. May 21, 2009) (ordering

claim-by-claim noninfringement contention chart).  Infineon cannot hide its

contentions from MACOM until trial; it must share them now.  This is particularly

true in the light of the fact that MACOM has provided its own, detailed

infringement contention charts to Infineon months ago.  *See* Example chart in Ex. 8.

"Courts have found requiring a defendant to answer a non-infringement contention

interrogatory is not premature where the plaintiff has already provided its

infringement contention with corresponding claim charts, which allow the defendant

to respond accordingly."  *Facedouble, Inc. v. Face.com, Inc.*, 12CV1584-DMS

MDD, 2014 WL 585868, at *2 (S.D. Cal. Feb. 13, 2014).

Infineon's response to Interrogatory No. 12 contains only boilerplate

objections and then denials that it practices the Nitronex Patents based on the vague

statement that MACOM has not proven that it does.  This is grossly insufficient

under the law.  *See Finjan, Inc. v. ESET, LLC*, 17CV183 CAB (BGS), 2018 WL

1456923, at *3 (S.D. Cal. Mar. 23, 2018) ("Various jurisdictions have found that a

'recit[ation of the] various claim terms and ... unexplained denials of infringement'

is not a sufficient response to a non-infringement contention.").

Likewise, Infineon improperly refuses to respond to Interrogatory No. 13,

which seeks an explanation of any denials of RFAs.  Infineon's suggestion in

previous briefing that this interrogatory is *per se* prohibited or exceeds the limits for

interrogatories is wrong.  Courts have expressly approved of MACOM's style of

combining of noninfringement contention RFAs with a follow-up interrogatory for

an explanation of any denials.  *See B. Braun Med. Inc. v. Abbott Laboratories,* 155

F.R.D. 525, 528 (E.D. Pa. 1994) (explaining that interrogatories seeking the basis

for denials of patent element RFAs "must be answered").

Furthermore, Infineon previously argued to the Court in the context of

Infineon's motion to quash MACOM's RFAs that there is a *per se* ban on such

interrogatories, citing *Safeco of America v. Rawstron*, 181 F.R.D. 441 (C.D. Cal.

1998).  There is no such ban, however, and courts applying *Safeco* have concluded

1    that "an interrogatory that requests 'all facts' in support of a refusal to admit specific

2    relevant facts is not burdensome and oppressive *per se.*"  *Chapman v. California*

3    *Dep't of Educ.*, No. C-01-1780 CRB (EMC), 2002 WL 32854376, at *2 (N.D. Cal.

4    Feb. 6, 2002).  Such interrogatories "may facilitate development of the case."  *Id.*

5    Moreover, *Safeco* did not involve any patent claims (it was an insurance fraud case),

6    and courts have recognized that "[p]atent cases present unique challenges with

7    respect to the application of Rule 33's numerical limitation in interrogatories."

8    *Synopsys, Inc. v. ATopTech, Inc*, 319 F.R.D. 293, 294 (N.D. Cal. 2016).  Where

9    products or patents-in-suit "cover similar technology" and the products infringe in

10   "substantially similar ways" each interrogatory is ***not*** counted separately.  *Id.*

11        MACOM is entitled to discovery on Infineon's noninfringement positions.

12   *See, e.g.*, *Stamps.com, Inc. v. Endicia, Inc., PSI Sys. Inc*., CV 06-7499ODWCTX,

13   2009 WL 2576371, at *4 (C.D. Cal. May 21, 2009) (ordering Defendant to provide

14   the requested noninfringement claim chart showing, on a claim-by-claim basis, why

15   the accused products do not infringe the patents-in-suit).  Infineon can provide the

16   requested information through its response to Interrogatory No. 12 or through its

17   response to Interrogatory No. 13, but Infineon should be compelled to provide a

18   substantive response to one or the other so that MACOM is on notice of Infineon's

19   "noninfringement" theories before trial.

20        In the alternative, Infineon should be limited at trial to only the positions that

21   it has already taken in response to Interrogatory No. 12 (*i.e.*, failure of proof), since

22   it has failed to disclose any other contentions.  *In re Katz Interactive Call*

23   *Processing Pat. Litig.*, No. 07-ML-01816-RGK FFMX, 2011 WL 8472388, at *2

24   (C.D. Cal. Jan. 14, 2011) (striking noninfringement argument from summary

25   judgment briefing that was not included in noninfringement contentions); *see also*

26   *Multimedia Pat. Tr. v. DirecTV, Inc.,* No. 09-CV-278-H (CAB), 2011 WL

27   13100719, at *3 (S.D. Cal. Mar. 4, 2011) (granting default judgment due to failure

28

to substantiate its denial of infringement in response to noninfringement contention interrogatories).

### 3.    Infineon's Customer Communications Are Indisputably Relevant, But It Has Not Conducted A Reasonable Search For Them

As described above, this case is somewhat unique in that there are only four or five major customers whose communications are relevant.  There can be no dispute that Infineon's communications with basestation customers are highly relevant, and indeed central, to this case, given that Infineon is alleged to have breached its promises regarding marketing of products, and given that Infineon has denied any marketing activities—even going so far as to claim that talking to customers about future products is not "marketing."  *See* Dkt. 363-1 at 1 ("technology discussions are not 'marketing' of GaN-Si RF products"), 5 ("Infineon AG and its affiliates informed customers of their future technology plans, but those discussions differ from marketing of products"); 8 ("Ericsson AFE discussions involved a joint development proposal—not marketing of products").

Infineon not only agreed to produce these communications in its discovery responses, but expressly assured MACOM's counsel that it would be producing such communications.  *See* Ex. 4.  Nevertheless, Infineon's production is plainly deficient.  It has only produced 306 emails with customers.  Banzhoff Decl. ¶25. Indeed, Infineon produced only *eight* emails with ZTE, thirteen emails with Huawei, and fifty-one emails with Nokia.  *Id.*  These low numbers makes clear that Infineon did not adequately search for these communications, particularly given the context of basestation RF power products.  These products are not "off the shelf" products. They require extensive "discussion with the customer as to their application."  Ex. 6, Ward Tr. at 92:18-93:12.

These customers are located across the world.  *See* Ex. 7, Hugo Tr. at 22:18-29:25.  Infineon employs an account manager for each region that is responsible for each customer in each region.  *Id.*  at 22:18-24.  Infineon failed to conduct searches

of the emails account managers for the majority of its basestation customers. *Compare* Ex. 7, Hugo Tr. at 22:18-29:25 (identifying account managers for basestation customers including ██████████████████████ ███████████████████████████████████ *with* Banzhoff Decl. ¶24.

Further, Infineon cannot take the position that it did not produce its customer communications because they were in the possession of Infineon affiliates, rather than the Infineon entities named as defendants in this case. MACOM expressly raised the issue of whether Infineon would be producing documents from its affiliates. *See* Ex. 16, 22. The parties conferred on this issue, and Infineon agreed it would ***not*** withhold documents on the basis that there were affiliate communications. *See* Ex. 13, Ex. 23 at ¶2.

In short, there is no excuse for the grossly insufficient collection efforts that Infineon has undertaken with respect to one of the central issues in the case. Infineon should be compelled to conduct a reasonable search and produce its communications with basestation customers, including those responsive to Request Nos. 16, 19, 20, 21, and 83.

### 4.  Infineon Must Produce Documents Regarding Its Affirmative Defenses

As described above, in addition to an affirmative defense of noninfringement, Infineon has raised numerous other affirmative defenses. Dkt. 291 and 323-1. MACOM appropriately sought discovery on each of these affirmative defenses, but Infineon has refused to produce ***any*** documents in response to these requests. Ex. 21 at Request No. 88, Ex. 14 at Request Nos. 104-118. This is improper.

A party must produce documents regarding its defenses (*i.e.*, both those that support it ***and*** those that refute it), and courts regularly grant motions to compel such documents. *Local.com Corp. v. Fry's Elecs., Inc.*, No. SACV120976JGBJPRX, 2013 WL 12139096, at *3 (C.D. Cal. Feb. 22, 2013) (granting motion to compel production of documents relevant to its defenses and

counterclaims as such requests are "consistent with Rule 11 of the Federal Rules of
Civil Procedure, which requires parties [to] have some factual basis for their claims
and allegations") (citing *Nat'l Acad. Of Recording Arts & Scis., Inc. v. On Point
Events, LP*, 256 F.R.D. 678, 682 (C.D. Cal. 2009)); *Garza v. Brinderson
Constructors, Inc.*, No. 15CV05742EJDSVK, 2017 WL 2861128, at *2 (N.D. Cal.
July 5, 2017) (ordering the production of all non-privileged documents "that relate[]
to [defendants'] allegations and defenses" in the action at issue); *Koninklijke Philips
Elecs. N.V. v. KXD Tech., Inc.*, No. 2:05CV01532RLH-GWF, 2007 WL 778153, at
*5-6 (D. Nev. Mar. 12, 2007) (granting motion to compel production of documents
that defendants may use in support of their denials and affirmative defenses).
MACOM accordingly requests that the Court compel Infineon to produce
documents responsive to Request Nos. 88 and 104-118.

## 5.     Infineon Must Respond To Requests For GaN-on-SiC And LDMOS Documents

As described above, Infineon's GaN-on-SiC and LDMOS business is
relevant to MACOM's breach of contract claims, and particularly to damages.
GaN-on-Si, GaN-on-SiC, and LDMOS are three competing technologies that
Infineon has marketed to basestation customers.  Infineon's breaches of its
agreements with MACOM have improperly prolonged sales for GaN-on-SiC and
LDMOS products (by Infineon and others) as they have diverted sales from GaN-
on-Si.  As described in MACOM's response to Infineon's damages contention
interrogatory, MACOM will be relying on Infineon's improperly prolonged sales
of LDMOS and GaN-on-SiC in connection with its damages case.  *See* Ex. 19.

MACOM is therefore entitled to basic sales, projection, strategy, and pricing
documents from Infineon regarding these technologies.  Infineon has refused to
produce any information related to GaN-on-SiC and LDMOS on the basis that it
does not believe this information is relevant.  *See* Ex. 15.  This argument cannot
stand in light of MACOM's plain reliance on this information in its damages case.

-36-

1   Infineon should therefore be compelled to produce documents responsive to Request

2   Nos. 125-127, 137-38, 141-42, and 144-45, including those relating to GaN-on-SiC

3   and LDMOS.

4   **B.     Defendants' Argument**

5   **1.     Plaintiffs are not entitled to <u>all</u> documents relating to the IR acquisition (RFPs 44 and 136).**

6   Plaintiffs' RFP No. 44 seeks **<u>ALL</u>** documents relating to the IR acquisition.

7   *See* RFP 44 ("All documents relating to Infineon's acquisition of International

8   Rectifier . . . ."). This request is overly broad, unduly burdensome, and not

9   proportional to the needs of the case. There is no claim that the acquisition of

10  International Rectifier was a breach of any agreement at issue or that the acquisition

11  itself constituted tortious interference. There can be no serious dispute that the

12  overwhelming proportion of the documents relating to the IR acquisition have

13  absolutely nothing to do with this lawsuit. IR's predominant business was ***power***

14  ***management***, which is unrelated to the ***RF*** business at issue in this lawsuit. The IR

15  acquisition was an enormous corporate acquisition—involving products, business

16  lines, manufacturing facilities, technology, and intellectual property ***completely***

17  ***unrelated*** to the technology and patents at issue in this case. To give the Court some

18  perspective, Infineon AG acquired IR for $3 ***billion***—that is ████████████

19  ████████████ that IR paid Nitronex for the patents at issue in this lawsuit. *See*

20  Ex. A, Hack and Sheahan, "Infineon agrees to buy Int'l Rectifier for $3 billion in

21  cash," Reuters, August 20, 2014. Based on these figures, the technology, patents, and

22  agreements at issue was ***less than*** ████ of the IR acquisition. Plaintiffs' request for

23  *ALL* documents relating to the IR acquisition, on its face, is ridiculous.

24  Defendants agreed to produce those documents that may be relevant to

25  Plaintiffs' purported justification for requesting the IR acquisition documents.

26  Plaintiffs' only justification for seeking these documents is their speculation that

27  Defendants acquired IR for the GaN-on-Si technology and intellectual property at

28

-37-

issue in this lawsuit.[8]  Plaintiffs' argument that the ▮▮▮▮ Nitronex patents at issue drove a $3 billion corporate acquisition strains credulity.   Nevertheless, Defendants have agreed to produce those documents that may be relevant to Plaintiffs' dubious claim.  Defendants have agreed to produce IR acquisition documents relating to the technology, patents, and agreements at issue (*i.e.*, GaN-on-Si technology, Nitronex, the Nitronex Patents, the 2004 License Agreement, the 2010 IP Purchase Agreement, or the 2010 License Agreement).  Defendants properly narrowed Plaintiffs' overbroad request for *all* IR acquisition documents to those documents that are proportional to Plaintiffs' purported justification for their request.  Plaintiffs never have provided any justification for further acquisition-related documents.  *See McKechnie Vehicle Components, USA, Inc. v. Lacks Indus., Inc.*, 09-11594, 2010 WL 11544995, at *5 (E.D. Mich. Dec. 14, 2010) (The court denied defendants' motion to compel diligence documents from the acquisition, acquisition documents relating to another patent, and all acquisition documents relating to defendants because "[p]laintiff has already produced the documents from the 2008 acquisition that relate to the patents-in-suit or the [accused product] and has produced the purchase agreement . . . [so, there is no] reasonable basis for the Court to conclude that delving further into the acquisition-related documents was necessary or appropriate in this case.")

Plaintiffs provide no explanation as to why the scope of Defendants' production is insufficient—an explanation that Plaintiffs should have included in their portion of this Joint Stipulation.[9]   Plaintiffs provide ***no justification*** for seeking ***all*** IR acquisition documents—including those ***unrelated*** to the technology, patents, and

---

[8] Plaintiffs point to Infineon AG's assertion of financial interest privilege but provide no explanation of why that privilege entitles Plaintiffs to *any* documents relating to the IR acquisition, much less *all* IR acquisition documents.

[9] The Court should reject any attempt by Plaintiffs to provide this explanation in their supplemental briefing so as to prevent Defendants from providing a substantive response.

1   agreements at issue in this lawsuit.  Plaintiffs' attempt to force Defendants to collect

2   and produce all documents relating to the $3 billion acquisition of entire corporation

3   (IR) is just a fishing expedition designed to create undue burden without any

4   proportionality to the alleged relevance of the information.

5        Plaintiffs' inclusion of RFP No. 136 does not change the analysis.  Plaintiffs'

6   Request for Production No. 136 seeks valuations of International Rectifier prior to the

7   acquisition.  It is duplicative of Request for Production No. 44, which requests all

8   documents relating to the acquisition.  Accordingly, Defendants objected to Request

9   No. 136 as duplicative and pointed Plaintiffs to Request for Production No. 44, where

10  Defendants had already agreed to produce responsive documents that relate to GaN-

11  Si technology, Nitronex, the Nitronex Patents, and the agreements.  Thus, Defendants

12  agreed to produce valuations to the extent that those valuations relate to the GaN-Si

13  technology, the patent, and the agreements at issue in this lawsuit (*i.e.*, GaN-Si

14  technology, Nitronex, the Nitronex Patents, the 2004 License Agreement, the 2010 IP

15  Purchase Agreement, or the 2010 License Agreement).  During the meet and confer

16  process, Defendants reiterated that Request for Production 136 was encompassed by

17  Request for Production No. 44.  There is no need to compel Defendants to produce

18  documents on duplicative requests.  *Carson Cheng v. AIM Sports, Inc.*, CV 10-3814-

19  PSG(PLAx), 2011 WL 13176752, at *3 (C.D. Cal. Jan. 18, 2011) (Abrams, M.J.)

20  ("The Court agrees with plaintiffs that the documents requested in Requests for

21  Production Nos. 4–6 and 22 appear to be duplicative of the documents requested in

22  Requests for Production Nos. 7–11, 16–20, 23–24, 27–34, 54–55, and 67–83.

23  Accordingly, plaintiffs' agreement to produce documents responsive to Requests for

24  Production Nos. 7–11, 16–20, 23–24, 27–34, 54–55, and 67–83 is deemed sufficiently

25  responsive." The motion to compel was thus denied.).  The Court should deny

26  Plaintiffs' Motion.

27

28

**2.      Plaintiffs fail to show that they are entitled to any relief with respect to Interrogatory Nos. 12 and 13 regarding non-infringement.**

Plaintiffs insist on ignoring not only the Court's specific limit of 25 interrogatories but also the Local Rules of the Court requiring them to confer in good faith prior to filing a motion to compel.  Plaintiffs never requested a conference on Defendants' responses to Interrogatories Nos. 12 and 13.  This failure is sufficient to deny their motion to compel.   In addition, contrary to Plaintiffs' allegations, Defendants responded to Interrogatory No. 12 with their non-infringement contentions, including detailed claim charts.   In fact, Defendants' response to Interrogatory No. 12 was so lengthy that Plaintiffs excluded it from this stipulation— again sidestepping the Court's Local Rules. L.R. 37-2.1. But Plaintiffs most notably fail to identify the specific additional information that they are seeking.  Interrogatory No. 13 is improper because it counts as 176 interrogatories, far in excess of the Court's 25-interrogatory limit.  Defendants objected and invited Plaintiffs to select which of 176 requests for admission they wish to apply toward their interrogatory limit of 25. After Defendants receive Plaintiffs' selection, Defendants will provide a response to Interrogatory No. 13.

**a)      Plaintiffs failed to meet and confer on Defendants' responses to Interrogatory Nos. 12 and 13, as required under the Local Rules.**

As a preliminary matter, Plaintiffs have not satisfied the requirements to bring a motion to compel concerning Interrogatory Nos. 12 and 13.  L.R. 37-1 ("Prior to the filing of any motion relating to discovery pursuant to F.R.Civ.P 26-37, counsel for the parties shall confer . . . It shall be the responsibility of counsel for the moving party to arrange for this conference.").   The rules of this Court specifically require Plaintiffs to request a conference and send a letter that "shall identify each issue and/or discovery request in dispute, shall state briefly with respect to each such issue/request the moving party's position (and provide any legal authority which the moving party believes is dispositive of the dispute as to that issue/request), and specify the terms of

the discovery order to be sought." *Id.*  Plaintiffs have not done so.

Plaintiffs served Interrogatory No. 12 on February 20, 2018, and two days later, on February 22, 2018, Plaintiffs served Requests for Admission 3 through 181 and Interrogatory No. 13.

On February 28, 2018, **before** Defendants had even served their responses to Interrogatory Nos. 12 and 13, Defendants asked to meet and confer regarding the number of admission requests served by Plaintiffs.  The parties eventually filed a joint stipulation, in which Defendants asked the Court to impose a limit on the number of requests for admission.  Dkt. 475-2.  In that joint stipulation, Plaintiffs sought to excuse their 181 requests for admission by blaming Defendants' response to Interrogatory No. 12.  In Defendants' supplemental memorandum, Defendants pointed out repeatedly that Plaintiffs never even requested a meet and confer on Interrogatory Nos. 12 and 13:

- "Moreover, since Defendants served their response to Interrogatory No. 12, Plaintiffs have not asked for a meet and confer on Interrogatory No. 12[.]" Dkt. 479 at 4:24–5:1; *see also id.* 1:21–22.

- "Similarly, given that the parties have not yet met and conferred as to Interrogatory Nos. 12 and 13, Plaintiffs' demands relating to those interrogatories (including a demand that Defendants be required to respond to the interrogatories or be limited to only certain non-infringement arguments at trial) are not properly before the Court.  The Local Rules set out the procedures required to file a motion directed at interrogatory responses.  Plaintiffs should not be permitted to simply transform Defendants' motion to set limits on admission requests into their own motion to compel interrogatory responses." *Id.* at 5:14–22.

In its order on that joint stipulation, the Court did not impose a limit on the number of requests for admissions.  But, as relates to the parties' current dispute, the Court also did not take up Plaintiffs' demands relating to Interrogatory Nos. 12 and 13.

Following Defendants' service of their response to Interrogatory No. 12 on March 22, 2018, the parties met and conferred at least seven times on various discovery disputes (March 26, April 5, April 9, April 11, May 14, May 15, and May

-41-

18).  Not once during those seven phone calls, did Plaintiffs request to meet and confer on Interrogatory Nos. 12 and 13.  After Defendants pointed out Plaintiffs' failure to meet and confer on Interrogatory Nos. 12 and 13 in the April 25th Memorandum quoted above, the parties had at least three subsequent phone calls regarding discovery issues, but Plaintiffs still never requested to meet and confer regarding Interrogatory Nos. 12 and 13.

Thus, Defendants were surprised that Plaintiffs included Defendants' response to Interrogatory Nos. 12 and 13 in their Joint Stipulation.  In Plaintiffs' portion of the joint stipulation, Plaintiffs assert that the parties met and conferred with respect to the *other* disputed issues.  *See supra* p. 7 (citing Exs. 16 and 17 for meet and confer about issue no. 1, the IR acquisition); p. 13 (citing Ex. 5 for a meet and confer about issue no. 3, customer communications); p. 19 (citing Exs. 12 and 13 regarding a meet and confer on issue no. 4, affirmative defense).  In stark contrast, Plaintiffs did not even assert that the parties met and conferred on Interrogatory Nos. 12 and 13, and even though the parties exchanged emails summarizing the content of their meet-and-confer telephone calls, Plaintiffs do not cite to any email summarizing a meet and confer regarding Defendants' responses to Interrogatory Nos. 12 and 13.

Defendants wrote to Plaintiffs' counsel about their failure to meet and confer.  Ex. B, Plaintiffs' Meet and Confer Failures email chain between Johnston and Banzhoff, at May 31, 2018 2:45 PM email from Johnston to Banzhoff.  Plaintiffs refused to identify any date and supporting material for any alleged meet and confer.  Plaintiffs simply pointed out that the issue was previously discussed "in the Infineon motion on the RFAs that has already been briefed to the Court."  *Id.*  at May 31, 2018 8:20 PM email from Banzhoff to Johnston.  But that motion was *not* a meet and confer.  Moreover, in that motion, Defendants had pointed out Plaintiffs failed to meet and confer.

Although Defendants' briefing put Plaintiffs on notice they had not yet met the Court's meet-and-confer requirement, Plaintiffs chose to ignore their duty to request

-42-

a meet and confer and to try to resolve the dispute before burdening the Court with this motion.  Plaintiffs' complaints regarding Interrogatories Nos. 12 and 13 are not properly before the Court and Plaintiffs' motion should be denied on this basis alone. *Rutherford v. PaloVerde Health Care Dist.*, EDCV 13-1247-JAK(SPx), 2014 WL 12633523, at *5 (C.D. Cal. Apr. 25, 2014) ("The record clearly reflects the parties made no genuine meet and confer efforts with respect to these requests.  Indeed, these requests were not even mentioned in the parties' correspondence after plaintiffs served their amended responses, unless one counts defendants' reference to an earlier letter . . . Accordingly, as to these requests, defendants' Motion to Compel is denied without prejudice to defendants renewing their motion after counsel have made a genuine effort to meet and confer."); *Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.*, SACV 12-0021-JST(JPRx), 2012 WL 12896204, at *1 (C.D. Cal. Oct. 17, 2012) ("Accordingly, Plaintiff's motion to compel is DENIED as to Requests Nos. 1-13, 15-26, 28-31, 36-37, 39-40, 42-45, 47-51, 54-55, 58, 63, and 66 because Plaintiff has failed to comply with the meet-and-confer requirements of Local Rule 37-1."); *Sherman v. CLP Res., Inc.*, CV 12-8080-GW(PLAx), 2015 WL 13543541, at *6 (C.D. Cal. July 17, 2015) ("[N]or do the meet and confer documents submitted with regard to the October 23, 2014, Requests and the January 20, 2015, Amended Requests at issue herein include these issues.  Accordingly, the Court agrees with defendant that this issue is beyond the scope of this Motion.").

Plaintiffs should be sanctioned for their deliberate failure to meet and confer. L.R. 37-4 ("The failure of any counsel to comply with or cooperate in the foregoing procedures may result in the imposition of sanctions."); *Sky Billiards, Inc. v. SIF Servs., LLC*, EDCV 14-2293-JGB(SPx), 2015 WL 12656922, at *3 (C.D. Cal. Oct. 16, 2015) (sanctioning plaintiff for failing to comply with the Local Rules' meet and confer requirements by not responding to defendant's letter request for a meet and confer); Judge's Procedures and Schedules for the Honorable Paul L. Abrams, *available at* https://www.cacd.uscourts.gov/honorable-paul-l-abrams ("Strict

compliance with Local Rule 37 is required."). Plaintiffs offer no explanation for their failure to meet and confer, and their portion of this Joint Stipulation contains no evidence that such a meet and confer actually occurred. Had Plaintiffs complied with their meet-and-confer obligations, the parties may have avoided these disputes entirely. Instead, Plaintiffs preemptively brought their complaints to the Court. The Local Rules do not contemplate or permit this procedure, which resulted in Defendants preparing lengthy briefing in response. As a result, Plaintiffs should be sanctioned by reimbursing Defendants for their fees and costs in preparing this Joint Stipulation.

### b) Defendants have answered Interrogatory No. 12, and Plaintiffs have failed to specify what additional information Plaintiffs are seeking.

Plaintiffs assert that "Infineon has refused to provide a substantive response to these interrogatories, leaving [Plaintiffs] with *no* information as to what theories Infineon intends to advance at trial as to why it supposedly does not practice the Nitronex Patents." This is plainly false.

Plaintiffs try to get away with this false assertion by excluding Defendants' complete interrogatory response in violation of the Local Rules. Defendants' response begins by providing three pages of non-infringement defenses that apply across all claims:







In addition, for each of the asserted claims, Defendants provide a claim chart identifying the specific claim limitations that are missing from Plaintiffs' infringement claim charts.  Ex. 9, Defendants' Response to MACOM's Interrogatory No. 12, at 4–36.  The claim charts do not identify non-infringement arguments for all claim elements.   For example, Defendants did not provide any separate non-infringement position for the term "substrate."  Nevertheless, Plaintiffs complain that Defendants have identified non-infringement positions for too many of the claim elements.   The large number of non-infringement positions, however, simply demonstrates that the asserted claims and Plaintiffs' infringement contentions are deeply flawed.

In view of the three-page narrative and the nearly 30 pages of claims charts, Plaintiffs cannot credibly state that they have "**no** information" regarding Defendants' noninfringement theories.

Plaintiffs fail to specify what specific additional information they are seeking. The Court should reject any attempt by Plaintiffs to include with their supplemental brief such a request for specific information.  Plaintiffs should have first raised any requests for specific information in a meet and confer.  If they had done so, Defendants could have considered those requests.  Because there was no meet and confer, Defendants are at a total loss for what additional information Plaintiffs are seeking.  Even in this Joint Stipulation, Plaintiffs fail to identify the specific additional information that they are seeking.  By waiting until their supplemental brief to make such a request, Plaintiffs are seeking to prevent Defendants from providing a substantive response.  The Court should reject such gamesmanship.

Because Defendants have provided a response to Interrogatory No. 12 and Plaintiffs failed to identify what specific additional information Plaintiffs are seeking,

Plaintiffs' motion should be denied with respect to Interrogatory No. 12.

**c)** **Defendants are willing to respond to Interrogatory No. 13 but only to the extent that Plaintiffs identify specific Requests for Admission to stay within the Court's 25-interrogatory limit.**

Through Interrogatory No. 13, Plaintiffs actually seek to compel Defendants to answer 176 interrogatories. Defendants have never stated, as Plaintiffs argue, that Plaintiffs' Interrogatory No. 13 is banned *per se*. Instead, Defendants object because Plaintiffs' Interrogatory No. 13 is an attempt to sidestep the Court's express ruling limiting the number of interrogatories to 25.

Interrogatory No. 13 asks to "explain why, including an identification of which particular element(s) you do not believe the identified product practices, and all factual and legal bases for that belief" for 176 separate Requests for Admission. This transforms each of those 176 Requests for Admission into a separate interrogatory. *Safeco of America v. Rawstron*, 181 F.R.D. 441, 445 (C.D. Cal. 1998) ("Allowing service of an interrogatory which requests disclosure of all of the information on which the denials of each of 50 requests for admissions were based, however, essentially transforms each request for admission into an interrogatory."); *see also Scott v. Keller*, No. 2:07-cv-00184, 2010 WL 1267772, at *3–4 (E.D. Cal. March 21, 2010) ("Interrogatory No. 1 states 'if your response to request for admission no. 1, 6-10, set one is anything other than an unequivocal admission, state all facts upon which your response is based.' . . . This is actually six interrogatories because it requests information based upon six different requests for admissions. Thus, Plaintiff has exceeded the limit of twenty-five interrogatories."). This practice "circumvent[s] the numerical limit contained in Rule 33(a) . . . [and] [u]tilizing interrogatories disguised as requests for admission in an attempt to circumvent a local rule limiting the number of interrogatories is an abuse of the discovery process." *Safeco of America*, 181 F.R.D. at 445–46 (quoting *In re Olympia Holding Corp.*, 189 B.R. 846, 853 (Bankr. M.D. Fla. 1995)).

-48-

The cases Plaintiffs cite do not contradict that there are as many interrogatories as there are requests for admission.  The court in *Chapman v. Cal. Dep't of Educ.* followed *Safeco*'s rule that "an interrogatory asking for the basis for denial of any requests for admission is treated as many interrogatories as there are requests for admission."  No. C-01-2780 CRB (EMC), 2002 WL 32854376, at *2 (N.D. Cal. Feb. 6, 2002) (citations omitted).  Plaintiffs' main support, *B. Braun Med. Inc. v. Abbott Labs.*, did not deal with how to count interrogatories asking for the basis for denial, but with whether those interrogatories should be answered. 155 F.R.D. 525, 528 (E.D. Pa. 1994).  Finally, *Synonpsys, Inc. v. ATopTech, Inc* does not address interrogatories asking for the basis of a denial of requests for admission. 319 F.R.D. 293 (N.D. Cal. 2016).  Thus this case does not speak to the issue here.

Plaintiffs' attempt to force Defendants to answer 176 interrogatories disguised as one interrogatory is a clear abuse of discovery.  Defendants are willing to respond to interrogatories seeking the basis of their denial of Plaintiffs' Request for Admission, up to the limit on interrogatories set by the Court.  Rather than choosing for Plaintiffs which requests for admission to apply toward Plaintiffs' 25 interrogatory limit, Defendants have left this decision to Plaintiffs. Defendants invited Plaintiffs to identify the Requests for Admissions for which Plaintiffs want an answer.  Because Plaintiffs never requested a meet and confer, Plaintiffs never provided any an answer to Defendants' inquiry.  Any delay is only attributable to Plaintiffs' preferred tactic of compelling discovery rather than conferring with opposing counsel.  Plaintiffs' motion should be denied.

### 3. Plaintiffs' complaints about Defendants' production of customer communications (RFPs 16, 19, 20, 21 and 83) were never raised during any meet and confer and are not properly before the Court.

Plaintiffs seek to compel production of communications with customers regarding GaN-on-Si RF technology and seek an order requiring Defendants to provide a detailed description of their search strategy.  Plaintiffs complaint is not that

1    Defendants refused to produce documents.  Indeed, as Plaintiffs admit, Defendants
2    agreed to produce these documents.  Rather, Plaintiffs raise various complaints about
3    Defendants' search strategy, such as particular persons whose documents should be
4    searched and particular search keywords.

5          Astonishingly, Plaintiffs never raised any of these complaints with Defendants
6    before bringing them to the Court.  Until Plaintiffs served the joint stipulation,
7    Defendants had no idea that Plaintiffs were even considering filing a motion on these
8    requests.  On the contrary, the very last communication from Plaintiffs on the issue
9    occurred about three months ago and stated that Plaintiffs would ***not*** be moving to
10   compel on these requests.

11         Defendants have put a great deal of time and effort into collecting and
12   producing documents in response to Plaintiffs' requests.  Defendants have collected
13   documents from at least 28 individuals and have produced over 50,000 documents
14   totaling around 500,000 pages.  This is more than twice the number of documents and
15   individual custodians in Plaintiffs' production (around 24,000 documents from 13
16   identified individual custodians).  And Defendants' documents have indisputably
17   included communications with customers about GaN-on-Si technology.  That there
18   were not as many of these communications as Plaintiffs hoped is no justification to
19   bypass the conference requirements of the Local Rules.  Had Plaintiffs bothered to
20   discuss their concerns with Defendants before filing a motion, the parties likely could
21   have worked out a resolution or at least narrowed the dispute.  After learning of
22   Plaintiffs' complaints via the joint stipulation, Defendants requested that Plaintiffs
23   withdraw this aspect of their motion in favor of meaningful participation in a meet
24   and confer, but Plaintiffs refused.  The Court should likewise refuse to entertain
25   Plaintiffs' motion and instead order Plaintiffs to confer with Defendants before filing
26   discovery motions, just as Local Rule 37 requires.  Defendants further request that
27   Plaintiffs be sanctioned for charging ahead with motion practice without even
28   attempting to comply with the conference requirement, wasting the Court's time and

generating attorney fees on unnecessary briefing.

### a.   Background

Defendants' responses to the requests at issue indicate that they will produce non-privileged communications with customers regarding GaN-on-Si RF technology, wafers, or products located after a reasonable search.  After Defendants served their responses, the parties met and conferred exactly once on these requests on March 5, 2018.  During that conference, the sole topic of discussion as to these requests was whether Defendants intended to search for and produce GaN-on-Si RF customer communications.  Defendants confirmed that they would do so, just as indicated in the written responses.  Plaintiffs made no suggestion as to particular custodians or search terms.  Indeed, there was no discussion whatsoever regarding the specifics of the search parameters Defendants would or should use.  In a follow-up e-mail, Plaintiffs confirmed that, based on the discussion during the meet and confer, they would not be moving to compel production of GaN-on-Si RF customer communications.  Ex. C, March 5, 2018 Meet and Confer email chain between Caballero and Banzhoff, at March 14, 2018 7:57 PM email from Banzhoff to Caballero.  At the time of the March 5 conference, the deadline for substantial completion of document production was still several weeks away.  Plaintiffs never discussed these requests with Defendants again or communicated that their position had changed.  Defendants assumed that Plaintiffs had reviewed the documents and were satisfied with the production.  Defendants thus considered the matter closed.

Defendants were therefore extremely surprised to receive a joint stipulation in which Plaintiffs moved to compel documents on these requests.  The motion's host of complaints about the adequacy of Defendants' search, including the identification of specific custodians and search terms Plaintiffs believed should have been included, had never before been raised.  Not in the March 5 meet and confer, and not even in a follow-up e-mail.  Because Plaintiffs elected to skip the conference requirements of Local Rule 37 and proceed directly to a motion, the parties never had the opportunity

to attempt to resolve or narrow the dispute (the existence of which was entirely unknown to Defendants prior to receipt of this motion).

Defendants were even more surprised that part of the relief requested was an order requiring Defendants to provide a detailed explanation of their search strategy for these requests. Neither during the March 5 meet and confer nor at any time since have Plaintiffs ever indicated any interest in discussing Defendants' search strategy. On the contrary, during meet and confers on Defendants' requests, Plaintiffs have actively resisted discussing such information. On May 14—the week before Plaintiffs served this joint stipulation—the parties had a conference in which Defendants raised concerns about Plaintiffs' responses to RFPs 214 and 215, which sought documents relating to the transfer of technical information between Nitronex and IR and identified specific individuals at Nitronex likely to have participated in such discussions. Ex. B, Plaintiffs' Meet and Confer Failures email chain between Johnston and Banzhoff, at May 31, 2018 2:45 PM email from Johnston to Banzhoff. In discussing RFPs 214 and 215, Plaintiffs' counsel expressed an unwillingness to discuss the parameters of Plaintiffs' search relating to the requests and appeared to take the position that such information was privileged. *Id.* Among other things, Plaintiffs did not state one way or the other whether they had collected documents from any of the individuals identified in the request. Plaintiffs' counsel suggested that if Defendants were to delve into details of Plaintiffs' search parameters, it would open the door for Plaintiffs to do the same as to Defendants'. Plaintiffs ultimately did not share the details of their search on these or any other requests, and there was no further discussion of search parameters.

After Plaintiffs sandbagged Defendants with all of their complaints about the adequacy of Defendants' search for GaN-on-Si RF customer communications in this motion, Defendants reached out to encourage Plaintiffs to meet and confer to resolve the issue rather than burdening the Court with this improper motion. Ex. B, Plaintiffs' Meet and Confer Failures email chain between Johnston and Banzhoff, at May 31,

2018 2:45 PM email from Johnston to Banzhoff.  Defendants pointed out that Plaintiffs never discussed the complained-of issues, such as the particular identified custodians and search terms, during the parties' March 5 meet and confer or at any time since.  Defendants requested that Plaintiffs withdraw the motion and engage in the required Local Rule 37 real-time meet and confer in a good faith attempt to resolve or at least narrow the issues in dispute.  *Id*.  In response, Plaintiffs did not deny that the complaints raised in their motion were never discussed between the parties.  Nevertheless, Plaintiffs were unwilling to withdraw the motion and properly meet and confer to resolve the issue.  *Id.* at May 31, 2018 8:20 PM email from Banzhoff to Johnston and June 1, 2018 9:07 PM email from Banzhoff to Johnston.

> **b.     Plaintiffs' motion should be summarily denied based on their flagrant disregard for the Local Rule 37-1 conference requirement.**

As recounted above, Plaintiffs have not even attempted to meet and confer with Defendants regarding the complaints about Defendants' search for customer communications raised in this motion.  As this Court is well aware, the Local Rule 37-1 conference requirement is mandatory for discovery motions and requires that the parties "confer in a good faith effort to eliminate the necessity for hearing the motion or to eliminate as many of the disputes as possible" before serving a joint stipulation.  L.R. 37-1.  That indisputably did not happen here.  Quite the opposite occurred, in fact, as Plaintiffs rebuffed Defendants' offer to engage in such discussions, insisting instead of pursuing this premature motion.  Ex. B, Plaintiffs' Meet and Confer Failures email chain between Johnston and Banzhoff, at May 31, 2018 2:45 PM email from Johnston to Banzhoff.  Thus, despite this Court's requirement of "[s]trict compliance with Local Rule 37," Plaintiffs knowingly flouted the conference requirement, instead ambushing Defendants with a completely unexpected motion three months after stating that they would not move on these requests.

Plaintiffs' attempt to rely on the March 5 conference is unavailing.  Plaintiffs do not and cannot assert that the complaints they now raise about Defendants'

1  production were discussed during that conference.  They were not.  That conference

2  took place several weeks before the deadline for substantial completion of production

3  and focused solely on whether Defendants would produce documents.  There was no

4  discussion about whether Defendants completed document production adequately

5  addressed the request (nor could there have been at that stage), or about what the

6  parameters of Defendants' search should be (such as custodians and search terms).

7  Critically, the upshot of that conference was that Plaintiffs stated they would ***not*** be

8  filing a motion.  Plaintiffs do not dispute that there were no further discussions before

9  they reversed course without any warning by serving this joint stipulation.  There was

10  certainly no good faith attempt to resolve or narrow their new complaints about the

11  adequacy of Defendants' document production on these requests.

12      The Court should reject Plaintiffs' efforts to sandbag Defendants with

13  complaints that they never even attempted to raise before filing their motion.

14  Plaintiffs' complaints regarding Request for Production Nos. 16, 19, 20, 21 and 83

15  are not properly before the Court and their motion should be denied on this basis

16  alone.  *Rutherford*, 2014 WL 12633523 at *5 (C.D. Cal. Apr. 25, 2014) ("The record

17  clearly reflects the parties made no genuine meet and confer efforts with respect to

18  these requests.  Indeed, these requests were not even mentioned in the parties'

19  correspondence after plaintiffs served their amended responses, unless one counts

20  defendants' reference to an earlier letter . . . Accordingly, as to these requests,

21  defendants' Motion to Compel is denied without prejudice to defendants renewing

22  their motion after counsel have made a genuine effort to meet and confer."); 

23  *Semiconductor Energy Lab*, 2012 WL 12896204 at *1 (C.D. Cal. Oct. 17, 2012)

24  (Accordingly, Plaintiff's motion to compel is DENIED as to Requests Nos. 1-13, 15-

25  26, 28-31, 36-37, 39-40, 42-45, 47-51, 54-55, 58, 63, and 66 because Plaintiff has

26  failed to comply with the meet-and-confer requirements of Local Rule 37-1."); 

27  *Sherman*, 2015 WL 13543541 at *6–7 (C.D. Cal. July 17, 2015) ("[N]or do the meet

28  and confer documents submitted with regard to the October 23, 2014, Requests and

the January 20, 2015, Amended Requests at issue herein include these issues. Accordingly, the Court agrees with defendant that this issue is beyond the scope of this Motion.").

As Defendants told Plaintiffs after being served with this joint stipulation, Defendants stand ready to meet and confer with Plaintiffs in a good faith attempt to resolve or narrow this dispute now that they are aware of Plaintiffs' complaints. Defendants request that the Court deny Plaintiffs' motion and order them to properly meet and confer regarding this issue.  Defendants further request that the Court impose sanctions for Plaintiffs' flouting of the conference requirement of the Local Rules.  *See* L.R. 37-4 (authorizing sanctions for counsel who fail to comply with the Rule 37 procedures).  By failing to even attempt to meet and confer on these complaints and rejecting Defendants request to withdraw the motion and do so, Plaintiffs display a flagrant disregard for the Local Rule 37 procedure.  This attitude wastes the Court's time and results in the unnecessary expenditure of attorney fees on prematurely briefing these issues.  Sanctions are appropriate in these circumstances.

      c.    **Plaintiffs' unreasonable expectations regarding the volume of documents they would receive do not excuse their failure to meet and confer on their new complaints.**

In e-mail correspondence after Plaintiffs' service of the joint stipulation, Plaintiffs appeared to rely on the fact that the number of customer communications produced was smaller than they expected to justify their failure to meet and confer on their specific complaints about Defendants' production.  Ex. B, Plaintiffs' Meet and Confer Failures email chain between Johnston and Banzhoff, at May 31, 2018 8:20 PM email from Banzhoff to Johnston and June 1, 2018 9:07 PM email from Banzhoff to Johnston.  Plaintiffs cannot bypass the conference requirements of the Local Rules merely because they hoped there would be a larger number of responsive documents,

however.[10]  Moreover, the narrow statistics provided in Plaintiffs' motion provide an incomplete and misleading view of the Defendants' production.

Defendants have expended substantial energy and resources collecting and producing documents in response to Plaintiffs' requests.  All told, Defendants have produced over 50,000 documents totaling about 500,000 pages collected from at least 28 individual custodians.  Johnston Decl. at ¶ 14.  By comparison, Plaintiffs have produced around 24,000 documents collected from 13 identified individual custodians—less than half the number of documents and custodians in Defendants' production.  *Id*. at ¶ 15.

Plaintiffs claim that Defendants have not sufficiently produced documents relating to communications with customers about GaN-on-Si technology because they located only 306 documents that are e-mails to or from five specific customers (Ericsson, Nokia, Huawei, ZTE, and Samsung).  But that metric is unduly limited and distorts Defendants' production.  For example, Ex. D, INFMAC_0091971, is a document setting forth meeting minutes of a discussion with Huawei—undoubtedly a customer communication.  Yet it would not fall within Plaintiffs' restrictive search because it is not an e-mail to or from Huawei.  In truth, Defendants' production is rife with documents relating to customer interactions.  Defendants have produced over 8,100 documents discussing Ericsson, over 4,100 documents discussing Nokia, over

---

[10] Likewise, Plaintiffs' suggestion that Defendants reneged on a promise made during the March 5 discussion is unfounded and does not excuse Plaintiffs' failure to confer on the issues raised in this motion.  Ex. B, Plaintiffs' Meet and Confer Failures email chain between Johnston and Banzhoff, at May 31, 2018 8:20 PM email from Banzhoff to Johnston.  Defendants agreed to search for and produce customer communications relating to GaN-on-Si RF technology and they have done so.  Defendants did not agree to use any particular search parameters, such as particular custodians or search terms.  Nor did Plaintiffs request that Defendants do so during the March 5 discussion.  Now, as then, however, Defendants are open to conferring with Plaintiffs about particular search parameters that might resolve this dispute if Plaintiffs wish to meaningfully engage in such discussions rather than harassing Defendants with premature motions.

4,600 documents discussing Huawei, over 3,300 documents discussing ZTE, and over 3,100 documents discussing Samsung.  Johnston Decl. at ¶ 16.

Even if Plaintiffs' assessment of the volume of customer communications related to GaN-on-Si produced were accurate, it would not be terribly surprising or evidence of a deficient production.  Defendants do not currently have and have never had any GaN-on-Si RF products they can offer to customers.  Ex. E, Wolf Decl., at ¶¶ 2, 41, 43.  Thus, it would make sense for the vast majority of customer communications to be about products that Defendants have actually offered and sold based on entirely different technologies—GaN-on-SiC and LDMOS.  The volume of documents produced by these customers themselves in response to Plaintiffs' subpoenas seeking all communications with Defendants about GaN-on-Si RF products and technology are extremely telling.  Ex. F, Nokia Subpoena at 7–8; Ex. G, Huawei Subpoena, at 6–7.  Nokia produced a total of eleven documents.  Johnston Decl. at ¶ 7.  Huawei produced three.  *Id*. at ¶ 8.  Nokia and Huawei's own productions thus suggest that it is more likely Plaintiffs' expectations that are unreasonable, not Defendants' document search.  Plaintiffs' motion should be denied.

### 4.   The law does not support Plaintiffs' overbroad and vague requests for "all documents" that "relate to" Defendants' affirmative defenses (RFPs 88 and 104–118).

Through this set of fifteen RFPs, Plaintiffs seek "all documents" that "relate[] to" each of Defendants' affirmative defenses.  *See, e.g.*, Ex. 14, Defendants' Responses to MACOM's RFPs 99 through 124, at 12–21 (RFPs 104 through 118).  Plaintiffs' requests cannot be any broader.  Because of this breadth, Defendants cannot even figure out how to search for responsive documents.  Defendants instead offered a reasonable compromise of producing all documents that they intend to use at trial—a position supported even by the case law Plaintiffs cite in their portion of this Joint Stipulation.  But Plaintiffs refused, digging in on their overbroad and ambiguous requests.  Plaintiffs' motion should be denied.

### a)  Background

On October 25, 2017, Defendants responded to Plaintiffs' RFPs 78 through 98. This set of RFPs included RFP 88, which asked for "[a]ll documents related to Infineon's affirmative defenses, as set forth in Infineon Americas' Second Amended Answer and Counterclaim (Dkt. 323-1) and Infineon AG's Answer and Affirmative Defenses (Dkt. 291)." Ex. 21, Defendants' Responses to MACOM's RFPs 78 through 98, at 20 (RFP 88).  Because of RFP 88's incredible breadth, which did not even specify what type of documents were sought or differentiate documents that may be used from those that would not, Defendants refused to produce documents in response. *Id.* On January 25, 2018, the parties unsuccessfully met and conferred regarding RFP 88.

Following the parties' unsuccessful RFP 88 meet and confer, on February 28, 2018, Plaintiffs served their RFPs 99 through 124 on Defendants. *See* Ex. H, Defendants' Responses to MACOM's RFPs 99 through 124. Sixteen of these requests (RFPs 103 through 118) essentially recast Plaintiffs' RFP 88, dividing that request in sixteen smaller but equally broad requests. *See id.* at 11–21 (RFPs 103 through 118). In doing so, Plaintiffs' copy-and-paste requests still demand "all documents related to" each of Defendants' affirmative defenses—without differentiating among type of document sought or the use of the documents at trial or in this case.  On March 21, 2018, Defendants responded to this set of RFPs, stating these objections and refusing to produce documents in response to RFPs 103 through 118.  *Id.*

On April 5, 2018, the parties met and conferred regarding these RFPs.  Ex. I, April 9, 2018 Meet and Confer email chain between Caballero and Banzhoff, at April 30, 2018 6:04 PM from Banzhoff to Caballero.  Defendants promised Plaintiffs that, regarding RFP 103 (requesting all documents regarding Plaintiffs' request for and entitlement to injunctive relief), Defendants would produce all documents that they intended to use at trial, but that because of the RFP's unbounded language, Defendants could not search for responsive documents.  *Id.*  Plaintiffs thanked Defendants for this

-58-

assurance, and notably, RFP 103 is not a subject of Plaintiffs' motion.  This conversation mirrored the parties' discussions on RFPs 88 and 104 through 118, where Defendants stated their willingness to produce all documents that they intend to rely upon at trial for each identified affirmative defense but added that they cannot respond to the RFPs as written.

Defendants stand by their offer to produce the documents that they intend to rely upon at trial relating to each affirmative defense in the RFPs.  Beyond this, however, Defendants do not even know where to begin in responding to the RFPs as written.

### b)     Plaintiffs' RFPs 88 and 104 through 118 are too broad and vague to support a meaningful search and production by Defendants.

In their portion of this Joint Stipulation, Plaintiffs disobey Local Rule 37-2.1, which states that a joint stipulation shall contain, verbatim, the text of the discovery request and response at issue, without referring the Court to any other documents.  L.R. 37-2.1.  Plaintiffs justify their noncompliance for "space reasons."  But Plaintiffs instead leverage this noncompliance to cherry-pick the single most seemingly specific of their RFPs (RFP 109) as the exemplar for their remaining affirmative defense RFPs.  This tactic disguises the true character these affirmative defense RFPs, which are far broader and vaguer than RFP 109 alone might suggest.  Each of these fifteen requests starts with the phrase "All documents related to [Defendants'] affirmative defense of" and concludes with the quoted name of an affirmative defense, without providing any more guidance.  *See, e.g.,* Defendants' Responses to MACOM's RFPs 99 through 124, at 12 (RFP 104) ("All documents related to Infineon's affirmative defense of 'Failure to State a Claim.'").  Conveniently, Plaintiffs include in their Joint Stipulation the single most seemingly specific request, but even then, the verbosity in the request merely reflects the lengthier title of the quoted defense, not any greater specificity in Plaintiffs' request.

The breadth of these requests defies any reasonable or possible search that

Defendants could conduct.  Plaintiffs offer no explanation as to how Defendants would or could cull responsive documents to the requests as written.  Nor do Plaintiffs specify what *type* of documents these RFPs seek—do Plaintiffs seek documents from Defendants' files, certain Rules of Civil Procedure, statutes, case law, or all of the above?  Plaintiffs leave Defendants guessing.  Not surprisingly, this Court has rejected such requests.  *Unilin Beheer B.V. v. NSL Trading Corp.*, CV 14-2210 BRO (SSX), 2015 WL 12698382, at *6 (C.D. Cal. Feb. 27, 2015) ("[B]ased on the Court's request-by-request review, Plaintiffs' requests generally calling for documents supporting Defendants' claims and affirmative defenses, (RFP Nos. 17–33) . . . are DENIED without prejudice as duplicative of other requests, on vagueness grounds and on the grounds that Plaintiffs have not identified documents improperly withheld.").[11]

Plaintiffs seek "all documents" that "relate to" an affirmative defense, but none of the cases Plaintiffs cite supports such production.  Instead, these courts ordered production only of documents *supporting an affirmative defense*, which Defendants agreed to produce by offering any documents that they intend to rely upon at trial with respect to each defense.  Plaintiffs conflate the production of documents "related" or "relevant" to a defense, which *are not* the subject of these cases, with documents *supporting* a defense, as demonstrated below:

---

[11] The Court in *Unilin Beheer* did not recite the exact language of these requests, so Defendants here have attached examples of these requests to this Joint Stipulation. Ex. J, *Unilin Beheer B.V. v. NSL Trading Corp.*, CV 14-2210 BRO (SSX) (C.D. Cal.), Dkt. 69-2, at 11–15 (RFPs 17 through 33).  As an example, one request rejected by the Court reads: "All documents and things, including communications, relating to your contention in your answer and affirmative defenses that 'Plaintiffs' claims are barred, in whole or in part, by the doctrine of laches.'" *Id*. at 14 (RFP 21) (emphasis omitted).  If anything, these RFPs, deemed inadequate by this Court, demonstrate more specificity and narrowness than Plaintiffs' RFPs because they sought discovery relating to the defendant's *contentions* surrounding its affirmative defenses. *Id*.; *Unilin Beheer B.V.*, 2015 WL 12698382 at *6.

- *Garza v. Brinderson Constructors, Inc.,* 15-CV-05742-EJD(SVK), 2017 WL 2861128, at *2 (N.D. Cal. July 5, 2017)

  - <u>Plaintiffs' Citation</u>—"[O]rdering the production of all non-privileged documents *'that relate to defendants'* allegations and defenses' in the action at issue" (Plaintiffs' alterations omitted) (emphasis added).

  - <u>Actual Holding</u>—"[T]he Court orders [defendants] to produce all non-privileged documents in its possession, custody, or control *that support its affirmative defenses in this action*." *Id.* at *2 (emphasis added).

- *Local.com Corp. v. Fry's Elecs., Inc.*, SACV 12-0976-JGB(JPRx), 2013 WL 12139096, at *3 (C.D. Cal. Feb. 22, 2013)

  - <u>Plaintiffs' Citation</u>—"[G]ranting motion to compel production of *documents relevant to* its defenses and counterclaims . . ." (emphasis added).

  - <u>Actual Holding</u>—Ordering a further response to RFPs "seek[ing] *documents supporting* [d]efendant's contentions as to its defenses and counterclaims." *Id.* (emphasis added).[12]

- *Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.*, 2:05-CV-01532-RLH-GWF, 2007 WL 778153, at *5 (D. Nev. Mar. 12, 2007)

  - <u>Plaintiffs' Citation</u>—"[G]ranting motion to compel production of documents that defendants *may use in support* of their denials and affirmative defenses."

  - <u>Actual Holding</u>—Plaintiffs accurately summarize the result here.  But

---

[12] As Plaintiffs note, this Court in *Local.com* cited *Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*, in which this Court similarly compelled a defendant "to produce documents *that support its affirmative defenses*."  256 F.R.D. 678, 682 (C.D. Cal. 2009) (emphasis added).

they omit the court's observation that the requests for "all documents in support of" each denial or defense "appear[ed] overbroad on their face." *Id*.

No case cited by Plaintiffs supports production of "all documents" that "relate to" a defense. Such a request is overbroad on its face and leaves Defendants with no plausible means for responding. Instead, Defendants remain willing (as they were at the parties' meet and confer) to produce documents that they intend to use at trial with respect to each affirmative defense. Plaintiffs deserve nothing more.

### 5. Documents relating to Defendants' sales, pricing, and projections for GaN-on-SiC and LDMOS are not relevant to a legally valid damages theory (RFPs 125, 126, 127, 137, 138, 141, 142, 144, and 145).

Through these RFPs, Plaintiffs seek various financial documents related to Defendants' sales of GaN-on-SiC and LDMOS products. *See* Ex. 20, Defendants' Responses to MACOM's RFPs 125 through 145, at 8–25 (RFPs 125, 126, 127, 137, 138, 141, 142, 144, and 145).

Plaintiffs are not arguing these RFPs are relevant to any liability claim in this lawsuit. It is undisputed that Defendants can legally sell GaN-on-SiC and LDMOS products and that Plaintiffs cannot argue any liability based on Defendants' sales of GaN-on-SiC and LDMOS products. For that reason, Plaintiffs' liability claims are based on Defendants' alleged activities with respect to an entirely different category of products, called GaN-on-Si. And Defendants have already agreed to produce document relating that category of products (GaN-on-Si).

Because GaN-on-SiC and LDMOS are technologies that are not relevant to any liability claims, Plaintiffs are trying to justify their overbroad requests solely based on their damages claim. Given Plaintiffs' failure to provide a proper response to Defendants' interrogatory on damages (Interrogatory No. 10),[13] it is difficult to

---

[13] Defendants detail the deficient history of Plaintiffs' response and supplemental

determine exactly what is Plaintiffs' damages claim.  But, from Plaintiffs' deficient interrogatory answer, it appears that Plaintiffs are relying on two broad theories: (1) unjust enrichment and (2) lost profits.  Ex. 19, Plaintiffs' Third Supplemental Responses to Defendants' First Set of Interrogatories (dated May 2, 2018), at 35.  Yet neither of those theories justifies discovery regarding Defendants' GaN-SiC and LDMOS sales.  First, with respect to unjust enrichment, although Defendants' sales may be relevant to a recovery of unjust enrichment, Plaintiffs are not legally entitled to unjust enrichment damages because Plaintiffs' liability claims are based on contracts.  So, unjust enrichment cannot provide a basis for discovery regarding Defendants' GaN-SiC and LDMOS sales.  Second, with respect to lost profits, even if Plaintiffs could show that they are legally entitled to lost profits damages, the measure of those damages are ***Plaintiffs' lost profits***—not ***Defendants***' profits. Defendants' sales are ***not*** relevant to the amount of Plaintiffs' lost profits.  For these reasons, Plaintiffs' motion should be denied on these broad and irrelevant RFPs.

### a)       Plaintiffs cannot recover unjust enrichment.

Plaintiffs legally cannot recover unjust enrichment, an equitable remedy, in the face of the parties' express contracts.  Plaintiffs' damages claims are based on "Infineon's activities in violation of its agreements with MACOM and/or in bad faith execution of its obligations."  Ex. 19, Plaintiffs' Third Supplemental Responses to

---

response to Defendants' Interrogatory No. 10 in the Joint Stipulation regarding Defendants' First Motion to Compel.  Dkt. 513-1 at 17–20.  In short, Defendants served Interrogatory No. 10 in August 2017, continually challenged the adequacy of Plaintiffs' response for the next several months, and eventually secured an agreement whereby Plaintiffs would properly supplement their response by mid-April.  *Id*. at 17–18.  On the due date for their supplemental response, Plaintiffs said that they needed several more weeks, with no advanced warning or explanation.  *Id*. at 18–19.  In May, Plaintiffs served the supplemental response to Interrogatory No. 10, which Plaintiffs now use as the basis for this aspect of their motion to compel and which Defendants have explained is inadequate in their first motion to compel.  *Id*. at 20–27.

Defendants' First Set of Interrogatories (dated May 2, 2018), at 35. California law does not permit unjust enrichment where, consistent with Plaintiffs' own allegations, an express contract governs the relationship between the parties. *See, e.g., Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 699 (Cal. Ct. App. 2010) (affirming trial court's dismissal of plaintiff's claim for unjust enrichment, which was "inapplicable because [plaintiff] alleges the parties entered into express contracts.").[14] Plaintiffs' legal inability to recover unjust enrichment renders these overly broad requests irrelevant and not proportional to the needs of this case.

> **b)** **Although lost profits may be a legally proper theory of recovery, the damages are Plaintiffs' lost sales—not Defendants' sales.**

Plaintiffs' lost profits damages theory also does not warrant a fishing expedition into Defendants' finances because this damages theory is based on *Plaintiffs'* sales and profits, not those of Defendants. Through these RFPs, Plaintiffs seek **Defendants'** price, revenue, and sales data for various products and *Defendants'* strategies and projections for GaN-on-SiC and LDMOS products. As Plaintiffs' supplemental response to Interrogatory No. 10 states, however, Plaintiffs' lost profits

---

[14] This rule is well established under California law. *See, e.g., Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal. App. 4th 151, 172 (Cal. Ct. App. 2001) ("When parties have an actual contract covering a subject, a court cannot—not even under the guise of equity jurisprudence—substitute the court's own concepts of fairness regarding that subject in place of the parties' own contract" (quotations omitted)); *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996) ("Under both California and New York law, unjust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties"); *Peterson v. AWJ Glob. Sustainable Fund, LP*, 15-CV-00650-CRB, 2015 WL 5921225, at *5 (N.D. Cal. Oct. 11, 2015) ("The Court finds that [plaintiff's] unjust enrichment claim fails under the law of either state. Neither Delaware nor California law provide an unjust enrichment remedy if the unjust enrichment claim arises from an actual contract").

1   theory focuses on profits **Plaintiffs'** lost sales on their **GaN-on-Si** products.[15]   The

2   disputed discovery requests, however, relate to Defendants' prices, strategies, and

3   projects on entirely different products (GaN-SiC and LDMOS).

4        Moreover, it is impossible to infer Plaintiffs' lost profits from Defendants' sales

5   because this is not a two-competitor market.  Plaintiffs and Defendants compete with

6   many different suppliers to sell RF power products to Tier 1 basestation customers.

7   Preetinder Virk is Plaintiffs' senior VP running the business unit including GaN-on-

8   Si RF products.  Ex. K, Virk Deposition, at 7:2–10, 22:16–23.  ███████████████

9   ████████████████████████████████████████████████████████████████████████

10  █████████████████████████████████████████████  Plaintiffs cannot

11  reasonably argue that all of Defendants' GaN-on-SiC or LDMOS products would

12  have otherwise gone to Plaintiffs as opposed to any of the other competitors in the

13  marketplace.  That is especially so here because ████████████████████████████

14  █████████████████████████████████████████████████.  *Id.* at 44:25–

15  45:5.  Moreover, Plaintiffs' own documents on market share in 2017 show ████

16  ████████████████████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████████████████████

19  ██████████████████████████████████████████████

20

21

22

23

24

25

26

<hr>

27  [15] Recognizing the relevance of GaN-on-Si data, Defendants agreed to produce

28  documents relating to GaN-on-Si in response to numerous RFPs.  *See, e.g.*,
    Defendants' responses to RFPs 125, 126, 127, 137.

18

19

20    Plaintiffs' lost profits theory therefore does not justify the wide-ranging and

21  burdensome discovery regarding Defendants' sales of products (GaN-SiC and

22  LDMOS) unrelated to the technology at issue.  Because these RFPs are irrelevant to

23  a legally cognizable damages theory, Plaintiffs' motion to compel should be denied

24  as to these requests.

25              **c)      Plaintiffs' requests are overbroad and not proportional
                          to the needs of this case.**

26         Aside from their irrelevance, Plaintiffs' RFPs, which seek unbounded

27  collections of industry-wide reports and data, are overly broad and not proportional

28

to the needs of this case.  For example, Plaintiffs' RFP 127 seeks "[a]ll industry reports related to the basestation industry, including any reports discussing GaN-on-Si, GaN-on-SiC, and/or LDMOS."  Defendants agreed to produce reports relating to GaN-on-Si—the products and technology at issue.  Because Plaintiffs' requests bear little on this action yet impose a heavy burden on Defendants, Plaintiffs' motion should be denied.

**d)      Plaintiffs identify no problems with Defendants' response to RFP 137, which the parties did not discuss at their meet and confer.**

The parties met and conferred regarding these RFPs on April 11, 2018.  Ex. I, April 9, 2018 Meet and Confer email chain between Caballero and Banzhoff, at April 30, 2018 6:04 PM email from Banzhoff to Caballero.  As the parties' email summaries of this conference show, they never discussed RFP 137.  *See id.*  Once again, RFP 137 exemplifies Plaintiffs' repeated and blatant failure to abide by Local Rule 37-1's meet and confer requirements, which alone warrants denying their motion on this request. *See, e.g., Rutherford*, 2014 WL 12633523 at *5 (C.D. Cal. Apr. 25, 2014) ("The record clearly reflects the parties made no genuine meet and confer efforts with respect to these requests. . . . Accordingly, as to these requests, defendants' Motion to Compel is denied . . . .").

Nevertheless, there is no dispute here.  RFP 137 requests documents regarding pricing for GaN-on-Si products, and Defendants agreed to produce responsive documents.  Plaintiffs argue that Defendants refused to produce documents relating to GaN-on-SiC and LDMOS products, but RFP 137 does not request documents regarding these products.  Plaintiffs do not identify any dispute over Defendants' fully responsive answer and production.  Plaintiffs need no further relief with respect to RFP 137.

# V.   CONCLUSION

## A.   MACOM's Conclusion

MACOM respectfully requests that the Court compel Infineon to provide the

following:

    1.    Documents responsive to MACOM's Request Nos. 88 and 104-118;

    2.    Communications with basestation customers, including those responsive to MACOM's Request Nos. 16, 19, 20, 21, and 83;

    3.    A description of the sources, custodians, and search terms used to search for customer communications pursuant to any order of this Court;

    4.    A full and meaningful substantive response to Interrogatory No. 12 or 13 (or, in the alternative, an order that Infineon is limited to arguing only failure of proof on noninfringement issues at trial);

    5.    Documents responsive to MACOM's Request Nos. 44 and 136; and

    6.    Documents responsive to MACOM's Request Nos 125-127, 137-38, 141-42, and 144-45.

## B.   Defendants' Conclusion[16]

Plaintiffs offer no explanation for their repeated noncompliance with the Local Rules through their failures to meet and confer. Their arguments for seeking to compel do not adequately explain the information sought and why that information is relevant and proportional to the needs of this case. Moreover, Plaintiffs repeatedly rejected Defendants' offers of compromise, which offer all the discovery Plaintiffs are entitled to on these issues. For the reasons stated above, Plaintiffs' motion to compel should be denied in its entirety.

---

[16] Local Rule 37-2.1, though it expressly permits an introductory statement by each party, does not permit a conclusion. Nevertheless, Defendants have included their conclusion to conform to the format Plaintiffs selected in this Joint Stipulation.

Dated:  June 6, 2018

**PERKINS COIE LLP**

By:/s/ *Elizabeth Banzhoff*
    Lara J. Dueppen, Bar No. 259075
    LDueppen@perkinscoie.com
    PERKINS COIE LLP
    1888 Century Park East, Suite 1700
    Los Angeles, CA 90067-1721
    Telephone:  310.788.9900
    Facsimile:  310.788.3399

    Amanda Tessar (*pro hac vice*)
    ATessar@perkinscoie.com
    Elizabeth Banzhoff (*pro hac vice*)
    EBanzhoff@perkinscoie.com
    PERKINS COIE LLP
    1900 Sixteenth Street, Suite 1400
    Denver, CO  80202-5255
    Telephone:  303.291.2357
    Facsimile:  303.291.2457

    Ramsey M. Al-Salam, Bar No. 109506
    RAlSalam@perkinscoie.com
    PERKINS COIE LLP
    1201 Third Avenue, Suite 4900
    Seattle, WA 98101-3099
    Telephone:  206.359.6835
    Facsimile:  206.359.7385

    Philip A. Morin, Bar No. 256864
    PMorin@perkinscoie.com
    PERKINS COIE LLP
    11988 El Camino Real, Suite 350
    San Diego, CA  92130-2594
    Telephone:  858.720.5700
    Facsimile:  858.720.5799

    Daniel T. Keese, Bar No. 280683
    DKeese@perkinscoie.com
    PERKINS COIE LLP
    1120 N.W. Couch Street, 10th Floor
    Portland, OR  97209-4128
    Telephone:  503.727.2000
    Facsimile:  503.727.2222

    Morgan Chu (State Bar No. 70446)
    (mchu@irell.com)
    Ellisen Turner (State Bar No. 224842)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(eturner@irell.com)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
Telephone:  310-277-1010
Facsimile:  310-203-7199

**ATTORNEYS FOR PLAINTIFFS**

**BAKER BOTTS LLP**

By: */s/ Jeffery D. Baxter*
    David G. Wille (*pro hac vice*)
    *david.wille@bakerbotts.com*
    Jeffery D. Baxter (*pro hac vice*)
    *jeff.baxter@bakerbotts.com*
    Brian D. Johnston (*pro hac vice*)
    *brian.johnston@bakerbotts.com*
    James C. Williams (*pro hac vice*)
    *james.williams@bakerbotts.com*
    Charles Yeh (*pro hac vice*)
    *charles.yeh@bakerbotts.com*
    Josue Caballero (*pro hac vice*)
    *josue.caballero@bakerbotts.com*

BAKER BOTTS L.L.P.
2001 Ross Avenue, Suite 900
Dallas, TX 75201
Telephone: 214.953.6500
Fax: 214.953.6503

**ATTORNEYS FOR DEFENDANTS**