1  Linda M. Burrow, Bar No. 194668
2     lburrow@bsfllp.com
   Alison M. Mackenzie, Bar No. 242280
3     amackenzie@bsfllp.com
   BOIES SCHILLER FLEXNER LLP
4  725 South Figueroa Street 31st Floor
5  Los Angeles, CA 90017-5524
   Telephone: 213-629-9040
6  Facsimile: 213-629-9022

7
   DAVID G. WILLE (admitted *pro hac vice*)
8     david.wille@bakerbotts.com
   JEFFERY D. BAXTER (admitted *pro hac vice*)
9     jeff.baxter@bakerbotts.com
   BRIAN D. JOHNSTON (admitted *pro hac vice*)
10    brian.johnston@bakerbotts.com
11 JAMES C. WILLIAMS (admitted *pro hac vice*)
      james.williams@bakerbotts.com
12 CHARLES YEH (admitted *pro hac vice*)
13    charles.yeh@bakerbotts.com
   BAKER BOTTS L.L.P.
14 2001 Ross Avenue, Suite 600
15 Dallas, TX 75201
   Telephone:  214.953.6500 / Fax:  214.953.6503
16
   Attorneys for Defendants
17

18              UNITED STATES DISTRICT COURT

19      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

20 | MACOM TECHNOLOGY | Case No. CV 16-02859 CAS (GJSx) |
   | SOLUTIONS HOLDINGS, INC. and | |
21 | NITRONEX, LLC, | **DEFENDANTS' OPPOSITION TO** |
   | | **PLAINTIFFS' MOTION FOR** |
   |              Plaintiffs, | **SUMMARY JUDGMENT ON** |
22 | | **ESTOPPEL** |
   |        v. | |
23 | | Hearing Date: July 19, 2018 |
   | INFINEON TECHNOLOGIES AG, *et* | Hearing Time: 12:00 p.m. PT |
24 | *al.*, | Courtroom: 8D |
25 |              Defendants. | |

26

27

28

# TABLE OF CONTENTS

INTRODUCTION .......................................................................................................1

ARGUMENT..............................................................................................................2

I.     Assignee estoppel does not apply against Infineon Americas. ......................2

       A.     The Supreme Court's decision in *Lear v. Adkins* abolished the doctrine of assignee estoppel. ................................................................4

       B.     Even if assignee estoppel survived *Lear*, it should not apply on these facts. .......................................................................................8

II.    Assignee estoppel does not apply against Infineon AG based on privity. ...................................................................................................12

       A.     The doctrine of assignee estoppel does not apply to those in privity with the assignee. ..................................................................12

       B.     Even assuming assignee estoppel could apply to those in privity, Plaintiffs wrongly contend that a parent-subsidiary relationship alone is sufficient to establish privity with respect to assignee estoppel. ..................................................................................12

III.   Judicial estoppel does not apply against Infineon Americas. .......................15

       A.     Prior inconsistent arguments during prosecution do not estop a party from later challenging the validity of patent claims..................15

       B.     Even if judicial estoppel could preclude invalidity arguments, Plaintiffs fail to prove the three elements required to establish judicial estoppel. .............................................................................18

              1.     Infineon Americas has not made any inconsistent representations to the PTO and this Court................................19

              2.     The PTO did not rely on any inconsistent representations by Infineon Americas. .............................................................22

              3.     Infineon Americas's validity challenges would not impose an unfair detriment on Plaintiffs................................................23

IV.    Judicial estoppel does not apply against Infineon AG based on privity. ...... 24

CONCLUSION ........................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*A & A Concrete, Inc. v. White Mountain Apache Tribe*,
   781 F.2d 1411 (9th Cir. 1986)...........................................................................24

*Agha-Khan v. U.S.*,
   No. 1:1-CV-00042, 2015 WL 5734380 (E.D. Cal. Sept. 29, 2015)....................13

*Alcohol Monitoring Sys., Inc. v. ActSoft, Inc.*,
   No. 07-cv-02261-PAB, 2011 WL 5075619 (D. Co. 2011)..................................15

*Am. Safety Flight Sys. v. Garrett Corp.*,
   528 F.2d 288 (9th Cir. 1975)............................................................................24

*Analog Devices v. Linear Tech. Corp.*,
   479 F. Supp. 2d 202 (D. Mass. 2007).................................................................15

*Brown Transp. Corp. v. Atcon, Inc.*,
   439 U.S. 1014 (1978) ...........................................................................................6

*Bull v. Logetronics, Inc.*,
   323 F. Supp. 115 (E.D. Va. 1971).......................................................................7

*Clark Equip. Co. v. Keller*,
   Nos. 4875 and 4839, 1976 WL 21027 (D.N.D. Sept. 23, 1976)........................17

*Coast Metals, Inc. v Cape*,
   No 78-276, 1979 WL 25083 (D.N.J. Dec. 24, 1979).................................7, 8, 10

*Diamond Sci. Co. v. Ambico, Inc.*,
   848 F.2d 1220 (Fed. Cir. 1988)............................................................................7

*Doral Pharm., Inc. v. Pharm. Generic Developers, Inc.*,
   148 F. Supp. 2d 127 (D.P.R. 2001)...................................................................25

*Geffner v. Linear Rotary Bearings, Inc.*,
   No. 97-1041, 1997 WL 577506 (Fed. Cir. Sept. 17, 1997) .................................7

*Haughey v. Lee*,
   151 U.S. 282 (1894) ...........................................................................................15

*Helfand v. Gerson*,
   105 F.3d 530 (9th Cir. 1997) .................................................................... 18

*Hy-Lo Unit & Metal Prods. Co. v. Remote Control Mfg. Co.*,
   83 F.2d 345 (9th Cir. 1936) ...................................................................... 24

*Int'l Steel Wool Corp. v. Williams Co.*,
   137 F.2d 342 (6th Cir. 1943) .................................................................... 17

*James Heddon's Sons v. Am. Fork & Hoe Co.*,
   148 F.2d 230 (6th Cir. 1945) .................................................................... 17

*Kellogg Switchboard & Supply Co. v. Mich. Bell Tel. Co.*,
   99 F.2d 203 (6th Cir. 1938) ...................................................................... 16

*Kimble v. Marvel Entm't, LLC*,
   135 S. Ct. 2401 (2015) .............................................................................. 5

*Kinetic Concepts, Inc. v. Wake Forest Univ. Health Scis.*,
   Civ. A. Nos. SA-11-CV-163-XR and SA-11-CV-713-XR, 2013
   WL 6164592 (W.D. Tex. Nov. 25, 2013) ................................................ 19

*Kinetic Concepts, Inc. v. Wake Forest Univ. Health Scis.*,
   Civ. A. Nos. SA-11-CV-163-XR and SA-11-CV-713-XR, 2014
   WL 1612648 (W.D. Tex. Apr. 22, 2014) ................................................ 20

*Kourtis v. Cameron*,
   419 F.3d 989 (9th Cir. 2005) .................................................................... 25

*Lear, Inc. v. Adkins*,
   395 U.S. 653 (1969) ...............................................................2, 4, 5, 16, 18, 22, 23

*Lemelson v. Synergistic Research Corp.*,
   669 F. Supp. 642 (S.D.N.Y. 1987) .......................................................... 17

*MasterObjects Inc. v. Google, Inc.*,
   No. C 11-1054, 2013 WL 2606626 (N.D. Cal. June 11, 2013) ............ 19, 21

*Metaframe Corp. v. Biozonics Corp.*,
   352 F. Supp. 1006 (D. Mass. 1972) ........................................................ 17

*Mike's Train House, Inc. v. Broadway Ltd. Imports*,
   Civ. No. 1:09-cv-02657-JKB, 2012 Wl 664498 (D. Md. Feb. 27,
   2012) ........................................................................................................ 20

*Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*,
  692 F.3d 983 (9th Cir. 2012) ............................................................................ 24

*Moore v. Stewart*,
  600 F. Supp. 655 (W.D. Ark. 1985) ................................................................. 17

*N.H. v. Me.*,
  532 U.S. 742 (2001) .................................................................................. 18, 22

*Nordhorn v. Ladish Co.*,
  9 F.3d 1402 (9th Cir. 1993) .............................................................................. 25

*Paramount Publix Corp. v. Am. Tri-Ergon Corp.*,
  294 U.S. 464 (1935) .................................................................................. 15, 16

*Roberts v. Sears Roebuck & Co.*,
  573 F.2d 976 (7th Cir. 1978) .............................................................................. 8

*Salessi v. Commonwealth Land Title Ins. Co.*,
  No. 08-CV-1274, 2013 WL 5676209 (C.D. Cal. Oct. 16, 2013) ....................... 13

*Scott Paper Co. v. Marcalus Mfg. Co.*,
  326 U.S. 249 (1945) ............................................................................................. 5

*Shamrock Techs., Inc. v. Med. Sterilization, Inc.*,
  903 F.2d 789 (Fed. Cir. 1990) .......................................................................... 13

*Shanklin Corp. v. Springfield Photo Mount Co.*,
  521 F.2d 609 (1st Cir. 1975) ............................................................................ 17

*Slip Track Sys., Inc. v. Metal Lite, Inc.*,
  113 F. App'x 930 (Fed. Cir. 2004) ........................................................ 3, 6, 7, 12

*Stanford Hosp. & Clinics v. Humana, Inc.*,
  No. 5:13-CV-04924 HRL, 2015 WL 5590793 (N.D. Cal. Sept. 23,
  2015) ................................................................................................................... 6

*Stichting Ter Behartiging (etc.) v. Schreiber*,
  327 F.3d 173 (1st Cir. 2003) ............................................................................ 25

*Sturm v. Boker*,
  150 U.S. 312 (1893) .......................................................................................... 18

*Sybron Transition Corp. v. Nixon, Hargrave, Devans & Doyle*,
    770 F. Supp. 803 (W.D.N.Y. 1991) ........................................................... 7, 8, 10

*Synopsys, Inc. v. Magma Design Automations, Inc.*,
    2007 WL 322353 (N.D. Cal. Jan. 31, 2007) ...................................................... 23

*Tuitama v. Nationstar Mortg. LLC*,
    No. 14-CV-9956, 2015 WL 12744269 (C.D. Cal. Apr. 13, 2015) .................... 13

*U.S. v. Ibrahim*,
    522 F.3d 1003 (9th Cir. 2008) ............................................................................ 18

*Webb v. Tom Brown Drilling, Inc.*,
    902 F.2d 42 (9th Cir. 1990) ................................................................................ 18

*Wyers v. Master Lock Co.*,
    616 F.3d 1231 (Fed. Cir. 2010) .......................................................................... 17

*Zendel v. Circle Location Servs., Inc.*,
    No. 11-CV-07963, 2012 WL 12877182 (C.D. Cal. Apr. 5, 2012) .................... 13

## TABLE OF ABBREVIATIONS AND CONVENTIONS

| Term | Meaning or Convention |
|------|----------------------|
| Al-Salam Decl. | The Declaration of Ramsey M. Al-Salam in Support of Plaintiffs' Motion for Summary Judgment (Dkt. No. 519-4) |
| Ex. [letter] | [A–II]: Exhibits A–II filed with this Opposition |
| Ex. [number] | [1–9]: Exhibits 1–9 filed with Plaintiffs' Motion for Summary Judgment on Estoppel (Dkt. Nos. 519-5–519-13) |
| Infineon AG or AG | Infineon Technology AG |
| Infineon Americas or Americas | Infineon Technologies Americas Corp. |
| International Rectifier or IR | International Rectifier Corporation |
| IP Purchase Agreement | IP Purchase Agreement between IR and Nitronex, dated July 30, 2010 |
| License Agreement | License Agreement between IR and Nitronex, dated July 30, 2010 |
| Licensed Patents | Same as Nitronex Patents—the patents that are the subject of the IP Purchase Agreement and License Agreement |
| MACOM | MACOM Technology Solutions Holdings, Inc. and Nitronex LLC |
| Nitronex | Nitronex, LLC (formerly Nitronex Corporation and now owned by MACOM Technology Solutions Holdings, Inc.) |

**INTRODUCTION**

Knowing that many of the patents it sold to Infineon Americas are invalid, Plaintiffs have desperately sought to prevent Defendants from raising the issue in this lawsuit.  Initially, Plaintiffs moved to strike Defendants' affirmative defenses of invalidity based on the shaky doctrine of assignee estoppel, coupled with a flimsy argument that Infineon AG should also be estopped based on an agreement to which it is a stranger merely because of Defendants' corporate affiliation.  That gambit failed.  This Court correctly concluded that the pleadings did not provide enough information to weigh the equities in favor of applying estoppel, and invited Plaintiffs to move for summary judgment on a more developed factual record.

Plaintiffs are now taking another run at preventing adjudication of validity.  But in their latest motion, Plaintiffs have neglected to provide the facts on assignee estoppel that the Court previously found lacking, relying once again on the agreements themselves and the bare corporate relationship between Defendants that the Court had already found insufficient to allow balancing the equities.  Plaintiffs have also added a back-up plan by arguing for judicial estoppel.  Plaintiffs' reliance on that doctrine is even shakier than its arguments for assignee estoppel, however.  Tellingly, Plaintiffs fail to cite even one case where a party was precluded from advancing an invalidity defense based on judicial estoppel.

No such cases exist for good reason.  Plaintiffs' estoppel arguments are contrary to long-standing public policy in favor of permitting invalidity challenges.  The Supreme Court has repeatedly recognized that the public has an important and overriding interest in permitting full and free competition in the use of ideas, and in eliminating invalid patents that wrongly remove ideas from the public domain.  The Supreme Court has repeatedly relied on this strong public interest to refuse to estop parties from challenging invalid patents, finding that this public interest outweighs both private contractual obligations and judicial concerns about prior inconsistent

1   statements.  The public's interest in eliminating invalid patents is paramount.

2          Plaintiffs wrongly contend that Nitronex, by selling some of its patent rights

3   to International Rectifier, actually enhanced the patent rights that it retained by

4   inoculating them against any validity challenge by IR (and apparently also any of

5   IR's future corporate affiliates for all time).   But the agreements themselves

6   establish the opposite.  █████████████████████████████████████████

7   ████████████████████████████████████████████████████

8   ████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████

10  ██████████████████████████   Before the agreement, IR (like the public at

11  large) could rely on invalidity to avoid liability for infringement.  IR would not

12  have agreed to give up its invalidity defenses given that Nitronex retained

13  substantial patent rights that it could assert against IR.

14         Plaintiffs position is contrary to the agreements and the strong public interest

15  in eliminating invalid patents.  If the patents are invalid, the claimed ideas rightfully

16  belong in the public domain.   The invalid patents would be analogous to an

17  improper private property claim to a public beach.  Plaintiffs are arguing that, by

18  selling some of its public beach to IR, Nitronex can now prevent IR (and all its

19  future corporate affiliates) from pointing out—for the benefit of the public at

20  large—that the portion of the beach retained by Nitronex rightfully belongs to the

21  public.  Plaintiffs' motion cannot be squared with Supreme Court precedent.

## ARGUMENT

### I.     Assignee estoppel does not apply against Infineon Americas.

24         The parties agree that the Supreme Court abolished the doctrine of licensee

25  estoppel in *Lear, Inc. v. Adkins*, 395 U.S. 653 (1969).  Defendants contend that it

26  likewise abolished the doctrine of assignee estoppel, which Plaintiffs attempt to

27  wield here to strip Defendants of their invalidity defenses.  In arguing for their

28  cramped reading of *Lear*, Plaintiffs previously drew a sharp distinction between

1   assignee estoppel and licensee estoppel, as well as the policy reasons underlying

2   each.  Dkt. 340 at 1:21–24.  But the reality of the facts at issue here undermine

3   Plaintiffs' facile distinction between the two doctrines.

4          While Infineon Americas is technically the assignee and owner of the

5   Licensed Patents, the crux of the parties' dispute here relates to the patent rights in

6   the Exclusive Field.  In that field, Infineon Americas ████████████████████

7   ████████████████████████████████████████████████████████████

8   ████████████████████  █████████████████████████████████████

9   ████████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████████

12  ████████████████████████████████  Yet those licensees would be free

13  to challenge validity under *Lear*, whereas, according to Plaintiffs, Infineon

14  Americas cannot merely because it is an assignee.  It is difficult to fathom the

15  equity in punishing Infineon Americas for paying Nitronex ████████ for invalid

16  patents by preventing it from raising validity challenges that the rest of the world—

17  including Plaintiffs' own licensees—would be free to raise.  That is especially true

18  given that ██████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████████

20  █████████████████████████████████████████████████

21         To deny Plaintiffs' motion, the Court need not make any grand

22  pronouncements about the doctrine of assignee estoppel post-*Lear*.  The doctrine is

23  not a rigid legal rule that applies as a matter of law, as Plaintiffs suggest, but instead

24  depends upon a fact-specific balancing of the equities in a particular case.  *See Slip*

25  *Track Sys., Inc. v. Metal Lite, Inc.*, 113 F. App'x 930, 933 (Fed. Cir. 2004)

26  _____

[1]  Indeed, Plaintiffs have taken and continue to press the position that ████████
████████████████████████████████████████████████ despite the contrary

27  determination by this Court in modifying the preliminary injunction to reflect
████████████████████████████████████████████████ (Dkt. 277 at 22–23).  *See* Dkt. 583

28  ¶¶ 91–93, 176–86.

(unpublished).   In this case, Infineon Americas is not a typical assignee with complete rights in the Licensed Patents.  And it has paid Nitronex the entire agreed-upon consideration for the assignment.  As discussed in more detail below, these two crucial facts set this case apart from every one of the post-*Lear* district court cases applying assignee estoppel, and dramatically alter the equities such that estoppel is unwarranted.  Plaintiffs' claim for rescission of the assignment further confirms the inequity of applying estoppel.  Plaintiffs cannot rely on the assignment to estop Infineon Americas from arguing invalidity and, at the same time, seek to rescind that very assignment.  At least under the unique facts of this case, Plaintiffs' arguments for estoppel fly in the face of *Lear*'s holding that private contractual rights must give way to the public interest in ensuring full and free competition by eliminating invalid patent monopolies, as discussed in more detail below.

### A.   The Supreme Court's decision in *Lear v. Adkins* abolished the doctrine of assignee estoppel.

Plaintiffs have not shown as a matter of law that the doctrine of assignee estoppel survived the Supreme Court's decision in *Lear*.   Indeed, despite the centrality of this issue to the parties' prior briefing and the Court's prior ruling on assignee estoppel at the pleading stage, Plaintiffs' summary judgment motion makes no mention of *Lear* whatsoever.[2]  *See* Dkt. 354 at 4("[M]uch of the parties' briefing here is directed at whether [*Lear*] abolished the doctrine altogether.").

In *Lear*, the defendant Lear sought to avoid its obligations to pay royalties under a license agreement by claiming that the licensed patent was invalid.  *Lear*, 395 U.S. at 657, 659–60.  Like Plaintiffs here, the plaintiff there argued that Lear should be estopped from challenging the validity of the patent to avoid paying royalties while at the same time enjoying the benefits of the patent. *Id.* at 669.  The Supreme Court disagreed, holding that "the technical requirements of contract

---

[2]  Given this prior history, Defendants can only assume Plaintiffs strategically opted to save their arguments about *Lear* for their reply brief to deprive Defendants of an opportunity to respond to them.

doctrine must give way before the public interest," which favors eliminating protection for invalid patents. *Id.* at 670. As the *Lear* Court explained, "the important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain" overrides "the letter of contractual doctrine" that might otherwise prevent a party from challenging patent validity. *Id.* As the Court recognized, those subject to the contractual obligations involving the patent "may often be the only individuals with enough economic incentive to challenge the patentability of an inventor's discovery." *Id.* Thus, if the contracting party were estopped from raising invalidity, the unwarranted monopoly created by the invalid patent might continue unabated, chilling competition and innovation, and thereby damaging the public interest. *Id.*

The Supreme Court has consistently reaffirmed the overriding public interest in eliminating invalid patents central to *Lear*'s rejection of estoppel. Most recently in *Kimble v. Marvel Entertainment, LLC*, the Court observed that "[a]llowing even a single company to restrict its use of an expired or invalid patent, . . . 'would deprive . . . the consuming public of the advantage to be derived' from free exploitation of the discovery."[3] 135 S. Ct. 2401, 2407 (2015) (quoting *Scott Paper Co. v. Marcalus Mfg. Co.*, 326 U.S. 249, 256 (1945)). Not only would such restrictions deprive the public of full and free competition, but they would also "impermissibly undermine the patent laws" themselves by permitting unwarranted monopolies to survive unchallenged. *Id.* (citing *Scott Paper*, 326 U.S. at 255–56 and *Lear*, 395 U.S. at 668–75).

Although *Lear* involved a patent license rather than a patent assignment, this distinction does not diminish the Supreme Court's clear pronouncement about the

---

[3]  In the prior briefing, Plaintiffs attempted to characterize *Kimble* and *Scott Paper* as being solely about expired patents. Dkt. 340 at p. 3, n. 2. But the quote above makes clear that the *Kimble* Court was concerned with **both** expired and invalid patents when it stated that any idea outside a proper patent grant should be available to the public. *Kimble*, 135 S. Ct. at 2407. (referring to "use of an expired *or invalid patent*" (emphasis added)). And reiterated that *Scott Paper* held "a manufacturer could not agree to refrain from challenging a patent's validity." *Id.*

1   primacy of the public interest in eliminating invalid patents over private contractual

2   obligations.   That pronouncement cannot be reconciled with Plaintiffs' position

3   here.   Plaintiffs argue that it is inequitable to permit a party who obtains patent

4   rights to avoid the obligations it undertook to obtain those rights.   Yet, this is the

5   *very same argument* for estoppel that the Supreme Court rejected in *Lear*.   The

6   only difference relates to the specific patent rights obtained—a right to use the

7   patented invention in the case of a licensee versus all patent rights in the case of a

8   typical assignee.   But nothing in *Lear* suggests that its holding that the public

9   interest trumps contractual obligations in any way turned on the precise nature or

10   extent of the patent rights obtained under the agreement.

11          Nor does any such distinction make sense in light of *Lear*'s rationale, as

12   Supreme Court justices and commentators have observed.   *See, e.g., Brown Transp.*

13   *Corp. v. Atcon, Inc.*, 439 U.S. 1014, 1020 (1978) (dissenting from denial of

14   certiorari and observing that assignee estoppel is "arguably inconsistent" with

15   *Lear*); 6 Moy's Walker on Patents, § 17:42 ("Oddly, court decisions question

16   whether the basic approach of [*Lear*] should be extended from licensees of a patent

17   to assignees. . . . The rationale for this distinction is frankly not clear.").   In refusing

18   to preclude Lear from challenging validity, the Supreme Court emphasized that

19   Lear might be the only entity with enough economic incentive to do so.   The same

20   may be equally true of an assignee with less than all rights in the patents.   For

21   example, an assignment agreement may provide for future royalties to the assignor

22   that the assignee could avoid paying for an invalid patent—exactly the situation the

23   licensee faced in *Lear*.

24          Importantly, no controlling authority holds that assignee estoppel remains a

25   viable doctrine post-*Lear*.   Plaintiffs' headline case, *Slip Track*—an unpublished,

26   non-precedential Federal Circuit decision—actually ***refused*** to apply the doctrine,

27   and thus had no need to (and did not) consider the impact of *Lear*.   *Slip Track Sys.,*

28   *Inc.*, 113 F. App'x at 933; *see also Stanford Hosp. & Clinics v. Humana, Inc.*, No.

5:13-CV-04924 HRL, 2015 WL 5590793, at *8 (N.D. Cal. Sept. 23, 2015) ("[C]ases are not authority for propositions not considered.").  The other Federal Circuit case Plaintiffs rely on, *Diamond Scientific Co. v. Ambico, Inc.*, dealt with ***assignor*** estoppel.  848 F.2d 1220, 1224–25 (Fed. Cir. 1988).  Its holding that ***assignor*** estoppel survived *Lear* has no bearing on the question presented here. Unlike an assignee, an assignor stands in a far different equitable position from the licensee in *Lear*.  For example, the Federal Circuit pointed out the inequity of allowing the assignor to sell a patent and then turn around and assert that what was sold was worthless.  *See id.* at 1224.  No similar concerns exist for an assignee.[4]

Plaintiffs' assertion that courts have "consistently held" that assignees are "estopped as a matter of law" is no more accurate now than it was in the prior briefing.  Dkt. 536 at 5.  The Federal Circuit has never applied the doctrine post-*Lear*, despite two opportunities to address the issue.  *Slip Track*, 113 F. App'x at 933; *Geffner v. Linear Rotary Bearings, Inc.*, No. 97-1041, 1997 WL 577506, at *4 (Fed. Cir. Sept. 17, 1997).  And at least one district court has refused to apply assignee estoppel based on the *Lear* holding.  *Bull v. Logetronics, Inc.*, 323 F. Supp. 115, 121 (E.D. Va. 1971).[5]  Even the cases Plaintiffs rely upon express doubts about the doctrine.  *See Sybron Transition Corp. v. Nixon, Hargrave, Devans & Doyle*, 770 F. Supp. 803, 810 (W.D.N.Y. 1991) ("not exactly a jurisprudential fixture"); *Coast Metals, Inc. v Cape,* No 78-276, 1979 WL 25083, at *4 (D.N.J. Dec. 24, 1979) (distinction between licensee and assignee estoppel "not always logical").  *Lear* mandates denial of Plaintiffs' motion.

---

[4]  Unlike assignors, assignees typically make no representation about the validity of the transferred patents. ████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████

[5]  Plaintiffs argues that *Bull* "seems to have involved a patent license."  Dkt. 536 at 7.  According to the *Bull* court, the agreements at issue involved first a license to the patents, but ultimately an acquisition of the patents themselves.  *See Bull*, 323 F. Supp. at 118 (Bull obtained "the exclusive license under the Bull and Sabel patents (***and eventually the patents themselves***)" (emphasis added)).

1

2

**B.    Even if assignee estoppel survived *Lear*, it should not apply on these facts.**

Ultimately, the Court need not decide whether *Lear* abolished the assignee estoppel doctrine entirely.  For present purposes, it is enough to find that applying estoppel to prevent Infineon Americas from mounting a validity challenge under ***these particular circumstances*** is incompatible with *Lear* and inconsistent with the reasoning of the few district court cases applying assignee estoppel since.  Assignee estoppel is not appropriate in this case because (1) Infineon Americas is not a typical assignee with complete rights in the Licensed Patents; (2) Infineon Americas made full payment to Nitronex of the agreed-upon consideration for the assignment; and (3) Plaintiffs are inconsistently seeking to rescind the assignment on which they base their estoppel arguments.

First and foremost, Infineon Americas does not have complete rights in the Licensed Patents.  Nitronex retained significant patent rights for itself, especially in the Exclusive Field, which is the very reason why a dispute as to validity has arisen between the parties.  This crucial fact distinguishes ***every case*** Plaintiffs rely on and raises precisely the concerns that animated the Supreme Court's decision in *Lear*.  Indeed, several of the cases Plaintiffs rely on expressly relied on this fact to distinguish *Lear*.  For instance, in *Sybron*, the "assignor has transferred ***all*** the substantial rights in the patent" and has "***nothing left***" that it could use to impinge on the public interest in free competition that *Lear* sought to protect.  770 F. Supp. at 811.  *Roberts v. Sears Roebuck & Co.* pointed to the "***complete*** assignment" of patent rights to reconcile its outcome with *Lear*.  573 F.2d 976, 982 (7th Cir. 1978).  And *Coast Metals* likewise concerned a complete assignment of all patent rights. 1979 WL 25083, at *2 ("assignment transferred ***all interest, for all time*** to Coast").

Unlike the grantors in *Sybron*, *Roberts*, and *Coast Metals*, Nitronex did ***not*** transfer all rights to Infineon Americas, but instead retained significant patent rights for itself. ███████████████████████████████████████████

1 ████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████

5 █████████ Dkt. 583 ¶ 138 ████████████████████████████

6 ████████████████████████████████████████████████████

7 ███████████ Nitronex's attempts to █████████████████████

8 ████████████████████ underscore the fact that Infineon Americas does not have

9 all the rights of a typical assignee who might be subject to estoppel.[6]

10     In short, Infineon Americas is not a typical assignee with complete rights in

11 the patents.  For purposes of the estoppel analysis, Americas is much more akin to

12 the licensee of *Lear* than an assignee.  █████████████████████

13 ████████████████████████████████████████████████████

14 ████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████

16 ████████████████████████████████████ See Dkt. 583 ¶¶ 91–93, 176–

17 86.  ████████████████████████████████████████████████

18 ████████████████████████████████████████████████████

19 █████████████████████, the public interest concerns vindicated in *Lear* are very much

20 in play here.  ███████████████████████████████████████████

21 █████████████████████████, Infineon Americas may well be the only party

22 with sufficient investment and incentive to challenge the validity of the Licensed

23 ─────────────────────

24 [6]  Numerous other features of the agreements point to the same conclusion.  For
instance. ███████████████████████████████████████████████

25 ████████████████████████████████████████████████████

26 ████████████████████████████████████████████████████

27 ████████████████████████████████████████████████████

28 ████████████████████████████████████████████████ .

1   Patents, just like the licensee in *Lear*.  Applying estoppel would unfairly allow

2   Plaintiffs to reap monopolistic benefits from invalid patents that might otherwise go

3   unchallenged.  Even if *Lear* did not abolish assignee estoppel entirely, it surely

4   constrained the doctrine from being stretched so far for anticompetitive ends

5   contrary to the public interest.

6        Second, Nitronex received the entire bargained-for consideration for the

7   conveyance of the patent rights.  The cases Plaintiffs rely upon emphasize the

8   inequity of allowing a party to obtain the benefit of complete patent ownership

9   while failing to pay the entire monetary consideration promised in exchange for the

10  assignment.  *Sybron*, 770 F. Supp. at 809, 812 (assignee cannot "escape its

11  obligation to make full payment for the patent" by arguing invalidity); *Coast

12  Metals*, 1979 WL 25083, at *4 (applying estoppel because "the amount agreed to

13  must be paid").  Plaintiffs cannot and do not argue that International Rectifier failed

14  to provide all the recited consideration for the patent rights at issue, █████████

15  ████████████████████████████████████████  ██████████████

16       Unlike the cases on which Plaintiffs rely, Plaintiffs take issue with Infineon

17  Americas's subsequent performance under various other provisions, ██████████

18  █████████████████████████████████████████████████████████

19  █████████████████████████████████████████████████████████

20  Contrary to Plaintiffs' arguments, Infineon Americas is not relying on invalidity to

21  avoid its obligations under the agreement.  Rather, the proper scope and validity of

22  the patent claims are relevant to determining what the provisions of the agreements

23  require.  ████████████████████████████████████████████████

24  █████████████████████████████████████████████████

25  ████████.[8]  The proper scope and validity of those patents thus define the contours of

26  _____
    [7] If Infineon Americas had not paid in full, ██████████████████████

27  ████████████████████████  which indisputably did not occur.  Ex. 1 § 9.02.
    [8] To the extent that Plaintiffs espouse the view ████████████████████

    ████████████████████████  Plaintiffs have engaged in patent misuse via the agreements.

1  that promise (███████████████████████████████████████████

2  ███████████████████████████████████).  Just as Infineon Americas

3  has presented arguments regarding the proper interpretation of the patents through

4  claim construction—which likewise inform the scope of the exclusivity

5  provisions—it should be permitted to challenge the validity of the claims.

6  ████████████████████████████████████████████████

7  ███████████████████████████████████████████  To

8  the extent that some of the patents are invalid, third parties sued for infringement

9  would no doubt be quick to point that out, and assignee estoppel would not prevent

10  them from doing so.  It is not commercially reasonable for Infineon Americas to

11  expend the considerable resources demanded by patent litigation merely to assert an

12  invalid patent.  Here again, the validity and scope of the patent claims inform the

13  scope of the promise to use commercially reasonable efforts to enforce the patents.

14      Having provided all promised consideration for the patent rights conveyed in

15  the Licensed Patents, Infineon Americas should not be estopped from asserting

16  invalidity as a defense to breach in order to clarify the scope of the promises

17  exchanged.  Plaintiffs cite no case holding to the contrary.

18      Third, Plaintiffs' inconsistent pleadings simultaneously seeking to enforce

19  and rescind both the 2010 IP Purchase Agreement and 2010 License Agreement

20  further counsels against applying estoppel.  *See* Dkt. 583 ¶¶ 211, 223, and 264 and

21  p. 72, ll. 21–25.  On the one hand, Plaintiffs claim Infineon Americas is an assignee

22  and cannot challenge validity.  But on the other hand, it pleads inconsistently that

23  the patent assignment should be rescinded.  If Plaintiffs want to argue rescission of

24  the patent assignment, fairness dictates that Plaintiffs cannot simultaneously rely on

25  that assignment to preclude Infineon Americas's invalidity defense.

26

27

28  Thus, having unclean hands, they cannot invoke the equitable doctrine of estoppel to enforce them.

## II.   Assignee estoppel does not apply against Infineon AG based on privity.

### A.   The doctrine of assignee estoppel does not apply to those in privity with the assignee.

Plaintiffs are asking the Court to make *new* law by taking the unprecedented step of applying the doctrine of assignee estoppel and extending it to those in privity with the assignee.  Plaintiffs do *not* cite a single case applying assignee estoppel to those in privity.  Defendants are not aware of any case ever doing so.  For that reason, Plaintiffs cite cases involving *different* doctrines.[9]  Pl. Mot. at 11–13.

Nor would such a rule make sense in light of the purpose of the doctrine.  Assignee estoppel is intended "to prevent an assignee from avoiding royalty payments otherwise due under an assignment contract by challenging the validity of the assigned patent."  *Slip Track,* 113 F. App'x at 933 (refusing to apply estoppel because case "does not present such circumstances").  The assignee is the party who, by contract, received an assignment of patent rights and agreed to pay royalties as consideration for the assignment.  Thus, any remedy for failure to pay those royalties lies in a contract claim against the assignee.  Without showing, at a minimum, that the grantor would be entitled to maintain a contract claim for payment against the assignee's privies, there is no rationale for extending the doctrine of assignee estoppel to those privies.

### B.   Even assuming assignee estoppel could apply to those in privity, Plaintiffs wrongly contend that a parent-subsidiary relationship alone is sufficient to establish privity with respect to assignee estoppel.

Plaintiffs argue that assignee estoppel extends to Infineon AG based *solely* on the fact that Infineon AG is the indirect parent of Infineon Americas.  But this current corporate relationship alone is not sufficient to establish privity.

---

[9]  For example, Plaintiffs rely on *Diamond Scientific*, *MAG Aerospace Industries,* and *Shamrock Technologies* (Pl. Mot. at 11), but these cases involve assignor estoppel as opposed to assignee estoppel.

Privity is very context-specific: "What constitutes 'privity' varies, depending on the purpose for which privity is asserted." *Shamrock Techs., Inc. v. Med. Sterilization, Inc.*, 903 F.2d 789, 793 (Fed. Cir. 1990).  Because there is no case applying assignee estoppel to privities, the best guidepost is courts' analysis of privity for assignor estoppel.  In that context, the Federal Circuit has refused to adopt any bright-line rule, ruling instead that "privity, like the doctrine of assignor estoppel itself, is determined upon a balance of the equities." *Id.*  Thus, even assuming assignee estoppel could apply to those in privity, a determination of privity would require a fact-specific analysis balancing the equities underlying the doctrine of assignee estoppel.[10]

Because Plaintiffs fail to even address the balance of the equities, they cannot establish privity.  The ***only*** fact on which Plaintiffs rely is the indirect parent-subsidiary relationship between Infineon AG and Infineon Americas.  Pl. Mot. at 12:7–19.  But this corporate relationship, standing alone, says little, if anything, about the equities of applying assignee estoppel against Infineon AG.  Indeed, this is the very same fact Plaintiffs relied on in their prior motion, which the Court found provided insufficient information "to balance the equities between MACOM and AG." Dkt. 354 at 7.  In its prior ruling, the Court invited Plaintiffs to develop the factual record on summary judgment with "the circumstances under which those agreements were negotiated and evidence of each parties' performance." *Id.* at 6.  Plaintiffs failed to do so, instead relying once more on the same bare fact of a parent-subsidiary relationship.  Undoubtedly, Plaintiffs chose not to submit any of the facts relevant to a balancing of the equities because those facts are disputed and

---

[10]  Plaintiffs' cases finding privity based on parent-subsidiary affiliation arise in an entirely different context—determining privity for purposes of ***res judicata***, not assignee or assignor estoppel.  Pl. Mot. at 12:7–19 (citing *Zendel v. Circle Location Servs., Inc.*, No. 11-CV-07963, 2012 WL 12877182, at *3–*4 (C.D. Cal. Apr. 5, 2012) (*res judicata*); *Agha-Khan v. U.S.*, No. 1:1-CV-00042, 2015 WL 5734380, at *3–*6 (E.D. Cal. Sept. 29, 2015) (claim preclusion); *Tuitama v. Nationstar Mortg. LLC*, No. 14-CV-9956, 2015 WL 12744269, at *6–*10 (C.D. Cal. Apr. 13, 2015) (*res judicata*); *Salessi v. Commonwealth Land Title Ins. Co.*, No. 08-CV-1274, 2013 WL 5676209, at *9 (C.D. Cal. Oct. 16, 2013) (*res judicata*)).

1 cannot justify summary judgment, given that factual disputes must be resolved in

2 favor of Defendants.  Given that Plaintiffs present the same facts as it did before,

3 the Court should reach the same results.[11]

4     The equities underlying assignee estoppel—preventing a party from

5 obtaining a patent while at the same asserting invalidity to avoid its contractual

6 obligation to pay for the assignment—do not justify extending any estoppel to

7 Infineon AG.  It is undisputed that Infineon AG was not a party to the agreements

8 and does not own any of the Licensed Patents.  Furthermore, the Court has

9 dismissed all contract claims against Infineon AG, meaning that Infineon AG has

10 no contractual obligations it could avoid by arguing invalidity.  Dkt. 141 at 24

11 (dismissing Plaintiffs' contract claim against Infineon AG).  On these facts, there is

12 no equitable basis for applying assignee estoppel to Infineon AG.

13     Plaintiffs complain that Infineon Americas is wrongly using its affiliate

14 Infineon AG to assert an invalidity defense that Infineon Americas could not

15 otherwise assert.  Plaintiffs provide ***no facts*** in support of its speculative theory.

16 Contrary to Plaintiffs' unsupported attorney argument, Infineon AG has repeatedly

17 sought to be dismissed from this lawsuit. Dkts. 47, 99, 133, 187, 245.  Infineon AG

18 successfully obtained dismissal of the contract claims against it, Dkt. 141 at 24, and

19 remains in this case solely because of ***Plaintiffs'*** litigation tactics.  Plaintiffs have

20 improperly tried to transform its breach of contract claims against Infineon

21 Americas into a tort claim of intentional interference against Infineon AG, and now,

22 in its latest pleading, into an unfair competition claim against AG as well.  Plaintiffs

23

24     [11]  Moreover, the parent-subsidiary relationship that forms the sole basis of
Plaintiffs' privity argument did not even exist at the time that the alleged assignee
estoppel arose.  According to Plaintiffs, the alleged assignee estoppel arose from

25 the two agreements that International Rectifier and Nitronex executed in 2010. At
that time, Infineon AG and International Rectifier were not affiliated; instead, they

26 were competitors.  It was not until five year later, in 2015, that Infineon AG
acquired International Rectifier.  As a matter of law, MACOM cannot meet its

27 burden to show that any assignee estoppel should extend to Infineon AG based on
its acquisition of International Rectifier five years after execution of the agreements

28 allegedly giving rise to assignee estoppel.

1   need only dismiss these improper claims to remove Infineon AG and its invalidity

2   defenses from the case.

3       Plaintiffs are asserting assignee estoppel against Infineon AG in an improper

4   attempt to handcuff Infineon AG's defense in a potential future suit for patent

5   infringement.  Realizing that Infineon AG is not a party to the agreements at issue,

6   ██████████████████████████████████████████████████████████

7   ██████████████████████████████████████████████████████████

8   ████████████████████████████████████████████████ Ex. A.

9   Plaintiffs' attempt to use the agreements to ███████████████████

10  ███████████████████ undermines Plaintiffs' claim that the parties are in privity under

11  those agreements.  Moreover, preventing Infineon AG from mounting an invalidity

12  defense in a future infringement suit based on a contract it is not party to would be

13  grossly unfair.  Plaintiffs have shown no legitimate basis to apply assignee estoppel

14  against Infineon AG.

15  **III.    Judicial estoppel does not apply against Infineon Americas.**

16      **A.    Prior inconsistent arguments during prosecution do not estop a
17          party from later challenging the validity of patent claims.**

18      The fact that Infineon Americas prosecuted some of the asserted patents does

19  not estop it from challenging their validity.  Plaintiffs do not cite to a single judicial

20  estoppel case precluding a party from challenging validity in such a circumstance.[12]

21      For more than 100 years, the Supreme Court has steadfastly refused to apply

22  estoppel to prevent a party from arguing invalidity based on the party's prior

23  inconsistent validity arguments during prosecution.  *See Haughey v. Lee*, 151 U.S.

24  282, 285 (1894);  *Paramount Publix Corp. v. Am. Tri-Ergon Corp.*, 294 U.S. 464,

---

25  [12]   Plaintiffs cite only two patent cases, but neither applies estoppel against an
26  invalidity defense.   The first, *Alcohol Monitoring*, estopped a patentee from
    asserting an inconsistent claim interpretation. *Alcohol Monitoring Sys., Inc. v.
27  ActSoft, Inc.*, No. 07-cv-02261-PAB, 2011 WL 5075619 (D. Co. 2011). The
    second, *Analog Devices*, estopped the patentee from making an inconsistent
28  argument to ***preserve*** validity. *Analog Devices v. Linear Tech. Corp.*, 479 F. Supp.
    2d 202 (D. Mass. 2007).

477 (1935).   As the Supreme Court has explained, the public's interest in challenging invalid patent overrides any concerns about prior inconsistent validity arguments:

> However inconsistent [an] early attempt to procure a patent may be with [the] present contention of its invalidity for want of invention, this Court has long recognized that such inconsistency affords no basis for an estoppel, nor precludes the court from relieving the alleged infringer and the public from the asserted monopoly when there is no invention.

*Id.; see also Lear*, 395 U.S. at 670 (relying on "the important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain" to reject licensee estoppel).

Relying on this Supreme Court precedent, courts have refused to estop invalidity challenges based on prior inconsistent validity arguments during prosecution.  For example, in *Kellogg Switchboard & Supply Co. v. Michigan Bell Tel. Co.*, Kellogg argued that the defendant should be estopped from challenging the validity of the patent-at-issue because its privy had successfully obtained a patent on identical claims before losing the claims in an interference proceeding. *Kellogg Switchboard & Supply Co. v. Mich. Bell Tel. Co.*, 99 F.2d 203, 205 (6th Cir. 1938).  Kellogg attempted to point to affirmative representations to the PTO regarding the same prior art (Smythe) and argued that those representations were inconsistent with the defendant's invalidity argument.  *Id.*   The court rejected Kellogg's estoppel argument:

> [T]he law is clearly settled that however inconsistent an early attempt to secure a patent may be with a later challenge to its validity for want of invention, such inconsistency affords no basis for an estoppel, nor does it preclude the court from relieving the alleged infringer from the asserted monopoly. . . .  The public is always a third party to an infringement suit, and its rights may not be waived by the conduct of alleged infringers, however repugnant to their later contentions.

*Id.* (citing *Haughey* and *Paramount*).  More recently, the Federal Circuit recognized that invalidity "protects the public at large, not a particular infringer, and one is not

1    estopped from asserting the invalidity of a patent by the fact that one has previously

2    made an attempt to procure a patent for substantially the same invention." *Wyers v.*

3    *Master Lock Co.*, 616 F.3d 1231, 1242 (Fed. Cir. 2010) (citing *Haughey* and

4    *Paramount*).[13]

5            Relying on *Lear* and the strong federal policy favoring invalidity challenges,

6    courts have also refused to estop invalidity challenges based on inconsistent

7    validity arguments from prior litigation.   For example, in *Clark Equipment Co. v.*

8    *Keller*, the plaintiff Clark filed declaratory judgement seeking a declaration that

9    three patents are invalid and unenforceable.   *Clark Equip. Co. v. Keller*, Nos. 4875

10   and 4839, 1976 WL 21027 at *1 (D.N.D. Sept. 23, 1976), *aff'd in part, rev'd in*

11   *part* (*on other grounds*).   The defendants argued that judicial estoppel precluded

12   Clark from challenging invalidity because Clark (as an exclusive licensee) had

13   argued that the same three patents were valid over the very same prior art in two

14   prior lawsuits.   *Id.* at *4.   The court found that judicial estoppel is "inappropriate."

15   *Id.* at *5.   The court explained, "Whatever the position of the parties in those

16   previous lawsuits, *Lear* . . . permits Clark, as a licensee to now challenge the

17   validity of the three licensed patents."   *Id.* at *4; *see also Lemelson v. Synergistic*

18   *Research Corp.*, 669 F. Supp. 642, 646 (S.D.N.Y. 1987) (relying on *Lear* to hold

19   that defendants are not estopped for arguing invalidity "because of either their

20   _____

21   [13]   *See also Metaframe Corp. v. Biozonics Corp.*, 352 F. Supp. 1006, 1017 (D. Mass. 1972) ("The public interest in protecting the patent monopoly from improper

22   appropriation is stronger than the policy that frowns on those who seek always to turn their faces to the sun and to adopt the position that this day favors their

23   interest."); *Int'l Steel Wool Corp. v. Williams Co.*, 137 F.2d 342, 343 (6th Cir. 1943) ("However inconsistent appellee's former attempt to procure a patent may be

24   with its present contention of invalidity of the Steinbart patent for want of invention, the Supreme Court has long recognized that such inconsistency affords

25   no basis for an estoppel and does not preclude the court from relieving the alleged infringer and the public from the asserted monopoly when there is no invention.");

26   *Moore v. Stewart*, 600 F. Supp. 655, 663 (W.D. Ark. 1985) (relying on *Paramount* to hold that defendant' inconsistent prosecution argument "affords no basis for

27   estoppel of defendant's claims [of invalidity]"); *Shanklin Corp. v. Springfield Photo Mount Co.*, 521 F.2d 609, 614 (1st Cir. 1975) (inconsistent prosecution argument

28   did not estop defendant from later arguing invalidity); *James Heddon's Sons v. Am. Fork & Hoe Co.*, 148 F.2d 230, 233 (6th Cir. 1945).

1  assertions of the patents' validity in prior infringement suits").

2      Thus, even if Plaintiffs could show that Infineon Americas's invalidity

3  arguments in this lawsuit are inconsistent with prior statements to the PTO (which,

4  as discussed below, Plaintiffs do not show), judicial estoppel still would not prevent

5  Infineon Americas from challenging the validity of the asserted patents.[14]

6      **B.    Even if judicial estoppel could preclude invalidity arguments,**
7         **Plaintiffs fail to prove the three elements required to establish**
          **judicial estoppel.**

8      Even assuming—contrary to the authority discussed above—that judicial

9  estoppel could be applied to preclude invalidity arguments, Plaintiffs cannot meet

10 their burden of proving judicial estoppel.  Judicial estoppel is an "equitable doctrine

11 invoked by a court at its discretion."  *N.H. v. Me.*, 532 U.S. 742, 750 (2001)

12 (internal quotations omitted).  In deciding whether to apply judicial estoppel, courts

13 typically consider (1) whether a party's later position is "clearly inconsistent with

14 its earlier position;" (2) "whether the party has succeeded in persuading a court to

15 accept that party's earlier position, so that judicial acceptance of an inconsistent

16 position in a later proceeding would create the perception that either the first or the

17 second court was misled;" and (3) "whether the party seeking to assert an

18 inconsistent position would derive an unfair advantage or impose an unfair

19 detriment on the opposing party if not stopped."  *Id.* at 750–51; *U.S. v. Ibrahim*,

20 522 F.3d 1003, 1009 (9th Cir. 2008).  Plaintiffs cannot meet their "burden of

21 showing that there is 'no genuine issue as to any material fact' as to the estoppel

22

---

23 [14]   Moreover, judicial estoppel cannot be applied against invalidity defenses
   because invalidity is an issue of law, not a question of fact.  *See Lear*, 395 U.S. at
24 670 ("A patent, in the last analysis, simply represents a legal conclusion reached by
   the Patent Office.").  Judicial estoppel may never be applied to issues of law.  *See*
25 *Sturm v. Boker*, 150 U.S. 312 (1893) (stating that a "statement of opinion upon a
   question of law" may not act as an estoppel against the declarant); *Webb v. Tom*
26 *Brown Drilling, Inc.*, 902 F.2d 42 (9th Cir. 1990) ("Judicial estoppel arises when a
   party makes a ***factual*** assertion in a legal proceeding that directly contradicts an
27 earlier assertion made in the same proceeding or a prior one." (emphasis added));
   *contra Helfand v. Gerson*, 105 F.3d 530, 535 (9th Cir. 1997) (acknowledging a split
28 on whether judicial estoppel applies to legal conclusions and finding that it should).
   Thus, mere legal assertions about validity at the PTO cannot trigger estoppel.

effect of the [party's] previous statements to the PTO." *MasterObjects Inc. v. Google, Inc.*, No. C 11-1054, 2013 WL 2606626, at *1 (N.D. Cal. June 11, 2013).

### 1. Infineon Americas has not made any inconsistent representations to the PTO and this Court.

Plaintiffs fail to provide sufficient facts to show a "clearly inconsistent" position to support judicial estoppel. Plaintiffs rely on only two facts: (1) that International Rectifier and Infineon Americas argued that certain asserted claim are patentable (Dkt. 536-1 at ¶ 11) and (2) that Infineon Americas now contends those claims are invalid (*id.* at ¶ 12). But Plaintiffs fail to provide any specific facts relating to either the validity arguments from prosecution or the invalidity arguments in this lawsuit. Without those facts, Plaintiffs cannot show a "clearly inconsistent" position to support judicial estoppel.

Plaintiffs' cursory analysis does not support summary judgement of judicial estoppel. For example, in *Kinetic Concepts, Inc. v. Wake Forest University Health Sciences*, the defendant moved for summary judgment of estoppel based on the fact that the plaintiff KCI had argued that all the asserted claims were valid in prior cases but was now arguing that the same claims were invalid. *Kinetic Concepts, Inc. v. Wake Forest Univ. Health Scis.*, Civ. A. Nos. SA-11-CV-163-XR and SA-11-CV-713-XR, 2013 WL 6164592 at *5 (W.D. Tex. Nov. 25, 2013). The court held that these different conclusions did not represent "clearly inconsistent" positions. *Id.* at *5–*6. The Court noted that a determination of invalidity requires comparing a properly construed claim against a specific combination of prior art. *Id.* Although KCI was arguing for a different outcome, it was not an inconsistent position because their prior validity position was based on the prior art before it at the time. *Id.* at *6; *see also id.* at *5 n. 4 ("KCI's 'position' in those [prior] cases is defined in reference to the prior art asserted by its opponents, not by the entire universe of existing prior art."). Because KCI's invalidity position was not, as a matter of law, "clearly inconsistent" with the validity positions it adopted in earlier

1   cases, the court denied the defendant's request for summary judgment of estoppel.

2        Within months, the defendant filed another summary judgment motion on

3   estoppel, this time seeking to prevent KCI from changing its position on the

4   specific prior art references that were litigated in the earlier cases. *Kinetic*

5   *Concepts, Inc. v. Wake Forest Univ. Health Scis.*, Civ. A. Nos. SA-11-CV-163-XR

6   and SA-11-CV-713-XR, 2014 WL 1612648 at *43 (W.D. Tex. Apr. 22, 2014).

7   The court again denied the motion. *Id.* at *4–*5. The court explained:

8       When a party takes a position in a validity dispute, its
position is therefore necessarily defined in reference to
9       *both* the prior art and the properly construed claims.
Thus, to the extent that there are new claims constructions
10       in this case, it is impossible to conclusively say that KCI
is asserting a "clearly inconsistent" position with respect
11       to obviousness or anticipation.

12   *Id.* at *4. Based on the court's claim constructions, the court ruled that judicial

13   estoppel would not preclude KCI from changing its position on what the previously

14   litigated prior art references teach. *Id.*; *see also Mike's Train House, Inc. v.*

15   *Broadway Ltd. Imports*, Civ. No. 1:09-cv-02657-JKB, 2012 Wl 664498, at *21–*22

16   (D. Md. Feb. 27, 2012) (finding that the inconsistency prong of judicial estoppel is

17   not met with respect to invalidity argument due to different claim constructions).

18        Here, Plaintiffs have failed to provide the facts required to compare the

19   specific validity arguments during prosecution with the invalidity arguments now

20   being made in this lawsuit. Plaintiffs provide no evidence that, in this lawsuit,

21   Infineon Americas is relying on the same prior art that was at issue in the

22   prosecution for any given claim or that Infineon Americas has made any

23   inconsistent representation regarding that prior art. Plaintiffs provide no facts

24   showing that the claim constructions applied during prosecution were the same as

25   the ones that Defendants are relying on here.[15] The conclusory facts on which

26   Plaintiffs rely are not sufficient to find that any of Defendants' invalidity positions

27     [15]  During claim construction in this case, Defendants already presented evidence
that during prosecution the applicants applied more narrow construction of the term
28   "compositionally graded transition layer" in the '921 Patent. Dkt. 439 Sec. I.A.2

are, as a matter of law, "clearly inconsistent" with validity positions from prosecution.   Dkt. 536-1 at ¶ 11, 12.   As Defendants have repeatedly argued, Plaintiffs' motion is premature because Defendants have not taken any specific positions as to the prior art or invalidity in this lawsuit, other than a handful of indefiniteness arguments that the Court has already rejected on the merits. *MasterObjects*, 2013 WL 2606626, at *3 (finding that plaintiff's motion for summary judgment on judicial estoppel is premature because defendant has not taken an inconsistent position in the case).

Although Plaintiffs did ***not*** include any specific prosecution arguments in their Statement of Uncontroverted Facts, Plaintiffs submitted as exhibits a few specific documents from the prosecution of some of patents at issue (Exs. 3–9).[16] From those documents, Plaintiffs take four words out of context to misleadingly suggest that International Rectifier and Infineon Americas argued that the asserted claims were patentable over ***all*** prior art or ***all*** possible bases of invalidity under ***all*** possible claim constructions.   *See* Pl. Mot. at 3:20–23 (asserting that International Rectifier and Infineon Americas "expressly stated that the claims are 'patentably novel and inventive'").   The language quoted by Plaintiffs is from a boilerplate statement in the conclusion of the prosecution documents, repeatedly nearly verbatim in each exhibit.   For example, in Exhibit 5, the boilerplate conclusion reads:

> Based on the foregoing reasons, Applicants respectfully submit that independent claims 36 and 53 and claims depending therefrom, are patentably novel and inventive.

Ex. 5 at 86.   The preface ("Based on the foregoing reasons") establishes that this statement is simply a summation of the specific argument made to overcome the PTO's rejection.   In the case of Exhibit 5, International Rectifier presented argument to overcome an obviousness-type double patenting rejection from the

---

[16]   Exhibits 3–7 are responses made on the behalf of International Rectifier before Infineon AG acquired the company, and Exhibits 8 and 9 are responses made on behalf of Infineon Americas after the acquisition of International Rectifier.

PTO based on the '287 Patent (another of the Licensed Patents that had already issued). *Id.* at 86. Specifically, International Rectifier pointed out that it had filed a terminal disclaimer to overcome the rejection. If anything, this suggests an implicit ***agreement*** with the Examiner's conclusion that the claims were obvious variants of the '287 Patent. It certainly was not arguing that the claims were patentable over all prior art in the universe, as Plaintiffs misleadingly suggest. Rather, it was responding to a specific rejection raised by the Examiner. With respect to the other exhibits, Plaintiffs rely on the same boilerplate sentence in the conclusion, presenting a summation of specific arguments made to overcome the PTO's rejections, none of which Plaintiffs bother to address in their motion.[17] Plaintiffs' failure to point to any directly inconsistent statements is fatal to their motion.

### 2. The PTO did not rely on any inconsistent representations by Infineon Americas.

As discussed above, Plaintiffs have failed to show a "clearly inconsistent" position to support judicial estoppel. Moreover, there is no evidence that the PTO relied on any statements in the prosecution history, including the boilerplate summations. In an *ex parte* proceeding like a patent examination, the PTO does not rely on applicants' legal conclusions of validity and instead "is often obliged to reach its decision" regarding whether to issue the patent "without the aid of the argument which could be advanced by parties interested in proving patent invalidity." *Lear*, 395 U.S. at 670. Therefore, Plaintiffs cannot meet their burden to demonstrate that any alleged "clearly inconsistent" argument "succeeded" in persuading the PTO. *See N.H.*, 532 U.S. at 750. In some cases, such as the '921 Patent, the PTO continued to reject the claims over International Rectifier's argument despite the boilerplate summation. *See* Ex. B at 10–11.

---

[17] In each instance, the boilerplate sentence expressly refers to the specific arguments in the Amendment. Ex. 4 at 79 ("For all the foregoing reasons"); *see also* Ex. 5 at 86; Ex. 6 at 96; Ex. 7 at 106; Ex. 8 at 116; Ex. 9 at 126 ("Based on the foregoing reasons").

### 3.     Infineon Americas's validity challenges would not impose an unfair detriment on Plaintiffs.

There is no "unfair" detriment to Plaintiffs because they are not entitled to exercise a monopoly based on invalid patent claims. *Lear*, 395 U.S. at 670 (It is not "unfair to require a patentee to defend the Patent Office's judgment when his licensee places the question in issue, especially since the licensor's case is buttressed by the presumption of validity which attaches to his patent.").

For example, in *Synopsys*, the court found no judicial estoppel based on the third estoppel factor, unfairness.  Synopsys argued that because Magma repeatedly represented to the PTO that its employee was the sole inventor of the patents, Magma should be estopped from arguing (after it abandoned the patents) that the patents were co-invented.  *Synopsys, Inc. v. Magma Design Automations, Inc.*, 2007 WL 322353, at *26 (N.D. Cal. Jan. 31, 2007).  The court found that there was no dispute that Magma's representations in the lawsuit were inconsistent with its representations to the PTO, and that the PTO issued the patents as a result of the representations regarding inventorship.  *Id.*  The court nonetheless found that judicial estoppel did not apply because Synopsys could not establish unfairness. Magma's litigation position, that the patents were co-invented, could not impose an "'unfair' detriment on Synopsys, as Synopsys is not entitled to sole ownership where Kudva in fact is a co-inventor." *Id.*  Thus, the court did not estop Magma from taking a position directly inconsistent with its representations to the PTO. *Id.*

Similarly, allowing Infineon Americas to challenge the validity of the patents does not impose an unfair detriment on Plaintiffs because Plaintiffs are not entitled to restrict competition using invalid patent claims. *Lear*, 395 U.S. at 670 ("Surely the equities of the licensor do not weigh very heavily when they are balanced against the important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain.").  Thus, Infineon Americas should not be estopped from challenging validity, and the public should

1   not be subject to an asserted monopoly if there is no real, patentable invention.

2   **IV.    Judicial estoppel does not apply against Infineon AG based on privity.**

3   Whether any judicial estoppel that may apply against Infineon Americas can

4   be extended to Infineon AG requires a fact-intensive analysis.  Plaintiffs, however,

5   again fail to provide sufficient facts to permit such analysis, choosing instead to

6   rely solely on Infineon AG's status as the indirect parent of Infineon Americas.  But

7   this corporate relationship alone provides an insufficient basis to estop AG.

8   A party's prior statements may be attributable to privies for purposes of

9   judicial estoppel, but ***only*** if the privy participated in and controlled the prior

10   proceeding giving rise to the judicial estoppel.  In *Milton H. Greene Archives, Inc.*

11   *v. Marilyn Monroe LLC*, the Ninth Circuit held that the prior statements of an estate

12   executor were made on behalf of the estate and its beneficiaries and thus may be

13   attributed to the beneficiaries for judicial estoppel purposes.  *Milton H. Greene*

14   *Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 996–98 (9th Cir. 2012).  In

15   its privity analysis, the court relied on case law relating to collateral estoppel.  *Id.* at

16   996.  For collateral estoppel, privity depends on whether the non-party participated

17   in or controlled the prior proceeding from which the estoppel arises.  *See, e.g., Am.*

18   *Safety Flight Sys. v. Garrett Corp.*, 528 F.2d 288, 289 (9th Cir. 1975) ("We cannot

19   disregard the established principle that a participating non-party cannot be estopped

20   to relitigate issues involved in an earlier suit unless he had 'the right to participate

21   and control such prosecution or defense.'") (citing *Hy-Lo Unit & Metal Prods. Co.*

22   *v. Remote Control Mfg. Co.*, 83 F.2d 345, 350 (9th Cir. 1936)); *A & A Concrete,*

23   *Inc. v. White Mountain Apache Tribe*, 781 F.2d 1411, 1417 (9th Cir. 1986) (no

24   estoppel where there was no evidence that the non-party had the right to participate

25   in or control the prior litigation).

26   Because Plaintiffs provide no facts showing that Infineon AG participated in

27   or controlled the prosecution of the asserted patents at the time the allegedly

28   inconsistent statements were made, judicial estoppel cannot extend to Infineon AG.

For most of the patents at issue, prosecution was completed ***before*** Infineon AG acquired International Rectifier in January 2015.[18]  It would be illogical to assume that Infineon AG participated in or controlled its competitors' prosecution.  *Kourtis v. Cameron*, 419 F.3d 989, 997 (9th Cir. 2005) (finding no privity existed between plaintiff and its former agent because the former agent's interests were adverse to plaintiff).  Thus, International Rectifier's prosecution of those patent could not create any estoppel against Infineon AG.  *Nordhorn v. Ladish Co.*, 9 F.3d 1402, 1405–06 (9th Cir. 1993) (refusing to apply estoppel where two companies were affiliated but not at the time of the prior litigation alleged to create estoppel); *see also Stichting Ter Behartiging (etc.) v. Schreiber*, 327 F.3d 173, 186 (1st Cir. 2003) ("[B]ecause the doctrine of collateral estoppel asks whether a party is bound by the result of a prior judicial proceeding . . ., the relevant inquiry is the closeness of the relationship at the time of the prior proceeding.").

With respect to the three remaining patents (the '119, '686, and '775 Patents), Plaintiffs likewise do not provide any evidence that Infineon AG participated in or controlled the prosecution of those patents after Infineon AG acquired International Rectifier.  As a result, the result is the same:  Plaintiffs cannot establish that any judicial estoppel should extend to Infineon AG.  *See Doral Pharm., Inc. v. Pharm. Generic Developers, Inc.*, 148 F. Supp. 2d 127, 132–33 (D.P.R. 2001) (refusing to apply judicial estoppel because defendant did not establish that plaintiff exercised control over affiliate's prior litigation).

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion should be denied in its entirety.

---

[18]  The '921 Patent issued in 2012.  Ex. C.  The '417 and '862 Patents issued in 2013.  Exs. D and E.  The '034 and '335 Patent issued in January 2015—one before the acquisition and the other a mere week after the acquisition.  Exs. F and G. For these patents, Plaintiffs rely on statements that International Rectifier made before it was acquired by Infineon AG.  Ramsey Dec. at ¶¶ 9–13 (citing Exhibits 3–7 which are dated before the date of the acquisition, January 15, 2015).

1

2
Dated:  June 20, 2018
JEFFERY D. BAXTER
BAKER BOTTS LLP

3

4

5
By: /s/ *Jeffery D. Baxter*

6
Jeffery D. Baxter

Attorney for Defendants

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28