Lara J. Dueppen, Bar No. 259075
LDueppen@perkinscoie.com
PERKINS COIE LLP
1888 Century Park East, Suite 1700
Los Angeles, CA 90067-1721
Telephone:  310.788.9900
Facsimile:  310.788.3399

Amanda Tessar (admitted *pro hac vice*)
ATessar@perkinscoie.com
PERKINS COIE LLP
1900 Sixteenth Street, Suite 1400
Denver, CO  80202-5255
Telephone:  303.291.2300
Facsimile:  303.291.2400

Ramsey M. Al-Salam, Bar No. 109506
RAlSalam@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone:  206.359.6835
Facsimile:  206.359.7385

**ATTORNEYS FOR PLAINTIFFS**
(Additional Counsel Listed on Signature Page)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC., a Delaware corporation, and NITRONEX, LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>INFINEON TECHNOLOGIES AG, a corporation organized under the laws of Germany, and INFINEON TECHNOLOGIES AMERICAS CORP., a Delaware corporation,<br><br>Defendants. | Case No. CV 16-02859 CAS (PLAx)<br><br>**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON ESTOPPEL**<br><br>Hearing Date: July 19, 2018<br>Hearing Time: 12:00 p.m.<br>Courtroom: 8D<br><br>Complaint Filed: April 26, 2016<br>Discovery Cutoff: September 21, 2018<br>Pre-Trial Conference: April 15, 2019<br>Trial Date: May 7, 2019 |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................... 1

II. THE MATERIAL FACTS ARE UNDISPUTED ................................... 2

III. ASSIGNEE ESTOPPEL APPLIES ....................................................... 3

    A. Lear Did Not Abolish Assignee Estoppel ................................. 3

    B. The Equities Justify Application of Assignee Estoppel ............ 7

    C. Assignee Estoppel Applies to Infineon AG ............................. 9

IV. JUDICIAL ESTOPPEL APPLIES ....................................................... 12

    A. Judicial Estoppel Applies to Infineon's Positions Before the Patent Office .......................................................................... 12

    B. Infineon's Positions Are Clearly Inconsistent ....................... 14

    C. Allowing Infineon to Assert Invalidity Would be Unfair........ 15

    D. Judicial Estoppel Applies to Infineon AG ............................. 18

V. CONCLUSION ..................................................................................... 19

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Abbvie Inc. v. Mathilda & Terence Kennedy Inst. of Rheumatology Tr.*,
  956 F. Supp. 2d 429 (S.D.N.Y. 2013), aff'd, 764 F.3d 1366 (Fed.
  Cir. 2014)........................................................................................................ 14

*Agha-Khan v. United States*,
  No. 1:15-CV-00042-AWI, 2015 WL 5734380 (E.D. Cal. Sept. 29,
  2015)............................................................................................................... 11

*Amgen, Inc. v. F. Hoffman-LaRoche Ltd.*,
  581 F. Supp. 2d 160 (D. Mass. 2008).............................................................. 14

*Apotex, Inc. v. UCB, Inc.*,
  970 F. Supp. 2d 1297 (S.D. Fla. 2013), aff'd, 763 F.3d 1354 (Fed.
  Cir. 2014)........................................................................................................ 14

*Baseload Energy, Inc. v. Roberts*,
  619 F.3d 1357 (Fed. Cir. 2010) ........................................................................ 4

*Bull v. LogEtronics, Inc.*,
  323 F. Supp. 115 (E.D. Va. 1971) ................................................................. 4, 5

*Coast Metals, Inc. v. Cape*,
  No. 78-276, 1979 WL 25083 (D.N.J. Dec. 24, 1979) ........................................ 5

*Diamond Sci. Co. v. Ambico, Inc.*,
  842 F.2d 1220 (Fed. Cir. 1988) ................................................................ passim

*Flex-Foot, Inc. v. CRP, Inc.*,
  238 F.3d 1362 (Fed. Cir. 2001) ........................................................................ 4

*Kellogg Switchboard & Supply Co. v. Mich. Bell Tel. Co.*,
  99 F.2d 203 (6th Cir. 1938) ............................................................................ 13

*Kinetic Concepts, Inc. et al v. Wake Forest University Health Sciences*,
  No. 5:2011cv00163 - Document 67 (W.D. Tex. 2013)...................................... 15

*Kinetic Concepts, Inc. et al v. Wake Forest University Health Sciences*,
  No. SA-11-CV-00163-XR, 2013 WL 6164592 (W.D. Tex. Nov. 25,
  2013)............................................................................................................... 15

# TABLE OF AUTHORITIES
(continued)

PAGE(S)

*Lear v. Adkins*,
  395 U.S. 653 (1969) ...................................................................................passim

*MasterObjects, Inc. v. Google Inc.*,
  No. C 11-1054 PJH, 2013 WL 2606626 (N.D. Cal. June 11, 2013)............ 17, 18

*Mentor Graphics Corp. v. Quickturn Design Systems, Inc.*,
  150 F.3d 1374 (Fed. Cir. 1998) ................................................................8, 11, 12

*Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC*,
  No. 1:09-cv-02657-JKB, 2012 WL 664498 (D. Md. Feb. 27, 2012)............ 16, 17

*Milton H. Greene Archives, Inc., Marilyn Monroe LLC*,
  692 F.3d 983, 995 (9th Cir. 2012)................................................................ 17, 18

*Organic Seed Growers and Trade Ass'n v. Monsanto Co.*,
  718 F.3d 1350 (Fed. Cir. 2013) .............................................................................13

*Paramount Publix Corp. v. Am. Tri-Ergon Corp.*,
  294 U.S. 464 (1935) ...............................................................................................13

*Patriot Mfg. LLC v. Hartwig, Inc.*,
  996 F. Supp. 2d 1120 (D. Kan. 2014) ..................................................................11

*Radio Sys. Corp. v. Lalor*,
  No. C10-828RSL, 2012 WL 254026 (W.D. WA. Jan. 26, 2012) .......................11

*Roberts v. Sears, Roebuck & Co.*,
  573 F.2d 976 (7th Cir. 1978)...................................................................................5

*Salessi v. Commonwealth Land Title Ins. Co.*,
  No. SA CV 08-01274-DOC, 2013 WL 5676209 (C.D. Cal. Oct. 16,
  2013).......................................................................................................................11

*Shamrock Techs., Inc. v. Med. Sterilization, Inc.*,
  903 F.2d 789 (Fed. Cir. 1990) ..........................................................................9, 10

*Slip Track Sys., Inc. v. Metal Lite, Inc.*,
  113 Fed. Appx. 930 (Fed. Cir. 2004) .....................................................................5

*Studiengesellschaft Kohle M.B.H. v. Shell Oil Co.*,
  112 F.3d 1561 (Fed. Cir. 1997) ..............................................................................3

1
2

# TABLE OF AUTHORITIES
(continued)

PAGE(S)

3
4

*Sybron Transition Corp. v. Nixon, Hargrave, Devans & Doyle*,
    770 F. Supp. 803 (W.D.N.Y. 1991) ....................................................... 5

5
6

*Synopsys, Inc. v. Magma Design Automations, Inc.*,
    2007 WL 322353 (N.D. Cal. Jan. 31, 2007) ...................................... 16

7
8

*Tuitama v. Nationstar Mortg. LLC*,
    No. CV 14-09956 MMM, 2015 WL 12744269 (C.D. Cal. Apr. 13,
    2015) ................................................................................................... 11

9
10

*Wyers v. Master Lock Co.*,
    616 F.3d 1231 (Fed. Cir. 2010) .......................................................... 13

11
12

*Yeda Res. & Dev. Co. v. Imclone Sys. Inc.*,
    443 F. Supp. 2d 570 (S.D.N.Y. 2006) ................................................ 14

13
14

*Zendel v. Circle Location Servs., Inc.*,
    No. CV 11-07963 SJO, 2012 WL 12877182 (C.D. Cal. Apr. 5,
    2012) ................................................................................................... 10

15
16

## OTHER AUTHORITIES

17

J. Wetzel and R. Niro, *The Look of Lear–An Advocate's View*, 46
    Notre Dame L. Rev. 475 (1971) ............................................................ 3

18
19
20
21
22
23
24
25
26
27
28

# I.    INTRODUCTION

MACOM seeks summary judgment that Infineon is estopped from contending that the patents-at-issue are invalid.  Summary judgment is appropriate because the undisputed facts establish that it would be inequitable to allow Infineon to avoid its contractual obligations by asserting patent invalidity.  This is not a situation where Infineon is a mere licensee.  Instead, Infineon was assigned the patents in exchange for, among other things, the promise to enforce the patents and not to practice the patented inventions in MACOM's exclusive field.  Allowing Infineon to assert the patents are invalid is fundamentally inconsistent with those promises, as well as its position before the Patent Office that the patents it obtained are directed to patentable inventions.  Infineon cannot, for example, plausibly enforce patents that it has publicly asserted are invalid.

Infineon's arguments in opposition are not persuasive.  No court has held that *Lear* abolished assignee estoppel, and no court held that judicial estoppel does not apply to a patent that a party has successfully prosecuted before the Patent Office.  Admittedly, there are no decisions squarely on point, but the circumstances here are unique.  Parties that acquire patents are rarely incentivized to invalidate them, as Infineon does here.

The Federal Circuit has, however, found estoppel in analogous cases that raise the same equitable issues.  The Federal Circuit has, for example, unequivocally held that assign*or* estoppel has survived *Lear*, and has consistently precluded an assignor from asserting invalidity.  The equitable underpinnings for assignor estoppel apply in the instant case.  In both contexts, a party is attempting to keep the benefit of a bargain (*i.e.,* the sales proceeds in the assignor estoppel context and various contractual benefits in the instant case), while undermining the consideration that it provided (*i.e.,* the validity of the patents in the assignor estoppel context and the promise of enforcement and an exclusive field in the instant case).  The difference is that instead of assigning the patents, Infineon

-1-

"assigned" the next closest thing--an exclusive license--which it now seeks to extinguish by asserting the underlying patents are invalid.  Just as courts have repeatedly held that a patent assignor may not assert that the patents it assigned are invalid, so should Infineon be precluded from avoiding its enforcement obligations and promise not to practice the patents in MACOM's exclusive field by asserting they are invalid.

Further, the estoppel should apply to Infineon AG because there are no genuine issues of fact on privity and any finding of estoppel that is limited to Infineon Americas would be meaningless.  If Infineon AG publicly asserts the patents are invalid, for example, then it will be impossible for Infineon Americas to enforce them.  Similarly, Infineon AG should not be allowed to invalidate the patents so that its subsidiary can avoid its promise not to practice the inventions in MACOM's exclusive field.  The underlying equities compel extending the estoppel to Infineon AG.

Courts have consistently held that parents are in privity with their subsidiaries for estoppel purposes.  Infineon has cited no case that has held otherwise.  The cases cited by Infineon that involve balancing equities to resolve a privity question arise where an estopped *individual* joins a company or corporation. In that context, there could be factual issues relating to whether the company or corporation is sufficiently in privity with the individual for estoppel to apply. These issues do not apply in the instant case, where there is no question that Infineon AG controls Infineon Americas.

These issues and Infineon's other arguments are discussed in more detail below.

## II.    THE MATERIAL FACTS ARE UNDISPUTED

The facts material to estoppel are undisputed.  Although Infineon purports to dispute certain facts in its Statement of Genuine Disputes, it fails to create a dispute as to any material fact.  Infineon ostensibly disputes, for example, that Infineon

Americas was previously called International Rectifier Corporation, but its position is contradicted by its own declarant.  Mr. Pelzer's declaration (Dkt. No. 587-10 at ¶5) explains that after Infineon AG acquired International Rectifier, it merged a pre-existing subsidiary into it, with "International Rectifier Corporation surviving," and at "the same time, the name of International Rectifier Corporation was changed to Infineon Technologies Americas Corp."  There is no genuine dispute regarding the relationship of the parties or the terms of the underlying agreements.  Similarly, the history and statements made to the Patent Office during prosecution of the underlying applications are not in dispute.  These facts are sufficient for summary judgment.

## III.   ASSIGNEE ESTOPPEL APPLIES

### A.   *Lear* Did Not Abolish Assignee Estoppel

Infineon's primary argument on assignee estoppel is that it was abolished by the Supreme Court in *Lear, Inc. v. Adkins,* 395 U.S. 653 (1969).  Dkt. No. 587 at 4-7.  This issue was previously briefed in connection with MACOM's motion to strike Infineon's invalidity defense.  Dkt. Nos. 331, 340, 352.  Preliminarily, although *Lear* remains good law, its underlying reasoning has been heavily criticized.[1]  More importantly, no court has held that assignee estoppel was

---

[1]   *Lear* has been questioned by both courts and commentators.  *See, e.g., Diamond Sci. Co. v. Ambico, Inc.,* 848 F.2d 1220, 1227-28 (Fed. Cir. 1988) ("The Court in *Lear* apparently believed that 'full and free competition' ensues when a patent is eliminated from the rolls.  The experience of the market place is otherwise.") (Newman concurring); *Studiengesellschaft Kohle M.B.H. v. Shell Oil Co.,* 112 F.3d 1561, 1567 (Fed. Cir. 1997) (referring to *Lear* concerns as "tones that echo from a past era of skepticism over intellectual property principles"); J. Wetzel and R. Niro, *The Look of Lear–An Advocate's View*, 46 Notre Dame L. Rev. 475 (1971) *available at* https://scholarship.law.nd.edu/cgi/viewcontent.cgi?article=2977&context=ndlr ("It can be argued that the impact of *Lear* will weigh such a burden on commerce and work such a deprivation on society that it will be inherently undone, perhaps from the strength of the forces that its weakness will generate.").  The Federal Circuit has also limited its application, holding, for

abolished by *Lear*.  Infineon relies on a single district court decision–*Bull v. LogEtronics, Inc.*, 323 F. Supp. 115, 121 (E.D. Va. 1971)–as supposedly "refus[ing] to apply assignee estoppel based on the *Lear* holding."  Dkt. No. 587 at 7.[2]  But the parties and the court in *Bull* treated defendant as a **licensee**, not an assignee.  There is no reference to "assignee estoppel" or even the defendant as an "assignee" anywhere in the opinion.  Indeed, the facts reflect that the defendant there was a **licensee**, with an option to purchase the patents.  In particular, the plaintiff (Bull) had entered into an agreement with Xerox.  The agreement, which was later assigned to the defendant (LogEtronics), included an option to pay $250,000 as a lump sum for assignment of the patents or, alternatively, to pay a 5% royalty (which would lead to assignment after the royalties reached $250,000).  *Id.* at 137.  LogEtronics exercised the option to "pay a royalty…."  *Id.* at 118 n.1.  The court and the parties repeatedly characterized the defendant as a licensee and the dispute about the failure to pay the royalty payments.  *See id.* at 118 (describing cause of action as for "[b]reach by LogEtronics of … the exclusive licensing agreement…." ); *id.* at 121 (plaintiff argued that *Lear* "'does not stand for the broad proposition that the buyer of a **license** to an already issued patent may repudiate its purchase contract almost at will'") (emphasis added); *id.* (holding that "LogEtronics may defend against the alleged breach of agreement to pay royalties on the grounds of invalidity of the patent")*.*  In short, there is nothing that suggests that the court in *Bull* was addressing the issue of assignee estoppel.[3]

---

example, that no-challenge clauses are enforceable in the context of settlement agreements.  *Flex-Foot, Inc. v. CRP, Inc.,* 238 F.3d 1362, 1367-68 (Fed. Cir. 2001); *Baseload Energy, Inc. v. Roberts,* 619 F.3d 1357, 1363 (Fed. Cir. 2010).

[2] The Court also previously interpreted *Bull* as "declin[ing] to apply assignee estoppel in light of *Lear* and permitt[ing] a patent assignee to present an invalidity defense."  Dkt. No. 354 at 5.

[3] Infineon argues that the case involved "an acquisition of the patents themselves," quoting the district court's reference to an "exclusive license under the Bull and Sable patents (**and eventually the patents themselves**)."  Dkt. No.

In contrast, various courts, including the Federal Circuit, have continued to treat the doctrine of assignee estoppel as being viable even after *Lear*. *Slip Track Sys., Inc. v. Metal Lite, Inc.*, 113 Fed. Appx. 930, 933 (Fed. Cir. 2004) (recognizing assignee estoppel); *Roberts v. Sears, Roebuck & Co.*, 573 F.2d 976 (7th Cir. 1978) (holding that *Lear* did not abolish assignee estoppel and affirming its application); *Sybron Transition Corp. v. Nixon, Hargrave, Devans & Doyle*, 770 F. Supp. 803 (W.D.N.Y. 1991) (applying assignee estoppel); *Coast Metals, Inc. v. Cape*, No. 78-276, 1979 WL 25083 (D.N.J. Dec. 24, 1979) (applying assignee estoppel).

Further, regardless of the label, the equities in the instant case are substantially different than in *Lear,* and more akin to assignor estoppel, which has unequivocally been held to survive *Lear.*  "Assignor-assignee cases are typified by the facts at bar:  the validity of the patent is attacked by the inventor/assignor who, having received the bargained-for consideration for the assignment, now seeks to impeach the invention (by challenging validity to the patent) in order to use the subject matter for his own gain."  *Diamond Sci. Co.*, 848 F.2d at 1227 (Newman concurring); *cf. Lear, Inc.,* 395 U.S. at 664-65 (referring to "recurring problem which arises when the original patent owner, after assigning his patent to another for a substantial sum, claims that the patent is worthless because it contains no new ideas").  In that circumstance, the assignor is seeking to keep the benefits of the bargain, the funds received for the patents, while devaluing the consideration provided to the opposing party.

This is precisely what Infineon seeks to do here.  Infineon seeks to "have its cake and eat it too."  Through its bargain with MACOM, Infineon deprived MACOM of ownership of the patents (precluding their enforcement against Infineon and its affiliates), it obtained rights to practice in power management and

---

587 at 7 n.5 (emphasis in original).  This is misleading.  The district court referenced "an option to acquire" various things, including the patents, not that the patents had been in fact acquired.  323 F. Supp. at 118.

other areas outside of MACOM's exclusive field, it obtained Nitronex's confidential technology and know-how that enabled its own product development for many years (originally in its allowed fields of use and now in MACOM's exclusive field), and it has licensed the patents to another party, (*see* Dkt. No. 583 at ¶¶ 30, 140-149, 152), among other benefits.  It nevertheless now wants to invalidate the patents to avoid the commitments it made, including agreeing not to practice in MACOM's exclusive field.  Indeed, Infineon readily admits that it seeks to invalidate the patents to extinguish or limit its commitments of an exclusive license and enforcement.  *See, e.g.*, Dkt. No. 587 at 10-11 ("The proper scope and validity of those patents thus define the contours of that promise….").

The Federal Circuit's reasoning in holding that assignor estoppel survived *Lear* applies directly to the facts of the instant case.  In *Diamond*, the court held that "an assignor should not be permitted to sell something and later to assert that what was sold is worthless, all to the detriment of the assignee."  848 F.2d at 1224.  The court concluded that the unfairness in that circumstance overrides the public interest in invalidating worthless patents:

> We are, of course, not unmindful of the general public policy disfavoring the repression of competition by the enforcement of worthless patents.  ***Yet despite the public policy encouraging people to challenge potentially invalid patents, there are still circumstances in which the equities of the contractual relationships between the parties should deprive one party (as well as others in privity with it) of the right to bring that challenge.***

*Id.* at 1225 (emphasis added).  The same reasoning applies to the instant case; the public policy of invalidating patents yields to the inequity of allowing Infineon to devalue the consideration it provided in the contracts.  Here, as with assignor estoppel, Infineon seeks to maintain the benefit of the bargain while devaluing the

1  consideration it provided.[4]  In essence, these facts present a form of assignor

2  estoppel, the difference being that instead of assigning patents to MACOM,

3  Infineon assigned the next closest thing--an exclusive license.

4       The situation here is also not analogous to MACOM having sold "some of its

5  public beach" to Infineon.  Dkt. No. 587 at 2.  MACOM sold private property—its

6  patents—in exchange for, among other things, a promise it would have exclusive

7  rights to some of that property.  The more apt analogy is that MACOM transferred

8  a private beach to Infineon in exchange for the promise that it would have exclusive

9  possession of a portion of the beach.  Infineon seeks to keep its benefits from the

10  transaction, but asserts that the MACOM portion of the beach is public and can be

11  used by anyone, including itself.  The equitable considerations are different from

12  those in *Lear*, and are at least as strong as they are in the assignor estoppel context.

13  **B.    The Equities Justify Application of Assignee Estoppel**

14       Infineon also argues that, even if *Lear* did not abolish assignee estoppel, it

15  should not apply in the instant case because: (1) Infineon does not have complete

16  rights in the patents; (2) Infineon made a monetary payment; and (3) MACOM also

17  seeks to rescind the assignment.  Dkt. No. 587 at 8.  These arguments are

18  unpersuasive.

19       The fact that MACOM obtained an exclusive license in the patents does not

20  undermine the justification for estoppel–it supports it.  The exclusive license was a

21  critical consideration for the sale of the patents, but Infineon seeks to render it

22  worthless.  The promise of an exclusive license and enforcement is analogous to the

23  patents that an assignor provides.  In both contexts, arguing that the patents are

24  invalid can render the consideration worthless.

25  ───────────────

26  [4]  Infineon argues that estoppel would "handcuff" Infineon AG's defense in a
   potential future suit for patent infringement."  Dkt. No. 587 at 15.  This suit does

27  not involve, however, any claim for patent infringement against Infineon.  If the
   patents are returned to MACOM, Infineon will no longer be an assignee, and

28  assignee estoppel will not apply.

1        Further, the monetary payment IR made to Nitronex was not "the entire

2    agreed-upon consideration for the assignment," as Infineon repeatedly asserts.  Dkt.

3    No. 587 at 4.  This is apparent from the documents themselves.  The commitment

4    that Infineon would not practice in MACOM'S exclusive field, and Infineon's

5    promise to enforce the patents against infringers, were also part of the

6    consideration.

7        Finally, MACOM's request for rescission and return of the patents is not

8    incompatible with the application of estoppel.  MACOM is allowed to pursue

9    alternative theories and relief in this case.  Moreover, Infineon has rejected

10   rescission, and seeks to keep the patents, while at the same time not fulfilling its

11   commitments.  *If* the patents are returned, and MACOM asserts infringement

12   against Infineon, assignee estoppel will not apply.  But that is not the current

13   context.  Infineon seeks to retain ownership of the patents and invalidate those

14   relating to MACOM's exclusive field that Infineon wants to practice.

15       Infineon also raises other facts that are either irrelevant or immaterial.

16   Infineon argues, for example, that unlike assignors, "assignees typically make no

17   representation about the validity of the transferred patents."  Dkt. No. 587 at 7 n. 4.

18   There is no evidence, however, that assignors "typically" represent that the assigned

19   patents are valid.  It is more standard for them to *disclaim* any such warranty, just

20   as Nitronex did.  Regardless, the Federal Circuit has already rejected the argument

21   that the absence of a warranty on validity undermines the estoppel.  In *Mentor*

22   *Graphics Corp. v. Quickturn Design Systems, Inc*., 150 F.3d 1374, 1378-79 (Fed.

23   Cir. 1998), in applying assignor estoppel, the court held that the lack of a warranty

24   from the patent owner as to validity did not change the outcome: "To overcome the

25   presumption of assignor estoppel, the sales agreement … would have needed to

26   include express language reserving Mentor's right to assert an invalidity challenge."

27   Similarly, the presumption of assignee estoppel should apply absent express

28   language allowing Infineon to challenge validity.

1   **C.     Assignee Estoppel Applies to Infineon AG**

2         Infineon argues that even if Infineon Americas is estoped, estoppel should

3   not apply to Infineon AG.  This is supported by neither equity nor the law.  First,

4   allowing Infineon AG to assert the patents are invalid would preclude Infineon

5   Americas from enforcing the patents (*i.e.,* it can hardly enforce patents that its

6   parent company has asserted are invalid) and, to the extent successful, would

7   extinguish Infineon Americas' promise not to practice the inventions in MACOM's

8   exclusive field.  Allowing Infineon AG to assert invalidity would thus undermine

9   the entire purpose and effect of any estoppel on Infineon Americas.  The

10  application of equitable principles—the basis for creating estoppel in the first

11  place—supports extending the estoppel to Infineon AG.

12        Infineon AG also argues it should be able to contest invalidity because it is

13  not subject to the breach of contract claim and is subject solely to tortious

14  interference and unfair competition claims.  Dkt. No. 587 at 14-15.  This again,

15  however, ***supports*** MACOM's position.  The alleged invalidity of the patents is a

16  defense Infineon Americas is asserting to the breach of contract claim (*e.g.,* to

17  defend its failure to enforce).  If Infineon Americas cannot assert patent invalidity

18  as a defense to the breach of contract claim, it makes no sense that Infineon AG can

19  assert it as a defense for its inducement of the breach.

20        Infineon argues that MACOM has cited no case law extending assignee

21  estoppel to those in privity with the estoped party, but that is because assignee

22  estoppel issues rarely arise.  Indeed, Infineon has also cited no case ***refusing*** to

23  apply assignee estoppel to those in privity with the estoped party.

24        MACOM ***has*** cited authority applying ***assignor*** estoppel to those in privity

25  with the estoped party.  *See Diamond Sci. Co.*, 848 F.2d at 1224 ("The estoppel

26  also operates to bar other parties in privity with the assignor…."); *Shamrock Techs.,*

27  *Inc. v. Med. Sterilization, Inc.,* 903 F.2d 789, 793 (Fed. Cir. 1990) ("[E]xtension of

28  the estoppel to those in privity is justified.").  As discussed above, the equities

underlying assignor estoppel apply in the instant case.  Similarly, the reasoning for extending assignor estoppel to those in privity also justifies applying estoppel to Infineon AG.  Just as it would be unfair to allow those in privity with an assignor to invalidate the assigned patents (thereby rendering the consideration provided by the assignor to be worthless), it would be unfair to allow Infineon AG to invalidate the patents, thereby rendering Infineon Americas' promise of enforcement and exclusivity to be worthless.  There is no meaningful distinction between the underlying equities.

Infineon, in fact, relies on assignor estoppel cases (*e.g.*, *Shamrock)* to argue that privity is "context-specific" and requires "balancing the equities."  Dkt. No. 587 at 13.  Although Infineon relies on the "context-specific" privity determinations under assignor estoppel cases, it cites no case in any context that has held that a corporate parent is not in privity with its subsidiary for purposes of estoppel, regardless of the type of estoppel.  In fact, in all of the "context-specific" cases cited by Infineon, an ***individual*** assignor (*e.g.,* former employee of the plaintiff) joins a defendant ***corporation***.  In that context, the privity issue turns on multiple things, including whether the individual is a "mere employee" of the defendant. *See, e.g., Shamrock Techs., Inc.,* 903 F.2d at 793-94 (affirming summary judgment that defendant corporation was in privity with individual for assignor estoppel purposes based on their relationship).  There are no such issues in the instant case. There is no genuine dispute that Infineon Americas is a wholly-owned subsidiary of Infineon AG.

Infineon has cited no case holding that a parent is not in privity with its subsidiary for purposes of estoppel.  All of the cited cases involving parents and subsidiaries find that privity exists.[5]  Infineon attempts to distinguish those cases by

---

[5]   *See, e.g., Zendel v. Circle Location Servs., Inc.,* No. CV 11-07963 SJO (CWx), 2012 WL 12877182, at *4 (C.D. Cal. Apr. 5, 2012) ("[P]rivity exists between a

asserting that they arise in a different context–collateral estoppel or *res judicata*. Dkt. No. 587 at 13 n.10.  The reasoning in the collateral estoppel/*res judicata* scenario, however, applies equally to the instant case.  In those contexts, courts do not allow a party's corporate parent to re-argue legal issues lost by the party.  To do so would give the corporate entities multiple "bites at the apple."  Similarly, Infineon AG should not be able to invalidate patents that its wholly-owned subsidiary is estopped from invalidating.  To allow it to do so would render the estoppel meaningless.[6]

Further, parent-subsidiary privity has been applied in assignor estoppel cases. In *Mentor Graphics*, for example, the Federal Circuit affirmed the district court's grant of summary judgment that Mentor Graphics and its subsidiary, Meta Systems, were barred by assignor estoppel from contesting the validity of the patents.  150 F.3d 1374 (Fed. Cir. 1998).  Mentor had assigned the relevant patents to the defendant and, after the assignment, had acquired a controlling interest in Meta.  In

---

parent corporation and its wholly-owned subsidiary."); *Agha-Khan v. United States,* No. 1:15-CV-00042-AWI, 2015 WL 5734380, at *6 (E.D. Cal. Sept. 29, 2015) (recognizing parents and subsidiaries as a category of privies); *Tuitama v. Nationstar Mortg. LLC*, No. CV 14-09956 MMM (AGRx), 2015 WL 12744269, at *10 (C.D. Cal. Apr. 13, 2015) (finding parent to be in privity with subsidiary); *Salessi v. Commonwealth Land Title Ins. Co.,* No. SA CV 08-01274-DOC (JPRx), 2013 WL 5676209, at *9 (C.D. Cal. Oct. 16, 2013) ("Privity can be shown through a corporate parent and its wholly-owned subsidiary."); *see also Patriot Mfg. LLC v. Hartwig, Inc.*, 996 F. Supp. 2d 1120, 1127-28 (D. Kan. 2014) ("Privity [for judicial estoppel] requires a showing that the parties in the two actions are really and substantially, in interest, the same.  Generally, a sole owner of a company is in privity with the company.") (footnotes omitted). c*f. Radio Sys. Corp. v. Lalor,* No. C10-828RSL, 2012 WL 254026, at *9-10 (W.D. WA. Jan. 26, 2012) (granting summary judgment that defendant was equitably estopped from asserting infringement against plaintiff and that estoppel extended to parent).

[6]  The fact that the parent-subsidiary relationship did not exist at the time the agreements were executed (Dkt. No. 587 at 14 n.11) is immaterial.  Estoppel is based on the equities of the ***current*** circumstances.  *See Mentor*, 150 F.3d at 1379 (holding that subsidiary acquired after transaction was subject to estoppel).

affirming that privity existed between the parties, the court emphasized the parent-subsidiary relationship and their interconnected business activities:

> Whether two parties are in privity depends on the nature of their relationship in light of the alleged infringement . . . .
>
> ***
>
> Similarly, in this case, the district correctly determined that Meta was in privity with Mentor and properly applied assignor estoppel. Ownership of Meta stock, in and of itself, gives Mentor considerable control over Meta's operations. Even a party that owns less than a majority of a company's stock can still exercise effective control over the company's operations. ***Mentor owns all of Meta's stock–a reliable indicator of extensive, if not complete, control over Meta's operations.***
>
> ***
>
> Given Mentor's control over Meta's operations, the district court properly found privity between Mentor and Meta. This relationship deprives Meta of invalidity defenses it would have been able to assert outside this relationship. Due to this privity relationship, it is irrelevant that Meta, after its sale to Mentor, is continuing the business it was in before the sale. A rule setting aside estoppel after a corporate transaction would chart a clear course for assignors to profit from a scheme of slovenly prosecution, a marketing of flawed patents, and infringement. The district court correctly found privity and applied the doctrine of assignor estoppel to Meta.

*Id.* at 1379.

This reasoning applies in the instant case. Infineon AG controls Infineon Americas, and the breach of contract issues arise from the "nature of their relationship." Accordingly, they should be found to be in privity for purposes of estoppel.

## IV.   JUDICIAL ESTOPPEL APPLIES

### A.   Judicial Estoppel Applies to Infineon's Positions Before the Patent Office

Judicial estoppel also applies to those applications that were prosecuted by

IR or Infineon Americas.[7]  Infineon argues, however, that judicial estoppel cannot prevent a party from asserting "invalidity based on the party's prior inconsistent validity arguments during prosecution."  Dkt. No. 587 at 15.

This is wrong.  Infineon has cited no case holding that judicial estoppel cannot apply to a patent prosecuted by the party.  The cases cited by Infineon all involve the issue of whether a party, usually the accused infringer, is precluded from asserting a patent is invalid because of its own prosecution of *other* patents. In *Paramount*, for example, the Court simply held estoppel did not apply based on the defendant's ***unsuccessful*** attempt to obtain a different patent.  *Paramount Publix Corp. v. Am. Tri-Ergon Corp.*, 294 U.S. 464, 477 (1935).  *Kellogg* reached the same result, holding that defendants' unsuccessful attempts to obtain a different patent does not create estoppel with respect to plaintiff's patent.  *Kellogg Switchboard & Supply Co. v. Mich. Bell Tel. Co.,* 99 F.2d 203, 205 (6th Cir. 1938). *Wyers* similarly involved a claim of estoppel based on defendants' prosecution of a different patent, which the Federal Circuit held "should be treated no differently than a patent application by a third party."  *Wyers v. Master Lock Co.,* 616 F.3d 1231, 1242 (Fed. Cir. 2010).  These decisions do not suggest, much less hold, that judicial estoppel cannot apply to a party's successful prosecution of the patent-at-issue.

Indeed, courts have consistently held that statements and positions taken before the Patent and Trademark Office trigger judicial estoppel.  "It is well-established that a party who successfully argues one position is estopped from later adopting a contrary position in a case involving the same patent."  *Organic Seed Growers and Trade Ass'n v. Monsanto Co.,* 718 F.3d 1350, 1358 (Fed. Cir. 2013);

---

[7]  When convenient, Infineon points out that it was International Rectifier that entered into the transaction and prosecuted some of the patent applications.  On the other hand, Infineon has admitted that Infineon America *is* International Rectifier, and there was simply a name change.  Pelzer Dec. (Exh. H), ¶5.

*see also Amgen, Inc. v. F. Hoffman-LaRoche Ltd.,* 581 F. Supp. 2d. 160, 186 (D. Mass. 2008) ("Judicial estoppel also applies to arguments and positions presented to the PTO from which the patentee gained a benefit."); *Yeda Res. & Dev. Co. v. Imclone Sys. Inc.*, 443 F. Supp. 2d 570, 624 (S.D.N.Y. 2006) (named inventors were judicially estopped from asserting that a figure in a technical paper did not disclose an element of the patent claim under consideration, where the named inventors had included that figure in the patent application and represented to the PTO that said figure ***did*** disclose the element of the patent claim under consideration); *Apotex, Inc. v. UCB, Inc.*, 970 F. Supp. 2d 1297, 1330 (S.D. Fla. 2013), aff'd, 763 F.3d 1354 (Fed. Cir. 2014) (holding that judicial estoppel prohibited inventor from taking the position that the accused products infringed the patent-in-suit where the inventor made statements to the PTO during prosecution that the accused product was distinguishable from the invention at issue); *Abbvie Inc. v. Mathilda & Terence Kennedy Inst. of Rheumatology Tr.*, 956 F. Supp. 2d 429, 487 (S.D.N.Y. 2013), aff'd, 764 F.3d 1366 (Fed. Cir. 2014) (finding that party was judicially estopped from arguing position on unexpected results in action for declaratory judgment which contradicted statements made to the PTO during patent prosecution).

There should be no genuine dispute that judicial estoppel applies to positions taken and statements made by a party to successfully obtain a patent.

**B.    Infineon's Positions Are Clearly Inconsistent**

Infineon's primary argument is that estoppel should not apply because it has not yet taken a "clearly inconsistent position on validity." Dkt. No. 587 at 19-20. This head-in-the-sand approach should be rejected. The entire premise of a patent application is that the applicant (here, Infineon) necessarily believes that it is entitled to a patent. Infineon's current position that the patents are invalid, regardless of the basis for invalidity, is clearly inconsistent with the position and

1   statements it made to the Patent Office, where it successfully advocated that the

2   patents are valid.

3       Infineon relies heavily on the *Kinetic Concepts* decision,[8] which held that a

4   licensee's prior defense of a patent against invalidity challenges did not preclude it

5   from asserting invalidity when it was later sued for infringement.  Although the

6   district court held that the licensee was not taking a clearly inconsistent position,

7   because the prior art was different, the decision is distinguishable from that present

8   here.  In *Kinetic*, the licensee had never affirmatively advocated for the issuance of

9   the patent–it merely resisted a claim of invalidity in prior litigation.  In other words,

10  the licensee had never broadly advocated to the Patent Office that its invention ***is***

11  patentable; it only rebutted particular prior art references that were later raised.

12  Further, the equities are different when a party, such as the former licensee in

13  *Kinetic*, is being sued for patent infringement.  It is reasonable that a former

14  licensee, which could have challenged the validity of the patents while a licensee

15  under *Lear* and which never prosecuted the patents in the first place, should be able

16  to defend against a claim of infringement.

17      Similarly, and contrary to Infineon's suggestion, MACOM does not contend

18  that Infineon would be judicially estopped if it were a defendant in a future patent

19  infringement case (*e.g*., if MACOM were to recover the patents).  The equities in

20  that circumstance would be fundamentally different from those in the instant case,

21  where there is no patent infringement claim against Infineon, and Infineon is

22  seeking to invalidate the patents only to avoid its own obligations.

23  **C.**   **Allowing Infineon to Assert Invalidity Would be Unfair**

24      Infineon also relies on *Synopsys* to argue that it would not be "unfair" to

25  allow it to argue invalidity.  Dkt. No. 587 at 23.  In *Synopsys,* the defendant Magma

26  had previously asserted that its employee was the sole inventor on the patents, but

27

28  [8]   No. SA-11-CV-00163-XR, 2013 WL 6164592 (W.D. Tex. Nov. 25, 2013).

then took the position that an IBM employee was actually a co-inventor.  *Synopsys,*
*Inc. v. Magma Design Automations, Inc.,* No. C-04-3923 MMC, 2007 WL 322353,
at *26 (N.D. Cal. Jan. 31, 2007).  The court held that allowing Magma to take the
inconsistent position was not unfair because Magma had abandoned its ownership
of the patents:

> Magma, by contrast, has abandoned its prior claim that it
> owns the '446 and '438 patents…. Consequently, Magma
> is not seeking to obtain a 'second advantage' as a result of
> its current position; rather, it is giving up the advantage it
> obtained as a result of its prior position.
>
> Moreover, Magma, by doing so, is not imposing an
> 'unfair detriment' on Synopsys.  Magma's abandonment
> of any claim of ownership in the '446 and '438 patents
> works to the benefit of Synopsys.

*Id.* at * 26.  That situation is unlike the instant case, where Infineon
seeks to keep the patents, but also to avoid its commitments.

Similarly, *Mike's Train House* is distinguishable.  In *Mike's*, the defendant
had asserted in a reexamination request to the Patent Office (*i.e.*, a request that the
Patent Office reconsider the validity of the patent) that a certain prior art protocol
invalidated the claims.  It also argued, however, that its own product, which it
alleged utilized the protocol, did not contain the claim element.  Plaintiff claimed
that defendant should be estopped from taking this position because of its
reexamination request.  In rejecting the argument, the court first found that there
was no evidence of "intentional deception," which it held was necessary to find
judicial estoppel under Fourth Circuit law.  *Mike's Train House, Inc. v. Broadway
Ltd. Imports, LLC*, No. 1:09-cv-02657-JKB, 2012 WL 664498, at *21 (D. Md. Feb.
27, 2012).  Here, intentional deception is not required under either Ninth or Federal

Circuit law.[9]  In addition, the *Mike's* court held that the defendant's position in

reexamination was not necessarily inconsistent, because the Patent Office interprets

claims under the "broadest reasonable interpretation," while the defendant could

argue that it did not infringe under the "more narrow construction that the parties

have applied in this case." *Id.* at *22.  This is the opposite of the instant case,

where Infineon took the position before the Patent Office during prosecution that

the claims are ***valid*** under the broadest reasonable construction, which is

necessarily inconsistent with the position that they are invalid under a narrower

construction in litigation.

Similarly, in *MasterObjects*, the issue was whether Google was estopped

from arguing a prior art reference anticipated plaintiff's patents because of

"Google's statements during prosecution of its own patents (which are not at issue

in this action) . . . ." *MasterObjects, Inc. v. Google Inc.*, No. C 11-1054 PJH, 2013

WL 2606626, at *1 (N.D. Cal. June 11, 2013).  The court agreed with the "general

principle that [a party] should not be permitted to make statements . . . that are

inconsistent with its statements to the PTO." *Id.*  The court declined to apply

judicial estoppel, however, because the claim term at issue "could have a different

meaning in this case, in the context of the patents-in-suit, than it had during

prosecution of [defendant's] patents." *Id.* at *1-2.  Again, this is not the scenario of

the instant case, where Infineon advocated for the validity of the ***exact*** claims at

issue.

At the very least, the fact that Infineon prosecuted many of the patents-at-

issue is a further equitable basis to find estoppel in the instant case, regardless of

the label applied.  In *Diamond*, for example, the Federal Circuit emphasized the

---

[9]  *See Milton H. Greene Archives, Inc., Marilyn Monroe LLC¸* 692 F.3d 983, 995
(9th Cir. 2012) (holding that "chicanery or knowing misrepresentation by the
party to be estopped is a factor to be considered in the judicial estoppel analysis
[but] not an 'inflexible prerequisite' to its application").

-17-

patent owner's representations to the Patent Office in finding assignor estoppel

applied:

> When the inventor-assignor has signed the Oath, Power of
> Attorney and Petition, which attests to his belief in the
> validity of the patents, and has assigned the patent rights
> to another for valuable consideration, he should be
> estopped from defending patent infringement claims by
> proving that what he has signed was worthless.… The
> inventor's active participation in the prosecution and
> preparation of the patent applications, as is alleged here,
> would tilt the equities even more heavily in favor of the
> assignee, but consideration of this factor is not necessary
> to the result.

*Diamond Sci. Co.,* 842 F.2d at 1225-26.  The same reasoning applies in the instant

case.  Infineon's prosecution of many of the patents-in-suit further supports the

equitable basis for finding of estoppel.

**D.      Judicial Estoppel Applies to Infineon AG**

Infineon AG also argues that even if judicial estoppel were to apply to

Infineon Americas, it should not apply to Infineon AG.  Dkt. No. 587 at 24-25.

Infineon claims that "the corporate relationship alone provides an insufficient

basis" for estoppel and that a "party's prior statements may be attributable to privies

for purposes of judicial estoppel, but ***only*** if the privy participated in and controlled

the prior proceeding giving rise to the judicial estoppel." *Id.* at 24 (emphasis in

original).  According to Infineon, judicial estoppel cannot apply unless "Infineon

AG participated in or controlled the prosecution of the asserted patents at the time

the allegedly inconsistent statements were made…." *Id.*

This is wrong.  First, Infineon does not dispute that, in general, judicial

estoppel extends to the privies of an estoped party.  *See Milton H. Greene*

*Archives, Inc.,* 692 F.3d at 996.  Further, the Ninth Circuit has, for purposes of

determining privity for judicial estoppel, applied the same standards that are used in

determining privity in collateral estoppel and *res judicata* cases.  *Id.*  That reasoning

also makes sense because judicial estoppel, collateral estoppel, and *res judicata* all

-18-

involve limiting a party's litigation options based on the results of past litigation or administrative proceedings.

Numerous authorities hold that a parent-subsidiary relationship creates privity for purposes of *res judicata* and collateral estoppel.  *See supra* note 5.

Infineon has not cited any decision finding a parent not to be in privity with its subsidiary for purposes of estoppel, and there is no reason this case should be the first.  The Court should, consistent with the equities and the case law, hold that Infineon AG is in privity with Infineon Americas for the purposes of estoppel.

## V.    CONCLUSION

For the reasons above and in MACOM's opening memorandum, the Court should grant summary judgment.  Equitable considerations preclude both Infineon Americas and Infineon AG from undermining its contractual commitments by asserting that the patents-in-suit are invalid.


DATED:  June 29, 2018          **PERKINS COIE LLP**


By  */s/ Amanda Tessar*
      Lara J. Dueppen, Bar No. 259075
      LDueppen@perkinscoie.com
      PERKINS COIE LLP
      1888 Century Park East, Suite 1700
      Los Angeles, CA 90067-1721
      Telephone:  310.788.9900
      Facsimile:  310.788.3399

      Amanda Tessar (*pro hac vice*)
      ATessar@perkinscoie.com
      Elizabeth Banzhoff (*pro hac vice*)
      EBanzhoff@perkinscoie.com
      PERKINS COIE LLP
      1900 Sixteenth Street, Suite 1400
      Denver, CO  80202-5255
      Telephone:  303.291.2357
      Facsimile:  303.291.2457

      Ramsey M. Al-Salam, Bar No. 109506
      RAlSalam@perkinscoie.com

-19-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone:  206.359.6835
Facsimile:  206.359.7385

Daniel T. Keese, Bar No. 280683
DKeese@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

Morgan Chu (State Bar No. 70446)
(mchu@irell.com)
Ellisen Turner (State Bar No. 224842)
(eturner@irell.com)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
Telephone:  310-277-1010
Facsimile:  310-203-7199

**ATTORNEYS FOR PLAINTIFFS**